UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Eric Forsythe, Individually and on Behalf of All Others Similarly Situated,<br><br>        Plaintiff,<br><br>    v.<br><br>Sun Life Financial Inc., et al.,<br><br>        Defendants. | Civil Action No. 04cv10584 (GAO) |
| Larry R. Eddings, Individually and on Behalf of All Others Similarly Situated,<br><br>        Plaintiff,<br><br>    v.<br><br>Sun Life Financial Inc., et al.,<br><br>        Defendants. | Civil Action No. 04cv10765 (GAO) |

**MEMORANDUM OF LAW IN OPPOSITION TO MOTIONS FOR
CONSOLIDATION AND FOR APPOINTMENT OF CO-LEAD COUNSEL**

**I.
PRELIMINARY STATEMENT**

Plaintiffs in *Dumond, et al. v. Massachusetts Financial Services Company, et al.,* Civil

Action No. 04-cv-11458-RGS (respectively referred to herein as the "*Dumond* Plaintiffs" and the

"*Dumond* Action") have moved to intervene in these cases for the limited purpose of filing this

opposition to the pending Motions for Consolidation and for Appointment of Co-Lead Counsel and

Appointment of Liaison Counsel. The *Dumond* Action was filed in the Middle District of Florida on

May 4, 2004, and transferred to this Court (Stearns, J.) on June 23, 2004.

On May 14, 2004, Plaintiffs in *Forsythe v. Sun Life Financial, Inc., et al.*, 04-cv-10584 (the "*Forsythe* Action") and *Eddings v. Sun Life Financial, Inc., et al.*, 04-cv-10764 (the "*Eddings* Action") filed a Motion for Consolidation and a Motion for Appointment of Co-Lead Counsel and Appointment of Liaison Counsel in these cases. In their motions, counsel for the *Forsythe* and *Eddings* Plaintiffs seek broad orders appointing them as lead counsel for their consolidated cases against Massachusetts Financial Services Company and others, which would arguably encompass the *Dumond* Action. Specifically, [Proposed] Pre-Trial Order No. 1 for Consolidation (at p. 2, §II) seeks consolidation of their cases, and all others "that arise out of the same operative facts and allege[] a violation of the Investment Company Act, Investment Advisers Act, breaches of fiduciary duty or aiding and abetting breach of fiduciary duty" into "the first filed action, *Eric Forsythe v. Sun Life Financial, Inc., et al.*, Master File No. 04-10584."

Although this Court has not yet acted on their Motion for Consolidation, on July 12, 2004, the *Forsythe* and the *Eddings* Plaintiffs filed a Notice of Subsequently Filed Cases Subject to Motion for Consolidation. In their Notice, the *Forsythe* and the *Eddings* Plaintiffs contend that the *Dumond* Action "should be included in the requested consolidation." Attached to the Notice, the *Forsythe* and the *Eddings* Plaintiffs submitted a "Revised [Proposed] Pretrial Order No. 1 for Consolidation," which purports to consolidate the *Forsythe* Action, the *Eddings* Action, the *Dumond* Action, and a fourth lawsuit, *Koslow v. Sun Life Financial, Inc., et al.*, 04cv11019 (GAO) (the "*Koslow*" Action").

The *Forsythe* and *Eddings* Plaintiffs' Motion for Consolidation and Motion for Appointment of Co-Lead Counsel and Appointment of Liaison Counsel should be denied to the extent that it would encompass the *Dumond* Action. The *Forsythe* and *Eddings* Plaintiffs do not explain why being on file first means they are the most qualified to prosecute the actions, where as here (a) counsel for the *Forsythe* and *Eddings* Plaintiffs face disqualifying conflicts of interest, (b) there are inherent conflicts in the *Forsythe* and *Eddings* Plaintiffs' representation of competing class and derivative claims, (c)

the *Forsythe* and *Eddings* Plaintiffs lack standing to sue on behalf of the overwhelming majority of the 112 MFS mutual funds named in their suit, and (d) the causes of action asserted by the *Forsythe* and *Eddings* Plaintiffs are substantially different from those raised in the *Dumond* Complaint in many fundamental ways.

Accordingly, the *Dumond* Plaintiffs respectfully submit that the Court should deny the pending motions to consolidate and appoint co-lead counsel so that the *Dumond* Action may be prosecuted separately from any other cases pending before this Court and be represented by the undersigned counsel. In the alternative, even if the pending motions are granted, the undersigned attorneys seek to be appointed lead counsel as to the derivative claims under Sections 12(b) and 36(b) of the Investment Company Act ("ICA").[1]

## II.
## FACTUAL OVERVIEW: THE MATERIAL DIFFERENCES BETWEEN THE DUMOND ACTION AND THE CASES BEFORE THIS COURT.

### A.   The *Dumond* Action.

The *Dumond* Action is a derivative action brought by Plaintiffs pursuant to §36(b) of the ICA, as amended, 15 U.S.C. §80a-35(b), on behalf of eleven open-end registered investment companies, or mutual funds, created, sold, advised, and managed by the Massachusetts Financial Services entities. *Dumond* Complaint, ¶¶2, 30-36. Those mutual funds are: MFS Capital Opportunities Fund, MFS Emerging Growth Fund, MFS Government Securities Fund, MFS Government Limited Maturity Fund, MFS Mid Cap Growth Fund, MFS Research Fund, MFS Value Fund, MFS Municipal Income Fund, MFS Strategic Growth Fund, MFS Total Return Fund, and Massachusetts Investors Growth Stock Fund (collectively, the "Funds"). *Dumond* Complaint, ¶1.[2]

---

[1] In either case, the *Dumond* Plaintiffs do not oppose the pre-trial coordination of discovery and other pretrial matters to ensure that all cases are prosecuted in an efficient and expeditious manner.

[2] A copy of the *Dumond* Complaint is attached hereto as Exhibit 1.

Defendant Massachusetts Financial Services ("MFS") manages over $138 billion in assets and is the fifth largest load mutual fund family in the mutual fund industry. *Dumond* Complaint, ¶6. Defendant MFS Fund Distributors ("MFS Distributors") serves as the principal underwriter and distributor of the shares in the Funds. *Dumond* Complaint, ¶37.

In their lawsuit, the *Dumond* Plaintiffs seek to recover, on behalf of the Funds, advisory fees charged by the Defendants and to recover the excess profits resulting from economies of scale wrongfully retained by Defendants in breach of their fiduciary duties to the Funds under the ICA. *Dumond* Complaint, ¶28. As summarized below, and alleged in great detail in the *Dumond* Complaint, the claims in the *Dumond* Action are specifically tailored to relate to advisory fees pursuant to Section 36(b) of the ICA, 15 U.S.C. §80a-35(b), and Rule 12b-1 fees, 17 C.F.R. §270.12b-1.

MFS receives fees paid by Plaintiffs and other shareholders of the Funds for providing (a) pure investment advisory services and (b) administrative services. These fees are based on a percentage of the net assets of each of the Funds. *Dumond* Complaint, ¶8. While over the years the Funds have grown dramatically in size, the nature of the services rendered by Defendants has changed little, if at all. Indeed, advances in computing and communication technologies in the past twenty years have resulted in exponential efficiencies that have dramatically reduced the costs of servicing mutual funds. As a result, the *Dumond* Plaintiffs allege the advisory fees paid to Defendants (and accepted by them in violation of their statutory fiduciary duties) are disproportionately large in relationship to the services rendered to Plaintiffs. *Dumond* Complaint, ¶15.

In addition, the *Dumond* Plaintiffs allege that Defendants, in violation of their fiduciary duties to Plaintiffs, have retained excess profits resulting from economies of scale. These economies of scale are a product of the dramatic growth in assets managed by Defendants, caused in part by marketing programs paid for with the distribution fees charged to Plaintiffs and in part by Defendants'

4

ability to provide the identical investment advisory services they provide Plaintiffs to other clients at little or no additional cost. The excess profits resulting from these economies of scale belong to Plaintiffs and the other shareholders of the Funds. *Dumond* Complaint, ¶16.

Plaintiffs allege that the fees charged by MFS for investment advisory services are excessive in light of the nature and quality of services provided to the Funds, the profitability of the Funds to MFS, economies of scale, comparative fee structures and the fallout benefits generated. *Dumond* Complaint, ¶¶39-65. Indeed, the pure investment advisory services that MFS provides to the Funds are identical to the investment advisory services Defendant MFS or its affiliates provide to other clients, and entail essentially identical costs. Despite the equivalence of the investment advisory services MFS provides to the Funds and its other clients, the fees in dollar amounts that Defendants receive from the Funds that are attributable to pure investment advisory services are much higher than the fees Defendants or their affiliates receive from other clients for the identical services. *Dumond* Complaint, ¶¶10, 56-59.

In addition to advisory fees, MFS Distributors also charges distribution fees for marketing, selling, and distributing mutual fund shares to new shareholders pursuant to distribution plans that Defendants have adopted with respect to the Funds pursuant to Rule 12b-1, 17 C.F.R. §270.12b-1 ("Distribution Plans"). The distribution fees are based on a percentage of the net assets of each of the funds in the Fund Complex. Defendants purportedly collect distribution fees in order to grow or stabilize the assets of the Funds so that the Funds can benefit from economies of scale through reduced advisory fees. *Dumond* Complaint, ¶11.

Prior to 1980, the use of fund assets (which are owned by the shareholders) to sell new fund shares was prohibited because the SEC had historically been reluctant to allow fund advisers to charge their shareholders for selling shares to others. *Dumond* Complaint, ¶¶20-21. However, after intense lobbying by the mutual fund industry, the SEC agreed to consider modifying its objections to

allow current fund shareholders to pay distribution expenses. In early comment letters and in proxy statements proposing adoption of plans of distribution, the mutual fund industry argued that adding assets to an existing mutual fund would create economies of scale that would allow the advisers to provide the same quality and nature of services to mutual fund shareholders at dramatically lower costs. Accepting the mutual fund industry's argument that a growth in assets would lead to a *quid pro quo* reduction in advisory fees and other expenses, the Commission tentatively approved Rule 12b-1, 17 C.F.R. §270.12b-1. *Dumond* Complaint, ¶¶22-23.

Despite the dramatic growth in assets managed by Defendants, both the advisory and distribution fees charged by Defendants have grown, both in terms of whole dollars and as a percentage of assets. Accordingly, the Distribution Plans have produced no economies-of-scale benefits to the shareholders of the Funds. Rather, the Distribution Plans have served only Defendants, just as the Commission feared when it found that "the use of mutual fund assets to finance distribution activities would benefit mainly the management of a mutual fund rather than its shareholders, and therefore such use of fund assets should not be permitted." Bearing of Distribution Expenses by Mutual Funds, Investment Company Act Release No. 9915, 1977 SEC LEXIS 943 (Aug. 31, 1977). As such, the Distribution Plans violate the intent and purpose of Rule 12b-1 and are entirely a waste of fund assets. *Dumond* Complaint, ¶25. Furthermore, the distribution fees are based on the net asset value of the Funds and not on the distribution activity, if any, by Defendants, such as number of shares sold. Accordingly, in addition to failing to benefit Plaintiffs and other shareholders, the Distribution Plans have extracted additional compensation for advisory services to Defendants, thereby resulting in excessive fees paid to them. For example, any portion of the fees paid to Defendants that are derived from market increases in the net asset value of the fund rather than any distribution activity by Defendants constitutes additional and excessive compensation for advisory services. *Dumond* Complaint, ¶26.

6

**B.    The *Forsythe* and *Eddings* Actions.**

By contrast to the focused allegations in the *Dumond* Action, the *Forsythe* and *Eddings* Actions present a hodge-podge of both class claims and derivative claims against MFS, and various individuals and John Does, who were trustees charged with overseeing the MFS Fund Complex. The *Forsythe* and *Eddings* Plaintiffs assert the following claims:

| | |
|---|---|
| Count I: | Class Claims Against MFS under Section 34(b) of the ICA; |
| Count II: | Derivative Claims Against MFS under Section 36(b) of the ICA; |
| Count III: | Class and Derivative Claims for Control Person Liability Against Sun Life Under Section 48(a) of the ICA; |
| Count IV: | Derivative Claims Against MFS under Sections 206 and 215 of the Investment Advisors Act ("IAA"); |
| Count V: | Class Claims Against MFS for Breach of Fiduciary Duty; |
| Class VI: | Class Claims Against the Trustee Defendants for Breach of Fiduciary Duty; and |
| Class VII: | Class Claims Against MFS for Aiding and Abetting A Breach of Fiduciary Duty. |

The *Forsythe* and *Eddings* Plaintiffs purport to assert both class claims on behalf of investors in the MFS family of mutual funds (the 'MFS Funds'), and derivatively on behalf of the MFS Funds, against the MFS Funds' investment advisers, their corporate parents and the MFS Funds' trustees during class periods beginning March 24, 1999 and ending November 17, 2003. *See* Revised [Proposed] Pretrial Order No. 1 For Consolidation at 2-3.[3]

Although the named plaintiffs in *Forsythe* and *Eddings* are shareholders in only a handful of funds within the MFS Fund Complex, the cases purport to be brought derivatively on behalf of the entire universe of 112 MFS mutual funds (*Forsythe* Complaint, ¶1; *Eddings* Complaint, ¶1) which,

---

[3]In fact, under section 36(b) of the ICA, damages are not recoverable for any period prior to one year before the action was instituted, 15 U.S.C. §80a-35(b)(3), and the the *Forsythe* and *Eddings* Plaintiffs seek damages over an impermissible time period as to their section 36(b) claims.

7

as discussed below, the *Forsythe* and *Eddings* Plaintiffs do not have standing to pursue. Specifically, although the *Forsythe* and *Eddings* Plaintiffs only own shares or units in MFS Capital Opportunities Fund, MFS Strategic Income Fund, Massachusetts Investors Growth Stock, Massachusetts Investors Trust, MFS Total Return Fund, MFS High Income Fund and MFS Emerging Growth Fund (*Forsythe* Complaint, ¶11; *Eddings* Complaint, ¶11), the *Forsythe* and *Eddings* Plaintiffs purport to sue MFS for violations of Section 36(a) of the ICA on behalf of each of the following funds:

> MFS Capital Opportunities Fund
> MFS Core Growth Fund
> MFS Emerging Growth Fund
> MFS Growth Opportunities Fund
> MFS Large Cap Growth Fund
> MFS Managed Sectors Fund
> MFS Mid Cap Growth Fund
> MFS New Discovery Fund
> MFS New Endeavor Fund
> MFS Research Fund
> MFS Strategic Growth Fund
> MFS Technology Fund
> Massachusetts Investors Growth Stock
> MFS Mid Cap Value Fund
> MFS Research Growth and Income Fund
> MFS Strategic Value Fund
> MFS Total Return Fund
> MFS Union Standard Equity Fund
> MFS Utilities Fund
> MFS Value Fund
> Massachusetts Investors Trust
> MFS Aggressive Growth Allocation Fund
> MFS Conservative Allocation Fund
> MFS Growth Allocation Fund
> MFS Moderate Allocation Fund
> MFS Bond Fund
> MFS Emerging Markets Debt Fund
> MFS Government Limited Maturity Fund
> MFS Government Mortgage Fund
> MFS Government Securities Fund
> MFS High Income Fund
> MFS High Yield Opportunities Fund
> MFS Intermediate Investment Grade Bond Fund
> MFS Limited Maturity Fund
> MFS Research Bond Fund

MFS Strategic Income Fund
MFS Alabama Municipal Bond Fund
MFS Arkansas Municipal Bond Fund
MFS California Municipal Bond Fund
MFS Florida Municipal Bond Fund
MFS Georgia Municipal Bond Fund
MFS Maryland Municipal Bond Fund
MFS Massachusetts Municipal Bond Fund
MFS Mississippi Municipal Bond Fund
MFS Municipal Bond Fund
MFS Municipal Limited Maturity Fund
MFS New York Municipal Bond Fund
MFS North Carolina Municipal Bond Fund
MFS Pennsylvania Municipal Bond Fund
MFS South Carolina Municipal Bond Fund
MFS Tennessee Municipal Bond Fund
MFS Virginia Municipal Bond Fund
MFS West Virginia Municipal Bond Fund
MFS Emerging Markets Equity Fund
MFS Global Equity Fund
MFS Global Growth Fund
MFS Global Total Return Fund
MFS International Growth Fund
MFS International New Discovery Fund
MFS International Value Fund
MFS Research International Fund
MFS Cash Reserve Fund
MFS Government Money Market Fund
MFS Money Market Fund

*See Eddings*, Caption and ¶¶1, 67-73; *Forsythe* Caption and ¶¶1, 67-73.

At the heart of the *Forsythe* and *Eddings* Complaints are plaintiffs' allegations that MFS drew upon the assets of the MFS Funds to pay brokers aggressively to push MFS funds over other funds, in order to maximize MFS's fees, and that MFS concealed such payments from investors by disguising them as brokerage commissions. *Forsythe* Complaint, ¶¶2-6; *Eddings* Complaint, ¶¶2-6. Although the *Forsythe* and *Eddings* Plaintiffs, as an afterthought, make some general allegations that the fees charged by MFS were excessive, they do so in a vague and cursory manner. In contrast with the detailed and specific allegations of advisory fee wrongdoing presented by the *Dumond* Plaintiffs in ¶¶12-29, 39-93 of their Complaint, the *Forsythe* and *Eddings* Complaints offer only fleeting and

superficial allegations regarding excessive fees. The *Forsythe* and *Eddings* Complaints have given short shrift to the crux of the *Dumond* Plaintiffs' case, *i.e.*, the section 36(b) and Rule 12b-1 violations. Such cursory treatment of Plaintiffs' fundamental claims is unlikely to withstand a motion to dismiss under *Olesh v. Dreyfus Corp.*, No. CV-94-1664 (CPS), 1995 WL 500491, *19 (E.D.N.Y. Aug. 8, 1995) ("complaint nowhere alleges that the fee increases at issue here would violate [standard of reasonable relationship to product of arm's length bargaining]" and therefore fails to cite an actionable claim under section 36(b) (*citing Meyer v. Oppenheimer Management Corp.*, 764 F.2d 76, 81 (1985), and *quoting Gartenberg v. Merrill Lynch Asset Management, Inc.*, 694 F.2d 923, 928 (2d Cir. 1982)).

## III.
## ARGUMENT

**A.    The Attorneys for the Forsythe and Eddings Plaintiffs Have Conflicts That Prevent Them From Representing Plaintiffs in Those Cases.**

The attorneys in the *Forsythe, Eddings* and *Koslow* Actions, including attorneys from the law firms of Milberg Weiss, Weiss Yourman, Stull, Stull & Brody, Moulton & Gans, Gilman & Pastor and Schiffrin & Barroway, not only attempt to represent conflicting class and derivative interests in these cases,[4] but have also appeared as counsel for plaintiffs against the MFS mutual funds in at least four pending cases[5] alleging market timing and related allegations (the "Market Timing Cases").[6] **In each**

---

[4] *See* Section III(B) *infra*.

[5] *See Trone v. MSF Capital Opportunities Fund, et al.*, 03-cv-12514-NG, *Burstien, IRA v. MFS Global Telecommunications Fund, et al.*, 03-cv-12622-NG; *Adams v. MFS Capital Opportunities Fund, et al.*, 1:03-cv-12536-NG; *Riggs v. Massachusetts Financial Services Co.*, 03-cv-12500-NG. Copies of the complaints in *Trone, Burstein, Adams* and *Riggs* are attached respectively as Exhibits 2, 3, 4 and 5. Those cases have recently been transferred to the District of Maryland pursuant to an MDL Order that has consolidated all market timing cases in that District.

[6] In the Market Timing Cases, the plaintiffs allege that defendants – including MFS Mutual Funds – engaged in a fraudulent scheme which was intended to benefit MFS, involving the "timing" of mutual funds. "Timing" is an investment technique involving short-term, "in and out" trading of mutual fund shares. The technique is designed to exploit inefficiencies in the way mutual fund companies price their shares. "Timing"

of these Market Timing Cases, Counsel in the *Forsythe, Eddings* and *Koslow* Actions are suing the very same mutual funds on whose behalf these actions are purportedly being brought – presenting a clear conflict of interest. *See* Affidavit of Professor Robert H. Aronson ("Aronson Affidavit").

The *Dumond* Plaintiffs do not dispute that the Counsel in the *Forsythe, Eddings* and *Koslow* Actions may be adequate to bring class claims in the Market Timing Cases. Nor do the *Dumond* Plaintiffs dispute that the Counsel in the *Forsythe, Eddings* and *Koslow* Actions may be adequate to assert <u>class claims</u> in those cases. However, in the *Forsythe, Eddings* and *Koslow* Actions, these same attorneys seek to represent plaintiffs in derivative actions on behalf of the same funds that they are suing in the Market Timing Cases.[7] This they cannot do. Simply put, the attorneys cannot represent conflicting class and derivative interests. Aronson Affidavit, ¶3. Essentially, if the *Forsythe* and *Eddings* attorneys were able to attain a favorable outcome for the class plaintiffs in their Market Timing Cases, they would be recovering damages from the same mutual funds that they seek to represent on a derivative basis for the *Forsythe* and *Eddings* Actions. *Hawk Industries, Inc. v. Bausch & Lomb, Inc.,* 59 F.R.D. 619, 614 (S.D.N.Y. 1973) (when law firm is counsel to derivative plaintiff, it cannot furnish adequate representation to legal interests of plaintiff class); Aronson Affidavit, ¶¶4-6. The conflict is palpable and unwaivable.[8]

---

is widely acknowledged to inure to the detriment of long-term shareholders. Because of this detrimental effect, mutual find prospectuses typically state that timing is monitored and that the funds work to prevent it. However, as alleged in the Market Timing Cases, in return for investments that would increase MFS's fees, the MFS funds and MFS entered into undisclosed arrangements which permitted market timing.

[7] The *Forsythe, Eddings* and *Koslow* Plaintiffs cannot now cure this defect by bringing their claims under Section 36(b) of the ICA as a class claim because such claims are exclusively derivative claims that can only be brought on behalf of the Funds.

[8] Even if the conflict were waivable, the question remains whether the *Forsythe, Eddings* and *Koslow* Plaintiffs and the Plaintiffs in the Market Timing Cases, have been informed of the conflict and made an informed decision as to whether to waive the conflict. *See Matter of Eisenhauer*, 426 Mass. 448, 452, 689 N.E.2d 783 (Mass. Jan 14, 1998)

Rule 1.7 of the Massachusetts Rules of Professional Conduct prohibits this result. It mandates:

(a)     A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless:

    (1)     The lawyer reasonably believes the representations will not adversely affect the relationship with the other client; and

    (2)     each client consents after consultation.

(b)     A lawyer shall not represent a client if the representations of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interest, unless:

    (1)     the lawyer reasonably believes the representations will not be adversely affected; and

    (2)     the client contests after consultation. When representation of multiple clients in a single matter is undertaken, the consultation shall include explanation of the implications of the common representation and the advantages and risks involved.

As the Comment accompanying Rule 1.7 makes clear, "a lawyer ordinarily may not act as advocate against a person the lawyer represents in some other matter, even if it is wholly related."

Under Massachusetts Disciplinary Rule 5-105, which was the predecessor to Rule 1.7 of the Rules of Professional Conduct,[9] "it is clear that a conflict arises whenever there is the slightest hint of undivided loyalty." *Bloomenthal v. Halstrom,* No. 95-1773, 1999 WL 1318980 (Mass. Super. Ct. Mar. 16, 1999). With regard to the representation of multiple clients, the Supreme Judicial Court, in *McCourt Co., Inc., v. FPC Properties, Inc.* 386 Mass. 145, 146, 434 N.E.2d 1234 (1982), barred a law firm from representing a client due to a conflict of interest where the firm already represented a plaintiff in a lawsuit against that client. There, the court ruled the conflict prohibited multiple client representation even when the lawsuits were unrelated in subject matter and there was no prejudice

---

[9]The Massachusetts Rules of Professional Conduct became effective on January 1, 1998. Rule 1.7 corresponds to former Massachusetts Rule DR5-105(A) and (C). "[W]hile some of the language in DR5-105 and Rule 1.7 is different, their purpose is the same." *Booth Creek Ski Holdings, Inc., v. ASU Intern., LCC.,* No. 01-4919, 203 WL 21246547 *2, n. 5 (Mass. Super. Ct. May 12, 2003).

to the client. *Id.* In support of its decision, the court reasoned "[t]he undivided loyalty that a lawyer owes to his clients forbids him, without the clients' consent, from acting for client A in one action and at the same time against client A in another." *Id.*

Here, the attorneys for *Forsythe* and *Eddings* impermissibly seek both to sue the MFS Funds and to represent the MFS funds, in the class and derivative actions, respectively. They cannot do both pursuant to Rule 1.7. Aronson Affidavit, ¶3. Recognizing this conflict, courts have refused to permit counsel to represent both derivative and class plaintiffs:

> When a plaintiff brings a derivative suit seeking recovery for the corporation and simultaneously files a class suit for damages against that same corporation, there is an inherent conflict. One court has written, "it is difficult to understand how an attorney can properly represent the interests of the corporation and its present shareholders in a derivative action brought on their behalf, and, at one and the same time, properly represent its present and/or former shareholders in class action against the corporation without compromising the independence of professional judgment and loyalty to these two groups of clients with potentially conflicting interests."

*Koenig v. Benson,* 117 F.R.D. 330, 334 (E.D.N.Y. 1987), *quoting Stull v. Baker,* 410 F. Supp. 1326, 1336-37 (S.D.N.Y. 1976). *See also Bertozzi v. King Louie Intern., Inc.,* 420 F. Supp. 1166, 1179 (D.R.I. 1976) ("there is a substantial question as to whether the attorneys for the Freed plaintiffs can represent them in the derivative suit and the class action without violating the Cannons of Ethics"); *Hawk Industries,* 59 F.R.D. at 624 ("Here, however, co-counsel is bound to pursue two actions to the best of his ability and as vigorously as possible. If both are successful, one action would result in a recovery for the corporation; the other would result in a detriment to the corporation. It is difficult to see how counsel could retain his independence of professional judgment and loyalty to his clients and their interest in both suits.").

The irony of counsel's conflict should not be lost on this Court. In a case where the central charge against the defense is premised on conflicts of interest, it ill-becomes Plaintiffs' counsel to be guilty of the same fault. Because counsel in the *Forsythe* and *Eddings* Actions have sued in the

13

Market Timing Cases, the very funds which they now seek to represent, they should be precluded from serving as derivative counsel in the *Forsythe* and *Eddings* Actions.

**B.      The Are Inherent Conflicts Between the Class and Derivative Claims Asserted by the Forsythe and Eddings Plaintiffs.**

There are inherent conflicts of interest within the *Forsythe* and *Eddings* complaints between class claims and derivative claims asserted therein which prevent the *Forsythe* and *Eddings* Plaintiffs from representing both interests. Simply put, the *Forsythe* and *Eddings* Plaintiffs can not both seek to recover money for themselves personally, and for the Funds derivatively.

As numerous courts have held, named plaintiffs' roles as both class representatives and plaintiffs in a derivative action can present impermissible conflicts of interest because recovery in a class suit could reduce potential recovery in a derivative suit.  For example, in *Kamerman v. Steinberg*, 113 F.R.D. 511, 561 (S.D.N.Y. 1986), the Court held that proposed named plaintiffs were inadequate representatives when their roles in both class and derivative litigation presented an impermissible conflict of interest, because recovery in the class suit could reduce potential recovery in the derivative suit. "Prosecution of both a derivative and class action by plaintiffs Kamerman and Stepak presents an impermissible conflict of interest." *Id.*[10]  *See also Crawford v. Magee*, No. 89-1038-WF, 1993 WL 438463 at *4 (D. Mass. Oct. 12, 1993) (stating in dicta, "[I]n derivative actions, courts look to a variety of factors, including: economic antagonisms between representative

---

[10]This conflict exists even though this is not a limited fund case.  Thus, in *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 117 S. Ct. 2231 (1997), the court found that serious intra-class conflicts precluded the class from meeting the adequacy of representation requirement in an asbestos mass tort action. While the members of the class were united in seeking the maximum possible recovery for their asbestos-related claims, the Supreme Court found that the settlement did more than simply provide a general recovery fund. Rather, as the Third Circuit noted, "it makes important judgments on how recovery is to be allocated among different kinds of plaintiffs, decisions that necessarily favor some claimants over others." *Georgine v. Amchem Products, Inc.*, 83 F.3d 610, 630 (3d Cir. 1996), *aff'd*, 521 U.S. 591, 117 S. Ct. 2231 (1997).

The disparity between the currently injured and exposure-only categories of plaintiffs, and the diversity within each category are not made insignificant by the District Court's finding that petitioners' assets suffice to pay claims under the settlement. Although this is not a "limited fund" case certified under Rule 23(b)(1)(B), the terms of the settlement reflect essential allocation decisions designed to confine compensation and to limit defendants' liability.

*Amchem Products*, 521 U.S. at 595.

and class" and finding that plaintiff's derivative interest would preclude his serving as class representative); *Ryan v. Aetna Life Ins. Co.*, 765 F. Supp. 133, 135 (S.D.N.Y. 1991) (shareholder could not simultaneously pursue derivative and class actions because of conflict of interest); *Brickman v. Tyco Toys, Inc*, 731 F. Supp. 101, 108-09 (S.D.N.Y. 1990) (proposed class and derivative actions present at least a theoretical conflict because substantial recovery on the class claim may reduce the potential recovery on behalf of the corporation on the derivative claim); *Diana v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 75 cv 6194, 1977 WL 1046, *3 (S.D.N.Y. 1977) ("[A]n obvious conflict would arise here if plaintiff were permitted to amend his complaint in order to bring a class action as well as a derivative action.... A plaintiff cannot bring a class action against a corporation and at the same time bring a derivative action on behalf of that corporation"); *Petersen v. Federated Development Co.*, 416 F. Supp. 466, 475 n.6 (S.D.N.Y. 1976) (where plaintiff purports to bring this action in both an individual and derivative capacity, potential conflict of interest exists, with the result that plaintiff must choose between the pursuit of his personal interest and that of the corporation"); *Ruggiero v. American Bioculture, Inc.*, 56 F.R.D. 93, 95 (S.D.N.Y. 1972) ("I fail to see how, on the one hand, [plaintiffs] can vigorously seek recovery on behalf of those who have an equity interest in the corporation and, on the other hand, vigorously seek recovery from the corporation on behalf of those who have no equity interest in the corporation").

The *Dumond* Plaintiffs do not face these debilitating conflicts because their sole interest is in maximizing recovery for the Funds.

## C.   The *Forsythe* and *Eddings* Plaintiffs Do Not Have Standing to Sue On Behalf of the Entire Universe of 112 MFS Mutual Funds.

According to their Complaints, Plaintiff Larry Eddings owns shares or units of MFS Capital Opportunities Fund, MFS Strategic Income Fund, Massachusetts Investors Growth Stock, Massachusetts Investors Trust, MFS Total Return Fund, MFS High Income Fund, and MFS Emerging Growth Fund (*Eddings* Complaint, ¶11), and Plaintiff Eric Forsythe owns shares of Massachusetts Investors Trust (*Forsythe* Complaint, ¶11). However, in an apparent effort to sue first and find clients later, the *Eddings* and *Forsythe* Plaintiffs purport to represent the entire universe of 112 MFS Funds.

In contrast, the *Dumond* Plaintiffs sue only for the benefit of the funds in which those named Plaintiffs own shares.

Under Section 36(a), the *Forsythe* and *Eddings* Plaintiffs lack standing to sue on behalf of over 100 of the funds in the MFS Funds Complex that they do not own (but name as defendants in their complaints), including seven funds owned by the *Dumond* Plaintiffs.[11] Section 36(b) imposes a fiduciary duty on the investment adviser not to charge excessive fees and creates a private right of action by a shareholder, derivatively on behalf of the mutual fund, against the adviser for a breach of this duty. In pertinent part, Section 36(b) states:

> [T]he investment adviser of a registered investment company shall be deemed to have a fiduciary duty with respect to the receipt of compensation for services.... An action may be brought under this subsection by the Commission, or <u>by a security holder of such registered investment company on behalf of such company</u>, against such investment adviser ... for breach of fiduciary duty in respect of such compensation or payments paid by such registered investment company....

15 U.S.C. §80a-35(b) (emphasis added). "Pursuant to 15 U.S.C. §80a-35(b), plaintiffs do not have standing to bring a §36(b) claim on behalf of investment companies other than the funds in which they are securities holders." *Green v. Nuveen Advisory Corp.*, 186 F.R.D. 486 (N.D. Ill. 1999); *Olesh v. Dreyfus Corp.*, No. CV-94-1664 (CPS), 1995 WL 500491 (E.D.N.Y. Aug. 8, 1995) (rejecting plaintiffs' efforts to maintain action under §36(a) not only on behalf of funds owned by plaintiffs, but on behalf of "the Dreyfus family of funds"); *Dandorph v. Fahnestock & Co.*, 462 F. Supp. 961, 965 (D. Conn. 1979) ("plaintiff who does not hold stock in the investment company lacks standing to sue under the Investment Company Act").

Even in the class context, courts have also held that plaintiffs lack standing to maintain class claims on behalf of purchasers of mutual funds other than the mutual fund which the plaintiffs actually own. *See Nenni v. Dean Witter Reynolds, Inc.*, Civil Action No. 98-12454-REK, Memorandum and Order, Slip Op. At 5 (D. Mass. Sept. 29, 1999) (plaintiff has standing to bring claims for the shares in the four mutual funds that he actually holds; plaintiff can only create a class of people who have

---

[11]The seven funds, which are owned by the *Dumond* Plaintiffs but are not owned by any plaintiffs in the *Forsythe* or *Eddings* Actions are: MFS Government Securities Fund, MFS Government Limited Maturity Fund, MFS Mid Cap Growth Fund, MFS Research Fund, MFS Value Fund, MFS Municipal Income Fund, and MFS Strategic Growth Fund.

purchased shares of same mutual funds that he actually holds). *See also Ramos v. Patrician Equities Corp.*, 765 F. Supp. 1196, 1199 (S.D.N.Y. 1991) (named plaintiff had standing to sue a defendant accounting firm in connection with his purchase of a limited partnership interest, but he did not have standing to sue that defendant with respect to the accounting firm's work for 19 other limited partnerships); *In re Colonial Ltd. Partnership Litig.*, 854 F. Supp. 64, 82-83 (named plaintiff lacked standing to bring claims on behalf of purchasers of limited partnership interests in which named plaintiff had not invested); *Spira v. Nick*, 876 F. Supp. 553, 52 (S.D.N.Y. 1995) (plaintiff does not have standing to seek relief on behalf of the investors in the entities in which he does not claim an interest).

Thus, the *Forsythe* and *Eddings* Plaintiffs only have standing to sue on behalf of the funds that they hold. Only four of the *Eddings* Plaintiff's funds,[12] and none of the *Forsythe* Plaintiff's funds, are represented in the *Dumond* Plaintiffs' Complaint.

**D.    The _Dumond_ Plaintiffs' Counsel Are Experience in Litigation of This Type.**

The *Dumond* Plaintiffs have assembled a team of counsel that has specific expertise in mutual fund excessive fee litigation and with handling complex litigation of this type. Keller Rohrback LLP, based in Seattle, Washington, and Shapiro Haber & Urmy LLP are also well known for their successful pursuit of large-scale, multiparty matters involving securities, ERISA, antitrust, and other complex litigation matters.

Most recently, Keller Rohrback LLP has been appointed lead or co-lead counsel in more than a dozen nationally recognized ERISA cases, including *Tittle, et al. v. Enron Corp., et al.*, No. H01-CV-3913 (S.D. Tex.), and *In re WorldCom, Inc. ERISA Litig.*, No. 02-Civ.4816 (DLC) (S.D.N.Y.). In addition, in the Exxon Valdez Oil Spill Litigation, *In re The Exxon Valdez*, No. A89-095 (Alaska), Keller Rohrback, played a leadership role during discovery and at trial, and was selected to serve as administrator of two settlement funds. After a three month trial, plaintiffs obtained the largest punitive damages verdict in United States history (at that time): $5 billion.

---

[12]The overlapping funds in the *Dumond* and *Eddings* Complaints are: MFS Capital Opportunities Fund, Massachusetts Investors Growth Stock, MFS Total Return Fund, and MFS Emerging Growth Fund.

Shapiro Haber & Urmy LLP has represented investors in many notable instances of financial fraud, including Molten Metal Technology, Inc., Waste Management, Inc., Pegasystems, Inc., Centennial Technologies, WebSecure, Kendall Square Research Corp., Cambridge Biotech Corp., Kurzweil Applied Intelligence and Bank of New England. The firm has also litigated cases against such major companies as Fidelity Investments, John Hancock Insurance Company, Digital Equipment Corp., Bank of Boston, Fleet Bank, Lotus Development Corp., Polaroid Corp., and others.

In addition, the *Dumond* Plaintiffs are represented by the experienced and nationally recognized law firms of Johnson, Pope, Bokor, Ruppel & Burns, LLP, based in Tampa, Florida, and Richardson, Patrick, Westbook & Brickman LLC of Charleston, South Carolina, both of which have specific expertise with claims of this nature.

## IV.
## CONCLUSION

For the reasons stated above, and most significantly because the *Eddings* and *Forsythe* Plaintiffs' and their counsel have prohibiting conflicts, the *Dumond* Plaintiffs respectfully request that this Court deny the pending motions to consolidate and appoint co-lead counsel and allow the *Dumond* Action to proceed independently, prosecuted by the undersigned counsel.

Dated: July 21, 2004

Respectfully submitted:

SHAPIRO HABER & URMY LLP

*Michelle H. Blauner*

Edward F. Haber BBO #215620
Michelle H. Blauner BBO #549049
53 State Street
Boston, MA 02109
Telephone: (617) 439-3939
Facsimile: (617) 439-0134

Lynn Lincoln Sarko
Michael D. Woerner
Gretchen F. Cappio
KELLER ROHRBACK, L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
Telephone: (206) 623-1900
Facsimile: (206) 623-3384

18

Ron Kilgard
Gary Gotto
KELLER ROHRBACK P.L.C.
National Bank Plaza
3101 North Central Avenue, Suite 900
Phoenix, AZ 85012
Telephone: (602) 248-0088
Facsimile: (602) 248-2822

Michael J. Brickman
James C. Bradley
Nina H. Fields
RICHARDSON,   PATRICK,   WESTBROOK   &
BRICKMAN, LLC
174 East Bay Street
Charleston, SC 29401
Telephone: (842) 727-6500
Facsimile: (843) 727-3103

Guy M. Burns
Jonathan S. Coleman
Becky Ferrell-Anton
JOHNSON, POPE, BOKOR, RUPPEL & BURNS,
L.L.P.
100 North Tampa Street, Ste. 1800
Tampa, FL 33602
Telephone: (813) 225-2500
Facsimile: (813) 223-7118

Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

I, Michelle H. Blauner, hereby certify that a true copy of the above documents was served upon the attorney of record for each party by hand this 21st day of July, 2004.

_Michelle H. Blauner_
Michelle H. Blauner