# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| ERIC FORSYTHE, Individually And On Behalf Of All Others Similarly Situated, | ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 04cv10584 (GAO) |
| vs. | ) ) | |
| SUN LIFE FINANCIAL INC., et al., | ) ) | |
| Defendants. | ) ) | |
| LARRY R. EDDINGS, Individually And On Behalf Of All Others Similarly Situated, | ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 04cv10764 (GAO) |
| vs. | ) ) | |
| SUN LIFE FINANCIAL INC., et al., | ) ) | |
| Defendants. | ) ) | |
| RICHARD KOSLOW, Individually And On Behalf Of All Others Similarly Situated, | ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 04cv11019 (GAO) |
| vs. | ) ) | |
| SUN LIFE FINANCIAL INC., et al., | ) ) | |
| Defendants. | ) ) | |

**[caption continues on next page]**

**MEMORANDUM OF LAW IN SUPPORT OF THE AMENDED MOTION FOR APPOINTMENT OF CO-LEAD PLAINTIFFS, APPOINTMENT OF CO-LEAD COUNSEL, APPOINTMENT OF LIAISON COUNSEL, AND REPLY BRIEF IN SUPPORT OF *FORSYTHE* AND *EDDINGS* MOTION FOR CONSOLIDATION**

MARCUS DUMOND, HENRY BERDAT,　　）
STUART V. And ROSEMARY STURGESS,　）
KATHLEEN BLAIR, WILLIAM And MARGIE　）
BOOTH, KAREN PEACH, And RICHARD And　）　　Civil Action No. 04cv11458 (GAO)
EVELYN KELLER,　　　　　　　　　　　）
　　　　　　　　　　　　　　　　　　　）
　　　　　　　　　　　　　Plaintiff,　　）
　　　　　　　　　　　　　　　　　　　）
　　　　　　vs.　　　　　　　　　　　　）
　　　　　　　　　　　　　　　　　　　）
MASSACHUSETTS FINANCIAL SERVICES　　）
COMPANY And MFS FUND DISTRIBUTORS,　）
INC.,　　　　　　　　　　　　　　　　）
　　　　　　　　　　　　　　　　　　　）
　　　　　　　　　　　　Defendants.　　）

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................ ii

PRELIMINARY STATEMENT ........................................................................ 1

ARGUMENT ................................................................................................... 2

POINT 1
    THE COURT SHOULD APPOINT PLAINTIFFS AS CO-LEAD PLAINTIFFS
    AND THE LAW FIRMS OF MILBERG WEISS, WEISS & YOURMAN,
    AND BERNSTEIN LITIOWITZ AS CO-LEAD COUNSEL ................................. 2

POINT II
    A SINGLE COUNSEL PURSUING CLASS AND DERIVATIVE CLAIMS
    DOES NOT CONSTITUTE A *PER SE* CONFLICT OF INTEREST ................................... 5

   A. There Is No Disqualifying Conflict Of Interest And Consolidation Is
       Appropriate Here Because Both The Class Claims And The Derivative
       Claims Involve Proof Of The Same Nucleus Of Facts ....................................... 5

   B. There Is No Inherent Conflict Of Interest And Counsel For *Forsythe*
       And *Eddings* Can Assure This Court That They Will Adequately
       Represent The Interests Of All Shareholders While At The Same Time
       Enforcing The Rights Of The Funds ................................................................. 8

POINT III
    THE PLAINTIFFS HAVE STANDING TO SUE FOR
    THE BENEFIT OF ALL FUNDS ........................................................................ 11

   A. Plaintiffs Have Standing To Pursue Class and Derivative Actions
       Against All MFS Funds .................................................................................. 11

   B. A Court Should Wait To Address Standing Issues Until After Deciding
       Class Certification Issues ............................................................................... 15

POINT IV
    THE ACTIONS SHOULD BE CONSOLIDATED TO BEST
    SERVE THE INTERESTS OF JUDICIAL ECONOMY ...................................... 16

   A. There Are Common Questions Of Law And Fact Pending Before The
       Court Making Consolidation Appropriate ...................................................... 16

   B. The *Dumond* Claims Are Encompassed Within the *Forsythe* And
       *Eddings* Actions, Thus Making Consolidation Appropriate ............................ 19

CONCLUSION ................................................................................................. 20

# TABLE OF AUTHORITIES

Page

## FEDERAL CASES

Alves v. Harvard Pilgrim Health Care, Inc.,
 204 F. Supp. 2d 198 (D. Mass. 2002) ...............................................................11, 13

Amchem Products, Inc. v. Windsor,
 521 U.S. 591 (1997)....................................................................................................15

Bertozzi v. King Louie International, Inc.,
 420 F. Supp. 1166 (D.R.I. 1976)...............................................................................6, 7

Colonial Ltd. Partnership Litig.,
 854 F. Supp. 64 (D. Conn. 1994) .................................................................................15

Daily Income Fund, Inc. v. Fox,
 464 U.S. 523 (1984)....................................................................................................11

Dandorph v. Fahnestock & Co.,
 462 F. Supp. 961 (D. Conn. 1979)................................................................................15

In re Dayco Corp. Derivative Sec. Litig.,
 102 F.R.D. 624 (S.D. Ohio 1984)..............................................................................6, 9

In Re Enron Corp. Sec., Derivative & "ERISA" Litig.,
 2004 U.S. Dist. LEXIS 8158 (S.D. Tex. 2004) ...........................................................12

Fallick v. Nationwide Mut. Ins. Co.,
 162 F.3d 410 (6th Cir. 1998) ...............................................................................13, 14

Green v. Nuveen Advisory Corp.,
 186 F.R.D. 486 (N.D. Ill. 1999)...................................................................................15

Haas v. Pittsburgh Nat'l Bank,
 526 F.2d 1083 (3d Cir. 1975)........................................................................................12

Hawk Industries, Inc. v. Bausch & Lomb, Inc.,
 59 F.R.D. 619 (S.D.N.Y. 1973) ...............................................................................5, 6

Heilbrunn v. Hanover Equities Corp.,
 259 F. Supp. 936 (S.D.N.Y. 1966) ..............................................................................6

J. I. Case Co. v. Borak,
 377 U.S. 426 (1964)......................................................................................................8

Johnson v. Celotex Corp.,
    899 F.2d 1281 (2d Cir. 1990) ................................................................16

Kamen v. Kemper Fin. Servs.,
    500 U.S. 90 (1991) ...............................................................................11

Kamerman v. Steinberg,
    113 F.R.D. 511 (S.D.N.Y. 1986) ............................................................9

Koenig v. Benson,
    117 F.R.D. 330 (E.D.N.Y. 1997) ............................................................6

Krantz v. Fidelity Mgmt. & Research Co.,
    98 F. Supp. 2d 150 (D. Mass. 2000) .....................................................11

La Mar v. H & B Novelty & Loan Company,
    489 F.2d 461 (9th Cir. 1973) ................................................................12

Lamphere v. Brown University,
    71 F.R.D. 641 (D.R.I. 1976) .................................................................10

Lujan v. Defenders of Wildlife,
    504 U.S. 555 (1992) ..............................................................................20

Lujan v. National Wildlife Federation,
    497 U.S. 871 (1990) ..............................................................................20

In re MobileMedia Sec. Litig.,
    28 F. Supp. 2d 901 (D.N.J. 1998) .........................................................14

Moore v. Comfed Sav. Bank,
    908 F.2d 834 (11th Cir. 1990) ..............................................................13

Olesh v. Dreyfus Corp.,
    1995 U.S. Dist. LEXIS 21421 (E.D.N.Y. Aug. 8, 1995).........................19

Ortiz v. Fibreboard Corp.,
    527 U.S. 815 (1999) ..............................................................................15

Payton v. County of Kane,
    308 F.3d 673 (7th Cir. 2002) ............................................................12, 15

Petersen v. Federated Development Co.,
    416 F. Supp. 466 (S.D.N.Y. 1976) ..........................................................7

Ramos v. Patrician Equities Corp.,
    765 F. Supp. 1196 (S.D.N.Y. 1991).......................................................15

Scheuer v. Rhodes,
    416 U.S. 232 (1974)..........................................................................................19

Schulman v. Lumenis, Ltd., No. 02 Civ. 1989,
    2003 U.S. Dist. LEXIS 10348 (S.D.N.Y. June 17, 2003)......................................16

Spira v. Nick,
    876 F. Supp. 553 (S.D.N.Y. 1995) ......................................................................15

Stull v. Baker,
    410 F. Supp. 1326 (S.D.N.Y. 1976)......................................................................7

Tannenbaum v. Zeller,
    552 F.2d 402 (2d Cir. 1977)......................................................................10, 11, 14

In re Transocean Tender Offer Sec. Litig.,
    455 F. Supp. 999 (N.D. Ill. 1978) ......................................................................8, 9

Wade v. Johnson Controls, Inc.,
    693 F.2d 19 (2d Cir. 1982)....................................................................................19

Yamamoto v. Omiya,
    564 F.2d 1319 (9th Cir. 1977) ...............................................................................8

## STATE CASES

Olesh v. Dreyfus Corp.,
    1995 WL 500491 (E.D.N.Y. Aug. 8, 1995)...........................................................15

Weld v. Glaxo Wellcome, Inc.,
    434 Mass. 81 (2001) .............................................................................................12

## DOCKETED CASES

Aronson v. McKesson HBOC, Inc.,
    No. 99-CV-20743 (RMW)........................................................................................4

In re Bristol-Myers Squibb Sec. Litig.,
    No. 02-CV-2251 (LAP) ..........................................................................................4

In re Cendant Corp. Litig.,
    No. 98-CV-1664 (WHW) ........................................................................................4

In re Exxon Valdez,
    No. A89-095 Civ. (D. Alaska) ................................................................................3

In re Initial Public Offering Sec. Litig.,
    Master File No. 21 MC 92 (S.D.N.Y.)....................................................................3

In re Lucent Technologies, Inc. Sec. Litig.,
  No. 00-CV-621 (JAP) ...................................................................................4

In re NASDAQ Market-Makers Antitrust Litig.,
  No. 94-3996 (S.D.N.Y.) .................................................................................3

Nenni v. Dean Witter Reynolds, Inc.,
  No. 98-12454 (REK) (D. Mass. Sept. 9, 1999) ...........................................15

In re United Telecomm., Inc. Sec. Litig.,
  No. 90-2251-0 (D. Kan.) ................................................................................3

In re WorldCom, Inc. Sec. Litig.,
  No. 02-CV-3288 (DLC) .................................................................................4

## FEDERAL STATUTES

15 U.S.C. § 80a-35(b) ..........................................................................................11

26 U.S.C. §457 ......................................................................................................3

Fed. R. Civ. P. 23(a) ...........................................................................................12

Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C.S. § 1961 ....................15

## PRELIMINARY STATEMENT

Plaintiffs Eric Forsythe ("Forsythe"), Larry R. Eddings ("Eddings") and the City of Chicago Deferred Compensation Plan ("Chicago") (collectively the "Plaintiffs") hereby move this Court for an Order (attached hereto):  (i) appointing Forsythe, Eddings and Chicago as Co-Lead Plaintiffs; (ii) approving Plaintiffs' selection of Milberg Weiss Bershad & Schulman LLP ("Milberg Weiss"), Weiss & Yourman and Bernstein Litowitz Berger & Grossmann LLP ("Bernstein Litowitz") as Co-Lead Counsel to oversee the above-captioned actions (the "Actions"); and (iii) approving Plaintiffs' selection of Moulton & Gans, P.C. as Liaison Counsel. Milberg Weiss, Bernstein Litowitz and Weiss & Yourman all have substantial experience in the prosecution of shareholder and securities class and derivative actions, and have the resources necessary to efficiently conduct this litigation.  All three firms are also well-qualified to act as Co-Lead Counsel by virtue of their track record in the area of class action litigation.

Plaintiffs additionally submit their Reply Memorandum In Support of Plaintiffs' Motion For Consolidation, filed May 14, 2004, and Notice Of Subsequently Filed Cases Subject To The Motion For Consolidation, filed July 12, 2004, seeking consolidation of the Actions.  On July 21, 2004, counsel for *Dumond* submitted a Memorandum of Law In Opposition To Motions For Consolidation And For Appointment Of Co-Lead Counsel (hereinafter referred to as the "*Dumond* Memo") indicating that the *Dumond* case should not be consolidated with the Plaintiffs' cases.  The reasons stated for the opposition are the following:  (i) counsel for the Plaintiffs face disqualifying conflicts of interest; (ii) there are inherent conflicts in the Plaintiffs' representation of competing class and derivative claims; (iii) the Plaintiffs lack standing to sue on behalf of the overwhelming majority of the 112 MFS mutual funds named in their suit; and (iv) the causes of action asserted by the Plaintiffs are substantially different from those raised in the *Dumond* complaint in many fundamental ways.  *Dumond* Memo at 2-3.

These arguments are without merit.  Plaintiffs' counsel can represent both class and derivative claims.  Courts have routinely held that there is not a *per se* conflict of interest where, as here, counsel can show that the class and derivative actions are based upon proof of the same nucleus of facts and counsel can show their ability to attack all fronts with equal vigor. Additionally, Chicago is the Lead Plaintiff in one of the Market Timing cases, giving more credence to Plaintiffs' argument that their counsel will be looking out for the best interests of both groups, namely the plaintiffs in the Timing cases and the plaintiffs in these fee cases. Finally, because all the funds work together as one unitary organization, and are juridically linked, Plaintiffs have standing with respect to all the funds.

In short, the *Dumond* plaintiffs seek to carve out a leadership position for themselves by attempting to differentiate their claims from the claims in *Forsythe, Eddings* and *Koslow*.  The claims and underlying facts are essentially identical in all four cases and since counsel in three of the four cases have agreed to consolidation and a leadership structure, *Dumond* should be consolidated as well.  As such, due to the reasons more fully stated herein, consolidation of the Actions is appropriate and will best serve the interests of judicial economy and will avoid unnecessary costs or delay.

## ARGUMENT

### POINT 1

### THE COURT SHOULD APPOINT PLAINTIFFS AS CO-LEAD PLAINTIFFS AND THE LAW FIRMS OF MILBERG WEISS, WEISS & YOURMAN, AND BERNSTEIN LITIOWITZ AS CO-LEAD COUNSEL

Plaintiffs hereby amend their prior Motion For Appointment Of Co-Lead Counsel And Appointment of Liaison Counsel for the purpose of adding Chicago as a lead plaintiff and proposed class representative, and its counsel, Bernstein Litowitz, as Co-Lead Counsel. Chicago, a deferred compensation plan within the meaning of 26 U.S.C. §457, has a financial

interest in excess of $40 million in the MFS mutual funds during the class period and seeks to prosecute this Action on behalf of the class.  Because of this substantial interest, Chicago seeks to participate in the leadership of this action to protect the interests of investors harmed by the wrongful conduct alleged in the Actions.  Plaintiffs Forsyth, Eddings and Koslow consent to the inclusion of Chicago, and believe that its active participation in these actions will benefit the class.

This Court should also appoint Chicago's counsel, Bernstein Litowitz, as well as the law firms of Milberg Weiss and Weiss & Yourman as Co-Lead Counsel of the Actions.  Milberg Weiss, Weiss & Yourman and Bernstein Litowitz have substantial experience in the prosecution of shareholder and securities class and derivative actions, and have the resources necessary to efficiently conduct this litigation.  *See* Exhibit A, Bernstein Litowitz Firm Resume.[1]  All three firms are well-qualified to act as Co-Lead Counsel by virtue of their resources, experience and track record in the area of class action litigation.  Milberg Weiss has spearheaded some of the largest and most complex class actions in history, such as *In re NASDAQ Market-Makers Antitrust Litig.*, Civ. No. 3996 (S.D.N.Y.), *In re Initial Public Offering Sec. Litig.,* Master File No. 21 MC 92 (S.D.N.Y.), and *In re Raytheon Co. Sec. Litig.*, 99-12142-PBS (D. Mass).[2]  Weiss & Yourman has been commended by several courts for its expertise and ability in prosecuting such cases as *In re United Telecomm., Inc. Sec. Litig.*, No. 90-2251-0 (D. Kan.), *In In re*

---

[1]   Exhibit A is attached to the Declaration of Janine L. Pollack In Support Of The Amended Motion For Appointment Of Co-Lead Plaintiffs, Appointment Of Co-Lead Counsel And Appointment Of Liaison Counsel (the "Pollack Decl."), submitted contemporaneously herewith.  The Milberg Weiss and Weiss & Yourman firm resumes were previously submitted with the Declaration of Kim E. Levy In Support Of The Motion For Consolidation which was filed on May 14, 2004.

[2]   Counsel for *Dumond* cite *In re Exxon Valdez,* No. A89-095 Civ. (D. Alaska) as a leading case for which they had a leadership role.  *Dumond* Memo at 17.  Plaintiffs' note that in *In re Exxon Valdez* and *In re Exxon Valdez Oil Spill Litig.,* 3 AN-89-2533 (Alaska Superior Court, Third Judicial Dist.), Milberg Weiss was a member of the Plaintiffs' Coordinating Committee and co-chair of Plaintiffs' Law Committee.

*VeriFone Inc. Sec. Litig.*, No. C-93-3640 DCJ (N.D. Cal.), and *In re Western Digital Sec. Litig.*,

SACV 91-375(A) GLT (RWRx) (C.D. Cal.).  Likewise, Bernstein Litowitz has served as lead

counsel in some of the largest securities fraud class actions in history, including *In re WorldCom,*

*Inc. Sec. Litig.*, No. 02-CV-3288 (DLC); *In re Bristol-Myers Squibb Sec. Litig.* No. 02-CV-2251

(LAP); *In re Cendant Corp. Litig.*, No. 98-CV-1664 (WHW) (D.N.J.); *Aronson v. McKesson*

*HBOC, Inc.*, No. 99-CV-20743 (RMW); and *In re Lucent Technologies, Inc. Sec. Litig.*, No. 00-

CV-621 (JAP) (D.N.J.).  Accordingly, the Court can rest assured that Milberg Weiss, Weiss &

Yourman and Bernstein Litowitz will similarly be capable of harmonizing the efforts of all

counsel involved in this litigation.

    The law firm of Moulton & Gans, P.C. should be appointed as Liaison Counsel.  *See*

Exhibit B, the Moulton & Gans, P.C. Firm Resume.[3]  Moulton & Gans, P.C. has significant

experience, and was appointed special liaison counsel in *In re Raytheon Company Sec. Litig.,* 99-

12142-PBS (D. Mass).  The appointment will promote judicial economy and is consistent with

the recommendations of § 10.22 of the Manual for Complex Litigation (4th ed. 2004) which

discusses the role of counsel in multiparty litigation.

---

[3] Exhibit B is attached to the Pollack  Decl.

## POINT II

### A SINGLE COUNSEL PURSUING CLASS AND DERIVATIVE CLAIMS DOES NOT CONSTITUTE A *PER SE* CONFLICT OF INTEREST

**A.    There Is No Disqualifying Conflict Of Interest And Consolidation Is Appropriate Here Because Both The Class Claims And The Derivative Claims Involve Proof Of The Same Nucleus Of Facts**

Counsel for *Dumond* claim that Plaintiffs' counsel have conflicts that disqualify them from representing the plaintiffs in the *Forsythe* and *Eddings* cases. *Dumond* Memo at 10. The *Dumond* counsel claim that Plaintiffs' counsel's representing other plaintiffs against the MFS mutual funds in at least four pending cases alleging market timing and related allegations (the "Market Timing Cases") has created a conflict of interest, because in the Market Timing Cases, Plaintiffs' counsel is "suing the very same mutual funds on whose behalf these [fee cases] are purportedly being brought." *Dumond* Memo at 10-11. The attorneys for *Dumond* further claim "that the attorneys [for *Forsythe* and *Eddings*] cannot represent conflicting class and derivative claims." *Dumond* Memo at 11 (citing *Hawk Industries, Inc. v. Bausch & Lomb, Inc.*, 59 F.R.D. 619, 623-24 (S.D.N.Y. 1973)) (emphasis added). The *Dumond* counsel's argument is undermined by the fact that plaintiff Chicago is the Lead Plaintiff in the MFS Market Timing case, with Bernstein Litowitz representing them in both the Market Timing case and this case, and therefore counsel will inevitably be looking out for the best interests of the plaintiffs in both groups of cases. Additionally, the *Dumond* counsel misinterpret the law because courts have held that not only is there no *per se* conflict, but a single counsel *can* represent both class and derivative actions when both are based upon proof of the same nucleus of facts and counsel can attack all fronts with equal vigor.

In *In re Dayco Corp. Derivative Sec. Litig.*, 102 F.R.D. 624, 630 (S.D. Ohio 1984), the court stated that the distinction between individual and derivative shareholder suits is often only "theoretical."  In the words of the *Dayco* court:

> In […] *Hawk Industries, Inc. v. Bausch & Lomb, Inc.*, 59 F.R.D. 619, 623-24 (S.D.N.Y. 1973), the Court[] held that stockholders pursuing individual claims could not also serve as representatives of a class of derivative plaintiffs.  *These decisions plainly relied on the theoretical distinction between individual and derivative stockholder suits.*  That distinction is just that, a theoretical one, not rooted in the realities of most individual and derivative suits, which usually are "equally contingent upon the proof of the same nucleus of facts." [*Bertozzi v. King Louie International, Inc.*, 420 F. Supp. 1166, 1180 (D.R.I. 1976)] (emphasis added).  "The asserted 'antagonism' between the primary and derivative actions pressed herein is no more than a 'surface duality.'  *Id.*

The *Dayco* court held that a single counsel's having represented an individual plaintiff in direct litigation against the corporation did not disqualify the same counsel from prosecuting a [subsequent] derivative action against that corporation.  *Id.* at 633.  In so holding, the court recognized that arguments such as those advanced here by the *Dumond* plaintiffs have only a "surface appeal."  *Id*. at 630.  As the *Dayco* court elaborated, "the Court agrees with Plaintiff that the case law is virtually unanimous in holding that one counsel can represent a stockholder bringing *both* an individual *and* a derivative action."  *Id.* (emphasis in original).  Following Judge Frankel's analysis in *Heilbrunn v. Hanover Equities Corp.*, 259 F. Supp. 936, 939 (S.D.N.Y. 1966), the *Dayco* court further emphasized that the "theoretical conflict of interest [between the individual and derivative actions] does not justify a per se test prohibiting joinder of such actions."  *Dayco*, 102 F.R.D. at 630.

The attorneys for *Dumond* rely on *Koenig v. Benson*, 117 F.R.D. 330, 334 (E.D.N.Y. 1997), arguing that "attorneys for *Forsythe* and *Eddings* impermissibly seek both to sue the MFS Funds and to represent the MFS Funds, in the class and derivative actions, respectively.  They

cannot do both[.]" *Dumond* Memo at 13.  While the Court in *Koenig* did state that "[w]hen a plaintiff brings a derivative suit seeking recovery for the corporation and simultaneously files a class suit for damages against that same corporation, there is an inherent conflict," *Koenig*, at 334, it also made clear that counsel pursuing simultaneous direct and derivative actions did not create a *per se* conflict of interest.  *Id.*  Instead, a court must determine on a case-by-case basis whether "the circumstances of a particular case may give rise to a potential conflict."  *Id.*

As indicated in *Petersen v. Federated Development Co.*, 416 F. Supp. 466, 475 n.6 (S.D.N.Y. 1976), to avoid the potential conflict of interest, a party bringing suit in an individual capacity can also bring a derivative suit by showing that he can "fairly and adequately represent the interests of the shareholders . . . in enforcing the right of the corporation."  *Id.*  Further analyzing this point, the court in *Bertozzi* certified a class action upon finding that the plaintiffs' success in prosecuting both class and derivative actions was "equally contingent upon the proof of the same nucleus of facts" and that "they and their counsel can be expected to attack all fronts with equal vigor."  *Bertozzi*, 420 F. Supp. at 1179-80.[4]

In the Actions subject to the proposed consolidation, the class and derivative plaintiffs seek to prove the "same nucleus of facts" because they aim to show that the defendants charged excessive fees, and/or retained excessive profits by failing to pass on to shareholders the benefits of economies of scale.  As such, counsel for *Forsythe* and *Eddings* can assure this Court that they will adequately represent the interests of all shareholders while at the same time enforcing the rights of the funds.

---

[4]  Counsel for *Dumond* also quote *Stull v. Baker*, 410 F. Supp. 1326, 1336-37 (S.D.N.Y. 1976) to argue that an inherent conflict exists here, but this language is dictum.  The court's misgivings about the appropriateness of simultaneously bringing class and derivative claims were not essential to its legal decision to approve the class settlement and dismiss the derivative claims.  *Id.*

Finally, counsel for *Dumond* submitted the Affidavit of Professor Robert H. Aronson ("Aronson Affidavit") to support their argument that there is a conflict of interest. The Aronson Affidavit states, in pertinent part, that there is a "conflict of interest in simultaneously prosecuting the class and derivative cases…[and] the scenario presents a disqualifying conflict that likely cannot be waived." Aronson Affidavit at 3. In his analysis though, Professor Aronson ignores the fact that courts have addressed the issue and have held that there is no *per se* conflict of interest.[5] For the reasons discussed throughout this Memorandum, under the facts of this case, there is no conflict and thus Plaintiffs' counsel is permitted to represent both the derivative and class claims.

**B.** **There Is No Inherent Conflict Of Interest And Counsel For *Forsythe* And *Eddings* Can Assure This Court That They Will Adequately Represent The Interests Of All Shareholders While At The Same Time Enforcing The Rights Of The Funds**

Counsel for *Dumond* state that "[t]here are inherent conflicts of interest within the *Forsythe* and *Eddings* complaints between class claims and derivative claims asserted therein which prevent the *Forsythe* and *Eddings* Plaintiffs from representing both interests," *Dumond* Memo at 14, but fail to address that "[i]t is well-settled that shareholders have the right to bring direct and derivative actions simultaneously." *In re Transocean Tender Offer Sec. Litig.*, 455 F. Supp. 999, 1014 (N.D. Ill. 1978) (citing *J. I. Case Co. v. Borak*, 377 U.S. 426, 431 (1964)); *Yamamoto v. Omiya*, 564 F.2d 1319, 1326 (9th Cir. 1977) (explicitly recognizing the right of a shareholder to bring both direct and derivative actions).

---

[5] Counsel for *Dumond* argue that even if the conflict was waivable, the question remains whether the Plaintiffs have "been informed of the conflict and made an informed decision as to whether to waive the conflict." *Dumond* Memo at 11, n.8. Because Plaintiffs' counsel can fairly and adequately represent the interests of both the class claims and the derivative claims, there is no conflict. Furthermore, since there is no conflict, Rule 1.7 of the Massachusetts Rules of Professional Conduct and Massachusetts Disciplinary Rule 5-105 do not prohibit Plaintiffs' counsel from representing both the derivative and class claims, and no waiver is necessary. *Dumond* Memo at 12.

Counsel for *Dumond* rely on *Kamerman v. Steinberg*, 113 F.R.D. 511, 516 (S.D.N.Y. 1986) in arguing that an inherent conflict exists and claim that "plaintiffs' roles as both class representatives and plaintiffs in a derivative action can present impermissible conflicts of interest because recovery in a class suit could reduce potential recovery in a derivative suit." *Dumond* Memo at 14.  The court in *Kamerman* held that an impermissible conflict resulted from the proposed lead plaintiffs' pursuing class and derivative actions in that case, but also stated that "[c]ourts … have recognized that suing in both an individual and derivative capacity presents a substantial *potential* for conflict," demonstrating that there is not a *per se* rule prohibiting such representation.  *Id.* (emphasis added).  As discussed above, Plaintiffs' counsel can assure this Court that they will adequately represent the interests of all shareholders while at the same time enforcing the rights of the funds.

Furthermore, the *Transocean* court noted that, "there is always a *theoretical* conflict of interest in situations where a plaintiff in a single lawsuit seeks redress not only on behalf of the corporation but also from the corporation." *Transocean* , 455 F. Supp. at 1014 (emphasis added).  *See also Dayco*, 102 F.R.D. at 630 (noting that "there may be a different result […] if the potential conflict of interest ripens into an actual conflict").  However, the *Transocean* court concluded that "the great weight of authority rejects a *per se* rule prohibiting such representation, and simultaneous prosecutions have been permitted where the asserted 'antagonism' between the primary and derivative actions is merely a 'surface duality.'" *Id.* (citing *Bertozzi*, at 1179-80).  As explained by *Transocean*, a surface duality is all that is present here, because both class and derivative actions are equally contingent upon the proof of the same nucleus of facts.

The *Dumond* Memo similarly argues that "the *Forsythe* and *Eddings* Plaintiffs can not both seek to recover money for themselves personally, and for the Funds derivatively." *Dumond*

9

Memo at 14.  This similar argument was rejected by the court in *Bertozzi,* relying on *Lamphere*

*v. Brown University*, 71 F.R.D. 641 (D.R.I. 1976).  In *Lamphere*, the court stated:

> "[O]nly a conflict that goes to the very subject matter of the
> litigation will defeat a party's claim of representative status."  7
> Wright & Miller, [Federal Practice and Procedure: Civil], § 1768 at
> 639. . . . *There is no conflict of interest among class members
> regarding [the] central issue [of liability]* . . . . The potential
> conflict troubling the defendants can arise only at the remedy stage
> of litigation, and only if the basic question of the defendants'
> liability is first resolved in the plaintiffs' favor. . . . If the potential
> conflict  . . . should materialize when and if remedy proceedings
> are reached in this case, Rule 23 gives this Court sufficient
> flexibility to take appropriate corrective measures at that time.

*Id.* at 650 (emphasis added).

Additionally, there is no conflict because a mutual fund is not like a typical corporation,

and any damages that are awarded derivatively would ultimately belong to the shareholders of

the fund.  As explained in *Tannenbaum v. Zeller*, 552 F.2d 402, 405-06 (2d Cir. 1977):

> The mutual fund industry is in many ways unique. […] *A mutual
> fund is a "mere shell," a pool of assets consisting mostly of
> portfolio securities that belongs to the individual investors
> holding shares in the fund.* The management of this asset pool is
> largely in the hands of an investment adviser, an independent
> entity which generally organizes the fund and provides it with
> investment advice, management services, and office space and
> staff. The adviser either selects or recommends the fund's
> investments and rate of portfolio turnover, and operates or
> supervises most of the other phases of the fund's business. The
> adviser's compensation for these services is a fee which is usually
> calculated as a percentage of the fund's net assets, and thus
> fluctuates with the value of the fund's portfolio.  Portfolio
> transactions are carried out by brokers selected by the adviser, who
> receive commissions at the regular rates therefor.  The sale of fund
> shares to new investors is generally the responsibility of a
> "principal underwriter" who is usually the adviser itself or a close
> affiliate. Actual sales are made by brokers or dealers selected by
> the underwriter, and the sales charge or "load" is divided between
> the selling broker or dealer and the underwriter.
>
> This management structure contrasts sharply with that of a typical

> corporation. […] Control of a mutual fund, however, lies largely in the hands of the investment adviser, an external business entity whose primary interest is undeniably the maximization of its own profits. *Id*. (emphasis added).

As such, not only have courts routinely held that there is no *per se* conflict of interest, but the argument that the class claims and derivative claims have differing interests, and recovery for one can potentially reduce recovery for the other, is without merit based on the facts of this case.

## POINT III

### THE PLAINTIFFS HAVE STANDING TO SUE FOR THE BENEFIT OF ALL FUNDS

**A.    Plaintiffs Have Standing To Pursue Class and Derivative Actions Against All MFS Funds**

Counsel for *Dumond* state that Plaintiffs do not have standing to sue on behalf of the funds that they do not hold pursuant to § 36(b).[6] *Dumond* Memo at 17. "While ordinarily 'a plaintiff who has no cause of action against [a] defendant can not 'fairly and adequately protect the interests' of those who do have such causes of action,' an exception may apply to cases in which 'all defendants are *juridically related* in a manner that suggests a single resolution of the dispute would be expeditious.'" *Alves v. Harvard Pilgrim Health Care, Inc.*, 204 F. Supp. 2d 198, 205 (D. Mass. 2002) (Saris, J.) (emphasis added).

---

[6] Counsel for *Dumond* claim that § 36(b) claims "are exclusively derivative claims that can only be brought on behalf of the funds." *Dumond* Memo at 11, n.7.  Although § 36(b) actions may "be brought […] by a security holder of [a] registered investment company on behalf of such [investment] company," 15 U.S.C. § 80a-35(b), the Supreme Court has stated that such actions are direct rather than derivative.  *Kamen v. Kemper Fin. Servs.*, 500 U.S. 90, 108 (1991) (citing *Daily Income Fund, Inc. v. Fox*, 464 U.S. 523, 540 (1984) ("*Fox*")).  In *Kamen*, the Supreme Court clarified the *Fox* holding by stating that the Court had concluded "in *Fox* that a shareholder action 'on behalf of' the company under § 36(b) is direct rather than derivative…." *Kamen*, 500 U.S. at 108.  *See also Krantz v. Fidelity Mgmt. & Research Co.*, 98 F. Supp. 2d 150, 157-58 (D. Mass. 2000) (stating in an individual action that "[a] shareholder has a *direct* private cause of action under § 36(b) against the investment adviser 'for breach of fiduciary duty in respect of . . . compensation paid by a fund") (citing 15 U.S.C. § 80a-35(b)) (emphasis added).

The "juridical link" is a connective link that courts have determined is sufficient to permit a plaintiff to "represent a class against individual multiple defendants (as distinguished from a defendant class), where not all of the defendants had direct contact with the named plaintiff." *Weld v. Glaxo Wellcome*, *Inc*., 434 Mass. 81, 89-90 (2001).[7]  The court in *Weld* explained that the juridical link "analysis is analogous, though not identical, to that required under Mass. R. Civ. P. 20, 365 Mass. 766 (1974), governing permissive joinder."  Additionally, "the juridical links doctrine under rule 23, like joinder under rule 20(a), is a procedural device that permits collective adjudication of related claims, not a substantive rule that results in joint or several liability."  *Weld,* 434 Mass. at 90.  The court in *Payton v. County of Kane*, 308 F.3d 673 (7th Cir. 2002) summed it up by stating:

> In a class action, under the juridical link doctrine, although a plaintiff without a cause of action against a specific defendant cannot fairly and adequately protect the interests of those who do have such causes of action for purposes of Fed. R. Civ. P. 23(a), nevertheless, if the plaintiffs as a group -- named and unnamed -- have suffered an identical injury at the hands of several parties related by way of a conspiracy or concerted scheme, or otherwise juridically related in a manner that suggests a single resolution of the dispute would be expeditious, the claim can go forward.  *Id*. at 678 (*quoting La Mar v. H & B Novelty & Loan Co.*, 489 F.2d 461 (9th Cir. 1973)).[8]

---

[7]  The Third Circuit Court of Appeals in *Haas v. Pittsburgh Nat'l Bank*, 526 F.2d 1083, 1096 (3d Cir. 1975) described the roots of the juridical link doctrine in the following terms: "The court in *La Mar v. H & B Novelty & Loan Company*, [489 F.2d 461 (9th Cir. 1973)] noted that there may be certain exceptions to [the rule that where no plaintiff has standing on any issue against one of multiple defendants, a suit for damages may not be maintained as a class action against that defendant]. The court properly excluded (1) situations in which the injuries are the result of "a conspiracy or concerted schemes between the defendants at whose hands the class suffered injury," or (2) instances in which *all defendants are juridically related and a single disposition of the entire dispute would be expeditious*. 489 F.2d at 466 (emphasis added).

[8]  *See also In Re Enron Corp. Sec., Derivative & "ERISA" Litig.*, 2004 U.S. Dist. LEXIS 8158, *107-08 (S.D. Tex. 2004).  The court in *Enron* stated that "[w]here a representative plaintiff in a class action suit has itself been injured by one or more, but not by all, of named multiple defendants, some courts have recognized an exception to the general rule that each class representative must have a plausible claim against each named defendant in a class or subclass.  This exception is frequently designated the "juridical links" doctrine, and confers standing when

While "[o]ther named plaintiffs could be supplied to match with each named defendant […] it would be unwieldy to do so. […] The case is simpler and more economical with the class of plaintiffs and the named defendants." *Moore v. Comfed Sav. Bank*, 908 F.2d 834, 838 (11th Cir. 1990). Other cases have used the same rationale. For instance, in *Alves*, 204 F. Supp. 2d at 205, two class representatives brought a class action under the Employee Retirement Income Security Act ("ERISA") against five defendants. The defendants argued that the plaintiffs lacked standing to bring suit against them because neither plaintiff was ever a member of an ERISA plan that they sponsored. *Id.* The District of Massachusetts concluded that "plaintiffs' claims against [defendants] should not be dismissed for lack of standing. Because these defendants [were] wholly[-]owned affiliates of [the corporate defendant], in which plaintiffs were participants, and the copayment plan provisions [were] substantially the same, a single resolution of the dispute would be expeditious." *Id.* The District of Massachusetts based its holding on *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 422 (6th Cir. 1998), which found that when a single defendant offers a range of ERISA plans, an individual in one plan can represent a class of plaintiffs - including some belonging to other plans - as long as 'the gravamen of the plaintiff's challenge is to the general practices [of the defendant] which affect all of the plans.'" *Id.* at 422. *Fallick* went on to explain that "the foregoing analysis supports our conclusion that once a potential ERISA class representative establishes his individual standing to sue his own ERISA-governed plan, there is no additional constitutional standing requirement related to his suitability

---

there is a relationship which relates all defendants in a way such that a single resolution of the dispute is preferred to a multiplicity of similar actions. *Id.*

to represent the putative class of members of other plans to which he does not belong." *Id*. The

court based this conclusion on the fact that the claims were typical of the proposed class.[9]

Such rationale should apply here in the mutual funds context, where not only are the

defendants juridically linked, but the mutual funds' corporate parents, distributors and

investment advisers dominate and control the operations of the mutual funds they offer. There

are common contractual obligations to a large number of the mutual funds within the Family of

Funds, and defendants are alleged to have engaged in a common scheme to enter into improper

agreements with brokers involving improper directed brokerage and Soft Dollar activity.

Additionally, all the MFS Funds are essentially alter egos of one another. The MFS Funds are

mainly pools of investor assets that are managed and administered by officers and employees of

MFS, not by Fund employees who are independent of MFS. *See Tannenbaum,* 552 F.2d at 405-

06. The MFS Funds predominately share a common Board of Trustees, officers and employees

of MFS who administer the MFS Funds and portfolios generally, and are not limited to

individual MFS Funds. Individual MFS Funds have no independent will and are totally

dominated by MFS and the common body of directors and/or trustees established by MFS. In

---

[9] In securities litigation, courts have held the same. In *In re MobileMedia Sec. Litig.,* 28 F. Supp. 2d 901 (D.N.J. 1998), the defendants challenged the standing of purchasers of one type of security (stock) to bring claims on behalf of the purchasers of different securities (notes). The court rejected defendants' argument, noting that "Courts have allowed those with valid securities claims to represent the interests of the purchasers of other type[s] of securities in class action suits." *Id*. at 911. The court further stated:

> Given Plaintiffs have sufficiently alleged individual cognizable injuries […], Plaintiffs have standing to bring these claims. Concerns over whether stock purchasers should represent notes purchasers are better addressed at the time of class certification.

*Id*.

substance, the MFS Funds function as components of one unitary organization, and therefore all were equally involved in the allegations that Plaintiffs make.

**B.      A Court Should Wait To Address Standing Issues Until After Deciding Class Certification Issues**

In *Ortiz v. Fibreboard Corp.,* 527 U.S. 815 (1999), the Supreme Court held that class certification issues are "logically antecedent" to Article III concerns, and therefore may be properly treated before Article III standing (citing *Amchem Products, Inc. v. Windsor,* 521 U.S. 591 (1997)).  *Payton,* 308 F.3d at 680, followed *Ortiz* in holding that it is a "directive to consider issues of class certification prior to issues of standing."  *Id.*  *Payton* further stated that once a class is properly certified, statutory and Article III standing requirements must be assessed with reference to the class as a whole, not simply with reference to the individual named plaintiffs. *Id.* at 680.  "We see no reason to truncate potentially efficient uses of the class action device when they are otherwise not prohibited and here the class action device may be superior to 19, or 102, different cases…[claiming the same allegations]."  *Id*. at 681.

For the foregoing reasons, Plaintiffs not only have standing to pursue claims against all the named defendants, but deciding the issue of standing at this stage of the case is premature.[10]

---

[10] The cases cited by defendants are distinguishable.  For instance, in *Dandorph v. Fahnestock* & *Co*., 462 F. Supp. 961, 965 (D. Conn. 1979), the court determined that the plaintiff was a non-shareholder and therefore lacked standing.  The court further stated that "[s]tanding to assert claims under the Investment Act extends to any person holding any ownership interest in a company subject to this Act … But where persons who are not shareholders have sought to object to a registered company's conduct, standing has been denied."  *Id*. (citations omitted). Because the plaintiff was not a shareholder, the court did not have to address the issue of whether or not he had standing for all the funds.  In *Olesh v. Dreyfus Corp*., 1995 WL 500491 (E.D.N.Y.  Aug. 8, 1995), the plaintiff did not have individual standing to pursue claims on behalf of the funds he owned, so therefore could not pursue other claims.  *Green v. Nuveen Advisory Corp.*, 186 F.R.D. 486 (N.D. Ill. 1999) is a case that is not precedent in this district.  Furthermore, the court gave very little discussion to the standing issue, but did mention that "plaintiffs cannot represent a class for any funds other than the named defendants."  *Id*. at 493.  Plaintiffs in *Olesh* attempted to represent a class of persons who bought shares in "all other funds promoted or managed" by the defendant.  *Id.* The Plaintiffs in this case do not make such a general classification, and seek to represent a class only against or on behalf of the named defendants and nominal defendants.  The cases of *Ramos v. Patrician Equities Corp.*, 765 F. Supp. 1196 (S.D.N.Y. 1991), *Spira v. Nick*, 876 F. Supp. 553 (S.D.N.Y. 1995) and *In re Colonial Ltd. Partnership Litig.*, 854 F. Supp. 64 (D. Conn. 1994) all involve standing in relation to various limited

<u>POINT IV</u>

<u>THE ACTIONS SHOULD BE CONSOLIDATED TO
BEST SERVE THE INTERESTS OF JUDICIAL ECONOMY</u>

**A.     There Are Common Questions Of Law And Fact Pending Before
The Court Making Consolidation Appropriate**

Three of the above-captioned actions, the *Forsythe, Eddings* and *Koslow* actions, assert

class claims on behalf of classes of investors in mutual funds belonging to the Massachusetts

Financial Services Company ("MFS") family of mutual funds (the "MFS Funds"), and

derivatively on behalf of the MFS Funds, against the MFS Funds investment advisers, their

corporate parents and the MFS Funds trustees during class periods beginning March 24, 1999

and ending November 17, 2003.  These actions allege a variety of claims, specifically violations

of §§ 34(b), 36(b) and 48(a) of the Investment Company Act of 1940 (the "Investment Company

Act"), violations of §§ 206 and 215 of the Investment Advisers Act of 1940 (the "Investment

Advisers Act"), breaches of fiduciary duty and aiding and abetting breaches of fiduciary duty.

The fourth action, the *Dumond* action, similarly asserts claims against MFS and MFS Fund

Distributors, Inc. and contains the same claims as the *Forsythe*, *Eddings* and *Koslow* actions,

specifically violations of § 36(b) of the Investment Company Act and breaches of fiduciary duty.

Federal Rule of Civil Procedure Rule 42(a) explicitly states that consolidation is

appropriate when there is "a common question of law or fact pending before the Court."  *See*

---

partnerships.  The corporate structure of a limited partnership is much different than that of the mutual funds
involved in this litigation, so therefore these cases cannot give an accurate analysis of the law in this area.
Furthermore, the *Ramos* case stands for the proposition that plaintiffs do need standing against defendants, but
does not hold that a plaintiff has to have purchased every security that is the subject of the suit.  *Spira* is an action
for violations of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C.S. § 1961, a claim not
even remotely related to the claims brought by the Plaintiffs.  Further, the court gives little analysis to the standing
issue, and acknowledges that "the heart of defendants' claim" is that the complaint fails to comply with Rule 9(b).
*Id*. at 557.  Finally, in *Nenni v. Dean Witter Reynolds, Inc.,* 1999 U.S. Dist. LEXIS 23351 (D. Mass. Sept. 9,
1999), the court only addressed the standing issue regarding plaintiffs' §§ 11 and 12(a)(2) claims.

*Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir. 1990); *Schulman v. Lumenis, Ltd.*, No. 02 Civ. 1989, 2003 U.S. Dist. LEXIS 10348, at *6-9 (S.D.N.Y. June 17, 2003). The standard under Rule 42(a) is clearly met here, counsel for *Forsythe*, *Eddings* and *Koslow* have agreed to consolidate their actions, and *Dumond* should also be consolidated.[11]

The Actions allege that substantially the same defendants unlawfully and deceitfully charged mutual fund investors excessive fees that allowed such defendants to reap millions of dollars in profits. Although the amount of assets held by the MFS Funds has increased dramatically over time, the defendants failed to pass on the resulting economies of scale to plaintiffs, and have instead retained the excess profits resulting from the economies of scale. More specifically, the Actions allege that the MFS investment advisers named as defendants (the "Investment Adviser Defendants") authorized the payment from fund assets of excessive commissions to broker dealers in exchange for preferential marketing services, kickbacks or some other form of fallout benefits ("Soft Dollars"). These benefits should have been passed on to the shareholders and were not. As a result, the defendants were in breach of their fiduciary duties, in violation of Section 12(b) of the Investment Company Act, and unprotected by any "safe harbor."[12] Furthermore, the MFS trustees and/or directors (the "Director Defendants") failed to properly supervise, and continued to approve, the Investment Adviser Defendants' payments of so-called 12b-1 fees and Distribution Plans pursuant to the mutual funds' Rule 12b-1 plans. This was a violation of both § 36(b) and Rule 12b-1.

---

[11] Consolidation is also appropriate under § 10.22 of the Manual for Complex Litigation (4th ed. 2004), which discusses consolidation of cases in the same court.

[12] Rule 12b-1, promulgated by the SEC pursuant to the Investment Company Act, prohibits mutual funds from directly or indirectly distributing or marketing their own shares unless, among other things, the funds' directors find that the terms of the written plan for marketing the funds (the "12b-1 plan") create "a reasonable likelihood that the plan will benefit the company and its shareholders."

The Actions also allege that the Investment Adviser Defendants directed brokerage payments to firms that favored MFS Funds, which was a form of marketing that was not disclosed in, or authorized by, the MFS Funds Rule 12b-1 plans. The defendants also improperly used Soft Dollars and/or excessive commissions paid from MFS Funds assets to pay for overhead expenses, or received such benefits in the form of kickbacks. These costs should have been borne by MFS and not MFS investors. The Actions also allege that the fees paid to the defendants by individual investors are dramatically higher than those paid by institutional and other MFS clients, despite the fact that the Funds receive similar services. The Actions further allege that the Director Defendants failed to satisfy their duties under the Investment Company Act and that, as a consequence, were able to systematically skim millions and millions of dollars from the MFS Funds. The Actions similarly allege that the defendants failed to disclose the substance of such allegations. Therefore, consolidation of the Actions is appropriate.

Finally, the *Dumond* action is brought solely as a derivative action for which any benefit derived would inure only to the specific funds that profess to be the subject of their action. Counsel for the plaintiffs in *Dumond* fail to take into account several issues that create a conflict for them and their clients. For instance, the *Dumond* plaintiffs seek either rescission of the investment advisory agreements and Distribution Plans, or, alternatively, to recover the excess profits resulting from the economies of scale wrongfully retained by the defendants, but only for the specific funds they own. Limiting the scope of the case in this way is inefficient and improper because the *Dumond* plaintiffs face the possibility that they may no longer be existing shareholders of their respective funds at the time any benefit is secured and will therefore no longer have standing in the suit. If this occurs, the *Dumond* plaintiffs will not be getting any relief for the wrong they are suing on. Indeed, counsel for *Forsythe*, *Eddings* and *Koslow* have

taken this into consideration in bringing both class and derivative claims.  Also, counsel for

*Forsythe*, *Eddings, Koslow* and *Chicago* expect that the intended consolidated amended

complaint will seek to enjoin continuation of the wrongful conduct and seek relief for those who

have actually suffered from the alleged misconduct, regardless of whether they still currently

own the funds or not.  This will ensure that the plaintiffs in the Actions, including the *Dumond*

plaintiffs, will be fully compensated for their claims.

**B.      The *Dumond* Claims Are Encompassed Within the *Forsythe*
<u>And *Eddings* Actions, Thus Making Consolidation Appropriate</u>**

The attorneys for *Dumond* state that there are "material differences between the *Dumond*

action and the cases before the court."  *Dumond* Memo at 3.  They state that the *Forsythe* and

*Eddings* plaintiffs only make general allegations as compared to the detailed and specific

allegations of wrongdoing presented by the *Dumond* plaintiffs.  *Dumond* Memo at 7, 9.  Under

Rule 42(a)'s express language, only "a common question of law or fact" is required and plainly

does not require a complete commonality of law and facts.  Here, like *Forsythe* and *Eddings*,

the *Dumond* action brings claims for violation of § 36(b) of the Investment Company Act of

1940, breaches of fiduciary duty and violation of Rule 12b-1.  Not only are there "common

question[s] of law or fact," but Plaintiffs make the exact same allegations, and therefore

consolidation is appropriate and would serve the interests of judicial economy.

The *Dumond* plaintiffs also implicitly argue that consolidation would prejudice their

rights since "the cursory treatment of [the *Forsythe* and *Eddings* plaintiffs'] fundamental

claims is unlikely to withstand a motion to dismiss." *Dumond* Memo at 10 (citing *Olesh v.*

*Dreyfus Corp.*, 1995 U.S. Dist. LEXIS 21421, at *55 (E.D.N.Y. Aug. 8, 1995)).  This is a

conclusory statement considering that "[d]ismissal of a complaint for failure to state a claim is a

'drastic step,'" *Wade v. Johnson Controls, Inc.*, 693 F.2d 19, 22 (2d Cir. 1982), which must not

19

be taken "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).  In any event, the Court, and not the *Dumond* plaintiffs, will decide whether an amended complaint to be filed following consolidation will withstand a motion to dismiss.[13]

## CONCLUSION

For the reasons detailed herein and in their prior submissions, Plaintiffs respectfully request this Court to:  (i) consolidate the Actions; (ii) appoint *Forsythe, Eddings* and *Chicago* as Co-Lead Plaintiffs; (iii) appoint Milberg Weiss, Weiss & Yourman and Bernstein Litowitz as Co-Lead Counsel to oversee the Actions; and (iv) appoint Moulton & Gans as Liaison Counsel.

Dated:  September 15, 2004

**MOULTON & GANS, P.C.**

By:  \_\_/s/ Nancy Freeman Gans_____
    Nancy Freeman Gans (BBO #184540)
33 Broad Street, Suite 1100
Boston, Massachusetts  02109-4216
(617) 369-7979

***Counsel for Plaintiffs Eric Forsythe and Larry R. Eddings and Proposed Liaison Counsel***

---

[13] Furthermore, many courts have noted that "at the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presume that general allegations embrace those specific facts that are necessary to support the claim.'" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (quoting *Lujan v. National Wildlife Federation*, 497 U.S. 871, 889 (1990)).  Therefore, the argument that the *Forsythe* and *Eddings* claims are too general is not only conclusory, but fails to recognize that such general claims have been held to encompass any specific claims, further making consolidation appropriate and serving the interests of judicial economy.

**MILBERG WEISS BERSHAD**
  **& SCHULMAN LLP**
Steven G. Schulman
Janine L. Pollack
Kim E. Levy
One Pennsylvania Plaza
New York, New York  10119-0165
(212) 594-5300

*Counsel for Plaintiff Eric Forsythe and Proposed*
*Co-Lead Counsel*


**BERNSTEIN LITOWITZ BERGER**
  **& GROSSMANN LLP**
Alan Schulman
Robert S. Gans
Timothy A. DeLange
Jerald D. Bien-Willner
12544 High Bluff Drive, Suite 150
San Diego, CA 92130
(858) 793-0070

*Counsel for Plaintiff Chicago Deferred*
*Compensation Plan and Proposed Co-Lead*
*Counsel*


**WEISS & YOURMAN**
Joseph H. Weiss
Richard Acocelli
551 Fifth Avenue, Suite 1600
New York, New York  10176
(212) 682-3025

*Counsel for Plaintiff Larry R. Eddings and*
*Proposed Co-Lead Counsel*

**LAW OFFICES OF CHARLES J. PIVEN, P.A.**
Charles J. Piven
Marshall N. Perkins
The World Trade Center – Baltimore
Suite 2525
401 East Pratt Street
Baltimore, Maryland  21202
(410) 332-0030

*Counsel for Plaintiff Eric Forsythe*


**STULL, STULL & BRODY**
Jules Brody
Aaron Brody
6 East 45th Street
New York, New York  10017
(212) 687-7230

*Counsel for Plaintiff Larry R. Eddings*


**SCHIFFRIN & BARROWAY, LLP**
Marc A. Topaz
Richard A. Maniskas
Three Bala Plaza East
Suite 400
Bala Cynwyd, Pennsylvania  19004
(610) 667-7706

*Counsel for Plaintiff Richard Koslow*


**GILMAN AND PASTOR LLP**
David Pastor (BBO #391000)
Stonehill Corporate Center
999 Broadway, Suite 500
Saugus, Massachusetts  01906
(781) 231-7850

*Counsel for Plaintiff Richard Koslow*

22

## <u>CERTIFICATE OF SERVICE</u>

    I, Daniel P. Dietrich, hereby certify that I served a copy of the foregoing document upon counsel for all parties by mailing a copy of the same, postage prepaid, to each attorney of record, this 15th day of September, 2004.

                                __ /s/ Daniel P. Dietrich _____
                                  Daniel P. Dietrich