UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Eric Forsythe, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>Sun Life Financial Inc., et al.,<br>Defendants. | Civil Action No. 04cv10584 (GAO) |
| Larry R. Eddings, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>Sun Life Financial Inc., et al.,<br>Defendants. | Civil Action No. 04cv10765 (GAO) |
| Richard Koslow, Individually and on Behalf of All Other Similarly Situated<br>Plaintiff,<br><br>v.<br><br>Sun Life Financial Inc., et al.,<br>Defendants. | Civil Action No. 04cv10765 (GAO) |
| Marcus Dumond, Henry Berdat, Stuart V. and Rosemary Sturgess, Kathleen Blair, William and Margie Booth, Karen Peach, and Richard and Evelyn Keller,<br><br>Plaintiffs,<br><br>v.<br><br>Massachusetts Financial Services Company and MFS Fund Distributors, Inc.<br>Defendants. | Civil Action No. 04cv11458 (GAO) |

**THE DUMOND *PLAINTIFFS'* MEMORANDUM IN OPPOSITION
TO AMENDED MOTIONS FOR CONSOLIDATION AND
FOR APPOINTMENT OF TRI-LEAD COUNSEL**

# **TABLE OF CONTENTS**

I.     PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.    ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    A.    Bernstein Litowitz and the Chicago Plan Have Conflicts That
        Prevent Them From Bringing Claims on Behalf of the MFS Funds
        under Section 36(b) of Investment Company Act . . . . . . . . . . . . . . . . . . . . . . . . 2

    B.    The Chicago Plan Does Not Have Standing to Sue On Behalf MFS
        Mutual Funds That It Does Not Own . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

        1.    Section 36(b) of the Investment Company Act Does
            Not Permit a Shareholder of One Mutual Fund to
            Bring an Action on Behalf of Another Mutual Fund
            in Which He Holds No Shares . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

        2.    This Court Should Not Defer Ruling On The
            Standing Questions That Go Directly to its
            Jurisdiction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

    C.    Any Similarities Between The Dumond Action And The Forsythe
        Actions Are Incidental And Do Not Justify Consolidation. . . . . . . . . . . . . . . . 14

        1.    The *Dumond* Action Is Fundamentally Different
            From the *Forsythe* Actions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

        2.    Consolidation of the *Dumond* Action with the
            *Forsythe* Actions Will Delay the Resolution of the
            *Dumond* Claims and Result in Severe Prejudice to
            the *Dumond* Plaintiffs . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

III.   CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

## I. **PRELIMINARY STATEMENT**

In response to the *Dumond* Plaintiffs' Memorandum of Law in Opposition to the Motions for Consolidation and for Appointment of Co-Lead and Liaison Counsel ("the *Dumond* Plaintiffs' Memorandum"), the *Forsythe* Plaintiffs and the *Eddings* Plaintiffs ("collectively, the *Forsythe* Plaintiffs) have amended their motions and seek to add the City of Chicago Deferred Compensation Plan (the "Chicago Plan"), as a Lead Plaintiff in *Forsythe* Action, and its counsel Bernstein Litowitz Berger & Grossman, LLP ("Bernstein Litowitz"), as one of three Tri-Lead Counsel in that Action. The Chicago Plan is the Lead Plaintiff in the market-timing cases pending **against** the MFS Funds in the United States District Court for the District of Maryland, which are the very same funds which it seeks to represent in the *Forsythe* Action. Its counsel, Bernstein Litowitz has been designated as Lead Class Counsel in the market timing actions pending against the MFS Funds, but not Lead Derivative Counsel for the market timing case brought on behalf of the MFS Funds. *See* [Proposed] Case Management Order No. 1 (attached hereto as Exhibit 1), entered by the District of Maryland on May 25, 2004.

Rather than mitigate the conflicts of interest which prevent Counsel for the *Forsythe* Plaintiffs from representing the claims brought on behalf of the MFS Funds under Section 36(b) of Investment Company Act ("ICA"), 15 U.S.C. §80a-35(b), the addition of the Chicago Plan, as a named plaintiff, and Bernstein Litowitz, as proposed lead counsel, exacerbates the conflict of interest identified in the *Dumond* Plaintiffs' Memorandum. Not only do the *Forsythe* Plaintiffs propose to add another law firm that suffers from the same conflict of interest as the law firms of Milberg Weiss Bershad & Schulman, LLP ("Milberg Weiss"), Weiss & Yourman, and Moulton & Gans, but they seek to add a conflicted Lead Plaintiff as well. The addition of the Chicago Plan as a Lead Plaintiff also does nothing to solve the *Forsythe* Plaintiffs standing problem because the Chicago Plan only

owns three of the 112 MFS Funds – the MFS High Income Fund, the MFS Growth Opportunities Fund and the Massachusetts Investors Growth Stock Fund, *see* Certification of the City of Chicago Deferred Compensation Plan Committee (Exhibit 2 hereto) – and only one that is involved in the *Dumond* Action.  Like the other *Forsythe* Plaintiffs, the Chicago Plan does not have standing to bring claims to recover excessive fees under Section 36(b) of the ICA on behalf of MFS Funds that it does not own.

The *Forsythe* Plaintiffs argue that the *Dumond* Actions and the *Forsythe* Actions should be consolidated to best serve the interests of judicial economy.  In fact, the similarities between the *Forsythe* Action and the *Dumond* Action are incidental and do not, independently justify consolidation.  Furthermore, ethics rules and standing requirements cannot give way to convenience and efficiency.

## II.  ARGUMENT

### A.    Bernstein Litowitz and the Chicago Plan Have Conflicts That Prevent Them From Bringing Claims on Behalf of the MFS Funds under Section 36(b) of Investment Company Act.

By bringing in Bernstein Litowitz and the Chicago Plan (who are lead counsel for the class claims against the MFS Funds in the market timing cases), the *Forsythe* Plaintiffs did not mitigate the conflict as they argue.  Rather, they exacerbated the conflict by bringing in another law firm that suffers from the same conflict of interest as the law firms of Milberg Weiss, Weiss & Yourman, and Moulton & Gans, and by seeking to add a conflicted Lead Plaintiff as well.  *See* Supplemental Affidavit of Professor Robert H. Aronson, dated September 29, 2004 ("Supplemental Aronson Affidavit"), ¶¶ 2-4, 10. *See also Kamerman v. Steinberg*, 113 F.R.D. 511, 561 (S.D.N.Y. 1986); *Ryan v. Aetna Life Ins. Co.,* 765 F. Supp. 133, 135 (S.D.N.Y. 1991); *Brickman v. Tyco Toys, Inc*, 731 F. Supp. 101, 108-09 (S.D.N.Y. 1990); *Diana v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 75 cv 6194, 1977 WL 1046, *3 (S.D.N.Y. 1977); *Ruggiero v. American Bioculture, Inc.*, 56 F.R.D. 93, 95 (S.D.N.Y. 1972).

Bernstein Litowitz's conflict is not theoretical. It is real. Indeed, Max Berger – a senior partner in Bernstein Litowitz – has acknowledged that a conflict exists between class members seeking to recover money from a corporation and current shareholders. In a September 20, 2004 Forbes Magazine article (Exhibit 3 hereto) regarding class action lawsuits, Mr. Berger says: "Most of our clients sold stock [at a loss] due to a wrong, and they're entitled to recourse. <u>That current shareholders [ultimately] pay for it is unfortunate but doesn't mean the company should not pay.</u>"

There is nothing unique about a mutual fund that makes it an atypical corporation as the *Forsythe* Plaintiffs suggest (*Forsythe* Plaintiffs' Memorandum, at pp. 10-11). On the contrary, because a mutual fund is "a pool of assets consisting mostly of portfolio securities that belongs to the individual investors holding shares in the fund," *Tannenbaum v. Zeller*, 552 F.2d 402, 405-06 (2d Cir. 1977), the negative impact of any judgment or settlement against the MFS Funds in the market timing cases would be more direct and immediate because any settlement or judgment against the MFS Funds in the market timing cases will dollar for dollar reduce the net asset value of the MFS Funds and directly impact the price at which current shareholders of the MFS Funds could redeem their shares of those funds.[1] Bernstein Litowitz's senior partner Max Berger admitted, the "unfortunate" result is that "current shareholders pay." *See* Exhibit 3, at p. 152. Nevertheless, Bernstein Litowitz claims it is proper and ethical for it to represent those same shareholders in their actions on behalf of the MFS Funds.

The Chicago Plan is entitled to a recovery from the MFS Funds if they have been "wronged" as alleged in the market timing cases, but the MFS Funds should not be represented here by that same plaintiff and that same counsel, both of whom suffer from divided loyalties for and against the MFS Funds. "The undivided loyalty that a lawyer owes to his clients forbids him, without the clients' consent, from acting for [the MFS Funds] in one action and at the same time against [the MFS

---

[1] The MFS Funds are 'open end' companies or mutual funds and are "required by law to redeem its securities on demand at a price approximating their proportionate share of the fund's net asset value at the time of redemption." *U. S. v. National Ass'n of Securities Dealers, Inc.*, 422 U.S. 694, 698,95 S.Ct. 2427, 2432-33 (1975).

Funds] in another." *McCourt Co., Inc., v. FPC Properties, Inc.* 386 Mass. 145, 146, 434 N.E.2d 1234 (1982).[2]

As Professor Robert Aronson[3] explains in his initial affidavit, proposed lead counsel's conflict is not merely technical:

> 4.      In truth, the funds themselves have interest that are different from the interests possessed by the shareholder plaintiffs in the timing cases. For the funds sued in the timing cases, the optimum outcome, dismissal, is certainly contrary to the interests of the class members who have brought those cases. For funds that have brought fee cases derivatively, the optimum outcome is recovery from the adviser. A lawyer representing class members litigating against a fund in the class action lawsuit should not serve as that same fund's advocate in the derivative lawsuit attacking fund fees. But the conflict problem is deeper than that.

> 5.      In the timing cases, three different groups of shareholders are likely to be affected. Their interests are not identical and may be adverse. Some shareholders in the timing cases are no longer existing shareholders. For them, any recovery out of fund assets will come at the expense of existing fund shareholders. A second group consists of existing fund shareholders who stand to gain or lose if the class action succeeds. The will gain through a recover as class members, but will lose as fund assets are paid out to non-shareholder class members. A third group of fund shareholders affected by the timing cases consists of existing fund shareholders who stand only to lose. These fund shareholders are those who purchased fund shares outside the class period. They are not in the class, but the asset value of their shares would be decreased by any payout to existing shareholders. Shareholders in the second and third groups stand to gain if the derivative suit succeeds; however class members in the first market timing group would receive nothing since they are no longer fund shareholders.

> 6.      The simple point is that recovery to shareholders in the class case will be very different from any benefit enjoyed by shareholders if the derivative suit succeeds. Separate groups are involved, and their interest are not only different; they are incompatible.

Affidavit of Professor Robert H. Aronson, dated July 20, 2004 ("Aronson Affidavit"), ¶¶ 4-6.

Professor Aronson further illustrates the point in his Supplemental Affidavit:

---

[2] In Professor Aronson's view the conflict is disqualifying. Supplemental Aronson Affidavit, ¶¶4-9. As he explains: "Allowing the *same client*, Chicago to consent to such a conflicted representation on behalf of class members in two very different kinds of litigation would vitiate the very purpose of Rule 1.7." *Id.*, ¶ 6. However, even if counsel were able to obtain the consent from Chicago or another lead plaintiff, Professor Aronson knows of no procedure by which counsel could obtain the consent of all other interested parties. *Id.*, ¶ 8.

[3] Professor Aronson is a Professor of Law at the University of Washington School of Law who has taught the subject of professional responsibility for more than 25 years and has extensively written and lectured on the subject.

9.    It might be in the best interest of the current shareholder class whose members were not shareholders during the market timing to negotiate for a settlement that enhances the present value of their shares in return for reducing claims concerning the damage done previously.  However, such a litigation position would be contrary to the best interest of the shareholder class whose members are no longer shareholders.  An attorney or firm representing both classes, against and on behalf of certain MFS funds, would thus be unable to provide conflict-free representation and advice.  Even the effort to accommodate the interests of all clients would deprive the clients of truly independent, conflict-free representation.

In *In re Pacific Enterprises Securities Litigation,* 47 F.3d 373, 378 (9th Cir. 1995), the Ninth Circuit expressed precisely these concerns about how such a conflict, involving one of the same law firms at issue here, could improperly impact settlement negotiations:

Weinstein also argues that the linked settlement is biased because Milberg Weiss had a conflict of interest in representing both the derivative plaintiffs and the securities plaintiffs.... Weinstein alleges that because of a conflict of interest, Milberg Weiss was willing to accept a lower derivative settlement so long as the class action produced a large recovery.

**We are concerned about the potential conflicts created** by the linked settlement and **by Milberg Weiss's dual representation of derivative and securities plaintiffs**, but Weinstein failed to raise these issues at any time prior to his appeal. A timely objection could have been properly evaluated before extensive settlement negotiations were concluded.

*See also Krim v. pcOrder.com, Inc.,* 210 F.R.D. 581, 590 (W.D. Tex. 2002) ("counsel participated in a full week of settlement negotiations with Defendants who offered to settle all lawsuits against pcOrder.com. Although unsuccessful, the negotiations demonstrate the problematic nature of counsel's multiple representations in negotiations.").

The overwhelming weight of authority -- cited in the *Dumond* Plaintiffs' Memorandum -- favors the appointment of separate class and derivative counsel because of this conflict. *See Koenig v. Benson,* 117 F.R.D. 330, 334 (E.D.N.Y. 1987) ("it is difficult to understand how an attorney can properly represent the interests of a corporation and its present shareholders in a derivative action brought on their behalf, and, at one and the same time, properly represent its present and/or former shareholders in a class action against the corporation without compromising the independence of professional judgment and loyalty to these two groups of clients with potentially conflicting interests."); *Hawk Industries, Inc. v. Bausch & Lomb, Inc.,* 59 F.R.D. 619, 614 (S.D.N.Y. 1973) ("Here, however, co-counsel is bound to pursue two actions to the best of his ability and as

vigorously as possible. If both are successful, one action would result in a recovery for the corporation; the other would result in a detriment to the corporation. It is difficult to see how counsel could retain his independence of professional judgment and loyalty to his clients and their interest in both suits."); *Ruggiero v. American Bioculture, Inc.*, 56 F.R.D. 93, 95 (S.D.N.Y. 1972) ("there is a substantial question as to whether the attorneys for the Freed plaintiffs can represent them in the derivative suit and the class action without violating the Canons of Ethics").[4]

Indeed, the issue is rarely litigated because counsel themselves recognize that separate derivative and class counsel are required. Although class cases and derivative cases are often coordinated, they are typically not consolidated, and separate counsel is appointed to represent class claims and derivative claims.[5] **Significantly, even in the market timing cases, the court**

_____

[4]The cases cited by the *Forsythe* Plaintiffs are also inapposite. In *Dayco Corp. Derivative Sec. Litig.*, 102 F.R.D. 624 (S.D. Ohio 1984) (*Forsythe* Plaintiffs Memorandum at 6), counsel in the derivative action was not simultaneously suing the corporation which he was seeking to represent. Thus, the case was analyzed under the less restrictive ethical rules governing successive representation as opposed to the stricter rules governing simultaneous representation. In particular, *Dayco* distinguished those cases involving simultaneous representation, including the Second Circuit's opinion in *Cinema 5 Ltd. v. Cinerama*, 528 F.2d 1384, 1387 (2d Cir. 1984), which held that "[w]here the relationship is a continuing one, adverse representation is prima facie improper." Here, Berstein Litowitz and the other counsel in the *Forsythe* Action are attempting to simultaneously represent the MFS Funds and to sue the MFS Funds. Unlike counsel in *Dayco*, they have not withdrawn as counsel in the market timing cases.

In *Bertozzi v. King Louie International, Inc.*, 420 F.Supp. 1166 (D.R.I. 1976) (*Forsythe* Plaintiffs' Memorandum at 6-7), the court observed that there is a distinction between those cases where counsel is seeking to represent class and derivative interests in the same case arising out of the same facts and those where counsel is seeking to represent class and derivative interests in different cases, pending in different courts and arising out of different facts: "Indeed, the court in *Hawk Industries* specifically distinguished the two conflicting authorities on the basis that *Heilbrunn* [cited in the *Forsythe* Plaintiffs' Memorandum at 6] involved alternative theories for recovery presented in the same action so that "counsel could vigorously pursue any line of evidence which would result in recovery", whereas *Ruggiero* and the case before it bound counsel to pursue two independent actions pending in different courts." *Id.* at 1179. These cases are analogous to *Ruggiero* and *Hawk Industries* and not *Bertozzi* and *Heilbrunn*. Here, Proposed Lead Counsel attempts to represent derivative interests in the *Forsythe* Action and class interests in the market timing actions which do not involve alternate theories of recovery for the same wrong.

[5]Thus, in *In re Cendant Corp. Litig.*, No. 98-cv-1664 (WHM) (D.N.J.), *Aronson v. McKesson HBOC, Inc.*, No. 99-cv-20743 (RMW) (N.D. Cal.), and *In re Lucent Technologies, Inc. Sec. Litig.*, No. 00-CV-621 (JAP) (D.N.J.), cited by the *Forsythe* Plaintiffs as examples of securities fraud class actions in which Bernstein Litowitz served as lead class counsel (*Forsythe* Plaintiffs Memorandum at 4), there was separate derivative counsel appointed and the class actions were coordinated but not consolidated with the derivative

(continued...)

-6-

**appointed separate class counsel to represent the interests of the Class and separate derivative**

**counsel to represent the interests of the MFS Funds.** Notably Bernstein Litowitz was appointed

lead counsel for the class claims but not for the derivative claims. A different law firm, Pomerantz,

Haudek Block Grossman & Gross LLP, was appointed lead counsel for the derivative claims to

represent the interest of the MFS Funds. *See* Exhibit 1, at p. 8, ¶3(d).

Counsel for the *Forsythe* Plaintiffs attempt to assure this Court "they will adequately

represent the interests of all shareholders while at the same time enforcing the rights of the funds"

(*Forsythe* Memorandum, at p. 8). But they do not explain how they could do so, and, in fact, simply

cannot do so. It is not a question of their good faith. Even attorneys acting with the utmost good

faith cannot adequately serve two masters with differing interests without the risk of trading off one

against the other.[6] As the Court held in *Krim v. pcOrder.com, Inc.,* 210 F.R.D. 581 (W.D. Tex.

---

[5](...continued)

actions. *See In Re Lucent Tech. Sec. Litig.,* 327 F.Supp.2d 426, 459 (D.N.J. 2004); *Deutch v. Silverman (In re Cendant Corp., Derivative Action Litig.),* 98-cv-1998, Order Re: Consolidation and Coordination (D.N.J. Aug. 7, 1998) (Exhibit 4 hereto) (Docket Entry #7); *Goldstein v. Cendant Corp. (In re Cendant Corp. Litig.),* 98-cv-1664 (D.N.J. Jul. 14, 1998) (Exhibit 5 hereto) (Docket Entry #67); *Aronson v. McKesson HBOC, Inc.,* 99-cv-20746, Orders (N.D. Cal. Feb. 7, 2000) (Exhibit 6 hereto) (Docket Entry #285).

For other examples, *see In re: Healthsouth Corp. Stockholders, Bondholders, ERISA, Insurance and Derivative Litig.,* Civil Action Nos. Consolidated File No. CV-03-BE-1501-S; Consolidated File No. CV-03-BE-1502-S, Consolidated File No. CV-03-BE-1700-S, Consolidated File N. CV-03-1139-S, Consolidated File No. CSV-02-2565-S, Order Appointing Healthsouth Steering Committee (M.D. Ala. July 29, 2003) (Exhibit 7 hereto); *In re First Energy Corporation Securities Litig.,* Case No. 5:05-CV-1684, Opinion and Order Re: Motion to Consolidate Class Actions (N.D. Ohio Dec. 9, 2003) (Exhibit 8 hereto); *In re First Energy Shareholder Derivative Litig.,* Case No. 03-cv-1826, Opinion and Order Re: Motion to Consolidate Derivative Actions (N.D. Ohio Dec. 9, 2003) (Exhibit 9 hereto); *Cohn v. Critical Path, Inc.,* 01-cv0551, Minute Order (N.D. Cal. May 21, 2001) (Exhibit 10 hereto) (Docket Entry #92: "Ruling ALL related cases are consolidated except the three derivative cases: C01-684-WHO, C01-685-WHO, C01-0946-WHO"); *In re Goodyear Securities, Derivative & ERISA Litig.,* 03-cv-2166, 03-cv-2180, 03-cv-2180, Consolidation Order (N.D. Ohio Dec. 21, 2003) (Exhibit 11 hereto) ("The Actions shall be consolidated into three cases consisting of the: (1) Securities Actions; (2) Derivative Actions; and (3) ERISA Actions."); *In re Westell Technologies, Inc. Securities Litig.,* 00-cv-6735, Minute Order (N.D. Ill. Jan. 10, 2001) (Exhibit 12 hereto) (Docket Entry # 12); *Ceyda Foundation v. Zions,* 01-cv-2826, Minute Order (N.D. Ill. Nov. 27, 2001) (Exhibit 13 hereto) (Docket Entry # 19).

[6]*Petersen v. Federated Development Corp.,* 416 F.Supp. 466 (S.D.N.Y. 1976) does not hold, as the *Forsythe* Plaintiffs argue that "to avoid the potential conflict, a party bringing the suit can do so in an individual capacity can also being a derivative suit by showing that he can fairly and adequately represent the interests of the shareholders ... in enforcing the rights of the corporation." *Forsythe* Plaintiffs'
(continued...)

2002), in an analogous context where it denied class certification because of the inadequacy of counsel:

> In undertaking an inquiry into adequacy, the Court considers the conflicts of interest of the class counsel, as well as the class representatives.  Conflicts of interest may exist for class counsel if they are involved in multiple lawsuits for the named representative or against the same defendants. Class counsel must act with unwavering and complete loyalty to the class members they represent, and the "responsibility of class counsel to absent class members whose control over their attorneys is limited does not permit even the appearance of divided loyalties of counsel."
>
> * * *
>
> With multiple lawsuits, more than a fair chance exists that the shareholders represented in the various suits may be different but overlapping groups of people, and their interests may not always coincide.
>
> * * *
>
> Additionally, the interests of the counsel may conflict with the members of one or more of the classes. The inability of counsel to discuss settlements offers in the other cases and the potential influence one case may have on a decision to settle the other are only part of the problem. Counsel are also limited in the information they can or will have the incentive to divulge because of their representation of different parties.

*Id.* at 589-90.[7]

---

[6](...continued)

Memorandum at 7.  Rather, the court held that the shareholder typically has to chose between representing individual and derivative interests:

> Plaintiff herein purports to bring this action in both an individual and derivative capacity; however, his papers do not address the issue of the propriety of his seeking to recover personally against Federated, and simultaneously, prosecuting a claim on behalf of Federated. This potential conflict of interest has been recognized by the courts in this jurisdiction, with the result that plaintiff must, on occasion, choose between the pursuit of his personal interest and that of the corporation. Since plaintiff ignores this substantial question and has made no showing that he can "fairly and adequately represent the interests of the shareholders . . . in enforcing the right of the corporation" as required by Rule 23.1, F.R.Civ.P., it must be assumed that he presses the Section 14(e) claim in his individual capacity only.

*Id.* at 475, n.6.

[7]In *Krim,* "lead counsel in this suit [was] involved in multiple lawsuits against pcOrder.com in which they seek to represent different classes of pcOrder.com shareholders." *Id.*  "In addition to this lawsuit, Milberg Weiss filed a federal securities action in New York arising out of the initial and secondary pcOrder.com stock offerings. Additionally, Milberg Weiss and the Baskin Law Firm seek to represent the (continued...)

Ultimately, the *Forsythe* Plaintiffs simply do not -- and cannot -- explain why it would be in the best interests of the MFS Funds and its current shareholders for their counsel to represent both class and derivative interests here, where, as here, the *Dumond* Plaintiffs have retained counsel who have substantial experience in the prosecution of shareholders and securities class and derivative action, and who are not burdened by Proposed Lead Counsel's conflicts.[8]  This is not a situation where the MFS Funds and its current shareholders would be without representation as in the case where defendants move to disqualify an attorney or deny class certification, and in reality seek to leave the plaintiff without representation.[9]  In this case, the *Dumond* Plaintiffs and their counsel are prepared to vigorously litigate the section 36(b) claims on behalf of the MFS Funds.  The *Dumond* Action should proceed separately and be independently prosecuted by the undersigned counsel.

**B.     The Chicago Plan Does Not Have Standing to Sue On Behalf  MFS Mutual Funds That It Does Not Own.**

     **1.     Section 36(b) of the Investment Company Act Does Not Permit a Shareholder of One Mutual Fund to Bring an Action on Behalf of Another Mutual Fund in Which He Holds No Shares**.

The Chicago's Plan's certification submitted in the market timing cases shows that during the class period between December 15, 1998 and December 5, 2003, it owned only three MFS Funds -- the MFS High Income Fund, the MFS Growth Opportunities Fund, and the Massachusetts Investors Stock Fund. *See* Exhibit 2, at p. 3.   Nevertheless, the Chicago Plan attempts to assert

---

[7](...continued)
shareholders in a class action in a Texas state court arising out of Trilogy Software, Inc.'s tender offer for pcOrder.com and the merger of Trilogy and pcOrder.com. Finally, Defendants represent the shareholders in a case dismissed by this Court and currently on appeal to the Fifth Circuit." *Id.*

[8]Under new Fed. R. Civ. P. 23(g)(2), when "more than one adequate applicant seeks appointment as class counsel, the court must appoint the applicant best able to represent the interests of the class." Although not directly applicable to claims in these cases, the rule is instructive.  It simply cannot be said that Counsel for the *Forsythe* Plaintiffs is "best able" to represents the interests of the MFS Funds, when in the market timing cases, they are seeking to maximize their recovery against those very same MFS Funds they now seek to represent.

[9]That was the situation in the cases cited by the *Forsythe* Plaintiffs.  *See Dayco,* 102 F.R.D. at 626; *Bertozzi,* 420 F.Supp. at 1178-79; *Heilbrunn,* 259 F.Supp. at 938-39.

claims under Section 36(b) of the ICA on behalf over 100 MFS Funds that it did not purchase. It does not have standing to do so.

Section 36(b) imposes a fiduciary duty on the investment adviser not to charge excessive fees and creates a private right of action by a shareholder of the injured mutual fund, on behalf of that mutual fund, against the adviser for a breach of this duty. In this regard Section 36(b) is explicit:

> [T]he investment adviser of a registered investment company shall be deemed to have a fiduciary duty with respect to the receipt of compensation for services.... An action may be brought under this subsection by the Commission, or **by a security holder of such registered investment company on behalf of such company**,[10] against such investment adviser ... for breach of fiduciary duty in respect of such compensation or payments paid by such registered investment company....

15 U.S.C. §80a-35(b) (emphasis added). "Pursuant to 15 U.S.C. §80a-35(b), plaintiffs do not have standing to bring a §36(b) claim on behalf of investment companies other than the funds in which they are securities holders." *Green v. Nuveen Advisory Corp.*, 186 F.R.D. 486 (N.D. Ill. 1999); *Olesh v. Dreyfus Corp.*, No. CV-94-1664 (CPS), 1995 WL 500491 (E.D.N.Y. Aug. 8, 1995) (rejecting plaintiffs' efforts to maintain action under §36(a) not only on behalf of funds owned by plaintiffs, but on behalf of "the Dreyfus family of funds"); *Dandorph v. Fahnestock & Co.*, 462 F. Supp. 961, 965 (D. Conn. 1979) ("plaintiff who does not hold stock in the investment company lacks standing to sue under the Investment Company Act").

As the Court explained in *Weiner v. Winters,* 50 F.R.D. 306 (S.D.N.Y. 1970):

> **There is nothing in the Investment Company Act (15 U.S.C. § 80a-1 et seq.) which would authorize a shareholder of one mutual fund to bring a derivative action on behalf of another mutual fund in which he holds no shares.... "Standing to assert claims under the Investment Act extends to any person holding an ownership interest in a company subject to the Act....**
>
> * * *
>
> It is clear that in the instant case, plaintiff, who owns no shares in the moving defendants, has no capacity to maintain a derivative action on their behalf.

---

[10] In quoting the statute, the *Forsythe* Plaintiffs subtly change the language from "by a security holder of **such** registered investment company on behalf of such company" to "by a security holder of **[a]** registered investment company on behalf of such [investment] company." *Forsythe* Plaintiffs' Memorandum, at p. 11, n. 6.

*Id.* at 310-11 (emphasis added), quoting *General Time Corp. v. American Investors Fund, Inc.*, 283 F.Supp. 400 (S.D.N.Y.), *aff'd on other grounds,* 403 F.2d 159 (2nd Cir. 1968), *cert. denied sub nom. General Time Corp. v. Talley Industries, Inc.*, 393 U.S. 1026 (1969).

**The Chicago Plan and the other *Forsythe* Plaintiffs do not cite a single case which has held that a shareholder of one mutual fund has standing to sue under section 36(b) on behalf of the fund complex**. Rather, relying on the so-called "juridical links" doctrine which has been applied by some courts in class actions, they argue that they can bring suit on behalf of funds which they do not own. Whatever application the "juridical links" doctrine may have in the class action context, it has no applicability in a derivative or representative action.[11] The *Dumond* Plaintiffs are not aware of -- and the *Forsythe* Plaintiffs have not cited -- a single case where the doctrine has been applied in a section 36(b) case. Nor do they cite a single case where it has been applied in any derivative or representative context to permit a shareholder to represent an entity – whether it be a corporation, mutual fund, or partnership – in which the shareholder had no equitable interest.[12]

The Chicago Plan only has standing to sue on behalf of the funds that it holds. Because the Chicago Plan only owns one of the MFS Funds represented in the *Dumond* Complaint, it does not have standing to sue on behalf of the ten other funds owned by the *Dumond* Plaintiffs.

---

[11]Even in the class action context, courts have also held that plaintiffs lack standing to maintain class claims on behalf of purchasers of mutual funds other than the mutual fund which the plaintiffs actually own. *See Nenni v. Dean Witter Reynolds, Inc.*, Civil Action No. 98-12454-REK, Memorandum and Order, Slip Op. At 5 (D. Mass. Sept. 29, 1999); s*ee also Ramos v. Patrician Equities Corp.*, 765 F. Supp. 1196, 1199 (S.D.N.Y. 1991); *In re Colonial Ltd. Partnership Litig.*, 854 F. Supp. 64, 82-83; *Spira v. Nick*, 876 F. Supp. 553, 52 (S.D.N.Y. 1995).

[12]Citing *Kamen v. Kemper Fin. Serv.*, 500 U.S. 90, 108 (1991) and *Daily Income Fund, Inc. v. Fox*, 464 U.S. 523, 540 (1984), the *Forsythe* Plaintiffs argue that their claims under section 36(b) are not technically derivative claims but belong directly to shareholders (*Forsythe* Plaintiffs Memorandum at p. 11, n. 6). The *Forsythe* Plaintiffs concede, however, that any action under section 36(b) may only be brought in a representative capacity "on behalf of such [investment] company." *Id.* Whether the section 36(b) claim is described as "representative" or "derivative" is a matter of nomenclature and makes no difference to the standing analysis. Even the *Forsythe* Plaintiffs describe their claim under section 36(b) as a derivative claim in their own complaint. *See Forsythe* Complaint, p. 27, Count II.

2.    **This Court Should Not Defer Ruling On The Standing Questions That Go Directly to its Jurisdiction.**

The *Forsythe* Plaintiffs argue, in the alternative, that this Court should defer ruling on the standing issues until after deciding class certification issues (*Forsythe* Plaintiffs' Memorandum, at p. 15).   It would be inappropriate for this Court to postpone a decision on standing, which directly implicates this Court's jurisdiction over the claims at issue.

Under Article III of the United States Constitution, federal courts have jurisdiction over a dispute only if it is a "case" or "controversy." *See Simon v. Eastern Ky. Welfare Rights Organization*, 426 U.S. 26, 37, 96 S.Ct. 1917, 1924 (1976).  "As an incident ... of this bedrock requirement, this Court has always required that a litigant have 'standing' to challenge the action sought to be adjudicated in the lawsuit." *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 471, 102 S.Ct. 752 (1982); *Raines v. Byrd*, 521 U.S. 811, 818, 117 S.Ct. 2312 (1997); *Lujan v. Defenders of Wildlife*, 504 U.S.  555, 560-61, 112 S.Ct. 2130, 2136-37 (1992).  Standing, therefore, is "the threshold question in every federal case." *Warth v. Seldin*, 422 U.S. 490, 498, 95 S.Ct. 2197, 2205 (1975).

Because "the exercise of judicial power ... can so profoundly affect the lives, liberty, and property of those to whom it extends ... the decision to seek review must be placed in the hands of those who have a direct stake in the outcome." *Diamond v. Charles*, 476 U.S. 54, 62, 106 S.Ct. 1697 (1986).  Thus, in order "to meet the standing requirements of Article III, a plaintiff must allege personal injury fairly traceable to the defendant's alleged unlawful conduct and likely to be redressed by the relief requested." *Raines*, 521 U.S. at 818; *Lujan*, 504 U.S. at 560-61; *Valley Forge Christian College*, 454 U.S. at 471.

"Beyond the constitutional requirements, the federal judiciary has also adhered to a set of prudential principles that bear on the question of standing." *Valley Forge Christian College*, 454 U.S. at 471;  *Warth*, 422 U.S. at 498.  To satisfy these standing requirements, the plaintiff "must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Valley Forge Christian College*, 454 U.S. at 471, 102 S.Ct. at 758.  In addition, "the plaintiff's complaint must fall within 'the zone of interests to be protected or regulated

by the statute or constitutional guarantee in question.'" *Id.*;  *McCormack v. National Collegiate Athletic Association*, 845 F.2d 1338, 1340-41 (5th Cir. 1988).

> Although standing in no way depends on the merits of the plaintiff's contention that particular conduct is illegal, it often turns on the nature and source of the claim asserted.  The actual or threatened injury required by Art[icle] III may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing....  Essentially, the standing question in such cases is whether the constitutional or statutory provision on which the claim rests properly can be understood as granting persons in the plaintiff's position a right to judicial relief.

*Warth*, 422 U.S. at 499-500; *Diamond*, 476 U.S. at 55.

Moreover, "standing is not dispensed in gross." *Lewis v. Casey*, 518 U.S. 343, 358 n.6, 116 S.Ct. 2174 (1996).  "Standing ... must be addressed on a claim-by-claim basis." *James v. City of Dallas, Texas*, 254 F.3d 551, 563 (5th Cir. 2001).  *See also Rosen v. Tennessee Commissioner of Finance and Administration*, 288 F.3d 918 (6th Cir. 2002); *Brownsburg Area Patrons Affecting Change v. Baldwin*, 943 F.Supp. 975 (S.D.Ind. 1996).  Thus, this Court must "careful[ly] examin[e] whether the particular plaintiff is entitled to an adjudication of the particular claims asserted." *Allen v. Wright*, 468 U.S. 737, 752, 104 S.Ct. 3315 (1994).

The Supreme Court has  always insisted on strict compliance with its standing requirements.  As the Supreme Court stated in *Raines*:

> We must put aside the natural urge to proceed directly to the merits ... and to settle it for the sake of convenience and efficiency.  Instead, we must carefully inquire as to whether [plaintiffs] have met their burden of establishing that their claimed injury is personal, particularized, concrete, and otherwise judicially cognizable.

521 U.S. at 820.  *See also Whitmore v. Arkansas*, 495 U.S. 149, 155, 110 S.Ct. 1717 (1990).

This Court must resist that urge to defer ruling on the standing issues "for the sake of convenience and efficiency" and carefully examine whether the *Forsythe* Plaintiffs meet the standing requirements of section 36(b) of the ICA.  For the reasons, set forth above, they do not.

However, even if this Court were inclined to defer ruling on the standing of Forsythe, Eddings and the Chicago Plan to bring suit under section 36(b) on behalf MFS Funds that they do not own, the serious standing issues raised herein bear directly on their adequacy to serve as lead plaintiff.  Moreover, the prospect of extensive litigation over the standing issues in the *Forsythe*

-13-

Actions (whether on a motion to dismiss or on motions for class certification), makes consolidation of the *Forsythe* Actions with the *Dumond* Action (where there are no standing issues) inappropriate.

**C.    Any Similarities Between The *Dumond* Action And The *Forsythe* Actions Are Incidental And Do Not Justify Consolidation.**

The *Forsythe* Plaintiffs argue that the *Dumond* Action should be consolidated with the *Forsythe* Action because all four cases – broadly described – involve claims that defendants Massachusetts Financial Services Company ("MFS Company") an MFS Distributors, Inc. ("MFS Distributors") (collectively, MFS), charged excessive fees to the MFS Funds. *Forsythe* Plaintiffs' Memorandum at 16-19.

Consolidation may be appropriate under Fed. R. Civ. P. 42(a) where "two proceedings involved a common party and common issues of law or fact." *Seguro de Servicio de Salud De Puerto Rico v. McAuto Sys. Group, Inc.*, 878 F.2d 5, 8 (1st Cir. 1989). The analysis, however, does not stop there. The Court must also "weigh the prospective benefits of consolidation, in terms of convenience to the parties and judicial economy against the extent of confusion, delay or prejudice that might result from the consolidation." *See Data General Corp. v. Grumman Sys. Support Corp.*, 834 F.Supp. 477, 487 (D. Mass. 1992), *citing Spirt v. Teachers Ins. And Annuity Ass'n*, 93 F.R.D. 627, 639 (S.D.N.Y. 1982); *Fleishman v. Prudential-Bache Secs., Inc.*, 103 F.R.D. 623, 624-25 (S.D.N.Y. 1984) ("a party moving for consolidation must show that consolidation would promote trial convenience and economy in administration due to factors other than a mere commonality of legal and factual issues"). If the benefits of consolidation are outweighed by its costs and prejudice to the parties, consolidation is inappropriate. *Town of Norfolk v. United States EPA*, 134 F.R.D. 20, 22 (D.Mass. 1992), *citing Seguro de Servicio de Salud De Puerto Rico*, 878 F.2d at 8. The burden is on the moving party in persuading the court to grant its motion to consolidate. *Solvent Chemical Co. ICC Ind., Inc. v. E.I. Dupont De Nemours & Co.*, 242 F.Supp.2d 196, 221 (W.D.N.Y. 2002).

The *Forsythe* Plaintiffs' Memorandum is devoid of any discussion of how consolidation of these matters would benefit the parties as well as serve the interests of judicial convenience and economy. To the extent that there are overlapping issues in the cases, they can be addressed by pre-trial coordination of the *Dumond* Action and the *Forsythe* Action, which the *Dumond* Plaintiffs and

the defendants in the *Dumond* Action have already agreed to do.   In this regard, it is also noteworthy that in the market timing cases, the derivative and class cases were not consolidated but coordinated for pretrial purposes.  *See* Exhibit 1, at p. 8, ¶3(d).[13]

Moreover, the motion to consolidate ignores glaring and material differences between the *Dumond* Action and the *Forsythe* Actions, which have the potential drastically to delay a resolution of the *Dumond* Action and cause confusion in the administration and proceeding of the *Dumond* Action *and* the *Forsythe* Actions.

### 1.      The *Dumond* Action Is Fundamentally Different From the *Forsythe* Actions.

The *Dumond* Action states a succinct, streamlined claim, asserted as a statutory derivative action against MFS, alleging that MFS charged excessive advisory fees in violation of section 36(b) of the ICA.  The *Dumond* Action claims is brought against two defendants, MFS Company and MFS Distributors, and relates only to eleven  funds owned by the *Dumond* Plaintiffs for which MFS provides investment advisory services and center on the  advisory and distribution fees of the selected funds for the one year period prior to the commencement of the action.   The *Dumond* Action does not challenge fees charged in the more than 100 other MFS Funds – which include money market funds, corporate bond funds, municipal bond funds and specialty funds – that are not owned by the named plaintiffs.

The *Forsythe* Actions, on the other hand, assert class claims arising out of a complex and detailed fraudulent scheme involving illicit payments to retail brokers, knowing breaches by fund trustees and false statements in fund prospectuses.  The *Forsythe* Actions are brought against numerous corporate and individual defendants, including 12 trustees, many of whom have separate counsel, for a veritable laundry list of violations associated with more than 100 separate funds in the MFS fund complex, all of which are named in the *Forsythe* Actions as nominal defendants.   It also asserts claims on behalf of the purchasers of 112 MFS Funds over the course of a four and one half year period from March 24, 1999 until November 17, 2003.

---

[13] *See also Aronson v. McKesson HBOC, Inc.,* Civil Action No. 99-20743, Order (N.D. Cal. Feb. 7, 2000) (Exhibit 6 hereto) (Docket Entry # 285) (ordering that the related derivative and ERISA action be coordinated but not consolidated with the securities class action).

Although both the *Dumond* Action and the *Forsythe* Actions include claims for excessive fees in violation of section 36(b) of the ICA, the facts underlying those claims are very different. The *Forsythe* Plaintiffs, for the purposes of their motion to consolidate, now seek to portray their case as an excessive fee case. However, even a cursory reading of the virtually identical complaints filed in the *Forsythe* Action, the *Eddings* Action and the *Koslow* Action, shows that **the focus of the complaints is on the improper use of fund assets to make improper and undisclosed payments to securities brokers to aggressively push MFS funds on their customers over funds from other companies. The *Forsythe* Actions also allege that the defendants filed false and misleading prospectuses for the MFS Funds, which was again designed to increase participation in the MFS funds**.

The arguments in the *Forsythe* Actions related to economies of scale and excessive management fees are incidental to the broader claims in the *Forsythe* Actions of widespread fraud at MFS. On the other hand, the claims in the *Dumond* Action contain focused allegations that MFS charged excessive investment advisory fees to the 11 MFS Funds at issue in that case. The *Dumond* Action alleges *no* fraud and the vast majority of the allegations in the *Forsythe* Actions have absolutely no relevance to the *Dumond* Action. Indeed, aside from the one cause of action the *Dumond* Action and the *Forsythe* Actions incidentally share, the other claims made in the *Forsythe* Actions are so different from the claims in the *Dumond* Action that they have different pleading requirements, different elements, different procedural requirements, different defendants, and, particularly with respect to the fraud allegations in the *Forsythe* Actions, different standards of proof.[14] *See Connell v. Bernstein-Macauley, Inc*, 67 F.R.D. 111, 113-14 (S.D.N.Y. 1975) (denying

---

[14]The *Forsythe* Plaintiffs make no substantive response to the *Dumond* Plaintiffs argument that their Section 36(b) claims are unlikely to withstand a motion to dismiss under *Olesh v. Dreyfus Corp.*, No. CV-94-1664 (CPS), 1995 WL 500491, *19 (E.D.N.Y. Aug. 8, 1995) (*citing Meyer v. Oppenheimer Management Corp.*, 764 F.2d 76, 81 (1985), and *quoting Gartenberg v. Merrill Lynch Asset Management, Inc.*, 694 F.2d 923, 928 (2d Cir. 1982)). Instead, they argue that they could always file an amended complaint to beef up their Section 36(b) claims (*Forsythe* Memorandum at 19-20). However, in the six months since filing their complaint, the *Forsythe* Plaintiffs have not done so. It also would be inappropriate for the *Forsythe* Plaintiffs counsel to ride on the coattails of the extensive investigation undertaken by counsel for *Dumond* Plaintiffs, and then argue that the *Dumond* Plaintiffs' complaint should be consolidated into *Forsythe* Action. *Cf.* Fed.

(continued...)

consolidation because the former pair of actions "concern[ed] both issues and parties not involved" in the latter pair of actions); *Continental Bank & Trust Co. v. OL.s.E.D. Platzer*, 304 F.Supp. 228, 229 (denying consolidation where "one one of three causes of action" in the former actions "relate[d] to the transaction which gave rise to both" of the other actions); *Ingentio v. Bermec Corp.,* 326 F.Supp. 1154, 1166-69 (S.D.N.Y. 1974) (consolidation denied since the wrongdoing in the cases was not uniform and not in the same time periods, even though the various actions asserted claims under the same provisions of the federal securities law against many of the same defendants).

### 2.   Consolidation of the *Dumond* Action with the *Forsythe* Actions Will Delay the Resolution of the *Dumond* Claims and Result in Severe Prejudice to the *Dumond* Plaintiffs.

If the *Dumond* Action is consolidated with the *Forsythe* Actions, the limited and succinct issues in the *Dumond* Action will immediately become bogged down by the complex, detailed and far-reaching claims in the *Forsythe* Actions. There are numerous issues in the *Forsythe* Actions that will need to be resolved before the case can proceed to the discovery phase and ultimately to a trial. Most of these issues are unique to the *Forsythe* Actions and would not appear in the *Dumond* Action if that action proceeded independently.

The *Dumond* Action is strictly a statutory derivative action brought on behalf of the eleven MFS funds outlined in the *Dumond* Complaint. The *Forsythe* Actions, on the other hand, are brought on behalf of a class, consisting of all investors who purchased or held shares in any of the 112 funds listed as nominal defendants during the time period of March 24, 1999 through November 17, 2003. Because the *Forsythe* Actions are brought on behalf of a potentially enormous class of investors, substantial discovery regarding and litigation over class certification must be resolved before the *Forsythe* Actions can progress to the merits. These class certification issues can often take months, if not years, to resolve.[15] The *Dumond* Action, on the other hand, as a statutory

---

[14](...continued)
R. Civ. P. 23(g)(1)(C)(i) (in appointing class counsel court must consider "the work counsel has done in identifying or investigating potential claims in the action.").

[15]A Rule 23(f) petition to the Court of Appeals by whichever party is aggrieved by this Court's class
(continued...)

derivative action, is not subject to any of those procedural hurdles.  There will be no Rule 23 or Rule 23.1 proceedings in the *Dumond* Action.  *See Daily Income Fund, Inc. v. Fox*, 464 U.S. 523, 540 (1984).  There also will be no need to litigate the standing of the *Dumond* Plaintiffs to sue on behalf of the 11 MFS Funds at issue because the *Dumond* Plaintiffs own shares in each of those funds.  The *Dumond* Action should not be delayed so that issues that have no relevance to its claims are litigated for years.

There are also a number of material differences between the *Dumond* Action and the *Forsythe* Action that have the potential to create conflicts and confusion if the cases are consolidated.  All of those issues will have the combined effect of increasing the burden on the Court rather than meeting the goal of consolidations:  to promote convenience and judicial economy.

One glaring difference between the *Forsythe* Actions and the *Dumond* Action is that, while the claims asserted in the *Dumond* Action are subject to a one-year statute of limitation period, *see* section 36(b)(3) of the ICA, 15 U.S.C. §80a-35(b)(3), the *Forsythe* Actions seek to represent a class of investors that held MFS mutual fund shares during a our and one-half year period that does not include half of the period for which the *Dumond* Plaintiffs seek damages.  Specifically, whereas the *Forsythe* Actions seek to represent a class of investors who held MFS mutual funds shares between March 24, 1999 and November 12, 2003, the *Dumond* Action seeks damages starting from one year prior to the initiation of the action, or from May 5, 2003, and continuing through trial (if the defendants continue to dodge the excessive Rule 12b-1 fees through trial).  The difference in the damage periods, creates the potential for conflicting interests within the same consolidated action and confusion at a trial as to what evidence is applicable to which time period and how to calculate damages for different time periods.  This conflict and the confusion that would result from consolidation outweigh the limited benefits consolidation would provide.

There is also the potential for conflict between the *Dumond* Action and the *Forsythe* Actions because the *Dumond* Action requires a bench trial, *see In re Evangelist*, 760 F.2d 27, 31-32 (1st Cir.

---

[15](...continued)
certification decision is almost a certainty in a massive class action like the one contemplated by the *Forsythe* Plaintiffs.

1985) (shareholder of investment company who sued company and its investment advisor, claiming that company was paying advisor to large a fee, was not entitled to a jury trial, as claim was basically equitable, despite shareholder's prayer for "damages" in his request for relief); *Kalish v. Franklin Advisers, Inc.*, 928 F.2d 590, 591 (2d Cir. 1991) (derivative action to recoup allegedly excessive fees paid by fund to investment advisor was equitable in nature and thus shareholder had not right to a jury trial), whereas the plaintiffs in the *Forsythe* Actions have demanded a jury trial.  The fact that the *Forsythe* Plaintiffs have demanded a jury trial while the *Dumond* Plaintiffs have not will most likely result in separate trials of the class claims and the derivative claims.  Consolidation of the class claims and derivative claims makes no sense if the claims must be tried separately. *See United States EPA v. Green Forest*, 921 F.2d 1394, 1403 (8th Cir. 1990) (upholding district court's refusal to consolidate actions in part because the claims in one action were to be tried to a jury and the claims in the other action were to be tried to the court); *Tucker v. Arthur Andersen & Co.*, 73 F.R.D. 316, 318 (S.D.N.Y. 1976) (denying motion to consolidate in part due to the fact the confusion would result from the facts that jury demands were made in one of the actions while the other action had to be tried to the court).

In sum, there are material differences between the *Forsythe* Actions and the *Dumond* Action which makes consolidation inappropriate.

## III.
## CONCLUSION

For the reasons set forth herein, and in the *Dumond* Plaintiffs' initial memorandum, the *Forsythe* Plaintiffs amended motion for consolidation and for appointment of tri-lead counsel and liaison counsel should be denied, *in toto*.

Dated: September 29, 2004                    Respectfully submitted:

                                             SHAPIRO HABER & URMY LLP

                                               /s/ Michelle H. Blauner
                                             Edward F. Haber BBO #215620
                                             Michelle H. Blauner BBO #549049
                                             53 State Street
                                             Boston, MA  02109
                                             Telephone: (617) 439-3939
                                             Facsimile: (617) 439-0134

-19-

Lynn Lincoln Sarko
Michael D. Woerner
Gretchen F. Cappio
KELLER ROHRBACK, L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
Telephone: (206) 623-1900
Facsimile: (206) 623-3384

Ron Kilgard
Gary Gotto
KELLER ROHRBACK P.L.C.
National Bank Plaza
3101 North Central Avenue, Suite 900
Phoenix, AZ  85012
Telephone: (602) 248-0088
Facsimile: (602) 248-2822

Michael J. Brickman
James C. Bradley
Nina H. Fields
RICHARDSON,   PATRICK,   WESTBROOK   &
BRICKMAN, LLC
174 East Bay Street
Charleston, SC  29401
Telephone: (842) 727-6500
Facsimile: (843) 727-3103

Guy M. Burns
Jonathan S. Coleman
Becky Ferrell-Anton
JOHNSON, POPE, BOKOR, RUPPEL & BURNS,
L.L.P.
100 North Tampa Street, Ste. 1800
Tampa, FL  33602
Telephone: (813) 225-2500
Facsimile: (813) 223-7118

Attorneys for the *Dumond* Plaintiffs