**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| Eric Forsythe, Individually And On Behalf Of All Others Similarly Situated,<br><br>        Plaintiff,<br><br>  v.<br><br>Sun Life Financial Inc., et al.,<br><br>        Defendants. | Civil Action No. 04cv10584 (NG) |
| Larry R. Eddings, Individually And On Behalf Of All Others Similarly Situated,<br><br>        Plaintiff,<br><br>  v.<br><br>Sun Life Financial Inc., et al.,<br><br>        Defendants. | Civil Action No. 04cv10765 (GAO) |

**SUPPLEMENTAL AFFIDAVIT OF PROFESSOR ROBERT H. ARONSON**

  I, Robert H. Aronson, being duly sworn, hereby declare that the following is true to the best of my knowledge, information, and belief.

  1.  This affidavit supplements my earlier affidavit filed in this matter.

  2.  I have read the Forsythe and Eddings plaintiffs' memorandum dealing with the ethics issues I raised in my previous affidavit and wish briefly to respond. Proposed Co-Lead Counsel Milberg Weiss Bershad & Schulman LLP ("Milberg Weiss") and its associated counsel[1]

---

[1] Firms joining Milberg Weiss Bershad & Schulman LLP, Proposed Co-Lead Counsel, in their Amended Motion for Appointment of Co-Lead Plaintiffs, Appointment of Co-Lead Counsel, Appointment of Liaison Counsel include:

appear to contend that they have solved their conflict of interest problem by bringing into this case a plaintiff in the market timing cases, the City of Chicago Deferred Compensation Plan ("Chicago"), and its lawyer in that case, the Bernstein Litowitz Berger & Grossmann LLP law firm ("Bernstein Litowitz"). In short, Milberg Weiss's and its associated counsels' attempt to cure its ethical conflict by involving the law firm of Bernstein Litowitz has exacerbated its ethical conflict. Now, in addition to Milberg Weiss, Weiss & Yourman, Stull, Stull & Brody, Gilman & Pastor, Schiffrin & Barroway, and Moulton & Gans, which are all simultaneously prosecuting MFS Market Timing and derivative cases,[2] the Bernstein Litowitz law firm is also plagued with a conflict of interest prohibited by Rule 1.7 of the Rules of Professional Conduct.

   3. It is my understanding that the Bernstein Litowitz firm represents Chicago as a "Lead Plaintiff in one of the Market Timing cases," in which certain MFS mutual funds are named as defendants. Forsythe and Eddings Br. at 2. On the other hand, Bernstein Litowitz also seeks to represent Chicago as "a lead plaintiff and proposed class representative" in the above-captioned cases in which derivative claims are made on behalf of certain MFS mutual funds. *Id.*

   4. In my opinion, Bernstein Litowitz's simultaneous representation of Chicago in both the class and derivative cases described above presents a disqualifying conflict that cannot be waived because it involves Bernstein Litowitz's representing certain MFS mutual funds in one case, while simultaneously suing them in another case. As I described in my previous affidavit, the conflict is not merely technical. Aronson Aff. at ¶ 4.

   5. As stated in Rule 1.7, dual representation of clients with adverse interests is permitted only if the lawyer reasonably believes the representation will not adversely affect the relationship with the other client and each client consents after consultation and a full disclosure of the material facts. In a situation where an attorney has a potential conflict when representing

---

Moulton & Gans, P.C. (Proposed Liaison Counsel), Bernstein Litowitz Berger & Grossman LLP (Proposed Co-Lead Counsel), Weiss & Yourman (Proposed Co-Lead Counsel), Law Offices of Charles J. Piven, P.A., Stull, Stull & Brody, Schiffrin & Barroway, LLP, and Gilman and Pastor LLP.
[2] Dumond Plaintiffs' Br. at 10.

two or three clients, the attorney could potentially meaningfully obtain consent from the clients whose interests conflict. However, in the situation presented here, the clients who must consent to the representation are the class plaintiffs and the derivative plaintiffs. As stated in my previous affidavit, the class plaintiffs in the market timing cases are really three groups of plaintiffs with sometimes-competing interests vis-à-vis the derivative plaintiffs. Aronson Aff. at ¶ 5.

6.   Under Rule 1.7, obtaining the clients' consent as to a potential conflict hinges on the fact that the attorney *reasonably believes* at the outset that the representation will not adversely affect the relationship with the other client. One test for identifying an impermissible conflict is whether a disinterested lawyer would conclude that the client should not agree to the representation under the circumstances. In my opinion, due to the competing interests of the class and derivative plaintiffs, it would be unreasonable for a disinterested lawyer to allow the simultaneous representation of plaintiffs in the class and derivative cases, as Milberg Weiss and its associated counsel have tried to do here. Thus, the conflict here is likely unwaivable. Allowing the *same client*, Chicago, to consent to such a conflicted representation on behalf of absent class members in two very different kinds of litigation would vitiate the very purposes of Rule 1.7.

7.   Even if a few of the class plaintiffs were able to consent to the representation through Chicago or another "lead plaintiff," the problem remains that there would inevitably be absent class members whose interests would be totally neglected in negotiations with counsel regarding the conflict. (*See* Aronson Aff. at ¶ 5 regarding three different groups of shareholders within the class.) Moreover, the real party at interest in the derivative case would be the funds themselves. I know of no procedure for obtaining the consent of the beneficiary entities to waive any conflict, even if the named plaintiffs were to consent. Further, since Chicago is trying to wear two hats – both as a lead plaintiff in the class case and as a named plaintiff in the derivative

litigation – its ability to adequately represent the interests of the other plaintiffs in either litigation is severely and irreparably compromised.

8. In my opinion, the ethical conflict presented by simultaneously representing a class of mutual fund investors (including former investors) suing a mutual fund in the class cases, while bringing a derivative suit in the fee cases, to restore assets to the same fund, is real, serious, and a valid basis for disqualification.

9. One of the bases for requiring client consent, even when two clients are on the same side of a case (e.g., co-plaintiffs or co-defendants), is that an attorney who wishes to represent both (and keep both satisfied) will take positions, make arguments, and negotiate in a way that would accommodate and be satisfactory to both, even though not necessarily in the **best** interest of one or both. For example, it might be in the best interest of the current shareholder class whose members were not shareholders during the market timing to negotiate for a settlement that enhances the present value of their shares in return for reducing claims concerning the damage done previously. However, such a litigation position would be contrary to the best interests of the shareholder class whose members are no longer shareholders. An attorney or firm representing both classes, against and on behalf of certain MFS mutual funds, would thus be unable to provide conflict-free representation and advice. Even the effort to accommodate the interests of all clients would deprive those clients of truly independent, conflict-free representation. At a minimum, the informed consent of all clients would be required.

10. Milberg Weiss and its associated counsel have argued to the Court that my original affidavit is deficient because it does not deal with case authority. Forsythe and Eddings Br. at 8. While Rule of Professional Conduct 1.7 and its underlying policy bases constitute sufficient and persuasive authority, extant case law shows that Forsythe and Eddings' ethical problem is real and serious, not merely "theoretical." *See Brickman v. Tyco Toys, Inc.*, 731 F. Supp. 101, 108-109 (S.D.N.Y. 1990) (due to conflict of interest, shareholder was not adequate

class representative when he tried simultaneously to bring class and derivative claims); *Koenig v. Benson*, 117 F.R.D. 330, 334-35 (E.D.N.Y. 1987) (conflicts precluded named plaintiff from bringing class and derivative claims); *Petersen v. Federated Dev. Co.*, 416 F. Supp. 466, 475 n.6 (S.D.N.Y. 1976) (due to potential conflict of interest, plaintiff must choose between personal interest and that of the corporation); *Stull v. Baker*, 410 F. Supp. 1326, 1336- 337 (S.D.N.Y. 1976) ("it is difficult to understand how an attorney can properly represent the interests of a corporation and its present shareholders in a derivative action brought on their behalf, and, at one and the same time, properly represent its present and/or former shareholders in a class action against the corporation, without compromising his independence and professional judgment and loyalty to these two groups of clients with potentially conflicting interests"); *see also King v. Sharp*, 63 F.R.D. 60, 65 (N.D. Tex. 1974) (trustee for corporation cannot also represent class of creditors).

11.   I hold this opinion as a recognized expert in the field of legal ethics to a reasonable degree of professional certainty.

I certify under penalty of perjury of the laws of Washington and of the United States that the foregoing is true and correct.

DATED this  29th  day of  September  , 2004, at   Seattle   , Washington.

    /s/ Robert H. Aronson
Robert H. Aronson, Professor of Law
University of Washington School of Law

5