UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ERIC FORSYTHE, Individually And On Behalf Of All Others Similarly Situated, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>SUN LIFE FINANCIAL INC., et al., )<br>)<br>Defendants. )<br>) | Civil Action No. 04cv10584 (GAO)<br><br>**Consolidated Case Nos.:**<br>04cv10764 (GAO)<br>04cv11019 (GAO) |

**MEMORANDUM OF LAW IN SUPPORT OF THE RENEWED MOTION
FOR APPOINTMENT OF CO-LEAD PLAINTIFFS, APPOINTMENT OF
CO-LEAD COUNSEL AND APPOINTMENT OF LIAISON COUNSEL**

**PRELIMINARY STATEMENT**

Plaintiffs Eric Forsythe ("Forsythe"), Larry R. Eddings ("Eddings") and the City of Chicago Deferred Compensation Plan ("Chicago") (collectively, the "Plaintiffs") hereby renew their motion for an Order (attached hereto): (i) appointing Forsythe, Eddings and Chicago as Co-Lead Plaintiffs; (ii) approving Plaintiffs' selection of Milberg Weiss Bershad & Schulman LLP ("Milberg Weiss"), Weiss & Lurie[1] and Bernstein Litowitz Berger & Grossmann LLP ("Bernstein Litowitz") as Co-Lead Counsel in the above-captioned consolidated action (the "Action"); and (iii) approving Plaintiffs' selection of Moulton & Gans, P.C. ("Moulton & Gans") as Liaison Counsel (collectively, the "*Forsythe* Counsel"). Plaintiffs submit that on the current record they have now addressed satisfactorily all of the issues raised by this Court in its January 13, 2005 Memorandum and Order (the "January Order").

---

[1] On November 10, 2004, Weiss & Yourman changed its name to Weiss & Lurie.

In the January Order, this Court denied, without prejudice, the appointment of Lead Plaintiff, Lead Counsel and Liaison Counsel because of a concern as to whether the *Forsythe* Counsel's simultaneous representation of Plaintiffs in this Action and in the MFS market-timing litigation[2] involves an actual or potential conflict of interest. The Court directed Plaintiffs to file a consolidated amended complaint "so that the action may proceed towards class certification, at which time motions to appoint lead plaintiffs and lead counsel may be renewed." January Order at 6-7. The Court further stated that it would allow Plaintiffs' counsel further opportunity to address the conflict of interest issues raised. *Id.* at 6.

Together with this memorandum, Plaintiffs are filing several declarations which demonstrate the lack of any disabling conflict. These include a Declaration of Robert S. Gans, a member of the Bernstein Litowitz firm (the "Gans Decl."), filed concurrently herewith.[3] Each of the proposed Co-Lead Plaintiffs have also filed declarations consenting to, and endorsing, this motion and confirming their full knowledge of the conflict issues raised by this Court, the history of pertinent activity in the MDL litigation, and the simultaneous representation by their counsel of plaintiffs in the MDL litigation and in the case at bar.[4] Thus, the *Forsythe* Counsel and

---

[2] Chicago and Bernstein Litowitz are Lead Plaintiff and Lead Counsel, respectively, for the consolidated class claims involving MFS mutual funds in the multidistrict market-timing litigation in the District of Maryland ("MDL" or "market-timing"). Milberg Weiss, Weiss & Lurie and Moulton & Gans appear as counsel for certain plaintiffs, and Milberg Weiss and Bernstein Litowitz are co-chairs of the Plaintiffs' Steering Committee, in the MDL litigation.

[3] Robert S. Gans is counsel for Chicago, which, as noted above, is a movant for co-lead plaintiff in this action and the court-appointed lead class plaintiff in the MFS MDL litigation.

[4] *See* Declaration of Chicago Deferred Compensation Plan in Further Support of Plaintiffs' Renewed Motion for Appointment of Co-Lead Plaintiffs, Co-Lead Counsel and Liaison Counsel (the "Chicago Decl."); Declaration of Proposed Co-Lead Plaintiff Eddings in Further Support of Plaintiffs' Renewed Motion for Appointment of Co-Lead Plaintiffs, Co-Lead Counsel and Liaison Counsel (the "Eddings Decl."); and Declaration of Proposed Co-Lead Plaintiff Forsythe in Further Support of Plaintiffs' Renewed Motion for Appointment of Co-Lead Plaintiffs, Co-

Continued on next page

Plaintiffs have complied with the provisions of Mass. R. Prof. C. 1.7 (2005) ("Rule 1.7") concerning consultation and consent, and any potential or perceived conflict has effectively been addressed.

In addition, Plaintiffs have filed the Declaration of Bruce Green, a prominent expert in the field of legal ethics, in support of this motion. The Declaration of Bruce Green in Support of Plaintiffs' Renewed Motion for Appointment of Co-Lead Plaintiffs, Co-Lead Counsel and Liaison Counsel ("Green Decl.") is being filed concurrently herewith.[5] Professor Green has reviewed the current record. Green Decl. at ¶¶ 18-32. In his expert opinion, no disabling actual or potential conflict of interest exists. *Id.* at ¶¶ 38-41. Professor Green concludes that "the concurrent representation does not give rise to an impermissible conflict of interest" (*id.* at ¶ 1), and that, "in my opinion . . . the Court's concerns are adequately resolved by the submissions being made to the Court in response to its January 13, 2005 Opinion." *Id.* at ¶ 38.

As discussed below, the record conclusively shows, first, that the MFS Funds were not dropped as defendants from the market-timing litigation to enable the *Forsythe* Counsel to bring this case as a derivative action on behalf of the MFS Funds. Rather, the amended complaints in the MDL actions with respect to *all* 16 mutual fund families involved in the MDL dropped the

---

Lead Counsel and Liaison Counsel (the "Forsythe Decl."). All three Plaintiffs' declarations are being filed concurrently herewith.

[5] Professor Bruce A. Green is the Stein Professor at Fordham University School of Law. He has served as a law clerk to Judge James L. Oakes of the U.S. Court of Appeals for the Second Circuit and Justice Thurgood Marshall of the U.S. Supreme Court. He was also an Assistant United States Attorney for the Southern District of New York. He has regularly taught courses in the area of legal ethics at Fordham, and speaks frequently at Continuing Legal Education programs on the subject of legal ethics. He has also authored a variety of scholarly articles and other writings in the area of legal ethics, and testified on legal ethics issues in judicial proceedings and submitted expert opinions to courts in numerous cases.

3

funds as defendants because of a concern that suing the funds would be adverse to the interests of persons represented on the class claims – the fund shareholders.

Second, the record on this motion shows that the MFS trusts (the "registrants") were not sued as a back door way of getting at fund assets. Rather, they were sued because they are proper defendants under Section 11 of the Securities Act of 1933 and they appeared to have an identity and a role that was different from the funds. The Gans and Chicago Declarations confirm that if, on discovery, it appears that the registrants have no assets other than the assets of the funds, the registrants will be dropped as defendants in the market-timing litigation. Therefore, the record is very clear that the market-timing plaintiffs are neither suing the MFS funds nor seeking recovery from any fund assets.

Third, the record shows that, after full disclosure of all the relevant facts to the Lead Plaintiff in the MFS market-timing litigation and the proposed Co-Lead Plaintiffs in this consolidated action, those plaintiffs have expressly consented to, and endorse, their continued representation by the *Forsythe* Counsel in both proceedings.

## **PROCEDURAL HISTORY**

On May 14, 2004, plaintiffs Eddings and Forsythe filed a motion for consolidation and a motion to appoint Co-Lead Counsel and Liaison Counsel (the "Consolidation and Lead Counsel Motions"), and on September 15, 2004, Plaintiffs filed an amended motion for consolidation and appointment of Co-Lead Counsel (the "Amended Motion"). The Amended Motion proposed plaintiffs Eddings, Forsythe, and Chicago as Co-Lead Plaintiffs, Milberg Weiss, Weiss & Lurie, and Bernstein Litowitz as Co-Lead Counsel, and Moulton & Gans as Liaison Counsel.

On October 20, 2004, this Court heard oral argument on the motion to consolidate and appoint Co-Lead Plaintiff, Co-Lead Counsel and Liaison Counsel. Although the Court granted the consolidation motion in part, it denied, without prejudice, the appointment of Co-Lead

4

Plaintiff, Co-Lead Counsel and Liaison Counsel in the *Forsythe* case. However, the Court held that the *Forsythe* Plaintiffs should file a consolidated amended complaint and, thereafter, a motion for class certification (being filed concurrently herewith) along with the instant renewed motion to appoint co-lead plaintiffs and co-lead and liaison counsel. The January Order expressly allowed Plaintiffs to further address the conflict of interest issues that had been presented.

Plaintiffs filed their Consolidated Amended Complaint on March 3, 2005. For the reasons stated below, Plaintiffs' motion for appointment of Co-Lead Plaintiffs and Co-Lead and Liaison Counsel should be granted.

## ARGUMENT

### POINT I

**THE *FORSYTHE* COUNSEL'S CONCURRENT REPRESENTATION OF PLAINTIFFS IN THIS ACTION AND IN THE MFS MARKET-TIMING LITIGATION PRESENTS NO ACTUAL OR POTENTIAL CONFLICT OF INTEREST**

In its January Order, the Court questioned whether counsel might potentially violate Rule 1.7 if permitted to simultaneously represent plaintiffs in this action and in the market-market-timing litigation. January Order at 5-6. In particular, the Court raised two principal issues: (1) whether representation of the MFS market-timing plaintiffs is adverse to the MFS mutual funds on whose behalf the *Forsythe* Counsel are asserting derivative claims before this Court; and (2) insofar as the market-timing plaintiffs have committed not to seek a recovery from the MFS funds, has the *Forsythe* Counsel's exercise of professional judgment in the market-timing cases been limited or impaired by their interest in serving as counsel in this case? In addition, the Court also raised the general question as to whether the *Forsythe* Counsel's representation of "former shareholders [in the market-timing cases] might be materially limited by the law firms' responsibilities to the funds in the present action, or vice versa" and if so,

5

whether the "various potentially affected clients have consented after consultation." January Order at 6. As Plaintiffs now discuss, the record confirms that the concurrent representation involved does not present any actual, or even potential, conflict of interest. Moreover, even if some theoretical "conflict" were to exist, the *Forsythe* Counsel reasonably believe that representation of the market-timing plaintiffs will not be adversely affected by Counsel's representation of Plaintiffs in this action (or vice versa) and, after full consultation, their clients in both actions have consented to this concurrent representation.

A. **The Funds Were Dropped As Defendants In All The MDL Timing Cases Because Of A Recognition By MDL Plaintiffs' Counsel and the MDL Court That Seeking Recovery From Fund Assets Would Impair, Not Benefit, The Interests Of The Class Members**

In its January Order, this Court expressed a concern that, in effect, the MFS timing complaint does seek to recover fund assets and the *Forsythe* Counsel may now be saying they will not take any fund assets because they desire to bring derivative claims on behalf of the MFS funds in this action. The declarations that have now been submitted to this Court show that the facts do not support these concerns. As discussed below, the market-timing Lead Plaintiff (Chicago) made the decision not to seek any recovery from fund assets in order to *protect* the class in the MFS market-timing case, and did so long before Chicago sought to be a lead plaintiff here. Furthermore, that position was consistent with the positions taken by plaintiffs in the 15 other MDL cases not involving MFS. It was also consistent with the MDL Court's own expressed view as to whether it made sense for the market-timing plaintiffs to be suing the Funds.

The Gans Declaration sets forth the pertinent history of activity in the MDL. Prior to the appointment of Chicago as Lead Plaintiff, numerous complaints had already been filed against MFS by other parties, some of which named the funds as defendants without Chicago's knowledge or consent. After those actions were consolidated under the leadership of Chicago,

6

the MDL Court directed Chicago to file a Consolidated Amended Complaint. As stated in the Gans Declaration, Chicago and Bernstein Litowitz determined not to include the funds as defendants in that complaint because suing the funds would be adverse to the interests of the class members:

> In consultation with [Bernstein Litowitz] in connection with the preparation of the Consolidated Amended Complaint, Chicago determined that the funds themselves were inappropriate defendants, since any recovery taken from investor deposits (including securities, cash or other assets related or traceable thereto) would simply take money from the same Class of persons on whose behalf the lawsuit was brought.

Gans Decl. at ¶ 4. The Chicago Declaration specifically confirms the accuracy of that statement, and further states that Chicago "made an informed and reasonable decision in dropping these funds as defendants. This decision had absolutely nothing to do with Chicago's motion to be appointed a co-lead plaintiff in this Action, and was actually made *long before* Chicago even filed a motion in this Action." *See id.* at ¶ 4 (emphasis added).

Even before the funds were dropped in the market-timing cases as defendants, the MDL Court itself expressed a concern that it made no sense for the market-timing plaintiffs to be suing the funds. At a hearing, it stated:

> . . . are the plaintiffs in the investor classes really looking for the funds as the source of payment? I understand the legal theory why the fund's *named as a defendant*, because of the prospectuses were put out by the fund. And I understand that some injunctive relief may relate to the fund.
>
> To me, sitting here in the provinces, it doesn't make a lot of sense to me, and maybe I'm not understanding something, why one group of people who own mutual funds, people who, say, maybe bought and sold, should recover against people who still hold the funds. I mean, that's like one average Joe being victimized by the conduct of third parties allegedly, and then being victimized again by having to compensate the plaintiffs who have already sold.
>
> Maybe I'm missing something. But these are the kind of things we want you to focus on.

Transcript of Court Hearing in *In re: Mutual Funds Investment Litigation*, MDL No. 1586 (D. Md. Apr. 2, 2004) at 16 ("MDL Hearing Transcript") (emphasis added).[6]

One of the numerous plaintiffs' counsel at the MDL hearing, David Bershad of Milberg Weiss, agreed with the MDL Court that the issue of naming the Funds as defendants needed to be addressed in the amended complaints:

> We, on the class side, are cognizant of the issue brought up -- do we want to take money from the fund and give it to other people who are in the fund? There are lots of issues that we can begin to address and we don't know the answers to, such as whether there is insurance, whether there may be individuals who should be doing something. But we are going to address that and do it collegially with other counsel in the entire plaintiffs' camp.

MDL Hearing Transcript at 40.

Furthermore, the funds that were dropped as defendants in the market-timing cases were not only the MFS funds. Rather, the Lead Plaintiffs in *all* the other mutual fund family tracks in the MDL action arrived at the same conclusion that the funds were inappropriate defendants because a recovery from the funds would simply take money from the class plaintiffs themselves. As stated in the Gans Declaration, "as a result, none of the consolidated amended complaints filed in the MDL action on September 30, 2004 included the funds themselves as defendants." Gans Decl. at ¶ 4.

As Professor Green notes, the market-timing litigation spans 16 fund families, has 18 plaintiffs firms prosecuting the cases, and a four-judge panel overseeing the proceedings. Therefore, "it is unlikely, if not impossible, that either the particular parties before this Court or their counsel has the ability to manipulate the potential multi-billion dollar MDL action to gain

---

[6] The MDL Court's comments are consistent with the recognition by other courts that a mutual fund is not like a typical corporation, it is "'a mere shell,' a pool of assets consisting of portfolio securities that belongs to the individual investors holding shares in the fund." *Tannenbaum v. Zeller*, 552 F.2d 402, 405 (2d Cir. 1977).

an advantage in the one case before this Court." *See* Green Decl. at ¶ 37; *see also In re Dayco Corp. Derivative Sec. Litig.*, 102 F.R.D. 624, 631-32 (D. Ohio 1984) (acknowledging that the presence of other counsel and the court's ability to review any settlement insures that the allegedly conflicted counsel will not take action to the detriment of the derivative suit). Clearly the decision to drop the funds as defendants in the MDL cases was made by plaintiffs' counsel across the entire MDL proceeding, and had nothing to do with the *Forsythe* Counsel's desire to represent Plaintiffs on a derivative claim in this case.

The record is therefore overwhelming that the MFS funds were not dropped as defendants in the market-timing litigation because the *Forsythe* Counsel were seeking to clear a path for themselves to represent the MFS funds derivatively in this action. Rather, they were dropped because the Plaintiffs and their counsel, as well as the MDL Court, believed that suing the funds would be adverse to the interests of the MDL class members.

**B.    The Market Timing Lead Plaintiff And Counsel Have Not Sued the MFS Funds, and Have Committed Themselves, On The Record, To Drop The Timing Claims Against The Registrants If The Registrants Have No Assets Other Than Fund Assets**

In the January Order, the Court stated that even though the market-timing case does not name any of the MFS funds as defendants, by suing the registrants, the timing Plaintiffs are seeking a recovery that "would effectively come from the fund's assets." January Order at 5. As discussed above, however, the record shows that the clear intent of the Lead Plaintiff and Lead Counsel in the market-timing litigation is to avoid seeking any recovery that would impair the Funds' financial condition. It also shows that the registrants were not sued as alter egos of the Funds or as an indirect way of recovering Fund assets. Gans Decl. at ¶¶ 3, 5; Chicago Decl. at ¶ 2. Chicago and Bernstein Litowitz have unequivocally confirmed that if the registrants have no assets other than those of the Funds, they will drop the claims against the registrants in the MDL proceeding.

As expressly stated in the Gans Declaration:

> Chicago did not name the registrants of the various funds as defendants in the MDL Action for the purpose of obtaining a recovery from investor deposits (including securities, cash or other assets related or traceable thereto). Instead, Chicago named those entities as defendants in the MDL Action solely to the extent that they have a separate corporate existence from the funds themselves, and only for the purpose of seeking a recovery from assets aside from investor deposits (including securities, cash or other assets related or traceable thereto) held by the registrants. If, after an opportunity for discovery, Chicago learns that these entities have no assets aside from investor deposits, then it will drop them as defendants in the MDL Action.

Gans Decl. at ¶ 5. The declaration of Chicago contains an almost identical statement. Chicago Decl. at ¶ 2.

The foregoing facts confirm that the market-timing litigation is not -- in form or in substance -- a suit against the MFS funds. Therefore, counsel's derivative representation of the MFS funds in this Action would not be directly, or even indirectly, adverse to their concurrent representation of class plaintiff claims in the MFS market-timing case, and no conflict of interest exists. *See* Green Decl. at ¶ 39.

### C.   The *Forsythe* Counsel's Representation Of Their Clients Will Not Be Materially Limited By Their Responsibilities To The Plaintiffs In Either Of The Two Proceedings

In its January Order, the Court raised the question whether the *Forsythe* Counsel's representation of plaintiffs in the market-timing cases might be materially limited by their responsibilities to the Plaintiffs in the present case, or vice versa. For the reasons stated at paragraph 41 of the Green Declaration, that will not be a concern in the present situation. As stated by Professor Green:

> Based on the submissions. . . there is no evident reason why the representation of one set of clients would limit the representation of the other. Plaintiffs in the MDL action and the excessive-fee litigation are investors in MFS Funds. The Class definition in both cases is similar, although the MDL action covers a slightly longer

10

> time frame. The cases share some common defendants, although they are based on different legal theories and allege different improper activities by defendants. Because both actions seek a recovery on behalf of an almost identical class of investors, a recovery in either action will benefit essentially the same investors. Similarly, a recovery on behalf of the funds, in either case, will benefit all current investors. The cases are complementary in that they seek to recover all potential damages on various legal theories.

Green Decl. at ¶ 41.

In both the MDL action and the present case, the proposed Class includes both current and former shareholders. Consequently, *Forsythe* Counsel have every incentive to seek a resolution of both cases in a way that is fair to both groups of shareholders. Of course, any result that is fair to current shareholders will also be fair to the MFS funds.

Because the class and derivative claims in both actions are consistent and complementary, the *Forsythe* Counsel's representation of plaintiffs in one proceeding will not be materially limited by their responsibilities to the plaintiffs in the other.

### D. Even if a Potential Conflict Of Interest Exists, All of the Proposed Lead Plaintiffs Have Consented to Representation After Full Consultation And Counsel Reasonably Believe the Representation will not be Adversely Affected

As Plaintiffs have demonstrated above, no disabling conflicts exist. Furthermore, even if the Court were to conclude that a conflict exists, Rule 1.7 has been nevertheless satisfied because all of the proposed Co-Lead Plaintiffs have consented to representation after full consultation.

Rule 1.7(a) precludes a lawyer from undertaking or continuing representation directly adverse to a client without that client's consent. In addition, under Rule 1.7(b), a lawyer may not represent a client "if the representation of that client may be materially limited by the lawyer's responsibilities to another client or third person, or by the lawyer's own interests, unless: (1) the lawyer reasonably believes the representation will not be adversely affected; and (2) the client consents after consultation." Here, all clients involved in this Action and the MFS market-timing

11

case have consented to the concurrent representation after detailed discussions with counsel. Chicago Decl. at ¶¶ 3-4; Eddings Decl. at ¶ 8; Forsythe Decl. ¶ 8. Rule 1.7's requirements have thus been satisfied in that regard.

Furthermore, the *Forsythe* Counsel reasonably believe that the simultaneous representation involved will not adversely affect their relationship with either set of clients. As shown above, there is a great consistency between the interests being represented by the *Forsythe* Counsel in the two proceedings, in light of the fact that the real beneficiaries of the derivative claims are the current shareholders who are class members in both litigations. The objective of these litigations is to seek to return all shareholders (both current and former) and the funds to the status quo they would have enjoyed absent the wrongdoing. The *Forsythe* Counsel believe that a recovery can readily be structured to place the funds and their current and former shareholders in that position.

The Lead Plaintiff and Lead Counsel in the MFS timing litigation have committed themselves not to seek fund assets either through a direct action against the funds or indirectly by pursuing fund assets held by the registrants. Therefore, the *Forsythe* Counsel reasonably believe that their activities in the market-timing case will not injure the funds that they seek to represent derivatively in the case at bar. Nor do counsel perceive any respect in which their pursuit of a derivative recovery for the funds in this Action would impair the interests of the class members in the market-timing cases.

Furthermore, as noted by Professor Green, the market-timing litigation includes many plaintiffs' firms not involved in this action, and substantial oversight is provided by the four-judge panel overseeing the MDL proceedings. It is unlikely, if not impossible, that the *Forsythe* Counsel could manipulate those proceedings to gain an advantage in this case (*see* Green Decl. at ¶ 37) and the *Forsythe* Counsel have reasonably concluded that their representation of Plaintiffs

in this action will not adversely affect their representation of or relationship with the class members in the market-timing case.

## POINT II

### THE COURT SHOULD APPOINT THE LAW FIRMS OF MILBERG WEISS, WEISS & LURIE, AND BERNSTEIN LITOWITZ AS CO-LEAD COUNSEL IN THIS ACTION

As demonstrated above, there are no conflicts with the *Forsythe* Counsel's dual representation in this Action and the market-timing case. Moreover, the proposed Co-Lead Plaintiffs want to continue with these lawyers as their counsel. Thus, this Court should appoint the law firms of Milberg Weiss, Weiss & Lurie and Bernstein Litowitz as Co-Lead Counsel of the Actions as discussed in the Consolidation and Lead Counsel Motions and the Amended Motion. Milberg Weiss, Weiss & Lurie and Bernstein Litowitz have substantial experience prosecuting shareholder and securities class and derivative actions, and have the resources necessary to efficiently conduct this litigation.[7] All three firms are well qualified to act as Co-Lead Counsel by virtue of their resources, experience and track record in the area of class action litigation.

Milberg Weiss has spearheaded some of the largest and most complex class actions in history, such as *In re NASDAQ Market-Makers Antitrust Litig.*, Civ. No. 3996 (S.D.N.Y.), *In re Initial Public Offering Sec. Litig.,* Master File No. 21 MC 92 (S.D.N.Y.), and *In re Raytheon Co. Sec. Litig.*, 99-12142-PBS (D. Mass). Weiss & Lurie has been commended by several courts for its expertise and ability in prosecuting such cases as *In re United Telecomm, Inc. Sec. Litig.*,

---

[7] The Bernstein Litowitz and Moulton & Gans firm resumes were attached to the Declaration of Janine L. Pollack In Support Of The Amended Motion For Appointment Of Co-Lead Plaintiffs, Appointment Of Co-Lead Counsel And Appointment Of Liaison Counsel, filed on September 15, 2004. The firm resumes of Milberg Weiss and Weiss & Yourman were previously submitted with the Declaration of Kim E. Levy In Support Of The Appointment of Lead Counsel and Liaison Counsel, filed on May 14, 2004.

No. 90-2251-0 (D. Kan.), *In re VeriFone Inc. Sec. Litig.*, No. C-93-3640 DCJ (N.D. Cal.), and *In re Western Digital Sec. Litig.*, SACV 91-375(A) GLT (RWRx) (C.D. Cal.). Likewise, Bernstein Litowitz has served as lead counsel in some of the largest securities fraud class actions in history, including *In re WorldCom, Inc. Sec. Litig.*, No. 02-CV-3288 (DLC), *In re Bristol-Myers Squibb Sec. Litig.* No. 02-CV-2251 (LAP), *In re Cendant Corp. Litig.*, No. 98-CV-1664 (WHW) (D.N.J.), *Aronson v. McKesson HBOC, Inc.*, No. 99-CV-20743 (RMW) and *In re Lucent Technologies, Inc. Sec. Litig.*, No. 00-CV-621 (JAP) (D.N.J.). Accordingly, the Court can rest assured that Milberg Weiss, Weiss & Lurie and Bernstein Litowitz will be capable of harmonizing the efforts of all counsel involved in this Action.

  The law firm of Moulton & Gans, P.C. should be appointed as Liaison Counsel. Moulton & Gans, P.C. has significant experience, and was appointed special liaison counsel in *In re Raytheon Company Sec. Litig.,* 99-12142-PBS (D. Mass). This appointment will promote judicial economy and is consistent with the recommendations of § 10.22 of the Manual for Complex Litigation (4th ed. 2004), which discusses the role of counsel in multiparty litigation.

## **CONCLUSION**

For the reasons detailed herein and in their prior submissions, Plaintiffs respectfully request this Court to: (i) appoint Forsythe, Eddings and Chicago as Co-Lead Plaintiffs; (ii) appoint Milberg Weiss, Weiss & Lurie and Bernstein Litowitz as Co-Lead Counsel to oversee the Actions; and (iii) appoint Moulton & Gans as Liaison Counsel.

Dated:   April 14, 2005                         Respectfully submitted,

**MOULTON & GANS, P.C.**

By: __/s/ Nancy Freeman Gans_____
     Nancy Freeman Gans (BBO #184540)
33 Broad Street, Suite 1100
Boston, Massachusetts  02109-4216
(617) 369-7979

*Counsel for Plaintiffs Eric Forsythe and Larry R. Eddings and Proposed Liaison Counsel*

**MILBERG WEISS BERSHAD
  & SCHULMAN LLP**
Jerome M. Congress
Janine L. Pollack
Kim E. Miller
Michael R. Reese
One Pennsylvania Plaza
New York, New York  10119-0165
(212) 594-5300

*Counsel for Plaintiff Eric Forsythe and Proposed Co-Lead Counsel*

**BERNSTEIN LITOWITZ BERGER
   & GROSSMANN LLP**
Alan Schulman
Robert S. Gans
Timothy A. DeLange
Jerald D. Bien-Willner
12544 High Bluff Drive, Suite 150
San Diego, California 92130
(858) 793-0070

*Counsel for Plaintiff Chicago Deferred Compensation Plan and Proposed Co-Lead Counsel*

**WEISS & LURIE**
Joseph H. Weiss
Richard Acocelli
551 Fifth Avenue, Suite 1600
New York, New York 10176
(212) 682-3025

*Counsel for Plaintiff Larry R. Eddings and Proposed Co-Lead Counsel*

**LAW OFFICES OF CHARLES J. PIVEN, P.A.**
Charles J. Piven
Marshall N. Perkins
The World Trade Center – Baltimore
Suite 2525
401 East Pratt Street
Baltimore, Maryland 21202
(410) 332-0030

*Counsel for Plaintiff Eric Forsythe*

**STULL, STULL & BRODY**
Jules Brody
Aaron Brody
6 East 45th Street
New York, New York 10017
(212) 687-7230

*Counsel for Plaintiff Larry R. Eddings*

                **SCHIFFRIN & BARROWAY, LLP**
                Marc A. Topaz
                Richard A. Maniskas
                280 King of Prussia Road
                Radnor, Pennsylvania 19087
                (610) 667-7706

                *Counsel for Plaintiff Richard Koslow*

                **GILMAN AND PASTOR LLP**
                David Pastor (BBO #391000)
                Stonehill Corporate Center
                999 Broadway, Suite 500
                Saugus, Massachusetts 01906
                (781) 231-7850

                *Counsel for Plaintiff Richard Koslow*

## CERTIFICATE OF SERVICE

I, Daniel P. Dietrich, hereby certify that I served a copy of the foregoing document upon counsel for all parties by mailing a copy of the same, postage prepaid, to each attorney of record, this 14th day of April, 2005.

                /s/ Daniel P. Dietrich
                Daniel P. Dietrich