# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ERIC FORSYTHE, Individually And On Behalf Of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>SUN LIFE FINANCIAL INC., et al.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Civil Action No. 04cv10584 (GAO)

**Consolidated Cases Nos.:**

04cv10764 (GAO)
04cv11019 (GAO)

# PLAINTIFFS' MEMORANDUM OF LAW IN
# <u>SUPPORT OF THEIR MOTION FOR CLASS CERTIFICATION</u>

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ............................................................................ 1

STATEMENT OF FACTS ................................................................................. 3

    A.    All of the MFS Funds Functioned as Integral Components of One
         Unitary Organization.................................................................. 3

    B.    The Economics of All the Funds Are Intertwined and Wrongful
         Fees Charged to One Fund Impacted the Other Funds ............................. 4

    C.    Defendants Engaged in a Common Course of Wrongful Conduct
         That Injured All Shareholders.................................................... 5

    D.    Plaintiffs Allege Wrongdoing That Directly Injured the Class
         Members........................................................................... 6

ARGUMENT........................................................................................... 8

    I.    THIS ACTION SHOULD BE CERTIFIED AS A CLASS ACTION ................... 8

    II.    THE REQUIREMENTS OF RULE 23(a) ARE SATISFIED.............................. 9

    A.    The Class Is So Numerous That Joinder of All Members Is
         Impracticable....................................................................... 9

    B.    Questions Of Law And Fact Common To The Members Of The
         Class Exist......................................................................... 11

    C.    The Claims of Plaintiffs Are Typical of The Claims of The Class........... 12

    D.    Plaintiffs Will Fairly And Adequately Protect The Interests Of The
         Class............................................................................... 15

    III.    THE REQUIREMENTS OF FED. R. CIV. P. 23(B)(3) ARE SATISFIED ........ 18

    A.    Common Questions of Law and Fact Predominate ................................. 18

    B.    A Class Action is Superior to Numerous Individual Actions ................... 20

    IV.    PLAINTIFFS MAY BRING THESE CLAIMS ON BEHALF OF
         INVESTORS IN ALL THE MFS FUNDS ........................................... 23

    V.    PLAINTIFFS MAY PROPERLY SERVE AS CLASS
         REPRESENTATIVES TO ASSERT THE § 36(b) CLAIMS OF
         SHAREHOLDERS IN ALL MFS FUNDS ........................................... 31

A.      Supreme Court and First Circuit Precedent Support Plaintiffs' Individual Standing and Ability to Represent the Proposed Class Under § 36(b) ......................................................................... 31

B.      The Language of § 36(b) is Consistent With Class Certification ............. 32

VI.     THE CLAIMS AT ISSUE IN THIS MOTION ARE DIRECT IN NATURE ................................................................................................ 35

A.      Plaintiffs' § 36(b) Claim Is Direct ............................................... 35

B.      Plaintiffs' State Law and Non-§ 36(b) Federal Claims are Direct Claims Suitable for Class Treatment ........................................... 36

        1.      Plaintiffs' State Law and Non-§ 36(b) Claims are Direct Claims Under Maryland Law ........................................... 36

        2.      Plaintiffs' State Law and Non-§ 36(b) Claims are Direct Claims Under Massachusetts Law .................................. 39

        3.      Plaintiffs' State Law and Non-§ 36(b) Claims are Direct Claims Under Delaware Law ........................................... 40

CONCLUSION ....................................................................................................... 41

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Alves v. Harvard Pilgrim Health Care, Inc.*, 204 F. Supp. 2d 198 (D. Mass. 2002)...28, 32

*Amchem Prods. v. Windsor*, 521 U.S. 591 (1997) .......................................................20, 22

*In re American Continental Corp./Lincoln Sav. & Loan Sec. Litig.*, 794 F. Supp. 1424 (D. Ariz. 1992).............................................................................................27

*Baby Neal v. Casey,* 43 F.3d 48 (3d Cir. 1994) ................................................................12

*In re Baldwin-United Corp. Litig.*, 122 F.R.D. 424 (S.D.N.Y. 1986) ...............................13

*Batra v. Investors Research Corp.*, 1991 U.S. Dist. LEXIS 14773 (W.D. Mo. Oct. 4, 1991) ......................................................................................................................29

*Baum v. Investors Diversified Servs., Inc.*, 409 F.2d 872 (7th Cir. 1969) ....................7, 39

*Blackie v. Barrack*, 524 F.2d 891 (9th Cir. 1975).............................................................20

*Blasberg v. Oxbow Power Corp.*, 934 F. Supp. 21 (D. Mass. 1996) ................................39

*Boulet v. Cellucci*, 107 F. Supp. 2d 61 (D. Mass. 2000).....................................................12

*Brown v. Pro Football, Inc.*, 146 F.R.D. 1 (D.D.C. 1992) ................................................20

*Burks v. Lasker*, 441 U.S. 471 (1979)...............................................................................38

*Bussie v. Allmerica Fin. Corp.*, 50 F. Supp. 2d 59 (D. Mass. 1999) ...............................21

*Caranci v. Blue Cross & Blue Shield*, 194 F.R.D. 27 (D.R.I. 2000) ................................15

*In re Carbon Black Antitrust Litig.*, 2005 U.S. Dist. LEXIS 660 (D. Mass. Jan. 18, 2005) .................................................................................................................*passim*

*Collazo v. Calderon*, 212 F.R.D. 437 (D.P.R. 2002) ...................................................11, 12

*Curtis v. Commissioner, Me. Dep't of Human Servs.*, 159 F.R.D. 339 (D. Me. 1994) ..................................................................................................................10, 11

*Daily Income Fund, Inc. v. Fox*, 464 U.S. 523 (1984)...........................................2, 31, 33

*In re Dreyfus Aggressive Growth Mut. Fund Litig.*, 2000 U.S. Dist. LEXIS 13469 (S.D.N.Y. Sept. 19, 2000)..............................................................................2, 14, 25

*Duhaime v. John Hancock Mut. Life Ins. Co.*, 177 F.R.D. 54 (D. Mass. 1997) .........10, 19

*In re Eaton Vance Corp. Sec. Litig.*, 219 F.R.D. 38 (D. Mass. 2003) ..............................29

*In re Eaton Vance Corp. Secs. Litig.*, 206 F. Supp. 2d 142 (D. Mass. 2002) ...................29

*In re Eaton Vance Corp. Secs. Litig*, 220 F.R.D. 162 (D. Mass. 2004)...........14, 29, 30, 31

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974)...............................................................8

*Eisenberg v. Gagnon*, 766 F.2d 770 (3d Cir. 1985)............................................................15

*Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410 (6th Cir. 1998) ..................2, 24, 26, 27

*Fitch v. Radnor Indus., Ltd.*, 1990 U.S. Dist. LEXIS 13568 (E.D. Pa. Oct. 9, 1990) ...................................................................................................................20

*Gartenberg v. Merrill Lynch Asset Mgmt., Inc.*, 528 F. Supp. 1038 (S.D.N.Y. 1981) ...................................................................................................................39

*George Lussier Enters. v. Subaru of New Eng., Inc.*, 2001 U.S. Dist. LEXIS 12054 (D.N.H. Aug. 3, 2001) ...................................................................................21

*Gilbert v. Bagley*, 492 F. Supp. 714 (M.D. N.C. 1980) ......................................................37

*Goodman v. Lukens Steel Co.*, 777 F.2d 113 (3d Cir. 1985) ..............................................24

*Gratz v. Bollinger*, 539 U.S. 244 (2003) .....................................................................23, 27

*Green v. Wolf Corp.*, 406 F.2d 291 (2d Cir. 1968) ...........................................................20

*Guckenberger v. Boston Univ.*, 957 F. Supp. 306 (D. Mass. 1997)...................................12

*Haas v. Pittsburgh Nat'l Bank*, 526 F.2d 1083 (3d Cir. 1975)..............................26, 27, 32

*Harmsen v. Smith*, 693 F.2d 932 (9th Cir. 1982)...............................................................37

*Hicks v. Morgan Stanley & Co.*, 2003 U.S. Dist. LEXIS 11972 (S.D.N.Y. July 16, 2003) ..........................................................................................................25

*Hoxworth v. Blinder, Robinson & Co.*, 980 F.2d 912 (3d Cir. 1992) ...............................15

*Kamen v. Kemper Fin. Servs.*, 500 U.S. 90 (1991).........................................31, 35, 36, 38

*Key v. Gillette Co.*, 782 F.2d 5 (1st Cir. 1986) ................................................................16

*Kinney v. Metro Global Media, Inc.*, 2002 U.S. Dist. LEXIS 18628 (D.R.I. Aug. 22, 2002) ..........................................................................................8, 9, 10, 11

*Kitchens v. U.S. Shelter*, 1983 U.S. Dist. LEXIS 12812 (D.S.C. Oct. 13, 1983) .............26

*Lamphere v. Brown Univ.*, 71 F.R.D. 641 (D.R.I. 1976) ....................................................9

*In re Lilco Sec. Litig.*, 111 F.R.D. 663 (E.D.N.Y. 1986) ...................................................22

*M. Berenson Co. v. Faneuil Hall Marketplace, Inc.*, 100 F.R.D. 468 (D. Mass. 1984) .............................................................................................................19, 20

*In re ML-Lee Acquisition II, L.P. Sec. Litig.*, 848 F. Supp. 527 (D. Del. 1994) ...........2, 25

*Maywalt v. Parker & Parsley Petroleum Co.*, 147 F.R.D. 51 (S.D.N.Y. 1993)................26

*McAdams v. Mass. Mut. Life Ins. Co.*, 2002 U.S. Dist. LEXIS 9944 (D. Mass. May 15, 2002) .....................................................................................9, 10, 11, 13

*In re Mercedes-Benz Antitrust Litig.*, 213 F.R.D. 180 (D.N.J. 2003) ...............................19

*In re MobileMedia Sec. Litig.*, 28 F. Supp. 2d 901 (D.N.J. 1998) ....................................27

*Moore v. Comfed Sav. Bank*, 908 F.2d 834 (11th Cir. 1990)............................................29

*Newby v. Enron Corp.*, 2004 U.S. Dist. LEXIS 8158 (S.D. Tex. Feb. 24, 2004).............28

*O'Shea v. Littleton*, 414 U.S. 488 (1974) .........................................................................23

*Payne v. Goodyear Tire & Rubber Co.*, 216 F.R.D. 21 (D. Mass. 2003) ...........................9

*Payton v. County of Kane*, 308 F.3d 673 (7th Cir. 2002) .................................................28

*In re Pharm. Indus. Average Wholesale Price Litig.*, 263 F. Supp. 2d 172 (D. Mass. 2003) ....................................................................................................24

*In re Polymedica Corp. Secs. Litig.*, 224 F.R.D. 27 (D. Mass. 2004) ..............................22

*Prostic v. Xerox Corp.*, [1991 Transfer Binder], Fed. Sec. L. Rep. (CCH) ¶¶ 96 (D. Conn. July 19, 1991)........................................................................................33

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200 (S.D.N.Y. 1995) ...........2, 26

*In re Relafen Antitrust Litig.*, 218 F.R.D. 337 (D. Mass. 2003) ..................................15, 18

*In re Relafen Antitrust Litig.*, 221 F.R.D. 260 (D. Mass. 2004) ..........................................21

*Risinger v. Concannon*, 201 F.R.D. 16 (D. Me. 2001) .....................................................33

*Roberts v. Heim*, 670 F. Supp. 1466 (N.D. Cal. 1987) ....................................................26

*Rodrigues v. Members Mortg. Co.*, 2005 U.S. Dist. LEXIS 2159 (D. Mass. Feb. 3, 2005) ..................................................................................................................10

*SEC v. Steadman*, 798 F. Supp. 733 (D.D.C. 1991) ........................................................39

*Schaffer v. Timberland Co.*, 1996 U.S. Dist. LEXIS 5372 (D.N.H.  Mar. 19, 1996) ........................................................................................................................9

*Schur v. Friedman & Shaftan, P.C.*, 123 F.R.D. 611 (N.D. Cal. 1988) ...........................26

*Shankroff v. Advest, Inc.*, 112 F.R.D. 190 (S.D.N.Y. 1986) .............................................26

*Shelter Realty Corp. v. Allied Maint. Corp.*, 75 F.R.D. 34 (S.D.N.Y. 1977) ...................20

*Silva v. National Telewire Corp.*, 2000 U.S. Dist. LEXIS 13986 (D.N.H. Sept. 22, 2000) ........................................................................................................................19

*Smilow v. Southwestern Bell Mobile Sys.*, 323 F.3d 32 (1st Cir. 2003)......................19, 20

*Sosna v. Iowa*, 419 U.S. 393 (1975) .................................................................................23

*Strougo v. Bassini*, 282 F.3d 162 (2d Cir. 2002) .............................................................36

*Sutton v. Medical Serv. Ass'n*, 1993 U.S. Dist. LEXIS 9763 (E.D. Pa. July 20, 1993) ........................................................................................................................25

*Tannenbaum v. Zeller*, 552 F.2d 402 (2d Cir. 1977) ........................................................38

*Tedesco v. Mishkin*, 689 F. Supp. 1327 (S.D.N.Y. 1988) .................................................26

*Tolan v. Computervision Corp.*, 696 F. Supp. 771 (D. Mass. 1988) ...............................13

*Wachtel v. Guardian Life Ins. Co.*, 223 F.R.D. 196 (D.N.J. 2004)...................................19

*Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288 (1st Cir. 2000) ...........................1

*Woodward v. Online Info. Serv.*, 191 F.R.D. 502 (E.D.N.C. 2000) .................................33

*Yaffe v. Powers*, 454 F.2d 1362 (1st Cir. 1972).................................................................22

*Zinberg v. Wash. Bancorp., Inc.*, 138 F.R.D. 397 (D.N.J. 1990)......................................20

## STATE CASES

*Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031 (Del. 2004)......................40

*Waller v. Waller*, 187 Md. 185 (1946) ............................................................................37

*Weld v. Glaxo Wellcome Inc.*, 746 N.E.2d 522 (Mass. 2001) ................................2, 15, 28

## DOCKETED CASES

*In re MFS (Bruce Riggs, et al. v. Massachusetts Financial Services Company, et al.), MDL* 1586, District of Maryland Case No. 04md15863-04................................17

*In re: Mutual Funds Investment Litigation*, MDL No. 1586 (D. Md. Apr. 2, 2004)........17

## FEDERAL STATUTES

15  U.S.C. § 80a-2(a)(32) (2005)................................................................................8, 38

15 U.S.C. § 80a-35(b) (2005) ..............................................................................31, 35

15 U.S.C. § 80a-5 (2005) ...........................................................................................38

Fed. R. Civ. P. 23(a) ..............................................................................................1, 9

Fed. R. Civ. P. 23(a)(1) ...........................................................................................10

Fed. R. Civ. P. 23(a)(3) ...........................................................................................12

Fed. R. Civ. P. 23(a)(4) ...........................................................................................15

Fed. R. Civ. P. 23, advisory committee note ...........................................................21, 23

Fed. R. Civ. P. 23(b)(1)............................................................................................18

Fed. R. Civ. P. 23(b)(3)...........................................................................................1, 18

Fed. R. Civ. P. 23(g) ...............................................................................................41

**MISCELLANEOUS**

Public Policy Implications of Investment Company Growth (PPI) H.R. No. 2337,
89th Cong., 2d Sess.............................................................................................................33

S. Rep. No. 91-184, at 15 (1969) ...........................................................................3, 33, 34

Plaintiffs City of Chicago Deferred Compensation Plan ("Chicago"), Eric Forsythe, Larry

R. Eddings and Richard Koslow (collectively, the "Plaintiffs") respectfully submit this

memorandum in support of their motion for certification of this action as a class action and their

appointment as class representatives.

## PRELIMINARY STATEMENT

Plaintiffs seek certification of this action as a class action, pursuant to Rules 23(a) and

23(b)(3) of the Federal Rules of Civil Procedure, on behalf of themselves and a class (the

"Class") of all persons who held one or more shares of the Massachusetts Financial Services

("MFS") mutual funds (the "MFS Funds" or the "Funds"), during the period March 24, 1999

through November 17, 2003, inclusive.

The consolidated amended complaint (the "Complaint")[1] alleges violations of the

Investment Company Act of 1940 (the "ICA"); the Investment Advisers Act of 1940 (the

"IAA"); breaches of common law fiduciary duties, aiding and abetting breaches of fiduciary

duties and unjust enrichment.[2]  As an action on behalf of investors who have been deceived and

injured, it is similar to numerous investor class actions that have been routinely certified in

federal courts.  *See Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288 (1st Cir. 2000)

(Selya, J.).  Plaintiffs satisfy the requirements of Rule 23.  Accordingly, Plaintiffs' Motion for

Class Certification should be granted.

Plaintiffs may properly represent a class that includes the shareholders in all the MFS

---

[1]  The Complaint was filed on March 3, 2005, and the cases consolidated are: *Forsythe v. Sun Life Financial Inc.*, 04cv10584; *Eddings v. Sun Life Financial Inc.*, 04cv10764; and *Koslow v. Sun Life Financial Inc.*, 04cv11019.

[2]  Plaintiffs seek certification pursuant to Rule 23 of all claims in the Complaint save Count IV (Section 215 of the Investment Advisers Act for violation of Section 206 of that Act), which is brought as a derivative claim.

Funds and not merely investors in the Funds owned by Plaintiffs. The great weight of authority holds that a class representative having a valid individual claim may sue on behalf of investors who purchased interests in entities that are different from the entities in which the Plaintiff had an interest, when the entities were similar and were commonly controlled and Plaintiffs and other members of the class were injured by a common course of conduct. Courts have specifically certified such classes of mutual fund investors. *See, e.g., In re Dreyfus Aggressive Growth Mut. Fund Litig.*, 2000 U.S. Dist. LEXIS 13469 (S.D.N.Y. Sept. 19, 2000); *In re ML-Lee Acquisition II, L.P. Sec. Litig.*, 848 F. Supp. 527 (D. Del. 1994). In addition, many courts have reached the same result in analogous contexts. *See, e.g., Weld v. Glaxo Wellcome Inc.*, 746 N.E.2d 522, 530 (Mass. 2001) (Spina, J.) (affirming the class certification order and allowing the plaintiff to represent a class against all defendant drug companies because the conduct affecting the plaintiff was identical to that affecting the class, and his legal theories were the same as those of the class); *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 208 (S.D.N.Y. 1995) (limited partnership investments); *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 422 (6th Cir. 1998) (participants in ERISA benefits plans).

In particular, Plaintiffs may properly assert their claims under § 36(b) of the ICA on behalf of all investors holding shares in mutual funds. Although § 36(b) provides for an action by a security holder of an investment company "on behalf of such company," the investors, not the funds, have the direct right to bring that claim. *Daily Income Fund, Inc. v. Fox*, 464 U.S. 523, 526 (1984). Plaintiffs have the right of all litigants to bring those claims on behalf of other similarly-situated parties -- *i.e.*, the investors in the other funds who also have § 36(b) claims -- so long as the requirements of Rule 23 are satisfied.

The economics of all the MFS Funds are intertwined, *e.g.*, the Funds share expenses

2

attacked as wrongful in this case. ¶ 45.[3]  The legislative history confirms that where a complex

of funds is involved, § 36(b) requires the courts to evaluate the impact of defendants' wrongful

conduct on the entire complex and not merely on the particular fund in which the plaintiff

purchased his or her shares.  *See* S. Rep. No. 91-184, at 15 (1969) ("Senate Report").  That

Congressional purpose supports a class certification that would encompass the interests of all the

funds.

      For the reasons set forth below, the proposed class should be certified.

## STATEMENT OF FACTS

### A.    All of the MFS Funds Functioned as Integral Components of One Unitary Organization

      As of December 31, 2003, defendant Sun Life Financial Inc. ("Sun Life")[4] had over $289

billion in assets under management.[5]  *See* Sun Life 2003 Annual Report.  The individual MFS

Funds are open-ended management companies consisting solely of the capital invested by mutual

fund shareholders.  ¶¶ 40, 42.  As pools of investor assets, the Funds' registrants are managed

and administered by a common body of officers and employees of MFS. ¶ 44.  The individual

Funds have no separate officers, directors, advisors, or employees.  *Id.*  Thus, in substance, the

MFS Funds function as components of one unitary organization.  *Id.*

      Defendant MFS Company is registered as an investment adviser and had ultimate

---

[3] Paragraphs of the Complaint are cited as "¶ __."

[4] Sun Life is the ultimate parent of defendants bearing the MFS name.  Defendant Massachusetts Financial Services Company ("MFS Company") is a subsidiary of Sun Life of Canada (U.S.) Financial Services Holdings, Inc., which in turn is an indirect wholly-owned subsidiary of Sun Life.  ¶ 23.

[5] Additionally, the MFS Fund complex, consisting of 109 funds, had aggregate net assets as of December 31, 2003 of approximately $89.6 billion.  *See* Registration Statement for the MFS Series Trust X, dated December 1, 2004.

responsibility for overseeing the day-to-day management for each of the MFS Funds. ¶ 24.  The

Funds' registrants also had a board of directors comprised of the same individuals who were

charged with overseeing up to 112 MFS Funds.  ¶¶ 25-36; *see also* the May 1, 2003 Statement of

Additional Information ("SAI") for the Massachusetts Investors Trust, Exhibit A of the

Declaration of Kim E. Miller ("Miller Decl. Ex. __").

      The MFS Funds also have a common distributor, MFS Fund Distributors, Inc. (the "MFS

Distributor"), which marketed and sold the Funds as the principal underwriter.  ¶ 38.

Information on the Funds was distributed to potential investors through prospectuses (the

"Prospectuses"), pursuant to which the Funds were offered.  ¶¶ 41, 114-15.  With respect to the

statements and omissions relevant to this litigation, the Prospectuses contained substantially

identical language.  ¶¶ 116-27.

### B.    The Economics of All the Funds Are Intertwined and Wrongful Fees Charged to One Fund Impacted the Other Funds

      The Funds have many economic interrelationships and share expenses with one another.

¶ 45.  For example, the Massachusetts Investors Trust SAI describes how costs for research

services (alleged herein to be excessive) are commingled and shared by the various Funds:

> Broker-dealers may be willing to furnish statistical, research and
> other factual information or service ("Research") to the Adviser for
> no consideration other than brokerage or underwriting
> commissions. Securities may be bought or sold from time to time
> through such broker-dealers **on behalf of the Fund and the
> Adviser's other clients**.

Miller Decl. Ex. B (emphasis added); *see also* the SAI for the Massachusetts Investors Growth

Stock Fund, dated April 1, 2003, Miller Decl. Ex. C; the SAI for the MFS Series Trust X, dated

December 1, 2002.

      Similarly, the Massachusetts Investors Trust SAI discloses that the Funds share

distribution, promotional, and service expenses that are paid through 12b-1 fees, by stating:

> ***The Trust pays*** the compensation of the Trustees who are "not
> affiliated" with the Adviser and ***all expenses of the Fund*** (other
> than those assumed by the Adviser) … ***Expenses relating to the***
> ***issuance, registration and qualification of shares of the Fund***
> ***and the preparation,  printing and mailing of prospectuses for***
> ***such purposes are borne by the Fund except that the Distribution***
> ***Agreement with MFS Fund Distributors, Inc. ("MFD") requires***
> ***MFD to pay for prospectuses that are to be used for sales***
> ***purposes.  Expenses of the Trust which are not attributable to a***
> ***specific series are allocated between the series in a manner***
> ***believed by management of the Trust to be fair and equitable***.

Miller Decl. Ex. D (emphasis added); *see also* the SAI for the MFS Variable Insurance Trust,

dated May 1, 2002.

Thus, the Funds all participate jointly in paying the Distributors' overhead expenses

related to marketing, promotional, and distribution activities.  To the extent that promotional

programs were aimed at generating sales of the MFS Funds generally, each Fund participated in

payments for expenses designed to promote sales of shares of the Funds generally and not

merely sales of its own shares.

Therefore, in order to determine the amount owing to any single Fund as a result of the

promotional programs, it will be necessary to perform an accounting of all Funds.

### C.     Defendants Engaged in a Common Course of Wrongful Conduct That Injured All Shareholders

MFS improperly used the assets of the Funds and Fund investors to pay brokerages to

aggressively promote the Funds to investors through "shelf-space" revenue sharing programs,

directed brokerage, improper "12b-1" fee payments, and unauthorized "soft dollar" commission

arrangements.  ¶¶ 3, 7, 82, 112, 118, 120, 123, 125, 127.  These various fees and expenses, as

well as the aggregate advisory fee paid to the Funds' advisor, were excessive and injured the

Funds and its investors because those charges benefited only the adviser and its affiliates, not the

Funds or their shareholders.  ¶¶ 2-6, 48, 80, 96, 98, 101, 123, 125, 155, 160, 163, 183, 188, 196,

199.

Defendants kept their shelf-space arrangements secret as the programs presented

unmanageable conflicts of interest, pitting the financial interest of the broker against that of its

clients. ¶ 76. The Funds' Prospectuses also failed to disclose the truth about Defendants'

strategies for shelf-space plans, directed brokerage, 12b-1 fees, and soft dollars. ¶¶ 114-27. All

of the Prospectuses were substantially the same in this regard and included the same false and

misleading statements and omissions. *Id.* As a result of this deception, shareholders were misled

into continuing to hold Fund shares without realizing that they were routinely paying fees and

expenses that provided no benefit to them or the Funds.[6]

Defendants' scheme impacted all the Funds. The single course of conduct engaged in by

Defendants was possible because the Funds were managed by the same investment adviser, with

the same distributor, and a common board of directors of registrants. Defendants' practices

constituted breaches of the fiduciary duties owed by Defendants to Plaintiffs, the Class, and the

Funds.

### D.     Plaintiffs Allege Wrongdoing That Directly Injured the Class Members

A mutual fund investor enters into a service agreement with the investment company

---

[6] Defendant MFS Company entered into a $50 million settlement with the Securities and
Exchange Commission ("SEC") for precisely the same practices complained of in this action–
*i.e.*, entering into secret agreements with broker-dealer firms under which Defendants improperly
and illegally used millions of dollars in brokerage commissions to provide kickbacks to
compensate those brokers for providing preferential marketing of the MFS Funds. Miller Decl.
Ex. E (March 31, 2004 SEC Order Instituting Administrative and Cease-and-Desist Proceedings,
Making Findings and Imposing Remedial Sanctions In the Matter of Massachusetts Financial
Services Co.). On January 25, 2005, the SEC approved a plan to compensate MFS Funds
shareholders from whom Defendants concealed the revenue-sharing agreements under which
brokers received payments for selling MFS funds. Miller Decl. Ex. F.

pursuant to which management and advisory services are provided.[7] Thus, the purchaser's mutual fund investment is subject to continuing fees and expenses relating to those services.

Consistent with the foregoing, each of the MFS Funds' Prospectuses and SAIs describes the fees and expenses relevant to this litigation as directly impacting the investors. For example, to explain a Fund's fee structure, the Prospectus has a table that "describes the fees and expenses that *you may pay* when *you* buy, redeem and hold shares of the fund." *See* Massachusetts Investors Trust Prospectus, Miller Decl. Ex. G (emphasis added.) The table includes "Management Fees" and "Distribution and Service (12b-1) Fees," which are at the heart of this action. *Id.* Also, under the heading "DISTRIBUTION AND SERVICE FEES," (*i.e.* 12b-1 fees), it states that, "[o]ver time, these fees will increase the cost of *your* shares and *may cost you more than paying other types of sales charges.*" Miller Decl. Ex. H (emphasis added.) Similar language is found in each of the MFS Funds' Prospectuses and SAIs, and explicitly recognizes that mutual fund fees paid to investment advisers and their affiliates are paid by investors. Such disclosures do not exist for traditional corporations, where contracts entered into by the corporation have only an indirect impact on the value of a shareholder's stock. In the mutual funds context, the impact is *direct*.

With respect to the Funds' 12b-1 plans, the Massachusetts Investors Trust Prospectus explains that "[t]he fund adopted a distribution plan under Rule 12b-1 that permits it to pay marketing and other fees to support the sale and distribution of each class of shares." *Id.* These expenses are deducted directly from the Fund, thus impacting the net asset value ("NAV") per share, the price at which the MFS shareholders are entitled to redeem their shares. Indeed, the

---

[7]  *See, e.g.*, *Baum v. Investors Diversified Servs., Inc.*, 409 F.2d 872, 874 (7th Cir. 1969) (a mutual fund share "is, in essence, a service contract between the investor and the investment company").

NAV is the only way shareholders can sell their shares.  That redemption price is immediately impacted by each assessment of the fees and expenses that are complained of in this case.  *See* 15 U.S.C. § 80a-2(a)(32) (2005) (defining "redeemable security").  All those fees and expenses, once assessed, immediately reduce the amount Class members are entitled to receive for their shares if they opt to redeem them.

In addition, the injuries here were direct because the Class members were misled into continuing to hold their MFS securities through Defendants' failure to adequately disclose the existence and nature of the revenue sharing programs and the lack of any benefit accruing to the shareholders of the funds from those programs.  The amount of the damage to the individual holder would, at a minimum, be equal to the amount of the excess costs resulting from the wrongful programs, on a per share basis, for the duration of the holding period.

In light of the foregoing, it is evident that a substantial portion of the damages at issue in this litigation were inflicted directly upon the Funds' shareholders.

<u>**ARGUMENT**</u>

**I.    THIS ACTION SHOULD BE CERTIFIED AS A CLASS ACTION**

Investor actions are particularly appropriate for class treatment given the large number of shares involved and the typically small amount of individual damages relative to the costs of litigation.  *See Kinney v. Metro Global Media, Inc.*, 2002 U.S. Dist. LEXIS 18628, at *18-19 (D.R.I. Aug. 22, 2002) (citing *Kirby v. Cullinet Software, Inc.*, 116 F.R.D. 303, 311 (D. Mass. 1987) (Wolf, J.)).  By providing a single forum to litigate the same or similar claims, a class action affords an indispensable mechanism for the conservation of judicial resources.

In considering a class certification motion under Rule 23, the Court may not delve into the merits of the dispute.  *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177 (1974) ("We find nothing in either the language or history of Rule 23 that gives a court any authority to conduct a

preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action."); *Schaffer v. Timberland Co.*, 1996 U.S. Dist. LEXIS 5372, at *13-14 (D.N.H. Mar. 19, 1996) (same) (citing *Eisen*). Rather, the Court must accept as true the factual allegations of the complaint. *See Lamphere v. Brown Univ.*, 71 F.R.D. 641, 646 (D.R.I. 1976).

Due to the importance of the class action device, the requirements of Rule 23 "should be liberally construed in order not to undermine the policies underlying the class action rule." *McAdams v. Mass. Mut. Life Ins. Co.*, 2002 U.S. Dist. LEXIS 9944, at *7 (D. Mass. May 15, 2002) (Freedman, J.), *aff'd*, 391 F.3d 278 (1st Cir. 2004) (Lynch, J.); *see also Kinney,* 2002 U.S. Dist. LEXIS 18628, at *7 (noting that "suits on behalf of shareholders…are prime candidates for class action treatment and that Rule 23 of the Federal Rules of Civil Procedure has been liberally construed to effectuate that end"). Furthermore, the First Circuit has declared that "[d]oubts should be resolved in favor of certification, particularly in early stages of the litigation." *Payne v. Goodyear Tire & Rubber Co.*, 216 F.R.D. 21, 25 (D. Mass. 2003) (Gertner, J.); *see also McAdams*, 2002 U.S. Dist. LEXIS 9944, at *8 ("[W]hen a court is in doubt as to whether to certify a class action, it should err in favor of allowing a class.") (citation omitted).

## II.     THE REQUIREMENTS OF RULE 23(a) ARE SATISFIED

Under Fed. R. Civ. P. 23(a):

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Each element of Rule 23(a) has been met in this case.

### A.     The Class Is So Numerous That Joinder of All Members Is Impracticable

For a class action to be certified, the proposed class must be so numerous that joinder of

all members is impracticable. Fed. R. Civ. P. 23(a)(1). For the purposes of Rule 23(a)(1),

impracticability does not mean impossibility of joinder. *See Duhaime v. John Hancock Mut. Life*

*Ins. Co.*, 177 F.R.D. 54, 62 (D. Mass. 1997) (O'Toole, J.) ("To meet [the numerosity]

requirement, the class representatives need only show that it is difficult or inconvenient to join

all the members of the class."); *see also McAdams*, 2002 U.S. Dist. LEXIS 9944, at *9

(explaining how the numerosity requirement "is not a difficult burden to satisfy . . . .") (citation

omitted). In addition to examining the number of class members, issues of judicial economy and

"the ability of [class] members to institute individual suits" are considered in the numerosity

analysis. *Curtis v. Commissioner, Me. Dep't of Human Servs.*, 159 F.R.D. 339, 340 (D. Me.

1994) (finding that the existence of approximately 500 potential plaintiffs would make joinder

impracticable).

      Additionally, there is no fixed number of class members that either compels or precludes

certification. *See, e.g., id.* at 340 ("There is no numerical standard as to what size class satisfies

the joinder impracticality requirement. Instead, the Court must examine the facts and

circumstances of the particular case to determine whether the numerosity requirement has been

met."). The exact size of the class need not be known as long as the number of class members is

determined by more than "mere speculation." *See In re Carbon Black Antitrust Litig.*, 2005 U.S.

Dist. LEXIS 660, at *45 (D. Mass. Jan. 18, 2005) (Woodlock, J.) (finding that hundreds of

purchasers throughout the country could not be practicably joined); *Rodrigues v. Members*

*Mortg. Co.*, 2005 U.S. Dist. LEXIS 2159, at *9 (D. Mass. Feb. 3, 2005) (Saris, J.) (noting that a

40 person class is generally found to establish numerosity) (citation omitted); *see also Kinney,*

2002 U.S. Dist. LEXIS 18628, at *11 (noting that in class action certification in securities cases,

"numerosity can be assumed where the number of shares traded is so great that common sense dictates the class is very large").

It cannot be disputed that there are at least many thousands of shares traded and thousands of Class members. As of December 31, 2003, Sun Life had over $289 billion in assets under management, and the MFS Fund complex had aggregate net assets of approximately $89.6 billion. The names and addresses of Class members can be ascertained from the books and records maintained by Sun Life, MFS, the MFS Distributor, and the MFS Funds. Thus, numerosity is satisfied.

**B.    Questions Of Law And Fact Common To The Members Of The Class Exist**

Rule 23(a)(2) requires that to maintain a class action, there must be questions of law or fact common to the class. A common question is one that arises from "'a common nucleus of operative fact [and] is usually enough to satisfy the commonality requirement.'" *McAdams*, 2002 U.S. Dist. LEXIS 9944, at *10 (citation omitted). Rule 23(a)(2) does not require that every question of law or fact be common to every member of the class. *See Kinney*, 2002 U.S. Dist. LEXIS 18628, at *13 (noting that Rule 23(a)(2) "does not require the common questions of law or fact predominate over the questions affecting individual [class] members. Instead, it requires merely that questions of law or fact common to the class exist."); *Curtis*, 159 F.R.D. at 341 (explaining that while Rule 23 does require that there be common questions of law or fact, it "does not require that all issues of law or fact involved in the dispute be common").

The First Circuit has held that the commonality requirement is satisfied if the named plaintiffs share "at least one question of law or fact common to the class." *Collazo v. Calderon*, 212 F.R.D. 437, 442 (D.P.R. 2002); *see also In re Carbon Black Antitrust Litig.*, 2005 U.S. Dist. LEXIS 660, at *48 (noting that courts have found that commonality exists when there is at least one issue that affects a significant number of the putative class members) (citation omitted);

*Baby Neal v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994) (noting that the commonality requirement is satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class). As such, the commonality requirement is "a low hurdle easily surmounted," and often "easily met." *McAdams*, 2002 U.S. Dist. LEXIS 9944, at *10-11 (internal quotations and citation omitted). *In re Carbon Black Antitrust Litig.*, 2005 U.S. Dist. LEXIS 660, at *48.

Furthermore, "[w]here a common question of law refers to standardized conduct by defendants toward members of the putative class, a common nucleus of operative fact is typically presented, and the commonality requirement is usually met." *Collazo*, 212 F.R.D. at 442. Plaintiffs' claims and those of other Class members all arise from the same body of facts as they were all injured by the same actions of the same group of Defendants in extracting excessive fees and allowing directed brokerage. In addition, the claims of Plaintiffs and other Class members arise under identical legal theories. *See Boulet v. Cellucci*, 107 F. Supp. 2d 61, 81 (D. Mass. 2000) (Woodlock, J.) (finding that the claims of the plaintiffs and the proposed class share a common legal theory).

### C.    The Claims of Plaintiffs Are Typical of The Claims of The Class

Typicality requires that the claims or defenses of the representative parties be typical of the claims or defenses of the class. Fed. R. Civ. P. 23(a)(3); *see also Guckenberger v. Boston Univ.*, 957 F. Supp. 306, 325 (D. Mass. 1997) (Saris, J.). The typicality requirement is satisfied "when the [named] plaintiff's 'injuries arise from the same events or course of conduct as do the injuries that form the basis of the class claims' and 'when the plaintiff's claims and those of the class are based on the same legal theory.'" *Id.* (alteration in original) (citing *In re Bank of Boston Corp. Sec. Litig.*, 762 F. Supp. 1525, 1532 (D. Mass. 1991) (Harrington, J.)).

Typicality does not require the class representative's claims be identical to those of class

members.  As the First Circuit has held:

> Analysis under the typicality prerequisite involves a comparison of the claims of the putative plaintiffs with the claims of the class. The named plaintiffs' claims are typical of the class when the plaintiffs' injuries arise from the same events, practice or course of conduct of the defendant as do the injuries which form the basis of the class claims. Factual variations between the claims of the class and the class representatives do not, alone, render the named representatives' claims atypical.

*Tolan v. Computervision Corp.*, 696 F. Supp. 771, 777 (D. Mass. 1988) (Harrington, J.); *see also In re Carbon Black Antitrust Litig.*, 2005 U.S. Dist. LEXIS 660, at *54 ("There is nothing in Fed. R. Civ. P. 23(a)(3) which requires the named plaintiffs to be clones of each other or clones of other class members.") (citation omitted).  As such, factual differences will not defeat class certification where, as here, the claims of Plaintiffs and of other Class members all arise from the same events or practices or course of conduct and are based on the same legal theory or theories. *See In re Carbon Black Antitrust Litig.*, 2005 U.S. Dist. LEXIS 660, at *52 (noting that typicality usually is not precluded even if there are "pronounced factual differences where there is a strong similarity of legal theories") (citation omitted); *see also McAdams*, 2002 U.S. Dist. LEXIS 9944, at *13 (stating that typicality is satisfied when "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability") (internal quotations and citation omitted).  "The test, ultimately, is whether the class representative will promote the interests of the class as he protects his own." *In re Baldwin-United Corp. Litig.*, 122 F.R.D. 424, 428 (S.D.N.Y. 1986); *see also McAdams*, 2002 U.S. Dist. LEXIS 9944, at *13 (noting that the typicality requirement "is designed to ensure that the representative parties adequately represent the interest of all class members, particularly those not present for the litigation").

In the case at bar, Plaintiffs' claims are virtually identical to the other members of the

Class.  Plaintiffs allege that Defendants engaged in a course of conduct that affected all of the

MFS Funds and their shareholders.  ¶¶ 2-4, 41, 44-52, 62, 67-75, 88.  Defendants charged

excessive fees and commissions to the investors in all the MFS Funds and to the Funds

themselves in order to improperly pay and induce brokers to steer investors into MFS Funds.

¶¶ 2-4, 48.  Defendants further failed to disclose these practices in substantially similar

Prospectuses that covered the Funds.  ¶¶ 114-127.  Accordingly, Plaintiffs and other members of

the Class have been damaged in the same way by the same course of wrongful conduct by

Defendants.  In addition, the claims of all Class members derive from the same legal theories.

The typicality of Plaintiffs' claims is not affected by the fact that Plaintiffs do not own

shares in every MFS Fund.  Although only one case in the First Circuit has touched upon this

issue in the context of mutual funds,[8] other circuits have provided support for the notion that

plaintiffs are not required to own shares in every mutual fund for which plaintiffs have brought a

claim.  For example, in *In re Dreyfus Aggressive Growth Mut. Fund Litig.*, 2000 U.S. Dist.

LEXIS 13469, at *8 (S.D.N.Y. Sept. 20, 2000), the court stated, "Courts have repeatedly held

that on allegations such as these, class representatives need not have invested in each security so

long as the plaintiffs have alleged a single course of wrongful conduct with regard to each

security."  The court in *Dreyfus* went on to explain:

> Here, the claims of the named plaintiffs and prospective class
> members derive from the same course of events. The plaintiffs
> have alleged that both Funds made similar misrepresentations and
> omissions in the Registration Statements, Prospectuses, Statements
> of Additional Information and annual and semi-annual reports used
> to sell the Funds … indeed the claims of the named plaintiffs and
> prospective class members are based on the same legal theories …
> Put another way, plaintiffs' claims satisfy the typicality

---

[8] *See In re Eaton Vance Corp. Secs. Litig*, 220 F.R.D. 162 (D. Mass. 2004) (Harrington, J.),
discussed in more detail on pp. 29-30, *supra*.

> requirement because, by proving their claims, plaintiffs will
> necessarily prove the claims of all other class members.

*Id*. at *14.

In *Hoxworth v. Blinder, Robinson & Co.*, 980 F.2d 912, 923 (3d Cir. 1992), the court held that although the proposed class representatives held only fifteen of the twenty-one class securities, they could represent holders of all securities because such coverage "fully satisfies the requirements of the Rule." *See also Eisenberg v. Gagnon*, 766 F.2d 770, 786 (3d Cir. 1985) (explaining that the fact that the representatives had invested in only two of the three limited partnerships did not make their claims atypical).

The First Circuit has endorsed the notion in other contexts. *See, e.g., Caranci v. Blue Cross & Blue Shield*, 194 F.R.D. 27, 40 (D.R.I. 2000) (finding that plaintiffs could bring claims on behalf of participants in ERISA plans in which plaintiffs were neither participants nor beneficiaries), *aff'g in part Caranci v. Blue Cross & Blue Shield*, 1999 U.S. Dist. LEXIS 14801, at *40 (D.R.I. Aug. 19, 1999). Additionally, the Massachusetts Supreme Court affirmed a finding of typicality in a case in which the plaintiff was not directly harmed by all defendants, but the conduct affecting plaintiff was identical to that affecting the class, and plaintiff's legal theories were the same as those of the class. *Weld*, 746 N.E.2d at 530.

### D.   Plaintiffs Will Fairly And Adequately Protect The Interests Of The Class

Plaintiffs must also "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Courts have established a two prong test for this requirement: (1) "the moving party must show first that the interests of the representative party will not conflict with the interests of any of the class members," and (2) "that counsel chosen by the representative party is qualified, experienced and able to vigorously conduct the proposed litigation." *In re Relafen Antitrust Litig.*, 218 F.R.D. 337, 343 (D. Mass. 2003) (Young, J.). The requirement of fair and adequate

representation in Rule 23(a)(4) is important in protecting the interests of the class as well as the absentee class members. *Key v. Gillette Co.*, 782 F.2d 5, 7 (1st Cir. 1986) (Cerezo, J.).

Both prongs of the "adequacy" test have been met here. First, Plaintiffs' interests are co-extensive, and not in conflict, with the interests of the Class members. As this Court is aware, in connection with the motion for consolidation and for lead counsel, filed previously, this Court did grant consolidation of the above-captioned actions, but deferred the question of lead counsel because of a concern of whether counsel had a disabling conflict of interest. This Court advised counsel to provide more briefing on this issue at the time of class certification. As such, simultaneously with the filing of this motion, Plaintiffs are filing a Renewed Motion For Appointment of Co-Lead Plaintiffs, Co-Lead Counsel and Liaison Counsel (the "Renewed Motion"), which contains a Declaration of Professor Bruce, a highly regarded ethics expert, explaining why there is no disabling conflict of interest. *See* Declaration of Professor Bruce Green in Support of Plaintiffs' Renewed Motion for Appointment of Co-Lead Plaintiffs, Co-Lead Counsel and Liaison Counsel ("Green Decl."), attached as Ex. I to the Miller Decl. Plaintiffs themselves are also submitting declarations consenting to the Renewed Motion.

As shown in more detail in the simultaneously filed declaration and the memorandum of law in support of the Renewed Motion, Professor Green's opinion is that the "concurrent representation does not give rise to an impermissible conflict of interest." Green Decl., Miller Decl. Ex. I. Professor Green explains that:

> [P]laintiffs in the market-timing cases are not adverse to the MFS mutual funds because the amended complaint in the market-timing cases makes the Funds a non-party. Likewise, as a substantive matter, the plaintiffs in the market-timing cases are not adverse either to the MFS mutual funds or to their shareholders. The submissions of Chicago, the Lead Plaintiff in the market-timing litigation, and counsel in that litigation, make explicit that the plaintiffs in the market-timing cases are not in fact seeking to

recover any monies from the MFS mutual funds.[9]  Finally, the harms against which conflict of interest rules protect are not implicated.  Although the MFS mutual funds would be represented derivatively, the funds' shareholders are the real interested parties and as co-lead counsel, the laws firms would be consulting with representative shareholders.  There is no indication that that shareholders perceive the laws firms' role in the market-timing cases as adverse or disloyal to them, and there is no reason why they would.  Thus, there is no reason for concern that the law firms' role in the MDL action would impair their relationship with the plaintiffs in the fee litigation before this Court.[10]

*Id*. at ¶ 39.

Secondly, Plaintiffs' counsel are capable of prosecuting this litigation since they have extensive experience in the successful prosecution of class actions on behalf of injured investors.

---

[9]  Also attached to the Renewed Motion is the Declaration of Robert S. Gans ("Gans Decl."), counsel for Chicago, a movant for co-lead plaintiff in this action, and the court appointed lead class plaintiff in the market-timing multi-district litigation ("MDL") case: *In re MFS (Bruce Riggs, et al. v. Massachusetts Financial Services Company, et al.)*, MDL 1586, District of Maryland Case No. 04md15863-04 (the "MDL Action").  Miller Decl. Ex. J.  As explained more fully in the Gans Declaration, Plaintiffs "will not seek any recovery in any action from monies held by any of the [MFS] Registrants consisting of investor deposits … Instead, the Registrants are named as defendants in the MDL Action to seek recovery from any assets that they hold apart from investor deposits, and also to ensure the fullest recovery possible for injured MFS investors."  Gans Decl. at ¶ 3, Miller Decl. Ex. J.

[10]  Professor Green further addresses this Court's concern that a conflict of interest is present when one client's representation will be materially limited by responsibilities to another client or by the lawyer's self-interest. Green Decl. ¶ 39, Miller Decl. Ex. I.  In explaining why there is no conflict of interest regarding this issue, Professor Green states that "plaintiffs' counsel in the MDL litigation…decided, in line with the MDL court's observation, that it did not make sense, and would be unfair, to seek to recover, in effect, from the current fund shareholders." *Id*. at ¶ 40.

Furthermore, in the MDL litigation, the MDL court expressly stated its belief that it made little sense for class action plaintiffs seeking to represent both current and former shareholders to sue the funds as well, because, in essence, that would constitute an attack on the interest held by the current shareholders.  Transcript of Court Hearing in *In re: Mutual Funds Investment Litigation*, MDL No. 1586 (D. Md. Apr. 2, 2004) at 16.  Miller Decl. Ex. K.  Given the reality that a mutual fund is, in essence, a pool of assets owned by the mutual fund investors but managed by the advisor, the MDL court drew the appropriate conclusion that the interest of all the shareholders would best be maximized by pursuing the actual wrongdoers and not the funds.

*See In re Relafen*, 218 F.R.D. at 343 (noting that the firms acting as lead counsel have experience prosecuting numerous class actions); *see also* Firm Resumes of Milberg Weiss Bershad & Schulman LLP, Weiss & Lurie, Bernstein Litowitz Berger & Grossmann LLP and Moulton & Gans, P.C. ("Plaintiffs' Counsel"), which have been previously filed in this Court.[11]

## III.    THE REQUIREMENTS OF FED. R. CIV. P. 23(B)(3) ARE SATISFIED

In addition to meeting the prerequisites of Rule 23(a), this action also satisfies Rule 23(b), which requires that the proposed class action meet any one of three conditions set forth in that subsection.[12] This action easily satisfies Rule 23(b)(3), which requires "that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).

### A.    Common Questions of Law and Fact Predominate

As discussed above, there are a host of questions of law and fact common to the members of the proposed Class. These questions predominate over any possible individual questions

---

[11] Plaintiffs' Counsel satisfy the requirements of Rule 23(g) and should be appointed Class Counsel. The firms will fairly and adequately represent the interests of the class as required by 23(g)(1)(B). They are also clearly knowledgeable about the applicable law, experienced in handling class actions and have done significant work in vigorously prosecuting this action, thereby readily meeting all the considerations set forth in 23(g)(i)(C).

[12] While Plaintiffs seek class certification under Rule 23(b)(3), their claims under § 36(b) of the ICA also may be appropriately certified under Rule 23(b)(1)(B), which provides for certification when the prosecution of separate actions would create a risk of "adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests." Fed. R. Civ. P. 23(b)(1)(B). The action may also be appropriately certified under Rule 23(b)(1)(A), which provides for certification when the prosecution of separate actions creates a risk of "inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class. . . ." Fed. R. Civ. P. 23(b)(1)(A).

because the alleged wrongful conduct was the same with respect to all Class members.[13]

There are no individual issues likely to be raised in the litigation of this class action that would defeat predominance. The fact that multiple mutual funds are involved does not defeat predominance. *See, e.g., Duhaime*, 177 F.R.D. 62 (certifying a class consisting of those who have or had an ownership interest in one or more of the approximately 3.8 million life insurance policies and/or annuities and/or mutual fund shares issued by John Hancock)*; see also Wachtel v. Guardian Life Ins. Co.*, 223 F.R.D. 196, 213 (D.N.J. 2004) ("The existence of different [health benefit] plans does not outweigh the predominance of the common questions.") (citation omitted).

Common issues also predominate because the Funds functioned as integral parts of a unitary organization and shared expenses. ¶¶ 44-45. Therefore the impact of charges to one Fund will be relevant to the claims of all Funds. Courts have held that individual issues of damages should not defeat certification. *Smilow v. Southwestern Bell Mobile Sys.*, 323 F.3d 32, 40 (1st Cir. 2003) (Lynch, J.) ("The individuation of damages in consumer class actions is rarely determinative under Rule 23(b)(3)"). Where, as here, common questions predominate regarding liability, then courts generally find the predominance requirement to be satisfied even if individual damages issues remain."); *M. Berenson Co. v. Faneuil Hall Marketplace, Inc.*, 100 F.R.D. 468, 472 (D. Mass. 1984) (McNaught, J.) ("[A] class action is maintainable even though the measure of damages is different for members of the class. That issue might be treated in a

---

[13]   Courts have repeatedly recognized that the proper focus of the predominance test is on the defendants' conduct. *In re Mercedes-Benz Antitrust Litig.*, 213 F.R.D. 180, 187 (D.N.J. 2003); *see also Silva v. National Telewire Corp.*, 2000 U.S. Dist. LEXIS 13986, at *11 (D.N.H. Sept. 22, 2000) (focusing on the standardized nature of the defendant's conduct when deciding common questions of law or fact). Here, Plaintiffs allege Defendants treated all of the Funds and shareholders virtually identically.

proceeding subsequent to the trial of the issue of liability.").[14]  Here, damages involving excessive charges to the Funds and the shareholders can easily be calculated using a simple, common formula.  *See Smilow*, 323 F.3d at 40-41; *Brown v. Pro Football, Inc.*, 146 F.R.D. 1, 5 (D.D.C. 1992); *Shelter Realty Corp. v. Allied Maint. Corp.*, 75 F.R.D. 34, 38 (S.D.N.Y. 1977).

### B.    A Class Action is Superior to Numerous Individual Actions

Class certification offers judicial efficiencies because it permits common claims and issues to be tried only once, with binding effect on all parties.  It also avoids the possibility of inconsistent adjudications and facilitates settlement by permitting agreements that potentially bind all claimants.

Here, the individual claims of many Class members are too small relative to the costs of litigation for each individual Class member to maintain a separate action.  For such injured persons, a class action is the only viable vehicle by which they can obtain a remedy.  The notion that such claims could be litigated individually is contrary to the philosophy of Rule 23.[15]

Rule 23(b)(3) lists four non-exclusive factors bearing on the superiority requirement.  *See Amchem Prods. v. Windsor*, 521 U.S. 591, 615-16 (1997).  These factors are:

---

[14]  *See also Zinberg v. Wash. Bancorp., Inc.*, 138 F.R.D. 397, 402 (D.N.J. 1990); *Green v. Wolf Corp.*, 406 F.2d 291, 301 (2d Cir. 1968); *Blackie v. Barrack*, 524 F.2d 891, 908-10 (9th Cir. 1975).

[15]  *See In re Carbon Black Antitrust Litig.*, 2005 U.S. Dist. LEXIS 660, at *84 (noting that the superiority of a class action is substantiated by the many relatively small purchasers that will be a part of this class); *M. Berenson Co.*, 100 F.R.D. at 471 ("The benefits to the large number of class members, many of whose claims are so small that their size does not provide the impetus to bring individual actions, clearly outweigh any problems which may arise in the management of the class action.  Economy will undoubtedly be achieved.  Not only economy which will benefit members of the class, but economy which will benefit the judicial system as well.").  To deny class certification in cases such as this would be to "clos[e] the door of justice to all small claimants.  This is what we think the class suit practice was to prevent."  *Fitch v. Radnor Indus., Ltd.*, 1990 U.S. Dist. LEXIS 13568, at *19 (E.D. Pa. Oct. 9, 1990).

> (a) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (d) the difficulties likely to be encountered in the management of a class action.

*Bussie v. Allmerica Fin. Corp.*, 50 F. Supp. 2d 59, 72 (D. Mass. 1999) (Gorton, J.).  As discussed below, all of these factors weigh heavily in favor of certification here.

The first factor addresses whether the interest of class members in conducting separate lawsuits is so strong as to require denial of class certification.  *See In re Relafen Antitrust Litig.*, 221 F.R.D. 260, 288 (D. Mass. 2004) (Young, J.); *George Lussier Enters. v. Subaru of New Eng., Inc.*, 2001 U.S. Dist. LEXIS 12054, at *19-20 (D.N.H. Aug. 3, 2001).  Considerations relevant to this inquiry include the degree of "cohesion" among class members, whether "the amounts at stake for individuals [are] so small that separate suits would be impracticable" and the extent to which "separate suits would impose [burdens] on the party opposing the class, or upon the court calendars . . . ."  Fed. R. Civ. P. 23, advisory committee note to 1966 amendments.

Here, it is unlikely that Class members would prefer to litigate their individual claims because of the prohibitive expense involved.  *See, e.g., In re Carbon Black Antitrust Litig.,* 2005 U.S. Dist. LEXIS 660, at *84 (noting that "class actions are expensive endeavors and joining forces with other similarly situated plaintiffs is often the only way to effectuate a case").  If they had so desired, they would have brought individual actions.  Further, if Class members wish to do so at a later stage, they will have the opportunity to opt out of the Class.  Inconsistent or varying adjudications will thus be avoided and fairness and efficiency will be promoted by certification of the Class requested here.

The second factor requires the Court to consider the extent and nature of any litigation

concerning the controversy already commenced by or against members of the Class. Plaintiffs

are aware of only one other similar lawsuit, *Dumond, et. al. v. Massachusetts Financial Services*

*Company, et. al.*, No. 04cv11458 (D. Mass.), which is brought derivatively against MFS and

MFS Fund Distributors, Inc.[16] This suggests there is little individual interest in prosecuting

actions. Accordingly, this factor further indicates the superiority of maintaining this suit as a

class action.

The third superiority factor is the desirability of conducting the litigation in a particular

forum. Defendants can hardly complain that this is an inconvenient forum as MFS Company is

headquartered in this District.

The fourth and final Rule 23(b)(3) factor is "the difficulties likely to be encountered in

the management of a class action." *Amchem*, 521 U.S. at 616. The First Circuit in *Yaffe v.*

*Powers* summarized the law construing this standard:

> [F]or a court to refuse to certify a class on the basis of speculation
> as to the merits of the cause or because of vaguely-perceived
> management problems is counter to the policy which originally led
> to the rule, and more especially, to its thoughtful revision, and also
> to discount too much the power of the court to deal with a class
> suit flexibly, in response to difficulties as they arise.

454 F.2d 1362, 1365 (1st Cir. 1972) (Coffin, J.). Management of this case as a class action

presents no unusual difficulties. Class actions of this size are common and present no significant

management problems. *See In re Polymedica Corp. Secs. Litig.*, 224 F.R.D. 27, 38 (D. Mass.

2004) (Keeton, J.); *In re Lilco Sec. Litig.*, 111 F.R.D. 663, 667 (E.D.N.Y. 1986).

Finally, although the certification is sought under Rule 23(b)(3), the Court may also view

the proposed certification as properly falling under Rule 23(b)(1)(B). In this regard, the

---

[16] On January 13, 2005, this Court ordered that *Forsythe, Eddings* and *Koslow* are to be
consolidated separately from *Dumond*.

Advisory Committee Note to the 1966 Amendment of Rule 23 states that Rule 23(b)(1)(B) recognizes the appropriateness of class certification in the very situation presented here:

> Clause (B): This clause takes in situations where the judgment in a nonclass action by or against an individual member of the class, while not technically concluding the other members, might do so as a practical matter. The vice of an individual action would lie in the fact that the other members of the class, thus practically concluded, would have had no representation in the lawsuit. […]
>
> The same reasoning applies to an action which charges a breach of trust by an indenture trustee *or other fiduciary similarly affecting the members of a large class of security holders or other beneficiaries, and which requires an accounting or like measures to restore the subject of the trust*. *See Boesenberg v. Chicago T. & T. Co.*, 128 F.2d 245 (7th Cir. 1942). (Emphasis added) (additional citation omitted).

Fed. R. Civ. P. 23, advisory committee note (emphasis added). Precisely that situation exists in the present case. Plaintiffs seek to recover for breaches of fiduciary duty affecting a large number of Funds and shareholders and requiring an accounting to restore the subject of the trust.

In sum, the litigation of this action as a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## IV.    PLAINTIFFS MAY BRING THESE CLAIMS ON BEHALF OF INVESTORS IN ALL THE MFS FUNDS

Standing is a prerequisite in any action, including a class action, *see O'Shea v. Littleton*, 414 U.S. 488, 494 (1974), and a potential class representative must possess standing to assert an individual claim. *See Gratz v. Bollinger*, 539 U.S. 244, 285 n.5 (2003). Once the plaintiff's standing to assert his or her claim has been established, the plaintiff's ability to represent the class depends solely on whether the requirements of Rule 23 are met. Despite this, Plaintiffs anticipate that Defendants will argue that Plaintiffs cannot represent investors in other MFS Funds in which Plaintiffs are not shareholders. Defendants would be wrong in making such an argument. As stated by the Supreme Court in *Sosna v. Iowa*:

> A named plaintiff in a class action must show that the threat of injury in a case such as this is "real and immediate," not "conjectural" or "hypothetical." . . .  This conclusion does not automatically establish that appellant is entitled to litigate the interests of the class she seeks to represent, *but it does shift the focus of examination from the elements of justiciability to the ability of the named representative to "fairly and adequately protect the interests of the class."*  Rule 23(a).

419 U.S. 393, 402 (1975) (citations omitted) (emphasis added).  This was stated more recently in

*Fallick v. Nationwide Mutual Insurance Co.*:

> Threshold individual standing is a prerequisite for all actions, including class actions.  A potential class representative must demonstrate individual standing vis-a-vis the defendant; he cannot acquire such standing merely by virtue of bringing a class action.  As this Court has made clear, however, once an individual has alleged a distinct and palpable injury to himself he has standing to challenge a practice even if the injury is of a sort shared by a large class of possible litigants.  Once his standing has been established, whether a plaintiff will be able to represent the putative class, including absent class members, depends solely on whether he is able to meet the additional criteria encompassed in Rule 23 of the Federal Rules of Civil Procedure.

162 F.3d 410, 423 (6th Cir. 1998); *see also In re Pharm. Indus. Average Wholesale Price Litig.*,

263 F. Supp. 2d 172, 194 (D. Mass. 2003) (Saris, J.) ("Class certification issues are . . . 'logically

antecedent' to Article III concerns . . . . Thus the issue about Rule 23 certification should be

treated first, 'mindful that [the Rule's] requirements must be interpreted in keeping with Article

III constraints . . . .") (citing *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 831 (1999)); *Goodman v.*

*Lukens Steel Co.*, 777 F.2d 113, 122 (3d Cir. 1985) ("[C]ontrary to the defendants' contentions,

the issue here is one of compliance with the provisions of Rule 23, not one of Article III

standing.  Each of the named plaintiffs has presented claims of injury to himself and has alleged

facts which present a case or controversy under the Constitution."), *aff'd on other grounds*, 482

U.S. 656 (1987);[17] *accord Hicks v. Morgan Stanley & Co.*, 2003 U.S. Dist. LEXIS 11972, at

*19-20 (S.D.N.Y. July 16, 2003).

In *Dreyfus*, 2000 U.S. Dist. LEXIS 13469, at *8, the court certified plaintiffs who

invested in one fund to represent investors in another fund, stating:

> Courts have repeatedly held that on allegations such as these, class
> representatives need not have invested in each security so long as the
> plaintiffs have alleged a single course of wrongful conduct with regard to
> each security.  Courts have not addressed this concern *vis a vis* the
> doctrine of standing but rather have examined such concerns pursuant to
> Rule 23(a)(3)'s typicality requirement.

*Id*.  In *Dreyfus*, certification was supported by the same factors that exist in this case:

> Here, the claims of the named plaintiffs and prospective class members
> derive from the same course of events.  The plaintiffs have alleged that
> both Funds made similar misrepresentations and omissions in the
> Registration Statements, Prospectuses, Statements of Additional
> Information and annual and semi-annual reports used to sell the Funds. . . .
> And indeed the claims of the named plaintiffs and prospective class
> members are based on the same legal theories.

*Id*. at *14.

Similarly, in *ML-Lee Acquisition Fund*, the defendants argued that the proposed class

representatives could not represent investors in a mutual fund that they did not own.  The court

rejected this contention due to the similarity of the related mutual funds and of the wrongdoing

that impacted both funds at issue.  848 F. Supp. at 527.

Courts have held that where a plaintiff does not have standing to assert the same claims

as a portion of the proposed class members, but the plaintiff's claim is closely related to the

claims of those class members because it arose from defendants' violation of a single statute, the

---

[17]  Even where courts have addressed this issue in terms of standing, the outcome has been the
same, permitting a plaintiff to represent other securities, ERISA plans, and mutual funds in
addition to his or her own.  *See, e.g., Sutton v. Medical Serv. Ass'n*, 1993 U.S. Dist. LEXIS 9763,
at *13 (E.D. Pa. July 20, 1993) (ERISA plans).

plaintiff could properly represent the proposed class.  *Haas v. Pittsburgh Nat'l Bank*,  526 F.2d

1083, 1089 (3d Cir. 1975).[18]

      Analogous cases also confirm that Plaintiffs may represent purchasers of other Funds, in

light of the similarity of the claims of all Class members against all Defendants and the close

interrelationship and juridical links of all the Funds with each other and Defendants.  *See, e.g., In*

*re Prudential Ltd. P'ship Litig.*, 163 F.R.D. at 208 (limited partnership investments); *Maywalt v.*

*Parker & Parsley Petroleum Co.*, 147 F.R.D. 51, 56-57 (S.D.N.Y. 1993) (plaintiffs who invested

in three limited partnerships could represent persons who had invested in two other limited

partnerships, where, as here, the complaint alleged that investors in all five limited partnerships

were victims of a single pattern of fraud by defendants).[19]

      *Fallick*, 162 F.3d 410, is directly on point.  There the plaintiff alleged that Nationwide

breached its fiduciary duties with respect to the ERISA plan of which he was a member and

other ERISA plans of which he was not a member.  The district court dismissed, on standing

grounds, the claims as to all ERISA plans other than the plaintiff's plan.  *Id.* at 411-12.  The

---

[18] In *Haas*, in denying class certification, the district court held that a plaintiff who had standing to sue the defendant only on her consumer transaction claim did not have standing to bring an individual claim against the same defendant based on commercial transactions.  The Third Circuit reversed the district court's decision and held that the plaintiff's individual claim was "closely related to the commercial transactions claim on which she lacks standing," and that it would therefore not be an abuse of discretion for the district court to certify the class.  526 F.2d at 1088-89.

[19]  *See also Tedesco v. Mishkin*, 689 F. Supp. 1327, 1335-36 (S.D.N.Y. 1988) (investors in various companies and partnerships controlled by defendants could represent a class including investors in other companies and partnerships); *Schur v. Friedman & Shaftan, P.C.*, 123 F.R.D. 611 (N.D. Cal. 1988) (purchasers of securities of one limited partnership may represent purchasers of other partnerships); *Shankroff v. Advest, Inc.*, 112 F.R.D. 190, 193-94 (S.D.N.Y. 1986); *Roberts v. Heim*, 670 F. Supp. 1466, 1490-91 (N.D. Cal. 1987) (same); *Kitchens v. U.S. Shelter*, 1983 U.S. Dist. LEXIS 12812 (D.S.C. Oct. 13, 1983) (permitting named plaintiffs to represent purchasers of interests in 12 separate limited partnerships, even though representatives held interests in only three of the partnerships).

Sixth Circuit reversed, holding that the district court's reasoning was "fundamentally flawed" because it confused the issue of a plaintiff's Article III standing with the Rule 23 issues relevant to his ability to sue on behalf of a class. *Id.* at 422. The court concluded that "once a potential ERISA class representative establishes his individual standing to sue his own ERISA-governed plan, there is no additional constitutional standing requirement related to his suitability to represent the putative class of members of other plans to which he does not belong." *Id.* at 424. The *Fallick* court also cited with approval authority holding that when a single defendant offers a range of ERISA plans, an individual in one plan can represent a class of plaintiffs -- including some belonging to other plans -- as long as "the gravamen of the plaintiff's challenge is to the general practices [of the defendant] which affect all of the plans." *Id.* at 422.

Similarly, many cases hold that a plaintiff who purchased one type of a corporation's securities may represent persons who purchased other types of the corporation's securities, when purchasers of both types of securities were subjected to a common course of wrongful conduct. *E.g., In re American Continental Corp./Lincoln Sav. & Loan Sec. Litig.*, 794 F. Supp. 1424, 1461 (D. Ariz. 1992); *In re MobileMedia Sec. Litig.*, 28 F. Supp. 2d 901, 911 n.7 (D.N.J. 1998).[20]

Alternatively, even if the Court were to reject Plaintiffs' standing argument as set forth above, Plaintiffs may bring this case as a class action under the "juridical link doctrine."[21] The

---

[20]   *Gratz v. Bollinger*, 539 U.S. 244 (2003), also confirms that the proper focus is on the commonality of the claims asserted, rather than whether the plaintiff is identically situated with every other member of the Class. In *Gratz*, plaintiff sought to represent applicants to the freshman class at the University of Michigan and applicants to transfer to the University. *Id*. at 266 n.16. The Court found that the class representative who did not fit both categories could bring an action on behalf of both the freshman and transfer applicants because the University applied the same admission standard to both groups. *Id.* at 266.

[21] The "juridical link doctrine" has been described as allowing a plaintiff to bring a class claim against a defendant as to which he or she lacks standing if "all defendants are juridically related and a single disposition of the entire dispute would be expeditious." *Haas*, 526 F.2d at 1096

Continued on next page

juridical link doctrine is properly applied where efficiency and expediency allow plaintiffs to join together to address **common wrongs** by a group of defendants. "The doctrine is a powerful tool that can allow a plaintiff's lawyer to force many defendants (and what might otherwise be numerous class actions) into a single lawsuit at a substantially reduced cost." *Newby v. Enron Corp.*, 2004 U.S. Dist. LEXIS 8158, at *108 (S.D. Tex. Feb. 24, 2004); *see also Payton v. County of Kane*, 308 F.3d 673, 678-79 (7th Cir. 2002) ("if the plaintiffs as a group -- named and unnamed -- have suffered an identical injury at the hands of several parties related by way of a conspiracy or concerted scheme, or otherwise 'juridically related in a manner that suggests a single resolution of the dispute would be expeditious,' the claim could go forward") (quoting *La Mar v. H & B Novelty & Loan Co.,* 489 F.2d 461 (9th Cir. 1973)).

        In analogous situations, courts in the First Circuit, as well at the Massachusetts Supreme Court and courts in several other Circuits, have adopted the doctrine. For instance, in *Alves v. Harvard Pilgrim Health Care, Inc.*, 204 F. Supp. 2d 198 (D. Mass. 2002) (Saris, J.), the juridical link doctrine was applied where two class representatives brought an ERISA class action against five defendants. Even though neither plaintiff was ever a member of an ERISA plan that the defendants sponsored, the court concluded that "plaintiffs' claims against [defendants] should not be dismissed for lack of standing. Because these defendants [were] wholly[-]owned affiliates of [the corporate defendant], in which plaintiffs were participants, and the copayment plan provisions [were] substantially the same, a single resolution of the dispute would be expeditious." *Id.* at 205. Where "the gravamen of the plaintiff's challenge is to the general practices [of the defendant] which affect all of the plans," the plaintiff could properly represent the proposed class. *Id.; see also Weld*, 746 N.E.2d at 529; *Payton,* 308 F.3d at 678-79. The

———————————————————————
(citation omitted).

28

extensive jurisprudence embracing the juridical links doctrine, especially in the standing analysis, cannot be ignored.

The juridical link doctrine is applicable here. All the Defendants and all the Funds are juridically linked with each other, making collective prosecution of this action the most efficient means for resolution of the dispute. As discussed in the Statement of Facts, *supra*, there are multiple links interconnecting all the Funds and all the Defendants.[22] While "[o]ther named plaintiffs could be supplied to match with each named defendant […] it would be unwieldy to do so. […] The case is simpler and more economical with the class of plaintiffs and the named defendants." *Moore v. Comfed Sav. Bank*, 908 F.2d 834, 838 (11th Cir. 1990).

Defendants may argue that class certification under the juridical link doctrine was rejected in *In re Eaton Vance Corp. Sec. Litig.*, 220 F.R.D. 162 (D. Mass. 2004) (Harrington, J.).[23] In that case,[24] the district court held that plaintiffs could not represent all four funds because they "failed to demonstrate that their claims are typical of that class." *Id.* at 169. Plaintiffs here do not have that same problem because, as explained on pages 12-15, *supra*, Plaintiffs have more than adequately shown how their claims are typical of the claims of all

[22] The links shared by certain of the Funds include the fact that some of the Funds are registered by the same MFS registrant. *See, e.g.*, the Registration Statements for the MFS Variable Insurance Trust, dated May 1, 2002 and May 1, 2004 (describing the 14 or 15 different series that are registered under the MFS Variable Insurance Trust at the respective time periods). At least one court has held that in such a situation, a plaintiff has standing to sue under ICA § 36(b) for the benefit of all the funds covered by the same registrant. *Batra v. Investors Research Corp.*, 1991 U.S. Dist. LEXIS 14773 (W.D. Mo. Oct. 4, 1991).

[23] *See also In re Eaton Vance Corp. Secs. Litig.*, 206 F. Supp. 2d 142 (D. Mass. 2002) (Harrington, J.) and *In re Eaton Vance Corp. Sec. Litig.*, 219 F.R.D. 38 (D. Mass. 2003) (Harrington, J.).

[24] *Eaton Vance* is on appeal to the First Circuit. In any event, this decision is against the clear weight of authority.

shareholders in all the Funds.

In addition, the court in *Eaton Vance* recognized that the juridical link doctrine does apply in certain situations. *Id*. at 171. In *Eaton Vance* though, the court explained that the two funds that plaintiffs did not purchase were "not sufficiently juridically linked to the other mutual funds" because the plaintiffs had not alleged that the four funds at issue had identical false and misleading statements in the prospectus and registration statements. *Id.* at 171. The facts in the instant case are much stronger than those in *Eaton Vance*. First, Plaintiffs here have clearly alleged in the Complaint that "each of the MFS prospectuses and SAIs issued during the Class Period contained substantially the same materially false and misleading statements, in that they omitted key information regarding the Funds' strategy for growth of assets, revenue-sharing, directed brokerage, 12b-1 fees and Soft Dollars." ¶ 116.

Additionally, the juridical links here are much more apparent than they were in *Eaton Vance*. As discussed in the Preliminary Statement, the economics of all the MFS Funds are intertwined, *e.g.*, the Funds share expenses attacked as wrongful in this case. ¶ 44. The Funds are essentially pools of investor assets that are managed and administered by a common body of officers and employees of MFS Company who administer the MFS Funds generally. *Id*. The MFS Funds have no independent will and are totally dominated by MFS Company and the common body of Trustees established by MFS Company. *Id*. Thus, in substance, the MFS Funds function as components of one unitary organization. *Id*. Furthermore, all MFS Funds share MFS Company as their investment adviser and share MFS Distributors as their principal underwriter and distributor. ¶ 45. Additionally, the Defendants pool together fees and expenses collected from the MFS Fund investors, such that the MFS Funds share expenses with one another. *Id*. Accordingly, *Eaton Vance* is easily distinguishable, and Plaintiffs in the instant

action have demonstrated sufficient juridical links even under the *Eaton Vance* standard.

**V.    PLAINTIFFS MAY PROPERLY SERVE AS CLASS REPRESENTATIVES TO ASSERT THE § 36(b) CLAIMS OF SHAREHOLDERS IN ALL MFS FUNDS**

Section 36(b) of the ICA gives a security holder of a registered investment company the right to bring an action against an investment adviser and its affiliates "on behalf of such company" for breach of fiduciary duty. *See* 15 U.S.C. § 80a-35(b) (2005).[25] Plaintiffs bring their individual § 36(b) claims on behalf of the investment companies in which they acquired shares, and also seek to represent the investors in all the Funds with respect to their § 36(b) claims on behalf of those companies.

**A.    Supreme Court and First Circuit Precedent Support Plaintiffs' Individual Standing and Ability to Represent the Proposed Class Under § 36(b)**

The Supreme Court has held that a plaintiff's right to sue under § 36(b) is not secondary, but rather a primary right, because mutual funds themselves have no cause of action under § 36(b). *Daily Income Fund*, 464 U.S. at 523. Even though an investor's recovery of damages under § 36(b) goes to the fund, only the individual investors (and the SEC) have the right to bring claims under that statute. *Id*. at 535 n.11 ("The legislative history of §36(b) makes clear that Congress intended the perhaps unique 'right of a corporation' established by §36(b) to be asserted by the company's security holders and not by the company itself."); *see also Kamen v. Kemper Fin. Servs.,* 500 U.S. 90, 108 (1991) (holding that § 36(b) claims are "direct rather than derivative").

---

[25] Section 36(b) states in relevant part: "An action may be brought under this subsection by the [Securities and Exchange] Commission, or by a security holder of such registered investment company on behalf of such company, against such investment adviser, or any affiliated person of such investment adviser, or any other person enumerated in subsection (a) of this section who has a fiduciary duty concerning such compensation or payments, for breach of fiduciary duty in respect of such compensation or payments paid by such registered investment company or by the security holders thereof to such investment adviser or person." 15 U.S.C. § 80a-35(b).

In addition to their individual claims, Plaintiffs also have the rights of any litigant under Rule 23 to bring claims for the benefit of other parties similarly situated who have been injured by the same wrongdoing. Here, those other parties are the shareholders of Funds in which Plaintiffs are not investors. Those persons also have claims under § 36(b) to obtain relief on behalf of their Funds for the same wrongdoing that was inflicted on the Funds in which Plaintiffs are shareholders. Therefore, Plaintiffs are entitled to serve as class representatives on behalf of those other shareholders for the purpose of asserting their claims under § 36(b).

For the reasons given in Point IV., *supra*, Plaintiffs' lack of any specific ownership in the other Funds does not preclude certification of the Class sought here. For example, in *Alves*, 204 F. Supp. 2d at 205, two class representatives brought an ERISA class action against five defendants. Even though neither plaintiff was ever a member of an ERISA plan that the defendants sponsored, the District of Massachusetts concluded that "plaintiffs' claims against [defendants] should not be dismissed for lack of standing." *Id.* at 205. The District Court held that "as long as the 'the gravamen of the plaintiff's challenge is to the general practices [of the defendant] which affect all of the plans,'" an individual in one plan could represent those in another. *Id.*

Here, the § 36(b) claims of Plaintiffs are "closely related" to the § 36(b) claims of the Class members who hold shares in other Funds. Under *Haas*, Plaintiffs are entitled to represent a class of investors in all the MFS Funds.

## B.    The Language of § 36(b) is Consistent With Class Certification

Defendants may argue that class certification is precluded by the language of § 36(b), which states that an action under that Section may be brought "on behalf of such company." However, that language describes the individual claim that may be asserted by a mutual fund investor. Nothing in the language of § 36(b) states that the only form of action that may be

brought under that Section is an individual claim, nor does § 36(b) anywhere suggest that a plaintiff would be deprived of the normal right of all litigants to assert a class claim as well as an individual claim if the requirements of Rule 23 are satisfied.

The fact that Plaintiffs assert their individual § 36(b) claims for the benefit of their Fund makes them no different from the many other class representatives who have individual claims only by virtue of their positions as trustee, guardian, or similar capacity. Such persons have routinely been certified as class representatives able to assert claims on behalf of others who were similarly situated. *See, e.g., Risinger v. Concannon*, 201 F.R.D. 16 (D. Me. 2001) (parents on behalf of their disabled children); *Woodward v. Online Info. Serv.*, 191 F.R.D. 502 (E.D.N.C. 2000) (guardian of legally incompetent plaintiff); *Prostic v. Xerox Corp.*, [1991 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶¶ 96, 197 (D. Conn. July 19, 1991) (securities fraud class action brought by representative of the estate of deceased investor). "[T]here is nothing … that would preclude fiduciaries or trustees from serving as class representatives on behalf of their own beneficiaries as well as others similarly situated, and many courts have so held." *Woodward*, 191 F.R.D. at 506 (quoting *Newberg on Class Actions*, § 3.34 (3d ed. 1992)).

Interpreting § 36(b) to have the intent of precluding class certification would conflict with the congressional intent of that Section. As described by the Supreme Court in *Daily Income Fund,* 464 U.S. at 536-37, § 36(b) was enacted to strengthen the ability of mutual fund investors to protect their funds against overreaching by the their advisors and affiliated companies.[26] Congress sought to enhance the investors' ability to sue, for example, by

---

[26]  The Congressional intent to strengthen the ability of investors to effectively redress overreaching by mutual fund advisors and their affiliates is clear in the legislative history of § 36(b). The bill introducing § 36(b) was predicated on the SEC's findings in its 1966 Report on Investment Companies. *See* Senate Report. The 1966 Report, entitled "Public Policy

Continued on next page

eliminating any requirement for a demand on the mutual fund's board of directors and by giving

the investor, rather than the fund, the right to sue.  Clearly Congress was focusing on *expanding*

investors' ability to protect their interests as fund shareholders.[27]  It was not attempting to

preclude class treatment where that device would also serve the purposes giving rise to the

statute.

Here Congress' purposes will clearly be served by allowing class certification.  Given the

unitary nature of the entire complex of MFS Funds, for all practical purposes the "company"

referenced in § 36(b), is the entire family of Funds.  Among other things, all the Funds share

expenses.  *See* pp. 4-5, *supra*.  Therefore, a payment by any one Fund generally reflects expenses

incurred by another fund, and *vice versa*.  To provide relief to any Fund under § 36(b) in this

matter, an accounting will have to take place with respect to *all* the Funds.

The legislative history specifically references the existence of fund complexes such as the

MFS family of funds and confirms that, in such a situation, § 36(b) requires the courts to

evaluate the impact of defendants' wrongful conduct on the entire complex of funds.  In

discussing the addition of § 36(b) to the ICA, the Senate Report stated:

> In the event that court action is brought to enforce this fiduciary duty of
> the investment adviser as to compensation or payments received by him, it

---

Implications of Investment Company Growth" (PPI) H.R. No. 2337, 89th Cong., 2d Sess., states:
"It has been the Commission's experience in the administration of the Act that in general the
unaffiliated directors have not been in a position to secure changes in the level of advisory fee
rates in the mutual fund industry.  *Id.* at 131.  The 1966 Report thus concludes:  *"In the
Commission's view, Section 36 should be broadly construed so as to effectuate the remedial
purposes of the Act."  Id.* at 143 (emphasis added).

[27]   The Senate Report left no doubt of the desirability of stockholder access to the courts under §
36(b), stating:  "Therefore your committee has adopted the basic principle that, in view of the
potential conflicts of interest involved in the setting of these fees, there should be effective
means for the courts to act where mutual fund shareholders or the SEC believe there has been a
breach of fiduciary duty."  Senate Report at 2.

is intended that the court look at all the facts in connection with the determination and receipt of such compensation, including all services rendered to the fund or its shareholders and all compensation and payments received, in order to reach a decision as to whether the adviser has properly acted as a fiduciary in relation to such compensation. *In the case of fund complexes, this could, under certain circumstances, include consideration of services rendered by such investment advisers to other funds in such complex and compensation or payments made by such other funds for such services.*

Senate Report at 15.

The above quotation shows that Congress recognized that the existence of an interrelated complex of mutual funds could require the courts to examine the impact of the advisers' activity on the entire group in order to make an informed decision as to whether the adviser was breaching its fiduciary duties and obtaining excessive compensation for itself or its affiliates under § 36(b). The class certification proposed by Plaintiffs is the mechanism that will best accomplish this Congressional policy. It recognizes that the entire family of Funds is impacted by the issues raised, and that the interests of the entire family must therefore be represented if § 36(b) is to achieve its purpose.

## VI.     THE CLAIMS AT ISSUE IN THIS MOTION ARE DIRECT IN NATURE

### A.     Plaintiffs' § 36(b) Claim Is Direct

As discussed in Point V, *supra*, the Supreme Court held that § 36(b) claims are "direct rather than derivative." *Kamen*, 500 U.S. at 108 (citing *Daily Income Fund*, 464 U.S. at 540). Therefore, the direct nature of Plaintiffs' § 36(b) claims cannot reasonably be challenged here.[28]

---

[28]   Indeed, the language of § 36(b) recognizes that the shareholders of the fund are the persons harmed by paying excessive fees. Section 36(b) states that investment advisers have a fiduciary duty "with respect to the receipt of compensation for services, or of payments of a material nature, *paid by* such registered investment company, *or by the security holders thereof*." 15 U.S.C. § 80a-35(b) (emphasis added.) If Congress understood that solely the fund, rather than its shareholders, was harmed by payments of excessive fees, it would have been anomalous to provide an express statutory recovery under § 36(b) for fees paid *by security holders* of the fund,

Continued on next page

35

Although recoveries under § 36(b) go to the Fund rather than directly to the investors, the SEC has recognized that "it is largely a legal fiction to state that recovery obtained by a Section 36(b) action is on behalf of the company rather than the security holders." *See* SEC Brief as Amicus Curae in Support of Affirmance in *Daily Income Fund v. Fox*, Miller Decl. Ex. L, at p. 19 n.9.  The Commission has further stated that, "while a recovery in a Section 36(b) suit would initially be paid to the investment company, the company would serve as a conduit for the benefit of holders of redeemable securities." *Id.*  This statement by the agency whose expertise and initiative was the driving force in bringing about the enactment of § 36(b) confirms that the intent of that Section is to benefit mutual fund investors by providing them with a direct claim.

**B.    Plaintiffs' State Law and Non-§ 36(b) Federal Claims are Direct Claims Suitable for Class Treatment**

The determination of whether the nature of a plaintiff's claim under the ICA is direct or derivative is a question of state law.  *See Kamen*, 500 U.S. at 108 (explaining how the issue of whether a plaintiff's ICA claims are direct or derivative is a question of state law); *Strougo v. Bassini*, 282 F.3d 162, 168 (2d Cir. 2002) (collecting cases).  The MFS Funds are incorporated in Maryland, Massachusetts and Delaware.  As the analysis below shows, Plaintiffs' claims are direct under the laws of all three states.

**1.    Plaintiffs' State Law and Non-§ 36(b) Claims are Direct Claims Under Maryland Law**

To sue directly under Maryland law, a plaintiff-shareholder must allege an injury that is not simply "incidental" to the injury suffered by the corporation.  *Waller v. Waller*, 187 Md. 185, 189 (1946).  In *Waller*, the court stated:

It is a general rule that an action at law to recover damages for an

───────────────────────────────

rather than by the fund only.

> injury to a corporation can be brought only in the name of the
> corporation itself acting through its directors, and not by an
> individual stockholder *though the injury **may incidentally result** in
> **diminishing or destroying the value of the stock***. The reason for
> this rule is that the cause of action for injury to the property of a
> corporation or for impairment or destruction of its business is in
> the corporation, and such an injury, *although it **may diminish the
> value of the capital stock***, *is **not primarily or necessarily a damage
> to the stockholder***, and hence the stockholder's derivative right can
> be asserted only through the corporation.

*Id.* at 189 (emphasis added). Injuries to the corporation such as the director self-dealing at issue in *Waller* are quintessentially derivative because the injury is to the corporation and shareholders experience harm only *indirectly* through the possible loss of share value.

In contrast, the claims herein that Defendants breached their duties to the shareholders by wrongfully deceiving them into continuing to hold their MFS shares are quintessentially direct claims. *See, e.g., Gilbert v. Bagley*, 492 F. Supp. 714, 734 (M.D. N.C. 1980) (noting that the "shareholder plaintiffs' injury, i.e., inducement to either hold or purchase shares…is peculiar to them"); *Harmsen v. Smith*, 693 F.2d 932, 941 (9th Cir. 1982) (stating that there were "separate individual damages" because the shareholders were induced to buy and hold stock).

A substantial portion of the fees and expenses alleged to be excessive in this case impacts the class members directly even without regard to the deception claims. ¶¶ 2-6, 46-48, 79, 97-113. This is reflected in the language of the MFS Prospectuses and SAIs which, for example, repeatedly describe such fees and expenses as directly impacting the investor. *See* pp. 7-8, *supra; see also* ¶¶ 2-6, 46-48, 79, 97, 113. Among other things, the 12b-1 fees are explicitly assessed against the shareholders, and even vary by class of shares held.

Furthermore, even those fees and expenses that are purportedly paid out of the Funds' assets have a direct impact on mutual fund investors. Thus, companies such as the MFS Funds

are very different from traditional corporations. [29]  As the Second Circuit has explained:

> The mutual fund industry is in many ways unique . . .  *A mutual fund is a "mere shell," a pool of assets consisting mostly of portfolio securities that belongs to the individual investors holding shares in the fund*.

*Tannenbaum v. Zeller*, 552 F.2d 402, 405 (2d Cir. 1977) (emphasis added).

Unlike traditional corporations, open-end mutual funds such as the MFS Funds are required to issue "redeemable securities,"[30] which are defined as "any security . . . under the terms of which the holder, upon its presentation to the issuer . . . is entitled . . . to receive approximately *his proportionate share of the issuer's current net assets*, or the cash equivalent thereof." 15 U.S.C. § 80a-2(a)(32).  The excessive fees and other charges about which Plaintiffs complain immediately reduced the Funds' NAV per share.  Those charges decreased the amount by which each shareholder was legally entitled to redeem his or her shares.  Excessive fees paid by mutual funds *or* their shareholders thus injure shareholders directly.

A mutual fund investment also differs from investing in a traditional corporation because it involves a service contract between the investor and the mutual fund.  In the words of the Seventh Circuit:

> A mutual fund share represents a fractional ownership in a large investment account.  *It is, in essence, a service contract between the investor and the investment company* whereby the investor places his money in the hands of the investment company in expectation of realizing a financial gain.

---

[29] *See Kamen*, 500 U.S. at 93 ("Mutual funds pool the investment assets of individual shareholders"); *Burks v. Lasker*, 441 U.S. 471 (1979) ("A mutual fund is a pool of assets, consisting primarily of portfolio securities, belonging to the individual investors holding shares in the fund."). *See also* ¶ 44.

[30] *See* 15 U.S.C. § 80a-5 (2005) ("'Open-end company' means a management company which is offering for sale or has outstanding *any redeemable security* of which it is the issuer.") (emphasis added).

*Baum*, 409 F.2d at 874 (emphasis added). As shown at pages 7-8, *supra*, Defendants' own prospectuses and SAIs contain repeated references to language acknowledging that the cost *to the shareholder* of investing in a Fund is not limited to the initial payment made to purchase the shares. Rather that cost also includes the impact of the additional fees and expenses that are subsequently imposed in connection with this service aspect of a mutual fund investment. This impact on the shareholder is thus direct and not derivative.

### 2. Plaintiffs' State Law and Non-§ 36(b) Claims are Direct Claims Under Massachusetts Law

Under Massachusetts law, "[w]hat differentiates a direct from a derivative suit is … the source of the claim of right itself. . . If the right flows from the breach of a duty owed directly to the plaintiff independent of the plaintiff's status as a shareholder, investor, or creditor of the corporation, the suit is direct." *Blasberg v. Oxbow Power Corp.*, 934 F. Supp. 21, 26 (D. Mass. 1996) (Keeton, J.). Here, Defendants – the directors and investment advisers of the funds – owe directly to the shareholders the fiduciary duty to disclose all material information regarding fund management, and the directors have a duty to protect the interests of shareholders against those of the investment advisers. *See*, *e.g.*, *SEC v. Steadman*, 798 F. Supp. 733, 744 (D.D.C. 1991) ("As a registered investment adviser, SSC violated … its fiduciary duty to the Funds' shareholders … by making material misrepresentations and omissions in the Funds prospectuses."); *Gartenberg v. Merrill Lynch Asset Mgmt., Inc.*, 528 F. Supp. 1038, 1047 (S.D.N.Y. 1981) ("[I]t is well settled that the investment adviser owes a duty of full disclosure to the trustees and shareholders of the fund."). Plaintiffs have also alleged that they were fraudulently induced to hold their investments in MFS Funds. Such a claim is direct under Massachusetts law. *See Blasberg*, 934 F. Supp. at 26 (stating, in an analogous situation of a fraudulently induced purchase, that "if a plaintiff alleges that she, as an individual investor, was

39

misled or defrauded in the purchase of her investment, this kind of claim is a 'direct' one").

### 3. Plaintiffs' State Law and Non-§ 36(b) Claims are Direct Claims Under Delaware Law

Under Delaware law, Plaintiffs' claims are direct as Plaintiffs are seeking the recovery of excessive fees paid by them. In *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1033 (Del. 2004), the Supreme Court of Delaware stated that the issue of whether an action is derivative or direct under Delaware law "must turn *solely* on the following questions: (1) who suffered the alleged harm (the corporation or the suing stockholders, individually); and (2) who would receive the benefit of any recovery or other remedy (the corporation or the stockholders, individually)?"[31] As discussed above, the plaintiff-shareholders in these actions have suffered the alleged harm directly, and they would receive the benefit of a recovery.

---

[31] The Delaware Supreme Court thereby rejected prior case law requiring that a shareholder have suffered a "special injury" -- *i.e.*, an injury distinct from that suffered by other shareholders -- in order to bring a direct action. *Tooley*, 845 A.2d at 1038 n.21. The *Tooley* Court also rejected precedent holding that "an action cannot be direct if all stockholders are equally affected or unless the stockholder's injury is separate and distinct from that suffered by other stockholders." *Id*. at 1038-39.

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court grant their motion for class certification, approve Plaintiffs as representatives of the Class, and appoint Plaintiffs' Counsel (as defined above) as Class Counsel pursuant to Fed. R. Civ. P. 23(g).

Dated: April 14, 2005

**MOULTON & GANS, P.C.**

By:   /s/ Nancy Freeman Gans
     Nancy Freeman Gans (BBO #184540)
33 Broad Street, Suite 1100
Boston, Massachusetts  02109-4216
(617) 369-7979

*Counsel for Plaintiffs Eric Forsythe and Larry R. Eddings and Proposed Liaison Counsel for Plaintiffs and the Class*

**MILBERG WEISS BERSHAD
  & SCHULMAN LLP**
Jerome M. Congress
Janine L. Pollack
Kim E. Miller
Michael R. Reese
One Pennsylvania Plaza
New York, New York  10119-0165
(212) 594-5300

*Counsel for Plaintiff Eric Forsythe and Proposed Co-Lead Counsel for Plaintiffs and the Class*

**BERNSTEIN LITOWITZ BERGER
    & GROSSMANN LLP**
Alan Schulman
Robert S. Gans
12544 High Bluff Drive, Suite 150
San Diego, CA 92130
(858) 793-0070

*Counsel for Plaintiff Chicago Deferred
Compensation Plan and Proposed Co-Lead
Counsel for Plaintiffs and the Class*

**WEISS & LURIE**
Joseph H. Weiss
Richard Acocelli
551 Fifth Avenue, Suite 1600
New York, New York  10176
(212) 682-3025

*Counsel for Plaintiff Larry R. Eddings and
Proposed Co-Lead Counsel for Plaintiffs and the
Class*

**LAW OFFICES OF CHARLES J. PIVEN, P.A.**
Charles J. Piven
Marshall N. Perkins
The World Trade Center – Baltimore
Suite 2525
401 East Pratt Street
Baltimore, Maryland  21202
(410) 332-0030

*Counsel for Plaintiff Eric Forsythe*

**STULL, STULL & BRODY**
Jules Brody
Aaron Brody
6 East 45th Street
New York, New York  10017
(212) 687-7230

*Counsel for Plaintiff Larry R. Eddings*

42

**SCHIFFRIN & BARROWAY, LLP**
Marc A. Topaz
Richard A. Maniskas
280 King of Prussia Road
Radnor, Pennsylvania 19087
(610) 667-7706

*Counsel for Plaintiff Richard  Koslow*

**GILMAN AND PASTOR LLP**
David Pastor (BBO #391000)
Stonehill Corporate Center
999 Broadway, Suite 500
Saugus, Massachusetts  01906
(781) 231-7850

*Counsel for Plaintiff Richard Koslow*

## CERTIFICATE OF SERVICE

I, Daniel P. Dietrich, hereby certify that I served a copy of the foregoing document upon counsel for all parties by mailing a copy of the same, postage prepaid, to each attorney of record, this 14th day of April, 2005.

   /s/ Daniel P. Dietrich
   Daniel P. Dietrich