## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ERIC FORSYTHE, et al., | No. 04-10584-GAO |
| Plaintiffs, | Consolidated Cases Nos.: |
| v. | |
| | 04-10764-GAO |
| SUN LIFE FINANCIAL, INC., ET AL., | 04-11019-GAO |
| Defendants. | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
## MOTION TO DISMISS THE CONSOLIDATED AMENDED COMPLAINT

Jeffrey B. Rudman (BBO #433380)
William H. Paine (BBO #550506)
Jonathan A. Shapiro (BBO #567838)
Amanda P. Masselam (BBO #641108)
WILMER CUTLER PICKERING
   HALE AND DORR LLP
60 State Street
Boston, MA  02109
(617) 526-6000

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

FACTUAL BACKGROUND ................................................................................................... 1

I.      Defendants ............................................................................................................... 1

II.     The Regulatory Settlement ...................................................................................... 2

III.    Allegations of the Complaint .................................................................................. 3

ARGUMENT ..................................................................................................................... 4

I.      Pleading Requirements Under Rule 12(b)(6) ......................................................... 4

II.     Plaintiffs Cannot Bring Claims with Respect To the 60 Funds They Do Not Own. ........... 5

        A.      The Securities Laws Have Strict Standing Requirements. ......................... 5

        B.      Plaintiffs Have No Standing To Bring Claims Regarding Funds They Do
                Not Own. .................................................................................................... 6

III.    Plaintiffs' Investment Company Act Claims Should Be Dismissed. ..................... 8

        A.      There Is No Private Right of Action Under Sections 34(b) and 36(a). ....... 8

        B.      Plaintiffs Have Not Stated a Claim Under Section 36(b). ........................ 11

                1.      Plaintiffs Have No Disclosure Claims Under Section 36(b). ......... 12

                2.      Plaintiffs' Claims Are Overbroad. ............................................... 15

        C.      Plaintiffs' Section 48(a) Claim Should Be Dismissed. ............................ 17

IV.     Plaintiffs' Derivative Claims Should Be Dismissed. ........................................... 19

        A.      Plaintiffs Fail To Plead Facts Showing That Demand Is Excused. .......... 19

                1.      Plaintiffs' Demand Futility Allegations Fail Under the
                        Massachusetts Statute Applicable to Investment Companies. ....... 19

                2.      Plaintiffs Fail To Establish Demand Futility Under Massachusetts
                        Common Law. ............................................................................... 20

                        a)      Plaintiffs' Allegations Concerning Director Compensation
                                And Positions Fail To Excuse Demand. ........................... 21

b)  Plaintiffs' Conclusory Allegations of Director Involvement Are Insufficient To Excuse Demand. .............................................23

c)  Plaintiffs' Amorphous Allegation of Director Benefit Does Not Excuse Demand. ...................................................................24

d)  Plaintiffs' Allegation That the Trustees Would Have To Sue Themselves Is Insufficient To Excuse Demand. ...................25

B.  Plaintiffs' Claims Under the IAA Should Be Dismissed.......................................26

   1.  Plaintiffs Fail To Plead That Demand Was Excused.................................27

   2.  Plaintiffs Do Not Plead a Valid Claim for Relief Under the IAA. ...........27

   3.  The IAA Does Not Provide a Private Right of Action To Sue for Damages. ..................................................................................................28

C.  Plaintiffs' State Law Claims Are Defective and Should Be Dismissed. ...............29

   1.  Plaintiffs' Claims Are Improperly Pleaded As Direct Claims..................29

   2.  Plaintiffs Fail To Meet The Requirements For Bringing a Derivative Claim for Relief. ........................................................................30

   3.  Plaintiffs Fail To State Claims for Relief Under State Law. ....................31

a)  If Plaintiffs' Claims Are Not Derivative in Nature, They Are Barred By SLUSA................................................................31

b)  Plaintiffs Fail To State Claims for Breach of Fiduciary Duty (Counts VI – VII)....................................................................32

c)  Plaintiffs Fail To State a Claim for Aiding and Abetting Breach of Fiduciary Duty (Claim VIII). .........................................33

i)  Plaintiffs Fail To Establish an Underlying Breach of Fiduciary Duty. ..........................................................33

ii)  Plaintiffs Fail To Allege Adequately that Defendants Had Actual Knowledge of an Underlying Breach of Fiduciary Duty. .............................34

d)  Plaintiffs Fail To State a Claim for Unjust Enrichment (Count IX)...................................................................................35

CONCLUSION................................................................................................................36

**Table of Authorities**

**Page(s)**

Federal Cases

Abeloff v. Barth,
   119 F.R.D. 332 (D. Mass 1988)......................................................................8, 26, 30

Abrams v. Koether,
   766 F. Supp. 237 (D.N.J. 1991) .............................................................................25

Adair v. Sorenson,
   134 F.R.D. 13 (D. Mass. 1991)...............................................................................6

Alexander v. Sandoval,
   532 U.S. 275 (2001).............................................................................................9, 11

Allen v. Wright,
   468 U.S. 737 (1984)...............................................................................................6

Angel Music, Inc. v. ABC Sports, Inc.,
   112 F.R.D. 70 (S.D.N.Y. 1986) .............................................................................6

Blasberg v. Oxbow Power Corp.,
   934 F. Supp. 21 (D. Mass. 1996) ......................................................................29, 30

Blatt v. Merrill Lynch, Pierce, Fenner & Smith Inc.,
   916 F. Supp. 1343 (D.N.J. 1996) ...........................................................................27

Bonano v. East Caribbean Airline Corp.,
   365 F.3d 81 (1st Cir. 2004)....................................................................................9

Brambles USA, Inc. v. Blocker,
   731 F. Supp. 643 (D. Del. 1990)............................................................................8

Brandt v. Hicks, Muse & Co., Inc.,
   213 B.R. 784 (D. Mass. 1997) ...............................................................................34

C.R.A. Realty Corp. v. Scor U.S. Corp.,
   1992 WL 309610 (S.D.N.Y. Oct. 9, 1992) ............................................................26

Chamberlain v. Aberdeen Asset Mgmt. Ltd.,
   2005 WL 195520 (E.D.N.Y. Jan. 21, 2005) ....................................................8, 9, 10

Clark v. Nevis Capital Mgmt., LLC.,
   2005 WL 488641 (S.D.N.Y. Mar. 2, 2005) ...........................................................28

Conrardy v. Ribadeneira,
    1990 WL 66603 (D. Kan. Apr. 19, 1990)................................................................29

Corwin v. Marney, Orton Invs.,
    788 F.2d 1063 (5th Cir. 1986) .............................................................................28

Dacey v. Morgan Stanley Dean Witter & Co.,
    263 F. Supp. 2d 706 (S.D.N.Y. 2003) ...................................................................31

Daily Income Fund, Inc. v. Fox,
    464 U.S. 523 (1984)..............................................................................................16

Dandorph v. Fahnestock & Co.,
    462 F. Supp. 961 (D. Conn. 1979)........................................................................15

Delaware & Hudson Co. v. Albany & Susquehanna R. Co.,
    213 U.S. 435 (1909)..............................................................................................25

Dorchester Investors v. Peak Int'l Ltd.,
    134 F. Supp. 2d 569 (S.D.N.Y. 2001) ...............................................................9, 10

Drasner v. Thomson McKinnon Sec., Inc.,
    433 F. Supp. 485 (S.D.N.Y. 1977) .......................................................................27

Eureka Broadband Corp. v. Wentworth Leasing Corp.,
    2004 WL 344425 (D. Mass. Feb. 24, 2004) ..........................................................35

Filson v. Langman,
    2002 WL 31528616 (D. Mass. Nov. 13, 2002) ......................................................28

Fraioli v. Lemcke,
    328 F. Supp. 2d 250 (D.R.I. 2004) .......................................................................28

General Time Corp. v. American Investors Fund, Inc.,
    283 F. Supp. 400 (S.D.N.Y. 1968) .......................................................................15

GFL Advantage Fund, Ltd. v. Colkitt,
    272 F.3d 189 (3d Cir. 2001) .................................................................................27

Goldstein v. Malcolm G. Fries & Assocs., Inc.,
    72 F. Supp. 2d 620 (E.D. Va. 1999) .....................................................................28

Gonzaga Univ. v. Doe,
    536 U.S. 273 (2002)................................................................................................9

Green v. Fund Asset Mgmt., L.P.,
    245 F.3d 214 (3d Cir. 2001) .................................................................................30

Green v. Nuveen Advisory Corp.,
    186 F.R.D. 484 (N.D. Ill. 1999)..................................................................30

Green v. Nuveen Advisory Corp.,
    295 F.3d 738 (7th Cir. 2002)......................................................................33

Green v. Nuveen Advisory Group,
    186 F.R.D. 486 (N.D. Ill. 1999)..................................................................20

Grossman v. Johnson,
    674 F.2d 115 (1st Cir. 1982).................................................................23, 25

Grossman v. Johnson,
    89 F.R.D. 656 (D. Mass. 1981)...................................................................24

In re Bank of Boston Corp. Sec. Litig.,
    762 F. Supp. 1525 (D. Mass. 1991) ..............................................................6

In re E.F. Hutton Banking Practices Litig.,
    634 F. Supp. 265 (S.D.N.Y. 1986) .............................................................22

In re Eaton Vance Corp. Sec. Litig.,
    219 F.R.D. 38 (D. Mass. 2003)................................................................6, 7

In re Kauffman Mutual Fund Actions,
    479 F.2d 257 (1st Cir. 1973)......................................................................23

In re Lupron Mktg. & Sales Practices Litig.,
    295 F. Supp. 2d 148 (D. Mass. 2003) .........................................................35

In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.,
    272 F. Supp. 2d 243 (S.D.N.Y. 2003) ..............................................9, 10, 30

In re Mutual Funds Inv. Litig.,
    320 F. Supp. 2d 352 (D. Md. 2004) ............................................................31

In re Stratus Computer, Inc. Sec. Litig.,
    1992 WL 73555 (D. Mass. 1992) ..........................................................24, 25

Industrial Gen. Corp. v. Sequoia Pac. Sys. Corp.,
    44 F.3d 40 (1st Cir. 1995)..........................................................................32

Jernberg v. Mann,
    358 F.3d 131 (1st Cir. 2004).......................................................................33

Kamen v. Kemper Fin. Serv.,
    500 U.S. 90 (1991)....................................................................................19

Krantz v. Prudential Invs. Fund Mgmt. LLC,
    305 F.3d 140 (3d Cir. 2002) .................................................................................13, 14

Krantz v. Fidelity Mgmt. & Research Co.,
    98 F. Supp. 2d 150 (D. Mass. 2000) ..............................................................................14

Krinsk v. Fund Asset Mgmt., Inc.,
    1986 WL 205 (S.D.N.Y. May 9, 1986) ...........................................................................12

Lessler v. Little,
    857 F.2d 866 (1st Cir. 1988).............................................................................................9

Lewis v. Casey,
    518 U.S. 343 (1996)........................................................................................................5, 6

Long Term Care Pharm. Alliance v. Ferguson,
    362 F.3d 50 (1st Cir. 2004)..............................................................................................10

Lujan v. Defenders of Wildlife,
    504 U.S. 555 (1992)...........................................................................................................5

McLachlan v. Simon,
    31 F. Supp. 2d 731 (N.D. Cal. 1998) ...............................................................................32

meVC Draper Fisher Jurvetson Fund I, Inc. v. Millennium Partners, L.P.,
    260 F. Supp. 2d 616 (S.D.N.Y. 2003) .............................................................................10

Micromuse, Inc. v. Micromuse, PLC,
    304 F. Supp. 2d 202 (D. Mass. 2004)..............................................................................35

Migdal v. Rowe Price-Fleming Int'l, Inc.,
    248 F.3d 321 (4th Cir. 2001) .....................................................................................passim

Miller v. Pacific Shore Funding,
    224 F. Supp. 2d 977 (D. Md. 2002) ...................................................................................6

Mills v. Elec. Autolite Co.,
    396 U.S. 375 (1970).........................................................................................................27

Morris v. Wachovia Sec., Inc.,
    277 F. Supp. 2d 622 (E.D. Va. 2003) ..............................................................................28

Morton v. Mancari,
    417 U.S. 535 (1974).........................................................................................................18

Nenni v. Dean Witter Reynolds, Inc.,
    1999 U.S. Dist. LEXIS 23351 (D. Mass. Sept. 29, 1999) ............................................6, 7

Nizin v. Bright,
    478 F. Supp. 713 (D. Mass. 1979) ........................................................................33

Olmsted v. Pruco Life Ins. Co. of New Jersey,
    283 F.3d 429 (2d Cir. 2002) .......................................................................10, 11

One Wheeler Road Assocs. v. Foxboro Co.,
    843 F. Supp. 792 (D. Mass. 1994) ......................................................................35

Payton v. Abbott Labs,
    512 F. Supp. 1031 (D. Mass. 1981) ....................................................................34

Pope v. City of Clearwater,
    138 F.R.D. 141 (M.D. Fla. 1991) ..........................................................................6

Portnoy v. Kawecki Berylco Indus., Inc,
    607 F. 2d 765 (7th Cir. 1979) ...............................................................................8

Prager v. Knight/Trimark Group, Inc.,
    124 F. Supp. 2d 229 (D.N.J. 2000) ....................................................................31

Prof'l Mgmt. Assocs. Employees' Profit Sharing Plan v. KPMG LLP,
    335 F.3d 800 (8th Cir. 2003) ..............................................................................31

Radzanower v. Touche Ross & Co.,
    426 U.S. 148 (1976) ............................................................................................18

Riley v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,
    292 F.3d 1334 (11th Cir. 2002) ..........................................................................31

Rowinski v. Salomon Smith Barney Inc.,
    2005 WL 356810 (3d Cir. Feb. 16, 2005) ..........................................................31

Security Pac. Nat'l Bank v. Resolution Trust Corp.,
    63 F.3d 900 (9th Cir. 1995) ................................................................................18

Shaw v. Digital Equip. Corp.,
    82 F.3d 1192 (1st Cir. 1996)..................................................................................4

Simon v. Eastern Ky. Welfare Rights Org.,
    426 U.S. 26 (1976) ..............................................................................................28

SSH Co., Ltd. v. Shearson Lehman Bros. Inc.,
    678 F. Supp. 1055 (S.D.N.Y. 1987) ...................................................................28

Strougo v. Bassini,
    282 F.3d 162 (2d Cir. 2002) ...............................................................................30

United States ex rel. Karvelas v. Melrose-Wakefield Hosp.,
  360 F.3d 220 (1st Cir. 2004)..................................................................................4

United States v. Thayer,
  201 F.3d 214 (3d Cir. 1999) ..............................................................................18

United Mine Workers of Am. v. Gibbs,
  383 U.S. 715 (1966)...........................................................................................29

United States v. LaPorta,
  46 F.3d 152 (2d Cir. 1994) ................................................................................18

Untermeyer v. Fidelity Daily Income Trust,
  79 F.R.D. 36 (D. Mass. 1978).............................................................................25

Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.,
  454 U.S. 464 (1982)..............................................................................................5

Verrey v. Ellsworth,
  303 F. Supp. 497 (S.D.N.Y. 1969) ................................................................15, 16

Vervaecke v. Chiles, Heider & Co.,
  578 F.2d 713 (8th Cir. 1978) ...............................................................................6

Warth v. Seldin,
  422 U.S. 490 (1975)..............................................................................................5

Weiner v. Winters,
  50 F.R.D. 306 (S.D.N.Y. 1970) .........................................................................15

White v. Heartland High-Yield Mun. Bond Fund,
  237 F. Supp. 2d 982 (E.D. Wis. 2002) .............................................................9, 10

Wicks v. Putnam Investment Mgmt., LLC,
  2005 WL 705360 (D. Mass. Mar. 28, 2005) .......................................................14

Williams v. Bank One Corp.,
  2003 WL 22964376 (N.D. Ill. Dec. 15, 2003)........................................................7

Yampolsky v. Morgan Stanley Inv. Advisers Inc.,
  2004 WL 1065533 (S.D.N.Y. May 12, 2004) ................................................ passim

Zerman v. Jacobs,
  510 F. Supp. 132, 135 (S.D.N.Y. 1981) .............................................................27

Zurich Capital Mkts., Inc. v. Coglianese,
  332 F. Supp. 2d 1087 (N.D. Ill. 2004) ...............................................................32

State Cases

Aronson v. Lewis,
   473 A.2d 805 (Del. 1984) ................................................................23, 25

Bartlett v. New York, N.H. & H. R.R.,
   221 Mass. 530 (1915) ...........................................................................20

Cigal v. Leader Dev. Corp.,
   408 Mass. 212 (1990) ...........................................................................29

Decker v. A.W. Clausen,
   1989 WL 133617 (Del. Ch. Nov. 6, 1989) ....................................21, 25

Demoulas v. Demoulas Super Mkts, Inc.,
   2003 WL 22285305 (Mass. Super. Sept. 22, 2003) ..............................21

Demoulas v. Demoulas Super Mkts., Inc.,
   1993 WL 818844 (Mass. Super. Ct. Nov. 29, 1993) .............................34

Farragut Mortgage Co. v. Arthur Andersen LLP,
   1999 WL 823656 (Mass. Super. Ct. Aug. 5, 1999) ...............................30

Greenspun v. Lindley,
   36 N.Y.2d 473 (1975) ......................................................................21, 22

Grobow v. Perot,
   539 A.2d 180 (Del. 1988) .....................................................................21

Hanover Ins. Co. v. Sutton,
   46 Mass. App. Ct. 153 (1999) ...............................................................32

Harhen v. Brown,
   431 Mass. 838 (2000) .....................................................................passim

Healy v. McGhan Med. Corp.,
    2001 WL 717110 (Mass. Super. Ct. Mar. 29, 2001) ............................34

Patsos v. First Albany Corp.,
   433 Mass. 323 (2001) ...........................................................................32

In re PolyMedica Corp. S'holder Deriv. Litig.,
   2002 WL 1809095 (Mass. Sup. Ct. July 16, 2002) ..............................24

Sarin v. Ochsner,
   48 Mass. App. Ct. 421 (2000) ...............................................................29

Spinner v. Nutt,
   417 Mass. 549 (1994) ...........................................................................34

Stuchen v. Duty Free Int'l, Inc.,
   1996 WL 33167249 (Del. Super. Ct. Apr. 22, 1996) ....................................................33

Federal Statutes

15 U.S.C. § 78bb(f)(1) ..................................................................................................31

15 U.S.C. § 80a-26(f)(2)(A) ...........................................................................................10

15 U.S.C. § 80a-27(i)(2) .................................................................................................10

15 U.S.C. § 80a-33(b) ......................................................................................................8

15 U.S.C. § 80a-35(a) ......................................................................................................8

15 U.S.C. § 80a-35(b) .............................................................................................. passim

15 U.S.C. § 80a-47(a) .....................................................................................................17

15 U.S.C. § 80b-15(b) .....................................................................................................26

15 U.S.C. § 80b-6 ...........................................................................................................26

15 U.S.C. §§ 80a-2(a)(3) ...........................................................................................17, 20

15 U.S.C. §§ 80a-2(a)(19) ..........................................................................................17, 20

15 U.S.C. §§ 80a-33(b) .....................................................................................................8

15 U.S.C. §§ 80a-35(c) ...................................................................................................17

State Statutes

M.G.L c. 182, §2B ..........................................................................................................19

M.G.L c. 156D, §7.42 .....................................................................................................19

Other Authorities

Axe-Houghton
   1973 WL 11345 (Dec. 16, 1973) ................................................................................18

SEC v. M. Wesley Groshans & Brokers Cap. Mgmt., Inc.,
   47 S.E.C. Docket 712, Litig. Release No. 12,677, 1990 WL 322073, at *2 (Oct. 19, 1990) ....18

Principles of Corporate Governance §1.23, American Law Institute ............................................22

Plaintiffs are alleged shareholders of two MFS funds and former shareholders of seven others who assert federal and state law claims against defendants on behalf of *sixty-two* MFS funds without regard to their lack of standing to do so.  Plaintiffs assert four claims under the Investment Company Act ("ICA") even though three of those claims are brought under Sections of the ICA that confer no private right of action (§§ 34(b), 36(a), and 48(a)).  As to the remaining claim (§ 36(b)), plaintiffs disregard the plain language of the statute by suing improper defendants, for impermissible damages, based on conduct that, in any event, is not actionable.  Plaintiffs also assert derivative claims under the Investment Advisers Act and state law but disregard the requirement that they make demand on the Board of Trustees, substituting instead boilerplate allegations of "demand futility" that ignore controlling law.  Accordingly, the Consolidated Amended Complaint should be dismissed.

## FACTUAL BACKGROUND

### I.     Defendants

Massachusetts Financial Services Co. ("MFS"), a Delaware corporation with a principal place of business in Boston, is an investment adviser registered under the Investment Advisers Act of 1940 ("IAA").  See Compl. ¶ 24.[1]  MFS is a subsidiary of Sun Life Financial, Inc. ("Sun Life").  Id. ¶ 23.  The "MFS Funds" or "Funds," on behalf of which the derivative claims are asserted, are Massachusetts business trusts registered as investment companies under the ICA and advised by MFS.  Id. ¶¶ 40-42.  MFS Fund Distributors, Inc. ("MFD") is the principal underwriter and distributor of shares of the MFS Funds.  Id. ¶¶ 38, 45.  A board of trustees, a majority of whom are required to be (and are) independent of MFS, oversees the Funds.  Id. ¶ 40; SEC Release 2004-87, 2004 WL 1415958 (June 23, 2004).  Jeffrey Shames, John Ballen, and Kevin Parke were MFS officers who were at times trustees of the Funds.  See Compl. ¶¶ 25-27.

---

[1]     "Complaint" and " Compl." refers to the Consolidated Amended Complaint, filed on March 3, 2005.

## II.    The Regulatory Settlement

On March 31, 2004, the SEC (pursuant to an agreement with MFS) entered an administrative and cease-and-desist order concerning "Strategic Alliance" arrangements that MFS previously had with certain broker-dealers. See Order, attached as Ex. A ("Order"). In the Order, the SEC found (and MFS neither admitted nor denied) that MFS had "Strategic Alliance" arrangements with certain broker-dealers that both sold shares and executed trades of portfolio securities for the MFS Funds. See Order § III.2. According to the Order, these Strategic Alliances involved "directed brokerage" – allocating a portion of the commissions paid by the Funds for portfolio brokerage services to broker-dealers that "provided services designed to promote the sale of MFS Funds" to investors. See id. § III.2-5, 10.[2]

Although the SEC challenged the adequacy of MFS's disclosure about directed brokerage arrangements in the Funds' Statements of Additional Information, see id. §§ III. 2, 3, 18, 20, 22, nowhere in the SEC Order is there any finding that directed brokerage had any adverse impact whatsoever on any of the MFS Funds. To the contrary, the SEC found that MFS allocated trades to brokers "subject to best execution," id. § III.8, and that "MFS had Equity Trading policies designed to achieve best execution, including policies that required traders to seek to obtain best execution in determining where to place trades, and reported on best execution annually to the" Trustees. Id. § III.10. If a fund achieves best execution (i.e., trade execution on the most favorable terms then available), then it suffers no harm from directed brokerage. For example, if the broker-dealer that provides best execution internally credits a portion of its commission to employees who sell fund shares, it is of no moment to the fund.

---

[2]    The Order also refers to this practice as the use of "soft dollars," even though the Complaint defines that term differently. Compare Order § III.7 ("MFS referred to these allocated fund brokerage commissions as 'soft dollars'") with Compl. ¶¶ 11, 48 (referring to "soft dollars" as "inflated commissions") and id. ¶ 109 (defining soft dollars as the portion of commission "in excess of the purchase and sale charges").

The SEC imposed a penalty on MFS for what it found to be inadequate disclosure.  See id. § IV.C.  The SEC, however, found no basis to – and did not – conclude that the MFS Funds suffered any harm as a result of MFS's use of Strategic Alliances.  It ordered that MFS pay only $1 (one dollar) in disgorgement, which is consistent with the absence of any finding by the SEC that the conduct at issue had materially harmed the MFS Funds.  See id.

## III.    Allegations of the Complaint

The Complaint purports to assert class claims on behalf of "all persons or entities who held one or more shares" of sixty-two MFS Funds during the period March 24, 1999 to March 31, 2004, and derivative claims on behalf of those same Funds.  See Compl. ¶ 2.  The Complaint incorporates by reference the Order, which allegedly details the "full truth."  See id. ¶¶ 12 (Complaint "based on the same conduct" as Order), 85.  Contrary to the Order, however, plaintiffs advance the conclusion (unsupported by well-pleaded facts) that use of Strategic Alliances amounted to "siphoning fees from MFS Funds" thereby causing the Plaintiffs to be "materially harmed."  Compare Compl. ¶¶ 6, 108 with Order § III.

The Complaint primarily advances disclosure claims similar to the SEC's.  See Compl. ¶¶ 114-127.  In addition, plaintiffs allege that the conduct on which the SEC Order is based supports the conclusion that the MFS Funds generally paid excessive advisory and 12b-1 fees to MFS (Count III) and that defendants breached their fiduciary duties under state and federal law either by receiving or approving such fees or controlling or aiding those who did (Counts II, IV, V-VIII).  The Complaint also alleges, contrary to the SEC's order, that all defendants were "unjustly enriched" (Count IX).

<u>ARGUMENT</u>

**I.     Pleading Requirements Under Rule 12(b)(6)**

As the First Circuit has held:

> [E]ven under the liberal pleading requirements of Rule 8(a), a
> plaintiff must "set forth factual allegations, either direct or
> inferential, respecting each material element necessary to sustain
> recovery under some actionable legal theory. . . ."  Simply
> parroting the language of a . . . cause of action, without providing
> some factual support, is not sufficient to state a claim.

<u>U.S. ex rel. Karvelas v. Melrose-Wakefield Hosp.</u>, 360 F.3d 220, 240 (1st Cir. 2004) (internal

citations omitted).  This rule – that only well-pleaded facts assist plaintiff in stating a claim, and

that a Court evaluating a motion to dismiss need not credit a complaint's deductions, legal

conclusions, or bald assertions (even where they are couched as factual assertions) – applies with

special force in cases like this one.  <u>See</u> <u>Migdal v. Rowe Price-Fleming Int'l, Inc.</u>, 248 F.3d 321,

326 (4th Cir. 2001) (noting in similar case that "[t]his requirement serves to prevent costly

discovery on claims with no underlying factual or legal basis").  <u>See generally</u> 5A Charles A.

Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 at 318 (2d ed. 1990).

The Complaint does not comply with Rule 8(a) because it does not contain adequate

facts, as opposed to conclusions.  In addition, because the Complaint "sounds in fraud" it is

subject to the heightened pleading requirements of Fed. R. Civ. P. 9(b).  <u>Compare</u> <u>Shaw v.

Digital Equip. Corp.</u>, 82 F.3d 1192, 1223-23 (1st Cir. 1996) (non-fraud count based on scienter

and reliance allegations "sounds in fraud") <u>with</u> <u>e.g.</u>, Compl. ¶¶ 13 (defendants "purposefully

omitted to disclose" and "concealed" inducements "they realized" created a "conflict of interest

material to any reasonable person deciding whether to invest in MFS Funds."), 25-36, 76

(defendants knew "that a recommendation to purchase MFS Funds would be completely

undermined if clients knew that the broker was paid from Fund assets to give it, Defendants concealed the truth"), 96, 104, 115, 116, 136, 137, 141, 187, 189.

## II.    Plaintiffs Cannot Bring Claims with Respect To the 60 Funds They Do Not Own.

The four named plaintiffs bring claims on behalf of a Class consisting "of all persons or entities who held one or more shares or other ownership units of MFS Funds, as set forth in Exhibit A." Compl. ¶ 2. Exhibit A of the Complaint lists sixty-two funds. Plaintiffs, however, having at most alleged prior ownership in nine funds – and present ownership in only two of these funds – have no standing to sue in connection with all of the others.

### A.    The Securities Laws Have Strict Standing Requirements.

Plaintiffs must plead facts showing that they have standing to bring a claim. See Warth v. Seldin, 422 U.S. 490, 498 (1975) (requiring case or controversy and that plaintiff must assert own legal rights); Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992) (plaintiff bears the burden of meeting each of the standing requirements). Article III's standing requirement is an essential prerequisite to a federal court's exercise of jurisdiction: it is "a constitutional principle that prevents courts of law from undertaking tasks assigned to the political branches," Lewis v. Casey, 518 U.S. 343, 349 (1996), and requires "the party who invokes the court's authority to show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant . . . and that the injury fairly can be traced to the challenged action and is likely to be redressed by a favorable decision." Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc., 454 U.S. 464, 472 (1982) (internal quotation marks and citations omitted).

Plaintiff must allege: (1) his or her own personal injury that is (2) fairly traceable to the defendant's allegedly wrongful conduct and (3) likely to be redressed by the requested relief.

-5-

See Allen v. Wright, 468 U.S. 737, 751 (1984).  In securities class actions, courts pay special attention to standing requirements.  See In re Bank of Boston Corp. Sec. Litig., 762 F. Supp. 1525, 1531 (D. Mass. 1991) ("Strict standing requirements are particularly important . . . to curb the risks of vexatious litigation and the abuse of discovery.").  Plaintiffs' standing to sue may not be expanded by class action allegations.  The named plaintiffs themselves must have standing to bring each of their claims, and the fact that they purport to act for a class is irrelevant to this question.[3]  Put another way, a class may not raise claims that the named plaintiffs could not raise themselves absent the class action.  Miller v. Pacific Shore Funding, 224 F. Supp. 2d 977, 996 (D. Md. 2002) ("In a multi-defendant action or class action, the named plaintiffs must establish that they have been harmed by each of the defendants.").[4]

**B.    Plaintiffs Have No Standing To Bring Claims Regarding Funds They Do Not Own.**

Plaintiffs cannot bring claims with respect to mutual funds that they never owned, because they have no standing to do so.   See In re Eaton Vance Corp. Sec. Litig., 219 F.R.D. 38, 41 (D. Mass. 2003); Nenni v. Dean Witter Reynolds, Inc., No. 98-12454, 1999 U.S. Dist. LEXIS 23351, at *5-6 (D. Mass. Sept. 29, 1999); see also Vervaecke v. Chiles, Heider & Co., 578 F.2d 713, 719 (8th Cir. 1978) (no standing to assert claims arising out of bond offering in which plaintiff did not participate).

In Eaton Vance, 219 F.R.D. at 41, plaintiffs filed a class action complaint under Section 11 of the Securities Act against four mutual funds, along with their directors and investment

---

[3]        "That a suit may be a class action . . . adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent."  Lewis, 518 U.S. at 357 (quoting Simon v. Eastern Ky. Welfare Rights Org., 426 U.S. 26, 40 n. 20 (1976) (citation omitted)); see also Adair v. Sorenson, 134 F.R.D. 13, 16 (D. Mass 1991) ("A Court must assess standing to sue based upon the standing of the named plaintiff and not upon the standing of unidentified class members.") (citation omitted).

[4]        See Pope v. City of Clearwater, 138 F.R.D. 141, 145 (M.D. Fla. 1991); Angel Music, Inc. v. ABC Sports, Inc., 112 F.R.D. 70, 74 (S.D.N.Y. 1986) ("[R]epresentative plaintiffs must have individual standing to assert claims against all the members of a defendant class.").

adviser.  None of the named plaintiffs owned two of the four funds.  Id. at 41.  The district court held that plaintiffs had no standing to pursue any claims with respect to those two funds, because plaintiffs had not been injured by those funds and therefore could not "demonstrate the requisite case or controversy between themselves personally" and those funds.  Id. (citations omitted).  The court in Dean Witter, 1999 U.S. Dist. LEXIS 23351, at *5-6, reached the same conclusion on similar facts.  There, an investor in four mutual funds filed a complaint on behalf of a class of individuals who purchased shares in any of forty-one different funds issued by an investment company.  Id. at *2.  The court held that the plaintiff only had standing to bring claims with respect to the four funds in which he owned shares.  Id. at *5-6; see also Williams v. Bank One Corp., No. 03-8561, 2003 WL 22964376 (N.D. Ill. Dec. 15, 2003).

Plaintiffs' claims arise from the alleged charging of excessive fees to sixty-two Funds.  Plaintiffs, however, have no standing to sue based on fees incurred by the fifty-three mutual funds that they never owned because they can establish no personal injury with respect to those funds.  See Eaton Vance, 219 F.R.D. at 41 (plaintiffs can establish no injury where they "never purchased shares in or conducted any other business with two of the four funds").

Moreover, because Section 36(b) authorizes only a "security holder" to bring an action, a former security holder cannot do so.  Thus, plaintiffs have no standing to assert a Section 36(b) claim unless they can demonstrate continuous ownership of the fund.  See 15 U.S.C. § 80a-35(b).  As a result, only Plaintiffs Koslow and Forsythe have standing to assert Section 36(b) claims, and they have standing only as to the two funds they owned at the time they filed suit (Massachusetts Investors Trust and MFS Utilities Fund).

Similarly, with respect to their derivative claims, plaintiffs have no standing to assert claims in connection with the sixty funds in which no plaintiff currently owns shares.  It is well

established that to assert a derivative claim, a plaintiff must establish continuous ownership from the time of the alleged wrong through the conclusion (by final judgment or otherwise) of the derivative action.  See Fed. R. Civ. P. 23.1 ("the complaint . . . shall allege [] that the plaintiff was a shareholder or member at the time of the transaction of which plaintiff complains"); Mass. R. Civ. P. 23.1; Portnoy v. Kawecki Berylco Indus., Inc, 607 F. 2d 765, 767 (7th Cir. 1979); Brambles USA , Inc. v. Blocker, 731 F. Supp. 643, 648 (D. Del. 1990); Abeloff v. Barth, 119 F.R.D. 332, 334 (D. Mass 1988).  Once again, only plaintiffs Koslow and Forsythe have pleaded continuous ownership, but only with respect to two funds (Massachusetts Investors Trust and MFS Utilities Fund).  Plaintiffs' derivative claims with respect to the other sixty funds, therefore, must be dismissed.

## III.   Plaintiffs' Investment Company Act Claims Should Be Dismissed.

### A.   There is No Private Right of Action Under Sections 34(b) and 36(a).

There is no private right of action for plaintiffs to pursue under Sections 34(b) or 36(a) of the ICA.  15 U.S.C. §§ 80a-33(b), 80a-35(a).  Section 36(a) authorizes the "Commission" (i.e., the SEC) to bring an action for "breach of fiduciary duty involving personal misconduct" with respect to investment companies.  15 U.S.C. § 80a-35(a).  Section 36(a) does not, however, grant any express cause of action to private civil litigants.  Id.  Section 34(b) makes it unlawful for any person to make a false or misleading statement or omission in certain filings and records, but, like Section 36(a), grants no express private right of action.  See 15 U.S.C. § 80a-33(b).

Courts have rejected the implication of private rights under §§ 34(b) and 36(a). Chamberlain v. Aberdeen Asset Mgmt. Ltd., No. 02-5870, 2005 WL 195520, at *4 (E.D.N.Y. Jan. 21, 2005) ("[W]hen Olmsted and Sandoval are applied to ICA § 36(a), it is evident that the

provision does not give rise to a private right of action.").[5] In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig. ("Merrill Lynch Research Reports"), 272 F. Supp. 2d 243, 255-59 (S.D.N.Y. 2003) (rejecting private right under § 34(b)); White v. Heartland High-Yield Mun. Bond Fund, 237 F. Supp. 2d 982, 987-88 (E.D. Wis. 2002) (same); Dorchester Investors v. Peak Int'l Ltd., 134 F. Supp. 2d 569, 581 (S.D.N.Y. 2001) (same).

Recent Supreme Court precedent precludes a finding that there is an implied private right of action under these sections. In Alexander v. Sandoval, the Supreme Court explained:

> The judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy. . . . Statutory intent on this latter point is determinative. Without it, a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute.

532 U.S. 275, 286-87 (2001) (internal citations omitted); accord Gonzaga Univ. v. Doe, 536 U.S. 273, 283-86 (2002) (no private right of action in absence of clear and convincing congressional intent evidenced in text and structure of statute).

More than ten years prior to the Supreme Court's decisions in Sandoval and Gonzaga, the First Circuit held that certain other sections of the ICA implied a private right of action, joining in the then-prevailing reasoning of the Second Circuit. See Lessler v. Little, 857 F.2d 866, 871-73 (1st Cir. 1988). Since that time, however, the First Circuit has noted that cases regarding implication of private rights prior to the "clarifying decisions" of Sandoval and Gonzaga lack "continued vitality." Bonano v. East Caribbean Airline Corp., 365 F.3d 81, 84, 86 n.4 (1st Cir.

---

[5] The parties in Chamberlain have since filed a joint motion to vacate the court's January 21, 2005 decision. According to the memorandum in support of the motion, the parties reached an agreement to settle the action, but that "a condition precedent to the settlement for plaintiffs is that the Memorandum and Order entered January 21, 2005 be vacated." On April 6, 2005, the court vacated the decision, but stated that granting the motion to vacate did "not constitute a reconsideration of the merits of the case or a negation of the substance of the previously issued Order; rather the Motion is granted simply in order to permit the parties to proceed to settlement." Chamberlain, Civil Action No. 02-CV-5870, slip op. at 2 (E.D.N.Y. Apr. 6, 2005).

2004).[6]    The Second Circuit has now rejected private rights of action under the ICA.  Olmsted v. Pruco Life Ins. Co. of New Jersey, 283 F.3d 429, 436 (2d Cir. 2002).  District courts in other circuits also have followed the controlling Supreme Court cases instead of outdated pre-Sandoval and Gonzaga precedent.[7]  Accordingly, Lessler (if it was ever correct) has now been cast adrift.

In Olmsted, 283 F.3d at 436, the Second Circuit held that no private right of action exists under Sections 26(f) and 27(i) of the ICA.[8]  The same analysis applies with equal force to ICA Sections 34(b) and 36(a).  There is no basis in their text or structure to conclude that Congress intended to create a right of action under them.  Indeed, the text and structure of the ICA are flatly inconsistent with the implication of any private right of action.  Since no provision of the ICA explicitly provides for a private right of action under these sections, and the only appropriate inference is "that Congress did not intend one."  Compare id. at 432-36.

---

[6]    Last year, the First Circuit also vacated another district court on the ground that the statute at issue (the Medicaid Act) did not confer a private right of action.  See Long Term Care Pharm. Alliance v. Ferguson, 362 F.3d 50, 58-59 (1st Cir. 2004) (reversing its own 1996 decision and observing that "[i]f Gonzaga had existed prior to [the 1996 decision], the panel could not have come to the same result").

[7]    For example, in finding no private right of action under Section 36(a), the Chamberlain court noted that, prior to Olmsted, a number of courts had found implied rights of action under Section 36(a) and other Sections of the ICA.  Chamberlain, 2005 WL 195520, at *2.  In Olmsted, however, the court noted that those decisions were inconsistent with the analysis now mandated by the Supreme Court: "Past decisions reflecting judicial willingness to 'make effective [statutory] purpose' in the context of implied rights of action belong to an 'ancien regime.'"  Olmsted, 283 F.3d at 434 (quoting Sandoval, 532 U.S. at 287 (internal quotation marks omitted)).  Chamberlain held that because Olmsted found the previous Section 36(a) cases to be part of the ancien regime, "this Court is no longer bound to follow [them]."  Chamberlain, 2005 WL 195520, at *4; see also meVC Draper Fisher Jurvetson Fund I, Inc. v. Millennium Partners, L.P., 260 F. Supp. 2d 616, 621-25 (S.D.N.Y. 2003) (after examining Section 12(d)(1)(A) of the ICA in light of Olmsted, holding that no private right of action exists despite previous decisions to the contrary).  Likewise, courts in three different cases recently applied Olmsted and held that no private right of action exists under Section 34(b), despite the fact that previous courts had found a private right of action under that Section.  See Merrill Lynch Research Reports, 272 F. Supp. 2d at 255-59; White, 237 F. Supp. 2d at 987; Dorchester Investors, 134 F. Supp. 2d at 581.  Prior decisions of the "ancien regime" therefore lend no support to plaintiffs' Sections 36(a) and 34(b) claims.

[8]    Sections 26(f) and 27(i) provide that "[i]t shall be unlawful" to sell variable insurance contracts "unless the fees and charges deducted under the contract, in the aggregate, are reasonable in relation to the services rendered, the expenses expected to be incurred, and the risks assumed by the insurance company."  15 U.S.C. § 80a-26(f)(2)(A); see 15 U.S.C. § 80a-27(i)(2).  Between the time of the district court's decision in Olmsted and the Second Circuit's affirmance, a new subsection (b) was added to Section 26, so what the district court's opinion referred to as Section 26(e) became 26(f).  For sake of clarity, it is referred to throughout as Section 26(f).

Where no express right of action exists, it is presumed that none was intended to exist. Id. at 432. This presumption can be "strengthened" where the sections in question "do not contain rights-creating language." Id. Because §§ 26(f) and 27(i) of the ICA focus on the person regulated rather than the individuals protected, they create "no implication of an intent to confer rights on a particular class of persons.'" Id. at 433 (quoting Sandoval, 532 U.S. at 289) (internal citations omitted). Neither do §§ 34(b) and 36(a).

Where Congress creates an express private right for one part of a statute and not another, that too is significant. See, e.g., Transamerica Mortgage Advisors, Inc., 444 U.S. at 19 ("where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it"). In Olmsted, 283 F.3d at 433, the Second Circuit found it compelling that Congress had created an express right in Section 36(b) of the ICA but nowhere else. "Congress's explicit provision of a private right of action to enforce one section of a statute suggests that omission of an explicit private right to enforce other sections was intentional."

This also applies with equal force to prevent the implication of a private right under Sections 34(b) and 36(a).

The Second Circuit also relied on the fact that Section 42 of the ICA provides for enforcement of all ICA provisions by the SEC, but *not* by private litigants, to conclude that the ICA's text "creates a strong presumption that Congress did not intend to create private rights of action for violations of §§ 26(f) and 27(i)." Id. There can be no meaningful distinction between those sections and Sections 34(b) and 36(a). Accordingly, plaintiffs here have no standing to assert claims under Sections 34(b) and 36(a) of the ICA.

## B.    Plaintiffs Have Not Stated a Claim Under Section 36(b).

Plaintiffs purport to bring a Section 36(b) claim against MFS, MFD, and the Trustees, see Compl. ¶¶ 157-64, but fail to allege a factual basis for such a claim. Section 36(b) is a limited

statutory cause of action that allows specified plaintiffs to bring a tightly-bounded claim against specified defendants to address only the specific fiduciary duty created by the statute.  15 U.S.C. § 80a-35(b).  It is not a catch-all statute supplying a fee-based remedy for alleged breach of other fiduciary responsibilities (or any other supposed wrong), and it clearly limits the parties who may sue and be sued, and the nature of the remedy provided.  See Krinsk v. Fund Asset Mgmt., Inc., No. 85 Civ. 8428 (JMW), 1986 WL 205, at *2 (S.D.N.Y. May 9, 1986) (noting that the "highly restrictive limitations on actions under Section 36(b) evidence an intent by Congress to protect investment advisers and their affiliates from open-ended litigation and nuisance suits").

Section 36(b) sets forth: (i) who may sue (a "security holder"); (ii) who may be sued (no one "other than the recipient of" the challenged payments); (iii) for what misconduct ("breach of fiduciary duty in respect of" the "receipt of" fees); and (iv) the damages recoverable ("actual damages" for the one year prior to the filing of the complaint).  See 15 U.S.C. § 80a-35(b).  Plaintiffs' claim should be dismissed because it fails to plead any facts to satisfy these elements.

### 1.    Plaintiffs Have No Disclosure Claims Under Section 36(b).[9]

Section 36(b) imposes a narrow fiduciary duty on the investment adviser of a mutual fund "with respect to the receipt of compensation for services, or of payments of a material nature, paid by" the fund or its shareholders to the adviser or its affiliates.  15 U.S.C. § 80a-35(b).  See Migdal, 248 F.3d at 327; Yampolsky v. Morgan Stanley Inv. Advisers Inc., No. 03 Civ. 5710 (RO), 2004 WL 1065533, at *2 (S.D.N.Y. May 12, 2004).  The gravamen of plaintiffs' claim, however, is not that MFS's fees were excessive.  The Complaint is explicitly based on "the same conduct" as the SEC Order, which did not purport to address the appropriateness of MFS's fee structure but instead addressed only alleged disclosure violations.  Compl. ¶ 12.  The Complaint,

---

[9]    The prevailing legal standard for stating a cognizable claim under Section 36(b) is more fully set forth in the Memorandum of Law in Support of Defendants' Motion to Dismiss Plaintiffs' Complaint, filed in Dumond v. Massachusetts Financial Services Co., C.A. No. 04-11458-GAO, which is incorporated herein.

like the Order, also focuses on disclosure concerning Strategic Alliances and directed brokerage. <u>Compare</u> Compl. ¶ 3 ("undisclosed fees" to third parties not alleged to be affiliated with MFS); ¶ 4 ("undisclosed plan"); ¶¶ 114-27 (ten pages detailing MFS's alleged "omissions" and "misrepresentations"); ¶ 160 ("undisclosed payments") <u>with</u> Order §§ III.2, III.18, III.22.   These disclosure claims have nothing to do with Section 36(b).

Unlike private plaintiffs bringing civil actions, the SEC may bring an enforcement action to stop conduct that causes no harm.  Tellingly, however, the SEC (which is permitted to bring a Section 36(b) action and otherwise to remedy harm), in this case concluded that there was no harm to remedy.  <u>See</u> 15 U.S.C. § 80a-35(b) (SEC authorized to bring Section 36(b) claim for excessive fees).  To the extent that MFS had defective disclosure in connection with its use of Strategic Alliances, that issue has already been addressed with the SEC.  Plaintiffs have no private right under the ICA to bring a claim on that basis.

Plaintiffs cannot transform their impermissible, private follow-on action for nondisclosure into a valid claim for "excessive fees" under Section 36(b) by sprinkling through the Complaint sparse and conclusory allegations that MFS's fees were excessive.  <u>See</u> Compl. ¶¶ 47, 102, 125(g), 160, 162.  For example, it does not suffice that plaintiffs make the passing assertion (as part of their nondisclosure allegations) that "any economies of scale achieved by marketing of the MFS Funds to investors were not passed on to MFS Funds investors."  Compl. ¶ 127(h).  No court has ever held that simply typing such a conclusion into a complaint (with no supporting factual allegations) is a license for discovery.  <u>See, e.g.</u>, <u>Krantz v. Prudential Invs. Fund Mgmt. LLC</u>, 305 F.3d 140, 143 (3d Cir. 2002) (dismissing Section 36(b) complaint because it failed to "allege any facts indicating that the fees received were disproportionate to services rendered") (emphasis added); <u>Migdal</u>, 248 F.3d at 326-27 (dismissing Section 36(b)

claim where, as here, claim based on "bald statement[s]"); Yampolsky, 2004 WL 1065533, at *2 (dismissing complaint that "track[ed] the Gartenberg factors" but lacked "substance" or "factual allegations"). Incantation of a legal conclusion has no such talismanic effect, and it does not impose a heightened pleading standard (consistent with Rule 8 as interpreted by the First Circuit) to require that plaintiffs plead facts in support of their legal conclusions. See Krantz, 305 F.3d at 144 (rejecting notion that requiring factual allegations imposes a heightened pleading requirement). In no event does such pleading satisfy Rule 9(b).

Two recent cases from this Court, Krantz v. Fidelity Mgmt. & Research Co., 98 F. Supp. 2d 150 (D. Mass. 2000) and Wicks v. Putnam Investment Mgmt., LLC, 2005 WL 705360 (D. Mass. Mar. 28, 2005), upheld Section 36(b) claims that were based in part on factual allegations not present in this case. In Fidelity, for example, the complaint contained factual allegations with respect to the two Fidelity funds at issue. Fidelity, 98 F. Supp. 2d at 158. Plaintiffs here make no allegation concerning fee levels of the vast majority of the Funds as to which they sue. The two paragraphs containing allegations about fee levels are fatally unspecific, and not enough to support the broad conclusions upon which plaintiffs rely. See Compl. ¶¶ 97, 102. Wicks v. Putnam is similarly distinguishable. In Wicks, unlike here, plaintiffs claimed that the fees were excessive in light of specific allegations about both the quality and nature of the services. Id., 2005 WL 705360, at *1. Plaintiffs in Wicks also made fund-specific allegations concerning profits and fees and drew direct comparisons to institutional accounts in support of their claim. Plaintiffs here make no such allegations.

Having failed to plead that MFS's fees are excessive, plaintiffs do not state a Section 36(b) claim by (i) reciting general statements critical of the mutual fund industry, compare Compl. ¶ 13 (quoting Senator Peter Fitzgerald) with Yampolsky, 2004 WL 1065533, at *2

-14-

(rejecting reliance on "speculation, inference and generalized observations . . . from public figures such as Warren Buffet"); (ii) making general allegations about other mutual funds, see Compl. ¶ 14; (iii) complaining about so-called "excessive commissions" but suing no defendant who "received" such commissions (i.e., brokers), compare 15 U.S.C. § 80a-35(b)(3) (authorizing action only against recipient of challenged fee) with Order §§ III.7, III.10 (concluding, in any event, that MFS allocated trades based on "best execution" and making no finding that MFS ever departed from that policy by paying an excessive commission); or (iv) assuming that MFS's fees must have been excessive because the "ratio of expenses to net assets" increased during a time when stock prices dropped, compare Compl. ¶ 102 with Yampolsky, 2004 WL 1065533, at *2 (dismissing complaint "rel[ying] principally on the assertions that the fund underperformed . . . [and] had an unfavorable expense ratio").  In short, the Complaint does not state a Section 36(b) claim, and plaintiffs' anemic allegations about "excessive fees" are insufficient under any pleading standard.

### 2.     Plaintiffs' Claims Are Overbroad.

Plaintiffs' claims are overbroad in three respects.  First, the claims are overbroad to the extent that they are asserted by former shareholders or those who sue on behalf of funds they never owned. [10]  See supra at Part II.  Therefore, plaintiffs' claims must be dismissed as to all but

---

[10]     Every court to have addressed the question has held, consistent with the statutory language, that a security holder does not have standing to bring a claim on behalf of a fund he does not own.  See, e.g, Weiner v. Winters, 50 F.R.D. 306, 310-11 (S.D.N.Y. 1970) (dismissing § 36(b) claims against funds in which plaintiffs owned no shares because "nothing in the Investment Company Act . . . authorize[s] a shareholder of one mutual fund to bring a derivative action on behalf of another mutual fund in which he holds no shares); Verrey v. Ellsworth, 303 F. Supp. 497, 500 (S.D.N.Y. 1969) (dismissing excessive fee claim with leave to replead claim against only those funds in which plaintiff was a shareholder); see also General Time Corp. v. American Investors Fund, Inc., 283 F. Supp. 400, 402 (S.D.N.Y. 1968); ("[w]here persons who are not shareholders have sought to object to a registered company's conduct, standing has been denied.") aff'd 403 F.2d 159 (2d Cir 1968); Dandorph v. Fahnestock & Co., 462 F. Supp. 961, 965 (D. Conn. 1979) (Section 36(a) case holding that "plaintiff who does not hold stock in the investment company lacks standing to sue under the Investment Company Act").

the two Funds owned at the time they brought suit.[11]  Second, plaintiffs' claims are overbroad to the extent they seek anything other than "actual damages" or any recovery "for any period prior to one year before the action was instituted."  Id.  Therefore, the claims must be dismissed with respect to the fees incurred prior to March 25, 2003.

Finally, the Court should dismiss plaintiffs' claims against the Trustees, who are not proper defendants because they were not "recipients" of the allegedly excessive fees or commissions.  Specifically, Section 36(b) provides, in relevant part:

> the investment adviser of a registered investment company shall be deemed to have a fiduciary duty with respect to the receipt of compensation for services, or of payments of a material nature, paid by such registered investment company, or by the security holders thereof, *to such investment adviser or any affiliated person of such investment* adviser.  15 U.S.C. § 80a-35(b) (emphasis added).

Section 36(b)(3) further states that "[n]o such action shall be brought or maintained against any person other than the recipient of such compensation or payments."  15 U.S.C. § 80a-35(b)(3). The text of Section 36(b), therefore, allows actions only against recipients of compensation paid to an investment adviser or its affiliates.

Thus, persons and entities not affiliated with investment advisers are not proper defendants in Section 36(b) actions.  See Daily Income Fund, Inc. v. Fox, 464 U.S. 523, 535 (1984) (Section 36(b) allows an action to be brought "*against the adviser and other affiliated parties*") (emphasis added); Migdal, 248 F.3d at 326 (Section 36(b) "provides a private cause of action to a mutual fund investor, *against the fund's investment adviser*, 'for breach of fiduciary duty in respect of such compensation' paid to the investment adviser") (emphasis added). Independent directors of a mutual fund cannot be sued under Section 36(b) because, by

---

[11]    Even as to the two funds plaintiffs allege they own, they do not allege that the Strategic Alliances were used in connection with the funds.

definition, they are neither "investment advisers" nor "affiliates" of investment advisers.  See Migdal, 248 F. 3d at 329 ("'Disinterested' directors are, inter alia, those directors who are not 'affiliated' with the fund's investment adviser") (citing 15 U.S.C. §§ 80a-2(a)(19) & 80-2(a)(3)).  Plaintiffs do not allege that the Trustees were paid fees for "performing the functions of an investment adviser" or in lieu of investment advisory fees paid directly to the adviser.  See 15 U.S.C. §§ 80a-35(c).[12]

## C.    Plaintiffs' Section 48(a) Claim Should Be Dismissed.

For the reasons discussed above, see supra at Part III.A, there is no implied right of action under Section 48(a) of the ICA (or indeed any provision of the ICA).  The only express private right is in Section 36(b) of the ICA, which was added by Congress in 1970, well after Section 48(a).  Section 48(a) does not apply to a primary violation of Section 36(b) because, if it did, it would impermissibly nullify the express limitation of liability provided in Section 36(b) itself.

When Congress added Section 36(b) to the ICA, it specified several limitations on liability.  A claim may be brought only by specified plaintiffs, against specified defendants, for specified damages.  Section 48(a) is broader.  It permits the SEC to bring an action against "any person," not just those specified in Section 36(b).  See 15 U.S.C. § 80a-47(a).  Similarly, under Section 36(b)(3), liability is expressly limited to the "recipient of the compensation and payments" challenged in the Section 36(b) claim.  To allow Section 48(a) to extend Section 36(b) liability to "control persons" would expand the reach of Section 36(b), render meaningless

---

[12]    Although the great majority of the Trustees were independent within the meaning of the ICA, see infra at IV.A.1., three Trustees (Messrs. Ballen, Parke, and Shames) were employed by the adviser.  See Compl. ¶ 25-27.  There is no allegation that it is in any way improper for senior management of the adviser to sit on the Board, nor is there any allegation here that these gentlemen were compensated by the Funds for having done so.

its limiting language, and violate the settled rule that "a specific statute will not be controlled or nullified by a general one." Morton v. Mancari, 417 U.S. 535, 550-51 (1974).[13]

Finally, Section 48(a) does not apply because there was no "procurement" of a violation of the ICA in these cases. By its express language, Section 48(a) only prohibits a person from directly or indirectly obtaining the agreement of another person (i.e., "procuring") to commit an act that would be unlawful under the ICA for the procuring person himself to commit.[14] Section 48(a), thus, seeks to ensure that wrongdoers do not escape liability by having others commit wrongdoing on their behalf. The title of the Section ("Procurement") supports this interpretation. See United States v. Thayer, 201 F.3d 214, 221 (3d Cir. 1999) ("[T]he title of a section can assist in resolving ambiguities."). The SEC has consistently so interpreted Section 48(a). See, e.g., SEC v. M. Wesley Groshans & Brokers Cap. Mgmt., Inc., 47 S.E.C. Docket 712, Litig. Release No. 12,677, 1990 WL 322073, at *2 (Oct. 19, 1990); Axe-Houghton, SEC No-Action Letter, 1973 WL 11345, at *2 (Dec. 16, 1973). Because plaintiffs have made no "procurement" allegations, they state no claim under Section 48(a).

---

[13]    Accord Radzanower v. Touche Ross & Co., 426 U.S. 148, 153 (1976) (same); Security Pac. Nat'l Bank v. Resolution Trust Corp., 63 F.3d 900, 904 (9th Cir. 1995) (general provision of statute may not make "specific words" in it "superfluous"); United States v. LaPorta, 46 F.3d 152, 156 (2d Cir. 1994) ("Under long-standing principles of statutory construction, a general section of a statute must give way to a specific one.").

[14]    Section 48(a) provides:

    Procurement.
    It shall be unlawful for any person, directly or indirectly, to cause to be done any act or thing through or by means of any other person which it would be unlawful for such person to do under the provisions of this subchapter or any rule, regulation, or order thereunder.

15 U.S.C. § 80a-47(a).

-18-

IV.    **Plaintiffs' Derivative Claims Should Be Dismissed.**

    A.    **Plaintiffs Fail To Plead Facts Showing That Demand Is Excused.**

The Complaint does not satisfy Fed. R. Civ. P. 23.1.  Plaintiffs did not make demand

action upon the Trustees of the Funds before filing their claims (see Compl. ¶ 134), but fail to

allege a sufficient reason why demand was futile.  Thus, plaintiffs' derivative claims – Counts V

(IAA, § 215), VI (Breach of Fiduciary Duty against MFS), VII (Breach of Fiduciary Duty

against the Trustees), VIII (Aiding and Abetting a Breach of Fiduciary Duty), and IX (Unjust

Enrichment) – should be dismissed.[15]

A shareholder derivative action is an equitable remedy that enables a shareholder, in

limited circumstances, to sue on behalf of an entity in which he owns shares.  Because the

decision to initiate litigation should be made by the trustees or directors who oversee the entity

that issued the shares, pre-suit demand is required absent "extraordinary circumstances."  Kamen

v. Kemper Fin. Serv., 500 U.S. 90, 96 (1991); Harhen v. Brown, 431 Mass. 838, 848 (2000).  A

derivative complaint against an entity organized in Massachusetts must contain particular facts

showing that demand on the trustees or directors could be excused because the board is

"interested."[16]  See Harhen, 431 Mass. at 844.

    1.    **Plaintiffs' Demand Futility Allegations Fail Under the Massachusetts Statute Applicable to Investment Companies.**

Chapter 182, § 2B mandates that any investment company trustee who is not considered

to be an "interested" trustee under the ICA is deemed "to be independent and disinterested when

making any determination or taking any action as a trustee."  Accordingly, in order for demand

to be excused, plaintiffs must allege particularized facts sufficient to indicate that a majority of

---

[15]    Although plaintiffs style their state law claims as direct claims, they are undeniably derivative in nature and should be treated as such for the purpose of this Motion.  See infra at Part IV.C.1.

[16]    After these claims were filed, Massachusetts enacted a statute requiring demand in all cases.  See M.G.L. ch. 156D, § 7.42.  This statute requires demand regardless of the nature of a trustee's relationship to an adviser or the investment company itself.

the Trustees of each fund were "interested" under the ICA at the time the lawsuits were filed.
See Harhen, 431 Mass. at 848.

The ICA sets forth specific bright-line rules for determining whether a trustee is
"interested." 15 U.S.C. §§ 80a-2(a)(3), (19). For example, among other things, an individual is
considered "interested" under the ICA if he or she is an officer or director of the fund adviser, or
of he or she owns shares of the fund adviser's stock. Id.[17]

Plaintiffs cannot establish that a majority of the Trustees of the MFS Funds was
interested. Indeed, they have not tried.[18] The Complaint asserts that three former Trustees (Mr.
Ballen, Mr. Parke, and Mr. Shames) were MFS officers. See Compl. ¶¶ 25-27. However, the
other nine Trustees identified in the Complaint – and therefore a majority of the Board – are not
alleged to have been MFS officers or directors or to have engaged in loans or principal
transactions with MFS. This is fatal to plaintiffs' attempt to excuse demand.[19]

### 2. Plaintiffs Fail To Establish Demand Futility Under Massachusetts Common Law.

Even if there were no special rules applicable to investment company trustees, plaintiffs
have not met the ordinary Massachusetts demand futility standards, which apply fully to business
trusts. See Green v. Nuveen Advisory Group, 186 F.R.D. 486, 489 n.2 (N.D. Ill. 1999). Under
Massachusetts common law, a plaintiff must rebut the presumption that directors are "acting, not
fraudulently, but with fair discretion in obedience to law." Bartlett v. New York, N.H. & H.

---

[17]     An individual also is "interested" within the meaning of the ICA if he or she, among other things, (i) has
engaged in principal transactions with, or distributed shares for the investment company or another investment
company with the same adviser; (ii) has loaned money or property to the investment company; (iii) is on the
advisory board of the investment company's investment adviser; or (iv) in the previous two years, has been
determined by the SEC to have had a material business or professional relationship with the investment company.
15 US.C. §§ 80a-2(a)(3), (19). None of these provisions is implicated here.

[18]     The plaintiffs do not even mention the ICA when discussing demand futility.

[19]     Plaintiffs allege that the Funds have a "common body" of Trustees "established" by MFS, Compl. ¶ 44.
This is insufficient to show that a trustee is interested under the ICA. It is incorrect in any event. See infra at 23, n.
23.

R.R., 221 Mass. 530, 532 (1915).  As the Supreme Judicial Court held in Harhen, 431 Mass. at

844, demand will be excused when plaintiffs plead particular facts showing that a majority of

directors "have participated in wrongdoing, or are otherwise interested" under the specifications

established in the ALI Principles of Corporate Governance.[20]  See id. at 842.

 This is a strict standard; a plaintiff must make "factual specifications" that a majority of

directors "were active wrongdoers or under the control of such wrongdoers or that the other

directors or trustees knowingly, willfully and fraudulently colluded with the faithless directors or

shared in personal gain as the result of the alleged wrongful transactions."  Greenspun v.

Lindley, 36 N.Y.2d 473, 479-80 (1975) (applying Massachusetts law).  Mere approval by

directors of the alleged unlawful action is not enough.  See Demoulas v. Demoulas Super Mkts,

Inc., No. 90-2927-B, 2003 WL 22285305 (Mass. Super. Sept. 22, 2003).   Plaintiffs do not meet

their burden in this regard, and none of the four generic reasons proffered by plaintiffs to excuse

demand is sufficient.  See, e.g., Compl. ¶¶ 134-42.

> **a)** **Plaintiffs' Allegations Concerning Director Compensation and Positions Fail To Excuse Demand.**

 Plaintiffs' allegations regarding the receipt of directors' fees (Compl. ¶¶ 25-36, 135, 140)

are insufficient because the receipt of "usual and customary directors' fees and benefits" does not

render a director interested.  See Harhen, 431 Mass. at 843 n.5.[21]  As one court has commented:

> [R]eceipt of director's fees does not suggest a conflict of interest.
> If it did, every director who receives a director's fee would be
> biased.  Such a rule would eviscerate the rationale for *ever* making
> a demand and would strip Rule 23.1 of all meaning.  We refuse to

---

[20]      As discussed infra at IV.A.2.b, "participation in wrongdoing," requires much more than merely alleging
that a director approved of or acquiesced in the transaction or conduct that is the subject of the action.  See Harhen,
431 Mass. at 843 n.5.
[21]      See also Grobow v. Perot, 539 A.2d 180, 188 (Del. 1988) (holding that allegation that directors are paid for
their services does not establish financial interest); Decker v. Clausen, Civ. A. Nos. 10,684, 10,685, 1989 WL
133617, at * 2 (Del. Ch. Nov. 6, 1989) (rejecting allegation that directors' receipt of "substantial salaries" excused
demand).

assume that all directors who receive such fees have a conflict of interest.

In re E.F. Hutton Banking Practices Litig., 634 F. Supp. 265, 271 (S.D.N.Y. 1986) (emphasis in original).   Accordingly, plaintiffs' conclusion that each Trustee is "controlled by and beholden" to MFS for his or her trustee compensation does not excuse demand.  See Compl. ¶ 135.

Similarly, plaintiffs' allegations that the Trustees served "indefinite terms at the pleasure of MFS Company," see Compl. ¶ 91, does not come close to alleging the type of "controlling influence" as a matter of law needed to establish that trustees are interested.  See Harhen, 431 Mass. 843 n.5.  The comments to ALI standard that the Harhen court adopted state:

> [A] director is not interested under § 1.23 solely because the director receives or has an expectation of continuing to receive usual and customary directors' fees, or because the director wants to continue the directorship for nonpecuniary reasons, or because a particular transaction in control [§ 1.38] threatens the loss of the position as a director and therefore of usual and customary directors' fees.  Although a usual and customary directors' fee may constitute a significant portion of the annual income of a particular director, that fact alone will not cause the director to be considered interested for purposes of § 1.23 when, as a member of a group of non-management directors, the director considers a transaction in control that could result in the termination of his or her directorship.

1 Principles of Corporate Governance § 1.23, American Law Institute.

Plaintiffs fail to plead *any* particular facts showing "domination and control" of the independent trustees by any conflicted insider at MFS.  See Harhen, 431 Mass. at 843; see also Greenspun, 36 N.Y.2d at 480 (conclusion that trustees were under the control and domination of company inadequate without "supporting allegations of particularized fact").  Instead, plaintiffs offer the conclusion that the independent Trustees serve at the pleasure of "MFS Company." Compl. ¶ 91.  Sustaining a derivative claim based on such a conclusion also would render Rule 23.1 meaningless.  Moreover, this generic assertion is contradicted both by the Complaint and

public documents available to the Court on a motion to dismiss. Plaintiffs concede that *shareholders* have the right to vote out the trustees, meaning that the Trustees serve at plaintiffs' pleasure (not that of MFS). See Compl. ¶ 135. The nomination process for independent trustees in fact is not controlled by MFS, but rather by a nominating committee comprised entirely of independent trustees.[22]

Likewise, plaintiffs' repeated, conclusory (and incorrect) allegations to the effect that each Trustee is "controlled by and beholden" to MFS for his position does not excuse demand. Compare Compl. ¶¶ 91, 135 with Aronson v. Lewis, 473 A.2d 805, 816 (Del. 1984) ("The shorthand shibboleth of 'dominated and controlled directors' is insufficient.").

### b) Plaintiffs' Conclusory Allegations of Director Involvement Are Insufficient To Excuse Demand.

Plaintiffs' conclusory allegations that the Trustees participated in, approved, or allowed the questioned conduct (Compl. ¶¶ 137-38, 149) are plainly defective. See Harhen, 431 Mass. at 844 n.5; see also Grossman v. Johnson, 674 F.2d 115, 124 (1st Cir. 1982) ("Bare allegations of 'wrongful participation' or 'acquiescence' are not enough."); In re Kauffman Mutual Fund Actions, 479 F.2d 257, 265 (1st Cir. 1973) (approval of the corporate action at issue is insufficient to excuse demand); see also Aronson, 473 A.2d at 809, 817 (holding that allegation that all directors named in suit "participated in, expressly approved and/or acquiesced in, and are personally liable for, the wrongs complained of herein" did not allow plaintiff to avoid demand). Similarly, perfunctory statements that the Trustees breached their fiduciary duties do not excuse

---

[22]     See, e.g., Form N-1A Registration Statement, MFS Variable Insurance Trust, filed with the SEC on Feb. 10, 2005, at B-2, available at http://www.sec.gov/Archives/edgar/data/918571/000104746905003085/ a2151381z485apos.txt. Nonetheless, even if the Company had "appointed" a slate of directors, which it did not, this would still be insufficient to establish "control." As Aronson v. Lewis, 473 A.2d 805, 816 (Del. 1984) explained, "it is not enough to charge that a director was nominated by or elected at the behest of those controlling the outcome of a corporate election. That is the usual way a person becomes a corporate director. It is the care, attention and sense of individual responsibility to the performance of one's duties, not the method of election, that generally touches on independence."

demand.  See In re Stratus Computer, Inc. Sec. Litig., CIV. A. 89-2075-Z, 1992 WL 73555, at

*10 & n.5 (D. Mass. 1992) (holding allegations of federal securities laws violations and breaches

of fiduciary duties against directors insufficient to excuse demand).

Plaintiffs make no attempt to plead specific facts showing that any independent trustee

was actively involved in the purported wrongful conduct.  See Grossman v. Johnson, 89 F.R.D.

656, 659 (D. Mass. 1981) (plaintiffs must show that "a majority of the board at the time of suit

were so implicated in the complained of facts as to make a demand . . . futile").  The Complaint

contains no facts showing that any Trustee devised, executed, or was otherwise intimately

intertwined with the purported wrongful transactions, and does not attempt to delineate the

particular roles played by each trustee.  See In re Stratus Computer, Inc. Sec. Litig., 1992 WL

73555, at *10 (allegations insufficient where they could not be understood to allege "particular

misconduct by the individual directors nor particular circumstances specific to each director").

In addition, there are no specific factual allegations establishing that the Trustees "knowingly,

willfully and fraudulently colluded [for] personal gain" or that a majority of the Trustees were

"active wrongdoers."  Greenspun, 36 N.Y.2d at 479 (applying Massachusetts law).

### c) Plaintiffs' Amorphous Allegation of Director Benefit Does Not Excuse Demand.

Plaintiffs do not come close to establishing that the Trustees had a "material pecuniary

interest" in a transaction as is required to excuse demand.  See Harhen, 431 Mass. at 844 n. 5; In

re PolyMedica Corp. S'holder Deriv. Litig., No. 01-3446, 2002 WL 1809095, at *13 (Mass. Sup.

Ct. July 16, 2002).  A director is interested for this purpose only when there are adequate factual

allegations that the director received a material personal financial benefit from a transaction that

would "reasonably be expected to affect" the director's judgment "in a manner adverse to the

corporation."  Id. (citation omitted).  No such allegations are included in the Complaint.

-24-

Plaintiffs' allegations that the Trustees were interested because they purportedly "benefited" from directed brokerage are entirely speculative because they depend on a fragile chain of numerous unsupported suppositions, i.e., (i) directed brokerage aims to increase Fund assets, (ii) growth of a mutual fund is a key to its survival, (iii) if a mutual fund's assets decrease the fund may have to disband, and (iv) if the mutual fund is disbanded or merged, the board member will necessarily lose his or her position.  See Compl. ¶ 139.  Such a hypothetical benefit does not come anywhere near the required particularized pleading that shows the Trustees had an "actual" and "factual" conflict of interest.  See Grossman, 674 F.2d at 124.  The plaintiffs' pleading on this issue is at best "tenuous and conditional, not direct, stark, apparent, and 'unmistakeable,'" as is required to excuse demand.  See id. (quoting Delaware & Hudson Co. v. Albany & Susquehanna R. Co., 213 U.S. 435 (1909)).[23]

### d)    Plaintiffs' Allegation That the Trustees Would Have To Sue Themselves Is Insufficient to Excuse Demand.

Plaintiffs cannot cure their failure to make demand by alleging that the Trustees would be required to "sue themselves" and "their fellow Directors with whom they have had close business and personal relationships." Compl. ¶ 142.  See Grossman, 674 F.2d at 124; In re Stratus Computer, Inc. Sec. Litig., 1992 WL 73555, at *10 n.5; Aronson, 473 A.2d at 818; Decker v. A.W. Clausen, 1989 WL 133617, at *2 (Del. Ch. Nov. 6, 1989); see also Abrams v. Koether, 766 F. Supp. 237, 256 (D.N.J. 1991) (Delaware law).  If that were enough to excuse demand, plaintiffs could always avoid Rule 23.1 merely by naming the trustees or directors as defendants.  See Untermeyer v. Fidelity Daily Income Trust, 79 F.R.D. 36, 42-43 (D. Mass. 1978), rev'd on other grounds, 580 F.2d 22 (1st Cir. 1978).

---

[23]    There are also no particularized allegations about how directed brokerage was material to the growth of funds, as is required to excuse demand.  See Grossman, 674 F.2d at 124-25 n. 19.

In sum, plaintiffs' claims are barred by Fed. R. Civ. P. 23.1.[24] Because the facts before the Court show that the Trustees are independent as a matter of law, and because plaintiffs have not shouldered their burden of pleading particular facts showing that demand would be futile, the derivative claims must be dismissed.[25]

### B.    Plaintiffs' Claims Under the IAA Should Be Dismissed.

Plaintiffs' derivative claims under Section 215 of the IAA – based on allegations that MFS kept secret purported "multiple" breaches of fiduciary duties relating to 12b-1 fees, soft dollars, "directed brokerage," and excessive commissions in violation of Section 206 of the IAA – also suffer from fatal defects.[26] Compare Compl. ¶ 176 with 15 U.S.C. §§ 80b-6 & 80b-15. *First*, plaintiffs' derivative claim must be dismissed for failure to plead with particularity demand futility under Massachusetts law. *Second*, plaintiffs have not stated a claim under the IAA, because they have failed to identify any provision of the investment advisory contracts that, by its terms, violates the IAA. And *third*, plaintiffs cannot sustain a claim for damages under the

---

[24]    The derivative claims also should be dismissed because plaintiffs fail to comply with Rule 23.1's requirement that "the complaint shall be verified." Fed. R. Civ. P. 23.1; see C.R.A. Realty Corp. v. Scor U.S. Corp., No. 92 Civ. 2093 (LMM), 1992 WL 309610, at *1 (S.D.N.Y. Oct. 9, 1992); Abeloff v. Barth, 119 F.R.D. 332, 334 (D. Mass. 1988).

[25]    All direct or derivative claims against the Trustees, other than those premised on intentional wrongdoing, must be dismissed for the additional reason that they are barred by the exculpation clause in each of the Declarations of Trust governing the various MFS business trusts. The exculpation clause, which is essentially identical for each trust, provides the Trustees with an absolute defense to personal liability for any claim except those based on "bad faith, willful misfeasance, gross negligence or reckless disregard for his duty." See, e.g., Form N-1A Registration Statement for MFS Series Trust I, filed Dec. 14, 1994, Exhibit 1 ("Amended and Restated Declaration of Trust"), § 5.1 ("No Personal Liability of Shareholders, Trustees and Others"), available at http://www.sec.gov/Archives/edgar/data/798244/0000950146-95-000157.txt. The Declaration of Trust for each MFS trust is a public document available through the SEC's Edgar site as an exhibit to each registration statement. The Declarations of Trust were amended and restated on December 16, 2004, and now provide an absolute defense except for acts of "willful misfeasance, bad faith, gross negligence or reckless disregard of . . . duties."

[26]    Section 206, which prohibits certain transactions by investment advisers, provides, in pertinent part, that it shall be unlawful for any investment adviser:
    (1) to employ any device, scheme, or artifice to defraud any client . . .;
    (2) to engage in any transaction, practice, or course of business which operates as a fraud or deceit upon any client . . .; or . . .
    (4) to engage in any act, practice, or course of business which is fraudulent, deceptive, or manipulative. 15 U.S.C. § 80b-6. Section 215 provides that contracts "the performance of which involves the violation of" the IAA "shall be void." 15 U.S.C. § 80b-15(b).

IAA (to the extent they attempt to) because there is no private right of action to pursue such a remedy.

### 1.     Plaintiffs Fail To Plead That Demand Was Excused.

For the same reasons discussed in Section IV.A, plaintiffs have failed to plead that demand was excused.[27]

### 2.     Plaintiffs Do Not Plead a Valid Claim for Relief Under the IAA.

Plaintiffs have not identified any contractual provision that violates the IAA, and therefore have not pleaded a valid claim for rescission under the IAA.  Section 215 of the IAA provides a right to rescind a contract "made in violation of any provision" of the IAA.  This provision is analogous to the right provided under Section 47 of the ICA.  See Blatt v. Merrill Lynch, Pierce, Fenner & Smith Inc., 916 F. Supp. 1343, 1349 (D.N.J. 1996).  The language in both sections is nearly identical to the language of Section 29(b) of the Securities Exchange Act of 1934.  The courts have analogized Section 47 to Section 29(b), see, e.g., Mills v. Elec. Autolite Co., 396 U.S. 375, 387 n. 10 (1970), and Section 215 should be interpreted consistently.

Under Section 29(b), it is clear that allegations that a party to a lawful contract pursued a wrongful course or action do not state a claim.  Cf. Zerman v. Jacobs, 510 F. Supp. 132, 135 (S.D.N.Y. 1981) (holding that under Section 29(b) "only unlawful *contracts* may be rescinded, not unlawful *transactions* made pursuant to lawful contracts") (emphasis in original); aff'd, 672 F.2d 901 (2d Cir. 1981); Drasner v. Thomson McKinnon Sec., Inc., 433 F. Supp. 485, 501-02 (S.D.N.Y. 1977) (Section 29(b) "only renders void those contracts which by their terms violate the [Exchange] Act" (emphasis added)); GFL Advantage Fund, Ltd. v. Colkitt, 272 F.3d 189, 201 (3d Cir. 2001) (rescission for unlawful conduct during course of performance is only proper

---

[27]     Plaintiffs concede that their claims under Section 215 of the IAA are brought derivatively on behalf of the MFS Funds.  See Compl. ¶172 and Count V heading.

where the conduct is "inseparable from the performance of the contract;" conduct that is "collateral or tangential to the contract between the parties" cannot support a Section 29(b) claim). The same should be true under Section 215. Because the IAA claims rest solely on such allegations, and because plaintiffs cannot identify any provision of the investment advisory contracts that *by its terms* violates the IAA, the IAA claims must be dismissed.

### 3.    The IAA Does Not Provide a Private Right of Action To Sue for Damages.

There is no private right of action for damages under the IAA. As the Supreme Court explained in <u>Transamerica Mortgage Advisors, Inc</u>, 444 U.S. at 24, the IAA provides only "a limited private remedy" of voiding the investment adviser contract under Section 215 and "confers no other private causes of action, legal or equitable." Following <u>Transamerica</u>, courts have uniformly held that there is no private right of action for damages under the IAA.[28]

Although rescission may include the right to "restitution of the consideration [fees] given under the contract, less any value conferred by the other party," <u>Transamerica Mortgage Advisors, Inc.</u>, 444 U.S. at 24 n. 14, the Supreme Court cautioned that it does *not* include "compensation for any diminution in the value of the rescinding party's investment alleged to have resulted from the adviser's action or inaction. Such relief could provide by indirection the equivalent of a private damages remedy that we have concluded Congress did not confer." <u>Id.</u>; <u>see also</u> <u>Clark v. Nevis Capital Mgmt., LLC.</u>, No. 04 Civ. 2702 (RWS), 2005 WL 488641, at *13 (S.D.N.Y. Mar. 2, 2005) ("restitution does not include compensation for any losses from an investment alleged to have been made as a result of an investment adviser's contract") (citation

---

[28]    <u>See, e.g.</u>, <u>Corwin v. Marney, Orton Invs.</u>, 788 F.2d 1063, 1066 (5th Cir. 1986); <u>Fraioli v. Lemcke</u>, 328 F. Supp. 2d 250, 274 (D.R.I. 2004); <u>Morris v. Wachovia Sec., Inc.</u>, 277 F. Supp. 2d 622, 643 (E.D. Va. 2003); <u>Filson v. Langman</u>, No. Civ. A. 99-30021-FHF, 2002 WL 31528616, at *4 (D. Mass. Nov. 13, 2002); <u>Goldstein v. Malcolm G. Fries & Assocs., Inc.</u>, 72 F. Supp. 2d 620, 624-25 (E.D. Va. 1999); <u>SSH Co., Ltd. v. Shearson Lehman Bros. Inc.</u>, 678 F. Supp. 1055, 1058 (S.D.N.Y. 1987).

omitted); Conrardy v. Ribadeneira, No. 86-1745-C, 1990 WL 66603, at *4 (D. Kan. Apr. 19, 1990) (restitution of "consideration paid" under IAA does not include purchase price of securities or diminution in value of securities purchased).   Accordingly, plaintiffs cannot under the IAA recover alleged losses relating to the purported reduction of Fund assets caused by directed brokerage and related conduct.

>    **C.    Plaintiffs' State Law Claims Are Defective and Should Be Dismissed.**

Plaintiffs' common law claims should be dismissed because:  (1) they are improperly pleaded as direct claims,; (2) plaintiffs fail to meet the requirements for bringing derivative claims for relief; and (3) plaintiffs otherwise fail to state a claim.[29]

>    **1.    Plaintiffs' Claims Are Improperly Pleaded as Direct Claims.**

Under Massachusetts law, where "'[t]he fiduciary duty on which the plaintiffs base their claim is a duty owed to the corporation, not to individual stockholders[,]' . . . the plaintiffs cannot assert their claims except through a derivative suit." Cigal v. Leader Dev. Corp., 408 Mass. 212, 219 (1990) (citation omitted).  For a plaintiff to bring a direct claim, his injury must be "separate and distinct from that suffered by other shareholders." Sarin v. Ochsner, 48 Mass. App. Ct. 421, 423 (2000) (citation omitted); see also Blasberg v. Oxbow Power Corp., 934 F. Supp. 21, 26 (D. Mass. 1996) (stating that in direct action, duty must be owed "directly to the plaintiff independent of the plaintiff's status as a shareholder") (citation omitted).

In this case, all of plaintiffs' common law claims rest on the same alleged injury: the MFS Funds allegedly paid too much in commissions due to the "shelf space" arrangements. See Compl. ¶¶ 183, 188, 196.  This alleged injury may only be addressed derivatively because it is one that is suffered, if at all, by all shareholders in proportion to their ownership interest.  As

---

[29]    Moreover, if the Court dismisses plaintiffs' federal claims (as it should), it must also dismiss the state law claims, since the Court would no longer have jurisdiction over them.  See United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966).

another court stated in a similar mutual fund case, "[a]t common law, the shareholder's suit for breach of fiduciary duty is a derivative suit; the shareholder's right to bring suit is derived from the corporation's right to bring suit."  Green v. Fund Asset Mgmt., L.P., 245 F.3d 214, 227 n.16 (3d Cir. 2001).  A claim for fees and costs, which are incurred by the mutual funds generally and any impact of which upon investors is equally apportioned among them, is necessarily derivative.  See, e.g., Strougo v. Bassini, 282 F.3d 162, 174 (2d Cir. 2002) (holding that claims involving "[u]nderwriter fees, advisory fees, and other transaction costs . . . [are] precisely the type of injury to the corporation that can be redressed . . . only through a [derivative] suit"); Green v. Nuveen Advisory Corp., 186 F.R.D. 484, 489-90 (N.D. Ill. 1999) (dismissing direct claim challenging fee agreement with mutual fund adviser); In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig., 272 F. Supp. 2d 243, 260 (S.D.N.Y. 2003) (holding that faulty investments of mutual fund assets stated derivative claim because plaintiff's injuries "are not distinct from those of the Fund; rather, they are alleged to arise because the Fund's net asset value declined").[30]

### 2.    Plaintiffs Fail To Meet the Requirements for Bringing a Derivative Claim For Relief.

Even if plaintiffs' common law claims had been pleaded properly as derivative claims, dismissal would nonetheless be required because, for the reasons set forth above, plaintiffs have failed to plead facts demonstrating demand futility.  See supra at IV.A.  Plaintiffs cannot avoid the demand requirement of Rule 23.1 by attempting to characterize their claims as direct.  Rather, "[i]n determining the nature of the wrong alleged, the court must look to the body of the complaint, not to the plaintiff's designation or stated intention."  Farragut Mortgage Co. v.

---

[30]     Accord Blasberg, 934 F. Supp. at 28 (stating that claim of "diminution of the value of [partnership] assets" is derivative in nature); Abeloff, 119 F.R.D. at 334 (holding that failure to perform duties to protect plaintiffs' investments is derivative claim).

Arthur Andersen LLP, No. 95-6231-B, 1999 WL 823656, at *17 (Mass. Super. Ct. Aug. 5, 1999).

Furthermore, as discussed above, plaintiffs continue to own shares in only two funds; thus, they lack standing to bring derivative claims on behalf of any but those two funds. See supra at II.

### 3.    Plaintiffs Fail To State Claims for Relief Under State Law.

#### a)    If Plaintiffs' Claims Are Not Derivative in Nature, They Are Barred By SLUSA

Plaintiffs' state laws claims must be dismissed under SLUSA. 15 U.S.C. § 78bb(f)(1). A claim is barred under SLUSA if it: (1) is brought as part of a "covered class action"; (2) purports to be based on state law; (3) accuses defendant of a misrepresentation or omission of a material fact (or the use of a manipulative or deceptive device); and (4) alleges that the conduct described in criterion (3) was "in connection with the purchase or sale" of a "covered security." See, e.g., Riley v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 292 F.3d 1334, 1342 (11th Cir. 2002). Plaintiffs' state law claims meet all of the criteria for SLUSA preemption.[31] See Compl. ¶¶ 2 (1st element); 179-99 (2d element); 13, 76-77 (3d element); 115-116 (4th element).

The way that plaintiffs label their separate counts is irrelevant under SLUSA. See Rowinski v. Salomon Smith Barney Inc., No. 03-4762, 2005 WL 356810, at *3 (3d Cir. Feb. 16, 2005); Prager v. Knight/Trimark Group, Inc., 124 F. Supp. 2d 229, 234-35 (D.N.J. 2000); Dacey v. Morgan Stanley Dean Witter & Co., 263 F. Supp. 2d 706, 710 (S.D.N.Y. 2003). Each of plaintiffs' purported state law theories has been dismissed under SLUSA, and should be dismissed here. See Prager, 124 F. Supp. 2d at 230, 235 (breach of fiduciary duty, unjust enrichment); Rowinski, 2005 WL 356810, at *1, 9 (unjust enrichment); Prof'l Mgmt. Assocs.

---

[31]    A "covered class action" is a class action on behalf of more than 50 investors. Compare Compl. ¶ 2. Mutual fund shares are "covered securities." In re Mutual Funds Inv. Litig., 320 F. Supp. 2d 352, 354 (D. Md. 2004).

Employees' Profit Sharing Plan v. KPMG LLP, 335 F.3d 800, 802 (8th Cir. 2003) (aiding and

abetting breach of fiduciary duty).

> **b)    Plaintiffs Fail To State Claims for Breach of Fiduciary Duty (Counts VI – VII).**

To state a claim for a breach of fiduciary duty under Massachusetts law, plaintiffs must

show:  (1) the existence of fiduciary duties, (2) a breach of those duties, (3) damages, and (4)

causation.  See Hanover Ins. Co. v. Sutton, 46 Mass. App. Ct. 153, 164-65 (1999).  Fiduciary

duties are imposed, for instance, where one party stands in a "position of great disparity or

inequality" relative to the other, where such disparity is "abused to the benefit of the more

powerful party," or, in the commercial context, where one party "reposes its confidence in

another" and the other party has knowledge of such reliance or possesses "specialized

knowledge" in complicated transactions.  Industrial Gen. Corp. v. Sequoia Pac. Sys. Corp., 44

F.3d 40, 44 (1st Cir. 1995); accord Patsos v. First Albany Corp., 433 Mass. 323, 334-36 (2001).

Here, plaintiffs purport to bring breach of fiduciary claims against the investment adviser

and trustees of mutual funds.  See Compl. ¶¶ 180, 186.  However, plaintiffs fail to show that

there was *any* relationship, let alone a state law fiduciary one, between the plaintiff- shareholders

and the investment adviser or the trustees.  As plaintiffs themselves acknowledge, the advisory

agreements for the funds were negotiated between the investment adviser and the *Trustees* of the

funds, not the shareholders.  See Compl. ¶ 89.  In the absence of a contractual or other

relationship, there is no basis to assume that the adviser owed fiduciary (or other) duties to the

shareholders.  See Zurich Capital Mkts., Inc. v. Coglianese, 332 F. Supp. 2d 1087, 1121 (N.D.

Ill. 2004) (dismissing breach of fiduciary duty claim where plaintiff failed to allege "*any*

relationship with [defendant], much less a fiduciary one"); McLachlan v. Simon, 31 F. Supp. 2d

731, 740-41 (N.D. Cal. 1998) (dismissing breach of fiduciary duty claim against attorney hired

by mutual fund trustee); <u>Stuchen v. Duty Free Int'l, Inc.</u>, No. 94C-12-194, 1996 WL 33167249, at *11 (Del. Super. Ct. Apr. 22, 1996) (dismissing claim against investment bank and stating that "those serving as mere agents [of the corporation] are generally *not* characterized as trustees and therefore do not stand in a fiduciary relationship with the shareholders") (citation omitted).[32]

Plaintiffs similarly cannot state a breach of fiduciary duty claim against the Trustees because Massachusetts law is clear that they owe fiduciary duties to the Funds and not to the individual shareholders.  <u>See</u> <u>Jernberg v. Mann</u>, 358 F.3d 131, 136 (1st Cir. 2004) (stating that directors "do not occupy a [ ] trust relationship toward individual stockholders").  Because none of the defendants owed fiduciary duties to the plaintiff-shareholders, this claim should be dismissed.

### c) Plaintiffs Fail To State a Claim for Aiding and Abetting Breach of Fiduciary Duty (Claim VIII).

Plaintiffs' claims for aiding and abetting a breach of fiduciary duty, based on MFS's alleged "shelf space" arrangements with brokers, should be dismissed because:  (1) plaintiffs have not stated an underlying claim for breach of fiduciary duty; and (2) plaintiffs have failed adequately to allege that defendants had actual knowledge of the breach; and (3) this claim is redundant, since it is merely duplicative of plaintiffs' other claims for primary breach.

### i) Plaintiffs Fail To Establish an Underlying Breach of Fiduciary Duty.

Plaintiffs' aiding and abetting claim should be dismissed because plaintiffs fail to establish the predicate breach of fiduciary duty.  Under Massachusetts law, "[t]he tort of aiding

---

[32]     It is important to note that while *federal* law, under Section 36(b) of the Investment Company Act, 15 U.S.C. §  80a-35(b), imposes fiduciary duties on investment advisers with respect to the narrow issue of advisory fees, no such duty exist under Massachusetts statutes or case law.  This Court has made clear that the scope of fiduciary duties under Section 36(b) is distinct from that under state law.  <u>Nizin v. Bright</u>, 478 F. Supp. 713, 721 (D. Mass. 1979) (stating that "[c]ommon law fiduciary principles should not be assumed to be incorporated into the [ICA]"), <u>aff'd</u>, 618 F. 2d 93 (1st Cir. 1980); <u>see also</u> <u>Green v. Nuveen Advisory Corp.</u>, 295 F.3d 738, 743 (7th Cir. 2002) (holding that any claims other than those regarding advisory fees under Section 36(b) must be brought under state law); <u>Migdal</u>, 248 F.3d at 328-29 (same).

and abetting requires an underlying tort, defendant's awareness of the illegal act, and substantial assistance in committing the illegal act." Demoulas v. Demoulas Super Mkts., Inc., No. 90-2927-B, 1993 WL 818844, at *3 (Mass. Super. Ct. Nov. 29, 1993). Without stating a claim for the underlying tort, there can be no liability for aiding and abetting. See, e.g., Brandt v. Hicks, Muse & Co., Inc., 213 B.R. 784, 789 (D. Mass. 1997), aff'd, 242 F. 3d 6 (1st Cir. 2001).

In this case, plaintiffs have not alleged an underlying breach of a fiduciary duty that was owed to them. While plaintiffs allege that broker-dealers such as Morgan-Stanley "steered unknowing clients into MFS Funds because the brokers were paid more for MFS Funds than for other mutual funds" Compl. ¶ 47, nowhere do plaintiffs allege that *they* were steered into MFS funds in this way. Notably, none of the broker-dealers is a defendant here, and plaintiffs do not even allege that they dealt with Morgan Stanley in connection with the funds at issue.

### ii) Plaintiffs Fail to Allege Adequately that Defendants Had Actual Knowledge of an Underlying Breach of Fiduciary Duty.

In any event, plaintiffs fail adequately to allege that defendants had actual knowledge of a breach by a broker. Simply pleading that defendants "knew or should have known" that they were assisting the commission of a tort is not enough; *actual* knowledge and intent are required. See, e.g., Spinner v. Nutt, 417 Mass. 549, 556 (1994) (upholding dismissal of aiding and abetting claim and holding that the plaintiff "must show that the defendant knew of the breach and actively participated in it such that he or she could not reasonably be held to have acted in good faith"); Healy v. McGhan Med. Corp., No. 97-5320, 2001 WL 717110, at *8 (Mass. Super. Ct. Mar. 29, 2001) ("Aiding and abetting adds the question of intent to a claim for concert of action[.]"); see also Payton v. Abbott Labs, 512 F. Supp. 1031, 1035 (D. Mass. 1981) ("[D]efendant must have an unlawful intent, i.e., knowledge that the other party is breaching a duty and the intent to assist that party's actions.") (citation omitted). Plaintiffs allege that

defendants directed brokerage and soft dollars to broker-dealers in exchange for greater visibility in their distribution networks. See, e.g., Compl. ¶ 48. Plaintiffs plead no factual basis to conclude that anyone at MFS knew what Morgan Stanley, or any other broker-dealer, disclosed (or did not disclose) to its clients.

> **d)    Plaintiffs Fail To State a Claim for Unjust Enrichment (Count IX).**

Plaintiffs allege that defendants were "unjustly enriched" by the wrongs they supposedly committed in connection with the so-called "shelf space" arrangements. These allegations fail to state any claim upon which relief may be granted.

Under Massachusetts law, the equitable cause of action for unjust enrichment is unavailable where the plaintiff has an adequate remedy at law. Micromuse, Inc. v. Micromuse, PLC, 304 F. Supp. 2d 202, 209 n.8 (D. Mass. 2004); see also Eureka Broadband Corp. v. Wentworth Leasing Corp., No. 02-11068-RGS, 2004 WL 344425, at *3 n.6 (D. Mass. Feb. 24, 2004) (finding that breach of contract and intentional misrepresentation claims provided adequate remedies at law, rendering redundant unjust enrichment claim), aff'd, 400 F.3d 62 (1st Cir. 2005); In re Lupron Mktg. & Sales Practices Litig., 295 F. Supp. 2d 148, 182 (D. Mass. 2003) (dismissing unjust enrichment claim where RICO claims provided adequate remedy at law); One Wheeler Road Assocs. v. Foxboro Co., 843 F. Supp. 792, 799 (D. Mass. 1994) (statutory equivalent of equitable claims sought by plaintiff provided adequate remedy at law so that no independent equitable claim for unjust enrichment would lie).

Here, the Complaint makes clear that plaintiffs have adequate remedies at law to pursue any valid claim they may have for relief. For example, plaintiffs make claims pursuant to Section 36(b) of the ICA, which expressly confers rights of action on shareholders to recover damages arising from breaches of certain fiduciary duties. 15 U.S.C. § 80a-35(b). Plaintiffs also

assert claims under the IAA and several common law doctrines. Hence, it is this body of law that will control and determine the rights and remedies of plaintiffs in this matter, and the equitable remedy of unjust enrichment is not available. Thus, plaintiffs' unjust enrichment claim should be dismissed.

**<u>CONCLUSION</u>**

For the foregoing reasons, plaintiffs' Complaint should be dismissed in its entirety with prejudice.

Respectfully Submitted,

Sun Life Financial, Inc., Massachusetts
Financial Services Co., and MFS Fund
Distributors, Inc.,

By their attorneys,


<u>/s/ Jonathan A. Shapiro          </u>
Jeffrey B. Rudman (BBO #433380)
William H. Paine (BBO #550506)
Jonathan A. Shapiro (BBO #567838)
Amanda P. Masselam (BBO #641108)
WILMER CUTLER PICKERING
    HALE AND DORR LLP
60 State Street
Boston, MA  02109
(617) 526-6000


Jeffrey L. Shames,

By his attorneys,


<u> /s/ Jonathan A. Shapiro          </u>
James C. Rehnquist (BBO #552602)
Abigail K. Hemani  (BBO #650721)
GOODWIN PROCTER LLP
Exchange Place
53 State Street
Boston, MA  02109

-36-

John W. Ballen,

By his attorneys,


/s/ Jonathan A. Shapiro
John F. Falvey, Jr. (BBO # 542674)
GOODWIN PROCTER LLP
Exchange Place
53 State Street
Boston, MA  02109


Kevin J. Parke,

By his attorneys,


/s/ Jonathan A. Shapiro
George J. Skelly (BBO #546797)
David M. Ryan (BBO #644037)
NIXON PEABODY LLP
101 Federal Street
Boston, MA  02110


Lawrence H. Cohn, William R. Gutow,
J. Atwood Ives, Abby M. O'Neill,
Lawrence T. Perera, William J. Poorvu,
J. Dale Sherratt, Elaine R. Smith,
and the MFS Funds,

By their attorneys,


/s/ Jonathan A. Shapiro
John D. Donovan (BBO #130950)
Jane E. Willis (BBO #568024)
ROPES & GRAY LLP
One International Place
Boston, MA 02110

April 15, 2005