UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Eric Forsythe, Individually and on Behalf of All Others Similarly Situated,<br>        Plaintiff,<br><br>v.<br><br>Sun Life Financial Inc., et al.,<br>        Defendants. | Civil Action No. 04cv10584 (GAO) |
| Larry R. Eddings, Individually and on Behalf of All Others Similarly Situated,<br>        Plaintiff,<br><br>v.<br><br>Sun Life Financial Inc., et al.,<br>        Defendants. | Civil Action No. 04cv10765 (GAO) |
| Richard Koslow, Individually and on Behalf of All Other Similarly Situated<br>        Plaintiff,<br><br>v.<br><br>Sun Life Financial Inc., et al.,<br>        Defendants. | Civil Action No. 04cv10765 (GAO) |
| Marcus Dumond, Henry Berdat, Stuart V. and Rosemary Sturgess, Kathleen Blair, William and Margie Booth, Karen Peach, and Richard and Evelyn Keller,<br>        Plaintiffs,<br><br>v.<br><br>Massachusetts Financial Services Company and MFS Fund Distributors, Inc.<br>        Defendants. | Civil Action No. 04cv11458 (GAO) |

**PROPOSED SUR-REPLY OF THE DUMOND *PLAINTIFFS*
IN OPPOSITION TO AMENDED MOTIONS FOR CONSOLIDATION AND
<u>FOR APPOINTMENT OF TRI-LEAD COUNSEL</u>**

The *Dumond* Plaintiffs respectfully submit this sur-reply to address the new facts and arguments made by Plaintiffs Eric Forsythe, Larry Eddings and the City of Chicago Deferred Compensation Plan (the "Chicago Plan") (collectively, the "*Forsythe* Plaintiffs") in their Reply Brief in Support of the *Forsythe* Plaintiffs' Motions for Consolidation, Appointment of Co-Lead Plaintiffs, Appointment of Co-Lead Counsel, and Appointment of Liaison Counsel, filed on October 13, 2004 (the "Reply").

In their Reply, the *Forsythe* Plaintiffs implicitly concede that their proposed lead counsel in the *Forsythe* Action ("Proposed Lead Counsel") cannot adequately and ethically represent plaintiffs in these actions who have derivative claims under Section 36(b) of the Investment Company Act **on behalf of the MFS Funds** and at the same time represent the market timing plaintiffs who have claims **against the MFS Funds** in the Maryland Action.[1]  With the law against them, the *Forsythe* Plaintiffs for the second time attempt to change the factual landscape, this time by amending their complaint in the market timing action purportedly to drop the MFS Funds as defendants in that action.[2]  The *Forsythe* Plaintiffs argue that as a result of counsel's decision to drop the MFS Funds as defendants in the Maryland market timing cases – after the *Dumond* Plaintiffs demonstrated their conflicts – "the fundamental factual underpinning of the *Dumond* Plaintiffs' entire opposition is now rendered incorrect."  Reply, p. 2.  In fact, the *Forsythe* Plaintiffs' purported abandonment of their

---

[1] *In re Mutual Funds Investment Litigation,* MDL 1586 (Case Nos. 04-15861, 04-15862, 04-15863, 04-15864 (D. MD).

[2] In response to the *Dumond* Plaintiffs' Memorandum in Opposition to Amended Motions for Consolidation and for Appointment of Tri-lead Counsel, filed July 21, 2004 (the "*Dumond* Plaintiffs' Opposition"), the *Forsythe* Plaintiffs added the Chicago Plan and its counsel, Bernstein Litowitz, as proposed lead plaintiff and counsel, ostensibly in an effort to mitigate their conflict.  After the *Dumond* Plaintiffs pointed out at the status conference on September 20, 2004, that the Chicago Plan and Bernstein Litowitz suffered from the same conflicts as Milberg Weiss, the Chicago Plan and Bernstein Litowitz amended their complaint in the Maryland Action as discussed herein.

claims against the MFS Funds in the Maryland Action, not only does nothing to mitigate their conflict, it further demonstrates the invidious effects of the conflicts.

On September 30, 2004,[3] the day after filing The *Dumond* Plaintiffs' Memorandum in Opposition to Amended Motions for Consolidation and for Appointment of Tri-Lead Counsel (the "*Dumond* Plaintiffs' Supplemental Opposition"), the Chicago Plan filed a Consolidated Amended Complaint in the market timing action. Although they tell this Court that "the MFS Funds are not named as defendants" in the Amended Complaint (Reply, p. 2), that is not correct. The Chicago Plan continues to pursue claims against two of the MFS Funds – the Massachusetts Investors Trust and the Massachusetts Investors Growth Stock Fund. Reply, Exh. A, ¶¶22-23. The Massachusetts Investors Growth Stock Fund is one of the eleven MFS Mutual Funds involved in the *Dumond* Action. Moreover, the purported dropping of the other 110 MFS Funds as defendants in the Maryland Action (including the ten other funds which are the subject of the *Dumond* Action), is merely cosmetic and does nothing to alleviate the conflict. The *Forsythe* Plaintiffs and their counsel are still suing, as defendants in the market timing actions, the MFS Series Trust I, MFS Series Trust II, MFS Series Trust IV, MFS Series Trust V, MFS Series Trust IX and MFS Series Trust X (the "MFS Trusts"), which are the issuers of shares of the MFS Funds. The MFS Funds are series of those Trusts. Under the Amended and Restated Declarations of Trusts for the MFS Trusts:

> Section 6.9. Series of Shares. Shares of the Trust may be divided into series, the number and relative rights, privileges and preferences of which shall be established and designated by the Trustees, in their discretion, in accordance with the terms of this Section 6.9. The Trustees may from time to time exercise their power to authorize the division of Shares into one or more series by establishing and designating one or more series of Shares upon and subject to the following provisions:

---

[3]The *Forsythe* Plaintiffs state that the Amended Complaint in the market timing cases was filed on September 29, 2004 (Reply, p.1), however, the e-filing certificate (Reply, Exh. A, Certificate of Service) and the docket, indicate that it was filed on September 30, 2004.

\* \* \*

(d) **The assets belonging to each particular series shall be charged with the liabilities of the Trust in respect of that series and all expenses, costs, charges and reserves attributable to that series,** and any general liabilities, expenses, costs, charges or reserves of the Trust which are not readily identifiable as belonging to any one or more of the series established and designated from time to time in such manner and on such basis as the Trustees, in their sole discretion, deem fair and equitable. Each allocation of liabilities, expenses, costs, charges and reserves by the Trustees shall be conclusive and binding upon the holders of all series for all purposes. The Trustees shall have full discretion, to the extent not inconsistent with the 1940 Act, to determine which items shall be treated as income and which items as capital; and each such determination and allocation shall be conclusive and binding upon the Shareholders. **Under no circumstances shall the assets allocated or belonging to any particular series be charged with liabilities attributable to any other series. All Persons** who have extended credit which has been allocated to a particular series, or **who have a claim or contract which has been allocated to any particular series, shall look only to the assets of that particular series for payment of such credit, claim or contract**.

*See* Excerpts from the Amended and Restated Declaration of Trusts, attached hereto as Exhs. 1 - 6 (emphasis added).

Thus, any judgment against or settlement with the MFS Trusts in the market timing action, due to market timing in any of the MFS Funds, will be paid for by those MFS Funds; will reduce the net asset value of those MFS Funds and correspondingly reduce the price at which current shareholders of the MFS Funds could redeem their shares of those funds. The deletion of the MFS Funds as defendants in the market timing action changes nothing – the *Forsythe* Plaintiffs and their counsel still seek recovery from the MFS Funds in the market timing case and still suffer form the conflicts of interests demonstrated in the *Dumond* Plaintiffs' oppositions. The MFS Funds should not be represented here by a lead plaintiff and Proposed Lead Counsel adverse to the MFS Funds.

Furthermore, Proposed Lead Counsel's decision to drop the MFS Funds as defendants in Maryland highlights the conflict that exists, presenting a variation of the "hot potato" problem that has been severely criticized by the courts. Simply stated, in order to avoid a conflict "a firm may not

drop a client like a hot potato, especially if it is in order to keep happy a far more lucrative client." *Picker International, Inc. v. Varian Associates, Inc.*, 670 F.Supp. 1363, 1365 (N.D.Ohio 1987). "Such behavior is unethical as it violates attorneys' duty of loyalty." *International Longshoreman's Ass'n, Local Union 1332 v. International Longshoreman's Ass'n*, 909 F.Supp. 287, 293 (E.D.Pa.1995). *See also Chemical Bank v. Affiliated FM Ins. Co.*, 1994 WL 141951 (S.D.N.Y. April 20, 1994); *Harte Biltmore Ltd. v. First Pennsylvania Bank, N.A.*, 655 F.Supp. 419, 422 (S.D.Fla.1987); *Santacroce v. Neff*, 134 F.Supp.2d 366 (D.N.J. 2001); *James v. Teleflex, Inc.*, 1999 WL 98559 (Feb. 24, 1999).

The concerns raised by the Court in *Krim v. pcOrder.com, Inc.*, 210 F.R.D. 581 (W.D.Tex. 2002), where the Court criticized one of the counsel for the *Forsythe* Plaintiffs in this case, are equally applicable here. After concluding that counsel could not adequately represent plaintiffs in multiple lawsuits in which they sought to represent different classes of shareholders of pcOrder.com, against the same defendants, the Court rejected counsel's offer to withdraw from some but not all of the cases:

> Mr. Baskin and Milberg Weiss both offer to withdraw from representing the class in the Martens case, but Milberg Weiss will continue as lead counsel in the New York Litigation. Milberg Weiss would also withdraw as lead counsel in this case and Mr. Baskin would alone serve as lead counsel and make all decisions required of lead counsel. **This proposal not only fails to erase all of this Court's concerns about potential conflicts, it clearly illustrates them and causes the Court to question the zeal with which counsel are looking after their clients' interests as opposed to their own.** Counsel quickly dropped the class in the lower-dollar state action, but decided to stay involved in this and the New York Litigation, both potentially more lucrative.... If counsel were truly concerned with their clients' interests, they would have offered to withdraw from all potentially conflicting representations, not just the ones with the least amount of money at stake.

*Id.* at 589-90.

Here, instead of dropping one case to pursue a more lucrative case, Proposed Lead Counsel try to play both ends against the middle in order to maintain a position in both cases. They do so

by attempting to amend their way out of the conflict. In their initial complaints, the market timing plaintiffs alleged that the MFS Funds' prospectuses were false and misleading. In the amended complaint, the Chicago Plan still alleges that the MFS Fund prospectuses were false and misleading, yet they drop the MFS Funds as defendants. The Chicago Plan and its counsel obviously still intend to prove that the MFS Funds engaged in culpable conduct because in their amended market timing complaint they assert control person claims against MFS and others for violations of Section 20(a) of the Exchange Act, as control persons of the "MFS Funds." Reply, Exh. A, Count VI, ¶¶260-264. In order to prevail on a claim for control person liability, they will have to prove "an underlying violation by a controlled person or entity," *Aldridge v. A.T. Cross*, 284 F.3d 72 (1st Cir. 2002), here, the MFS Funds.

Under these circumstances, their attempts to change the "factual underpinnings," after the *Dumond* Plaintiffs pointed out their conflict, only reinforces that Proposed Lead Counsel cannot ethically or adequately serve the interests of the shareholders who bring suit on behalf of the MFS Funds under section 36(b) of the Investment Company Act.

Dated: October 15, 2004      Respectfully submitted:

SHAPIRO HABER & URMY LLP

  /s/ Michelle H. Blauner
Edward F. Haber BBO #215620
Michelle H. Blauner BBO #549049
53 State Street
Boston, MA 02109
Telephone: (617) 439-3939
Facsimile: (617) 439-0134

Lynn Lincoln Sarko
Michael D. Woerner
Gretchen F. Cappio
KELLER ROHRBACK, L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052

Telephone: (206) 623-1900  
Facsimile: (206) 623-3384

Case 1:04-cv-10584-GAO    Document 75    Filed 04/22/2005    Page 7 of 8

Ron Kilgard
Gary Gotto
KELLER ROHRBACK P.L.C.
National Bank Plaza
3101 North Central Avenue, Suite 900
Phoenix, AZ  85012
Telephone: (602) 248-0088
Facsimile: (602) 248-2822

Michael J. Brickman
James C. Bradley
Nina H. Fields
RICHARDSON, PATRICK, WESTBROOK & BRICKMAN, LLC
174 East Bay Street
Charleston, SC  29401
Telephone: (842) 727-6500
Facsimile: (843) 727-3103

Guy M. Burns
Jonathan S. Coleman
Becky Ferrell-Anton
JOHNSON, POPE, BOKOR, RUPPEL & BURNS, L.L.P.
100 North Tampa Street, Ste. 1800
Tampa, FL  33602
Telephone: (813) 225-2500
Facsimile: (813) 223-7118

Attorneys for the *Dumond* Plaintiffs

-8-