# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| ERIC FORSYTHE, Individually And On Behalf Of All Others Similarly Situated, | ) ) ) | Civil Action No. 04cv10584 (GAO) |
| Plaintiff, | ) ) | **Consolidated Case Nos.:**<br>04cv10764 (GAO) |
| vs. | ) ) | 04cv11019 (GAO) |
| SUN LIFE FINANCIAL INC., et al., | ) ) | |
| Defendants. | ) ) | |

## PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................ iv

PRELIMINARY STATEMENT ......................................................................... 2

ARGUMENT ....................................................................................................... 5

I.    RELEVANT LEGAL STANDARDS ....................................................... 5

    A.    Plaintiffs' Claims Meet The Requisite Pleading Standards ......................... 5

II.   PLAINTIFFS HAVE ADEQUATELY PLED THAT DEFENDANTS
    HAVE VIOLATED THE ICA AND OTHER APPLICABLE LAWS ................ 9

    A.    Plaintiffs Properly Alleged A Violation Of § 36(b) ..................................... 9

        1.    Defendants' Improper Use of Rule 12b-1 Fees Violated §
            36(b) .................................................................................................. 12

        2.    Defendants' Breach of Fiduciary Duties Fall Within § 36(b) ........ 14

        3.    Defendants' Soft Dollar Practices Were Improper and
            Violated § 36(b) ............................................................................... 16

        4.    Defendants' Improper Use of Directed Brokerage Harmed
            Class Members .................................................................................. 17

    B.    Defendants' Conduct Has Been Universally Condemned by the
        SEC and other Regulators ............................................................................ 20

    C.    Plaintiffs' § 36(b) Claims Are Properly Brought Against the
        Trustee Defendants ....................................................................................... 22

III.  PLAINTIFFS HAVE STANDING TO ASSERT DIRECT CLAIMS ON
    BEHALF OF SHAREHOLDERS OF ALL THE MFS FUNDS ....................... 23

    A.    Plaintiffs Have Standing To Assert Claims On Behalf Of All MFS
        Funds Shareholders ....................................................................................... 23

    B.    Alternatively, Plaintiffs Have Standing to Pursue Their Claims On
        Behalf of Shareholders in All of the MFS Funds Pursuant to the
        Juridical Link Doctrine ................................................................................. 27

    C.    Plaintiffs Have Standing Due to Their Ongoing Financial Interest
        in the Outcome of the Litigation Regarding All Funds ............................... 32

D.    Plaintiffs Also Have Standing To Bring Count V – The Complaint's Sole Derivative Count - as Members of an Unincorporated Association Pursuant to Fed. R. Civ. P. 23.1 and 23.2...............................................................................................34

IV.    PLAINTIFFS HAVE STATED A CLAIM UNDER §§ 34(B) AND 36(A) OF THE ICA.....................................................................................35

A.    Under the Applicable Tests for Determining the Existence of an Implied Right of Action, Such a Right Exists for §§ 34(b) and 36(b)....................................................................................................37

B.    Additional Authority Establishes Private Causes of Action......................42

V.    THE COMPLAINT PLEADS A CLAIM UNDER § 48(A) OF THE ICA ..........45

VI.    PLAINTIFFS HAVE STATED A VIABLE CLAIM UNDER § 215 OF THE IAA.....................................................................................46

A.    Compliance With the Demand Requirement of Rule 23.1 Should Be Excused as Futile.............................................................................46

1.    Under The Massachusetts Statute Applicable To Investment Companies, A Majority Of The MFS Funds Board Is Interested .........................................................................47

2.    Demand Is Futile Under Massachusetts Common Law.................50

B.    The Complaint Adequately Alleges a Violation of the IAA......................51

1.    Section 215 Applies To Advisory Contracts That Violate § 206 Of The IAA ........................................................................51

2.    Section 215 of the IAA Allows for Restitution ............................53

VII.    THE COMPLAINT ADEQUATELY PLEADS STATE LAW CLAIMS FOR BREACH OF FIDUCIARY DUTY, AIDING AND ABETTING A BREACH OF FIDUCIARY DUTY AND UNJUST ENRICHMENT ................54

A.    Plaintiffs' State Law Claims Are Properly Brought as Direct Claims .................................................................................................54

B.    Plaintiffs' State Law Claims Are Not Preempted by SLUSA ...................57

C.    Plaintiffs Have Properly Pled A Breach Of Fiduciary Duty......................59

D.    Plaintiffs Have Stated a Claim for Aiding and Abetting Breach of Fiduciary Duty ...................................................................................61

E.    Plaintiffs' Have Stated a Claim for Unjust Enrichment............................62

CONCLUSION...........................................................................................................63

# TABLE OF AUTHORITIES

## FEDERAL CASES

**Page(s)**

Adair v. Sorenson,
  134 F.R.D. 13 (D. Mass. 1991)...................................................................................29

Advance Growth Capital Corp.,
  470 F.2d at 52 ............................................................................................................8

Alexander v. Sandoval,
  532 U.S. 275 (2001)........................................................................................37, 39, 40

Alves v. Harvard Pilgrim Health Care, Inc.,
  204 F. Supp. 2d 198 (D. Mass. 2002) .....................................................................28

In re Am. Cont'l Corp./Lincoln Sav. & Loan Sec. Litig.,
  794 F. Supp. 1424 (D. Ariz. 1992) ..........................................................................27

Associated Students of U.C. Riverside v. Kleindienst,
  60 F.R.D. 65 (C.D. Cal. 1973)..................................................................................34

Bancroft Convertible Fund, Inc. v. Zico Inv. Holdings, Inc.,
  825 F.2d 731 (3d Cir. 1987)......................................................................................36

Batra v. Investors Research Corp.,
  1991 U.S. Dist. LEXIS 14773 (W.D. Mo. Oct. 4, 1991)........................................33

Baum v. Investors Diversified Servs., Inc.,
  409 F.2d 872 (7th Cir. 1969) ....................................................................................57

Bielski v. Cabletron Sys.,
  311 F.3d 11 (1st Cir. 2002).........................................................................................6

Blasberg v. Oxbow Power Corp.,
  934 F. Supp. 21 (D. Mass. 1996) ..............................................................................55

Blue Chip Stamps v. Manor Drug Stores
  421 U.S. 723 (1975).............................................................................................58, 60

Bogart V. Shearson Lehman Bros.,
  1993 U.S. Dist. LEXIS 1182 (S.D.N.Y. Feb. 3, 1993)...........................................52

Bonano v. E. Caribbean Airline Corp.,
  365 F.3d 81 (1st Cir. 2004)........................................................................................42

Brown v. Bullock,
    294 F.2d 415 (2d Cir. 1961)...............................................................................36

Caiola v. Citibank, N.A.,
    295 F.3d 312 (2d Cir. 2002)...............................................................................17

Centro Medico del Turabo,
    2005 U.S. App. LEXIS 6627 ...............................................................................5

Centro Medico del Turabo, Inc. v. Feliciano de Melecio,
    2005 U.S. App. LEXIS 6627 (1st Cir. 2005).........................................................5

Chamberlain v. Aberdeen,
    Civ. No. 02-5870, 2005 U.S. Dist. LEXIS 2023 (E.D.N.Y. Jan 21, 2005) ...............42

Concha v. London,
    62 F.3d 1493 (9th Cir. 1995) ................................................................................7

Cross v. Oneida Paper Products Co.,
    117 F. Supp. 919 (D.N.J. 1954) ..........................................................................34

Dabit v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,
    395 F.3d 25 (2d Cir. 2005)..................................................................................58

Davis v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,
    906 F.2d 1206 (8th Cir. 1990) ............................................................................17

Donatelli v. Nat'l Hockey League,
    893 F.2d 459 (1st Cir. 1990)..............................................................................34

Dorchester Investors v. Peak Int'l Ltd.,
    134 F. Supp. 2d 569 (S.D.N.Y. 2001)..................................................................42

Dowling v. Narragansett Capital Corp.,
    735 F. Supp. 1105 (D.R.I. 1990).........................................................................46

In re Dreyfus Aggressive Growth Mut. Fund Litigation,
    2000 U.S. Dist. LEXIS 13469 (S.D.N.Y. Sept. 19, 2000)................................24, 25

In re Eaton Vance Corp. Sec. Litig.,
    219 F.R.D. 38 (D. Mass. 2003)...........................................................................28

In re Eaton Vance Corp. Secs. Litig.,
    220 F.R.D. 162 (D. Mass. Apr. 1, 2004).......................................................27, 28, 29

Esplin v. Hirschi,
    402 F.2d 94 (10th Cir. 1968) ..............................................................................36

Estates of Unger v. Palestinian Auth.,
    304 F. Supp. 2d 232 (D.R.I. 2004)........................................................34

Fallick v. Nationwide Mutual Insurance Co.,
    162 F.3d 410 (6th Cir. 1998) ...............................................................26

Feitelberg v. Credit Suisse First Boston LLC,
    2003 U.S. Dist. LEXIS 19116 (N.D. Cal. Oct. 21, 2003)........................59

Galfand v. Chestnutt Corp.,
    545 F.2d 807 (2d Cir. 1976).................................................................61

Gartenberg v. Merrill Lynch Asset Management, Inc.,
    528 F. Supp. 1038 (S.D.N.Y. 1981)..................................................55, 60

Gartenberg v. Merrill Lynch Asset Management, Inc.,
    694 F.2d 923 (2d Cir. 1982).................................................................11

Generadora de Electricidad del Caribe, Inc. v. Foster Wheeler Corp.,
    2000 U.S. Dist. LEXIS 4641 (D.P.R. Mar. 16, 2000) ..............................6

Goldberger v. Bear Stearns & Co.,
    2000 U.S. Dist. LEXIS 18714 (S.D.N.Y. Dec. 28, 2000) ........................23

Gollust v. Mendell,
    501 U.S. 115 (1991)......................................................................32, 33

Gonzaga Univ. v. Doe,
    536 U.S. 273 (2002)...........................................................................40

Goodman v. Lukens Steel Co.,
    777 F.2d 113 (3d Cir. 1985).................................................................24

Gratz v. Bollinger,
    539 U.S. 244 (2003)...........................................................................23

Green v. Ameritrade, Inc.,
    279 F.3d 590 (8th Cir. 2002) ...............................................................59

Green v. Fund Asset Management, L.P.,
    19 F. Supp. 2d 227 (D.N.J. 1998) ..............................................11, 14, 16

Green v. Fund Asset Management, L.P.,
    286 F.3d 682 (3d Cir. 2001).................................................................14

Halligan v. Standard & Poor's/Intercapital, Inc.,
    434 F. Supp. 1082 (E.D.N.Y. 1977) ................................................22, 23

Heffler v. United States Fidelity & Guaranty Ins. Co.,
   1992 U.S. Dist. LEXIS 3090 (E.D. Pa. Mar. 10, 1992).............................................27

Hicks v. Morgan Stanley & Co.,
   2003 U.S. Dist. LEXIS 11972 (S.D.N.Y. July 16, 2003) ........................................24

Howell v. Motorola, Inc.,
   337 F. Supp. 2d 1079 (N.D. Ill. Sep. 23, 2004) ........................................................8

ING Principal Protection Funds Derivative Litig.,
   2005 U.S. Dist. LEXIS 8606 (D. Mass. May 9, 2005) ............................................47

Industrial Gen. Corp. v. Sequoia Pac. Sys. Corp.,
   44 F.3d 40 (1st Cir. 1995)........................................................................................62

Jackson v. Birmingham Bd. of Educ.,
   125 S. Ct. 1497 (Mar. 29, 2005) .......................................................................36, 37, 38

Jernberg v. Mann,
   358 F.3d 131 (1st Cir. 2004).....................................................................................62

Jerozal v. Cash Reserve Management, Inc.,
   1982 U.S. Dist. LEXIS 16566 (S.D.N.Y. 1982) .....................................................45

Kamen v. Kemper Fin. Servs., Inc.,
   500 U.S. 90 (1991)....................................................................................................46

Kitchens v. U.S. Shelter Corp.,
   1983 U.S. Dist. LEXIS 12812 (D.S.C. Oct. 13, 1983) ...........................................26

Krinsk v. Fund Asset Mgmt, Inc.,
   875 F.2d 404 (2d Cir. 1989)......................................................................................15

Krome v. Merrill Lynch & Co.,
   637 F. Supp. 910 (S.D.N.Y. 1986) ..........................................................................36

LaMar v. H&B Novelty & Loan Co.,
   489 F. 2d 461 (9th Cir. 1973) ..................................................................................28

Lessler v. Little,
   857 F.2d 866 (1st Cir. 1988)............................................................................36, 38, 39, 42

Levitt v. Johnson,
   334 F.2d 815 (1st Cir. 1964)......................................................................................36

Long Term Care Pharm. Alliance v. Ferguson,
   362 F.3d 50 ...............................................................................................................42

Lujan v. Defenders of Wildlife,
    504 U.S. 555 (1992) ....................................................................................................32

Luyando v. Bowen,
    124 F.R.D. 52 (S.D.N.Y. 1989) ...................................................................................27

In re ML-Lee Acquisition Fund II L.P.,
    848 F. Supp. 527 (D. Del. 1994) ...............................................................25, 36, 43, 46

Margaret Hall Found. V. Atl. Fin. Mgmt.,
    572 F. Supp. 1475 (D. Mass. 1983) .............................................................................52

Maywalt v. Parker & Parsley Petroleum Co.,
    147 F.R.D. 51 (S.D.N.Y. 1993) ...................................................................................25

McLachlan v. Simon,
    31 F. Supp. 2d 731 (N.D. Cal. 1998) ......................................................................36, 62

In re Merrill Lynch & Co., Research Reports Sec. Litig.,
    272 F. Supp. 2d 243 (S.D.N.Y. 2003) ..........................................................................42

Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran,
    456 U.S. 353 (1982) ....................................................................................................44

Meyer v. Oppenheimer Mgmt. Corp.,
    764 F.2d 76 (2d Cir. 1985) ..........................................................................................36

Meyer v. Oppenheimer Mgmt. Corp.,
    895 F.2d 861 (2d Cir. 1990) ..........................................................................................9

Mgmt. Television Sys., Inc. v. Nat'l Football League,
    52 F.R.D. 162 (E.D. Pa. 1971) .....................................................................................34

Migdal v. Rowe Price-Fleming International,
    248 F.3d 321 (4th Cir. 2001) ....................................................................................7, 15

Millenco L.P. v. MEVC Adv., Inc.,
    2002 U.S. Dist. LEXIS 19512 (D. Del. Aug. 12, 2002) ...............................................11

In re MobileMedia Sec. Litig.,
    28 F. Supp. 2d 901 (D.N.J. 1998) ................................................................................27

Moore v. Comfed Sav. Bank,
    908 F.2d 834 (11th Cir. 1990) .....................................................................................31

Motta v. Samuel Weiser, Inc.,
    768 F.2d 481 (1st Cir. 1985) ........................................................................................34

Neitzke v. Williams,
    490 U.S. 319 (1989)..................................................................................5

Nenni v. Dean Witter Reynolds, Inc.,
    1999 U.S. Dist. LEXIS 23351 ..............................................................27

Newby v. Enron Corp.,
    2004 U.S. Dist. LEXIS 8158 (S.D. Tex. Feb. 24, 2004) ........................28

Norman v. Salomon Smith Barney Inc.,
    350 F. Supp. 2d 382 (S.D.N.Y. 2004)....................................8, 52, 53

In re Nuveen Fund Litig.,
    1996 U.S. Dist. LEXIS 8071 (N.D. Ill. June 11, 1996) ...............8, 43, 44

Olmsted v. Pruco Life Ins. Co. of N.J.,
    134 F. Supp. 2d 508 (E.D.N.Y. 2000) ...................................................39

Olmsted v. Pruco Life Insurance Co. of New Jersey,
    283 F.3d 429 (2d Cir. 2002).........................................37, 39, 40, 44

Payton v. County of Kane,
    308 F.3d 673 (7th Cir. 2002) ..................................................................28

Pfeiffer v. Bjurman, Barry & Assoc.,
    2004 U.S. Dist. LEXIS 16924 (S.D.N.Y. Aug. 26, 2004)...........11, 12, 13

Press v. Quick & Reilly,
    218 F.3d 121 (2d Cir. 2000)...................................................................22

In re Prudential Sec. Inc. Ltd. P'ship Litig.,
    163 F.R.D. 200 (S.D.N.Y. 1995) ...........................................................25

Resolution Trust Corp. v. DeLoitte & Touche,
    822 F. Supp. 1512 (D. Colo. 1993).......................................................35

Ripon Soc'y v. Nat'l Republican Party,
    525 F.2d 567 (D.C. Cir. 1975)...............................................................35

Rivera v. Rhode Island,
    402 F.3d 27 (1st Cir. 2005).......................................................................5

SEC v. Capital Gains Research Bureau, Inc.,
    375 U.S. 180 (1963).......................................................7, 14, 51, 52, 53

SEC v. Happ,
    392 F.3d 12 (1st Cir. 2004)....................................................................41

SEC v. Steadman,
    798 F. Supp. 733 (D.D.C. 1991)..................................................................................55

Scachitti v. Prudential Sec., Inc.,
    1999 U.S. Dist. LEXIS 19391 (D. Ill. Dec. 10, 1999)..........................................53

Scheuer v. Rhodes,
    416 U.S. 232 (1974)........................................................................................................5

Shaw v. Digital Equip. Corp.,
    82 F.3d 1194 (1st Cir. 1996)..................................................................................7, 45

Sosna v. Iowa,
    419 U.s. 393 (1975).....................................................................................................24

Spielman v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,
    332 F.3d 116 (2d Cir. 2003)......................................................................................59

In re Stratus Computer,
    1991 U.S. Dist. LEXIS 21587 (D. Mass. Dec. 10, 1991)........................................7

Strougo v. Bassini,
    282 F.3d 162 (2d Cir. 2002)................................................................................41, 56

Strougo v. Scudder, Stevens & Clark, Inc.,
    964 F. Supp. 783 (S.D.N.Y. 1997)...................................7, 8, 36, 41, 43, 44, 46

Suna v. Bailey Corp.,
    107 F.3d 64 (1st Cir. 1997).........................................................................................6

Sutton v. Medical Serv. Ass'n,
    1993 U.S. Dist. LEXIS 9763 (E.D. Pa. July 20, 1993)..........................................24

Tannenbaum v. Zeller,
    552 F.2d 402 (2d Cir.1977).......................................................................................13

Taussig v. Wellington Fund, Inc.,
    313 F.2d 472 (3d Cir. 1963)......................................................................................36

Tedesco v. Mishkin,
    689 F. Supp. 1327 (S.D.N.Y. 1988).........................................................................26

Transamerica Mortg. Advisors, Inc. (TAMA) v. Lewis,
    444 U.S. 11 (1979)..........................................................................................51, 53, 54

United States ex rel. Karvelas v. Melrose-Wakefield Hospital et al.,
    2003 U.S. Dist. LEXIS 8846 (D. Mass. May 21, 2003).......................................6, 8

United States v. Szur,
    289 F.3d 200 (2d Cir. 2002)............................................................................63

Vervaecke v. Chiles, Heider & Co.,
    578 F.2d 713 (8th Cir. 1978) (Def. Brf. at 6)............................................27

Watterson v. Page,
    987 F.2d 1 (1st Cir. 1993)...........................................................................51

Wellington Int'l Commerce Corp. v. Retelny,
    727 F. Supp. 843 (S.D.N.Y. 1989)..............................................................52

White v. Heartland High-Yield Mun. Bond Fund,
    237 F. Supp. 2d 982 (E.D. Wis. 2002)........................................................42

Wicks v. Putnam Inv. Mgmt.,
    2005 U.S. Dist. LEXIS 4892 (Mar. 28, 2005)..................................3, 5, 11, 13, 14, 16

Zurich Capital Mkts., Inc. v. Coglianese,
    332 F. Supp. 2d 1087 (N.D. Ill. 2004).......................................................62

**STATE CASES**

Bartlett v. New York,
    109 N.E. 452 (Mass 1915)..........................................................................46

CALPERS v. Coulter,
    2002 Del. Ch. LEXIS 144 (Del. Ch. May 28, 2002)..................................51

Demoulas v. Demoulas Super Mkts., Inc.,
    1993 WL 818844 (Mass. Super. Ct. Nov. 29, 1993)..................................62

Harhen v. Brown,
    730 N.E.2d 859 (Mass. 2000)...........................................................46, 47, 50

Hessleton v. Banknorth, N.A.,
    18 Mass. L. Rep. 7, 8 (May 11, 2004)........................................................63

Lopes v. Commonwealth,
    442 Mass. 170 (July 9, 2004).....................................................................64

Malone v. Brincat,
    722 A.2d 5 (Del. 1998)...............................................................................55

Roskind v. Morgan Stanley Dean Witter & Co.,
    80 Cal. App. 4th 345 (1st Dist. 2000)........................................................60

Stuchen v. Duty Free Int'l, Inc.,
    1996 WL 33167249 .....................................................................................62

<u>Tooley v. Donaldson, Lifkin & Jenrette, Inc.,</u>
    845 A.2d at 1033 (Del. 2004) .................................................................................56

<u>White v. Panic,</u>
    783 A.2d 543 (Del. 2001) ......................................................................................50

## DOCKETED CASES

<u>Chamberlain v. Aberdeen Asset Management Ltd.,</u>
    Civ. No. 02-5870 (E.D.N.Y. Jan. 21, 2005) ........................................................42

<u>Dumond v. Massachusetts Financial Services Co.,</u>
    C.A. No. 04-11458 (GAO) ....................................................................................11

## FEDERAL STATUTES

15 U.S.C. § 78bb(e)(i) ...................................................................................................16

15 U.S.C. § 80a-1 ..........................................................................................................41

15 U.S.C. § 80a-2(a)(3)(A) ...........................................................................................48

15 U.S.C. § 80a-30(a) ....................................................................................................40

15 U.S.C. § 80a-33(b) ....................................................................................................40

15 U.S.C. § 80a-35(a) ...............................................................................................12, 32

15 U.S.C. § 80a-35(b) ....................................................................................................32

15 U.S.C. § 80a-43 .........................................................................................................43

15 U.S.C. §80a-47(a) .....................................................................................................45

15 U.S.C. § 80a-8(a) ......................................................................................................40

15 U.S.C. § 80b-15 .........................................................................................................54

15 U.S.C. § 80b-6 (2004) ..............................................................................................51

15 U.S.C.S. § 80a-1 ........................................................................................................43

1996 U.S.C.C.A.N. 3908 ...............................................................................................39

69 Fed. Reg. 6438 ..........................................................................................................30

Fed. R. Civ. P. 8(a) ......................................................................................................5, 6

Fed. R. Civ. P. 9(b) .........................................................................................................6

Fed. R. Civ. P. 15(a) ...............................................................................................64

Fed. R. Civ. P. 23.............................................................................23, 34, 35, 46

H.R. Rep. No. 104-622 .........................................................................................39

H.R. Rep. No. 1341.............................................................................................44

Investment Company Amendments Act of 1969,
    S. Rep. No. 91-184.......................................................................................32

SEC Release No. IC-26356, 69 Fed. Reg. 9726, 9728-29.........................21, 22

SEC Release No. IC-26591, 69 Fed. Reg. 54728, 54728-29.........................20

S. Rep. No. 1760, 86th Cong., 2nd Sess. 4 (1960) ........................................51

## STATE STATUTES

Mass. Gen. Laws ch. 182, §2B (2005)................................................................47

Massachusetts Universal Demand Statute, Mass. Gen. Laws ch.156D, § 7.42...........................46

Investment Company Institute- Rule 12b-1, 1998 S.E.C. No- Act................................15

## OTHER AUTHORITIES

Wright and Arthur R. Miller,
    Federal Practice and Procedure § 1297 at 615 (2d ed. 1990) .....................................6

Arthur R. Miller,
    Federal Practice and Procedure §1356 (1990) ..........................................................6

Plaintiffs submit this memorandum of law in opposition to the motion of Defendant Massachusetts Financial Services Co. ("Def. Brf.") and its related entities named as defendants (collectively "MFS" or "Defendants") to dismiss the Consolidated Amended Complaint ("Complaint").

## PRELIMINARY STATEMENT

This is a class action on behalf of holders of MFS mutual funds ("MFS Funds" or the "Funds"), during the period March 24, 1999 through March 31, 2004 (the "Class" and "Class Period" respectively), alleging a scheme whereby Defendants paid or caused to be paid millions of dollars in improper kickbacks to brokers as a *quid pro quo* for the brokers pushing as many of their clients as possible into the Funds. Defendants referred to this scheme as buying "shelf space" at the brokerages. In fact, the scheme was nothing more than a series of secret kickback payments meant to improperly induce brokers to steer clients into MFS Funds while concealing the true nature of the kickbacks and unmanageable conflicts of interest resulting from those kickbacks. ¶¶ 2-4, 46-51.[1]  For this improper kickback scheme, Defendants have already been censured and fined $50 million by the Securities and Exchange Commission ("SEC"). See Exhibit A of the Declaration of Michael R. Reese ("Reese Decl.") (March 31, 2004 SEC Order Instituting Administrative and Cease-and-Desist Proceedings, Making Findings and Imposing Remedial Sanctions in In the Matter of Massachusetts Financial Services Co.) (the "MFS Cease-and-Desist Order"));[2] ¶¶ 12-13, 53-55, 84-85.

---

[1]  All references to "¶ _" are to the Complaint, unless otherwise noted.

[2]  In parallel proceedings against sister mutual fund companies including PA Distributors ("PIMCO"), Franklin-Templeton Distributors ("Franklin"), Putnam Investment Management ("Putnam") and American Funds Distributors ("American Funds"), the SEC, as well as other government regulators, have repeatedly made clear that such kickback schemes as that engaged in by MFS are illegal.  Reese Decl. Ex. B (September 15, 2004 SEC Order Instituting

Continued on next page

Defendants paid for these kickbacks using the assets of MFS Fund shareholders. That is, MFS's kickback scheme was financed by excessive and improper fees for undisclosed purposes charged to MFS Fund shareholders themselves. Defendants were motivated to carry out this scheme because MFS reaped millions of dollars in profits from the fees it charged shareholders as the assets of the Funds under its management increased. In contrast, the Class members received no benefit from Defendants' "shelf space" programs. ¶¶ 4, 90, 95, 101, 102. Rather, the Class members were injured by the fees and charges at issue here that they paid as a result of their holdings in the MFS Funds. As this Court has already held in a case presenting a virtually identical scenario, these facts state an actionable claim under the Investment Company Act. See Wicks v. Putnam Inv. Mgmt., 2005 U.S. Dist. LEXIS 4892 (Mar. 28, 2005). Plaintiffs now seek recovery of the millions of dollars of improper fees and charges used to finance Defendants' kickback scheme.

Defendants have moved to dismiss the Complaint on various, unavailing grounds. First, they argue that Plaintiffs have not stated a claim under § 36(b) of the Investment Company Act of 1940 ("ICA"). This assertion directly conflicts with the law in this Circuit, as discussed by this Court in Wicks. Id. Additionally, as numerous SEC, NASD rules, releases and subsequent regulatory actions against brokerage firms and mutual fund families demonstrate, Defendants'

---

Administrative and Cease-and-Desist Proceedings, Making Findings and Imposing Remedial Sanctions in In the Matter of PA Fund Management LLC et al.); Ex. C (December 13, 2004 SEC Order Instituting Administrative and Cease-and-Desist Proceedings, Making Findings and Imposing Remedial Sanctions in In the Matter of Franklin Advisers, Inc. and Franklin/Templeton Distributors, Inc.); Ex. D (March 23, 2005 SEC Order Instituting Administrative and Cease and Desist Proceedings, Making Findings and Imposing Remedial Sanctions in In the Matter of Putnam Investment Management); see also Reese Decl. Ex. E (February 16, 2005 NASD Disciplinary Proceeding against American Funds Distributors, Inc.); Ex. F (People of State of California v. American Funds Distributors et al. filed by the California Attorney General's Office March 24, 2005).

misconduct was expressly prohibited by the SEC and NASD (and various state consumer

protection laws enforced by state attorney generals) and constitutes a breach of fiduciary duty to

MFS Funds shareholders.[3]

Defendants also argue that Plaintiffs cannot assert direct claims under §§ 34(b), 36(a) and

48(a) of the ICA. To the contrary, courts have recognized for decades the existence of implied

rights of action under these sections. This recognition derives from the fundamental purpose of

the ICA – the protection of mutual fund shareholders.

Defendants also complain that Plaintiffs do not have standing to bring claims on behalf of

investors in other Funds within the MFS Funds complex, despite the fact that courts consistently

have framed this issue as one of compliance with Federal Rule of Civil Procedure 23, not of

Article III standing. Furthermore, there is substantial authority to support the fact that Plaintiffs

may properly assert class claims on behalf of investors in the other Funds in the complex.

Defendants also argue that Plaintiffs' sole derivative claim – Count V brought under the

Investment Adviser's Act of 1940 ("IAA") - should be dismissed because Plaintiffs did not make

a pre-suit demand. However, Defendants ignore the allegations in the Complaint demonstrating

that demand would have been futile. Finally, Defendants' argument that Plaintiffs' state law

claims are preempted under the Securities Litigation Uniform Standards Act of 1998 ("SLUSA")

runs counter to the plain language of the statute and the weight of authority.

Accordingly, Defendants' motion to dismiss should be denied in its entirety.

---

[3] See also Reese Decl. Exs. G and H for copies of the SEC's and NASD's Actions against the
brokerage Morgan Stanley regarding improper kickback payments it received from Defendants.

## ARGUMENT

**I.    RELEVANT LEGAL STANDARDS**

In considering Defendants' motion to dismiss, the Court must presume that the

allegations of the Complaint are true, read the Complaint as a whole, and give plaintiffs the

benefit of every favorable inference that can be drawn from the allegations.  See <u>Scheuer v.</u>

<u>Rhodes</u>, 416 U.S. 232, 236 (1974).  "The issue is not whether a plaintiff will ultimately prevail

but whether the claimant is entitled to offer evidence to support the claims." <u>Id.</u>; <u>see also</u>

<u>Neitzke v. Williams</u>, 490 U.S. 319, 326 (1989).  "When considering a motion to dismiss, a court

must accept as true all allegations in the complaint and must draw all reasonable factual

inferences in the light most favorable to the plaintiff." <u>Id.</u>  Further, a complaint must be upheld

if any legal theory included in the complaint could be successful, whether or not plaintiffs have

erroneously relied on a different legal theory. <u>Centro Medico del Turabo, Inc. v. Feliciano de</u>

<u>Melecio</u>, 2005 U.S. App. LEXIS 6627, at *5-6 (1st Cir. 2005) (citation omitted).  "A complaint

should not be dismissed under Rule 12(b)(6) unless 'it appears beyond doubt that the plaintiff

can prove no set of facts in support of his claim which would entitle him to relief.'" <u>Wicks</u>, 2005

U.S. Dist. LEXIS, at *13.

**A.    Plaintiffs' Claims Meet The Requisite Pleading Standards**

The entire Complaint is subject to Rule 8's liberal pleading standards.  "A district court

charged with the adjudication of a motion to dismiss under Rule 12(b)(6) must apply the notice

pleading requirements of Fed. R. Civ. P. 8(a)(2)." <u>Rivera v. Rhode Island</u>, 402 F.3d 27, 33 (1st

Cir. 2005).  As this Court has recognized, when reviewing the Defendants' motion to dismiss,

the Court's focus should be on whether the allegations in the complaint set forth "a short and

plain statement of the claim showing that the pleader[s] [are] entitled to relief." <u>Wicks</u>, 2005

U.S. Dist. LEXIS 4892, at *13, citing Fed. R. Civ. P. 8(a)(2); Centro, 2005 U.S. App. LEXIS

6627,at *4.

Perhaps recognizing that the heightened pleading requirements of Fed. R. Civ. P. 9(b)

apply only to claims of fraud, Defendants attempt to recast the Complaint as "sounding in fraud"

so as to create additional pleading burdens for Plaintiffs. Def. Brf. at 4. However, none of

Plaintiffs claims are subject to Rule 9(b)'s heightened pleading standard.[4] As courts in this

circuit have noted:

> Since Fed. R. Civ. P. 9(b) is a special pleading requirement and
> contrary to the general approach of simplified pleading adopted by
> the Federal Rules of Civil Procedure, its scope of application shall
> be construed narrowly and not extended to other legal theories or
> defenses.

Generadora de Electricidad del Caribe, Inc. v. Foster Wheeler Corp., 2000 U.S. Dist. LEXIS

4641, at *20 (D.P.R. Mar. 16, 2000) (quoting 4 Charles Alan Wright and Arthur R. Miller,

Federal Practice and Procedure § 1297 at 615 (2d ed. 1990)).

---

[4] Even assuming, *arguendo*, that a Rule 9(b) standard were to apply to any of Plaintiffs' claims
(which it does not), this Court should nevertheless find the Complaint is sufficiently pled to
withstand Defendants' attack on pleading grounds. To successfully plead a fraud claim, a
complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2)
identify the speaker, (3) state where and when the statements were made, and (4) explain why the
statements were fraudulent." Suna v. Bailey Corp., 107 F.3d 64, 68 (1st Cir. 1997). The
Complaint clearly complies with these requirements and meets the four parts of the Suna test. It
(1) specifies the statements that the plaintiff claims were fraudulent (¶¶ 88-91, 114-27), (2)
identifies those responsible for the statements (¶¶ 23-39), (3) states when and where the
statements were made (¶¶ 88-91, 114-27), and (4) explains why the statements were fraudulent
(¶¶ 114-27). The Complaint is amply pled to support each and every one of Plaintiffs'
allegations, which clearly identify the Defendants' practices and state how and why said
practices were prohibited. See Bielski v. Cabletron Sys., 311 F.3d 11, 33 (1st Cir. 2002) (noting
that pleading securities fraud does not require a plaintiff to plead evidence); United States ex rel.
Karvelas v. Melrose-Wakefield Hospital et al., 2003 U.S. Dist. LEXIS 8846, at *13 (D. Mass.
May 21, 2003) ("Rule 9(b) is to be read in conjunction with Fed. R. Civ. P. 8(a), which requires
a 'short and plain statement of the claim' for relief, and, as such, the plaintiff is not required to
"plead all of the evidence or facts supporting it.").

First, Plaintiffs breach of fiduciary duty claims are not subject to Rule 9(b) as none

"sound in fraud."[5] Concha v. London, 62 F.3d 1493, 1502 (9th Cir. 1995) ("[W]e have never

applied Rule 9(b) in cases in which the plaintiffs allege a breach of fiduciary duty but do not

allege fraud").  "Rule 9(b) is not applicable to breach of fiduciary duty . . . claims; it applies only

to claims sounding in fraud." Strougo v. Scudder, Stevens & Clark, Inc., 964 F. Supp. 783, 804

(S.D.N.Y. 1997); In re Stratus Computer, 1991 U.S. Dist. LEXIS 21587, at *21 (D. Mass. Dec.

10, 1991) (noting that if a "breach of fiduciary duty derives from conduct that is negligent, rather

than fraudulent ... Rule 9(b) would not apply") (citation omitted). Here, claims VI and VII of the

Complaint, for breach of fiduciary duty against the Investment Adviser and Trustee Defendants,

sound in negligence, alleging breach of fiduciary duties based upon "reckless and willful

disregard[.]"  Similarly, Count VIII, against all Defendants for aiding and abetting a breach of

fiduciary duty by the brokerages that accepted payments from the Defendants, sounds in

negligence.  Likewise, Count IX, against all Defendants for unjust enrichment, prays for

equitable relief to remedy alleged negligence.

Finally, the federal statutory causes of action under the ICA and IAA, Counts I-V, are

not fraud-based and are also subject to Rule 8's pleading standards.  This has been settled by the

---

[5] The cases cited by Defendants on this point are unpersuasive. Def. Brf. at 4. In Migdal v.
Rowe Price-Fleming International, 248 F.3d 321 (4th Cir. 2001), unlike the instant action, which
is based on the detailed allegations of the Complaint, the court dismissed the complaint because
the complaint's allegations were "speculative" and/or "conclusory." Defendants also
mischaracterize Shaw v. Digital Equip. Corp., 82 F.3d 1194, 1222 (1st Cir. 1996). There, the
court did not state that the non-fraud claims based on scienter and reliance allegations "sound in
fraud" as Defendants claim.  Def. Brf. at 4.  Rather, the court in Shaw specifically stated that "if
a plaintiff were to attempt to establish violations of Sections 11 and 12(2) as well as the anti-
fraud provisions of the Exchange Act through allegations in a single complaint of a unified
course of fraudulent conduct, fraud might be said to 'lie[] at the core of the action.'  Here, the
anti-fraud provisions of the Exchange Act are not implicated and, as discussed herein, none of
the Complaint's counts rely on a theory of fraud.

overwhelming weight of authority. <u>See</u>, <u>e.g.</u>, <u>SEC v. Capital Gains Research Bureau, Inc.</u>, 375

U.S. 180, 195 (1963) (holding that scienter is <u>not</u> required to prove identified alleged violations

of IAA § 206); <u>see also</u> <u>Norman v. Salomon Smith Barney Inc.</u>, 350 F. Supp. 2d 382, 391-92

(S.D.N.Y. 2004) ("the gravamen of plaintiffs' IAA claim does not rest in fraud, but rather in

breaches, through omission, of the broad regime of fiduciary duty created by the IAA"); <u>Strougo</u>,

964 F. Supp. at 798- 800 (rejecting argument that § 36(a) claim sounds in fraud and need be pled

pursuant to 9(b)); <u>In re Nuveen Fund Litig.</u>, 1996 U.S. Dist. LEXIS 8071, at *24-25 (N.D. Ill.

June 11, 1996) (rejecting argument that ICA § 34(b) cause of action requires reliance, in same

manner as fraud).[6]

> For these reasons, the adequacy of the Complaint's allegations must be reviewed

pursuant to the standards of Federal Civil Procedure Rule 8.[7]

---

[6] <u>See</u> <u>also</u> <u>Advance Growth Capital Corp.</u>, 470 F.2d at 52 n.19 (contrasting § 34(b) of the ICA, which does not include any mental state, with the provisions of § 34(a), which requires the acts prohibited be performed "willfully" before a violation will occur). Plaintiffs' claims under § 34(b) are premised on allegations that Defendants <u>negligently</u> misrepresented and failed to disclose material information in the documents identified in the complaint. Such negligence-based claims are <u>not</u> subject to heightened pleading standards. <u>Cf.</u> <u>Howell v. Motorola, Inc., 337 F. Supp. 2d 1079</u> (N.D. Ill. 2004) ("Although Claim II states a misrepresentation claim, it is premised on Plaintiff's contention that all Defendants <u>negligently</u> misrepresented and failed to disclose material information . . . Such a claim is not subject to the requirements of 9(b).") (Emphasis in original).

[7] Additionally, the allegations of this Complaint are peculiarly within the control and knowledge of the Defendants, and Plaintiffs' Complaint adequately lays out the facts necessary to support those allegations. <u>See</u> <u>United States ex rel. Karvelas</u>, 2003 U.S. Dist. LEXIS 8846, at *13 (noting that "[t]he Rule 9(b) pleading requirement is relaxed when the facts underlying the fraud are 'peculiarly within the defendants' control'").

## II.    PLAINTIFFS HAVE ADEQUATELY PLED THAT DEFENDANTS HAVE VIOLATED THE ICA AND OTHER APPLICABLE LAWS

Notwithstanding a $50 million fine and sanction by the SEC for the kickback scheme alleged in the Complaint, Defendants maintain that Plaintiffs were not materially harmed by Defendants' actions. Def. Brf. at 3. Defendants' argument is unfounded. Notably, Defendants misled shareholders regarding the true nature and purpose of *millions of dollars of mutual fund fees paid by shareholders* by failing to disclose that this money was going towards financing Defendants' kickback scheme instead of the services Defendants represented. This money that Defendants improperly took from shareholders, for Defendants' own benefit, to finance the kickback scheme directly impacted Plaintiffs and other members of the class and reduced the rate of return on their holdings.

### A.    Plaintiffs Properly Alleged A Violation Of § 36(b)

Section 36(b) imposes a fiduciary duty on investment advisers and others "with respect to the receipt of compensation for services" and creates an express private right of action "for breach of fiduciary duty in respect of such compensation." See, e.g. Meyer v. Oppenheimer Mgmt. Corp., 895 F.2d 861, 866 (2d Cir. 1990). As this Court made clear in Wicks, the type of conduct alleged in the Complaint is subject to challenge under § 36(b). Specifically, in Wicks, plaintiff sued the investment manager for certain Putnam Funds based upon the allegation that "*the defendants also direct the payments of excessive commissions to securities broker-dealers to execute trades for the Funds in exchange for 'soft dollars' (said to be a form of kickback) that benefits the defendants and not the Funds*." Id. at *3. (emphasis added). In denying defendants' motion to dismiss, the court held that such allegations are "sufficient to survive a motion to dismiss for failure to state a claim upon which relief can be granted." Id. at *13.

9

Here, Plaintiffs allege several actionable courses of conduct by Defendants. Here, like in Wicks, Plaintiffs have properly alleged that Defendants violated the § 36(b) proscription against payment of excessive management and other fees to the Investment Adviser Defendant and its affiliates, despite Defendants' conclusory assertion to the contrary (Def. Brf. at 13),. ¶¶ 157-164.[8] Among other wrongful activities, as described in detail herein and in the Complaint, Defendants charged Rule 12b-1 fees (much of which was paid directly to the Distributor Defendant), soft dollar payments and directed brokerage commissions which benefited Defendants rather than the Fund owners. Furthermore, Defendants failed to reduce their management fees to reflect the benefits obtained by Defendants from such payments. Similarly, Defendants charged management fees that were wrongfully inflated to cover other improper revenue sharing payments that were ostensibly made from the assets of the Investment Adviser and Distributor Defendants. Courts have resoundingly rejected Defendants' attempts to avoid the application of § 36(b) in these circumstances. Id.

Additionally, Defendants wrongly contend that Plaintiffs must "plead facts sufficient to show that the amount of the advisory fee was 'so disproportionately large that it bears no reasonable relationship to the services rendered and could not have been the product of arm's-length bargaining.'" Def. Brf. at 12, n.9, quoting Gartenberg v. Merrill Lynch Asset Mgmt., Inc., 694 F.2d 923 (2d Cir. 1982).[9] As explained by this Court in Wicks:

---

[8] Defendants also incorrectly assert the Complaint is defective because it does not make "allegation[s] concerning fee levels of the vast majority of the Funds as to which [Plaintiffs] sue." Def. Brf. at 14. Contrary to this assertion, Plaintiffs are not required to plead evidence about every individual transaction in order to state a claim.

[9] Defendants' argument on this point is found in their Memorandum of Law in Support of Defendants' Motion to Dismiss Plaintiffs' Complaint, filed in Dumond v. Massachusetts Financial Services Co., C.A. No. 04-11458 (GAO). See Def. Brf. at 12 n. 9.

> Gartenberg ... does not establish a heightened pleading
> requirement for § 36(b) excessive fee claims. A plaintiff's failure
> to plead certain Gartenberg factors is not itself grounds for
> dismissal. The Court's focus in reviewing the defendants' motion
> to dismiss is on whether the allegations in the complaint set forth
> "a short and plain statement of the claim showing that the
> pleader[s] [are] entitled to relief." (citation omitted).

Wicks, 2005 U.S. Dist. LEXIS 4892, at *13; see also Pfeiffer v. Bjurman, Barry & Assoc., 2004

U.S. Dist. LEXIS 16924, at *18 (S.D.N.Y. Aug. 26, 2004); Millenco L.P. v. meVC Advisors,

Inc., 2002 U.S. Dist. LEXIS 19512, at *9-10 (D. Del. Aug. 12, 2002). And as further explained

in Pfeiffer:

> To prevail in this [§ 36(b)] action, the plaintiff will have to
> demonstrate that the fees were in fact excessive ... Whether the
> plaintiff can meet this burden will be decided at a later stage of this
> action. The plaintiff's failure to do so in his pleading is not a
> ground for dismissal.

Id. at *18 (denying motion to dismiss § 36(b) claim) (emphasis added).[10]

Here, the Complaint exceeds the applicable pleading standards. The Complaint details

Defendants' scheme to charge excessive fees and commissions to Fund investors in order to pay

brokers to steer additional investors into the MFS Funds to further increase advisory fees (¶¶ 3-

6); lists a number of the brokerages involved, provides the rate at which the preferential

commission payments were paid, and describes the improper services rendered by the brokers in

exchange for the payments (¶¶ 46-46); alleges that payments were made in amounts that

---

[10] Other courts have condoned a more liberal standard than Pfeiffer. In Green v. Fund Asset
Management, L.P., 19 F. Supp. 2d at 234, the court sustained a § 36(b) claim where plaintiffs did
not allege that the advisory fees were "excessive" or "disproportionate." The court found that §
36(b) "is not expressly limited to situations in which the advisory fees received by an investment
adviser were excessive, disproportionate or otherwise unreasonable." Id. (emphasis added). Put
simply, "[t]he statute encompasses the receipt of fees by an investment adviser in violation of the
adviser's fiduciary duty." Id. Under either the Pfeiffer or Green standard, Plaintiffs have
adequately pled a violation of § 36(b).

exceeded standard sales loads, commissions, and 12b-1 distribution fees (¶ 105, 120); and

illustrates how Defendants directly and indirectly used investors' assets to push the MFS Funds.

Furthermore, as explained in the Complaint, the absence of a relationship between the services

rendered and costs incurred by investors, in addition to the aggregate amount of investor assets

used by Defendants to acquire shelf space and directed brokerage, rendered the fees excessive.

¶¶ 46-113. Under <u>Wicks,</u> these allegations are more than sufficient to state a claim for violation

of § 36(b).

### 1.    Defendants' Improper Use of Rule 12b-1 Fees Violated § 36(b)

Defendants' actions violated the stated purposes of SEC Rule 12b-1 that governs several

of the excessive fees at issue here.[11]  The Rule was adopted so that funds could increase assets

and bring economies of scale which would be passed to investors and decrease their expenses.

<u>Bearing of Distribution Expenses by Mutual Funds,</u> Investment Company Act Release No.

11414 (Oct. 28, 1980).  However, as was correctly noted about investment advisers by the

Second Circuit, "this unique mutual fund structure was serious enough to prompt the observation

... that 'self-dealing is not the exception but, so far as management is concerned, the order of the

day.'"  <u>Tannenbaum v. Zeller,</u> 552 F.2d 402, 406 (2d Cir.1977).  Here, though the distribution

---

[11] Rule 12b-1, promulgated by the SEC pursuant to the ICA, prohibits mutual funds from directly or indirectly distributing or marketing their own shares unless certain enumerated conditions set forth in Rule 12b-1 are met.  In order to comply with Rule 12b-1, a mutual fund must issue a written distribution plan (a "Rule 12b-1 Plan") detailing "all material aspects of the proposed financing and distribution" of its shares.  <u>Pfeiffer,</u> 2004 U.S. Dist. LEXIS 16924, at *5 (quoting 17 C.F.R. § 270.12b-1(b)).  The Rule 12b-1 Plan must be approved by a majority of the fund's board of directors, including a majority of the disinterested directors, and may be implemented or continued "only if the directors who vote to approve such implementation or continuation conclude, in the exercise of reasonable business judgment and in light of their fiduciary duties under state law and under sections 36(a) and (b) (15 U.S.C. §§ 80a-35 (a) and (b)) of the [Investment Company] Act, that <u>there is a reasonable likelihood that the plan will benefit the company and its shareholders.</u>"  <u>Id.</u> (citing 17 C.F.R. § 270.12b-1 (e)) (emphasis added).

fees are being used to increase Fund assets, the fruits of the economies of scale were enjoyed by

Defendants, not Plaintiffs. Defendants, who took a percentage of the Fund assets as their fee,

increased their profits by using investors' money to increase the size of the Funds' assets. As

this Court has held, such conduct is actionable under § 36(b). <u>Wicks</u>, 2005 U.S. Dist. LEXIS

4892, at *13.

Additionally, the average amount of payments given by advisers to brokers solely for

revenue sharing is a proper basis for pleading that the fees were excessive. In <u>Pfeiffer</u>, the court,

in denying a motion to dismiss a § 36(b) claim, found 12b-1 fees of 25 basis points were

sufficient to plead that fees were excessive. <u>Pfeiffer</u>, 2004 U.S. Dist. LEXIS 16924, at *8. The

court took into account that the basis point also included service fees and distribution fees which

were incurred in connection with promotion and distribution of the Fund's shares, as well as for

services such as maintaining shareholder accounts. Here, the Complaint alleges that the revenue-

sharing amounts paid by MFS to Morgan Stanley also amounted up to 25 basis points. ¶¶ 63-64.

Moreover, this payment of 25 basis points does not consider Defendants' revenue sharing

agreements with various other brokerages that ended up costing investors even more. <u>See</u> ¶¶ 46,

56-75 (detailing additional revenue-sharing programs between MFS and Morgan Stanley,

Salomon Smith Barney, Wachovia Securities, Merrill Lynch and Chase Investment Services,

among others).

In conclusion, Defendants' assertion that Plaintiffs' case is merely a "follow-on action for

nondisclosure" and that that there are no excessive fee allegations is simply wrong. Def. Brf. at

12-13. Defendants attack the pleadings not because they fail to understand the basis for

Plaintiffs' claims (their highly detailed memorandum supporting their motion to dismiss

conclusively demonstrates their understanding of Plaintiffs' claims), but in order to prevent their

13

conduct from being examined on the merits. Plaintiffs' allegations are sufficient to sustain a §

36(b) claim. See, e.g., Wicks, 2005 U.S. Dist. LEXIS 4892, at *13.

### 2.    Defendants' Breach of Fiduciary Duties Fall Within § 36(b)

Moreover, Plaintiffs' claims are not limited to excessive fees and charges, but also

include Defendants' breach of fiduciary duty in connection with the fees they charged, which is

an independent violation of § 36(b).  For example, in Green v. Fund Asset Mgmt., L.P., 19 F.

Supp. 2d 227 (D.N.J. 1998), the court sustained a § 36(b) claim where plaintiffs did not allege

that the advisory fees were "excessive" or "disproportionate."  The court found that § 36(b) "is

not expressly limited to situations in which the advisory fees received by an investment adviser

were excessive, disproportionate or otherwise unreasonable." Id. at 234 (emphasis added).  Put

simply, "[t]he statute encompasses the receipt of fees by an investment adviser in violation of the

adviser's fiduciary duty." Id.

As repeatedly alleged in the Complaint, Defendants breached their fiduciary duty by both

providing the kickbacks to the brokers and by failing to adequately disclose these compensation

arrangements and resulting conflict of interests. ¶ 76.  The SEC, when discussing conflict of

interests arising from an investment adviser's receipt of benefits in exchange for directing

brokerage, stated "an investment adviser has a duty to disclose to clients all material information

which incline an investment adviser consciously or unconsciously to render advice which is not

disinterested." In the Matter of Marvin , et al., IAA Release No. 1841, September 30, 1999,

citing  SEC v. Capital Gains Research Bureau, Inc., 375 U.S. 180, 191-92 (1963); see also Green

v. Fund Asset Management, L.P., 286 F.3d 682, 686 (3d Cir. 2001).  Defendants' failure to

adequately inform investors about conflicts of interest involving compensation received by the

adviser is a breach of their fiduciary duty under § 36(b) and is one of the bases for Plaintiffs'

claims.

14

Section 36(b) also applies to the distribution fees charged by Defendants to shareholders. When examining whether a fee is excessive, the courts look at the relationship of the advisers' profit to the services rendered to investors, recognizing that § 36(b) was enacted by Congress to "ensure that investment advisers passed on to fund investors the Saving that they realized from these economies of scales." Migdal, 248 F. 3d at 327. The Second Circuit in Gartenberg noted that fall-out benefits to an adviser could result in advisory fees being unlawful where they are "so disproportionately large" as to label its negotiation a breach of fiduciary duty within the meaning of § 36(b). Id. at 932. Furthermore, the Second Circuit suggested unreasonable 12b-1 fees should be considered in determining whether the advisor's fees are excessive. Krinsk v. Fund Asset Mgmt. , Inc., 875 F.2d. 404, 410 (2d Cir. 1989).[12]

Additionally, advisory fees allocated to fund distribution practices, such as revenue sharing where the investment adviser and its affiliates claim to make payments from its own profits, are regulated under Rule 12b-1 and § 36(b). As the SEC explained, "Rule 12b-1 could apply . . . in certain cases in which the adviser makes distribution related payments out of its own resources….'if any allowance were made in the investment adviser's fee to provide money to finance distribution.'" Investment Company Institute- Rule 12b-1, 1998 SEC No-Act. Lexis 976, at * 16 (citing Payment of Asset-Based Sales Loads By Registered Open Ended Management Investment Companies, ICA release No. 16431) (emphasis added).

---

[12] Guidance regarding how 36(b) governs 12b-1 fees was provided by the SEC's rule release adopting 12b-1: "...careful scrutiny to any past, present or planned expenditures by the investment adviser for distribution, and determine on a basis of the facts of each particular case whether such expenditures constituted an indirect use of fund assets in violation of their fiduciary obligations under section 36 of the Act and in contravention of the rule." Bearing of Distribution Expenses by Mutual Funds, Investment Company Act Release No. 11414.

Here, the Complaint alleges a cause of action for this practice as well.  ¶¶ 157-164.

Accordingly, Plaintiffs' § 36(b) claim should be sustained for this additional reason.  Green, 19

F. Supp. 2d at 234.

### 3.    Defendants' Soft Dollar Practices Were Improper and Violated § 36(b)

The charging of improper or excessive soft dollars used as a kickback as alleged in the

Complaint is actionable under §36(b).  For example, in Wicks, the most recent decision on the

issue, this Court denied defendants' motion to dismiss plaintiffs' §36(b) claim arising from, inter

alia, the allegation that defendants "direct[ed] the payment of excessive commissions to

securities broker-dealers to execute trades for the Funds in exchange for 'soft dollars' (said to be

a form of kickback) that benefit the defendants and not the Funds."  Wicks, 2005 U.S. Dist.

LEXIS 4892, at *3.  Plaintiffs have made substantially similar allegations here and, accordingly,

Defendants' motion to dismiss those allegations should be denied.

Soft dollar payments are protected by a statutory safe harbor.  ¶ 109.  However, to fall

within the safe harbor, the payments must be determined in good faith to be "reasonable in

relation to the value of the brokerage and research services provided."  Id. (quoting 15 U.S.C.

§78bb(e)(1)).  As Plaintiffs have alleged,

> MFS Company's actions went far beyond what is permitted by the
> Section 28(e) safe harbor by routinely using "Soft Dollars" as
> excessive commissions to pay brokers to push unwitting clients
> into MFS Funds.

¶ 112.  Plaintiffs have thus alleged that the payments for "services" under MFS's soft-dollar

practices "went far beyond" the safe harbor because such payments were undisclosed kickbacks

rather than bona fide compensation for "research services."  Id.

### 4.    Defendants' Improper Use of Directed Brokerage Harmed Class Members

The Complaint reveals that Defendants paid kickbacks in a variety of forms, including, but not limited to directed brokerage and revenue-sharing.[13] Defendants do not contest Plaintiffs' allegations that the revenue-sharing payments were improper and harmed Plaintiffs. As such, Defendants' motion to dismiss this aspect of the § 36(b) claim must be denied.

With respect to directed brokerage only, Defendants argue that the directed brokerage it paid as a kickback to brokerages did not adversely affect shareholders, claiming that the SEC opined that Defendants' directed brokerage was made "subject to best execution." Def. Brf. at 2. Defendants' argument is misplaced for at least two main reasons. First, to the extent that MFS claims the directed brokerage was "subject to best execution" and, therefore the costs of such commissions paid on the directed brokerage was not any more than would have normally been paid on those trades, Defendants miss the point. The gravamen of the allegations in the Complaint is that MFS' directed brokerage trades should not have occurred in the first place and that any commissions paid with respect to said directed brokerage, regardless of whether it was "subject to best execution", should be returned to shareholders as the trades should have never occurred. This conduct is no different from a broker churning an account to generate commissions where, even though the commissions charged were the normal amount, the activity is wrongful, and the commissions are to be returned to the investor, as the trades should not have occurred in the first place. See Caiola v. Citibank, N.A., 295 F.3d 312, 324 (2d Cir. 2002);

---

[13] "Directed Brokerage" describes kickback payments made through the payments of commissions on promised portfolio trades. "Revenue-sharing" describes kickback payments though other means, including, but not limited to, payments of hard cash that comes out of the fees and expenses paid by shareholders.

Davis v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 906 F.2d 1206, 1218-19 (8th Cir. 1990).

Importantly, in its Cease-and-Desist Order against MFS, the SEC found that MFS had engaged

in such churning, as Defendants used directed brokerage in order to meet kickback quid pro quo

quotas agreed to with the brokerages, and not for legitimate investment purposes. Reese Decl.

Ex. A at ¶12 (finding that MFS "requested that Equity Trading increase trading to more quickly

satisfy a target commission with a certain broker-dealer."). (Emphasis added).

      Second, despite the fact that the directed brokerage never should have occurred in the

first place, Defendants are also wrong to argue that the commissions paid on the directed

brokerage meet the requirements of "best execution." Def. Brf. at 2. Despite Defendants'

misrepresentations to the contrary, the SEC Order does not state that the trades were actually

made at best execution, but rather the trades were "subject to best execution." See Reese Decl.

Ex. A at ¶ 8. There is a significant distinction between "best execution" and "subject to best

execution" and the Complaint states in  no uncertain terms that Defendants did not meet the

demands of best execution. ¶¶ 8, 11, 48-51. This is also evident from the fact that in its action

against the brokerage Morgan Stanley for accepting kickbacks from MFS, among other mutual

fund companies, the SEC found that the kickbacks paid to Morgan Stanley paid *more* than best

execution. Reese Decl. Ex. G at ¶ 2.

      Likewise, with respect to "soft dollar" payments that made up part of the directed

brokerage payments, the Complaint alleges that such payments were excessive and certainly did

not meet the requirements of "best execution." As stated in the Complaint, at the end of the

Class Period, Defendants announced they were stopping the practice of "soft dollar" payments.

¶11. As reported by the Wall Street Journal:

> *Aiming to show its seriousness about mutual-fund ethics,*
> *Massachusetts Financial Services Co. has stoopped paying*

*brokers in "soft dollars" — which essentially are inflated stock-trading commissions...*

¶ 11.

Another example of Defendants' failure to meet the strict requirements of "best execution" was Defendants' use of "step-out" agreements, whereby MFS paid amounts in excess of the trade costs that were then redirected to a broker who had no involvement in the trade. Reese Decl. Ex. A at ¶ 14(b) ("MFS selected a broker-dealer to execute the transaction and requested the executing broker to "step out" a portion of the trade, and, thus, a portion of the commission to another broker with whom MFS had a Strategic Alliance."); see also Reese Ex. G at ¶ 21 (SEC Order against Morgan Stanley) ("the trading desk retained one-third of the commission to cover its expenses, which the remaining two-thirds was to directed to Morgan Stanley").

As shown by Defendants use of "soft dollars", "step-outs" and other means, instead of charging only the amount necessary to execute the trade, i.e. "best execution", the commission rate MFS charged included an excessive amount that served as kickbacks to the brokerages. Therefore, the SEC's language noting the MFS trades were "subject to best execution" merely stands for the mundane proposition that advisers involved with these trades should be judged under the "best execution" standard, and in no way suggests that the trades were legitimate or that they met the "best execution" requirements. As alleged in the Complaint, "[t]he Investment Adviser Defendants went far beyond what is permitted by the Section 28(e) safe harbor by routinely using "Soft Dollars" as excessive commissions to pay brokers to push unwitting clients into the Funds." ¶¶ 102-108. These excessive commissions served as kickbacks to brokers and were charged to the Fund shareholders. ¶ 105. As such, these expenses were unnecessary for management of the Funds investments because the real purpose of such payments was to push