## V.  THE COMPLAINT PLEADS A CLAIM UNDER § 48(a) OF THE ICA

Section 48(a) imposes liability on control persons for violations of §§ 34(b), 36(a) and 36(b) of the ICA.  Defendants argue that there is no implied right of action under § 48(a).  Def. Brf. at 17.  Defendants fail to cite any legal support for their position and the case law clearly shows that a private right of action exists for §48(a).  See e.g. Jerozal v. Cash Reserve Mgmt., Inc., 1982 U.S. Dist. LEXIS 16566, at *19 (S.D.N.Y. 1982).  Consequently, Defendants' motion to dismiss the §48(a) claim must be denied.

Defendants also argue that allowing a claim for §48(a) would "impermissibly" expand the scope of persons liable under § 36(b).[32]  Defendants fail to cite any case law for this proposition.  Nor can they as § 48(a) is no different from § 15 of the Securities Act of 1933 that expands the scope of persons liable under section §11 of the Securities Act the same way that § 48(a) does for §36(b).  Courts have long recognized this as permissible.  See e.g. Shaw v. Digital Equip. Corp., 82 F.3d 1194, 1202 (1st Cir. 1996).

Defendants finally argue that there was no "procurement" of a violation of the ICA.  Def. Brf. at 18.[33]  Plaintiffs have adequately alleged that MFS caused the Distributor and the Investment Adviser Defendants to violate the ICA in contravention of §48(a) of that statute.  See,

---

[32] Notably, Defendants do not challenge that §48(a) imposes liability for those who caused others to violate §§ 34(b) and 36(a).

[33] Defendants' contention that Plaintiffs have not alleged that MFS "procured" violations of the ICA is a red herring because §48(a) does not require a talismanic invocation of the word "procure" for Plaintiffs to establish a violation of the statute.  Indeed, as Defendants concede, the word "procurement" does not actually appear in the body of the statute, which instead makes it unlawful "to cause" a defendant to engage in certain conduct.  15 U.S.C. §80a-47(a).

e.g., ¶¶ 166, 168. Courts have consistently held that such allegations are sufficient to establish violations of §48(a).[34]

## VI.    PLAINTIFFS HAVE STATED A VIABLE CLAIM UNDER § 215 OF THE IAA

### A.    Compliance With the Demand Requirement of Rule 23.1 Should Be Excused as Futile

Defendants contend that Plaintiffs' derivative claim should be dismissed because the Complaint does not satisfy Fed. R. Civ. P. 23.1 ("Rule 23.1"). Def. Brf. at 19. Generally, "a plaintiff 'must establish that … all available means to obtain relief through the corporation itself are exhausted by making demand on the corporation's board of directors to prosecute the litigation." Harhen v. Brown, 730 N.E.2d 859, 765 (Mass. 2000) (quoting Bartlett v. New York, N.H. & H.R. Co., 109 N.E. 452 (Mass 1915)). Under Massachusetts law,[35] courts will dispense with the demand requirement "provided it appears by appropriate allegations that [demand] would have been an idle ceremony." Bartlett, 109 N.E. at 454.[36] The status of a majority of the

---

[34] Strougo, 964 F. Supp. at 806 (allegations "that the purportedly 'independent' directors of the Fund were in fact controlled by the Scudder Defendants, who 'caused' the independent directors to approve the Rights Offering" were sufficient to establish a § 48(a) violation); sIn re ML-Lee Acquisition, 848 F. Supp. at 545 (allegations "that the transactions at issue in the Complaint were undertaken illegally between 'affiliated' entities and that the alleged controlling Defendants caused those actions to be taken" were sufficient to establish a §48(a) claim); Dowling v. Narragansett Capital Corp., 735 F. Supp. 1105, 1110, 1123 (D.R.I. 1990).

[35] Defendants agree that the law of the State of Massachusetts, which is the state of incorporation of the MFS Funds, governs demand futility in this case. Def. Brf. at 19; Cf. Kamen v. Kemper Fin. Servs., Inc., 500 U.S. 90, 108-109 (1991) ("a court that is entertaining a derivative action under [the IAA] must apply the demand futility exception as it is defined by the law of the State of incorporation"). Both Fed. R. Civ. P. 23.1 and Mass. R. Civ. P. 23.1 (individually and together, "Rule 23.1") codify the demand requirement and its exception, excusing plaintiffs from making an initial demand if they "allege with particularity …the reasons…for not making the effort."

[36] The recently enacted Massachusetts Universal Demand Statute, Mass. Gen. Laws ch.156D, § 7.42 (enacted on July 1, 2004), does not apply because the statute is not retroactive and Plaintiffs' initial complaint was filed before the statute was passed. Def. Brf. at 19, n. 16.

board as either "interested" or "disinterested" is the determining factor in a Massachusetts demand futility case. Harhen, 730 N.E.2d at 864. Therefore, while Plaintiffs have not made any demand on the Boards of Trustees of the MFS Funds to institute a derivative action under §215 of the IAA, the Court must nonetheless allow their claim to go forward as the Complaint alleges sufficient facts to show why demand should be excused as futile. See ¶¶ 44-45, 88-96, 134-42.[37]

1.    **Under The Massachusetts Statute Applicable To Investment Companies, A Majority Of The MFS Funds Board Is Interested**

Massachusetts law looks to the ICA to determine whether an investment company trustee should be deemed independent or interested when making any determination or taking any action as a trustee. Mass. Gen. Laws ch. 182, §2B (2005); see also ING Principal Prot. Funds Deriv. Litig., 2005 U.S. Dist. LEXIS 8606, at *21 (D. Mass. May 9, 2005). Yet contrary to Defendants' claim, the Complaint establishes that a majority of the Trustees of the MFS Funds must be deemed "interested persons" under the ICA at the time the Action was originally filed.

According to the MFS Funds' 2003 Annual Report, two of the 12 Trustees sitting on the Boards of the MFS Funds at the time the original complaint was filed on March 25, 2004 must be considered "interested persons" within the meaning of the ICA as they simultaneously served as officers of MFS Company.[38] However, the ICA's definition of "interested person" also includes "any person directly or indirectly controlling, controlled by, or under common control with, such other person." 15 U.S.C. §§ 80a-2(a)(3)(C), (19)(A)(i). The specific facts alleged in

---

[37] For the same reasons discussed herein, Plaintiffs satisfy Rule 23.1's demand requirements by adequately pleading that demand should be excused as futile. See Def. Brf. at 27.

[38] The particular annual report referenced herein is for the MFS Research Series and dated December 31, 2003 (the "2003 Annual Report"), and states that each trustee serves as a board member of the other funds within the MFS Family of Funds. All information concerning the Board of Trustees is materially and substantially similar in each and every MFS Fund's Annual Report released at or around the same date.

the Complaint show that each of the Trustee Defendants sitting on the Boards of the MFS Funds at the time the original complaint was filed must be considered "interested persons" because each of them were captive to and controlled by the Investment Adviser Defendant who recruited and overpaid Trustee Defendants for their services as part of an illegal agreement to misappropriate fund assets. ¶¶ 91, 135.

The Complaint specifically charges that "[t]he MFS Funds have no independent will and are totally dominated by MFS Company." ¶ 44. In support of this contention, Plaintiffs allege that all MFS Funds share MFS Company as their investment adviser and share MFS Distributors as their principal underwriter and distributor. ¶ 45. Moreover, all Funds share a common body of Trustees established by MFS Company, including several key Fund trustees recruited from MFS Company's own ranks, and are managed and administered by a common body of officers and employees of MFS Company. ¶¶ 44, 93. And, although shareholders technically have a right to vote out Trustees, the Trustees know that this is extremely unlikely if the Investment Adviser supports the Trustees. ¶ 135. The Funds even share expenses with each other by pooling fees and expenses collected from the MFS Funds' investors, so that "in substance, the MFS Funds function as components of one unitary organization." ¶¶ 44-45. From the standpoint of the Trustee Defendants, the MFS Funds did not exist as separate entities from MFS Company. The Court can infer from the close-knit structure of the MFS organization described in the Complaint and herein summarized, that even the supposed "independent" members of the Boards felt they owed their duties of loyalty to MFS Company (and its shareholders) rather than to the investors of the MFS Funds.

Each Trustee Defendant benefited directly from the wrongdoing in order to preserve his/her lucrative position as a Trustee. The Complaint alleges that each of the Trustee

Defendants were paid large sums of money and served for indefinite terms at the pleasure of the Investment Adviser Defendant. ¶¶ 91, 140. The Trustee Defendants were also self-interested in the improper kickbacks paid to brokers who steered their clients' assets into the MFS Funds in order to increase the assets in the Funds, thereby decreasing the likelihood that the mutual fund would be disbanded or merged and that the Trustee Defendants thus could maintain their positions and compensation for sitting on the Fund's board. ¶ 139.

Additionally, the Complaint alleges that, due to their lack of independence from MFS Company, each Trustee Defendant knowingly participated in, approved, and/or recklessly disregarded the wrongs complained of in the Complaint. ¶¶ 136-37. In particular, extensive red flags were ignored for over five years by the Trustee Defendants. For example, the Complaint alleges that the Trustee Defendants disregarded their statutory and fiduciary duties to manage and supervise the MFS Funds by rubber-stamping all significant agreements with MFS Company and allowing MFS Company to skim millions of dollars from the MFS Funds shareholders' assets. ¶¶ 89-96, 138. This course of conduct supports Plaintiffs' contention that the Trustee Defendants acted in the interest of MFS Company rather than in the best interest of the MFS Funds' investors.

The Trustee Defendants, who must be considered "interested persons" under the ICA as they were controlled by and beholden to the Investment Adviser Defendant, comprise at least eight of the 12 Trustees serving on the Board at the time the original complaint was filed (and two other Trustees must be treated as "interested persons" as they were simultaneously serving as officers of MFS Company). Therefore, the Court can deem a majority of the MFS Funds' Trustees to be "interested" under the ICA, and excuse demand in this case as futile.

## 2.    Demand Is Futile Under Massachusetts Common Law

Plaintiffs also meet ordinary Massachusetts demand futility standards.  In order to determine whether a director is "interested," the Supreme Judicial Court of Massachusetts adopted the definition stated in the ALI Principles of Corporate Governance.  Harhen, 730 N.E.2d at 865.  Relevant to this case is the following definition of the term by the ALI:

> (a) A director…is "interested" in a transaction or conduct if…
>
> (4) The director…is subject to a controlling influence by a party to the transaction or conduct or a person who has a material pecuniary interest in the transaction or conduct, and that controlling influence could reasonably be expected to affect the director's… judgment with respect to the transaction or conduct in a manner adverse to the corporation.

Id. at 865 n.5 (quoting the ALI Principles of Corporate Governance: Analysis and Recommendations § 1.23 (1994) (the "ALI Principles")).

As the analysis above shows, all Trustee Defendants would likewise be considered "interested" under the ALI Principles.  See ¶¶ 44-45, 86-96, 134-42.  Plaintiffs adequately allege that as a majority of the Trustees had significant pecuniary interests in the challenged transactions, the Board could not reasonably be expected to "exercis[e] its power and authority to pursue the derivative claims directly."  White v. Panic, 783 A.2d 543, 551 (Del. 2001); ¶¶ 139-141.  Plaintiffs also adequately allege that the Trustee Defendants were controlled by and beholden to the Investment Adviser Defendant so that a majority of the Boards could not have independently and disinterestedly considered whether to bring this claim.  ¶¶ 44-45, 91-96, 135-38.

In considering a motion to dismiss, the Court must also take all facts alleged in a well-pled complaint as true and make all reasonable inferences in favor of Plaintiff.  Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993).  Defendants attempt to defeat Plaintiffs' demand futility

allegations by treating each allegation in isolation, but this is not the law. Rather, the Court must consider the Complaint as a whole when deciding demand futility. Even if no single allegation would suffice on its own to raise a reasonable doubt about director independence, when taken together, Plaintiffs' allegations show that the Trustees participated in the wrongdoing or were otherwise interested. See CALPERS v. Coulter, 2002 Del Ch. LEXIS 144, at *29 (Del. Ch. May 28, 2002).

In light of Plaintiffs' well-pled allegations concerning demand futility, the Court should permit their derivative claims against MFS Company to go forward.

**B.    The Complaint Adequately Alleges a Violation of the IAA**

The primary purpose of the IAA is to protect mutual fund investors against those "who may give [investors] biased advice or misuse their funds or securities." S. Rep. No. 1760, 86th Cong., 2nd Sess. 4 (1960). The Supreme Court has held that the IAA reflects a "congressional intent to eliminate, or at least to expose, all conflicts of interest which might incline an investment adviser – consciously or unconsciously – to render advice which was not disinterested." SEC v. Capital Gains Research Bureau, Inc., 375 U.S. 180, 191-92 (1963). Specifically, § 206 establishes federal fiduciary standards governing the conduct of investment advisors in order to benefit investors by proscribing certain conduct. 15 U.S.C. §§ 80b-6 (2004); Transamerica Mortg. Advisors, Inc. (TAMA) v. Lewis, 444 U.S. 11, 19 (1979).

**1.    Section 215 Applies To Advisory Contracts That Violate § 206 Of The IAA**

Defendants mistakenly assert that the applicability of § 215 depends on an allegation that the advisory contracts by their terms violate the IAA. Def. Brf. at 26-28. In fact, the only cases Defendants cite to support their contention construe § 29(b) of the Securities Exchange Act of 1934 (the "1934 Act") and not § 215 of the IAA. However, Defendants cannot and do not cite a

single case that draws a direct nexus between § 29(b) of the 1934 Act and Plaintiff's IAA claims because no federal court has ever dismissed IAA claims on that basis.  To the contrary, federal courts, including those in the First Circuit, routinely permit § 215 claims seeking to void investment advisory contracts for § 206 violations to move forward so long as plaintiffs can establish a violation of § 206 regardless of whether the contracts at issue <u>could</u> be performed without violating the federal securities laws.  E.g. <u>Margaret Hall Found. v. Atl. Fin. Mgmt.</u>, 572 F.Supp. 1475, 1485 (D. Mass. 1983) ("That the Section 215 claim is triggered by a Section 206 violation does not convert it into a Section 206 claim); <u>Norman</u>, 350 F. Supp. 2d at 391-92 (denying defendant's motion to dismiss plaintiff's IAA claim, which rested on defendant's breach of its fiduciary duties under the IAA); <u>Bogart V. Shearson Lehman Bros.</u>, 1993 U.S. Dist. LEXIS 1182, at *6-7 (S.D.N.Y. Feb. 3, 1993) ("Plaintiff correctly notes that the Supreme Court in [<u>TAMA</u>] recognized a private right of action…if they are void under Section . . . 215 for violating a provision of the IAA, including [§ 206], which plaintiff alleges was violated here.") (internal citations omitted); <u>Wellington Int'l Commerce Corp. v. Retelny</u>, 727 F. Supp. 843, 845 (S.D.N.Y. 1989) ("any contract which violates section 206 is void under section 215").

Although the language of § 29(b) and § 215(b) is similar in that the fundamental purpose of both the 1934 Act and the IAA is to "substitute a philosophy of full disclosure for the philosophy of caveat emptor," <u>Capital Gains</u>, 375 U.S. at 186, the two Acts have distinctly dissimilar characteristics.  The IAA "attempts to preserve the 'personalized character of the services of investment advisers,' and to eliminate conflicts of interest between the investment adviser and the clients as safeguards both to 'unsophisticated investors' and to 'bona fide investment counsel.'" <u>Scachitti v. Prudential Sec., Inc.</u>, 1999 U.S. Dist. LEXIS 19391, at *26 (D. Ill. Dec. 10, 1999) (quoting <u>Capital Gains</u>, 375 U.S. at 191-192); <u>accord</u> <u>Norman</u>, 350 F.

Supp. 2d at 391. Unlike Rule 10-b of the 1934 Act, "§ 206(2) is more than an anti-fraud provision because it establishes fiduciary duties for investment advisers." Morris v. Wachovia Sec., Inc., 277 F. Supp. 2d 622, 644 (D. Va., 2003); Norman, 350 F. Supp. 2d at 391. ("The IAA does prohibit fraud and deceit in investment adviser dealings with client, but it is not simply an anti-fraud measure like section 10(b)"). As such, the private remedies under § 215 are triggered without requiring proof of scienter "where an investor brings suit on the investment adviser's allegedly improper conduct (or vice versa) pursuant to a contract for services, and seeks a remedy consistent with a determination that the contract is void." Norman, 350 F. Supp. 2d at 388.

Even if the Court were to consider Defendants' overreaching argument that § 215 is inoperable absent an allegation that the relevant contract itself is illegal or cannot be performed without violating the federal securities laws, Plaintiffs have adequately pled that the advisory contracts at issue cannot be performed by MFS Company without violating § 206. The Complaint details how the advisory contracts at issue constituted part of MFS Company's overall scheme and, therefore, the contracts, by their terms, violate the federal securities laws. ¶¶ 46-113. MFS Company's violations of §§ 206(1) and 206(2) in its performance of the advisory contracts entitles Plaintiffs, on behalf of the MFS Funds, to assert a claim under § 215 for any and all remedies that are "the customary legal incidents of voidness," including the equitable remedy of restitution of consideration paid under the investment advisory contracts if they are void under § 215. TAMA, 444 U.S. at 19.

### 2. Section 215 of the IAA Allows for Restitution and Rescission of the Advisory Contract

While no private right of action exists under § 206, a party to an investment advisory contract does possess the limited private right to have that contract voided under § 215 if the

formation or performance of the contract violates the IAA.  15 U.S.C. §§ 80b-15; TAMA, 444

U.S. at 24.  Plaintiffs agree with Defendants that there is no private right of action for damages

under the IAA.  However, the Supreme Court expressly permits private litigants to seek the

remedies of injunction, rescission, and restitution of any contract which violates the IAA through

its formation or performance.  TAMA, 444 U.S. at 19.  A plain reading of Count V of the

Complaint shows that the sole remedy sought by Plaintiffs, who bring this claim on behalf of the

MFS Funds, is "to rescind the Funds' investment advisory contracts with the Investment Adviser

Defendant and recover all fees paid in connection with such agreements." ¶ 178.

## VII.   THE COMPLAINT ADEQUATELY PLEADS STATE LAW CLAIMS FOR BREACH OF FIDUCIARY DUTY, AIDING AND ABETTING A BREACH OF FIDUCIARY DUTY AND UNJUST ENRICHMENT

### A.   Plaintiffs' State Law Claims Are Properly Brought as Direct Claims

Defendants do not contest that the fees and expenses charged to shareholders that were

used to finance the kickback scheme harmed investors.  Instead, Defendants claim that, under

Massachusetts law, Plaintiffs' state law claims are still, somehow, derivative in nature and,

therefore must be dismissed.  As demonstrated below, Defendants are wrong.[39]

---

[39] Notably, Defendants do not contest that Plaintiffs' §§ 34(b), 36(a), 36(b) or 48(a) claims are properly brought as direct, class claims.  Nor can they, as those claims are also direct in nature. This is because mutual fund companies such as the MFS Funds are very different from traditional corporations in that the fund "is a pool of assets, consisting primarily of portfolio securities, and belonging to the individual investors holding shares in the fund." Burks, 441 U.S. at 480, 99 S. Ct. at 1838 (citation omitted).  A mutual fund investment also differs from investing in a traditional corporation because:

> [a] mutual fund share represents a fractional ownership in a large
> investment account.  It is, in essence, a service contract between
> the investor and the investment company whereby the investor
> places his money in the hands of the investment company in
> expectation of realizing a financial gain.

Continued on next page

Under Massachusetts law, "[w]hat differentiates a direct from a derivative suit is ... the source of the claim of right itself. . . . If the right flows from the breach of a duty owed directly to the plaintiff independent of the plaintiff's status as a shareholder, investor, or creditor of the corporation, the suit is direct." Blasberg v. Oxbow Power Corp., 934 F. Supp. 21, 26 (D. Mass. 1996). Here, Defendants owe directly to the shareholders the fiduciary duty to disclose all material information regarding fund management and have a duty to protect the interests of shareholders. See, e.g., SEC v. Steadman, 798 F. Supp. 733, 744 (D.D.C. 1991) (noting that there is a fiduciary duty owed the Funds' shareholders in protecting them from material misrepresentations and omissions in the Funds prospectuses); Gartenberg v. Merrill Lynch Asset Management, Inc., 528 F. Supp. 1038 (S.D.N.Y., 1981) (explaining that a duty of full disclosure is owed to the shareholders of the fund). Plaintiffs were fraudulently induced through material omissions to hold their investments and pay excessive fees and expenses that financed the kickback scheme detailed in the Complaint. Such a claim is direct under Massachusetts law. See Blasberg, 934 F. Supp. at 26 ("[I]f a plaintiff alleges that she, as an individual investor, was misled or defrauded in the purchase of her investment, this kind of claim is a 'direct' one.") In addition, Plaintiffs allege they were personally and directly injured by the wrongful charges.

Here, there can be little doubt that Defendants' failure to disclose material information to the shareholders of the MFS Funds, while in a fiduciary relationship with them, is cognizable as a direct action, not a derivative one. Indeed, the fiduciary duty of candor is well-recognized, and direct actions for breach of that duty are routinely brought (usually as putative class actions) by shareholders against corporate directors.[40]

---

Baum v. Investors Diversified Servs., Inc., 409 F.2d 872, 874 (7th Cir. 1969).

[40] See, e.g., Malone v. Brincat, 722 A.2d 5, 12 (Del. 1998).

In addition, the class members have sustained direct and distinct injury from Defendants' wrongful utilization of shareholder and Fund assets to effectuate their kickback scheme. The rates paid by the classes are different and, therefore, the individual stockholders falling within each class of fund shares are directly, rather than indirectly, impacted by such payments. For example, MFS's own Prospectuses and accompanying Statements of Additional Information confirm that Defendants' wrongful 12b-1 payments were not assessed uniformly against Fund shareholders. As stated in the MFS Investor Trust's Prospectus the "Total Annual Fund Operating Expenses" differ for class members stating that that the fees and expenses for each shareholder – the very fees and expenses challenged in the Complaint -are as follows: 0.92% (A shares), 1.57% (B shares), 1.57% (C shares); and 1.07% (R shares). Id.

Moreover, a direct action is necessary because a derivative action would not fully redress the harms Defendants caused. Although in certain instances the fees may have in some manner increased fund assets, at the same time they injured the individual shareholders, who bore the cost of the fees but received no benefit in return. For this reason, only a direct action will fully vindicate the shareholders' rights. See Strougo, 282 F.3d at 175. Furthermore, as the Class Period ended on March 31, 2004, numerous members of the proposed Class who paid the excessive fees and expenses no longer hold their shares of the Shelf Space Funds and would not be protected if the Court required this case to proceed as a derivative action.[41] Only a direct action would cover these Class members.

---

[41] Indeed, if as Defendants argue, these claims are properly derivative claims, then the recovery would go solely to the Funds, which would create a windfall for whomever happens to own fund shares at the time of recovery and would deprive those who were fund shareholders during the wrongdoing – i.e., those who were actually harmed – of any remedy for the harm they suffered. See, e.g., Tooley v. Donaldson, Lifkin & Jenrette, Inc., 845 A.2d at 1033 (Del. 2004) (stating that to decide whether action is properly direct or derivative, the court should consider who will

Continued on next page

**B.    Plaintiffs' State Law Claims Are Not Preempted by SLUSA**

Defendants argue that Plaintiffs' state law claims are preempted by the SLUSA. Def. Brf. at 31. Defendants are wrong. SLUSA is not applicable to Plaintiffs' state law claims, which do not involve misrepresentations and are brought on behalf of a class of ***holders*** of MFS Funds. SLUSA only preempts claims that would otherwise be brought under the Securities Exchange Act of 1934 or the Securities Act of 1933. Plaintiffs' claims are based solely on fees paid because of their holder status—no purchases or sales are alleged. The method in which Plaintiffs acquired the Funds is irrelevant to their claims.

Notably, in a case against the Lord Abbett investment adviser for its involvement in a similar mutual fund kickback scheme, the court rejected the arguments raised here, holding that "Defendants have not identified (nor has the Court discovered any) authority to support Defendants' assertion that Plaintiffs' state law claims are preempted by SLUSA." See Reese Decl. Ex. M (In re Lord Abbett Mutual Funds Fee Litigation, 04cv0559 (D.N.J. 2004). As in Lord Abbett, no grounds for SLUSA preemption exists here either. This is because SLUSA only preempts claims involving the "purchase or sale" of a security and "SLUSA does not preempt claims that ***do not allege purchases or sales made by the plaintiff or the alleged class members.***" Dabit v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 395 F.3d 25, 28 (2d Cir. 2005).[42] Here, the Complaint pointedly and precisely limits the definition of the Class to: "all

_____

receive the benefit of remedy, the corporation or the individual stockholders).

[42] This only makes sense as claims made in connection with the holding of a security lack standing under the federal securities laws. See Blue Chip Stamps v. _____, 421 U.S. at 748 (standing for §10(b) of the Exchange Act is limited to purchasers and not non-sellers or holders); Dabit, 395 F.3d at 43 ("[W]e hold that in enacting SLUSA Congress sought only to

Continued on next page

persons or entities who held one or more shares of MFS mutual funds, set forth in Exhibit A [to

the Complaint], during the period March 24, 1999 to March 31, 2004." ¶ 2.  Therefore,

Plaintiffs' claims are based on their <u>holder</u> status and SLUSA is inapplicable.

Furthermore, the plain language of SLUSA makes it clear it was not intended to preempt

all claims in which a security was involved and subject them to the strictures of the PSLRA.

<u>See</u>, <u>e.g.</u>, <u>Spielman v. Merrill Lynch, Pierce, Fenner & Smith, Inc.</u>, 332 F.3d 116, 124 (2d Cir.

2003) ("SLUSA does not, however, preclude all state enforcement or private causes of action in

securities fraud cases."); <u>Green v. Ameritrade, Inc.</u>, 279 F.3d 590, 598 (8th Cir. 2002)

("Ameritrade argues that we must interpret the 'in connection with' requirement flexibly, but we

cannot ignore the plain language of the statute and the cases applying that language, both in the

context of SLUSA and as interpreted in Rule 10b-5 and §10(b) cases.").  Accordingly, courts

have held where, in cases such as the instant one, the plaintiff class framed its claims on behalf

of the holders of securities, SLUSA does not preempt Plaintiffs' claims.  <u>See</u> <u>Feitelberg v. Credit</u>

<u>Suisse First Boston LLC</u>, 2003 U.S. Dist. LEXIS 19116, at *15-16 (N.D. Cal. Oct. 21, 2003)

("Plaintiff expressly limits the class to individuals who held shares during the class period, and

therefore we cannot find that this claim arises 'in connection with' the purchase or sale of a

covered security.").

Running counter to the weight of these authorities, Defendants now seek to expand the

explicit reach of SLUSA to include not only purchases or sales of a covered security (which

implicate the federal securities laws), but also claims involving only holding securities (which do

not implicate the federal securities laws).  Such an expansion is unwarranted and unsupportable,

---

ensure that class actions brought by plaintiffs who satisfy the Blue Chip Stamps v. Manor Drug
Stores, 421 U.S. 723 (1975) purchaser-seller rule are subject to the federal securities laws").

as the claims here on behalf of holders of securities could not have been brought under §10(b) of the Exchange Act and do not invoke the policy concerns which prompted the passage of SLUSA. This is consistent with the rationale of <u>Blue Chip Stamps</u>, in which the Supreme Court held that limiting §10(b) claims to purchasers and sellers would be mitigated "to the extent that remedies are available to non-purchasers and non-sellers under state law." <u>Blue Chip Stamps</u>, 421 U.S. at 739; <u>see also</u> <u>Roskind v. Morgan Stanley Dean Witter & Co.</u>, 80 Cal. App. 4th 345, 352 (1st Dist. 2000) ("The Securities Exchange Act of 1934 ... makes it clear that, except to the extent it has been subsequently modified by [SLUSA], federal law in this [securities trading] arena supplements, but does not displace state regulation and remedies.").

Simply put, SLUSA only preempts claims of fraud in connection with the purchase or sale of a covered security. Since Plaintiffs have not raised claims "in connection with the purchase or sale" of a covered security, their claims are not susceptible to SLUSA preemption.

**C.    Plaintiffs Have Properly Pled A Breach Of Fiduciary Duty**

Defendants' argue that Plaintiffs fail to state a claim because they do not show that there was any relationship between the Plaintiffs and the Investment Adviser or Trustee Defendants. Def. Brf. at 32. Defendants' argument is baseless. The Complaint makes clear that the Investment Adviser and Trustee Defendants had a fiduciary duty to the Plaintiffs and other members of the Class to act with the highest obligations of good faith, loyalty, fair dealing, due care and candor. ¶ 181. Furthermore, the Complaint clearly alleges that the Investment Adviser and Trustee Defendants breached their fiduciary duty by, <u>inter alia</u>, directing shareholders' assets to particular brokers for trading regardless of cost, and failing to disclose that it was paying brokers excessive fees to generate sales of MFS Funds under the guise of investment adviser fees, 12b-1 fees, and Soft Dollars. ¶¶ 48, 97-113.

Defendants mistakenly argue, without support, that the Investment Adviser Defendant owed no fiduciary duties to the shareholders. Def. Brf. at 32-33. Indeed, Congress codified such a fiduciary duty in § 36(b) of the ICA. See Gartenberg, 528 F. Supp. at 1047 ("The conduct of the investment adviser must be governed by the 'duty of uncompromising fidelity' and 'undivided loyalty' to the Fund's shareholders that is imposed by Section 36(b)"). Furthermore, in the mutual fund context, the law holds, stating with no uncertainty that "[t]he vulnerability of mutual fund shareholders to unscrupulous advisers prompted Congress to enact Section 20 of the Investment Company Act of 1970 *imposing a fiduciary duty* on the investment adviser with respect to its receipt of compensation for services rendered." Galfand v. Chestnutt Corp., 545 F.2d 807, 809 (2d Cir. 1976) (upholding trial court's judgment that investment adviser had breached its fiduciary duty to investors and had made material misstatements and omissions").

With respect to a breach of fiduciary duty by the Trustee Defendants, the SEC has made clear that:

> The board of directors of a mutual fund has significant responsibility to protect investors. By law, directors generally are responsible for the oversight of all of the operations of a mutual fund. In addition, under the Investment Company Act, directors are assigned key responsibilities, such as negotiating and evaluating the reasonableness of advisory and other fees, selecting the fund's independent accountants, valuing certain securities held by the fund, and managing certain operational conflicts.

> The role of fund directors is particularly critical in the mutual fund context because almost all funds are organized and operated by external money-management firms, thereby creating inherent conflicts of interest and potential for abuse. Money-management firms operating mutual funds want to maximize their profits through fees provided by the funds, but the fees, of course, paid to these firms, reduce the returns to fund investors.

> Independent directors, in particular, should serve as "independent watchdogs" guarding investors' interests — and helping to protect fund assets from uses that will be of primary benefit to management companies. These interests must be paramount, for it is the investors who own the funds and for whose sole benefit

they must be operated.

¶ 86. [43] Consequently, the Trustee Defendants also had a duty to shareholders, which, as stated

in the Complaint, they violated. ¶¶ 86-96; 185-189.

### D.    Plaintiffs Have Stated a Claim for Aiding and Abetting Breach of Fiduciary Duty

Under Massachusetts law, " [t]he tort of aiding-abetting requires an underlying tort,

defendant's awareness of the illegal act, and substantial assistance in committing the illegal act."

Def. Brf. at 34 citing Demoulas v. Demoulas Super Mkts., Inc., 1993 WL 818844, (Mass.

Super. Ct. Nov. 29, 1993). Plaintiffs have adequately pleaded these elements here.

The Complaint alleges that Defendants aided and abetted the brokers to breach their

duties by paying them kickbacks. Specifically, according to the Complaint, the brokers breached

their fiduciary duty through the improper use of excessive fees and directed brokerage which

"created an undisclosed conflict of interest and caused brokers to steer clients to MFS Funds

regardless of the funds' investment quality relative to other investment alternatives and to

---

[43] Defendants' cases are inapposite to the facts presented in the Complaint. Def. Brf. at 32-33. Defendants misinterpret Jernberg v. Mann, 358 F.3d 131, 135 (1st Cir. 2004) to argue that Trustees only owe a fiduciary duty to the Funds. Def. Brf. at 33. However, the Jernberg court explains that "[w]hile it is sometimes said that directors and officers owe a fiduciary duty to the corporation and its shareholders, any responsibility to the latter is anchored in the duty to the former...their fiduciary obligations arise from and are bounded by the corporate relationship." Id. Likewise, in Industrial General Corp. v. Sequoia Pacific Systems Corp., 44 F.3d. 40, 44 (1st Cir. 1995), the court found that there was not a sufficient managerial role between the parties to create a fiduciary relationship. Here, the Investment Adviser and Trustee Defendants had significant management control over Plaintiffs' assets. In Zurich Capital Markets, Inc. v. Coglianese, 332 F. Supp. 2d 1087, 1121 (N.D. Ill. 2004), the court found that plaintiffs did not plead that they were third party beneficiaries or could bring a derivative claim under the IAA. Here, Plaintiffs have adequately plead a viable derivative claim under the IAA. In McLachlan v. Simon, 31 F. Supp. 2d 731, 740-41 (N.D. Cal. 1998), the court concluded that an adviser would have a fiduciary duty to shareholders, but the plaintiffs had not proven that the defendant was an adviser. Id. at 738-40. Finally, in Stuchen v. Duty Free Int'l, Inc., 1996 WL 33167249, is not applicable because it is applying Delaware law to state claims.

thereby breach their duties of loyalty" to the their clients. ¶ 106. Plaintiffs have adequately

alleged that the brokers owed their clients fiduciary duties, and the Complaint thoroughly makes

clear that Defendants' conduct not only aided and abetted the brokers' breach of fiduciary duty,

but was absolutely necessary for the brokers' breach. See e.g United States v. Szur, 289 F.3d

200, 211 (2d Cir. 2002) (Even where a broker lacks discretionary investment authority, "a

relationship of trust and confidence [exists] between a broker and a customer with respect to

those matters that have been entrusted to the broker.").

     Finally, Defendants' argument that Plaintiffs have failed to allege that Defendant knew of

the kickback scheme.  This argument  is belied by both the Complaint and the findings by the

SEC that Defendants had knowledge of such kickback scheme.  ¶¶ 2-13; 46-77; Reese Decl. Ex.

A.

### E.    Plaintiffs' Have Stated a Claim for Unjust Enrichment

     Plaintiffs have satisfied the pleading requirement of unjust enrichment under

Massachusetts law.  In analyzing claims of unjust enrichment, Massachusetts courts look to see if

there was: "1)  A benefit conferred upon the defendant by the plaintiff, 2) an appreciation or

knowledge by the defendant of the benefit; and 3) the acceptance or retention by the defendant of

the benefit under such circumstances as to make it inequitable . . . for the defendant to retain the

benefit without the payment of its value." Hessleton v. Banknorth, N.A., 18 Mass. L. Rep. 7, 8

(May 11, 2004).

     Plaintiffs allege that they suffered injury due to the fraudulent and excessive fees

imposed on them by Defendants.  ¶¶ 76-81.  Defendants used these fees to receive a benefit of

increased fees for themselves as a result of the larger funds.  ¶ 4.  It would be inequitable for

Defendants to retain this benefit.  Defendants' argument that an equitable remedy is unavailable

here is wrong.  Defendants mischaracterize the claim as being contract based, but the claim is

based on unjust enrichment that arose from Defendants' tortious breach of fiduciary duty.

However, even if this claim was based on a breach of contract that caused unjust enrichment, a

claim can be brought for both.  Lopes v. Commonwealth, 442 Mass. 170, 179 (July 9, 2004).

Therefore, Defendants' motion to dismiss Plaintiffs' claim for unjust enrichment should be

denied.

## CONCLUSION

For the foregoing reasons, the Complaint should be sustained in its entirety.[44]

Dated:   May 25, 2005                              Respectfully submitted,

                                                  **MOULTON & GANS, P.C.**

                                                  By:    /s/ Nancy Freeman Gans
                                                       Nancy Freeman Gans (BBO #184540)
                                                  33 Broad Street, Suite 1100
                                                  Boston, Massachusetts  02109-4216
                                                  (617) 369-7979

                                                  **Counsel for Plaintiffs and Proposed Liaison
                                                  Counsel**

                                                  **MILBERG WEISS BERSHAD
                                                    & SCHULMAN LLP**
                                                  Jerome M. Congress
                                                  Janine L. Pollack
                                                  Michael R. Reese
                                                  One Pennsylvania Plaza
                                                  New York, New York  10119-0165
                                                  (212) 594-5300

                                                  **Counsel for Plaintiffs and Proposed Co-Lead
                                                  Counsel**

---

[44] In the event that all or any portion of Plaintiffs' Complaint is dismissed, Plaintiffs respectfully request leave to replead pursuant to Fed. R. Civ. P. 15(a).

**BERNSTEIN LITOWITZ BERGER
    & GROSSMANN LLP**
Alan Schulman
Robert S. Gans
Jerald D. Bien-Willner
12544 High Bluff Drive, Suite 150
San Diego, California 92130
(858) 793-0070

**Counsel for Plaintiffs and Proposed Co-Lead
Counsel**

**WEISS & LURIE**
Joseph H. Weiss
Richard Acocelli
551 Fifth Avenue, Suite 1600
New York, New York  10176
(212) 682-3025

**Counsel for Plaintiffs and Proposed Co-Lead
Counsel**

**LAW OFFICES OF CHARLES J. PIVEN, P.A.**
Charles J. Piven
Marshall N. Perkins
The World Trade Center – Baltimore
Suite 2525
401 East Pratt Street
Baltimore, Maryland  21202
(410) 332-0030

**STULL, STULL & BRODY**
Jules Brody
Aaron Brody
6 East 45th Street
New York, New York  10017
(212) 687-7230

**GILMAN AND PASTOR LLP**
David Pastor (BBO #391000)
Stonehill Corporate Center
999 Broadway, Suite 500
Saugus, Massachusetts  01906
(781) 231-7850

64

**Additional Plaintiffs' Counsel**

## CERTIFICATE OF SERVICE

I, Michael R. Reese, hereby certify that I served a copy of the foregoing document upon counsel for all parties by mailing a copy of the same, postage prepaid, to each attorney of record, this 25th day of May, 2005.

_____/s/ Michael R. Reese_____
Michael R. Reese