(ii) A person (other than a registered investment company) directly or indirectly controlling, controlled by, or under common control with an investment adviser or principal underwriter of the Fund:

| (1) | (2) | (3) | (4) | (5) | (6) |
|---|---|---|---|---|---|
| Name of Director | Name of Owners and Relationships to Director | Company | Title of Class | Value of Securities | Percent of Class |
| | | | | | |

*Instructions.*

1. Information should be provided as of the end of the most recently completed calendar year. Specify the valuation date by footnote or otherwise.

2. An individual is a "beneficial owner" of a security if he is a "beneficial owner" under either rule 13d-3 or rule 16a-1(a)(2) under the Exchange Act (17 CFR 240.13d-3 or 240.16a-1(a)(2)).

3. Identify the company in which the director or immediate family member of the director owns securities in column (3). When the company is a person directly or indirectly controlling, controlled by, or under common control with an investment adviser or principal underwriter, describe the company's relationship with the investment adviser or principal underwriter.

4. Provide the information required by columns (5) and (6) on an aggregate basis for each director and his immediate family members.

(6) Unless disclosed in response to paragraph (b)(5) of this Item 12, describe any direct or indirect interest, the value of which exceeds $60,000, of each director who is not an interested person of the Fund, or immediate family member of the director, during the two most recently completed calendar years, in:

(i) An investment adviser or principal underwriter of the Fund; or

(ii) A person (other than a registered investment company) directly or indirectly controlling, controlled by, or under common control with an investment adviser or principal underwriter of the Fund.

*Instructions.*

1. A director or immediate family member has an interest in a company if he is a party to a contract, arrangement, or understanding with respect to any securities of, or interest in, the company.

2. The interest of the director and the interests of his immediate family members should be aggregated in determining whether the value exceeds $60,000.

(7) Describe briefly any material interest, direct or indirect, of any director who is not an interested person of the Fund, or immediate family member of the director, in any transaction, or series of similar transactions, during the two most recently completed calendar years, in which the amount involved exceeds $60,000 and to which any of the following persons was a party:

(i) The Fund;

(ii) An officer of the Fund;

(iii) An investment company, or a person that would be an investment company but for the exclusions provided by sections 3(c)(1) and 3(c)(7) (15 U.S.C. 80a-3(c)(1) and (c)(7)), having the same investment adviser or principal underwriter as the Fund or having an investment adviser or principal underwriter that directly or indirectly controls, is controlled by, or is under common control with an investment adviser or principal underwriter of the Fund;

(iv) An officer of an investment company, or a person that would be an investment company but for the exclusions provided by sections 3(c)(1) and 3(c)(7) (15 U.S.C. 80a-3(c)(1) and (c)(7)), having the same investment adviser or principal

underwriter as the Fund or having an investment adviser or principal underwriter that directly or indirectly controls, is controlled by, or is under common control with an investment adviser or principal underwriter of the Fund;

(v)  An investment adviser or principal underwriter of the Fund;

(vi)  An officer of an investment adviser or principal underwriter of the Fund;

(vii)A person directly or indirectly controlling, controlled by, or under common control with an investment adviser or principal underwriter of the Fund; or

(viii)An officer of a person directly or indirectly controlling, controlled by, or under common control with an investment adviser or principal underwriter of the Fund.

*Instructions.*

1.  Include the name of each director or immediate family member whose interest in any transaction or series of similar transactions is described and the nature of the circumstances by reason of which the interest is required to be described.

2.  State the nature of the interest, the approximate dollar amount involved in the transaction, and, where practicable, the approximate dollar amount of the interest.

3.  In computing the amount involved in the transaction or series of similar transactions, include all periodic payments in the case of any lease or other agreement providing for periodic payments.

4.  Compute the amount of the interest of any director or immediate family member of the director without regard to the amount of profit or loss involved in the transaction(s).

5.  As to any transaction involving the purchase or sale of assets, state the cost of the assets to the purchaser and, if acquired by the seller within two years prior to the transaction, the cost to the seller. Describe the method used in determining the purchase or sale price and the name of the person making the determination.

6.  Disclose indirect, as well as direct, material interests in transactions. A person who has a position or relationship with, or interest in, a company that engages in a transaction with one of the persons listed in paragraphs (b)(7)(i) through (b)(7)(viii) of this Item 12 may have an indirect interest in the transaction by reason of the position, relationship, or interest. The interest in the transaction, however, will not be deemed "material" within the meaning of paragraph (b)(7) of this Item 12 where the interest of the director or immediate family member arises solely from the holding of an equity interest (including a limited partnership interest, but excluding a general partnership interest) or a creditor interest in a company that is a party to the transaction with one of the persons specified in paragraphs (b)(7)(i) through (b)(7)(viii) of this Item 12, and the transaction is not material to the company.

7.  The materiality of any interest is to be determined on the basis of the significance of the information to investors in light of all the circumstances of the particular case. The importance of the interest to the person having the interest, the relationship of the parties to the transaction with each other, and the amount involved in the transaction are among the factors to be considered in determining the significance of the information to investors.

8.  No information need be given as to any transaction where the interest of the director or immediate family member arises solely from the ownership of securities of a person specified in paragraphs (b)(7)(i) through (b)(7)(viii) of this Item 12 and the director or immediate family member receives no extra or special benefit not shared on a pro rata basis by all holders of the class of securities.

9.  Transactions include loans, lines of credit, and other indebtedness. For indebtedness, indicate the largest aggregate amount of indebtedness outstanding at any time during the period, the nature of the indebtedness and the transaction in which it was incurred, the amount outstanding as of the end of the most recently completed calendar year, and the rate of interest paid or charged.

10.  No information need be given as to any routine, retail transaction. For example; the Fund need not disclose that a director has a credit card, bank or brokerage account, residential mortgage, or insurance policy with a person specified in paragraphs (b)(7)(i) through (b)(7)(viii) of this Item 12 unless the director is accorded special treatment.

(8)  Describe briefly any direct or indirect relationship, in which the amount involved exceeds $60,000, of any director who is not an interested person of the Fund, or immediate family member of the director, that existed at any time during the two

most recently completed calendar years with any of the persons specified in paragraphs (b)(7)(i) through (b)(7)(viii) of this Item 12. Relationships include:

(i) Payments for property or services to or from any person specified in paragraphs (b)(7)(i) through (b)(7)(viii) of this Item 12;

(ii) Provision of legal services to any person specified in paragraphs (b)(7)(i) through (b)(7)(viii) of this Item 12;

(iii) Provision of investment banking services to any person specified in paragraphs (b)(7)(i) through (b)(7)(viii) of this Item 12, other than as a participating underwriter in a syndicate; and

(iv) Any consulting or other relationship that is substantially similar in nature and scope to the relationships listed in paragraphs (b)(8)(i) through (b)(8)(iii) of this Item 12.

*Instructions.*

1. Include the name of each director or immediate family member whose relationship is described and the nature of the circumstances by reason of which the relationship is required to be described.

2. State the nature of the relationship and the amount of business conducted between the director or immediate family member and the person specified in paragraphs (b)(7)(i) through (b)(7)(viii) of this Item 12 as a result of the relationship during the two most recently completed calendar years.

3. In computing the amount involved in a relationship, include all periodic payments in the case of any agreement providing for periodic payments.

4. Disclose indirect, as well as direct, relationships. A person who has a position or relationship with, or interest in, a company that has a relationship with one of the persons listed in paragraphs (b)(7)(i) through (b)(7)(viii) of this Item 12 may have an indirect relationship by reason of the position, relationship, or interest.

5. In determining whether the amount involved in a relationship exceeds $60,000, amounts involved in a relationship of the director should be aggregated with those of his immediate family members.

6. In the case of an indirect interest, identify the company with which a person specified in paragraphs (b)(7)(i) through (b)(7)(viii) of this Item 12 has a relationship; the name of the director or immediate family member affiliated with the company and the nature of the affiliation; and the amount of business conducted between the company and the person specified in paragraphs (b)(7)(i) through (b)(7)(viii) of this Item 12 during the two most recently completed calendar years.

7. In calculating payments for property and services for purposes of paragraph (b)(8)(i) of this Item 12, the following may be excluded:

    A. Payments where the transaction involves the rendering of services as a common contract carrier, or public utility, at rates or charges fixed in conformity with law or governmental authority; or

    B. Payments that arise solely from the ownership of securities of a person specified in paragraphs (b)(7)(i) through (b)(7)(viii) of this Item 12 and no extra or special benefit not shared on a pro rata basis by all holders of the class of securities is received.

8. No information need be given as to any routine, retail relationship. For example, the Fund need not disclose that a director has a credit card, bank or brokerage account, residential mortgage, or insurance policy with a person specified in paragraphs (b)(7)(i) through (b)(7)(viii) of this Item 12 unless the director is accorded special treatment.

(9) If an officer of an investment adviser or principal underwriter of the Fund, or an officer of a person directly or indirectly controlling, controlled by, or under common control with an investment adviser or principal underwriter of the Fund, served during the two most recently completed calendar years, on the board of directors of a company where a director of the Fund who is not an interested person of the Fund, or immediate family member of the director, was during the two most recently completed calendar years, an officer, identify:

(i) The company;

    (ii) The individual who serves or has served as a director of the company and the period of service as director;

    (iii) The investment adviser or principal underwriter or person controlling, controlled by, or under common control with the investment adviser or principal underwriter where the individual named in paragraph (b)(9)(ii) of this Item 12 holds or held office and the office held; and

    (iv) The director of the Fund or immediate family member who is or was an officer of the company; the office held; and the period of holding the office.

(10) Discuss in reasonable detail the material factors and the conclusions with respect thereto that formed the basis for the board of directors approving the existing investment advisory contract. If applicable, include a discussion of any benefits derived or to be derived by the investment adviser from the relationship with the Fund such as soft dollar arrangements by which brokers provide research to the Fund or its investment adviser in return for allocating Fund brokerage.

*Instruction.* Conclusory statements or a list of factors will not be considered sufficient disclosure. The discussion should relate the factors to the specific circumstances of the Fund and the investment advisory contract.

(c) *Compensation.* For all directors of the Fund and for all members of any advisory board who receive compensation from the Fund, and for each of the three highest paid officers or any affiliated person of the Fund who received aggregate compensation from the Fund for the most recently completed fiscal year exceeding $60,000 ("Compensated Persons"):

(1) Provide the information required by the following table:

**Compensation Table**

| (1) | (2) | (3) | (4) | (5) |
|---|---|---|---|---|
| Name of Person, Position | Aggregate Compensation From Fund | Pension or Retirement Benefits Accrued As Part of Funds Expenses | Estimated Annual Benefits Upon Retirement | Total Compensation From Fund and Fund Complex Paid to Directors |

*Instructions.*

1. For column (1), indicate, as necessary, the capacity in which the remuneration is received. For Compensated Persons who are directors of the Fund, compensation is amounts received for service as a director.

2. If the Fund has not completed its first full year since its organization, provide the information for the current fiscal year, estimating future payments that would be made under an existing agreement or understanding. Disclose in a footnote to the Compensation Table the period for which the information is given.

3. Include in column (2) amounts deferred at the election of the Compensated Person, whether under a plan established under section 401(k) of the Internal Revenue Code [I.R.C. 401(k)] or otherwise, for the fiscal year in which earned. Disclose in a footnote to the Compensation Table the total amount of deferred compensation (including interest) payable to or accrued for any Compensated Person.

4. Include in columns (3) and (4) all pension or retirement benefits proposed to be paid under any existing plan in the event of retirement at normal retirement date, directly or indirectly, by the Fund, any of its subsidiaries, or other investment companies in the Fund Complex. Omit column (4) when retirement benefits are not determinable.

5. For any defined benefit or actuarial plan under which benefits are determined primarily by final compensation (or average final compensation) and years of service, provide the information required in column (4) in a separate table showing estimated annual benefits payable upon retirement (including amounts attributable to any defined benefit supplementary or excess pension award plans) in specified compensation and years of service classifications. Also provide the estimated credited years of service for each Compensated Person.

6. Include in column (5) only aggregate compensation paid to a director for service on the board and all other boards of investment companies in a Fund Complex specifying the number of any other investment companies.

(2) Describe briefly the material provisions of any pension, retirement, or other plan or any arrangement, other than fee arrangements disclosed in paragraph (d)(1), under which the Compensated Persons are or may be compensated for services provided, including amounts paid, if any, to the Compensated Person under these arrangements during the most recently completed fiscal year. Specifically include the criteria used to determine amounts payable under the plan, the length of service or vesting period required by the plan, the retirement age or other event that gives rise to payment under the plan, and whether the payment of benefits is secured or funded by the Fund.

(d) *Sales Loads.* Disclose any arrangements that result in breakpoints in, or elimination of, sales loads for directors and other affiliated persons of the Fund. Identify each class of individuals and transactions to which the arrangements apply and state each different breakpoint as a percentage of both the offering price and the net amount invested of the Fund's shares. Explain, as applicable, the reasons for the difference in the price at which securities are offered generally to the public, and the prices at which securities are offered to directors and other affiliated persons of the Fund.

(e) *Codes of Ethics.* Provide a brief statement disclosing whether the Fund and its investment adviser and principal underwriter have adopted codes of ethics under rule 17j-1 of the Investment Company Act [17 CFR 270.17j-1] and whether these codes of ethics permit personnel subject to the codes to invest in securities, including securities that may be purchased or held by the Fund.

*Instruction:* A Fund that is not required to adopt a code of ethics under rule 17j-1 of the Investment Company Act is not required to respond to this item.

(f) *Proxy Voting Policies.* Unless the Fund invests exclusively in non-voting securities, describe the policies and procedures that the Fund uses to determine how to vote proxies relating to portfolio securities, including the procedures that the Fund uses when a vote presents a conflict between the interests of Fund shareholders, on the one hand, and those of the Fund's investment adviser; principal underwriter; or any affiliated person of the Fund, its investment adviser, or its principal underwriter, on the other. Include any policies and procedures of the Fund's investment adviser, or any other third party, that the Fund uses, or that are used on the Fund's behalf, to determine how to vote proxies relating to portfolio securities. Also, state that information regarding how the Fund voted proxies relating to portfolio securities during the most recent 12-month period ended June 30 is available (1) without charge, upon request, by calling a specified toll-free (or collect) telephone number; or on or through the Fund's website at a specified Internet address; or both; and (2) on the Commission's website at http://www.sec.gov.

*Instructions.*

1. A Fund may satisfy the requirement to provide a description of the policies and procedures that it uses to determine how to vote proxies relating to portfolio securities by including a copy of the policies and procedures themselves.

2. If a Fund discloses that the Fund's proxy voting record is available by calling a toll-free (or collect) telephone number, and the Fund (or financial intermediary through which shares of the Fund may be purchased or sold) receives a request for this information, the Fund (or financial intermediary) must send the information disclosed in the Fund's most recently filed report on Form N-PX, within three business days of receipt of the request, by first-class mail or other means designed to ensure equally prompt delivery.

3. If a Fund discloses that the Fund's proxy voting record is available on or through its website, the Fund must make available free of charge the information disclosed in the Fund's most recently filed report on Form N-PX on or through its website as soon as reasonably practicable after filing the report with the Commission. The information disclosed in the Fund's most recently filed report on Form N-PX must remain available on or through the Fund's website for as long as the Fund remains subject to the requirements of Rule 30b1-4 (17 CFR 270.30b1-4) and discloses that the Fund's proxy voting record is available on or through its website.

## Item 13.   Control Persons and Principal Holders of Securities

Provide the following information as of a specified date no more than 30 days prior to the date of filing the registration statement or an amendment.

(a) *Control Persons.* State the name and address of each person who controls the Fund and explain the effect of that control on the voting rights of other security holders. For each control person, state the percentage of the Fund's voting securities owned or any other basis of control. If the control person is a company, give the jurisdiction under the laws of which it is organized. List all parents of the control person.

*Instruction.* For purposes of this paragraph, "control" means (i) the beneficial ownership, either directly or through one or more controlled companies, of more than 25% of the voting securities of a company; (ii) the acknowledgment or assertion by either the controlled or controlling party of the existence of control; or (iii) an adjudication under section 2(a)(9), which has become final, that control exists.

(b) *Principal Holders.* State the name, address, and percentage of ownership of each person who owns of record or is known by the Fund to own beneficially 5% or more of any Class of the Fund's outstanding equity securities.

*Instructions.*

1. Calculate the percentages based on the amount of securities outstanding.

2. If securities are being registered under or in connection with a plan of acquisition, reorganization, readjustment or succession, indicate, as far as practicable, the ownership that would result from consummation of the plan based on present holdings and commitments.

3. Indicate whether the securities are owned of record, beneficially, or both. Show the respective percentage owned in each manner.

(c) *Management Ownership.* State the percentage of the Fund's equity securities owned by all officers, directors, and members of any advisory board of the Fund as a group. If the amount owned by directors and officers as a group is less than 1% of the Class, provide a statement to that effect.

**Item 14.    Investment Advisory and Other Services**

(a) *Investment Advisers.* Disclose the following information with respect to each investment adviser:

(1) The name of any person who controls the adviser, the basis of the person's control, and the general nature of the person's business. Also disclose, if material, the business history of any organization that controls the adviser.

(2) The name of any affiliated person of the Fund who also is an affiliated person of the adviser, and a list of all capacities in which the person is affiliated with the Fund and with the adviser.

*Instruction.* If an affiliated person of the Fund alone or together with others controls the adviser, state that fact. It is not necessary to provide the amount or percentage of the outstanding voting securities owned by the controlling person.

(3) The method of calculating the advisory fee payable by the Fund including:

(i) The total dollar amounts that the Fund paid to the adviser (aggregated with amounts paid to affiliated advisers, if any), and any advisers who are not affiliated persons of the adviser, under the investment advisory contract for the last three fiscal years;

(ii) If applicable, any credits that reduced the advisory fee for any of the last three fiscal years; and

(iii) Any expense limitation provision.

*Instructions.*

1. If the advisory fee payable by the Fund varies depending on the Fund's investment performance in relation to a standard, describe the standard along with a fee schedule in tabular form. The Fund may include examples showing the fees that the adviser would earn at various levels of performance as long as the examples include calculations showing the maximum and minimum fee percentages that could be earned under the contract.

2. State separately each type of credit or offset.

3. When a Fund is subject to more than one expense limitation provision, describe only the most restrictive provision.

4. For a Registrant with more than one Series, or a Multiple Class Fund, describe the methods of allocation and payment of advisory fees for each Series or Class.

(b) *Principal Underwriter.* State the name and principal business address of any principal underwriter for the Fund. Disclose, if applicable, that an affiliated person of the Fund is an affiliated person of the principal underwriter and identify the affiliated person.

(c) *Services Provided by Each Investment Adviser and Fund Expenses Paid by Third Parties.*

(1) Describe all services performed for or on behalf of the Fund supplied or paid for wholly or in substantial part by each investment adviser.

(2) Describe all fees, expenses, and costs of the Fund that are to be paid by persons other than an investment adviser or the Fund, and identify those persons.

(d) *Service Agreements.* Summarize the substantive provisions of any other management-related service contract that may be of interest to a purchaser of the Fund's shares, under which services are provided to the Fund, indicating the parties to the contract, and the total dollars paid and by whom for the past three years.

*Instructions.*

1. The term "management-related service contract" includes any contract with the Fund to keep, prepare, or file accounts, books, records, or other documents required under federal or state law, or to provide any similar services with respect to the daily administration of the Fund, but does not include the following:

(a) Any contract with the Fund to provide investment advice;

(b) Any agreement with the Fund to perform as custodian, transfer agent, or dividend-paying agent for the Fund; and

(c) Any contract with the Fund for outside legal or auditing services, or contract for personal employment entered into with the Fund in the ordinary course of business.

2. No information need be given in response to this paragraph with respect to the service of mailing proxies or periodic reports to the Fund's shareholders.

3. In summarizing the substantive provisions of any management-related service contract, include the following:

(a) The name of the person providing the service;

(b) The direct or indirect relationships, if any, of the person with the Fund, an investment adviser of the Fund or the Fund's principal underwriter; and

(c) The nature of the services provided, and the basis of the compensation paid for the services for the last three fiscal years.

(e) *Other Investment Advice.* If any person (other than a director, officer, member of an advisory board, employee, or investment adviser of the Fund), through any understanding, whether formal or informal, regularly advises the Fund or the Fund's investment adviser with respect to the Fund's investing in, purchasing, or selling securities or other property, or has the authority to determine what securities or other property should be purchased or sold by the Fund, and receives direct or indirect remuneration, provide the following information:

(1) The person's name;

(2) A description of the nature of the arrangement, and the advice or information provided; and

(3) Any remuneration (including, for example, participation, directly or indirectly, in commissions or other compensation paid in connection with transactions in the Fund's portfolio securities) paid for the advice or information, and a statement as to how the remuneration was paid and by whom it was paid for the last three fiscal years.

*Instruction.* Do not include information for the following:

(a) Persons who advised the investment adviser or the Fund solely through uniform publications distributed to subscribers;

(b) Persons who provided the investment adviser or the Fund with only statistical and other factual information, advice about economic factors and trends, or advice as to occasional transactions in specific securities, but without generally advising about the purchase or sale of securities by the Fund;

(c) A company that is excluded from the definition of "investment adviser" of an investment company under section 2(a)(20)(iii) [15 U.S.C. 80a-2(a)(20)(iii)];

(d) Any person the character and amount of whose compensation for these services must be approved by a court; or

(e) Other persons as the Commission has by rule or order determined not to be an "investment adviser" of an investment company.

(f) *Dealer Reallowances.* Disclose any front-end sales load reallowed to dealers as a percentage of the offering price of the Fund's shares.

(g) *Rule 12b-1 Plans.* If the Fund has adopted a plan under rule 12b-1, describe the material aspects of the plan, and any agreements relating to the implementation of the plan, including:

(1) A list of the principal types of activities for which payments are or will be made, including the dollar amount and the manner in which amounts paid by the Fund under the plan during the last fiscal year were spent on:

(i) Advertising;

(ii) Printing and mailing of prospectuses to other than current shareholders;

(iii) Compensation to underwriters;

(iv) Compensation to broker-dealers;

(v) Compensation to sales personnel;

(vi) Interest, carrying, or other financing charges; and

(vii) Other (specify).

(2) The relationship between amounts paid to the distributor and the expenses that it incurs (*e.g.*, whether the plan reimburses the distributor only for expenses incurred or compensates the distributor regardless of its expenses).

(3) The amount of any unreimbursed expenses incurred under the plan in a previous year and carried over to future years, in dollars and as a percentage of the Fund's net assets on the last day of the previous year.

(4) Whether the Fund participates in any joint distribution activities with another Series or investment company. If so, disclose, if applicable, that fees paid under the Fund's rule 12b-1 plan may be used to finance the distribution of the shares of another Series or investment company, and state the method of allocating distribution costs (*e.g.*, relative net asset size, number of shareholder accounts).

(5) Whether any of the following persons had a direct or indirect financial interest in the operation of the plan or related agreements:

(i) Any interested person of the Fund; or

(ii) Any director of the Fund who is not an interested person of the Fund.

(6) The anticipated benefits to the Fund that may result from the plan.

(h) *Other Service Providers.*

    (1) Unless disclosed in response to paragraph (d), identify any person who provides significant administrative or business affairs management services for the Fund (*e.g.*, an "administrator"), describe the services provided, and the compensation paid for the services.

    (2) State the name and principal business address of the Fund's transfer agent and the dividend-paying agent.

    (3) State the name and principal business address of the Fund's custodian and independent public accountant and describe generally the services performed by each. If the Fund's portfolio securities are held by a person other than a commercial bank, trust company, or depository registered with the Commission as custodian, state the nature of the business of that person or persons.

    (4) If an affiliated person of the Fund, or an affiliated person of the affiliated person, acts as custodian, transfer agent, or dividend-paying agent for the Fund, describe the services that the person performs and the basis for remuneration.

## Item 15.  Portfolio Managers

(a) *Other Accounts Managed.* If a Portfolio Manager required to be identified in response to Item 5(a)(2) is primarily responsible for the day-to-day management of the portfolio of any other account, provide the following information:

    (1) The Portfolio Manager's name;

    (2) The number of other accounts managed within each of the following categories and the total assets in the accounts managed within each category:

        (A) Registered investment companies;

        (B) Other pooled investment vehicles; and

        (C) Other accounts.

    (3) For each of the categories in paragraph (a)(2) of this Item, the number of accounts and the total assets in the accounts with respect to which the advisory fee is based on the performance of the account; and

    (4) A description of any material conflicts of interest that may arise in connection with the Portfolio Manager's management of the Fund's investments, on the one hand, and the investments of the other accounts included in response to paragraph (a)(2) of this Item, on the other. This description would include, for example, material conflicts between the investment strategy of the Fund and the investment strategy of other accounts managed by the Portfolio Manager and material conflicts in allocation of investment opportunities between the Fund and other accounts managed by the Portfolio Manager.

*Instructions.*

1. Provide the information required by this paragraph as of the end of the Fund's most recently completed fiscal year, except that, in the case of an initial registration statement or an update to the Fund's registration statement that discloses a new Portfolio Manager, information with respect to any newly identified Portfolio Manager must be provided as of the most recent practicable date. Disclose the date as of which the information is provided.

2. If a committee, team, or other group of persons that includes the Portfolio Manager is jointly and primarily responsible for the day-to-day management of the portfolio of an account, include the account in responding to paragraph (a) of this Item.

(b) *Compensation.* Describe the structure of, and the method used to determine, the compensation of each Portfolio Manager required to be identified in response to Item 5(a)(2). For each type of compensation (*e.g.*, salary, bonus, deferred compensation, retirement plans and arrangements), describe with specificity the criteria on which that type of compensation is based, for example, whether compensation is fixed, whether (and, if so, how) compensation is based on Fund pre- or after-tax performance over a certain time period, and whether (and, if so, how) compensation is based on the value of assets held in the Fund's portfolio. For example, if compensation is based solely or in part on performance, identify any benchmark used to measure performance and state the length of the period over which performance is measured.

*Instructions.*

1.  Provide the information required by this paragraph as of the end of the Fund's most recently completed fiscal year, except that, in the case of an initial registration statement or an update to the Fund's registration statement that discloses a new Portfolio Manager, information with respect to any newly identified Portfolio Manager must be provided as of the most recent practicable date. Disclose the date as of which the information is provided.

2.  Compensation includes, without limitation, salary, bonus, deferred compensation, and pension and retirement plans and arrangements, whether the compensation is cash or non-cash. Group life, health, hospitalization, medical reimbursement, relocation, and pension and retirement plans and arrangements may be omitted, provided that they do not discriminate in scope, terms, or operation in favor of the Portfolio Manager or a group of employees that includes the Portfolio Manager and are available generally to all salaried employees. The value of compensation is not required to be disclosed under this Item.

3.  Include a description of the structure of, and the method used to determine, any compensation received by the Portfolio Manager from the Fund, the Fund's investment adviser, or any other source with respect to management of the Fund and any other accounts included in the response to paragraph (a)(2) of this Item. This description must clearly disclose any differences between the method used to determine the Portfolio Manager's compensation with respect to the Fund and other accounts, *e.g.*, if the Portfolio Manager receives part of an advisory fee that is based on performance with respect to some accounts but not the Fund, this must be disclosed.

(c)  *Ownership of Securities.* For each Portfolio Manager required to be identified in response to Item 5(a)(2), state the dollar range of equity securities in the Fund beneficially owned by the Portfolio Manager using the following ranges: none, $1-$10,000, $10,001-$50,000, $50,001-$100,000, $100,001-$500,000, $500,001-$1,000,000, or over $1,000,000.

*Instructions.*

1.  Provide the information required by this paragraph as of the end of the Fund's most recently completed fiscal year, except that, in the case of an initial registration statement or an update to the Fund's registration statement that discloses a new Portfolio Manager, information with respect to any newly identified Portfolio Manager must be provided as of the most recent practicable date. Specify the valuation date.

2.  Determine "beneficial ownership" in accordance with rule 16a-1(a)(2) under the Exchange Act (17 CFR 240.16a-1(a)(2)).

## Item 16.  Brokerage Allocation and Other Practices

(a)  *Brokerage Transactions.* Describe how transactions in portfolio securities are effected, including a general statement about brokerage commissions, markups, and markdowns on principal transactions and the aggregate amount of any brokerage commissions paid by the Fund during its three most recent fiscal years. If, during either of the two years preceding the Fund's most recent fiscal year, the aggregate dollar amount of brokerage commissions paid by the Fund differed materially from the amount paid during the most recent fiscal year, state the reason(s) for the difference(s).

(b)  *Commissions.*

(1)  Identify, disclose the relationship, and state the aggregate dollar amount of brokerage commissions paid by the Fund during its three most recent fiscal years to any broker:

(i)  That is an affiliated person of the Fund or an affiliated person of that person; or

(ii)  An affiliated person of which is an affiliated person of the Fund, its investment adviser, or principal underwriter.

(2)  For each broker identified in response to paragraph (b)(1), state:

(i)  The percentage of the Fund's aggregate brokerage commissions paid to the broker during the most recent fiscal year; and

(ii)  The percentage of the Fund's aggregate dollar amount of transactions involving the payment of commissions effected through the broker during the most recent fiscal year.

    (3) State the reasons for any material difference in the percentage of brokerage commissions paid to, and the percentage of transactions effected through, a broker disclosed in response to paragraph (b)(1).

(c) *Brokerage Selection*. Describe how the Fund will select brokers to effect securities transactions for the Fund and how the Fund will evaluate the overall reasonableness of brokerage commissions paid, including the factors that the Fund will consider in making these determinations.

*Instructions*.

    1.  If the Fund will consider the receipt of products or services other than brokerage or research services in selecting brokers, specify those products and services.

    2.  If the Fund will consider the receipt of research services in selecting brokers, identify the nature of those research services.

    3.  State whether persons acting on the Fund's behalf are authorized to pay a broker a higher brokerage commission than another broker might have charged for the same transaction in recognition of the value of (a) brokerage or (b) research services provided by the broker.

    4.  If applicable, explain that research services provided by brokers through which the Fund effects securities transactions may be used by the Fund's investment adviser in servicing all of its accounts and that not all of these services may be used by the adviser in connection with the Fund. If other policies or practices are applicable to the Fund with respect to the allocation of research services provided by brokers, explain those policies and practices.

(d) *Directed Brokerage*. If, during the last fiscal year, the Fund or its investment adviser, through an agreement or understanding with a broker, or otherwise through an internal allocation procedure, directed the Fund's brokerage transactions to a broker because of research services provided, state the amount of the transactions and related commissions.

(e) *Regular Broker-Dealers*. If the Fund has acquired during its most recent fiscal year or during the period of time since organization, whichever is shorter, securities of its regular brokers or dealers as defined in rule 10b-1 [17 CFR 270.10b-1] or of their parents, identify those brokers or dealers and state the value of the Fund's aggregate holdings of the securities of each issuer as of the close of the Fund's most recent fiscal year.

    *Instruction*. The Fund need only disclose information about an issuer that derived more than 15% of its gross revenues from the business of a broker, a dealer, an underwriter, or an investment adviser during its most recent fiscal year.

## Item 17.  Capital Stock and Other Securities

(a) *Capital Stock*. For each class of capital stock of the Fund, provide:

    (1) The title of each class; and

    (2) A full discussion of the following provisions or characteristics of each class, if applicable:

        (i)     Restrictions on the right freely to retain or dispose of the Fund's shares;

        (ii)    Material obligations or potential liabilities associated with owning the Fund's shares (not including investment risks);

        (iii)   Dividend rights;

        (iv)   Voting rights (including whether the rights of shareholders can be modified by other than a majority vote);

        (v)     Liquidation rights;

        (vi)    Preemptive rights;

        (vii)   Conversion rights;

        (viii)  Redemption provisions;

    (ix)    Sinking fund provisions; and

    (x)    Liability to further calls or to assessment by the Fund.

*Instructions.*

1. If any class described in response to this paragraph possesses cumulative voting rights, disclose the existence of those rights and explain the operation of cumulative voting.

2. If the rights evidenced by any class described in response to this paragraph are materially limited or qualified by the rights of any other class, explain those limitations or qualifications.

(b) *Other Securities.* Describe the rights of any authorized securities of the Fund other than capital stock. If the securities are subscription warrants or rights, state the title and amount of securities called for, and the period during which and the prices at which the warrants or rights are exercisable.

## Item 18.   Purchase, Redemption, and Pricing of Shares

(a) *Purchase of Shares.* To the extent that the prospectus does not do so, describe how the Fund's shares are offered to the public. Include any special purchase plans or methods not described in the prospectus or elsewhere in the SAI, including letters of intent, accumulation plans, dividend reinvestment plans, withdrawal plans, exchange privileges, employee benefit plans, redemption reinvestment plans, and waivers for particular classes of shareholders.

*Instruction.* A Fund may incorporate the information required by Item 18(a) into the SAI by reference to a separate disclosure document that may be provided to investors with the SAI or separately, in response to investor requests. File the separate document, if any, with Part B of Form N-1A.

(b) *Fund Reorganizations.* Disclose any arrangements that result in breakpoints in, or elimination of, sales loads in connection with the terms of a merger, acquisition, or exchange offer made under a plan of reorganization. Identify each class of individuals to which the arrangements apply and state each different sales load available as a percentage of both the offering price and the net amount invested.

(c) *Offering Price.* Describe the method followed or to be followed by the Fund in determining the total offering price at which its shares may be offered to the public and the method(s) used to value the Fund's assets.

*Instructions.*

1. Describe the valuation procedure(s) that the Fund uses in determining the net asset value and public offering price of its shares.

2. Explain how the excess of the offering price over the net amount invested is distributed among the Fund's principal underwriters or others and the basis for determining the total offering price.

3. Explain the reasons for any difference in the price at which securities are offered generally to the public, and the prices at which securities are offered for any class of transactions or to any class of individuals.

4. Unless provided as a continuation of the balance sheet in response to Item 22, include a specimen price-make-up sheet showing how the Fund calculates the total offering price per unit. Base the calculation on the value of the Fund's portfolio securities and other assets and its outstanding securities as of the date of the balance sheet filed by the Fund.

(d) *Redemption in Kind.* If the Fund has received an order of exemption from section 18(f) or has filed a notice of election under rule 18f-1 that has not been withdrawn, describe the nature, extent, and effect of the exemptive relief or notice.

(e) *Arrangements Permitting Frequent Purchases and Redemptions of Fund Shares.* Describe any arrangements with any person to permit frequent purchases and redemptions of Fund shares, including the identity of the persons permitted to engage in frequent purchases and redemptions pursuant to such arrangements, and any compensation or other consideration received by the Fund, its investment adviser, or any other party pursuant to such arrangements.

*Instructions.*

1.  The consideration required to be disclosed by Item 17(e) includes any agreement to maintain assets in the Fund or in other investment companies or accounts managed by the investment adviser or by any affiliated person of the investment adviser.

2.  If the Fund has an arrangement to permit frequent purchases and redemptions by a group of individuals, such as the participants in a defined contribution plan that meets the requirements for qualification under Section 401(k) of the Internal Revenue Code (26 U.S.C. 401(k)), the Fund may identify the group rather than identifying each individual group member.

## Item 19.   Taxation of the Fund

(a) If applicable, state that the Fund is qualified or intends to qualify under Subchapter M of the Internal Revenue Code. Disclose the consequences to the Fund if it does not qualify under Subchapter M.

(b) Disclose any special or unusual tax aspects of the Fund, such as taxation resulting from foreign investment or from status as a personal holding company, or any tax loss carry-forward to which the Fund may be entitled.

## Item 20.   Underwriters

(a) *Distribution of Securities.* For each principal underwriter distributing securities of the Fund, state:

(1) The nature of the obligation to distribute the Fund's securities;

(2) Whether the offering is continuous; and

(3) The aggregate dollar amount of underwriting commissions and the amount retained by the principal underwriter for each of the Fund's last three fiscal years.

(b) *Compensation.* Provide the information required by the following table with respect to all commissions and other compensation received by each principal underwriter, who is an affiliated person of the Fund or an affiliated person of that affiliated person, directly or indirectly, from the Fund during the Fund's most recent fiscal year:

| (1) | (2) | (3) | (4) | (5) |
|---|---|---|---|---|
| Name of Principal Underwriter | Net Underwriting Discounts and Commissions | Compensation on Redemptions and Repurchases | Brokerage Commissions | Other Compensation |

*Instruction.* Disclose in a footnote to the table the type of services rendered in consideration for the compensation listed under column (5).

(c) *Other Payments.* With respect to any payments made by the Fund to an underwriter or dealer in the Fund's shares during the Fund's last fiscal year, disclose the name and address of the underwriter or dealer, the amount paid and basis for determining that amount, the circumstances surrounding the payments, and the consideration received by the Fund. Do not include information about:

(1) Payments made through deduction from the offering price at the time of sale of securities issued by the Fund;

(2) Payments representing the purchase price of portfolio securities acquired by the Fund;

(3) Commissions on any purchase or sale of portfolio securities by the Fund; or

(4) Payments for investment advisory services under an investment advisory contract.

*Instructions.*

1.  Do not include in response to this paragraph information provided in response to paragraph (b) or with respect to service fees under the Instruction to Item 7(b)(2). Do not include any payment for a service excluded by Instructions 1 and 2 to Item 14(d) or by Instruction 2 to Item 30.

2.  If the payments were made under an arrangement or policy applicable to dealers generally, describe only the arrangement or policy.

## Item 21.  Calculation of Performance Data

(a)  *Money Market Funds.*  Yield quotation(s) for a Money Market Fund included in the prospectus should be calculated according to paragraphs (a)(1) – (4).

(1)  *Yield Quotation.*  Based on the 7 days ended on the date of the most recent balance sheet included in the registration statement, calculate the Fund's yield by determining the net change, exclusive of capital changes and income other than investment income, in the value of a hypothetical pre-existing account having a balance of one share at the beginning of the period, subtracting a hypothetical charge reflecting deductions from shareholder accounts, and dividing the difference by the value of the account at the beginning of the base period to obtain the base period return, and then multiplying the base period return by (365/7) with the resulting yield figure carried to at least the nearest hundredth of one percent.

(2)  *Effective Yield Quotation.*  Based on the 7 days ended on the date of the most recent balance sheet included in the registration statement, calculate the Fund's effective yield, carried to at least the nearest hundredth of one percent, by determining the net change, exclusive of capital changes and income other than investment income, in the value of a hypothetical pre-existing account having a balance of one share at the beginning of the period, subtracting a hypothetical charge reflecting deductions from shareholder accounts, and dividing the difference by the value of the account at the beginning of the base period to obtain the base period return, and then compounding the base period return by adding 1, raising the sum to a power equal to 365 divided by 7, and subtracting 1 from the result, according to the following formula:

EFFECTIVE YIELD = [(BASE PERIOD RETURN + 1)$^{365/7}$] - 1.

(3)  *Tax Equivalent Current Yield Quotation.*  Calculate the Fund's tax equivalent current yield by dividing that portion of the Fund's yield (as calculated under paragraph (a)(1)) that is tax-exempt by 1 minus a stated income tax rate and adding the quotient to that portion, if any, of the Fund's yield that is not tax-exempt.

(4)  *Tax Equivalent Effective Yield Quotation.*  Calculate the Fund's tax equivalent effective yield by dividing that portion of the Fund's effective yield (as calculated under paragraph (a)(2)) that is tax-exempt by 1 minus a stated income tax rate and adding the quotient to that portion, if any, of the Fund's effective yield that is not tax-exempt.

*Instructions.*

1.  When calculating yield or effective yield quotations, the calculation of net change in account value must include:

(a)  The value of additional shares purchased with dividends from the original share and dividends declared on both the original shares and additional shares; and

(b)  All fees, other than nonrecurring account or sales charges, that are imposed on all shareholder accounts in proportion to the length of the base period. For any account fees that vary with the size of the account, assume an account size equal to the Fund's mean (or median) account size.

2.  Exclude realized gains and losses from the sale of securities and unrealized appreciation and depreciation from the calculation of yield and effective yield. Exclude income other than investment income.

3.  Disclose the amount or specific rate of any nonrecurring account or sales charges not included in the calculation of the yield.

4.  If the Fund holds itself out as distributing income that is exempt from federal, state, or local income taxation, in calculating yield and effective yield (but not tax equivalent yield or tax equivalent effective yield), reduce the yield quoted by the effect of any income taxes on the shareholder receiving dividends, using the maximum rate for individual income taxation. For example, if the Fund holds itself out as distributing income exempt from federal taxation and the income taxes of State A, but invests in some securities of State B, it must reduce its yield by the effect of state income taxes that must be paid by the residents of State A on that portion of the income attributable to the securities of State B.

(b) *Other Funds*. Performance information included in the prospectus should be calculated according to paragraphs (b)(1) – (6).

    (1) *Average Annual Total Return Quotation*. For the 1-, 5-, and 10-year periods ended on the date of the most recent balance sheet included in the registration statement (or for the periods the Fund has been in operation), calculate the Fund's average annual total return by finding the average annual compounded rates of return over the 1-, 5-, and 10-year periods (or for the periods of the Fund's operations) that would equate the initial amount invested to the ending redeemable value, according to the following formula:

$$P(1+T)^n = ERV$$

Where:

| | | |
|---|---|---|
| P | = | a hypothetical initial payment of $1,000. |
| T | = | average annual total return. |
| n | = | number of years. |
| ERV | = | ending redeemable value of a hypothetical $1,000 payment made at the beginning of the 1-, 5-, or 10-year periods at the end of the 1-, 5-, or 10-year periods (or fractional portion). |

*Instructions.*

1. Assume the maximum sales load (or other charges deducted from payments) is deducted from the initial $1,000 payment.

2. Assume all distributions by the Fund are reinvested at the price stated in the prospectus (including any sales load imposed upon reinvestment of dividends) on the reinvestment dates during the period.

3. Include all recurring fees that are charged to all shareholder accounts. For any account fees that vary with the size of the account, assume an account size equal to the Fund's mean (or median) account size. Reflect, as appropriate, any recurring fees charged to shareholder accounts that are paid other than by redemption of the Fund's shares.

4. Determine the ending redeemable value by assuming a complete redemption at the end of the 1-, 5-, or 10-year periods and the deduction of all nonrecurring charges deducted at the end of each period. If shareholders are assessed a deferred sales load, assume the maximum deferred sales load is deducted at the times, in the amounts, and under the terms disclosed in the prospectus.

5. State the average annual total return quotation to the nearest hundredth of one percent.

6. Total return information in the prospectus need only be current to the end of the Fund's most recent fiscal year.

    (2) *Average Annual Total Return (After Taxes on Distributions) Quotation*. For the 1-, 5-, and 10-year periods ended on the date of the most recent balance sheet included in the registration statement (or for the periods the Fund has been in operation), calculate the Fund's average annual total return (after taxes on distributions) by finding the average annual compounded rates of return over the 1-, 5-, and 10-year periods (or for the periods of the Fund's operations) that would equate the initial amount invested to the ending value, according to the following formula:

$$P(1+T)^n = ATV_D$$

Where:

| | | |
|---|---|---|
| P | = | a hypothetical initial payment of $1,000. |
| T | = | average annual total return (after taxes on distributions). |
| n | = | number of years. |
| $ATV_D$ | = | ending value of a hypothetical $1,000 payment made at the beginning of the 1-, 5-, or 10-year periods at the end of the 1-, 5-, or 10-year periods (or fractional portion), after taxes on fund distributions but not after taxes on redemption. |

*Instructions.*

1. Assume the maximum sales load (or other charges deducted from payments) is deducted from the initial $1,000 payment.

2. Assume all distributions by the Fund, less the taxes due on such distributions, are reinvested at the price stated in the prospectus (including any sales load imposed upon reinvestment of dividends) on the reinvestment dates during the period.

3. Calculate the taxes due on any distributions by the Fund by applying the tax rates specified in Instruction 4 to each component of the distributions on the reinvestment date (e.g., ordinary income, short-term capital gain, long-term capital gain). The taxable amount and tax character of each distribution should be as specified by the Fund on the dividend declaration date, but may be adjusted to reflect subsequent recharacterizations of distributions. Distributions should be adjusted to reflect the federal tax impact the distribution would have on an individual taxpayer on the reinvestment date. For example, assume no taxes are due on the portion of any distribution that would not result in federal income tax on an individual, e.g., tax-exempt interest or non-taxable returns of capital. The effect of applicable tax credits, such as the foreign tax credit, should be taken into account in accordance with federal tax law.

4. Calculate the taxes due using the highest individual marginal federal income tax rates in effect on the reinvestment date. The rates used should correspond to the tax character of each component of the distributions (e.g., ordinary income rate for ordinary income distributions, short-term capital gain rate for short-term capital gain distributions, long-term capital gain rate for long-term capital gain distributions). Note that the required tax rates may vary over the measurement period. Disregard any potential tax liabilities other than federal tax liabilities (e.g., state and local taxes); the effect of phaseouts of certain exemptions, deductions, and credits at various income levels; and the impact of the federal alternative minimum tax.

5. Include all recurring fees that are charged to all shareholder accounts. For any account fees that vary with the size of the account, assume an account size equal to the Fund's mean (or median) account size. Assume that no additional taxes or tax credits result from any redemption of shares required to pay such fees. Reflect, as appropriate, any recurring fees charged to shareholder accounts that are paid other than by redemption of the Fund's shares.

6. Determine the ending value by assuming a complete redemption at the end of the 1-, 5-, or 10-year periods and the deduction of all nonrecurring charges deducted at the end of each period. If shareholders are assessed a deferred sales load, assume the maximum deferred sales load is deducted at the times, in the amounts, and under the terms disclosed in the prospectus. Assume that the redemption has no tax consequences.

7. State the average annual total return (after taxes on distributions) quotation to the nearest hundredth of one percent.

(3) *Average Annual Total Return (After Taxes on Distributions and Redemption) Quotation.* For the 1-, 5-, and 10-year periods ended on the date of the most recent balance sheet included in the registration statement (or for the periods the Fund has been in operation), calculate the Fund's average annual total return (after taxes on distributions and redemption) by finding the average annual compounded rates of return over the 1-, 5-, and 10-year periods (or for the periods of the Fund's operations) that would equate the initial amount invested to the ending value, according to the following formula:

$$P(1 + T)^n = ATV_{DR}$$

Where:

| | | |
|---|---|---|
| P | = | a hypothetical initial payment of $1,000. |
| T | = | average annual total return (after taxes on distributions and redemption). |
| n | = | number of years. |
| $ATV_{DR}$ | = | ending value of a hypothetical $1,000 payment made at the beginning of the 1-, 5-, or 10-year periods at the end of the 1-, 5-, or 10-year periods (or fractional portion), after taxes on fund distributions and redemption. |

*Instructions.*

1. Assume the maximum sales load (or other charges deducted from payments) is deducted from the initial $1,000 payment.

2. Assume all distributions by the Fund, less the taxes due on such distributions, are reinvested at the price stated in the prospectus (including any sales load imposed upon reinvestment of dividends) on the reinvestment dates during the period.

3. Calculate the taxes due on any distributions by the Fund by applying the tax rates specified in Instruction 4 to each component of the distributions on the reinvestment date (e.g., ordinary income, short-term capital gain, long-term capital gain). The taxable amount and tax character of each distribution should be as specified by the Fund on the dividend declaration date, but may be adjusted to reflect subsequent recharacterizations of distributions. Distributions should be adjusted to reflect the federal tax impact the distribution would have on an individual taxpayer on the reinvestment date. For example, assume no taxes are due on the portion of any distribution that would not result in federal income tax on an individual, e.g., tax-exempt interest or non-taxable returns of capital. The effect of applicable tax credits, such as the foreign tax credit, should be taken into account in accordance with federal tax law.

4. Calculate the taxes due using the highest individual marginal federal income tax rates in effect on the reinvestment date. The rates used should correspond to the tax character of each component of the distributions (e.g., ordinary income rate for

ordinary income distributions, short-term capital gain rate for short-term capital gain distributions, long-term capital gain rate for long-term capital gain distributions). Note that the required tax rates may vary over the measurement period. Disregard any potential tax liabilities other than federal tax liabilities (e.g., state and local taxes); the effect of phaseouts of certain exemptions, deductions, and credits at various income levels; and the impact of the federal alternative minimum tax.

5.  Include all recurring fees that are charged to all shareholder accounts. For any account fees that vary with the size of the account, assume an account size equal to the Fund's mean (or median) account size. Assume that no additional taxes or tax credits result from any redemption of shares required to pay such fees. Reflect, as appropriate, any recurring fees charged to shareholder accounts that are paid other than by redemption of the Fund's shares.

6.  Determine the ending value by assuming a complete redemption at the end of the 1-, 5-, or 10-year periods and the deduction of all nonrecurring charges deducted at the end of each period. If shareholders are assessed a deferred sales load, assume the maximum deferred sales load is deducted at the times, in the amounts, and under the terms disclosed in the prospectus.

7.  Determine the ending value by subtracting capital gains taxes resulting from the redemption and adding the tax benefit from capital losses resulting from the redemption.

    (a) Calculate the capital gain or loss upon redemption by subtracting the tax basis from the redemption proceeds (after deducting any nonrecurring charges as specified by Instruction 6).

    (b) The Fund should separately track the basis of shares acquired through the $1,000 initial investment and each subsequent purchase through reinvested distributions. In determining the basis for a reinvested distribution, include the distribution net of taxes assumed paid from the distribution, but not net of any sales loads imposed upon reinvestment. Tax basis should be adjusted for any distributions representing returns of capital and any other tax basis adjustments that would apply to an individual taxpayer, as permitted by applicable federal tax law.

    (c) The amount and character (e.g., short-term or long-term) of capital gain or loss upon redemption should be separately determined for shares acquired through the $1,000 initial investment and each subsequent purchase through reinvested distributions. The Fund should not assume that shares acquired through reinvestment of distributions have the same holding period as the initial $1,000 investment. The tax character should be determined by the length of the measurement period in the case of the initial $1,000 investment and the length of the period between reinvestment and the end of the measurement period in the case of reinvested distributions.

    (d) Calculate the capital gains taxes (or the benefit resulting from tax losses) using the highest federal individual capital gains tax rate for gains of the appropriate character in effect on the redemption date and in accordance with federal tax law applicable on the redemption date. For example, applicable federal tax law should be used to determine whether and how gains and losses from the sale of shares with different holding periods should be netted, as well as the tax character (e.g., short-term or long-term) of any resulting gains or losses. Assume that a shareholder has sufficient capital gains of the same character from other investments to offset any capital losses from the redemption so that the taxpayer may deduct the capital losses in full.

8.  State the average annual total return (after taxes on distributions and redemption) quotation to the nearest hundredth of one percent.

(4) *Yield Quotation.* Based on a 30-day (or one month) period ended on the date of the most recent balance sheet included in the registration statement, calculate the Fund's yield by dividing the net investment income per share earned during the period by the maximum offering price per share on the last day of the period, according to the following formula:

$$YIELD = 2[(\frac{a-b}{cd}+1)^6 -1]$$

Where:

a  =  dividends and interest earned during the period.
b  =  expenses accrued for the period (net of reimbursements).
c  =  the average daily number of shares outstanding during the period that were entitled to receive dividends.
d  =  the maximum offering price per share on the last day of the period.

*Instructions.*

1. To calculate interest earned on debt obligations for purposes of "a" above:

    (a) Calculate the yield to maturity of each obligation held by the Fund based on the market value of the obligation (including actual accrued interest) at the close of business on the last business day of each month or, with respect to obligations purchased during the month, the purchase price (plus actual accrued interest). The maturity of an obligation with a call provision(s) is the next call date on which the obligation reasonably may be expected to be called, or if none, the maturity date.

    (b) Divide the yield to maturity by 360 and multiply the quotient by the market value of the obligation (including actual accrued interest) to determine the interest income on the obligation for each day of the subsequent month that the obligation is in the portfolio. Assume that each month has 30 days.

    (c) Total the interest earned on all debt obligations and all dividends accrued on all equity securities during the 30-day (or one month) period. Although the period for calculating interest earned is based on calendar months, a 30-day yield may be calculated by aggregating the daily interest on the portfolio from portions of 2 months. In addition, a Fund may recalculate daily interest income on the portfolio more than once a month.

    (d) For a tax-exempt obligation issued without original issue discount and having a current market discount, use the coupon rate of interest in lieu of the yield to maturity. For a tax-exempt obligation with original issue discount in which the discount is based on the current market value and exceeds the then-remaining portion of original issue discount (market discount), base the yield to maturity on the imputed rate of the original issue discount calculation. For a tax-exempt obligation with original issue discount, where the discount based on the current market value is less than the then-remaining portion of original issue discount (market premium), base the yield to maturity on the market value.

2. For discount and premium on mortgage or other receivables-backed obligations that are expected to be subject to monthly payments of principal and interest ("paydowns"):

    (a) Account for gain or loss attributable to actual monthly paydowns as an increase or decrease to interest income during the period; and

    (b) The Fund may elect:

        (i) To amortize the discount and premium on the remaining securities, based on the cost of the securities, to the weighted average maturity date, if the information is available, or to the remaining term of the securities, if the weighted average maturity date is not available; or

        (ii) Not to amortize the discount or premium on the remaining securities.

3. Solely for the purpose of calculating yield, recognize dividend income by accruing 1/360 of the stated dividend rate of the security each day that the security is in the portfolio.

4. Do not use equalization accounting in calculating yield.

5. Include expenses accrued under a plan adopted under rule 12b-1 in the expenses accrued for the period. Reimbursement accrued under the plan may reduce the accrued expenses, but only to the extent the reimbursement does not exceed expenses accrued for the period.

6. Include in the expenses accrued for the period all recurring fees that are charged to all shareholder accounts in proportion to the length of the base period. For any account fees that vary with the size of the account, assume an account size equal to the Fund's mean (or median) account size.

7. If a broker-dealer or an affiliate of the broker-dealer (as defined in rule 1-02(b) of Regulation S-X [17 CFR 210.1-02(b)]) has, in connection with directing the Fund's brokerage transactions to the broker-dealer, provided, agreed to provide, paid for, or agreed to pay for, in whole or in part, services provided to the Fund (other than brokerage and research services as those terms are used in section 28(e) of the Securities Exchange Act [15 U.S.C. 78bb(e)]), add to expenses accrued for the period an estimate of additional amounts that would have been accrued for the period if the Fund had paid for the services directly in an arm's length transaction.

8. Undeclared earned income, calculated in accordance with generally accepted accounting principles, may be subtracted from the maximum offering price. Undeclared earned income is the net investment income that, at the end of the base period, has not been declared as a dividend, but is reasonably expected to be and is declared as a dividend shortly thereafter.

9. Disclose the amount or specific rate of any nonrecurring account or sales charges.

10. If, in connection with the sale of the Fund's shares, a deferred sales load payable in installments is imposed, the "maximum public offering price" includes the aggregate amount of the installments ("installment load amount").

(5) *Tax Equivalent Yield Quotation.* Based on a 30-day (or one month) period ended on the date of the most recent balance sheet included in the registration statement, calculate the Fund's tax equivalent yield by dividing that portion of the Fund's yield (as calculated under paragraph (b)(2)) that is tax-exempt by 1 minus a stated income tax rate and adding the quotient to that portion, if any, of the Fund's yield that is not tax-exempt.

(6) *Non-Standardized Performance Quotation.* A Fund may calculate performance using any other historical measure of performance (not subject to any prescribed method of computation) if the measurement reflects all elements of return.

## Item 22.  Financial Statements

(a) *Registration Statement.* Include, in a separate section following the responses to the preceding Items, the financial statements and schedules required by Regulation S-X. The specimen price-make-up sheet required by Instruction 4 to Item 17(c) may be provided as a continuation of the balance sheet specified by Regulation S-X.

*Instructions.*

1. The statements of any subsidiary that is not a majority-owned subsidiary required by Regulation S-X may be omitted from Part B and included in Part C.

2. In addition to the requirements of rule 3-18 of Regulation S-X [17 CFR 210.3-18], any Fund registered under the Investment Company Act that has not previously had an effective registration statement under the Securities Act must include in its initial registration statement under the Securities Act any additional financial statements and condensed financial information (which need not be audited) necessary to make the financial statements and condensed financial information included in the registration statement current as of a date within 90 days prior to the date of filing.

(b) *Annual Report.* Every annual report to shareholders required by rule 30e-1 must contain the following:

(1) *Financial Statements.* The audited financial statements required, and for the periods specified, by Regulation S-X.

*Instructions.*

1. *Schedule VI – Summary schedule of investments in securities of unaffiliated issuers* [17 CFR 210.12-12C] may be included in the financial statements in lieu of *Schedule I – Investments in securities of unaffiliated issuers* [17 CFR 210.12-12] if: (a) the Fund states in the report that the Fund's complete schedule of investments in securities of unaffiliated issuers is available (i) without charge, upon request, by calling a specified toll-free (or collect) telephone number; (ii) on the Fund's website, if applicable; and (iii) on the Commission's website at http://www.sec.gov; and (b) whenever the Fund (or financial intermediary through which shares of the Fund may be purchased or sold) receives a request for the Fund's schedule of investments in securities of unaffiliated issuers, the Fund (or financial intermediary) sends a copy of *Schedule I – Investments in securities of unaffiliated issuers* within 3 business days of receipt by first-class mail or other means designed to ensure equally prompt delivery.

2. In the case of a Money Market Fund, *Schedule I – Investments in securities of unaffiliated issuers* [17 CFR 210.12-12C] may be omitted from its financial statements, provided that: (a) the Fund states in the report that the Fund's complete schedule of investments in securities of unaffiliated issuers is available (i) without charge, upon request, by calling a specified toll-free (or collect) telephone number; (ii) on the Fund's website, if applicable; and (iii) on the Commission's website at http://www.sec.gov; and (b) whenever the Fund (or financial intermediary through which shares of the Fund may be purchased or sold) receives a request for the Fund's schedule of investments in securities of unaffiliated issuers, the Fund (or financial intermediary) sends a copy of *Schedule I – Investments in securities of unaffiliated issuers* within 3 business days of receipt by first-class mail or other means designed to ensure equally prompt delivery.

(2) *Condensed Financial Information.* The condensed financial information required by Item 8(a) with at least the most recent fiscal year audited.

(3) *Remuneration Paid to Directors, Officers, and Others.* Unless shown elsewhere in the report as part of the financial statements required by paragraph (b)(1), the aggregate remuneration paid by the Fund during the period covered by the report to:
   (i)   All directors and all members of any advisory board for regular compensation;

   (ii)  Each director and each member of an advisory board for special compensation;

   (iii) All officers; and

   (iv)  Each person of whom any officer or director of the Fund is an affiliated person.

(4) *Changes in and Disagreements with Accountants.* The information concerning changes in and disagreements with accountants and on accounting and financial disclosure required by Item 304 of Regulation S-K [17 CFR 229.304].

(5) *Management Information.* The management information required by Item 12(a)(1).

(6) *Availability of Additional Information about Fund Directors.* A statement that the SAI includes additional information about Fund directors and is available, without charge, upon request, and a toll-free (or collect) telephone number for shareholders to call to request the SAI.

(7) *Management's Discussion of Fund Performance.* Disclose the following information unless the Fund is a Money Market Fund:

   (i)  Discuss the factors that materially affected the Fund's performance during the most recently completed fiscal year, including the relevant market conditions and the investment strategies and techniques used by the Fund's investment adviser.

   (ii) (A) Provide a line graph comparing the initial and subsequent account values at the end of each of the most recently completed 10 fiscal years of the Fund (or for the life of the Fund, if shorter), but only for periods subsequent to the effective date of the Fund's registration statement. Assume a $10,000 initial investment at the beginning of the first fiscal year in an appropriate broad-based securities market index for the same period.

   (B) In a table placed within or next to the graph, provide the Fund's average annual total returns for the 1-, 5-, and 10-year periods as of the end of the last day of the most recent fiscal year (or for the life of the Fund, if shorter), but only for periods subsequent to the effective date of the Fund's registration statement. Average annual total returns should be computed in accordance with Item 21(b)(1). Include a statement accompanying the graph and table to the effect that past performance does not predict future performance and that the graph and table do not reflect the deduction of taxes that a shareholder would pay on fund distributions or the redemption of fund shares.

*Instructions.*

   1.  *Line Graph Computation.*

      (a) Assume that the initial investment was made at the offering price last calculated on the business day before the first day of the first fiscal year.

      (b) Base subsequent account values on the net asset value of the Fund last calculated on the last business day of the first and each subsequent fiscal year.

      (c) Calculate the final account value by assuming the account was closed and redemption was at the price last calculated on the last business day of the most recent fiscal year.

      (d) Base the line graph on the Fund's required minimum initial investment if that amount exceeds $10,000.

   2.  *Sales Load.* Reflect any sales load (or any other fees charged at the time of purchasing shares or opening an account) by beginning the line graph at the amount that actually would be invested (i.e., assume that the maximum sales load, and other charges deducted from payments, is deducted from the initial $10,000 investment). For a Fund

whose shares are subject to a contingent deferred sales load, assume the deduction of the maximum deferred sales load (or other charges) that would apply for a complete redemption that received the price last calculated on the last business day of the most recent fiscal year. For any other deferred sales load, assume that the deduction is in the amount(s) and at the time(s) that the sales load actually would have been deducted.

3.  *Dividends and Distributions.* Assume reinvestment of all of the Fund's dividends and distributions on the reinvestment dates during the period, and reflect any sales load imposed upon reinvestment of dividends or distributions or both.

4.  *Account Fees.* Reflect recurring fees that are charged to all accounts.

    (a)  For any account fees that vary with the size of the account, assume a $10,000 account size.

    (b)  Reflect, as appropriate, any recurring fees charged to shareholder accounts that are paid other than by redemption of the Fund's shares.

    (c)  Reflect an annual account fee that applies to more than one Fund by allocating the fee in the following manner: divide the total amount of account fees collected during the year by the Funds' total average net assets, multiply the resulting percentage by the average account value for each Fund and reduce the value of each hypothetical account at the end of each fiscal year during which the fee was charged.

5.  *Appropriate Index.* For purposes of this Item, an "appropriate broad-based securities market index" is one that is administered by an organization that is not an affiliated person of the Fund, its investment adviser, or principal underwriter, unless the index is widely recognized and used. Adjust the index to reflect the reinvestment of dividends on securities in the index, but do not reflect the expenses of the Fund.

6.  *Additional Indexes.* A Fund is encouraged to compare its performance not only to the required broad-based index, but also to other more narrowly based indexes that reflect the market sectors in which the Fund invests. A Fund also may compare its performance to an additional broad-based index, or to a non-securities index (e.g., the Consumer Price Index), so long as the comparison is not misleading.

7.  *Change in Index.* If the Fund uses an index that is different from the one used for the immediately preceding fiscal year, explain the reason(s) for the change and compare the Fund's annual change in the value of an investment in the hypothetical account with the new and former indexes.

8.  *Other Periods.* The line graph may cover earlier fiscal years and may compare the ending values of interim periods (e.g., monthly or quarterly ending values), so long as those periods are after the effective date of the Fund's registration statement.

9.  *Scale.* The axis of the graph measuring dollar amounts may use either a linear or a logarithmic scale.

10.  *New Funds.* A New Fund (as defined in Instruction 5 to Item 3) is not required to include the information specified by this Item in its prospectus (or annual report), unless Form N-1A (or the annual report) contains audited financial statements covering a period of at least 6 months.

11.  *Change in Investment Adviser.* If the Fund has not had the same investment adviser for the previous 10 fiscal years, the Fund may begin the line graph on the date that the current adviser began to provide advisory services to the Fund so long as:

    (a)  Neither the current adviser nor any affiliate is or has been in "control" of the previous adviser under section 2(a)(9) [15 U.S.C. 80a-2(a)(9)];

    (b)  The current adviser employs no officer(s) of the previous adviser or employees of the previous adviser who were responsible for providing investment advisory or portfolio management services to the Fund; and

    (c)  The graph is accompanied by a statement explaining that previous periods during which the Fund was advised by another investment adviser are not shown.

(iii) Discuss the effect of any policy or practice of maintaining a specified level of distributions to shareholders on the

Fund's investment strategies and per share net asset value during the last fiscal year. Also discuss the extent to which the Fund's distribution policy resulted in distributions of capital.

(c) *Semi-Annual Report.* Every semi-annual report to shareholders required by rule 30e-1 must contain the following (which need not be audited):

(1) *Financial Statements.* The financial statements required by Regulation S-X for the period commencing either with:

(i) The beginning of the Fund's fiscal year (or date of organization, if newly organized); or

(ii) A date not later than the date after the close of the period included in the last report under rule 30e-1 and the most recent preceding fiscal year.

*Instruction.* Instructions 1 and 2 to Item 22(b)(1) also apply to this Item 22(c)(1).

(2) *Condensed Financial Information.* The condensed financial information required by Item 8(a), for the period of the report as specified by paragraph (c)(1), and the most recent preceding fiscal year.

(3) *Remuneration Paid to Directors, Officers, and Others.* Unless shown elsewhere in the report as part of the financial statements required by paragraph (c)(1), the aggregate remuneration paid by the Fund during the period covered by the report to the persons specified under paragraph (b)(3).

(4) *Changes in and Disagreements with Accountants.* The information concerning changes in and disagreements with accountants and on accounting and financial disclosure required by Item 304 of Regulation S-K [17 CFR 229.304].

(d) *Annual and Semi-Annual Reports.* Every annual and semi-annual report to shareholders required by rule 30e-1 must contain the following:

(1) *Expense Example.* The following information regarding expenses for the period:

## Example

As a shareholder of the Fund, you incur two types of costs: (1) transaction costs, including sales charges (loads) on purchase payments, reinvested dividends, or other distributions; redemption fees; and exchange fees; and (2) ongoing costs, including management fees; distribution [and/or service] (12b-1) fees; and other Fund expenses. This Example is intended to help you understand your ongoing costs (in dollars) of investing in the Fund and to compare these costs with the ongoing costs of investing in other mutual funds.

The Example is based on an investment of $1,000 invested at the beginning of the period and held for the entire period [insert dates].

## Actual Expenses

The first line of the table below provides information about actual account values and actual expenses. You may use the information in this line, together with the amount you invested, to estimate the expenses that you paid over the period. Simply divide your account value by $1,000 (for example, an $8,600 account value divided by $1,000 = 8.6), then multiply the result by the number in the first line under the heading entitled "Expenses Paid During Period" to estimate the expenses you paid on your account during this period. [If the Fund charges any account fees or other recurring fees that are not included in the expenses shown in the table, for example, because they are not charged to all investors, disclose the amounts of these fees, describe the accounts that are charged these fees, and explain how an investor would use this information to estimate the total ongoing expenses paid over the period and the impact of these fees on ending account value.]

## Hypothetical Example for Comparison Purposes

The second line of the table below provides information about hypothetical account values and hypothetical expenses based on the Fund's actual expense ratio and an assumed rate of return of 5% per year before expenses, which is not the Fund's actual return. The hypothetical account values and expenses may not be used to estimate the actual ending account balance or expenses you paid for the period. You may use this information to compare the ongoing costs of investing in the Fund and other funds. To do so, compare this 5% hypothetical example with the 5% hypothetical examples that appear in the shareholder reports of the other funds. [If the Fund charges any account fees or other recurring fees that are not included in the expenses shown in the table,

for example, because they are not charged to all investors, disclose the amounts of these fees, describe the accounts that are charged these fees, and explain how an investor would use this information in making the foregoing comparison.]

Please note that the expenses shown in the table are meant to highlight your ongoing costs only and do not reflect any transactional costs, such as sales charges (loads), redemption fees, or exchange fees. Therefore, the second line of the table is useful in comparing ongoing costs only, and will not help you determine the relative total costs of owning different funds. In addition, if these transactional costs were included, your costs would have been higher.

| | Beginning Account Value [Date] | Ending Account Value [Date] | Expenses Paid During Period* [Dates] |
|---|---|---|---|
| Actual | $1,000 | | |
| Hypothetical (5% return before expenses) | $1,000 | | |

* Expenses are equal to the Fund's annualized expense ratio of [__%], multiplied by the average account value over the period, multiplied by [number of days in most recent fiscal half-year/365 [or 366]] (to reflect the one-half year period).

*Instructions.*

1. *General.*

   (a) Round all figures in the table to the nearest cent.

   (b) Include the narrative explanations in the order indicated. A Fund may modify the narrative explanations if the explanation contains comparable information to that shown, and is required to make any modifications necessary to reflect accurately the Fund's circumstances. A Fund may eliminate any parts of the narrative explanations that are inapplicable. For example, a Fund that does not charge loads need not include the statement that the Example does not reflect loads or that costs would be higher if loads were included.

   (c) The Fund's expense ratio shown in the footnote to the table should be calculated in the manner required by Instruction 4(b) to Item 8(a) using the expenses for the Fund's most recent fiscal half-year (the Fund's second fiscal half-year in the case of an annual report). Express the expense ratio on an annualized basis.

   (d) (i) If the Fund is a Feeder Fund, reflect the aggregate expenses of the Feeder Fund and the Master Fund. In a footnote to the Example, state that the Example reflects the expenses of both the Feeder and Master Funds.

       (ii) If the report covers more than one Class of a Multiple Class Fund or more than one Feeder Fund that invests in the same Master Fund, provide a separate Example for each Class or Feeder Fund.

2. *Computation.*

   (a) (i) In determining the Fund's "actual expenses" for purposes of this example, include all expenses that are deducted from the Fund's assets or charged to all shareholder accounts, including "Management Fees," "Distribution [and/or Service] (12b-1) Fees," and "Other Expenses" as those terms are defined in Instruction 3 to Item 3 of this form as modified by Instructions 2(a)(ii) and (c)(i) to this Item. Reflect recurring and non-recurring fees charged to all investors other than any exchange fees, sales charges (loads), or fees charged upon redemption of the Fund's shares. The amount of expenses deducted from the Fund's assets are the amounts shown as expenses in the Fund's statement of operations (including increases resulting from complying with paragraph 2(g) of rule 6-07 of Regulation S-X [17 CFR 210.6-07]).

       (ii) For purposes of this Item 22(d)(1), "Other Expenses" include extraordinary expenses as determined under generally accepted accounting principles (see Accounting Principles Board Opinion No. 30). If extraordinary expenses were incurred that materially affected the Fund's "Other Expenses," the Fund may disclose in a footnote to the Example what "actual expenses" would have been had the extraordinary expenses not been included.

(b) Assume reinvestment of all dividends and distributions.

    (c) (i)  Base the percentages of "actual expenses" on amounts incurred during the Fund's most recent fiscal half-year (the Fund's second fiscal half-year in the case of an annual report). "Actual expenses" should reflect actual expenses after expense reimbursement or fee waiver arrangements that reduced expenses during the most recent fiscal half-year.

        (ii)  If there have been any increases or decreases in Fund expenses that occurred during the Fund's most recent fiscal half-year (or that have occurred or are expected to occur during the current fiscal year) that would have materially affected the information in the Example had those changes been in place throughout the most recent fiscal half-year, restate in a footnote to the Example the expense information using the current fees as if they had been in effect throughout the entire most recent fiscal half-year. A change in Fund expenses does not include a decrease in expenses as a percentage of assets due to economies of scale or breakpoints in a fee arrangement resulting from an increase in the Fund's assets.

    (d)  Reflect any shareholder account fees collected by more than one Fund by allocating the total amount of the fees collected during the Fund's most recent fiscal half-year (the Fund's second fiscal half-year in the case of an annual report) for all such Funds to each Fund in proportion to the relative average net assets of the Fund. A Fund that charges account fees based on a minimum account requirement exceeding $1,000 may adjust its account fees based on the amount of the fee in relation to the Fund's minimum account requirement.

(2) *Graphical Representation of Holdings.* One or more tables, charts, or graphs depicting the portfolio holdings of the Fund by reasonably identifiable categories (e.g., type of security, industry sector, geographic region, credit quality, or maturity) showing the percentage of net asset value or total investments attributable to each. The categories and the basis of presentation (e.g., net asset value or total investments) should be selected, and the presentation should be formatted, in a manner reasonably designed to depict clearly the types of investments made by the Fund, given its investment objectives. Credit quality should be the ratings grade assigned by a nationally recognized statistical rating organization ("NRSRO"), as that term is used in paragraphs (c)(2)(vi)(E), (F), and (H) of Rule 15c3-1 under the Exchange Act [17 CFR 240.15c3-1(c)(2)(vi)(E), (F), and (H)]. The fund should use ratings of only one NRSRO.

(3) *Statement Regarding Availability of Quarterly Portfolio Schedule.* A statement that: (i) the Fund files its complete schedule of portfolio holdings with the Commission for the first and third quarters of each fiscal year on Form N-Q; (ii) the Fund's Forms N-Q are available on the Commission's website at http://www.sec.gov; (iii) the Fund's Forms N-Q may be reviewed and copied at the Commission's Public Reference Room in Washington, DC, and that information on the operation of the Public Reference Room may be obtained by calling 1-800-SEC-0330; and (iv) if the Fund makes the information on Form N-Q available to shareholders on its website or upon request, a description of how the information may be obtained from the Fund.

(4) *Statement Regarding Availability of Proxy Voting Policies and Procedures.* A statement that a description of the policies and procedures that the Fund uses to determine how to vote proxies relating to portfolio securities is available (i) without charge, upon request, by calling a specified toll-free (or collect) telephone number; (ii) on the Fund's website, if applicable; and (iii) on the Commission's website at http://www.sec.gov.

*Instruction.* When a Fund (or financial intermediary through which shares of the Fund may be purchased or sold) receives a request for a description of the policies and procedures that the Fund uses to determine how to vote proxies, the Fund (or financial intermediary) must send the information disclosed in response to Item 12(f) of this Form, within three business days of receipt of the request, by first-class mail or other means designed to ensure equally prompt delivery.

(5) *Statement Regarding Availability of Proxy Voting Record.* A statement that information regarding how the Fund voted proxies relating to portfolio securities during the most recent 12-month period ended June 30 is available (i) without charge, upon request, by calling a specified toll-free (or collect) telephone number; or on or through the Fund's website at a specified Internet address; or both; and (ii) on the Commission's website at http://www.sec.gov.

- *Instructions.*

1.  If a Fund discloses that the Fund's proxy voting record is available by calling a toll-free (or collect) telephone number, and the Fund (or financial intermediary through which shares of the Fund may be purchased or sold) receives a request for this information, the Fund (or financial intermediary) must send the information disclosed in the Fund's most recently filed

report on Form N-PX, within three business days of receipt of the request, by first-class mail or other means designed to ensure equally prompt delivery.

2.  If a Fund discloses that the Fund's proxy voting record is available on or through its website, the Fund must make available free of charge the information disclosed in the Fund's most recently filed report on Form N-PX on or through its website as soon as reasonably practicable after filing the report with the Commission. The information disclosed in the Fund's most recently filed report on Form N-PX must remain available on or through the Fund's website for as long as the Fund remains subject to the requirements of Rule 30b1-4 (17 CFR 270.30b1-4) and discloses that the Fund's proxy voting record is available on or through its website.

(6)  *Statement Regarding Basis for Approval of Investment Advisory Contract.* If the board of directors approved any investment advisory contract during the Fund's most recent fiscal half-year, discuss in reasonable detail the material factors and the conclusions with respect thereto that formed the basis for the board's approval. Include the following in the discussion:

(i)  Factors relating to both the board's selection of the investment adviser and approval of the advisory fee and any other amounts to be paid by the Fund under the contract. This would include, but not be limited to, a discussion of the nature, extent, and quality of the services to be provided by the investment adviser; the investment performance of the Fund and the investment adviser; the costs of the services to be provided and profits to be realized by the investment adviser and its affiliates from the relationship with the Fund; the extent to which economies of scale would be realized as the Fund grows; and whether fee levels reflect these economies of scale for the benefit of Fund investors. Also indicate in the discussion whether the board relied upon comparisons of the services to be rendered and the amounts to be paid under the contract with those under other investment advisory contracts, such as contracts of the same and other investment advisers with other registered investment companies or other types of clients (*e.g.*, pension funds and other institutional investors). If the board relied upon such comparisons, describe the comparisons that were relied on and how they assisted the board in concluding that the contract should be approved; and

(ii)  If applicable, any benefits derived or to be derived by the investment adviser from the relationship with the Fund such as soft dollar arrangements by which brokers provide research to the Fund or its investment adviser in return for allocating Fund brokerage.

*Instructions.*

1.  Board approvals covered by this Item include both approvals of new investment advisory contracts and approvals of contract renewals. Investment advisory contracts covered by this Item include subadvisory contracts.

2.  Conclusory statements or a list of factors will not be considered sufficient disclosure. Relate the factors to the specific circumstances of the Fund and the investment advisory contract and state how the board evaluated each factor. For example, it is not sufficient to state that the board considered the amount of the investment advisory fee without stating what the board concluded about the amount of the fee and how that affected its decision to approve the contract.

3.  If any factor enumerated in paragraph (d)(6)(i) of this Item is not relevant to the board's evaluation of an investment advisory contract, note this and explain the reasons why that factor is not relevant.

## PART C: OTHER INFORMATION

**Item 23.  Exhibits**

Subject to General Instruction D regarding incorporation by reference and rule 483 under the Securities Act [17 CFR 230.483], file the exhibits listed below as part of the registration statement. Letter or number the exhibits in the sequence indicated and file copies rather than originals, unless otherwise required by rule 483. Reflect any exhibit incorporated by reference in the list below and identify the previously filed document containing the incorporated material.

(a)  *Articles of Incorporation.* The Fund's current articles of incorporation, charter, declaration of trust or corresponding instruments and any related amendment.

(b)  *By-laws.* The Fund's current by-laws or corresponding instruments and any related amendment.

(c)  *Instruments Defining Rights of Security Holders.* Instruments defining the rights of holders of the securities being registered, including the relevant portion of the Fund's articles of incorporation or by-laws.

(d)  *Investment Advisory Contracts.* Investment advisory contracts relating to the management of the Fund's assets.

(e) *Underwriting Contracts.* Underwriting or distribution contracts between the Fund and a principal underwriter, and agreements between principal underwriters and dealers.

(f) *Bonus or Profit Sharing Contracts.* Bonus, profit sharing, pension, or similar contracts or arrangements in whole or in part for the benefit of the Fund's directors or officers in their official capacity. Describe in detail any plan not included in a formal document.

(g) *Custodian Agreements.* Custodian agreements and depository contracts under section 17(f) [15 U.S.C. 80a-17(f)] concerning the Fund's securities and similar investments, including the schedule of remuneration.

(h) *Other Material Contracts.* Other material contracts not made in the ordinary course of business to be performed in whole or in part on or after the filing date of the registration statement.

(i) *Legal Opinion.* An opinion and consent of counsel regarding the legality of the securities being registered, stating whether the securities will, when sold, be legally issued, fully paid, and nonassessable.

(j) *Other Opinions.* Any other opinions, appraisals, or rulings, and related consents relied on in preparing the registration statement and required by section 7 of the Securities Act [15 U.S.C. 77g].

(k) *Omitted Financial Statements.* Financial statements omitted from Item 22.

(l) *Initial Capital Agreements.* Any agreements or understandings made in consideration for providing the initial capital between or among the Fund, the underwriter, adviser, promoter or initial shareholders and written assurances from promoters or initial shareholders that purchases were made for investment purposes and not with the intention of redeeming or reselling.

(m) *Rule 12b-1 Plan.* Any plan entered into by the Fund under rule 12b-1 and any agreements with any person relating to the plan's implementation.

(n) *Rule 18f-3 Plan.* Any plan entered into by the Fund under rule 18f-3, any agreement with any person relating to the plan's implementation, and any amendment to the plan or an agreement.

(o) *Reserved.*

(p) *Codes of Ethics.* Any codes of ethics adopted under rule 17j-1 of the Investment Company Act [17 CFR 270.17j-1] and currently applicable to the Fund (*i.e.*, the codes of the Fund and its investment advisers and principal underwriters). If there are no codes of ethics applicable to the Fund, state the reason (*e.g.*, that the Fund is a Money Market Fund).

*Instruction.* A Fund that is a feeder fund also must file a copy of all codes of ethics applicable to the master fund.

**Item 24.    Persons Controlled by or Under Common Control with the Fund**

Provide a list or diagram of all persons directly or indirectly controlled by or under common control with the Fund. For any person controlled by another person, disclose the percentage of voting securities owned by the immediately controlling person or other basis of that person's control. For each company, also provide the state or other sovereign power under the laws of which the company is organized.

*Instructions.*

1.  Include the Fund in the list or diagram and show the relationship of each company to the Fund and to the other companies named, using cross-references if a company is controlled through direct ownership of its securities by two or more persons.

2.  Indicate with appropriate symbols subsidiaries that file separate financial statements, subsidiaries included in consolidated financial statements, or unconsolidated subsidiaries included in group financial statements. Indicate for other subsidiaries why financial statements are not filed.

**Item 25.    Indemnification**

State the general effect of any contract, arrangements or statute under which any director, officer, underwriter or affiliated person of the Fund is insured or indemnified against any liability incurred in their official capacity, other than insurance provided by any director, officer, affiliated person, or underwriter for their own protection.

**Item 26.    Business and Other Connections of the Investment Adviser**

Describe any other business, profession, vocation or employment of a substantial nature that each investment adviser, and each director, officer or partner of the adviser, is or has been engaged within the last two fiscal years for his or her own account or in the capacity of director, officer, employee, partner, or trustee.

*Instructions.*

1. Disclose the name and principal business address of any company for which a person listed above serves in the capacity of director, officer, employee, partner, or trustee, and the nature of the relationship.

2. The names of investment advisory clients need not be given in answering this Item.

**Item 27.    Principal Underwriters**

(a) State the name of each investment company (other than the Fund) for which each principal underwriter currently distributing the Fund's securities also acts as a principal underwriter, depositor, or investment adviser.

(b) Provide the information required by the following table for each director, officer, or partner of each principal underwriter named in the response to Item 20:

| (1) | (2) | (3) |
|---|---|---|
| **Name and Principal Business Address** | **Positions and Offices with Underwriter** | **Positions and Offices with Fund** |
| | | |

(c) Provide the information required by the following table for all commissions and other compensation received, directly or indirectly, from the Fund during the last fiscal year by each principal underwriter who is *not* an affiliated person of the Fund or any affiliated person of an affiliated person:

| (1) | (2) | (3) | (4) | (5) |
|---|---|---|---|---|
| **Name of Principal Underwriter** | **Net Underwriting Discounts and Commissions** | **Compensation on Redemption and Repurchases** | **Brokerage Commissions** | **Other Compensation** |

*Instructions.*

1. Disclose the type of services rendered in consideration for the compensation listed under column (5).

2. Instruction 1 to Item 20(c) also applies to this Item.

**Item 28.    Location of Accounts and Records**

State the name and address of each person maintaining physical possession of each account, book, or other document required to be maintained by section 31(a) [15 U.S.C. 80a-30(a)] and the rules under that section.

**Item 29.    Management Services**

Provide a summary of the substantive provisions of any management-related service contract not discussed in Part A or B, disclosing the parties to the contract and the total amount paid and by whom for the Fund's last three fiscal years.

*Instructions.*

1. The instructions to Item 14 also apply to this Item.

2. Exclude information about any service provided for payments totaling less than $5,000 during each of the last three fiscal years.

**Item 30.   Undertakings**

In initial registration statements filed under the Securities Act, provide an undertaking to file an amendment to the registration statement with certified financial statements showing the initial capital received before accepting subscriptions from more than 25 persons if the Fund intends to raise its initial capital under section 14(a)(3) [15 U.S.C. 80a-14(a)(3)].

**SIGNATURES**

Pursuant to the requirements of (the Securities Act and) the Investment Company Act, the Fund (certifies that it meets all of the requirement for effectiveness of this registration statement under rule 485(b) under the Securities Act and) has duly caused this registration statement to be signed on its behalf by the undersigned, duly authorized, in the City of _____, and State of_____on the day of_____, _____.

(Year)

_____

Fund

By_____

(Signature and Title)

Pursuant to the requirements of the Securities Act, this registration statement has been signed below by the following persons in the capacities and on the date(s) indicated.

_____

| (Signature) | (Title) | (Date) |
|-------------|---------|--------|

**Item 30.  Undertakings**

In initial registration statements filed under the Securities Act, provide an undertaking to file an amendment to the registration statement with certified financial statements showing the initial capital received before accepting subscriptions from more than 25 persons if the Fund intends to raise its initial capital under section 14(a)(3) [15 U.S.C. 80a-14(a)(3)].

**SIGNATURES**

Pursuant to the requirements of (the Securities Act and) the Investment Company Act, the Fund (certifies that it meets all of the requirement for effectiveness of this registration statement under rule 485(b) under the Securities Act and) has duly caused this registration statement to be signed on its behalf by the undersigned, duly authorized, in the City of _____, and State of_____on the day of_____, _____.

(Year)

_____

Fund

By_____

(Signature and Title)

Pursuant to the requirements of the Securities Act, this registration statement has been signed below by the following persons in the capacities and on the date(s) indicated.

_____

(Signature)                          (Title)                          (Date)