# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ERIC FORSYTHE, et al.,<br><br>        Plaintiffs,<br>  v.<br><br>SUN LIFE FINANCIAL, INC., ET AL.,<br><br>        Defendants. | No. 04-10584-GAO<br><br>Consolidated Cases Nos.:<br><br>04-10764-GAO<br>04-11019-GAO |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS'
MOTION TO DISMISS THE CONSOLIDATED AMENDED COMPLAINT**

Jeffrey B. Rudman (BBO #433380)
William H. Paine (BBO #550506)
Michael G. Bongiorno (BBO #558748)
Jonathan A. Shapiro (BBO #567838)
WILMER CUTLER PICKERING
   HALE AND DORR LLP
60 State Street
Boston, MA  02109
(617) 526-6000

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...............................................................................................iii

INTRODUCTION .............................................................................................................1

ARGUMENT......................................................................................................................2

I.  Plaintiffs Lack Standing Under Article III To Raise Claims
    Regarding Mutual Funds They Have Never Owned ...........................................2

    A.  Article III Standing Is A Constitutional Prerequisite To Federal
        Jurisdiction Separate From Issues Of Class Certification .......................2

    B.  Plaintiffs' Policy Arguments Cannot Expand Federal Court Jurisdiction...........5

    C.  Plaintiffs Cannot Establish Standing Through "Juridical Link" Analysis ..............6

II.  Plaintiffs' Investment Company Act Claims Are Defective .................................7

    A.  There Is No Private Right Of Action Under Sections 36(a)
        Or 34(b) Of The Investment Company Act.................................................7

    B.  Plaintiffs Have Failed To State A Claim
        Under Section 36(b) Of The ICA ...........................................................10

        1.  Section 36(b) Does Not Provide A
            Remedy For Disclosure Claims .................................................10

        2.  Plaintiffs' Reliance On Wicks Is Misplaced.............................13

        3.  Plaintiffs Have Failed To Plead Facts Showing That The Fees
            Charged Were Disproportionate To The Services Rendered ...................13

        4.  The Section 36(b) Claims Do Not
            Meet The Standards Of Rule 8(a)............................................15

    C.  The Trustees Are Not Proper Defendants............................................16

    D.  Plaintiffs Fail To State A Claim Under Section 48(a) Of The ICA......................17

III.  Plaintiffs' Derivative Claims Should Be Dismissed........................................19

    A.  Plaintiffs Fail To Plead Facts Showing
        That Demand Is Excused Under The ICA......................................................19

    B.  Massachusetts Common Law Demand Excused Requirements ...........................19

i

C.      Plaintiffs Have No Standing To Bring Their IAA Claim
        As Members Of An Unincorporated Association.....................................22

D.      Plaintiffs' IAA Claim Must Be Dismissed As Inadequate ....................................23

E.      Plaintiffs' State Law Claims Should Be Dismissed .............................................24

        1.      Plaintiffs' State Law Claims Are Derivative Claims
                That Have Been Improperly Pleaded As Direct Claims..........................24

        2.      SLUSA Preempts All of Plaintiffs' State Law Claims .............................26

        3.      Plaintiffs' Breach Of Fiduciary Duty, Aiding And
                Abetting Breach Of Fiduciary Duty, And Unjust
                Enrichment Claims Are Defective ............................................................27

                a.      Plaintiffs' Breach Of Fiduciary Duty Claims Are Defective ............27

                b.      Plaintiffs' Aiding And Abetting Breach
                        Of Fiduciary Duty Claims Are Defective ...........................................29

                c.      Plaintiffs' Unjust Enrichment Claims Are Defective .......................29

CONCLUSION........................................................................................................................30

# TABLE OF AUTHORITIES

Federal Cases

Adair v. Sorenson,
134 F.R.D. 13 (D. Mass. 1991)......................................................................................2

Alves v. Harvard Pilgrim Health Care, Inc.,
204 F. Supp. 2d 198 (D. Mass. 2002)........................................................................4, 6

Angel Music, Inc. v. ABC Sports, Inc.,
112 F.R.D. 70 (S.D.N.Y. 1986) .....................................................................................4

Araujo v. John Hancock Life Ins. Co.,
206 F. Supp. 2d 377 (E.D.N.Y. 2002) .........................................................................26

Batra v. Investors Research Corp.,
1991 U.S. Dist. LEXIS 14773 (W.D. Mo. Oct. 4, 1991)...............................................5

Blasberg v. Oxbow Power Corp.,
934 F. Supp. 21 (D. Mass. 1996)..................................................................................24

Blue Chip Stamps v. Manor Drug Stores,
421 U.S. 723 (1975)......................................................................................................27

Blum v. Yaretsky,
457 U.S. 991 (1982)........................................................................................2, 3, 4, 5, 6

Bogart v. Shearson Lehman Bros.,
1993 U.S. Dist. Lexis 1182 (S.D.N.Y. Feb. 3, 1993) ..................................................24

Brandt v. Hicks, Muse & Co.,
213 B.R. 784 (D. Mass. 1997), aff'd, 242 F.3d 6 (1st Cir. 2001) ...............................28

CALPERS v. Coulter,
2002 Del. Ch. Lexis 144 (Dec. 18, 2002) ....................................................................20

Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.,
511 U.S. 164 (1994)......................................................................................................10

Chamberlain v. Aberdeen Asset Mgmt. Ltd.,
2005 WL 195520 (E.D.N.Y. Jan. 21, 2005) ..................................................................9

Cohen v. Fund Asset Mgmt., Inc.,
1980 WL 1488 (S.D.N.Y. Mar. 31, 1980) ...................................................................16

Cooper v. Univ. of Tex. at Dallas,
   482 F. Supp. 187 (N.D. Tex. 1979) ........................................................................4

Curley v. N. Am. Man Boy Love Ass'n,
   2003 WL 21696547 (D. Mass. Mar. 31, 2003) ......................................................22

DH2, Inc. v. Athanassiades,
   359 F. Supp. 2d 708 (N.D. Ill. 2005) ......................................................................7

Dowling v. Narragansett Capital Corp.,
   735 F. Supp. 1105 (D.R.I. 1990) ...........................................................................18

Drasner v. Thomason McKinnon Sec., Inc.,
   433 F. Supp. 485 (S.D.N.Y. 1977) ........................................................................23

Eureka Broadband Corp. v. Wentworth Leasing Corp.,
   2004 WL 344425 (D. Mass. Feb 24, 2004) ...........................................................29

Fallick v. Nationwide Mut. Ins. Co.,
   162 F.3d 410 (6th Cir. 1998) ...................................................................................4

Feitelberg v. Merrill Lynch & Co.,
   234 F. Supp. 2d 1043 (N.D. Cal. 2002) .................................................................26

Gartenberg v. Merrill Lynch Asset Mgmt., Inc.,
   694 F.2d 923 (2d Cir. 1982) ..................................................................................14

GFL Advantage Fund, Ltd. v. Colkitt,
   272 F.3d 189 (3d Cir. 2001) ..................................................................................23

Gibbs v. SLM Corp.,
   336 F. Supp. 2d 1 (D. Mass. 2004) ..........................................................................1

Goldberger v. Bear Stearns & Co.,
   2000 WL 1886605 (S.D.N.Y. Dec. 28, 2000) .........................................................4

Gollust v. Mendell,
   501 U.S. 115 (1991).................................................................................................4

Goodman v. Lukens Steel Co.,
   777 F.2d 113 (3d Cir. 1985) ....................................................................................4

Green v. Ameritrade, Inc.,
   279 F.3d 590 (8th Cir. 2002) .................................................................................26

Green v. Fund Asset Mgmt., L.P.,
   147 F. Supp. 2d 318 (D.N.J. 2001) ........................................................................16

iv

Grossman v. Johnson,
    674 F.2d 115 (1st Cir. 1982)............................................................19, 20, 21

Haas v. Pittsburgh Nat'l Bank,
    526 F.2d 1083 (3d Cir. 1975) .................................................................6

Halligan v. Standard & Poor's/Intercapital, Inc.,
    434 F. Supp. 1082 (E.D.N.Y. 1977) ......................................................16

Heffler v. U.S. Fidelity & Guar. Ins. Co.,
    1992 U.S. Dist. LEXIS 3090 (E.D. Pa. 1992) ...........................................6

ING Principal Protection Funds Deriv. Litig.,
    2005 U.S. Dist. LEXIS 8606 (D. Mass. May 9, 2005) ..............................19

In re Dreyfus Aggressive Growth Mut. Fund Litig.,
    2000 WL 1357509 (S.D.N.Y. Sept. 20, 2000) ...........................................6

In re E.F. Hutton Banking Practices Litig.,
    634 F. Supp. 265 (S.D.N.Y. 1986) ........................................................20

In re Eaton Vance Corp. Sec. Litig.,
    220 F.R.D. 162 (D. Mass. 2004)....................................................2, 4, 6, 7

In re Eaton Vance Corp. Sec. Litig.,
    219 F.R.D. 38 (D. Mass. 2003)..............................................................3

In re ML-Lee Acquisition Fund II, L.P. & ML-Lee Acquisition
    Fund II (Retirement Accounts), L.P. Sec. Litig.,
    848 F. Supp. 527 (D. Del. 1994)...........................................................18

In re MobileMedia Sec. Litig.,
    28 F. Supp. 2d 901 (D.N.J. 1998) ..........................................................4

In re Nuveen Fund Litig.,
    1996 WL 328006 (N.D. Ill. June 11, 1996) .............................................10

In re Prudential Sec. Inc. Ltd. P'ships Litig.,
    163 F.R.D. 200 (S.D.N.Y. 1995) ............................................................6

In re Stratus Computer, Inc. Sec. Litig.,
    1992 WL 73555 (D. Mass. Mar. 27, 1992) ............................................21

Jackson v. Birmingham Bd. of Educ.,
    125 S. Ct. 1497 (2005)....................................................................7, 8

Jernberg v. Mann,
    358 F.3d 131 (1st Cir. 2004).................................................................28

Jerozal v. Cash Reserve Mgmt., Inc.,
　　1982 WL 1363 (S.D.N.Y. Aug. 10, 1982)........................................................................16, 17

Jhamb v. Cal. Physicians Serv.,
　　1996 WL 61281 (N.D. Cal. Feb. 6, 1996) .................................................................................4

Kircher v. Putnam Funds Trusts,
　　403 F.3d 478 (7th Cir. 2005)........................................................................................26, 27

Krantz v. Prudential Invs. Fund Mgmt. LLC,
　　305 F.3d 140 (3d Cir. 2002) ....................................................................................................14

La Mar v. H & B Novelty & Loan Co.,
　　489 F.2d 461 (9th Cir. 1973) ....................................................................................................6

Lapidus v. Hecht,
　　232 F.3d 679 (9th Cir. 2000) ..................................................................................................25

Levy v. Alliance Capital Mgmt. L.P.,
　　1998 WL 744005 (S.D.N.Y. Oct. 26, 1998), aff'd, 189 F.3d 461 (2d Cir. 1999).....................14

Lewis v. Casey,
　　518 U.S. 343 (1996)................................................................................................2, 3, 5, 6

Luyando v. Bowen,
　　124 F.R.D. 52 (S.D.N.Y. 1989) ................................................................................................6

Margaret Hall Found. v. Atl. Fin. Mgmt., Inc.,
　　572 F. Supp. 1475 (D. Mass. 1983)........................................................................................24

Maywalt v. Parker & Parsley Petroleum Co.,
　　147 F.R.D. 51 (S.D.N.Y. 1993) ................................................................................................6

Migdal v. Rowe Price-Fleming, Int'l, Inc.,
　　248 F. 3d 321 (4th Cir. 2001) ........................................................................11, 12, 14, 15

Miller v. Pac. Shore Funding,
　　224 F. Supp. 2d 977 (D. Md. 2002) ....................................................................................2, 4

Mills v. Elec. Autolite Co.,
　　396 U.S. 375 (1970)................................................................................................................23

Moore v. Comfed Sav. Bank,
　　908 F.2d 834 (11th Cir. 1990) ................................................................................................6

Morris v. Wachovia Sec. Inc.,
　　277 F. Supp. 2d 622 (E.D. Va. 2003) ....................................................................................24

Morton v. Mancari,
   417 U.S. 535 (1974)........................................................................................18

Nenni v. Dean Witter Reynolds, Inc.,
   1999 U.S. Dist. LEXIS 23351 (D. Mass. Sept. 29, 1999) ........................................3, 4

Newby v. Enron Corp.,
   2004 U.S. Dist. LEXIS 8158 (S.D. Tex. Feb. 24, 2004) ........................................6

Norman v. Salomon Smith Barney,
   350 F. Supp. 2d 382 (S.D.N.Y. 2004) .......................................................24

Northbrook Excess & Surplus Ins. Co. v. The Medical
   Malpractice Joint Underwriting Ass'n of Mass.,
   900 F. 2d 476 (1st Cir. 1990)...........................................................23

Olesh v. Dreyfus Corp.,
   1995 WL 500491 (E.D.N.Y. Aug. 8, 1995) ..............................................15

Olmsted v. Pruco Life Ins. Co.,
   283 F.3d 429 (2d Cir. 2002) ......................................................passim

Ortiz v. Fibreboard Corp.,
   527 U.S. 815 (1999)..............................................................................2

Payton v. County of Kane,
   308 F.3d 673 (7th Cir. 2002) ............................................................4

Prof'l Mgmt. Assocs. v. KPMG LLP,
   335 F.3d 800 (8th Cir. 2003) ...........................................................27

Raines v. Byrd,
   521 U.S. 811 (1997).............................................................................5

Ross v. Bernhard,
   396 U.S. 531 (1970)..........................................................................25

Rowinski v. Salomon Smith Barney Inc.,
   398 F. 3d 294 (3d Cir. 2005) ...........................................................27

Sembach v. McMahon Coll., Inc.,
   86 F.R.D. 188 (S.D. Tex. 1980)...........................................................23

Shaw v. Digital Equip. Corp.,
   82 F.3d 1194 (1st Cir. 1996)..........................................................18

Simon v. E. Ky. Welfare Rights Org.,
   426 U.S. 26 (1976)................................................................................4

Sosna v. Iowa,
   419 U.S. 393 (1975)..................................................................................................3

Steel Co. v. Citizens for a Better Env't,
   523 U.S. 83 (1998)....................................................................................................5

Strougo v. Bassini,
   282 F.3d 162 (2d Cir. 2002) ......................................................................................8

Strougo v. Scudder, Stevens & Clark, Inc,
   964 F. Supp. 783 (S.D.N.Y. 1997) ..........................................................................18

Suna v. Bailey Corp.,
   107 F.3d 64 (1st Cir. 1997)........................................................................................1

Testa v. Janssen,
   482 F. Supp. 1195 (W.D. Pa. 1980).........................................................................22

Transamerica Mortgage Advisors, Inc. (TAMA) v. Lewis,
   444 U.S. 11 (1979).........................................................................................9, 23, 24

U.S. ex rel Karvelas v. Melrose-Wakefield Hosp.,
   360 F.3d 220 (1st Cir. 2004).....................................................................................15

Valley Forge Christian Coll. v. Ams. United for Separation of Church and State, Inc.,
   454 U.S. 464 (1982)....................................................................................................5

Vess v. Ciba-Geigy Corp. USA,
   317 F.3d 1097 (9th Cir. 2003) ...................................................................................1

Wellington Int'l Commerce Corp. v. Retelny,
   727 F. Supp. 843 (S.D.N.Y. 1989) ..........................................................................24

Wexler v. Equitable Capital Mgmt. Corp.,
   1994 WL 48807 (S.D.N.Y. Feb. 17, 1994)...............................................................15

Wicks v. Putnam Investment Mgmt., LLC,
   2005 WL 705360 (D. Mass. Mar. 28, 2005) ............................................................13

Yampolsky v. Morgan Stanley Inv. Advisers Inc.,
   2004 WL 1065533 (S.D.N.Y. May 12, 2004) ....................................................14, 15

Zerman v. Jacobs,
   510 F. Supp. 132 (S.D.N.Y. 1981) ...........................................................................23

State Cases

Baker v. Allen,
   292 Mass. 169 (1935)...............................................................................................25

Goodwin v. Agassiz,
   283 Mass. 358 (1933) ...................................................................................28

Henderson v. Axiam, Inc.,
   1999 WL 33587312 (Mass. Super. Jun. 22, 1999) ....................................25

McCormack v. Labor Relations Comm'n,
   358 Mass. 682 (1971) ...................................................................................22

Sarin v. Ochsner,
   48 Mass. App. Ct. 421 (2000) .....................................................................25

Spinner v. Nutt,
   417 Mass. 549 (1994) ...................................................................................29

Ward v. Costello,
   2002 WL 31973253 (Mass. Super. Dec. 17, 2002) ...................................28

White v. Panic,
   783 A.2d 543 (Del. 2001) .............................................................................19

Federal Statutes

15 U.S.C. § 78bb(f)(1) ......................................................................................26

15 U.S.C. § 80a-35(b) ..................................................................................11, 12

28 U.S.C. § 2072(b) ............................................................................................2

# INTRODUCTION

Despite its great length, the Opposition fails to salvage any part of the defective Complaint.[1]  As set forth in detail in Defendants' Memorandum of Law in support of their Motion to Dismiss ("Defendants' Memorandum" or "Def. Mem.") and below, plaintiffs fail to offer any basis to support their legally deficient claims.  Plaintiffs lack standing to pursue most of the claims that they attempt to bring.  Individual counts of the complaint also fail to withstand scrutiny.  The Investment Company Act ("ICA") and Investment Advisers Act ("IAA") claims all fail as the sections on which plaintiffs rely either contain no private right of action at all, or are limited under the case law to circumstances bearing no resemblance to this case.  The purported derivative claims cannot proceed both because they fail to state claims and because plaintiffs, by their own admission, have not made any demand on the board and cannot meet the requirements for excusal of demand.  The Complaint also sounds in fraud, but makes no effort to plead the facts required under Rule 8, or the particular facts required under Rule 9(b) regarding the roles of the individual defendants or their purported knowledge or recklessness.  Finally, the Securities Litigation Uniform Standards Act ("SLUSA") bars plaintiffs' otherwise defective state law claims.  Accordingly, the Complaint should be dismissed, with prejudice, in its entirety.[2]

---

[1]      Plaintiffs' Opposition to Defendants' Motions to Dismiss the Consolidated Amended Class Action Complaint is referred to herein as "Opposition" or "Opp."  Plaintiffs' Consolidated Amended Class Action Complaint is referred to herein as "Complaint" or "Compl."

[2]      Both Rules 8 and 9(b) apply, and the allegations of the Complaint satisfy neither.  Rule 8 applies to all cases.  Rule 9(b) applies to all *averments* of fraud, and not just to claims denominated by that term.  See Fed. R.Civ. P. 9(b); Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1108 (9th Cir. 2003) ("[T]he pleading requirements of Rule 9(b) cannot be evaded simply by avoiding the use of that magic word [fraud].  Where, as here, the entire complaint against a particular defendant alleges a unified course of fraudulent conduct, it is 'grounded in fraud,' and Rule 9(b) applies to the whole of that complaint.").  In this case Rule 9(b) applies because the essence of plaintiffs' claims is that defendants "purposefully omitted to disclose" and "concealed" inducements that they knew created a "conflict of interest material to any reasonable person deciding whether to invest in MFS Funds."  Compare , e.g., Compl. ¶ 13 with Suna v. Bailey Corp., 107 F.3d 64, 68 (1st Cir. 1997) and Gibbs v. SLM Corp., 336 F. Supp. 2d 1, 9 (D. Mass. 2004).

**ARGUMENT**

I.   **Plaintiffs Lack Standing Under Article III To Raise Claims Regarding Mutual Funds They Have Never Owned**

   A.   **Article III Standing Is A Constitutional Prerequisite To Federal Jurisdiction Separate From Issues Of Class Certification**

The named plaintiffs must show that they have Article III standing for each claim that they purport to bring.  See Lewis v. Casey, 518 U.S. 343, 358 n.6 (1996) (Article III requires injury in fact, causation, and redressability for each claim); Blum v. Yaretsky, 457 U.S. 991, 999 (1982) (same).  Plaintiffs ignore this fundamental requirement and fail to address the governing Supreme Court cases, Lewis and Blum.  Instead, plaintiffs argue that they need not show constitutional standing to bring claims regarding funds they do not own because of their erroneous belief that the ability to raise such claims "is not an issue of standing, but rather an issue for class certification pursuant to Fed. R. Civ. P. 23."  Opp. at 22.  However, Article III standing is a "fundamental component of a court's subject-matter jurisdiction," Miller v. Pac. Shore Funding, 224 F. Supp. 2d 977, 994 (D. Md. 2002), and Rule 23 does not and cannot grant jurisdiction withheld by Article III.  See Lewis, 518 U.S. at 358 n.6 (constitutional standing under Article III is "separate from certification of the class"); Ortiz v. Fibreboard Corp., 527 U.S. 815, 831 (1999) (distinguishing class certification under Rule 23 from constitutional standing under Article III); In re Eaton Vance Corp. Sec. Litig., 220 F.R.D. 162, 169 (D. Mass. 2004) ("[T]his Court cannot put aside the requirements of Article III simply because a plaintiff decides to file a motion seeking to represent a class."); Adair v. Sorenson, 134 F.R.D. 13, 16 n.3 (D. Mass. 1991) (cases addressing issue of "typicality" under Rule 23 do not address standing); 28 U.S.C. § 2072(b) (Rules shall not abridge, enlarge or modify any substantive right); Fed. R. Civ. P. 82 (Rules "shall not be construed to extend … the jurisdiction of the United States district courts").

The Supreme Court has foreclosed plaintiffs' argument that, as long they have constitutional standing to assert *some* claims, they may add numerous others subject only to the requirements of Rule 23.  See Opp. at 23.  In Lewis, the Supreme Court held that plaintiffs lacked Article III standing to seek an injunction against actions that did not actually injure a named plaintiff, even though the Court did not conclude that the class was improper under Rule 23.  518 U.S. at 358 & n.6.  Similarly, in Blum, the Court "did not disturb the class definition," but held that the class of nursing home residents in that matter "lacked standing to challenge" transfers to higher levels of care, even though they could pursue claims based on transfers to lower levels of care, because that threat of harm to the named plaintiffs was more real and immediate.  Id. (discussing Blum, 457 U.S. at 997 n.11, 999-1002).

This district has applied these principles in mutual fund cases by dismissing claims regarding mutual funds that named plaintiffs never owned.  See, e.g., In re Eaton Vance Corp. Sec. Litig., 219 F.R.D. 38, 41 (dismissing claims as to funds plaintiffs never owned, even though they had standing to sue as to two other funds in same fund "family"); Nenni v. Dean Witter Reynolds, Inc., 1999 U.S. Dist. LEXIS 23351, at *5-6 (D. Mass. Sept. 29, 1999) (same).

The Opposition relies primarily upon cases that do not mention Article III at all, but instead discuss *statutory* standing under Rule 23 or other provisions.  See Opp. at 23-26. Statutory standing, although required for a named plaintiff to maintain a suit on behalf of a class, does not satisfy the independent requirement of constitutional standing.  Plaintiffs' few Article III cases do not offer any persuasive analysis and cannot be reconciled with the Supreme Court's case law.[3]  Moreover, contrary to plaintiffs' assertion (Opp. at 22), challenges to Article III

---

[3]      Sosna v. Iowa, 419 U.S. 393 (1975) (Opp. at 23), involved mootness, not standing, and held only that, in the event that a class representative's individual claim is mooted following class certification, the class claim may continue if class members' claims are not moot.  See id. at 402.  Sosna did not alter the requirement that a named plaintiff must have a personal "case or controversy at the time the complaint is filed."  Id.

standing may be raised in a motion to dismiss and are not premature. See, e.g., Miller, 224 F.

Supp. 2d at 994 ("[D]efendants may aptly challenge [standing's] existence by a motion to

dismiss."); Nenni, 1999 U.S. Dist. LEXIS 23351, at *16-17 (dismissing complaint for, inter alia,

lack of standing).[4]

Given that the named plaintiffs lack Article III standing to bring claims on their own

regarding mutual funds they never owned, they cannot manufacture standing to raise such claims

by purporting to proceed as a class. See Simon v. E. Ky. Welfare Rights Org., 426 U.S. 26, 40

n.20 (1976) (class certification "adds nothing to the question of standing"). Moreover, plaintiffs'

suggestion that they have an "ongoing financial interest" in the outcome of this litigation as to

funds they do not own (Opp. at 31-32) is plainly incorrect. Plaintiffs could not suffer any injury

in fact, and mutual fund shareholders could neither profit from increases nor suffer from

decreases in the net asset value of funds they do not own.[5]  Finally, the fact that investors in one

---

Fallick v. Nationwide Mut. Ins. Co., 162 F.3d 410 (6th Cir. 1998), which Eaton Vance criticized as "not persuasive," 220 F.R.D. at 168, offered very little discussion of Article III standing principles and did not even cite, much less analyze, the Supreme Court's governing precedents in Lewis and Blum. Only two of the decisions cited in Fallick, 162 F.3d at 422, actually mentioned Article III standing in the class action context. As noted in Eaton Vance, one of those cases -- Goodman v. Lukens Steel Co., 777 F.2d 113 (3d Cir. 1985), which plaintiffs also cite (Opp. at 23) -- "cited no authority for its conclusory statement" that a standing inquiry in a class action did not implicate Article III. See 220 F.R.D. at 168. The second decision purported to relax Article III standing requirements to "'carry out Congress' lofty goal' of eradicating employment discrimination." Id. (quoting Cooper v. Univ. of Tex. at Dallas, 482 F. Supp. 187, 191 (N.D. Tex. 1979)). Whatever the merit of such reasoning in a civil rights case, it was inapplicable in Fallick and is inapplicable here. Payton v. County of Kane, 308 F.3d 673 (7th Cir. 2002), relied on Fallick's spurious analysis and similarly failed to take account of controlling Supreme Court precedent. See Eaton Vance, 220 F.R.D. at 167. The same is true of Alves v. Harvard Pilgrim Health Care, Inc., 204 F. Supp. 2d 198, 205 (D. Mass. 2002). In re MobileMedia Sec. Litig., 28 F. Supp. 2d 901 (D.N.J. 1998), discussed standing only in one footnote with little reasoning. Id. at 911 n.7. Finally, the court in Goldberger v. Bear Stearns & Co., 2000 WL 1886605 (S.D.N.Y. Dec. 28, 2000), dismissed the complaint without making any finding regarding standing or class certification.

[4]     See also Henry v. Circus Circus Casinos, Inc., 223 F.R.D. 541, 544 (D. Nev. 2004) (granting motion to dismiss for lack of subject matter jurisdiction); Jhamb v. Cal. Physicians Serv., 1996 WL 61281, at *3 (N.D. Cal. Feb. 6, 1996) (consideration of jurisdictional requirements, including standing, "must precede the consideration of class claims"); Angel Music, Inc. v. ABC Sports, Inc., 112 F.R.D. 70, 73-74, 77 (S.D.N.Y. 1986) (granting motion to dismiss purported class action for lack of Article III standing).

[5]     Gollust v. Mendell, 501 U.S. 115 (1991), is not to the contrary. The defendants in Gollust argued that the plaintiff, who actually had standing to raise a claim based on a particular security, subsequently lost his standing when the security was exchanged for stock in a parent corporation following a merger. The Court rejected this argument because the value of the new stock was still affected (however slightly) by litigation regarding the acquired company, and thus the plaintiff retained an "adequate financial stake" in the outcome of the litigation. Id. at 126. Gollust nowhere suggested that plaintiffs could assert claims that, even if successful, would have no effect on the value of their investments.

fund within a family may switch to another fund in the same family (Opp. at 30 n.22) is

irrelevant; plaintiffs nowhere allege that they were deprived of this opportunity.[6]

This Court should accordingly dismiss, for lack of subject matter jurisdiction, all claims

relating to mutual funds that plaintiffs never owned.

### B.    Plaintiffs' Policy Arguments Cannot Expand Federal Court Jurisdiction

Plaintiffs' suggestion that "efficient and consistent treatment" warrants disregard of

Article III standing principles (Opp. at 30) is also foreclosed by the Supreme Court's Article III

case law.  See, e.g., Raines v. Byrd, 521 U.S. 811, 820 (1997) (standing inquiry should not be set

aside "for the sake of convenience and efficiency"); Valley Forge Christian Coll. v. Ams. United

for Separation of Church and State, Inc., 454 U.S. 464, 476 (1982) (Article III is "not merely a

troublesome hurdle to be overcome if possible so as to reach the merits of a lawsuit").

Unlike Rule 23, which is a procedural tool to assist federal courts in the management of

claims within their jurisdiction, Article III determines whether claims are properly in federal

court at all.  The requirements of Article III are "inflexible and without exception."  Steel Co. v.

Citizens for a Better Env't, 523 U.S. 83, 95 (1998).  In Lewis and Blum, the Supreme Court did

not consider whether it would be "the most efficient means for resolution of the dispute" (Opp. at

---

Similarly, the court in Batra v. Investors Research Corp., 1991 U.S. Dist. LEXIS 14773 (W.D. Mo. Oct. 4, 1991) did not generally assert that a plaintiff "could assert claims regarding funds [that] he did not hold."  Opp. at 32.  On the contrary, the Batra court concluded that the plaintiff would benefit "from *any recovery* of excessive fees" because the fees were paid by a single company under a single advisory agreement and apportioned to several funds, including one in which the plaintiff held shares.  Id. at *10 (emphasis added).  In this case, by contrast, any recovery of fees paid by a particular fund would inure only to the shareholders of that fund and -- unlike in Batra -- would not be distributed among the shareholders of other funds.

[6]    Plaintiffs suggest that investors have a "tangible interest" in the governance of all funds in a given family because they may switch funds without additional sales charges, a claim that appears nowhere in the Complaint itself.  Opp. at 30 n.22.  However, many securities are not subject to sales charges and may be sold or exchanged for other securities without cost (e.g., stocks, money market funds, mutual funds purchased in retirement accounts, mutual funds held for several years).  Under plaintiffs' argument, any investor who could dispose of holdings without additional sales charges would have standing to assert a claim regarding *any* other security that he or she *might have* decided to purchase with the proceeds from such a sale.  Article III is not satisfied by such hypothetical and intangible interests.

26) for the federal judiciary to decide claims that the named plaintiffs in those cases lacked standing to bring.  See Lewis, 518 U.S. at 346, 358 & n.6; Blum, 457 U.S. at 997 n.11. Similarly, this Court should reject plaintiffs' invitation to ignore constitutional requirements based solely on plaintiffs' notions of "efficiency and expediency."  Opp. at 27.  The securities laws have "strict standing requirements" that should be scrupulously enforced, Eaton Vance, 220 F.R.D. at 168, and plaintiffs' desire to proceed in this case does not justify ignoring the limitations on the federal judicial power set forth in the Constitution and repeatedly applied by the Supreme Court.

### C.    Plaintiffs Cannot Establish Standing Through "Juridical Link" Analysis

Plaintiffs may not establish standing through a so-called "juridical link" analysis, which bears on *class certification,* not Article III standing.  "Juridical link" analysis turns on litigation management considerations that may be relevant under Rule 23.  Indeed, the case that first conceived of the "juridical link" analysis stated clearly that it did *not* address Article III.  La Mar v. H & B Novelty & Loan Co., 489 F.2d 461, 464 (9th Cir. 1973).[7]  Accordingly, this Court has held the "juridical link" analysis to be "not relevant to the issue of standing" and has "confined" it to Rule 23.  Eaton Vance, 220 F.R.D. at 171 (internal quotation marks omitted).[8]  Thus, even if

---

[7]    The "juridical link" cases that plaintiffs cite discuss the doctrine in the context of Rule 23, not standing under Article III.  See, e.g., Haas v. Pittsburgh Nat'l Bank, 526 F.2d 1083, 1088-89 (3d Cir. 1975); Newby v. Enron Corp., 2004 U.S. Dist. LEXIS 8158, at *104-11 (S.D. Tex. Feb. 24, 2004) (discussing juridical link doctrine in context of "typicality" requirement of Rule 23); In re Dreyfus Aggressive Growth Mut. Fund Litig., 2000 WL 1357509, at *2-3 (S.D.N.Y. Sept. 20, 2000); In re Prudential Sec. Inc. Ltd. P'ships Litig., 163 F.R.D. 200, 208 (S.D.N.Y. 1995); Maywalt v. Parker & Parsley Petroleum Co., 147 F.R.D. 51, 56-57 (S.D.N.Y. 1993); Heffler v. U.S. Fidelity & Guar. Ins. Co., 1992 U.S. Dist. LEXIS 3090, at *10-11 (E.D. Pa. 1992); Luyando v. Bowen, 124 F.R.D. 52, 58 (S.D.N.Y. 1989); cf. Moore v. Comfed Sav. Bank, 908 F.2d 834, 837-39 (11th Cir. 1990) (considering "juridical links" doctrine under permissive joinder rule of Fed. R. Civ. P. 20); Alves, 204 F. Supp. 2d at 205 (citing discussion of Federal Rules in La Mar and Moore).

[8]    Plaintiffs misleadingly suggest that Eaton Vance did not "conduct the proper analysis to determine if there are 'juridical links' as required by the First Circuit."  Opp. at 26 n.18.  No First Circuit decision has ever addressed the "juridical link" doctrine, much less identified a "proper analysis" that the Eaton Vance Court supposedly failed to follow.  Rather, the First Circuit requested a "discussion" of the "juridical link" doctrine, 220 F.R.D. at 164, and subsequently denied leave to appeal.  See Chesner v. Eaton Vance Corp., No. 03-8025 (1st Cir. May 10, 2004) (judgment denying petition for leave to appeal).  This Court's 2004 decision in Eaton Vance is therefore the most recent, thorough, and authoritative analysis of the "judicial link" doctrine in this Circuit.

plaintiffs could bring their allegations within the scope of the "juridical link" doctrine (Opp. at 28-31), they could not meet the requirements of Article III standing. See Eaton Vance, 220 F.R.D. at 170-71 ("[C]lass certification and Article III standing are separate and distinct issues, regardless of whether the named plaintiff's injury is similar to that of unnamed plaintiffs.").

## II.    Plaintiffs' Investment Company Act Claims Are Defective

Each of plaintiffs' four ICA claims is defective and should be dismissed. Three of plaintiffs' ICA claims are brought pursuant to sections of the ICA that do not confer a private right of action (Sections 34(b), 36(a) and 48(a)). The fourth claim disregards the plain language of the statute and improperly seeks to expand the narrow scope of liability set forth in Section 36(b).

### A.    There Is No Private Right Of Action Under Sections 36(a) Or 34(b) Of The Investment Company Act

Plaintiffs assert a private right of action under ICA Sections 34(b) and 36(a) based on old cases that are not in line with current Supreme Court precedent. Compare Opp. at 35 with Olmsted v. Pruco Life Ins. Co. of N.J., 283 F.3d 429, 434 & n.4 (2d Cir. 2002) (citing Alexander v. Sandoval, 532 U.S. 275, 286 (2001)).[9] Plaintiffs cite no case after Sandoval and Olmsted that has held that an implied private right of action exists under any provision of the ICA, including Sections 34(b) and 36(a). See Opp. at 35. Contrary to plaintiffs' assertions, the recent civil rights case of Jackson v. Birmingham Bd. of Educ., 125 S. Ct. 1497 (2005), does not support their argument that there is a private right of action under Sections 36(a) and 34(b). Opp. at 35.

---

Nor does the fact that Eaton Vance addressed a class certification motion make the issue of Article III standing "premature." Opp. at 27. The court was clear that it "considered (and rejected) the plaintiffs' Article III standing as to two of the mutual funds prior to analyzing class certification." Eaton Vance, 220 F.R.D. at 169 (emphasis added). Moreover, other decisions (including Nenni in this District) have dismissed complaints on Article III standing grounds prior to motions for class certification. See supra at 4.

[9]    See also DH2, Inc. v. Athanassiades, 359 F. Supp. 2d 708, 714-15 (N.D. Ill. 2005) (recently applying Sandoval and Olmsted and, for the same reasons, finding that no private right of action exists under Section 17(j) of ICA, though some courts previously had found such right).

In <u>Jackson</u>, the Supreme Court was asked to construe a private right of action that it had

previously recognized under Title IX for claims of sexual discrimination, and determined that

claims of retaliation fell within that *pre-existing* right.  It held:

> We reach this result based on the statute's text.  In step with
> <u>Sandoval</u>, we hold that Title IX's private right of action
> encompasses suits for retaliation, because retaliation falls within
> the statute's prohibition of intentional discrimination on the basis
> of sex.

<u>Id.</u> at 1508.  Thus, <u>Jackson</u> did not disturb <u>Sandoval's</u> holding that Congressional intent, as

manifested in the statute's text, is the *only* basis for finding a private right of action.

Plaintiffs likewise mischaracterize <u>Strougo v. Bassini</u>, 282 F.3d 162 (2d Cir. 2002), in

suggesting that it is inconsistent with <u>Olmsted</u>.  In fact, the court in <u>Strougo</u> did not "reaffirm[ ]

its recognition of an implied right of action under" any provision of the ICA. Opp. at 40.

Instead, the court reversed the dismissal of the plaintiff's Section 36(a) claim without

considering whether a private right of action exists under Section 36(a).  <u>Strougo</u>, 282 F.3d at

165.  Plaintiffs' quotations from <u>Bassini</u> pertain to the court's analysis of Maryland law on

shareholder standing, not to whether a private right of action exists.  <u>Compare</u> Opp. at 40-41 <u>with</u>

<u>Strougo</u>, 282 F.3d at 176.  In any event, although <u>Strougo</u> was "amended" on March 11, 2002

(Opp. at 40 n.29), it actually was decided on February 28, 2002 – before the March 7, 2002

decision in <u>Olmsted</u>.

Plaintiffs' argument that a private right of action exists under Sections 34(b) and 36(a)

because Congress intended those sections to be "for the protection of investors" also fails.  Opp.

at 38-39.  As a preliminary matter, the purpose of *all* securities laws may be said to be investor

protection, but that does not confer a private right.  Indeed, the major premise of the Supreme

Court's modern private right of action cases is the rejection of private rights predicated on a

broad remedial purpose unless Congress intended to provide one.  <u>Compare</u> <u>Sandoval</u>, 532 U.S.

at 287; Transamerica Mortgage Advisors, Inc. (TAMA) v. Lewis, 444 U.S. 11, 24 (1979) ("[T]he mere fact that the statute was designed to protect advisers' clients does not require the implication of a private cause of action for damages on their behalf .... [T]he dispositive question remains whether Congress intended to create any such remedy") (internal citations omitted).

In any event, Section 34(b) itself contains no reference to "protection of investors." Rather, as in Olmsted, Section 34(b) only describes actions that are prohibited. It contains no rights-creating language. See Def. Mem. at 10-11. Section 36(a) also primarily describes actions that are prohibited, and states that a court should give "due regard to the protection of investors" when it awards relief in an action brought *by the SEC*. See, e.g., Chamberlain v. Aberdeen Asset Mgmt. Ltd., 2005 WL 195520, at *3 (E.D.N.Y. Jan. 21, 2005).[10]

An objective of investor protection does not imply an intention to provide a private right of action. Neither the Supreme Court in Sandoval nor the Second Circuit in Olmsted held that a statute's mere mention of individuals to be protected demonstrates congressional intent to create a private right of action. Rather, investor protection can be accomplished by SEC enforcement. Plaintiffs' reading – turning the most general intent to protect the public through regulatory oversight into a private cause of action – would transform nearly any statutory prohibition into a private right of action. See, e.g., Sandoval, 532 U.S. at 287 (courts may not create private right of action that does not exist "no matter how desirable that might be as a policy matter").

Moreover, there is no *contemporaneous* legislative history supporting an implied private right of action under Sections 34(b) and 36(a). "Where the text of a statute is unambiguous, 'judicial inquiry is complete [ ] except in rare and exceptional circumstances,' and legislative

---

[10]    On April 6, 2005, the court in Chamberlain vacated its earlier decision after a joint motion by both parties as a precondition to settlement. However, the court stated that granting the motion to vacate did "not constitute a reconsideration of the merits of the case or a negation of the substance of the previously issued Order; rather, the Motion is granted simply in order to permit the parties to proceed to settlement." Chamberlain, Civil Action No. 02-CV-5870, slip op. at 2 (E.D.N.Y. April 6, 2005).

history [is] instructive only upon 'the most extraordinary showing of contrary intentions.'" Olmsted, 283 F.3d at 435 (citations omitted).  In Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A., 511 U.S. 164 (1994), the Supreme Court made clear that the only legislative history relevant to congressional intent to create a private right of action is that which is *contemporaneous* with the passage of the statute, and that "the interpretation given by one Congress … to an earlier statute is of little assistance in discerning the meaning of that statute." Id. at 185.

Here, Section 36(a)'s text – which creates an express right of action for the SEC, and not for private individuals – is unambiguous, and Section 34(b) makes no mention of a private right of action.  Plaintiffs fail to make any "extraordinary showing of contrary intentions" in the contemporaneous legislative history.  Olmsted, 283 F.3d at 435.  Rather, plaintiffs quote statements that Congress made during the 1980 Amendments to the ICA – ten years *after* the 1970 Amendments that created Section 36(a).  See Opp. at 43.  The Court in Olmsted expressly declined to rely on the same statements: "A report prepared by a House committee on one piece of legislation cannot constitute an 'extraordinary showing' of congressional intent for different legislation" passed at a different point in time.  Olmsted, 283 F.3d at 435.  Plaintiffs here can make no use of the same statements rejected in Olmsted.[11]

### B.    Plaintiffs Have Failed To State A Claim Under Section 36(b) Of The ICA

### 1.    Section 36(b) Does Not Provide A Remedy For Disclosure Claims

The Opposition offers no meaningful response to defendants' argument that Section 36(b) does not provide plaintiffs with a private right of action for disclosure claims related to

---

[11]    Plaintiffs' reliance on In re Nuveen Fund Litig., 1996 WL 328006 (N.D. Ill. June 11, 1996), where the court cited the same subsequent legislative history from the 1980 Amendments in finding an implied private right of action under Sections 34(b) and 36(a), is misguided.  By quoting from the 1980 Amendments, the Nuveen court relied on statements later specifically rejected in Olmsted.  In addition, Nuveen's citation to congressional *purpose* rather than congressional *intent* is part of the *ancien regime* and is entirely inconsistent with the approach now dictated by the Supreme Court.  See Sandoval, 532 U.S. at 286-87; Olmsted, 283 F.3d at 434 & n.4 (characterizing cases that inferred private right of action under ICA as part of pre-Sandoval *ancien regime*).

directed brokerage.  See Def. Mem. at 12-15.  Section 36(b) is concerned with *excessive fees*, not lack of disclosure, as the text of the statute makes clear:

> For purposes of [Section 36(b)], the investment adviser of a registered investment company shall be deemed to have a fiduciary duty with respect *to receipt of compensation for services...*

15 U.S.C. § 80a-35(b) (emphasis added).  Plaintiffs improperly seek to convert Section 36(b) into a vehicle for any general grievance that they may have with the investment adviser.  Such an expansive interpretation of Section 36(b) goes against the text of the statute and Congress' intent in enacting it.

Congress made clear that Section 36(b) was limited in scope and in purpose.  The statute's text is unambiguous in this regard:

> [Section 36(b)] … should not be taken as reflecting any finding by the committee that the present level of management fees is too high.  *Its sole purpose is to specify the fiduciary duty of the investment adviser with respect to compensation,* and provide a mechanism for court enforcement of this duty.

Senate Report No. 91-184, at 6 (May 21, 1969) (emphasis added).

Consistent with the statute and the legislative intent underlying it, cases interpreting Section 36(b) have uniformly recognized its narrow scope.  See, e.g., Migdal v. Rowe Price-Fleming, Int'l, Inc., 248 F. 3d 321, 328 (4th Cir. 2001) ("Section 36(b) is *sharply focused* on the question of whether the fees themselves were excessive.") (emphasis added).

Yet, despite the clear text of Section 36(b), the legislative history surrounding it and the cases interpreting it, the Opposition makes clear that the core of plaintiffs' Section 36(b) claim is *lack of disclosure,* not excessive fees.  The Opposition is replete with allegations of disclosure violations, including the following:

- "Defendants misled shareholders regarding the true nature and purpose of millions of dollars of mutual fund fees paid by shareholders by *failing to disclose*

that this money was going towards financing defendants' kickback scheme instead of services Defendants represented" (emphasis changed);

- Defendants "provid[ed] kickbacks to the brokers and [] *fail[ed] to adequately disclose* these compensation arrangements and resulting conflicts of interest" (emphasis added);

- Defendants' "*failure to disclose* underscores the harm to Plaintiffs that is recoverable under § 36(b)" (emphasis added);

- The "MFS prospectuses were false and misleading … in that they *failed to adequately disclose* the kickback scheme at issue" (emphasis added).

Opp. at 8, 13, 20.  Indeed, plaintiffs cannot even articulate their Section 36(b) claim without stating that the breach of fiduciary duty for which they seek recovery is based on an alleged lack of disclosure.  See id.  Not surprisingly, the Complaint suffered from the same defect.[12]  See, e.g., Def. Mem. at 13 (citing Compl. ¶¶ 3, 4, 114-27, 160).

These *same* disclosure claims already were addressed by the SEC and were the subject of the SEC's March 31, 2004 Order.  See Compl. ¶ 12 ("[T]he SEC brought an enforcement action … based on the *same conduct* alleged herein") (emphasis added).  To the extent that there was defective disclosure in connection with MFS' use of Strategic Alliances, that issue has already been addressed with the SEC, and Section 36(b) provides no private right of action for such claims.  See Def. Mem. at 12-15.[13]

---

[12]    To the extent that plaintiffs' purported claim is based on MFS traders causing the payment of excessive commissions, none of the defendants is properly named because none of those defendants  actually *received* those commissions.  Compare 15 U.S.C. § 80a-35(b)(3) (providing cause of action against no one "other than the recipient of" challenged payments) with Opp. at 18 (alleging that broker-dealers received excessive commissions).

[13]    Plaintiffs state that defendants "miss[] the point" with respect to their claims concerning directed brokerage and that the "gravamen of the Complaint is that MFS' directed brokerage trades should not have occurred in the first place."  Opp. at 16 (emphasis omitted).  Plaintiffs again attempt to obfuscate the fact that their claims are about disclosure, which they clearly pleaded in the Complaint: "[Directed brokerage has] been condemned by the SEC as being improper and creating conflicts of interest that were *not properly disclosed* to investors."  Compl. ¶ 57 (emphasis added).

### 2.    Plaintiffs' Reliance On <u>Wicks</u> Is Misplaced

Plaintiffs seek to salvage their Section 36(b) claims by invoking this Court's recent decision in <u>Wicks v. Putnam Inv. Mgmt., LLC</u>, 2005 WL 705360 (D. Mass. Mar. 28, 2005). <u>Wicks</u> says nothing about the extent to which an alleged "failure to disclose" directed brokerage can be cast as an "excessive fee" case.  As to the more generic allegations that fees were excessive, this Complaint (like that filed by the plaintiffs in <u>Dumond v. Massachusetts Financial Services Co.</u>, C.A. No. 04-11458-GAO), does not compare favorably to that in <u>Wicks</u> and does not state a claim.  <u>See</u> Def. Mem. at 12-13; <u>see also</u> Dumond Reply Memorandum of Law in Support of Defendants' Motion to Dismiss Complaint ("MFS Dumond Reply Mem."), filed contemporaneously with this memorandum and specifically incorporated herein.[14]

### 3.    Plaintiffs Have Failed To Plead Facts Showing That The Fees Charged Were Disproportionate To The Services Rendered

Plaintiffs allege the conclusion that defendants "did not meet the demands of best execution."  Opp. at 17.  This legal conclusion, however, is belied by the SEC's March 31, 2004 Order cited by plaintiffs.  As set forth in Defendants' Memorandum, the SEC imposed a penalty on MFS for what it determined to be inadequate disclosure.  <u>See</u> Def. Mem. at 3.  But the SEC found *no* basis to conclude that the funds suffered any harm as a result of MFS' use of Strategic Alliances, and ordered that MFS pay only one dollar in disgorgement.  <u>See</u> <u>id.</u>  Plaintiffs cannot without pleading more transform their nondisclosure allegations – the same allegations that resulted in *one dollar* of disgorgement – into a valid claim for "excessive fees" in connection with directed brokerage under Section 36(b).

---

[14]    Plaintiffs insist that <u>Wicks</u> somehow relieves them of their Rule 8(a) obligation to plead facts to support their Section 36(b) claim.  Opp. at 4-5.  This is incorrect.  <u>See</u> MFS Dumond Mem. at 4-7; <u>see generally</u> MFS Dumond Reply Mem.  Plaintiffs cannot allege a valid claim by asserting conclusory excessive fee allegations. <u>Compare</u> Def. Mem. at 13 <u>with</u> Compl. ¶¶ 47, 102, 125(g), 160, 162.  As set forth in Defendants' Memorandum, the claims of excessive fees in <u>Wicks</u> were specific in terms of quantity and nature of services.  Def. Mem. at 14.  No such allegations exist here.

Defendants also assert generically that investors paid excessive management fees to MFS. The only two federal appellate cases to consider what is required to plead a legally cognizable claim under Section 36(b) both *rejected* pleadings similar to the instant one. See Migdal, 248 F.3d at 321; Krantz v. Prudential Invs. Fund Mgmt. LLC, 305 F.3d 140 (3d Cir. 2002). In Migdal, the Fourth Circuit stated that a plaintiff must allege facts that, if proved, demonstrate that the fees charged were disproportionate to the services rendered. Migdal, 248 F.3d at 326-27. Like the Complaint in the instant action, because the complaint in Migdal did "not address the particular services offered by the defendants," the Fourth Circuit concluded that the plaintiffs "have alleged nothing to suggest that the investment advisers' fees are excessive." Id. at 328.[15] In Krantz, the Third Circuit followed Migdal and affirmed dismissal of the plaintiff's Section 36(b) claim for excessive compensation "since the Plaintiffs failed to allege any facts indicating that the fees received were disproportionate to services rendered." Krantz, 305 F.3d at 143-44 (quotations omitted).[16] No appellate case has sustained a Section 36(b) claim that was not focused on the intersection between the services rendered and the fees charged. Here, plaintiffs do not allege *any* facts which, if proved, would demonstrate that the fees charged

---

[15]    Accord Gartenberg v. Merrill Lynch Asset Mgmt., Inc., 694 F.2d 923, 928 (2d Cir. 1982) (to violate Section 36(b) "the adviser-manager must charge a fee that is so disproportionately large that it bears no reasonable relationship to the services rendered and could not have been the product of arm's-length bargaining") (cited with approval in Migdal, 248 F.3d at 326).

[16]    Numerous district courts have granted motions to dismiss Section 36(b) claims on the same basis. See, e.g., Yampolsky v. Morgan Stanley Inv. Advisers Inc., 2004 WL 1065533, at *2 (S.D.N.Y. May 12, 2004) (dismissing Section 36(b) excessive fee claim where complaint "rel[ied] heavily on generalities about deficiencies in the securities industry, and statements made by industry critics and insiders," but contained no factual allegations "as to the *actual* fee negotiations or management and distribution services rendered by *these* defendants") (emphasis in original); Levy v. Alliance Capital Mgmt. L.P., 1998 WL 744005, at *2-4 (S.D.N.Y. Oct. 26, 1998), aff'd, 189 F.3d 461 (2d Cir. 1999) (granting motion to dismiss a Section 36(b) claim because "a complaint may not simply allege in a conclusory manner that the fees are "excessive," but rather plaintiff "must allege facts that, if true, would support a claim that the fees at issue are excessive"); Olesh v. Dreyfus Corp., 1995 WL 500491, at *19, 21 (E.D.N.Y. Aug. 8, 1995) (granting motion to dismiss Section 36(b) claim for failing to allege that the fee is so disproportionately large that it bears no reasonable relationship to the services rendered); Wexler v. Equitable Capital Mgmt. Corp., 1994 WL 48807, at *4 (S.D.N.Y. Feb. 17, 1994) (granting motion to dismiss where advisory fee allegations were "merely a pleading of a conclusion of fact").

were so disproportionately large that they had no reasonable relationship to the services rendered.  See Migdal, 248 F.3d at 326-27.

### 4.    The Section 36(b) Claims Do Not Meet The Standards Of Rule 8(a)

The Section 36(b) claim is deficient under Fed. R. Civ. P. 8(a) because they are replete with legal conclusions and bald assertions instead of well-pleaded facts supporting plaintiffs' claims.[17]  See, e.g., U.S. ex rel Karvelas v. Melrose-Wakefield Hosp., 360 F.3d 220, 240 (1st Cir. 2004) ("[s]imply parroting the language of a statutory cause of action, without providing some factual support, is not sufficient to state a claim.").  Rule 8(a) requires that the complaint set forth "a short and plain statement of the claim" that gives defendants "fair notice of what the plaintiff's claim is and the grounds upon which it rests."  Fed. R. Civ. P. 8(a).

Although plaintiffs make numerous general allegations, they provide no factual basis for their assertions, let alone a specific one.  Instead, plaintiffs offer a laundry list of generalized claims, allegations about funds not at issue in this case, citations to the SEC's March 31, 2004 Order, and general observations about the mutual fund industry at large.  None of these allegations – alone or in combination – is a substitute for the basic core facts that Rule 8 requires. See Yampolsky v. Morgan Stanley Inv. Advisers Inc., 2004 WL 1065533, at *2 (S.D.N.Y. May 12, 2004) (dismissing complaints that "rely heavily on generalities about deficiencies in the securities industry, and statements made by industry critics and insiders" and finding that "speculative, conclusory allegations of 36(b) violations [are] insufficient to survive a motion to dismiss"); see also Karvelas, 360 F.3d at 240.

---

[17]    Because the Complaint "sounds in fraud," it is subject to the heightened pleading requirements of Fed. R. Civ. P. 9(b).  See supra at 1.  In any event, the Section 36(b) claims are deficient even under the standards of Fed. R. Civ. P. 8(a), which plaintiffs argue apply to "[t]he entire Complaint."  Opp. at 4.

## C.    The Trustees Are Not Proper Defendants

The Section 36(b) claims against the Trustees should be dismissed, as plaintiffs

apparently concede, because the Trustees were not "recipients" of the allegedly excess fees.

Further, because the Complaint does not allege that the Trustees are "investment advisers" or

"affiliates" of investment advisers, the Section 36(b) claim against them must be dismissed.

Compare Def. Mem. at 16-17 (citing to statute and case law setting forth requirement that

Section 36(b) claims can only be brought against "investment advisors" or "affiliates" who are

"recipients" of alleged excessive fees) with Opp. at 21-22 (failing to dispute that Trustees were

not "recipients" of allegedly excess fees).  Needless to say, plaintiffs cannot and do not cite to a

single instance in the Complaint in which such necessary allegations appear.  Instead, plaintiffs

unsuccessfully attempt to salvage their claims by relying upon a single twenty-seven year old

case, Halligan v. Standard & Poor's/Intercapital, Inc., 434 F. Supp. 1082 (E.D.N.Y. 1977), which

also supports dismissal of the Section 36(b) claim against the Trustees for recovery of their fees.

As the court in Halligan specifically noted:

> [Section 36(b)] must be narrowly read to mean that only those who
> receive money paid by the investment company for investment advisory
> services may be held liable for breach of their fiduciary duty with
> respect to such payments.

Id. at 1085.  The Trustees did not "receive" the allegedly excess fees, whether for "investment

advisory services" or otherwise, nor does the Complaint allege as much.  Accordingly, the claims

against the Trustees must be dismissed.[18]

---

[18]    See, e.g., Green v. Fund Asset Mgmt., L.P., 147 F. Supp. 2d 318, 329-30 (D.N.J. 2001) (dismissing Section 36(b) claims against fund officers because such officers were not "recipients of compensation or payments" under the statute, even though officers received regular salary), aff'd, 286 F.3d 682 (3d Cir. 2002); Jerozal v. Cash Reserve Mgmt., Inc., 1982 WL 1363, at *6 (S.D.N.Y. Aug. 10, 1982) (individual fund directors not liable under Section 36(b) in that they had not "received any portion of the advisory fees or payments" made to the investment advisor). Accord Cohen v. Fund Asset Mgmt., Inc., 1980 WL 1488, at *2-3 (S.D.N.Y. Mar. 31, 1980) (dismissing Section 36(b) claims against fund directors as they were not "recipients" of payment).

### D.       Plaintiffs Fail To State A Claim Under Section 48(a) Of The ICA

Plaintiffs misread Defendants' Memorandum in asserting that defendants "fail to cite any legal support for their position" that there is no private right of action under Section 48(a) of the ICA.  Opp. at 44.  To the contrary, defendants referred back to a portion of their brief citing numerous cases in support of their argument, rather than unnecessarily repeating the citation and exact same analysis for each such case a second time.  See Def. Mem. at 17 (referring back to Part III.A of Def. Mem. at 8-11, which cites to over a dozen cases in analyzing why no private right of action exists under various provisions of the ICA).  On the other hand, the *single* case that plaintiffs cite in an attempt to support their argument, Jerozal v. Cash Reserve Mgmt., Inc., 1982 WL 1363 (S.D.N.Y. Aug. 10, 1982), is an unpublished decision from a district court in another Circuit, which decision is at odds with current Supreme Court precedent and the modern holdings of the Circuit in which it was decided.  See supra at 7-10; Olmsted, 283 F.3d at 432-36 (implicitly rejecting reasoning of Jerozal's holding that private rights of action can be implied in the ICA by finding that 'Congress's explicit provision of a private right of action to enforce [Section 36(b)] suggests that omission of an explicit private right to enforce other sections was intentional" and courts "cannot ordinarily conclude that Congress intended to create a right of action when none was explicitly provided").

In addition, allowing plaintiffs to bring a Section 48(a) claim in connection with an alleged violation of Section 36(b) would nullify the express limitation of liability provided in Section 36(b) and render the limited, careful wording of section 36(b) meaningless.  Section 36(b) is a cause of action created by Congress that may be brought by *specified* plaintiffs, against *specified* defendants, for *specified* damages.  Section 36(b) provides that a claim may only brought against an investment adviser or affiliated person or other person specifically enumerated in the statute.  Moreover, under Section 36(b)(3), liability is expressly limited to the

17

"recipient of such compensation or payments" challenged in the Section 36(b) claim.  To allow Section 48(a) to enlarge Section 36(b) liability to "control persons" would impermissibly expand the scope of Section 36(b), render meaningless its limiting language, and violate the settled rule that "a specific statute will not be controlled or nullified by a general one."  Morton v. Mancari, 417 U.S. 535, 550-51 (1974).  The only case cited by plaintiffs in an effort to refute this point, Shaw v. Digital Equip. Corp., 82 F.3d 1194 (1st Cir. 1996), has nothing to do with these provisions and offers no support for plaintiffs' efforts to stretch the reach of Section 36(b) to include control person claims.[19]

Finally, Section 48(a) does not apply in this case because there was no "procurement" of a violation of the ICA.  Plaintiffs mistakenly argue that defendants are requiring them to invoke the word "procurement" in their pleading because it has a "talismanic" quality.  Opp. at 44 n.33. While plaintiffs correctly note that the word "procurement" does not appear in the text of the statute, it is, in fact, the very *title* of Section 48(a) (titled "Procurement").  Such title indicates that Section 48(a) is a prohibition against obtaining the agreement of another person (i.e., "procuring") to commit an act that would be unlawful under the ICA for the procuring person himself to commit.  Plaintiffs have made no allegations of "procurement," in either words or substance, and, as such, they fail to state a claim under Section 48(a).[20]

---

[19]    Plaintiffs cite Shaw in support of their claim that Section 48(a) is "no different" from Section 15 of the Securities Act.  Opp. at 44.  Shaw, however, cannot bear this weight.  Shaw makes no mention of the scope of Sections 48(a) or 36(b); it merely stands for the uncontroversial proposition that Section 15 gives rise to control person liability.  Shaw, 82 F.3d at 1202 n.2.

[20]    Strougo v. Scudder, Stevens & Clark, Inc, 964 F. Supp. 783 (S.D.N.Y. 1997), In re ML-Lee Acquisition Fund II, L.P. & ML-Lee Acquisition Fund (Retirement Accounts), L.P. Sec. Litig., 848 F. Supp. 527 (D. Del. 1994), and Dowling v. Narragansett Capital Corp., 735 F. Supp. 1105 (D.R.I. 1990) do not contradict defendants' argument that "procuring" means securing the agreement of another person to commit an act that would be unlawful under the ICA for the procuring person himself to commit.

### III.    Plaintiffs' Derivative Claims Should Be Dismissed

#### A.    Plaintiffs Fail To Plead Facts Showing That Demand Is Excused Under The ICA

Plaintiffs concede that the ICA defines when an investment company trustee is "interested" for purposes of determining whether demand is excused under Massachusetts law. Opp. at 46.  Nonetheless, rather than offer any support for their suggestion that the Trustees are somehow "interested" under the ICA, the Opposition merely repeats a litany of allegations from the Complaint.  Opp. at 47-48.  They cite not a *single* case and advance no plausible argument showing that these citations to the Complaint if true would render any Trustee "interested" under the ICA.  Thus, demand is not excused.  <u>See</u> Def. Mem. at 19-25.  The *only* case that plaintiffs cite in this regard, <u>ING Principal Protection Funds Deriv. Litig.</u>, 369 F. Supp. 2d 163 (D. Mass. 2005), held that demand was *not* excused and found that the mere fact that the Trustees had approved the fees at issue was insufficient to excuse demand.[21]  Because the ICA standard of interestedness is controlling, plaintiffs' utter failure in this regard ends the inquiry.

#### B.    Massachusetts Common Law Demand Excused Requirements

Plaintiffs then inexplicably turn to Massachusetts common law demand excused standards, which are irrelevant in the mutual fund context.  Even if the common law standards applied, however, demand would not be excused.

Plaintiffs contend that a "majority of the Trustees had significant pecuniary interests in the challenged transactions."[22]  Opp. at 49.  But plaintiffs do not allege that the Trustees benefited directly from any directed brokerage transaction or fee.  Rather, they contend that the

---

[21]    Undermining their allegations that the Trustees are "totally dominated by MFS" (Opp. at 47), plaintiffs concede that it is shareholders -- and not the Investment Adviser -- who have the right to vote out the Trustees. However, plaintiffs dismiss this important fact without analysis as "technically" irrelevant.  Opp. at 47.

[22]    Curiously, plaintiffs appear to cite to <u>White v. Panic</u>, 783 A.2d 543, 552-53 (Del. 2001), for this proposition.  However, <u>White</u> did not address directors' alleged pecuniary benefit, and actually held that demand was *not* excused.  <u>See id.</u>

Trustees' general approval of directed brokerage benefited them hypothetically because it "increase[d] assets in the Funds, thereby decreasing the likelihood that the mutual fund would be disbanded or merged" and allowed them to "preserve his/her lucrative position as a Trustee." See Opp. at 47-48. This series of strained hypotheses is plainly insufficient as a matter of law to excuse demand. See Def. Mem. at 20-25; see also Grossman v. Johnson, 674 F.2d 115, 123-24 (1st Cir. 1982) (much more than mere "possibility" of "self-interested purpose" is required to excuse demand; actual and concrete conflict of interest necessary); In re E.F. Hutton Banking Practices Litig., 634 F. Supp. 265, 271 (S.D.N.Y. 1986) (rejecting allegation that directors benefited from wrongdoing by keeping director fees); 1 ALI Principles of Corporate Governance § 1.23 comments (director is not interested solely because he considers transaction that could result in termination of directorship).

Plaintiffs scold defendants for dealing with each of plaintiffs' allegations "in isolation," and contend that "when taken together, Plaintiffs' allegations show that the Trustees participated in the wrongdoing or were otherwise interested." Opp. at 49-50. Yet plaintiffs fail to address the numerous cases cited by defendants in which the court addressed various reasons as to why the trustees at issue were alleged to have been interested -- *all* of which were found to be insufficient to excuse demand.[23] See, e.g., Grossman, 674 F.2d at 124 (finding demand not excused where plaintiffs alleged fund directors were controlled by adviser, had participated in the wrongdoing, had announced opposition to derivative lawsuit, and had alleged conflict of interest); In re Stratus Computer, Inc. Sec. Litig., 1992 WL 73555, at *9-10 (D. Mass. Mar. 27, 1992) (demand

---

[23]    Plaintiffs' citation to California Public Employees' Retirement Sys. v. Coulter, 2002 Del. Ch. Lexis 144 (Dec. 18, 2002) is inapposite. There, the court found concluded that one director was under the control of the company's CEO where the director was a life-long friend of the CEO, the director's son worked for the CEO, the director approved of the CEO's self-dealing transactions, and the director himself owned almost 43,000 of the company's shares. Id. at *28-29. In particular, the court emphasized the particular facts that the CEO was the boss of the director's son and the director's own friendship with the CEO in finding demand excused. Such circumstances are not alleged to be present here. Id. at *29.

not excused where plaintiffs alleged directors had business relationships with company insiders, participated in insider trading, and had knowledge of wrongful conduct); In re E.F. Hutton Banking Practices Litig., 634 F. Supp. at 271 (demand not excused because plaintiffs' allegations of retention of directors' fees, suing directors and ratification of conduct insufficient).

Considered as a whole, plaintiffs' allegations do not contain any particular basis for concluding that any Trustee is interested under the ICA or Massachusetts common law. See Def. Mem. at 19-25. Nowhere does the Complaint detail specifically how any Trustees, let alone a *majority* of them, is interested. Indeed, a majority of the Trustees are not alleged to have been MFS officers or directors or to have engaged in principal transactions with MFS. Plaintiffs' bare conclusion that that "at least eight of the 12 Trustees" were somehow controlled by MFS Company (Opp. at 48) does not come close to meeting this obligation. Plaintiffs fail to identify *which* Trustees allegedly were interested, explain *how* each Trustee allegedly was interested, or explain *why* certain trustees (and not others) were interested. Such scattershot pleading is insufficient as a matter of law. See Grossman, 674 F.2d at 124 ("A proper excuse of control or domination calls for particularized allegations and specific facts – which are absent both in the initial and amended complaint"); In re Stratus, 1992 WL 73555, at * 9-10 ("allowing a complaint to circumvent the demand requirement through allegations as vague and conclusory as [plaintiff's allegations] would render the demand requirement nugatory. These items … cannot be understood to allege particular misconduct by the individual directors nor particular circumstances specific to each director.").

Finally, the Opposition does not even attempt to refute two key points from Defendants' Memorandum, each of which is fatal to their claims. First, all of the claims against the Trustees (whether direct or derivative), other than those premised on intentional wrongdoing, must be

dismissed because they are barred by the exculpation clause governing the various MFS business trusts. See Def. Mem. at 26 n.25. Second, the derivative claims should be dismissed because plaintiffs fail to comply with Rule 23.1's requirement that "the complaint shall be verified." Fed. R. Civ. P. 23.1; see Def. Mem. at 26 n.24.

## C.    Plaintiffs Have No Standing To Bring Their IAA Claim As Members Of An Unincorporated Association

Plaintiffs argue that they have standing to bring their IAA claim (Count V of the Complaint) as members of an unincorporated association. However, the putative basis for plaintiffs' claim – that the fund defendants "constitute an unincorporated association" (Opp. at 33) – suffers from several legal defects.

As a preliminary matter, it is "a settled principle of Massachusetts law that an unincorporated association is not a separate entity and cannot be a party to litigation." Curley v. N. Am. Man Boy Love Ass'n, 2003 WL 21696547, at *4 (D. Mass. Mar. 31, 2003) (internal citations and quotations omitted). See also McCormack v. Labor Relations Comm'n, 358 Mass. 682, 685 (1971) (an unincorporated association "is not a separate entity and cannot be made a party defendant") (internal quotations and citations omitted).[24]

Further, the ICA only permits suits only on behalf of "investment companies," not "unincorporated associations." In any event, Count V does not purport to be brought on behalf of an "unincorporated association" or anything of the sort. Rather, it is brought expressly on behalf of MFS Funds as nominal defendants. Compare Opp. at 33-34 with Compl. ¶ 40. Indeed,

---

[24]     Even if "unincorporated associations" could sue under Massachusetts law, plaintiffs have not alleged that the funds comprise such an association merely because the "Family of Funds "is commonly known by the brand name "MFS" and is a "registered trademark of MFS Company." See, e.g., Testa v. Janssen, 482 F. Supp. 1195, 1200 (W.D. Pa. 1980) (holding that a common trade name is not a basis to recognize separate legal entities as unincorporated associations). Each shareholder of an MFS Fund has a relationship with that fund alone. She has no claim on the assets of other funds, and no right to obtain compensation from the redress of any injury of another fund. See supra at p. 2-5. That is why she lacks standing. Because she has no reasonable expectation of obtaining proceeds as to funds she does not own, there is no logical basis to afford her standing to sue on the basis of some technicality not recognized by the law of the state in which the funds were organized.

plaintiffs' allegations of "demand futility" (albeit legally defective, see supra at 19-22), are directed to the alleged futility of making demand upon MFS Fund trustees, and *not* the comparable authority of some supposed "unincorporated association." See Compl. ¶¶ 134-142.

Finally, plaintiffs cannot confer standing on themselves based on the erroneous theory that Fed. R. Civ. P. 23.2 allows them to sue "double derivatively" on behalf of the funds and the purported "unincorporated association." Opp. at 34. Rule 23.2 is applicable to *class actions* against an unincorporated association that otherwise could not be sued. See Fed. R. Civ. P. 23.2 (authorizing "an action brought … as a class"); Northbrook Excess & Surplus Ins. Co. v. The Medical Malpractice Joint Underwriting Ass'n of Mass., 900 F. 2d 476, 479 (1st Cir. 1990). It provides no basis for a derivative action at all.

### D.    Plaintiffs' IAA Claim Must Be Dismissed As Inadequate

Even if plaintiffs had standing and demand were excused, the IAA claim (Count V of the Complaint) should be dismissed because plaintiffs fail to identify any provisions of the investment advisory contract that violate the IAA. Plaintiffs concede that the language in Section 215(b) of the IAA is strikingly similar to the language in Section 29(b) of the Exchange Act. See Opp. at 51; see also Transamerica Mortgage Advisors, Inc. (TAMA) v. Lewis, 444 U.S. 11, 19 (1979) (referring to Section 29(b) as "comparable provision" to Section 215); Mills v. Electric Autolite Co., 396 U.S. 375, 387 n.10 (1970). Yet, plaintiffs offer no compelling reason as to why Section 215 should not be interpreted consistently with Section 29(b), which only permits a claim if a party can show that the *contract* itself is unlawful. Cf. Zerman v. Jacobs, 510 F. Supp. 132, 135 (S.D.N.Y. 1981); Drasner v. Thomson McKinnon Sec., Inc., 433 F. Supp. 485, 501-02 (S.D.N.Y. 1977); see also GFL Advantage Fund, Ltd. v. Colkitt, 272 F.3d 189, 201-02 (3d Cir. 2001). The Opposition, like the Complaint, fails to identify any provision of the investment advisory contracts that *by its terms* violates the IAA. Plaintiffs' conclusory

allegation that the contracts "constituted part of MFS Company's overall scheme," Opp. at 52, is insufficient to salvage their claim.[25]

Plaintiffs concede that there is no private right of action for damages under the IAA (Opp. at 53), and do not dispute that rescission does not include "compensation for any diminution in the value of the rescinding party's investment alleged to have resulted from the adviser's action or inaction." Transamerica Mortgage Advisors, Inc., 444 US. at 24 n.14. Plaintiffs therefore may not recover under the IAA alleged losses relating to the purported reduction of Fund assets caused by directed brokerage. See Def. Mem. at 28-29.

### E.     Plaintiffs' State Law Claims Should Be Dismissed

Plaintiffs' breach of fiduciary duty, aiding and abetting breach of fiduciary duty, and unjust enrichment claims should be dismissed because: (1) they are derivative claims that have been improperly pleaded as direct claims; (2) they are preempted by SLUSA; and (3) they otherwise fail to state a claim.[26]

### 1.     Plaintiffs' State Law Claims Are Derivative Claims That Have Been Improperly Pleaded As Direct Claims

Plaintiffs ignore virtually all of the cases cited by defendants, and instead cite Blasberg v. Oxbow Power Corp., 934 F. Supp. 21 (D. Mass. 1996), in support of their argument that their state law claims are "direct under Massachusetts law." Opp. at 54. Blasberg, however, does not support plaintiffs' position. In Blasberg, the Court found that because plaintiff's claim did not

---

[25]     Plaintiffs cite inapposite cases, Opp. at 50-52, in which the injured parties were *consumers* seeking restitution for fees paid, unlike this case, where plaintiffs are alleged shareholders bringing a derivative suit. See, e.g., Margaret Hall Found. v. Atl. Fin. Mgmt., Inc., 572 F. Supp. 1475, 1478 (D. Mass. 1983) (plaintiffs sought to have defendants manage their funds and entered into investment advisory agreement); Norman v. Salomon Smith Barney Inc., 350 F. Supp. 2d 382, 384-85 (S.D.N.Y. 2004) (plaintiff opened portfolio management account with defendant); Bogart v. Shearson Lehman Bros., Inc., 1993 U.S. Dist. Lexis 1182, at *2 (S.D.N.Y. Feb. 3, 1993) (plaintiff was client of defendant brokerage firm); Wellington Int'l Commerce Corp. v. Retelny, 727 F. Supp. 843, 844 (S.D.N.Y. 1989) (plaintiff was client of defendant brokerage firm); Morris v. Wachovia Sec., Inc., 277 F. Supp. 2d 622, 625 (E.D. Va. 2003) (plaintiff subscribed to defendant's portfolio management service).

[26]     In any event, as set forth more fully above, even if plaintiffs' state law claims had been pleaded properly as derivative claims, they would still be defective because plaintiffs have failed to plead facts demonstrating demand futility, and lack standing to bring derivative claims on behalf of any but the two funds in which they continue to own shares. See supra at 2-7, 19-21.

arise "independent of the plaintiff's status as a shareholder," the claim was derivative.  Id. at 26.

See also id. ("[I]f a plaintiff alleges mismanagement of funds … resulting in a diminution of the

value of the [fund's] assets, the claim is one held by the [fund] itself, and is thus *derivative* if

brought by an investor.") (emphasis added); Lapidus v. Hecht, 232 F.3d 679, 683 (9th Cir. 2000)

("To bring a direct action under Massachusetts law, a Plaintiff must allege an injury distinct from

that suffered by shareholders generally"); Sarin v. Ochsner, 48 Mass. App. Ct. 421, 423 (2000).

In this case, all of plaintiffs' state law claims are based upon the same alleged injury: the

MFS Funds allegedly paid too much in commissions arising from "shelf space" arrangements.

See, e.g., Compl. ¶¶ 183, 188, 196.   Plaintiffs fail sufficiently to explain how their alleged

injuries are distinct from those that all fund shareholders would have suffered.  Instead, plaintiffs

argue that their claims are direct because any recovery "would go solely to the Fund," creating a

benefit only for current shareholders rather than "those who were fund shareholders during the

wrongdoing[.]"  Opp. at 55 n.41.

Needless to say, such an argument is irrelevant, as it would apply equally in *all* derivative

actions.  Courts routinely hold that shareholders must bring derivative suits without regard to

whether former shareholders, as opposed to current shareholders, would benefit from any

potential recovery.  See, e.g., Ross v. Bernhard, 396 U.S. 531, 538 (1970) ("The proceeds of the

[derivative] action belong to the corporation" and not former shareholders).  Indeed, in all

derivative actions, it is the fund that benefits directly, not individual shareholders.  See

Henderson v. Axiam, Inc., 1999 WL 33587312, at *49 (Mass. Super. Jun. 22, 1999) ("Any

recovery [in a derivative action] will inure to the benefit of the [fund] and not the shareholder

plaintiffs personally.") (citing Baker v. Allen, 292 Mass. 169, 172 (1935) (stating that in a

derivative action "[t]he interests of the corporation alone are immediately concerned Damages must be paid to it if any are recovered.").

## 2.    SLUSA Preempts All of Plaintiffs' State Law Claims

Despite the artful language that plaintiffs have used in an apparent effort to avoid the reach of SLUSA, their state law claims are all barred by that statute.  Plaintiffs argue that SLUSA does not apply because their state law claims: (1) do not involve any misrepresentations; and (2) are brought only on behalf of a class of holders of MFS funds, see Opp. at 56, but neither argument allows plaintiffs to escape SLUSA's grasp.  See, e.g., Kircher v. Putnam Funds Trusts, 403 F.3d 478, 484 (7th Cir. 2005) (holders' state law claims preempted by SLUSA); Feitelberg v. Merrill Lynch & Co., 234 F. Supp. 2d 1043, 1051 (N.D. Cal. 2002) ("[I]f it looks like a securities fraud claim, sounds like a securities fraud claim and acts like a securities fraud claim, it is a securities fraud claim, no matter how you dress it up."); Araujo v. John Hancock Life Ins. Co., 206 F. Supp. 2d 377, 384-85 (E.D.N.Y. 2002) (rebuffing plaintiffs' artful pleading that placed state-law labels on "what are in essence securities fraud claims").

Despite plaintiffs' protestations to the contrary, as set forth above, the Complaint is replete with *express* allegations of misrepresentations and omissions, which plaintiffs specifically incorporate into their state law claims.[27]  See Complaint ¶¶ 179, 185, 190, 198. These allegations -- including making "material omissions," "wrongfully obscuring" the value of benefits, and "fail[ing] to disclose" allegedly excessive fees and commissions, see, e.g., Compl. ¶¶ 2, 11, 13, 17 – fall squarely within the requirement for application of SLUSA that plaintiffs allege "misrepresentation or omission of a material fact."  See 15 U.S.C. § 78bb(f)(1); see also

---

[27]    For these same reasons, as noted above, the Complaint sounds in fraud and must be dismissed under Rule 9(b).  See supra p. 1 and n. 2.

<u>Green v. Ameritrade, Inc.</u>, 279 F.3d 590, 596 (8th Cir. 2002) (if "the defendant is *alleged* to have misrepresented or omitted a material fact" SLUSA preemption is proper) (emphasis added).

Plaintiffs next attempt to avoid SLUSA by arguing that their state law claims are brought on behalf of a class of *holders* of MFS Funds. However, many courts have held that holders (in addition to purchasers) fall "squarely" within SLUSA. <u>See</u> <u>Kircher v. Putnam Funds Trusts</u>, 403 F.3d 478, 484 (7th Cir. 2005) (finding that holders' state law claims are connected to plaintiffs' own purchases of securities and are thus preempted by SLUSA); <u>Rowinski v. Salomon Smith Barney Inc.</u>, 398 F. 3d 294, 303 (3d Cir. 2005) (holding that claims brought on behalf of both holders and purchasers were "squarely preempted under SLUSA"); <u>Prof'l Mgmt. Assocs. v. KPMG LLP</u>, 335 F.3d 800, 803 (8th Cir. 2003) (finding class of persons who "bought and held" shares to be "squarely within SLUSA's parameters"). That is because SLUSA preempts both purchaser *and* holder claims.[28]

### 3. Plaintiffs' Breach Of Fiduciary Duty, Aiding And Abetting Breach Of Fiduciary Duty, And Unjust Enrichment Claims Are Defective

#### a. Plaintiffs' Breach Of Fiduciary Duty Claims Are Defective

Plaintiffs cannot plead a general state law fiduciary duty claim by referring to Section 36(b) of the ICA. Absent a state law fiduciary relationship, there can be no state law breach of fiduciary duty claim. In this case, neither the investment advisor (MFS) nor the fund trustees have a fiduciary relationship with plaintiffs as to which they breached a duty. <u>See</u> Def. Mem. at 32. Simply because plaintiffs state otherwise (Opp. at 58) does not make it true. The relevant inquiry is *not* whether Congress codified a fiduciary duty in Section 36(b) of the ICA with

---

[28]    Although holders do not have standing to sue under Section 10(b) as a result of <u>Blue Chip</u>, 421 U.S. 723, their state law claims are still preempted by SLUSA. <u>Kircher</u>, 403 F.3d at 484. However, plaintiffs are not without a remedy because, as the Seventh Circuit recognized in <u>Kircher</u>, 403 F.3d at 483, they will (because they expressly limit their class to holders) benefit from the enormous distributions of regulatory settlement proceeds recovered by the SEC. <u>Kircher</u> noted that the court should be concerned that plaintiffs were defining the class simply to avoid SLUSA pre-emption. <u>See</u> 403 F.3d at 484 ("Our plaintiffs' effort to define non-purchaser-non-seller classes is designed to evade PSLRA in order to litigate a securities class action in state court in the hope that a local judge or jury may produce an idiosyncratic award. It is the very sort of maneuver that SLUSA is designed to prevent.").

respect to the advisor, nor whether the SEC has obliquely indicated that fund directors should "protect investors."  See Opp. at 59.  Rather, the relevant questions are whether *Massachusetts* recognizes such a fiduciary relationship, and whether breached a duty in connection with that relationship.

It is clear that, as a matter of Massachusetts law, MFS and the fund trustees have no fiduciary relationship with these plaintiffs that is implicated by the allegations of the Complaint. The relationship between the parties determined whether a fiduciary duty arises.  See, e.g., Ward v. Costello, 2002 WL 31973253, at *7 (Mass. Super. Dec. 17, 2002) (elements of breach of fiduciary duty include "existence of a duty . . . based upon the *relationship* of the parties") (emphasis added).  Holding a position as director or trustee of an entity does not imply a fiduciary duty to shareholders (as opposed to the entity itself).  Jernberg v. Mann, 358 F.3d 131, 136 (1st Cir. 2004) (directors "do not occupy a [] trust relationship toward individual stockholders) (citing Goodwin v. Agassiz, 283 Mass. 358 (1933)).  Plaintiffs cite no cases to the contrary, and have not established *any* relationship, much less one that would impose a fiduciary duty under Massachusetts law, between the investment advisor and plaintiffs.  Def. Mem. at 32. Similarly, the Trustees, under Massachusetts law, are not by virtue of that status fiduciaries of the plaintiffs, Jernberg, 358 F.3d at 136, and without such a fiduciary relationship, plaintiffs cannot allege a breach of fiduciary duty by the Trustees.[29]  Any such duties are owed to the entity and may be vindicated by shareholders only by derivative action (which plaintiffs in this regard do not purport to bring, and as to which demand is not futile).  See supra at 19-21.

---

[29]     Plaintiffs incorrectly state that defendants have "misinterpret[ed]" Jernberg.  Opp. at 60 n. 43.  Indeed, the Jernberg court clearly stated that, under Massachusetts law, "[a] director or officer of a corporation does *not* occupy a fiduciary relation to individual stockholders" because "their fiduciary obligations arise from and are bounded by the corporate relationship."  Jernberg, 358 F.3d at 135 (emphasis added).  The court further held: "directors and officers . . . do not occupy a [] trust relationship toward individual stockholders in the corporation" as the Massachusetts Supreme Judicial Court has "stated quite specifically that the same duty of trust and strict good faith owed by directors and officers to the corporation itself did *not* extend from them to the individual stockholders."  Id. at 137 (citing Goodwin v. Agassiz, 283 Mass. 358, 360 (1933)) (emphasis in original).

### b.    Plaintiffs' Aiding And Abetting Breach Of Fiduciary Duty Claims Are Defective

Without stating a claim for breach of fiduciary duty, there can be no liability for aiding and abetting.  See Brandt v. Hicks, Muse & Co., 213 B.R. 784 (D. Mass. 1997), aff'd, 242 F.3d 6 (1st Cir. 2001).  Additionally, Massachusetts law requires plaintiffs to plead that defendants had *actual knowledge* of the underlying fiduciary duty to establish aiding and abetting liability.  See Spinner v. Nutt, 417 Mass. 549, 556 (1994).  Plaintiffs tacitly acknowledge the defectiveness of their claim by averring to the Complaint generally and in pointing this Court to the SEC's findings.  Opp. at 61.  However, the Complaint never claims that Defendants had *actual knowledge* of the underlying fiduciary duties, and nowhere in the SEC's Order does the SEC suggest that defendants had such actual knowledge.

### c.    Plaintiffs' Unjust Enrichment Claims Are Defective

Plaintiffs cannot find refuge in a claim for unjust enrichment simply because they failed to plead correctly other claims that would have (if properly plead) provided an adequate remedy at law.  See, e.g., Eureka Broadband Corp. v. Wentworth Leasing Corp., 2004 WL 344425, at *3 n.6 (D. Mass. Feb 24, 2004) (holding that plaintiff must, to bring unjust enrichment claim, show "the absence of a remedy provided by law").  Plaintiffs respond to this argument by baldly asserting that defendants are "wrong."  Opp. at 61.  However, the Complaint makes clear that plaintiffs have adequate remedies at law to pursue any valid claim for relief that they might have.[30]  Indeed, the fact that plaintiffs apparently base this claim on "Defendants' tortious breach of fiduciary duty" (Opp. at 61) (as opposed to contract) offers them no help.  Such an assertion

---

[30]     In pleading unjust enrichment, plaintiffs specifically disavow "any allegations of fraud."  Compl. ¶ 198.  However, in arguing that they have stated a claim for unjust enrichment, plaintiffs specifically claim that they have "suffered injury due to the *fraudulent* and excessive fees imposed on them by Defendants."  Opp. at 61 (emphasis added).  Plaintiffs cannot have it both ways.  They cannot disavow fraud-based claims to evade SLUSA, while at the same time arguing that they have been the victim of fraud in attempting to prove the elements of their state law claims.

demonstrates that if any such claim exists, then it is a claim at law (e.g., a claim against defendants for breach of such fiduciary duty, if any, not an equitable claim).[31]

## CONCLUSION

For the reasons set forth above, and in their Memorandum of Law in Support of Defendants' Motion to Dismiss the Consolidated Amended Complaint, the Defendants respectfully request that this Court dismiss the Consolidated Amended Complaint in its entirety with prejudice.


Dated:  June 24, 2005

                                   Sun Life Financial, Inc., Massachusetts
                                   Financial Services Co., and MFS Fund
                                   Distributors, Inc.,

                                   By their attorneys,


                                   /s/ Jonathan A. Shapiro
                                   Jeffrey B. Rudman (BBO #433380)
                                   William H. Paine (BBO #550506)
                                   Michael G. Bongiorno (BBO #558748)
                                   Jonathan A. Shapiro (BBO #567838)
                                   WILMER CUTLER PICKERING
                                       HALE AND DORR LLP
                                   60 State Street
                                   Boston, MA  02109
                                   (617) 526-6000

---

[31]    Lopes v. Commonwealth, Opp. at 62, does not hold otherwise.  See 442 Mass. 170, 179 (2004) (finding that unjust enrichment was not a viable theory of recovery).

Jeffrey L. Shames,

By his attorneys,


_/s/ Jonathan A. Shapiro_____
James C. Rehnquist (BBO #552602)
Abigail K. Hemani  (BBO #650721)
GOODWIN PROCTER LLP
Exchange Place
53 State Street
Boston, MA  02109


John W. Ballen,

By his attorneys,


/s/ Jonathan A. Shapiro_____
John J. Falvey, Jr. (BBO # 542674)
GOODWIN PROCTER LLP
Exchange Place
53 State Street
Boston, MA  02109


Kevin Parke,

By his attorneys,


/s/ Jonathan A. Shapiro_____
George J. Skelly (BBO #546797)
David M. Ryan (BBO #644037)
NIXON PEABODY LLP
101 Federal Street
Boston, MA  02110

Lawrence H. Cohn, William R. Gutow,
J. Atwood Ives, Abby M. O'Neill, Lawrence T.
Perera, William J. Poorvu,
J. Dale Sherratt, Elaine R. Smith,
and the MFS Funds,

By their attorneys,


/s/ Jonathan A. Shapiro _____
John D. Donovan (BBO #130950)
Jane E. Willis (BBO #568024)
ROPES & GRAY LLP
One International Place
Boston, MA 02110

32