## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| ERIC FORSYTHE, Individually And On Behalf Of All Others Similarly Situated, | ) ) ) | Civil Action No. 04cv10584 (GAO) |
| Plaintiff, | ) ) | **Consolidated Case Nos.:** 04cv10764 (GAO) |
| vs. | ) ) | 04cv11019 (GAO) |
| SUN LIFE FINANCIAL INC., et al., | ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR LEAVE TO SUBMIT SUPPLEMENTAL AUTHORITY IN FURTHER SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Plaintiffs Eric Forsythe ("Forsythe"), Larry R. Eddings ("Eddings") and the City of Chicago Deferred Compensation Plan ("Chicago") (collectively, the "Plaintiffs") respectfully request leave of this Court pursuant to Local Rule 7.1(B)(3) to file supplemental authority further supporting Plaintiffs' opposition to Defendants' Motions to Dismiss. By this memorandum, Plaintiffs also respond to Defendants' October 10, 2005 motion for leave to submit the recent decision in *In re Eaton Vance Mut. Funds Fee Litig.*, 380 F. Supp. 2d 222 (S.D.N.Y. 2005) ("*Eaton Vance*") in support of their Motion to Dismiss.

## PRELIMINARY STATEMENT

By this motion, Plaintiffs request leave to submit the recent decisions in *In re AllianceBernstein Mutual Fund Excessive Fee Litigation*, No. 04 Civ. 4885, 2005 U.S. Dist. LEXIS 24263 (S.D.N.Y. Oct. 19, 2005)("*Alliance*")(attached as Exhibit A); *In re Dreyfus Mutual Funds Fee Litigation*, Master File No. 04-0128, slip op. (W.D. Pa. Sept. 30 2005) ("*Dreyfus* Sept. 28 Slip Op.")(attached as Exhibit B); *In re Mutual Funds Investment Litigation (In re Janus Subtrack)*, MDL-1586, No. 04-MD-15863, 2005 U.S. Dist. LEXIS 18083 (D. Md. Aug. 25, 2005)("Janus MDL Decision")(attached as Exhibit C)[1]; *Jones v. Harris Assocs., L.P.*, No. 04 C 8305, 2005 WL 831301, at *6-7 (N.D. Ill. Apr. 7, 2005)("*Jones*") (attached as Exhibit D), and *Strigliabotti v. Franklin Resources, Inc.*, No. C04-00883, 2005 U.S. Dist. LEXIS 9625 at *12-13 (N.D. Cal. Mar. 7, 2005)("*Strigliabotti*") (attached as Exhibit E); *In re Davis Selected Mutual Funds Litigation,* 04 Civ. 4186, 2005 U.S. Dist. LEXIS 23203 (S.D.N.Y. Oct. 11, 2005)("*Davis*")(attached as Exhibit F); *In re Franklin Mutual Funds Fee Litig.*, No. 04-CV-982, 2005 WL 2175950 (D.N.J., Sept. 09, 2005)("*Franklin*")(attached as Exhibit G) and *In re*

---

[1] Judge Motz issued two opinions on August 25, 2005 in the case of *In re Mutual Funds Investment Litigation (In re Janus Subtrack)*, MDL-1586, Civ. No. 04-MD-15863(D. Md.): one regarding the claims made by an investor class of plaintiffs and one regarding claims made by plaintiffs in a derivative action.  Plaintiffs submit only the investor class opinion as supplemental authority here.

*Lord Abbett Mutual Funds Fee Litig.*, 385 F. Supp. 2d 471 (D.N.J. 2005) ("*Lord Abbett*")(attached as Exhibit H).[2]  In *Alliance*, *Dreyfus*, *Jones*, and *Strigliabotti* the courts sustained the plaintiffs' claims under Section 36(b) of the Investment Company Act ("Section 36(b)"), which are similar to Plaintiffs' Section 36(b) claim in this case.  Judge Motz also sustained a similar Section 36(b) claim in the Janus MDL decision.  The *Alliance*, *Dreyfus*, *Jones*, *Strigliabotti* and Janus MDL decisions not only provide further support for Plaintiffs' opposition to Defendants' Motion to Dismiss, but also demonstrate one of the many ways in which the *Eaton Vance* decision was wrongly decided and does not require dismissal here.

## STATEMENT OF FACTS

Defendants have moved for leave to submit the recent decision in *Eaton Vance*, in which the court dismissed with prejudice an excessive fee complaint relating to a different mutual fund company.  Defendants argue in their motion for leave that the *Eaton Vance* dismissal provides a further basis for this Court to dismiss Plaintiffs' case.  As discussed below, Plaintiffs submit that *Eaton Vance* was wrongly decided for several reasons, including that the decision goes against the great weight of authority sustaining similar Section 36(b) claims.  Such decisions include this Court's decision in *Wicks v. Putnam Investment. Mgmt.*,

---

[2] Plaintiffs only became aware of *Jones* and *Strigliabotti* after their opposition to Defendants' Motion to Dismiss had been filed.

*LLP*, No. 04-10988, 2005 U.S. Dist. LEXIS 4892 (D. Mass. Mar. 28, 2005) as well

as five of the recent decisions submitted as supplemental authority herein. *See*

*Alliance*, 2005 U.S. Dist. LEXIS 24263, *Dreyfus* Sept. 28 Slip Op., the Janus MDL

decision, *Jones*, 2005 WL 831301, *Strigliabotti*, 2005 U.S. Dist. LEXIS 9625. By

this motion, Plaintiffs seek leave of this Court to submit all of the recent decisions

cited herein as supplemental authority in support of Plaintiffs' Opposition to

Defendants' Motion to Dismiss.

## **ARGUMENT**

### I.    **PLAINTIFFS' CLAIMS HERE ARE VALID AND SHOULD BE SUSTAINED**

Defendants argue that the dismissal of the *Eaton Vance* complaint, which

they contend is virtually identical to this case, supports the dismissal of Plaintiffs'

claims in this case. This argument should be rejected for several reasons. First,

*Eaton Vance* is not controlling authority in this Circuit. Second, *Eaton Vance* was

wrongly decided and courts ruling on similar complaints have declined to follow

it.[3] Since the plaintiffs in *Eaton Vance* believe Judge Koeltl made certain errors of

---

[3] Although Judge Cedarbaum in the excessive fee case of *In re Davis Selected Mutual Funds Litigation*, 2005 U.S. Dist. LEXIS 23203 followed Judge Koeltl's opinion and recently dismissed plaintiffs' claims, other courts within that Circuit may not follow it. For example, in *In re Allianz Dresdner Mutual Funds Fee Litig.*, No. 04-CV-280 (D. Conn.) ("*PIMCO*"), Judge Droney **granted** the plaintiffs' motion to compel discovery the day **after** the hearing on defendants'

Continued on next page

law and fact in that opinion, they recently submitted, on August 22, 2005, a motion

for reconsideration.[4]  Moreover, because Judge Koeltl dismissed the plaintiffs'

claims with prejudice despite the fact that he had never previously issued any

ruling on those claims, the plaintiffs simultaneously filed a motion for leave to file

an amended complaint, and attached a proposed amended complaint thereto.[5]  No

ruling has yet been issued by the *Eaton Vance* court on these two motions.

As summarized below, each portion of the *Eaton Vance* decision discussed

in the Defendants' motion for leave was incorrectly decided.  Moreover, the *Eaton*

*Vance* decision did not address the issue of whether the plaintiffs had standing to

bring their claims at the motion to dismiss stage, and recent decisions have

deferred this issue until later in the proceedings.

---

motions to dismiss, where the defendants argued for a stay of discovery and that
*Eaton Vance* mandated dismissal of the *PIMCO* action.

[4] Some of the Plaintiffs' counsel here are the same plaintiffs' counsel as in *Eaton Vance.*

[5] The *Eaton Vance* court's refusal to grant the plaintiffs leave to amend their complaint conflicts with recent decisions in the excessive fee cases of *In re Franklin Mutual Funds Fee Litig.*, 2005 WL 2175950  and *In re Lord Abbett Mutual Funds Fee Litig.*, 385 F Supp. 2d 471.  While Judge Martini, who decided both *Lord Abbett* and *Franklin*, granted the defendants' motions to dismiss, Judge Martini, unlike Judge Koeltl in *Eaton Vance*, granted the plaintiffs in those cases leave to amend their Section 36(b) claims.  Despite Judge Martini's rulings in *Lord Abbett* and *Franklin* that Section 36(b) is a derivative claim, Judge Lancaster in *Dreyfus* and Judge Kram in *Alliance* specifically held that the plaintiffs' Section 36(b) claims are direct, not derivative. *Dreyfus* Sept. 28 Slip Op. at 17, n. 7; *Alliance*, 2005 U.S. Dist. LEXIS at *17.

A.    **Numerous Recent Decisions Confirm that Plaintiffs Here Have Pleaded a Valid Claim Under Section 36(b) of the Investment Company Act**

As recognized by this Court in *Wicks*, 2005 U.S. Dist. LEXIS 4892, Federal Rule of Civil Procedure 8 ("Rule 8") does not require plaintiffs to plead detailed evidence for a Section 36(b) claim to survive dismissal.  *See, e.g.*, *Jones*, 2005 WL 831301, at *6-7; *Strigliabotti*, 2005 U.S. Dist. LEXIS 9625 at *12-13; *Pfeiffer v. Bjurman, Barry & Assocs.*, No. 03 Civ. 9741, 2004 U.S. Dist. LEXIS 16924 at *14 (S.D.N.Y. Aug. 26, 2004); *Millenco L.P. v. meVC Advisors, Inc.*, No. 02-142, 2002 U.S. Dist. LEXIS 19512, at *9-10 (D. Del. Aug. 21, 2002).  As held in these cases, under Rule 8's notice pleading requirement, all that is necessary is a short and plain statement alleging that the fees were excessive under Section 36(b).

The *Eaton Vance* court erroneously applied a heightened pleading standard to the plaintiffs' Section 36(b) claim, overlooking recent decisions, including *Wicks*.  Although the *Eaton Vance* court purported to apply Rule 8, it erroneously required that the plaintiffs meet the test enunciated in *Gartenberg v. Merrill Lynch Asset Management, Inc.*, 694 F.2d 923 (2d Cir. 1982), which other courts have held applies at *trial*, not on a pleading motion.  *See, e.g.*, *Pfeiffer*, 2004 U.S. Dist. LEXIS 16924 at *15; *Millenco*, 2002 U.S. Dist. LEXIS 19512, at *9-10.

Moreover, the *Eaton Vance* decision conflicts with three recent cases which have upheld the plaintiffs' Section 36(b) claims without applying a heightened

pleading standard.  First, in the excessive fee case of *In re AllianceBernstein Mutual Fund Excessive Fee Litigation*, Judge Kram acknowledged the *Gartenberg* standard for Section 36(b) claims but held that for Section 36(b) claims "at the dismissal stage…the Federal Rules of Civil Procedure simply require notice pleading."  *Alliance*, 2005 U.S. Dist. LEXIS 24263 at *18.  In so ruling, Judge Kram declined to follow Judge Koeltl's decision in *Eaton Vance*, even though both judges preside in the Southern District of New York.

Judge Kram then held that the plaintiffs' allegations concerning the Investment Adviser Defendants, which mirror the allegations in this case, "exceed the baseline of specificity necessary to survive a motion to dismiss" because the plaintiffs' amended complaint provided "concrete examples of fiduciary misconduct with respect to management fees."  *Id*.  First, Judge Kram noted that the plaintiffs' allegations illustrated "that as the size of the Funds increased, any savings generated by economies of scale were not passed to shareholders."  *Id.*  Judge Kram followed, *inter alia*, this Court's decision in *Wicks v. Putnam Investment Mgmt., LLC*, 2005 U.S. Dist. LEXIS 4892 and found that these allegations stated a claim under Section 36(b) "by demonstrating that [the plaintiffs] continued to pay escalating fees in exchange for absolutely no additional services."  *Id.*  Here, Plaintiffs' Complaint includes similar allegations and should also be sustained.  *See* Consolidated Amended Complaint at ¶¶95, 101-105, 120(g),

123(f), 125(g), 127(h); *see also* ¶¶4, 79, 94, 108, 120(f), 123(e), 125(f), 127(g), 160, 163 (alleging that improperly inflated fees charged to funds without any corresponding benefit to investors).[6]

Judge Kram further held that the plaintiffs pleaded with particularity "facts suggesting that [the defendants] made recurring payments to brokers that were not in accordance with a valid 12b-1 plan" and detailed "the Adviser's system of diverting soft dollars to brokers" at the shareholder's expense and that these claims were cognizable under *Meyer v. Oppenheimer Management Corp.*, 764 F.2d 76, 82 (2d Cir. 1985) and *Pfeiffer*, 2004 U.S. Dist. LEXIS 16924 at *15. *Alliance*, 2005 U.S. Dist. LEXIS 24263, at *20.   Plaintiffs in this case have made similar allegations in their complaint.  *See* ¶¶101-105, 107, 109-113.

Second, in the excessive fee case of *In re Dreyfus Mutual Funds Fee Litig.*, Master File No. 04-0128 (W.D. Pa.), Judge Lancaster, without applying a heightened pleading standard, recently denied the defendants' motion to dismiss the plaintiffs' Section 36(b) claims against the adviser and distributor defendants based on allegations that the savings realized from economies of scale were not passed on to investors where growth of the funds was due to kickbacks for shelf space paid to brokers to push those funds.  *Dreyfus* Sept. 28 Slip Opn. at 16.

---

[6] All "¶" references in this motion are to Plaintiffs' Consolidated Amended Complaint.

Plaintiffs in this case have included similar allegations in their complaint.  *See* ¶¶95, 101-105, 120(g), 123(f), 125(g), 127(h); *see also* ¶¶4, 79, 94, 108, 120(f), 123(e), 125(f), 127(g), 160, 163 (alleging that improperly inflated fees charged to funds without any corresponding benefit to investors).

Finally, the Maryland MDL court in the Janus MDL decision sustained the plaintiffs' Section 36(b) claim for excessive fees and expenses resulting from defendants' market timing and late trading schemes.  *In re Mutual Funds Investment Litigation*, 2005 U.S. Dist. LEXIS 18083 at *45-47. The Maryland MDL court, too, declined to apply a heightened pleading standard to the plaintiffs' Section 36(b) claims.  *Id.*  Instead, the Maryland MDL court held that the MDL plaintiffs' Section 36(b) claim was supported by allegations such as "management fees, which were based upon the amount of funds under management, were increased excessively by late trades and market timed transactions that increased the funds under management." *Id.* at *47.  Such allegations are similar to the Section 36(b) allegations in this case. *See, e.g.,*  ¶¶4, 79, 94, 95.

In addition, the *Eaton Vance* court's holding that the plaintiffs' Section 36(b) claim failed to allege that the defendants charged excessive (as opposed to only improper) fees overlooked the plaintiffs' allegations that the fees were excessive because plaintiffs had received no benefit from the fees, *i.e.*, there was a disproportionate relationship between the fees paid and the services rendered,

consistent with the Second Circuit's test for Section 36(b) claims in *Gartenberg*.

As the court held in *Jones*, 2005 WL 831301, in upholding a similar Section 36(b)

claim:

> if the money [the defendant] is receiving can be fairly
> characterized as a fee and it is in essence something for
> nothing, clearly that would represent an actionably
> disproportional relationship between the fees paid and the
> services rendered.

*Id.* at *3. Similar allegations here should also be upheld. *See, e.g.,* ¶¶4, 79, 94,

108, 120(f), 123(e), 125(f), 127(g), 160, 163; *see also Strigliabotti*, 2005 U.S. Dist.

LEXIS 9625 at *12 ("The Funds have grown in size from $2 billion in assets in

1983 to $300 billion in assets in 2003, while the nature of the services rendered has

not changed, resulting in disproportionately large advisory fees.").

Finally, the *Eaton Vance* court's holding that the fund adviser and trustees

were not proper defendants for the plaintiffs' Section 36(b) claim overlooked the

plaintiffs' allegations that the adviser defendants breached their fiduciary duties

and received excessive fees in violation of Section 36(b) and the trustee defendants

were "affiliated persons" of the adviser defendants. In *Meyer,* 764 F.2d at 82, the

Second Circuit recognized that Section 36(b) covers payments made to the

"investment adviser or any ***affiliated person*** of such investment adviser." 15

U.S.C. §80a-35(b) (emphasis added). The Investment Company Act's definition

of an "affiliated person" includes "any person directly or indirectly controlling,

controlled by, or under common control with, such other person." 15 U.S.C. §80a-2(a)(3). Plaintiffs here, as the plaintiffs in *Eaton Vance*, alleged that "the Trustee Defendants were **captive to and controlled by** MFS Company." ¶91 (emphasis added); *see also* ¶135. Because the Trustee Defendants in *Eaton Vance* and in this case were "affiliated persons" and were recipients of the payments, they are proper Defendants under Section 36(b). Furthermore, as the *Gartenberg* court explained:

> [T]he expertise of the independent trustees of a fund, whether they are fully informed about all facts bearing on the adviser-manager's service and fee, and the extent of care and conscientiousness with which they perform their duties and important factors to be considered in deciding whether **they and** the adviser-manager are guilty of a **breach of fiduciary duty in violation of §36(b)**.

694 F.2d at 930 (emphasis added.) This language shows the Trustees may be held liable under Section 36(b). In addition, in *Halligan v. Standard & Poor's/Intercapital, Inc.*, 434 F. Supp. 1082 (E.D.N.Y. 1977), an allegation that "[a]ll of the defendants have directly **or indirectly** received ... compensation or payments of a material nature" is sufficient under Section 36(b). *Id.* at 1084. Similar allegations here should be upheld. *See, e.g.*, ¶¶135, 139-141.

## B. A Private Right of Action Exists Under Sections 34(b), 36(a) and 48(a) of the Investment Company Act

The court's holding in *Eaton Vance* that there is no private right of action under Sections 34(b), 36(a) and 48(a) of the Investment Company Act ignored and conflicts with the recently decided and controlling United States Supreme Court

precedent of *Jackson v. Birmingham Board of Education*, 125 S. Ct. 1497 (2005).

In reaching its decision that no private right of action exists under Sections 34(b),

36(a) and 48(a), the *Eaton Vance* court relied heavily on *Olmsted v. Pruco Life

Insurance Co.*, 283 F.3d 429 (2d. Cir. 2002), which is of questionable authority in

light of *Jackson*.  Moreover, the Second Circuit's decision *after Olmsted* in

*Strougo v. Bassini*, 282 F.3d 162 (2d Cir. 2002), decided by the same judge who

wrote *Olmsted*, did not dismiss claims under Section 36(a) of the Investment

Company Act, confirming the viability of implied private rights of action under the

Investment Company Act after *Olmsted*.

The Supreme Court's decision in *Jackson* compels the conclusion that,

contrary to the *Eaton Vance* court's ruling, there are private rights of action under

Sections 34(b), 36(a) and 48(a) of the Investment Company Act.  *See* Plaintiff's

Opposition to Defendants' Motion to Dismiss at 37-42.  Thus, because the court in

*Eaton Vance* ignored controlling Supreme Court authority, which compels the

conclusion that a private right of action exists under Sections 34(b), 36(a) and

48(a) of the Investment Company Act, the *Eaton Vance* court's rejection of

implied private rights of action under the Investment Company Act should not be

followed here.[7]

---

[7] In support of their argument that no private right of action exists, Defendants
refer this Court to the decisions of *Dull v. Arch,* No. 05 C 140, 2005 WL 1799270

Continued on next page

**C.    Plaintiffs' Claims Here Are Properly Brought as Direct Claims**

Ample authority supports Plaintiffs' assertion of direct claims in this action.

In *Strigliabotti*, 2005 U.S. Dist. LEXIS 9625, an excessive fee mutual fund case

similar to the instant case and *Eaton Vance*, the court held that the plaintiff's state

law claims were direct, not derivative, because "financial harm from overcharges is

harm to the individual investors, who own the Funds' assets and bear its expenses

directly on a pro rata basis."[8] *Id.* at *25; *see also Strougo,* 282 F.3d at 169; *Mann*

*v. Kemper Fin. Cos*., 618 N.E.2d 317, 325. (Ill. Ct. App. 1992) ("A plaintiff

shareholder's injury may not be unique to that particular shareholder, but a

plaintiff's cause of action could still be individual instead of derivative."). [9]  The

_____

(N.D. Ill. July 27, 2005) and *Jacobs v. Bremner*, 378 F. Supp.2d 861 (N.D. Ill. 2005) in their motion for leave to submit the *Eaton Vance* decision.  Def. Mot. at 2, n.4. Those cases, however, ignore the implication of *Jackson*.  Moreover, those cases improperly rely upon *Exxon Mobil Corp. v. Allapattah Services, Inc.*, 125 S. Ct. 2611 (2005), which does not address the issue of private rights of action but rather discuss the relevance of legislative history when the text of a statute is clear on its face.  Here, as discussed above, the text of the Investment Company Act sections at issue have historically been found to support private rights of action; at minimum, they leave room for the possibility of an implied private right of action. Thus, a review of the legislative history is warranted, and such review leaves no doubt that a private right of action was intended to be implied.

[8] Plaintiffs' allegations necessitate the same conclusion here.  *See, e.g.,* ¶¶52-54, 92, 94-95, 102-106, 123.

[9] It is well-settled that a plaintiff's allegations of a breach of fiduciary duty to the shareholders allow that plaintiff to bring a direct cause of action.  *Malmros v. Jones*, No. 03-3489, 2004 U.S. Dist. LEXIS 4371, at *12 (E.D. Pa. Feb. 27, 2004); *Bingham v. Zolt*, 66 F.3d 553, 562 (2d Cir. 1995).

*Eaton Vance* court ignored or overlooked this important fact.  In ruling that the *Eaton Vance* plaintiffs' claims under Sections 36(a) and 48(a) of the Investment Company Act and common law claims were derivative and not direct, that court overlooked the unique nature and structure of mutual funds that demonstrated that the harm to plaintiffs was direct.

In their motion for leave to submit the *Eaton Vance* decision, Defendants assert that the *Eaton Vance* dismissed "all of plaintiffs' direct claims" on ground that they "must be brought as derivative claims."  (Def. Mot. at 3.)  This assertion is incorrect, as the *Eaton Vance* Court did not dismiss the plaintiffs' Section 34(b) or Section 36(b) claims on the grounds that these claims were derivative.  *Eaton Vance*, 380 F. Supp. 2d at 234-239.

Because Plaintiffs' Sections 36(a) and 48(a) claims under the Investment Company Act, and breach of fiduciary duty and unjust enrichment claims, are properly asserted as direct claims they should not be dismissed under the reasoning of *Eaton Vance*.

### D.    Plaintiffs Have Adequately Alleged Demand Futility

The *Eaton Vance* court erred in holding that the plaintiffs failed properly to allege the futility of demand on the Board of Trustees prior to bringing their derivative claim under Section 215 of the Investment Advisers Act.  The court erroneously ignored or overlooked significant authority establishing that the

14

plaintiffs' allegations of the trustee defendants' multiple board memberships and excessive compensation, as well as their protecting the interests of the investment adviser defendants at the expense of the Eaton Vance fund shareholders, was sufficient to excuse demand. *See, e.g., Strougo ex rel. Brazil Fund v. Scudder, Stevens & Clark, Inc.*, 964 F. Supp. 783, 795 (S.D.N.Y. 1997), *reh'g denied*, No. 96 Civ. 2136, 1997 U.S. Dist. LEXIS 12243 (S.D.N.Y. Aug. 15, 1997); *accord Strougo v. Bassini*, 1 F. Supp. 2d 268, 273-75 (S.D.N.Y. 1998), *vacated in part, remanded by* 282 F.3d 162 (2d. Cir. 2002); *In re Trump Hotels Shareholder Derivative Litig.*, No. 96 Civ. 7820, 2000 U.S. Dist. LEXIS 13550, at *25-28 (S.D.N.Y. Sept. 21, 2000). Here, as in *Eaton Vance*, the trustee defendants were incapable of independently evaluating a pre-suit demand, making such a demand futile because each of the trustee defendants: (1) was compensated substantially, (2) typically oversaw a large number of portfolios and (3) benefited from the wrongdoing by preserving his or her position as trustee. *See* ¶¶ 44-45, 86-96, 134-42.

### E.   SLUSA Does Not Preempt the Plaintiffs' State Law Claims

In holding that SLUSA preempted the *Eaton Vance* plaintiffs' state law claims, the court overlooked the controlling portion of *Dabit v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 395 F.3d 25, 49 (2d Cir. 2005), which held that claims for flat annual fees did not "coincide with" the purchase or sale of securities

and were thus not preempted by SLUSA.[10]  Since the ongoing excessive fees
charged to investors in *Eaton Vance* were based on the investors' holding of
securities, they were akin to the flat fee payments in *Dabit* and SLUSA did not
preempt the plaintiffs' claims.

The *Eaton Vance* decision was wrongly decided for the reasons described
above and is not controlling in this Circuit.  Moreover, in light of the recent
authority Plaintiffs submit herewith declining to follow the *Eaton Vance* decision
and sustaining certain of Plaintiffs' claims, *Eaton Vance* lends no support to
Defendants' Motion to Dismiss.[11]

---

[10] The *Eaton Vance* court also erred in not allowing the plaintiffs to replead their
state law claims, as the Second Circuit in *Dabit* has held.  *See Dabit,* 395 F.3d at
47 (instructing that "*[o]rdinarily such dismissal[of plaintiffs' state law claims
under SLUSA] should be without prejudice* in order to allow the plaintiff to plead a
claim sounding only in state law if possible.") (emphasis added); *see also In re
Mutual Funds Investment Litigation*, 2005 U.S. Dist. LEXIS 18083 at *59-60
(dismissing the plaintiffs' state law claims under SLUSA with leave to amend
"without reference to any allegations of misrepresentation or fraudulent scheme in
the state law counts.")

[11] Importantly, the *Eaton Vance* court improperly dismissed the plaintiffs'
complaint with prejudice.  As the plaintiffs argued in a motion for leave to amend
filed concurrently with their motion for reconsideration, the court erred in failing to
allow the plaintiffs at least one chance to cure the deficiencies delineated by the
court for the very first time in its Opinion and Order dismissing the complaint.
Courts routinely allow such amendments *after* the plaintiffs receive guidance from
the court in its first ruling on a motion to dismiss.  *See, e.g., Ronzani v. Sanofi S.A.*,
899 F.2d 195, 198 (2d Cir. 1990).

**F.    Recent Authority Dictates That a Determination Regarding Plaintiffs' Standing to Bring Their Claims On Behalf of all Fund Owners at the Motion to Dismiss Stage is Premature**

In Defendants' Motion to Dismiss, Defendants argue that Plaintiffs' claims should be dismissed because they lack standing to bring them on behalf of all MFS fund holders.  Yet in the *Eaton Vance* decision, the court did not even address the defendants' similar standing arguments in that case at the motion to dismiss stage. Moreover, in the recent decisions of *Dreyfus* Sept. 28 Slip Op., *In re Mutual Funds Investment Litigation*, 2005 U.S. Dist. LEXIS 18083, and *Alliance*, 2005 U.S. Dist. LEXIS 24263, the courts either expressly held that the issue was not one of Constitutional standing and/or deferred this issue until a later stage in the proceeding.

In *Dreyfus*, the court explained:

> We do not decide at this stage of the case [*i.e.*, the motion to dismiss stage] how the fact that the named plaintiffs are only "security holders" (as required by statute) in two of the Dreyfus Funds might affect this case.  To be clear, **we do not find that this is an issue of Constitutional standing**.

*Dreyfus* Sept. 28 Slip Op. at 17, n.7 (emphasis added).

Similarly, in upholding the plaintiffs' Section 36(b) claim, the Maryland MDL court found that even though "Defendants contend[ed] that plaintiffs who own shares in a particular fund lack Article III standing to assert claims in connection with other funds in the same family," yet the court deferred ruling on

17

the standing issue instead of addressing it at the motion to dismiss stage. *In re Mutual Funds Investment Litigation*, 2005 U.S. Dist. LEXIS 18083, at *7 n.4,

In *Alliance*, while the court ruled that the plaintiffs only had standing to sue under Section 36(b) on behalf of the thirteen Alliance funds in which they owned shares, the court also explained that it would defer "its class certification inquiry until that issue is fully briefed by the parties." *Alliance*, 2005 U.S. Dist. LEXIS 24263 at *36. The *Alliance* court's deferral of the class certification inquiry demonstrates that the court intended to leave open the question of whether the plaintiffs could represent a class of fund shareholders for funds which plaintiffs do not own until a later stage in the proceedings.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request that this Court grant their Motion for Leave to File Supplemental Authority and Memorandum of Law.

Dated: October 24, 2005          Respectfully submitted,

                                **MOULTON & GANS, P.C.**

                                By:   /s/ Nancy Freeman Gans
                                  Nancy Freeman Gans (BBO #184540)
                                33 Broad Street, Suite 1100
                                Boston, Massachusetts  02109-4216
                                (617) 369-7979

                                ***Counsel for Plaintiffs Eric Forsythe and Larry R. Eddings and Proposed Liaison Counsel***

**MILBERG WEISS BERSHAD**
  **& SCHULMAN LLP**
Jerome M. Congress
Janine L. Pollack
Kim E. Miller
Michael R. Reese
One Pennsylvania Plaza
New York, New York  10119-0165
(212) 594-5300

*Counsel for Plaintiff Eric Forsythe and*
*Proposed Co-Lead Counse*

**BERNSTEIN LITOWITZ BERGER**
  **& GROSSMANN LLP**
Alan Schulman
Robert S. Gans
 Jerald D. Bien-Willner
12544 High Bluff Drive, Suite 150
San Diego, California 92130
(858) 793-0070
*Counsel for Plaintiff Chicago Deferred*
*Compensation Plan and Proposed Co-Lead*
*Counsel*

**WEISS & LURIE**
Joseph H. Weiss
Richard Acocelli
551 Fifth Avenue, Suite 1600
New York, New York  10176
(212) 682-3025

*Counsel for Plaintiff Larry R. Eddings and*
*Proposed Co-Lead Counsel*

**LAW OFFICES OF CHARLES J. PIVEN, P.A.**
Charles J. Piven
Marshall N. Perkins
The World Trade Center – Baltimore
Suite 2525
401 East Pratt Street
Baltimore, Maryland  21202
(410) 332-0030

*Counsel for Plaintiff Eric Forsythe*

**STULL, STULL & BRODY**
Jules Brody
Aaron Brody
6 East 45th Street
New York, New York  10017
(212) 687-7230

*Counsel for Plaintiff Larry R. Eddings*

**SCHIFFRIN & BARROWAY, LLP**
Marc A. Topaz
Richard A. Maniskas
280 King of Prussia Road
Radnor, Pennsylvania  19087
(610) 667-7706

*Counsel for Plaintiff Richard Koslow*

**GILMAN AND PASTOR LLP**
David Pastor (BBO #391000)
Stonehill Corporate Center
999 Broadway, Suite 500
Saugus, Massachusetts  01906
(781) 231-7850

*Counsel for Plaintiff Richard Koslow*

## <u>CERTIFICATE OF SERVICE</u>

I, Janine L. Pollack, hereby certify that I served a copy of the foregoing

document upon counsel for all parties this 24th day of October, 2005.

<u>/s/ Janine L. Pollack</u>