UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ERIC FORSYTHE, et al., | No. 04-10584-GAO |
| Plaintiffs, | Consolidated Cases Nos.: |
| v. | 04-10764-GAO |
| SUN LIFE FINANCIAL, INC., et al., | 04-11019-GAO |
| Defendants. | |

**MEMORANDUM IN SUPPORT OF DEFENDANTS'
MOTION FOR LEAVE TO SUBMIT SUPPLEMENTAL AUTHORITY**

Jeffrey B. Rudman (BBO #433380)
William H. Paine (BBO #550506)
Jonathan A. Shapiro (BBO #567838)
Amanda P. Masselam (BBO #641108)
Matthew A. Stowe (BBO #650473)
WILMER CUTLER PICKERING
    HALE AND DORR LLP
60 State Street
Boston, MA  02109
(617) 526-6000

December 9, 2005

*Introduction*

Since last week, rulings in two cases virtually identical to this one have been issued that directly addressed arguments also made by plaintiffs' counsel during the October 26, 2005 hearing on defendants' motion to dismiss. See In re Columbia Entities Litig., slip op., No. 04-11704-REK (D. Mass. Nov. 30, 2005), at 16-17 (hereinafter "Columbia") (attached as Ex. A); In re Eaton Vance Mutual Funds Fee Litig., slip op., No. 04-1144 (S.D.N.Y. Dec. 6, 2005), at 9-11 (hereinafter "Eaton Vance") (attached as Ex. B).

At the motion to dismiss hearing, plaintiffs seemed to acknowledge that their Section 36(b) claim was not based on a comparison of the fees paid by the MFS Funds and the services the Funds received from defendants, even though that is the proper inquiry under virtually every precedent addressing the statute. See, e.g., Gartenberg v. Merrill Lynch Asset Mgmt., 694 F.2d 923, 928-30 (2d Cir. 1982) (inquiring whether fee "is so disproportionately large that it bears no reasonable relationship to the services rendered and could not have been the product of arm's-length bargaining"); Wicks v. Putnam Management, LLC, No. 04-10988-GAO, 2005 WL 705360, at *4 (D. Mass. Mar. 28, 2005) (same).

Instead, plaintiffs said they brought a "something for nothing" claim. According to plaintiffs, MFS allegedly charged certain fees to the MFS Funds for which the Funds got "nothing," which plaintiffs say must state a Section 36(b) claim because any fee paid for "nothing" must be excessive *per se*. They posited two instances in which defendants might have gotten "something for nothing." First, plaintiffs claimed that "directed brokerage" benefited defendants but not investors in MFS Funds. Second, plaintiffs claimed defendants collected fees to attract new investment in MFS Funds, but that fund growth did not result in economies of

scale, or, alternatively, that whatever economies of scale did result were not passed on to investors.  See, e.g., Compl. ¶ 102.

The "something for nothing" theory does not state a Section 36(b) claim.  Plaintiffs' counsel argued it to this Court in Columbia and to the Southern District of New York in Eaton Vance.  Neither court accepted the argument, which is incorrect for a variety of reasons, including that it cannot plausibly be asserted that the MFS Funds received "nothing" from defendants.  There is no dispute that the MFS Funds received advisory services (paid for through advisory fees) and distribution services (paid for through 12b-1 fees).  See, e.g., Compl. ¶¶ 89, 101.  To state a Section 36(b) claim, plaintiffs must do more than simply declare that the Funds got "nothing" – they need to plead that the fees paid *by the Funds* were disproportionate to the services rendered *to the Funds*.  See Gartenberg, 694 F.2d at 928-30; Wicks, 2005 WL 705360, at *4.  For this reason, last week this Court (Keeton, J.) dismissed a claim identical to this one (as two other courts have done).  See Columbia, Ex. A.  And *this week*, plaintiffs' "something for nothing" theory was expressly rejected again on a motion for reconsideration in Eaton Vance.  See Ex. B.

**I.  Plaintiffs' "Something for Nothing Theory" Was Squarely Rejected in Columbia and Now Has Been Rejected Twice in Eaton Vance.**

Judge Keeton's ruling in Columbia is the seventh and most recent ruling on a motion to dismiss a case identical to this one – each complaint was filed by the same counsel, who acknowledge that each is based on the "virtually identical" conduct described in the SEC Settlement Order involving MFS.[1]  See Columbia Pls.' Opp. to Mot. to Dismiss ("Columbia Opp."), Ex. C, at 3.  Plaintiffs in Columbia unsuccessfully opposed the motion to dismiss with the virtually identical "something for nothing" theory they argued to this Court:

---

[1]    The SEC Settlement Order involving MFS ("SEC Order") is before the Court as Exhibit A to the Memorandum of Law in Support of Defendants' Motion to Dismiss the Consolidated Amended Complaint.

2

> Plaintiffs have alleged the fees were excessive because they and other Fund investors were paying increasing amounts of money with no corresponding benefit to the Funds or their shareholders – i.e., they were paying "something for nothing." For instance, as the Funds' assets grew, the advisory fees remained fixed (meaning that the dollar amounts increased substantially), when they should have been decreasing as a result of the economies of scale arising from the increase in the Funds' asset base. Defendants grew the Columbia Funds through such undisclosed practices as excessive Rule 12b-1 fees (much of which was paid directly to the Distributor Defendant), soft dollar payments and directed brokerage commissions which benefited Defendants rather than the Fund owners.

See Columbia Opp., Ex. C, at 9-10 (citations omitted). Compare Forsythe Opp. at 9 (docket no. 79) (making identical argument against MFS). Judge Keeton, however, rejected this theory and held that plaintiffs did not state a claim under Section 36(b) for the same reasons that require dismissal here.

This week, Judge Koeltl in Eaton Vance rejected this theory (for a second time) ruling on plaintiffs' motion to reconsider his August 2005 dismissal of their virtually identical complaint. See Eaton Vance, Ex. B, at 9 ("'something for nothing' . . . stretches the reach of § 36(b) too far").

    A.    **Plaintiffs' Directed Brokerage Allegations Do Not State a Claim Under Section 36(b).**

In Columbia, Judge Keeton ruled that allegations that "defendants *paid* kick-backs and other incentives out of the Columbia Fund assets" --- i.e., directed brokerage -- did not state a claim against Columbia because a Section 36(b) claim may only be asserted against the *recipients* of compensation. See Columbia, Ex. A, at 17 (plaintiffs "do not allege that the defendants themselves received" the challenged payments); 15 U.S.C. § 80a-35(b)(3) (Section 36(b) claims only available against "recipients" of compensation). Lacking the required

3

pleading of "disproportionate compensation" (fees versus services), the Court dismissed the complaint. Columbia, Ex. A, at 17.

In so holding, Judge Keeton joined at least two other courts that also have dismissed Section 36(b) claims based on similar allegations. In August, Judge Koeltl rejected the same "something for nothing" theory in Eaton Vance and dismissed the complaint with prejudice in a detailed opinion. Compare Eaton Vance Tr. at 89 (cited in Ex. C, at 13) (plaintiffs arguing that directed brokerage was "payment for nothing" and thus "almost by definition it is excessive") with In re Eaton Vance Mutual Funds Fee Litig., 380 F. Supp. 2d 222, 237-38 (S.D.N.Y. 2005) (rejecting argument because "plaintiffs do not allege any facts that would demonstrate that the compensation paid to the defendant was disproportionate to the services rendered"). Plaintiffs thereafter sought reconsideration, arguing that their "something for nothing" theory should be sustained because Rule 8(a) sets a low standard. This week, Judge Koeltl rejected that argument a second time:

> [P]laintiffs argue that the fees were excessive because plaintiffs received no benefit from fees that were put to allegedly improper use. In other words, the *plaintiffs argue that because they paid "something for nothing," the payments were by definition excessive. This interpretation stretches the reach of § 36(b) too far*, because any allegation of improper use of fees that does not benefit the plaintiffs would be impermissibly swept into the purview of § 36(b)).

Eaton Vance, Ex. B, at 9-10 (citing Stegall v. Ladner, No. 05-10062-DPW, 2005 WL 2709127, at *12 (D. Mass. Oct. 14, 2005) (emphasis added)). Judge Cederbaum dismissed a nearly identical complaint for the same reasons. See In re Davis Selected Mutual Funds Litig., 2005

4

WL 2509732 (S.D.N.Y. Oct. 11, 2005). Indeed, no court has sustained a complaint based on the "something for nothing" theory that plaintiffs advance.[2]

That theory is no more viable in this case because, as plaintiffs have acknowledged, this Complaint is "virtually identical" to that dismissed in Columbia, Eaton Vance, and others. See Columbia Opp. at 3; compare Columbia Compl. ¶ 123 (allegations of "directed brokerage" practices that did not benefit shareholders) (cited in Ex. C, at 13) with Forsythe Compl. ¶ 108 (near verbatim directed brokerage allegation against MFS defendants).

Although plaintiffs allege the conclusion of "excessive fees" under Section 36(b), they do not claim that directed brokerage even involves the payment of any *fees* to MFS or its affiliates.[3] Directed brokerage merely concerns the identity of the broker to whom *trading commissions* are paid for brokerage services (subject to best execution). Plaintiffs do not plead a factual basis for a claim that the MFS Funds paid more to the brokers MFS chose than they would have paid to another broker for the same service, and in fact they incorporate facts to the contrary. See Compl. ¶ 85. If the MFS Funds had paid more to the brokers selected by MFS than they

---

[2] Two courts have dismissed identical Section 36(b) claims as improperly pleaded without addressing the substance of the claims. See In re Franklin Mutual Funds Excessive Fee Litig., No. 04-CV-98, 2005 WL 2175950, at *13 (D.N.J. Sept. 9, 2005); In re Lord Abbett Mutual Funds Fee Litig., No. 04-CV-0559, 2005 WL 2090517 (Aug. 30, 2005). Although two other courts have sustained similar Section 36(b) claims, they did so not based on the theory that these plaintiffs now advance, but instead upon traditional factual allegations underlying the Gartenberg "proportionality" test that are not adequately alleged in this Complaint. See AllianceBernstein Mutual Fund Excessive Fee Litig., No. 04-4885, 2005 WL 2677753 (S.D.N.Y. Oct. 19, 2005) (noting that, unlike here, plaintiffs "plead[ed] with particularity facts" concerning several Gartenberg factors, such as the allegation that $27,787,103 and $41,391,766 was taken from two specific funds in violation of Rule 12b-1); In re Dreyfus Mutual Funds Fee Litig., No. 04-0128 (slip op.), at 16 (stating that, although it was "close," a few "key" allegations concerning various Gartenberg factors allowed the claim to proceed). Dreyfus explicitly held that the bulk of plaintiffs' allegations centered "on the wrongfulness of compensation paid to the[] defendants, without regard to the services rendered," and "as such, they do not support a section 36(b) claim under applicable standards." Id.

[3] Section 36(b) imposes a fiduciary duty on the adviser and its affiliates with respect to their receipt of fees. See 15 U.S.C. § 80a-35(b). It permits an action against the adviser, its affiliates, and certain others specified in Section 36(a) for fees they received. See id. Unaffiliated brokers are not included in this group, and the Complaint alleges no affiliation between MFS and the brokers receiving compensation. Tellingly, the Amended Complaint itself does not allege that "directed brokerage" generated any fee to MFS or its affiliates, nor does it supply a nexus between directed brokerage and any fees plaintiffs paid. The section of the Amended Complaint that promises to reveal how directed brokerage "injured the funds and their investors" says absolutely nothing of substance explaining how brokerage allocation had any effect on any fee paid by any Funds, see Compl. ¶¶ 79-81, and nowhere provides support for a claim that fees were excessive – much less disproportionate to services – on account of directed brokerage.

5

otherwise would have done, then (contrary to the SEC's conclusion incorporated into the Complaint), they would not have obtained best execution.  See id.

Indeed, plaintiffs' directed brokerage allegations against MFS are based explicitly on an SEC Order that found that MFS "allocated" or "directed" trades to brokers "*subject to best execution*."  See Compl. ¶¶ 12, 85; Order § III.8.  Nothing about *MFS's* directed brokerage practices was found to cost the Funds anything extra.  See Order.  Consistent with this finding, the SEC Order required the disgorgement of only $1 by the respondents.  Id.  The SEC Order thus distinguishes MFS's directed brokerage practices from the "illegitimate" practice of directing sales without regard to "whether [the brokers to whom sales were allocated] offered the most competitive prices for transactions."  In re AllianceBernstein Mutual Fund Excessive Fee Litig., 2005 WL 2677753, at *2 (S.D.N.Y. Oct. 19, 2005).

      **B.**      **Speculative and Inconsistent Conclusions Concerning Economies of Scale Are Insufficient To State a Claim.**

The recent Columbia and Eaton Vance decisions also confirm that plaintiffs' additional "something for nothing" theory rests on speculative and inconsistent conclusions about economies of scale that cannot sustain any claim that the fees paid were disproportionate to services rendered.  See Columbia, Ex. A, at 17 ("plaintiffs' remaining claims . . . do not state a claim for the disproportionate compensation prohibited by Section 36(b)"); Eaton Vance, Ex. B, at 10 (rejecting plaintiffs' second argument that "fees remained constant while the assets of the funds grew" and thus funds "did not benefit from economies of scale").  As in Columbia and Eaton Vance, plaintiffs here contend that MFS's fees were "excessive" either because MFS charged them to grow the Funds when no economies of scale could be achieved by growth, or, alternatively (and inconsistently), because economies of scale were achieved but were not passed on through reduced fees.  See Compl. ¶ 102.  And as in Columbia and Eaton Vance, plaintiffs

6

here base their alternative theories about economies of scale on a magazine article quote that says *nothing* about MFS. See Compl. ¶ 95. Indeed, the closest this Complaint comes to any remotely relevant factual allegation is a single paragraph that supplies an isolated statistic about an *unidentified* series fund (of MFS Series Trust VI) that plaintiffs do not claim to own. See Compl. ¶ 102.

Here, as in Columbia and Eaton Vance (and Davis Selected), plaintiffs' persistent conclusions about a single Gartenberg factor are not enough to state a breach of fiduciary duty claim under Section 36(b). See Eaton Vance, Ex. B, at 10 ("failure to pass on benefits of economies of scale is a [Gartenberg] factor," but conclusions about economies of scale not enough to sustain a § 36(b) claim).[4] Even if, as plaintiffs speculate, some never-identified MFS Funds would not achieve economies of scale through further growth, it would not support a conclusion that *any* 12b-1 fee charged was "excessive" *per se*, because constant redemptions require distribution services simply to maintain fund size. Compare Yameen v. Eaton Vance Distributors, 394 F. Supp. 2d 350, 357 (D. Mass. 2005) (dismissing claims based on similar "excessive *per se*" reasoning where, as here, plaintiffs failed to plead facts showing disproportionality under Gartenberg).

Plaintiffs' speculation that economies of scale did exist but simply were not passed on through reduced fees is unsupported by any pleaded basis, e.g., which funds, what fees. It is actually contradicted by publicly available MFS Fund prospectuses that make plain that the independent trustees specifically considered economies of scale and that many of the Funds for

---

[4] See also Yameen v. Eaton Vance Distributors, 394 F. Supp. 2d 350, 356 (D. Mass. 2005) ("The plaintiff must allege some relationship between fees charged and the services rendered that, if true, would support a claim that the fees are excessive.") (citing Migdal v. Rowe Price-Fleming Int'l, 248 F.3d 321, 327 (4th Cir. 2001)).

7

which plaintiffs sue had a "breakpoint" fee structures to reflect such economies.[5] That the trustees approved different fee structures for different funds – some with breakpoints, some without – if anything, suggests attention to economies of scale and is flatly inconsistent with any claim that the fees "could not have been the product of arm's-length bargaining." Gartenberg, 694 F.2d at 928.

## II.   Columbia Held Plaintiffs Lack Standing to Bring Claims on Behalf of Funds Not Owned.

Plaintiffs claim to own only *two of the sixty-two* MFS Funds on behalf of which they purport to sue. See Compl. ¶¶ 19-22. They argue that neither constitutional nor statutory standing requirements affect them and/or that any scrutiny of their standing to sue for the other 60 funds should be delayed until after the parties spend the time and money to take discovery, brief, and argue class certification. Columbia rejected that argument. It ruled that plaintiffs had standing to sue only with respect to the two funds that they owned. See Columbia, Ex. A, at 15 ("Courts in this circuit have held that ownership of shares in a limited number of defendant mutual funds is *not* sufficient to confer standing against all funds, regardless of the similarity of the alleged wrongful conduct."). Columbia also held that *this* Court's precedent requires dismissal for lack of standing at the Rule 12(b) stage, and accordingly declined to follow the few decisions from other jurisdictions upon which plaintiffs relied there (and here) to delay this threshold question. Id.[6]

---

[5]    MFS Fund prospectuses are publicly filed documents of which this Court can take judicial notice. An example of such a prospectus demonstrating the use of a "breakpoint fee" structure in certain MFS Funds is before this Court as Exhibit A to the Memorandum of Law in Support of Defendants' Motion to Dismiss Plaintiffs Complaint in the Dumond action, No. 04-11458 (GAO).

[6]    Even the two courts that have allowed similar Section 36(b) claims to go forward acknowledged the statutory requirements: In AllianceBernstein, plaintiffs were allowed to proceed only with respect to the 13 funds they owned, not all 48 funds on behalf of which they sued. AllianceBernstein, 2005 WL 2677753, at *9-10. In Dreyfus, the court noted that Section 36(b) requires plaintiffs to be "security holders," and noted that plaintiffs were only "security holders" in two Dreyfus Funds. Dreyfus, slip op. at 17 n.7.

For the reasons set forth in defendants' prior briefs, and now also Columbia, plaintiffs lack standing to assert Section 36(b) claims with respect any funds other than the two in which they allegedly are "security holders." See Compl. ¶¶ 20, 22 (Massachusetts Investors Trust and MFS Utilities Fund).

*Conclusion*

For the reasons set forth in defendants' briefs, this Court should dismiss the Complaint with prejudice.

Dated:  December 9, 2005

                Respectfully Submitted,

                Sun Life Financial, Inc., Massachusetts Financial Services Co., and MFS Fund Distributors, Inc.,

                By their attorneys,

                /s/ Jonathan A. Shapiro
                Jeffrey B. Rudman (BBO #433380)
                William H. Paine (BBO #550506)
                Jonathan A. Shapiro (BBO #567838)
                Amanda P. Masselam (BBO #641108)
                Matthew A. Stowe (BBO #650473)
                Wilmer Cutler Pickering Hale and Dorr LLP
                60 State Street
                Boston, MA  02109
                (617) 526-6000

Jeffrey L. Shames,

By his attorneys,


 /s/ James C. Rehnquist (JAS by permission)
James C. Rehnquist (BBO #552602)
Abigail K. Hemani  (BBO #650721)
GOODWIN PROCTER LLP
Exchange Place
53 State Street
Boston, MA  02109


John W. Ballen,

By his attorneys,


/s/ John J. Falvey (JAS by permission)
John J. Falvey, Jr. (BBO # 542674)
GOODWIN PROCTER LLP
Exchange Place
53 State Street
Boston, MA  02109


Kevin J. Parke,

By his attorneys,


/s/ George J. Skelly (JAS by permission)
George J. Skelly (BBO #546797)
David M. Ryan (BBO #644037)
NIXON PEABODY LLP
101 Federal Street
Boston, MA  02110


Lawrence H. Cohn, William R. Gutow,
J. Atwood Ives, Abby M. O'Neill, Lawrence T.
Perera, William J. Poorvu,
J. Dale Sherratt, Elaine R. Smith,
and the MFS Funds,

By their attorneys,

10

/s/ John D. Donovan (JAS by permission) _
John D. Donovan (BBO #130950)
Jane E. Willis (BBO #568024)
ROPES & GRAY LLP
One International Place
Boston, MA 02110

12

## CERTIFICATE OF SERVICE

     I, Matthew A. Stowe, hereby certify that on December 9, 2005, I caused a copy of the foregoing document to be served either electronically or by overnight mail upon counsel for plaintiffs.

/s/  Matthew A. Stowe (JAS by permission)
Matthew A. Stowe

Dated:  December 9, 2005

US1DOCS 5412362v4