# EXHIBIT A

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| ) | |
| ) | |
| ) | |
| IN RE: COLUMBIA ENTITIES ) | CIVIL ACTION |
| LITIGATION ) | NO. 04-11704-REK |
| ) | |
| ) | |
| ) | |

**Memorandum and Order**
November 30, 2005

### I. Pending Matters

Pending for decision are matters related to the following filings:

(1) Plaintiffs' Renewed Motion for Appointment of Co-Lead Counsel and

Appointment of Liaison Counsel (Docket No. 32, filed June 9, 2005);

(2) Plaintiffs' Motion for Class Certification (Docket No. 36, filed June 9, 2005);

(3) The Independent Trustee Defendants' Motion to Dismiss (Docket No. 48, filed

August 5, 2005);

(4) Columbia Defendants' Motion to Dismiss (Docket No. 56, filed August 8,

2005);

(5) Plaintiffs' Motion for Entry of Plaintiffs' Proposed Schedule for Class

Certification and Commencement of Discovery (Docket No. 63, filed October 11, 2005); and

(6) Defendants' Motion for Stay of Class and Other Discovery (Docket No. 68,

filed October 11, 2005).

## II. Factual and Procedural Background

This is a class and derivative action brought on behalf of investors in the Columbia family of funds ("Columbia Funds") against the Columbia Funds investment advisers, directors, corporate parents, subsidiaries, and affiliates. The original complaint in this case was filed by plaintiff Joan Cohen on August 2, 2004. (Docket No. 1). Plaintiffs Gene F. Osburn, Paula Slicker, Jean S.B. Simmonds, and R.L. Simmonds also filed similar complaints in the summer of 2004, and all five plaintiffs filed a Motion for Consolidation requesting this court to consolidate their separate actions on September 10, 2004. (Docket No. 3.) I allowed this motion on March 2, 2005, and plaintiffs filed their Amended Complaint on June 9, 2005. (Docket No. 35.)

Also on June 9, 2005, plaintiffs filed their motion for appointment of counsel and their motion for class certification. (Dockets No. 32 and 36.) The Independent Trustee Defendants[1] filed their Memorandum in Opposition to Plaintiffs' Renewed (and Essentially Identical) Motion for Appointment of Co-Lead Counsel and Appointment of Liaison Counsel on August 5, 2005. (Docket No. 47.) There was no direct opposition filed to the motion for class certification. The Independent Trustee Defendants also filed their Motion to Dismiss on August 5, 2005 (Docket No. 48), and the Columbia Defendants[2] filed their Motion to Dismiss on August

---

[1]The Independent Trustee Defendants consist of the named Independent Trustees of the Columbia Funds Trusts Registrants (Douglas A. Hacker, Janet Langford Kelly, Richard W. Lowry, William E. Mayer, Charles R. Nelson, John J. Neuhauser, Patrick J. Simpson, Thomas E. Stitzel, Thomas C. Theobald, Anne-Lee Verville, and Richard L. Woolworth) and the named Independent Trustees of the Columbia Acorn Trust Registrants (Margaret Eisen, Leo A. Guthart, Jerome Kahn, Jr., Steven Kaplan, David Kleinman, Allan Muchin, Robert R. Nason, and John A. Wing).

[2]The Columbia Defendants consist of FleetBoston Financial Corporation, n/k/a Bank of America Corporation, Columbia Management Group, Inc., Columbia Management Advisers, Inc., Columbia Wanger Asset Management, L.P., Columbia Funds Distributor, Inc., Charles P. McQuaid, Ralph Wanger, the Columbia Funds Trust and the Columbia Funds. The Columbia

8, 2005 (Docket No. 56). The Columbia Acorn Trust then filed a Notice of Joinder in

Independent Trustee and Columbia Defendants' Motion to Dismiss on August 8, 2005. (Docket

No. 60.) On October 11, 2005, plaintiffs filed their Opposition to Defendants' Motions to

Dismiss and their Motion for Entry of Plaintiffs' Proposed Schedule for Class Certification and

Commencement of Discovery. (Docket Nos. 65 and 63.) On the same date, defendants

responded with their Motion for Stay of Class and Other Discovery. (Docket No. 68.) On

October 25, 2005, plaintiffs filed their Opposition to Defendants' Motion for Stay of Class and

Other Discovery. (Docket No. 71.)

On October 28, 2005, the Independent Trustee Defendants filed their Reply

Memorandum in Support of the Independent Trustee Defendants' Motion to Dismiss. (Docket

No. 72.) On October 31, 2005, the Columbia Defendants then filed a Reply Brief in Support of

their Motion to Dismiss Plaintiffs' Consolidated Amended Class Action Complaint. (Docket No.

75.) On that same date, plaintiffs filed their Reply Memorandum of Law in Further Support of

Their Renewed Motion for Appointment of Co-Lead Counsel and Appointment of Liaison

Counsel. (Docket No. 74.) On November 4, 2005, plaintiffs filed a Supplemental Memorandum

of Law Addressing Additional Authority Cited for the First Time in Defendants' Replies to

Plaintiffs' Opposition to Defendants' Motions to Dismiss. (Docket No. 79.) On November 9,

2005, defendants responded by filing their Reply Memorandum of Law in Further Support of

---

Defendants have stated that they may be willing to accept service on behalf of the individual
named defendants, who are current or former employees of the Columbia Defendants. These
individual defendants, who have not yet been served, are Joseph R. Palombo, J. Kevin
Connaughton, P. Zachary Egan, Kevin S. Jacobs, Kenneth A. Kalina, Bruce H. Lauer, Jean
Loewenberg, Robert A. Mohn, Louis J. Mendes, Todd Narter, Christopher Olson, Jon H. Park,
Vincent P. Pietropaolo, Joseph Turo, and Leah J. Zell.

3

Their Motion for Stay of Class and Other Discovery. (Docket No. 81.) The parties argued the pending motions before me on November 10, 2005, and November 15, 2005.

Plaintiffs claim to represent all persons or entities who held one or more shares or other units of the eighty-one Columbia Funds during the period from August 2, 1999, through March 22, 2004, inclusive (the "Class Period"), and who were damaged by defendants' improper actions. Plaintiffs allege that defendants used Columbia Fund investor assets to pay kickbacks to brokerages in exchange for the brokerages' directing of their clients toward the Columbia Funds. Defendants refer to this practice as buying "shelf space" at brokerages including UBS Financial Services, Inc., Morgan Stanley, American Express, A.G. Edwards, Linsco Private Ledger, Janney Montgomery Scott, RBC Dain Rauscher, Wells Fargo, Chase Investment Services Corp., FSC Securities Corporation, SunAmerica Securities, Bank One, Salomon Smith Barney, and Wachovia Securities. Plaintiffs also allege that defendants paid brokerages to push the Columbia Funds through the use of directed brokerage, which plaintiffs define as awarding a brokerage firm the business and resulting commissions for conducting transactions of the Funds' underlying securities. Plaintiffs contend that they were harmed by these practices because defendants charged them excessive fees in order to provide these payments to brokerages and because the investment advisers faced conflicts of interest that did not permit them to act in plaintiffs' best interests.

Plaintiffs bring eight counts against defendants. Count I is brought on behalf of the class against the Columbia Distributor and the investment advisers, trustees, and officers of the Columbia Funds for violations of Section 34(b) of the Investment Company Act ("ICA"), 15 U.S.C. §§ 80a-1(a) et seq. Count II is brought on behalf of the class against the Columbia

4

Distributor and the investment advisers, trustees, and officers of the Columbia Funds for

violations of Section 36(a) of the ICA. Count III is brought on behalf of the class against the

Columbia Distributor and the investment advisers, trustees, and officers of the Columbia Funds

for violations of Section 36(b) of the ICA. Count IV is brought on behalf of the class against the

investment advisers of the Columbia Funds for violations of Section 48(a) of the ICA. Count V is

brought derivatively on behalf of the Columbia Funds against the investment advisers of the

Columbia Funds under Section 215 of the Investment Advisers Act ("IAA"), 15 U.S.C. §§ 80b-

1(a) et seq., for violations of Section 206 of the IAA. Count VI is brought on behalf of the class

against the investment advisers of the Columbia Funds for breach of fiduciary duty. Count VII is

brought on behalf of the class against the trustees and officers of the Columbia Funds for breach

of fiduciary duty. Count VIII is brought on behalf of the class against all defendants for unjust

enrichment.

### III. Analysis

After hearing the parties' arguments at the hearings before me on November 10,

2005, and November 15, 2005, I have determined that I must first consider defendants' motions

to dismiss before addressing the other motions pending in this case.

**A. Defendants' Motions to Dismiss**

Since defendants raise many of the same arguments in their separate motions to

dismiss, I will consider their motions together. I will address each count in turn below.

**1. Standard of Review**

A district court may dismiss a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure "only if it clearly appears, according to the facts alleged, that the plaintiff cannot recover on any viable theory." Berezin v. Regency Savings Bank, 234 F.3d 68, 70 (1st Cir. 2000) (quoting Correa-Martinez v. Arrillaga-Belendez, 903 F.2d 49, 52 (1st Cir. 1990)). A court "must accept as true the well-pleaded factual allegations of the complaint, draw all reasonable inferences therefrom in the plaintiff's favor, and determine whether the complaint, so read, [pleads] facts sufficient to justify recovery on any cognizable theory." LaChapelle v. Berkshire Life Insurance Co., 142 F.3d 507, 508 (1st Cir. 1998). In addition, in applying the requirement of Rule 8(a)(2) of the Federal Rules of Civil Procedure of a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), a court "should continue to eschew any reliance on bald assertions, unsupportable conclusions, and opprobrious epithets." Educadores Puertorriquenos en Accion v. Hernandez, 367 F.3d 61, 66-68 (1st Cir. 2004) (quoting Chongris v. Board of Appeals, 811 F.2d 36, 37 (1st Cir. 1987)) (internal quotation marks omitted).

**2. Count I**

Count I is brought pursuant to Section 34(b) of the ICA, which provides in full:

> It shall be unlawful for any person to make any untrue statement of a material fact in any registration statement, application, report, account, record, or other document filed or transmitted pursuant to this subchapter or the keeping of which is required pursuant to [Section 31(a) of the ICA.] It shall be unlawful for any person so filing, transmitting, or keeping any such document to omit to state therein any fact necessary in order to prevent the statements made therein, in the light of the circumstances under which they were made, from being materially misleading. For the purposes of this subsection, any part of any such document which is signed or certified by an accountant or auditor in his capacity as such shall be deemed to be made, filed, transmitted, or kept by such accountant or auditor, as well as by the person filing, transmitting,

or keeping the complete document.

15 U.S.C. § 80a-33(b).

Defendants' first argument in favor of dismissing Count I is that this count should have been brought derivatively rather than directly. Plaintiffs have brought seven of the eight counts of this cause of action as class actions rather than derivative actions. A claim can only be brought on behalf of a class if it is direct. The determination of whether a claim is direct or derivative is governed by the law of the state of incorporation. Lapidus v. Hecht, 232 F.3d 679, 682 (9th Cir. 2000). Each of the Columbia Funds takes the form of either a Massachusetts business trust or a corporation organized under Oregon law, so Massachusetts and Oregon law apply. Under the laws of both Massachusetts and Oregon, a claim is direct only where the shareholder alleges an injury distinct from that suffered by shareholders generally, or the alleged wrong involves a contractual right of shareholders, such as the right to vote. Id. at 683; Loewen v. Galligan, 882 P.2d 104, 111-12 (Or. Ct. App. 1994).

I have stated previously that the basic distinction between a derivative claim and a direct claim is that, in the former, "the right flows from the breach of a duty owed by the defendants to the corporation," and, in the latter, "the right flows from the breach of duty owed directly to the plaintiff independent of the plaintiff's status as a shareholder, investor, or creditor of the corporation." Blasberg v. Oxbow Power Corp., 934 F.Supp. 21, 26 (D. Mass. 1996). In Blasberg, I elaborated that, "if a plaintiff alleges mismanagement of funds, embezzlement or breach of fiduciary duty resulting in a diminution of the value of the corporate stock or assets, the claim is one held by the corporation itself, and is thus derivative if brought by an investor.... In contrast, if a plaintiff alleges that she, as an individual investor, was misled or defrauded in the

7

purchase of her investment, this kind of claim is a 'direct' one." Id. In a derivative action, the
corporation is the party that sustained the injury and any judgment paid on such a claim would be
paid to the corporation. Id. In contrast, in a direct action, the injury is suffered by the individual
investor, and he is the party who receives any judgment. Id. (stating that the fact that "many
investors might have been misled...or that the plaintiff might only be minimally injured, does not
convert the claim to a derivative one"). After these explanations, I concluded that the claim at
issue in Blasberg, in which the plaintiff alleged that a general partner's excessive payments to
affiliated entities was a breach of the general partner's fiduciary duty, was a derivative claim. Id.
at 27-28 (stating that "the injury in this case is a diminution of the value of the assets of the
Partnership due to excessive payouts to third parties, rather than a diminution of the value of
distributions to the [plaintiff] as an investor").

      This analysis at first suggests that plaintiff's entire claim, rather than just Count V,
should have been brought as a derivative action. Although the relief that plaintiffs request is
payment to the individual investors, rather than payment to the corporation, the Columbia Funds
were the entities that suffered the injury. The plaintiffs suffered injury only by virtue of their
status as investors, and thus the claim arises out of a breach of fiduciary duty to the Columbia
Funds, rather than to the investors individually. Plaintiffs' allegations refer to excessive fees paid
out of the assets of the Columbia Funds, and plaintiffs' counsel conceded at the hearing on
November 15, 2005, that the payments at issue came from the Columbia Funds. Although these
assets originated in part from the payments of the individual investors, and their use may lead to a
diminution in the value of those investors' investments, these claims at first appear to be
derivative actions by definition.

8

The Supreme Court, however, has stated that courts should not apply state law to determine whether a claim is direct or derivative if "the particular state law in question is inconsistent with the policies underlying the federal statute." Kamen v. Kemper Financial Services, Inc., 500 U.S. 90, 108 (1991). This means that the basic framework for determining whether a suit is direct or derivative is the following: first, a court must apply state law to determine whether an action should be brought directly or derivatively. Second, a court must ensure that the conclusion reached under state law is consistent with the policies underlying the federal statute creating the cause of action. Only if the conclusion is consistent can the court stand by the decision made in the first stage of this inquiry.

In Kamen, the Court referred with approval to Daily Income Fund, Inc. v. Fox, 464 U.S. 523, 540-41 (1984). In Fox, the Court held that, due to the purposes of the statute, Section 36(b) of the ICA provided for a direct action to be brought by a shareholder, rather than for a derivative action to be brought on behalf of the corporation. Id. The Court elaborated that, regardless of state law, Section 36(b) did not provide for a derivative action because the right of action was not one that could be asserted by the corporation itself. Id. at 528-29. Applying this logic, along with the above analysis as to the fundamental differences between direct and derivative actions, it appears that some of plaintiffs' claims should have been brought as derivative actions, while others were correctly brought as direct actions.

In a case considering whether plaintiffs can bring a direct action under Section 34(b), a court on the Southern District of New York held that the determination of whether the suit was derivative or direct was correctly decided by state law. See In re Merrill Lynch & Co., Inc. Research Reports Securities Litigation, 272 F.Supp.2d 243, 259 (S.D.N.Y. 2003) (applying

Maryland law in an action against a mutual fund brought by investors alleging nondisclosure of

conflicts).  In Merrill Lynch, the court also considered whether there was a private right of action

and based its decision that there was not such a right on the fact that "Congress had the

opportunity to create a private cause of action under Section 34(b) in 1970 when it amended

Section 36(b) to include such a right, but [Congress] chose to forego such an addition."  Id. at

258.  This distinction between the two sections of the ICA suggest that the Supreme Court's

finding that Section 36(b) provides for direct actions does not automatically mean that Section

34(b) does as well.  I must therefore apply Massachusetts and Oregon law, both of which permit a

direct action only if the shareholder alleges an injury distinct from that suffered by shareholders

generally, or the alleged wrong involves a contractual right of shareholders.  See Lapidus, 232

F.3d at 682; Loewen, 882 P.2d at 111-12.  The analysis under these states' laws is the same as

that applied in Blasberg.  934 F.Supp. at 26.  Section 34(b) prohibits untrue statements or

omissions, both of which harm the corporation, rather than the individual shareholders as such.

Plaintiffs are not alleging in Count I that they were individually defrauded in the purchase of their

investments, see Blasberg, 934 F.Supp. at 26, but are rather alleging that the defendants to that

count misrepresented their use of the Columbia Funds' assets, which in turn caused injury to the

Columbia Funds themselves.  Plaintiffs therefore should have brought Count I as a derivative

claim.

Once an action has been determined to be a derivative action, plaintiffs are

generally required to make demand on the corporation before bringing the suit on their own.  See

Fed. R. Civ. P. 23.1 (requiring the complaint to "allege with particularity the efforts, if any, made

by the plaintiff to obtain the action the plaintiff desires from the directors or comparable authority,

and, if necessary, from the shareholders or members"). Both Massachusetts and Oregon have

laws establishing this demand requirement. Mass. Gen. L. ch. 156D, § 7.42; O.R.S. § 60.261.

Whereas Oregon law allows for waiver of the demand requirement when such demand would be

futile, O.R.S. § 60.261, Massachusetts law does not, Mass. Gen. L. ch. 156D, § 7.42

(Massachusetts universal demand statute that went into effect on July 1, 2004, before any of the

consolidated actions in this case were filed). Under Massachusetts law, "demand must be made

prior to the commencement of every derivative case, whether or not the directors are independent

with respect to the matter subject to the demand." ING Principal Protection Funds Derivative

Litigation, 369 F.Supp. 2d 163, 170 (D. Mass. 2005) (quoting Demoulas v. Demoulas Super

Markets, Inc., No. 033741BLS, 2004 WL 1895052, *1 n.3 (Mass. Super. Aug. 2, 2004)).

      Plaintiffs concede that they have not made demand on any of the defendants in this

action, but they claim that demand would be futile and is thus not required. This argument is

without merit with reference to the defendants organized under Massachusetts law since the

Massachusetts universal demand statute does not waive the demand requirement for futility, see

supra, and since the Massachusetts universal demand statute is likely not limited to corporations.

See ING Principal Protection Funds, 369 F.Supp. 2d at 171 (stating that the federal district court

"believes that Massachusetts courts will apply the requirement of universal, pre-suit demand to

derivative actions brought on behalf of business trusts," and thus rejecting the argument that the

statute applies only to corporations). The Order below dismisses Count I as to the defendants

organized under Massachusetts law.

      In contrast to Massachusetts courts, Oregon courts have found that demand is

futile if

>       the facts alleged show that the defendants charged with the wrongdoing,
>       or some of them, constitute a majority of the directors or managing body
>       at the time of commencing the suit, or that the directors or a majority
>       thereof are still under the control of the wrongdoing defendants [or]
>       if the plaintiff's pleading discloses any other condition of fact which
>       renders it reasonably certain that a suit by the corporation would be
>       impossible and that a demand therefore would be nugatory.

Wills v. Nehalem Coal Co., 52 Ore. 70, 87-88 (1908). In this case, plaintiffs' pleadings disclose a

situation where, if plaintiffs' allegations of wrongdoing are true, demand would likely be

nugatory. Therefore, plaintiffs are hereby excused from the demand requirement for Count I as to

the defendants organized under Oregon law, and I will not yet dismiss Count I as to these

defendants.

        Defendants' next ground for dismissal of Count I is that plaintiffs lack standing to

bring these claims because the five named plaintiffs own shares of only two of the mutual funds

that are defendants in this case. Rule 23.1 of the Federal Rules of Civil Procedure requires the

complaint to show that the plaintiff was a shareholder "at the time of the transaction of which the

plaintiff complains," Fed. R. Civ. P. 23.1, and provides that the action "may not be maintained if it

appears that the plaintiff does not fairly and adequately represent the interests of the shareholders

or members similarly situated in enforcing the right of the corporation or association." Id. I held

previously in Nenni v. Dean Witter Reynolds, Inc., 1999 U.S. Dist. LEXIS 23351, at *5-6 (D.

Mass. Sept. 29, 1999), that ownership of shares in a limited number of defendants can only confer

standing against those specific defendants. Id. Although Nenni dealt with a class action suit

under the Securities Act of 1933 and the Securities and Exchange Act of 1934, the reasoning in

that case is equally applicable to a derivative suit. Whereas the named plaintiffs in class actions

are responsible for representing all other members of a class, see id. at *6 (referring to the class of

people created by plaintiff), the plaintiffs in derivative actions are responsible for acting on behalf
of a corporation.

If plaintiffs are not shareholders of the corporation on whose behalf they are

acting, they are by definition not achieving the goal of the derivative action, which is to represent

the interests of the shareholders and, by extension, the corporation as a whole.  Accord Kauffman

v. Dreyfus Fund, Inc., 434 F.2d 727, 732-36 (3d Cir. 1970) (holding that a shareholder in four

mutual funds did not have standing to bring a derivative action against other similarly situated

mutual funds); Herman v. Steadman, 50 F.R.D. 488, 489-90 (S.D.N.Y. 1970) (holding that a

shareholder of one mutual fund did not have standing to bring a derivative action against other

similarly situated funds).  The Order below dismisses Count I as to all defendants other than

Columbia Acorn Fund and Columbia Acorn Select Fund because plaintiffs owned shares in both.

Since both of these funds are Massachusetts business trusts, the Order below dismisses Count I

against them.  Thus, the Order below dismisses Count I in its entirety.

**3. Count II**

Count II is brought pursuant to Section 36(a) of the ICA, which provides in full:

> The [Securities and Exchange] Commission is authorized to bring
> an action in the proper district court of the United States, or in the
> United States court of any territory or other place subject to the
> jurisdiction of the United States, alleging that a person serving or
> acting in one or more of the following capacities has engaged within
> five years of the commencement of the action or is about to engage in
> any act or practice constituting a breach of fiduciary duty involving
> personal misconduct in respect of any registered investment company
> for which such person so serves or acts –
> (1) as officer, director, member of any advisory board, investment adviser,
> or depositor; or
> (2) as principal underwriter, if such registered company is an open-end
> company, unit investment trust, or face-amount certificate company.
> If such allegations are established, the court may enjoin such persons

> from acting in any and all capacities either permanently or temporarily
> and award such injunctive or other relief against such person as may be
> reasonable and appropriate in the circumstances, having due regard to
> the protection of investors and to the effectuation of the policies declared
> in [Section 2 of the ICA.]

15 U.S.C. § 80a-35(a). Although Section 36(b) provides in part that "[a]n action may be brought

under this [Section 36] by the Commission, or by a security holder of such registered investment

company on behalf of such company," 15 U.S.C. §80a-35(b), plaintiffs have already brought a

separate count pursuant to Section 36(b). From the wording of these two parts of Section 36, it

appears that investors need only bring an action pursuant to *either* Section 36(a) or Section 36(b).

If investors bring their action pursuant to Section 36(a), which provides a right of action for the

Securities and Exchange Commission, the court can read Section 36(b) to infer a private right of

action. If investors have also brought an action pursuant to Section 36(b), however, the 36(a)

action is merely redundant. The Order below dismisses Count II against all defendants because

plaintiffs have already brought an action pursuant to Section 36(b). See infra Section III(A)(4).

## 4. Count III

Count III is brought pursuant to Section 36(b) of the ICA. Defendants' first

argument in favor of dismissing Count III is that this count should have been brought derivatively

rather than directly. Section 36(b), however, explicitly provides for a private right of action, see

supra Section III(A)(2), and the Supreme Court in Fox, 464 U.S. at 540-41, held that this section

provides for a direct, not a derivative, action. See supra Section III(A)(2). Plaintiffs correctly

brought Count III as a direct action.

Defendants' next argument in favor of dismissing Count III is that plaintiffs lack

standing to bring these claims because the five named plaintiffs own shares of only two of the

mutual funds that are defendants in this case. Although the analysis of this argument is similar to

that for Count I, cf. supra Section III(A)(2), there has recently been greater inconsistency among

courts in their approach to deciding whether a named plaintiff in a class action, rather than in a

derivative action, must own shares in all of the defendants' funds. Some courts in other circuits

have deferred ruling on this issue at the motion to dismiss stage, see In re Mutual Funds

Investment Litigation, 384 F. Supp. 2d 845, 853 n.4 (D.Md. 2005) (stating that, although

plaintiffs' standing argument may be correct, the court would defer ruling on the issue "in the

interest of efficient management of this litigation"), or have conflated this issue with the

determination of whether to certify a class, see In re Dreyfus Aggressive Growth Mutual Fund

Litigation, 2000 U.S. Dist. LEXIS 13469 *8 (S.D.N.Y. Sept. 19, 2000) (stating that courts "have

repeatedly held that on allegations such as these, class representatives need not have invested in

each security so long as the plaintiffs have alleged a single course of wrongful conduct with

regard to each security. Courts have not addressed this concern vis a vis the doctrine of standing,

but rather have examined such concerns pursuant to Rule 23(a)(3)'s typicality requirement").

Such deferral does not appear to me to be necessary in this case, however. Courts in this circuit

have held that ownership of shares in a limited number of defendant mutual funds is *not* sufficient

to confer standing against all funds, regardless of the similarity of the alleged wrongful conduct.

See In re Eaton Vance Corp. Securities Litigation, 219 F.R.D. 38, 40-41 (D. Mass. 2003)

(granting a motion to dismiss in a class action for lack of standing as to two defendant funds when

"the named plaintiffs never purchased shares in or conducted any other business with two of the

four funds"); see also Nenni, 1999 U.S. Dist. LEXIS 23351 at *5-6. The Order below therefore

dismisses Count III for lack of standing against all defendants except Columbia Acorn Fund and

Columbia Acorn Select Fund, the two funds in which plaintiffs owned shares.

Having determined that plaintiffs have standing to bring a class action against

Columbia Acorn Fund and Columbia Acorn Select Fund, I will now look to the merits of Count

III to determine whether plaintiffs have failed to state a claim upon which relief may be granted.

Section 36(b) provides in part that "the investment adviser of a registered investment company

shall be deemed to have a fiduciary duty with respect to the receipt of compensation for services"

paid by the investment company or its security holders.  15 U.S.C. § 80a-35(b).  Although the

statute provides that, in an action by a security holder against the adviser or affiliate, "[i]t shall not

be necessary to allege or prove that any defendant engaged in personal misconduct," the statute

also provides that "the plaintiff shall have the burden of proving a breach of fiduciary duty."  Id.

In Gartenberg v. Merrill Lynch Asset Management, Inc., 694 F.2d 923 (2d Cir. 1982), the Second

Circuit discussed the factors to be considered in determining whether a fee was "so

disproportionately large that it bears no reasonable relationship to the services rendered and could

not have been the product of arm's-length bargaining."  Id. at 928.  The Second Circuit ruled that,

in passing Section 36(b), Congress "intended that the court look at all the facts in connection with

the determination and receipt of such compensation, including all services rendered to the fund or

its shareholders and all compensation and payments received, id. at 930, and that the "expertise of

the independent trustees of a fund, whether they are fully informed about all facts bearing on the

adviser-manager's service and fee, and the extent of care and conscientiousness with which they

perform their duties" are some of the many factors to be considered, id.  The Second Circuit

ultimately affirmed the dismissal of the complaint by money market fund shareholders for breach

16

of fiduciary duties due to excessive compensation paid to the adviser because consideration of all relevant factors failed to show that the compensation was disproportionate. Id. at 933.

Plaintiffs are still at the motion to dismiss stage, and I must therefore accept their factual allegations as true. See supra Section III(A)(1). Plaintiffs here, however, do not allege that the defendants themselves received compensation of any sort, as required by Section 36(b). Instead, they allege that defendants *paid* kick-backs and other incentives out of the Columbia Fund assets. Although this allegation, if true, may have acted to the detriment of the assets of the funds, such payments, even if undisclosed, are not a breach of the fiduciary duty protected by Section 36(b). Thus, plaintiffs' remaining claims under Count III against Columbia Acorn Fund and Columbia Acorn Select Fund do not state a claim for the disproportionate compensation prohibited by Section 36(b). The Order below dismisses Count III in its entirety.

## 5. Count IV

Count IV is brought pursuant to Section 48(a) of the ICA, which provides in full that "[i]t shall be unlawful for any person, directly or indirectly, to cause to be done any act or thing through or by means of any other person which it would be unlawful for such person to do under the provisions of this subchapter or any rule, regulation, or order thereunder." 15 U.S.C. § 80a-47(a). By its wording, then, Section 48(a) requires an underlying violation to uphold a "procurement" violation. See In re ML-Lee Acquisition Fund II, L.P. and ML-Lee Acquisition Fund (Retirement Accounts) II, L.P. Securities Litigation, 848 F.Supp. 527, 545 (D. Del. 1994) (finding potential liability under Section 48(a) if the court finds "that the transactions at issue in the Complaint were undertaken illegally between 'affiliated' entities" and the defendants procured this illegality). Since the underlying violations are plaintiffs' first three counts, all of which the

17

Order below dismisses, the Order below also dismisses Count IV for failure to state a claim upon

which relief can be granted.

**6. Count V**

      Count V is brought derivatively on behalf of the Columbia Funds under Section

215 of the IAA for violations of Section 206 of the IAA.  Section 215 provides in relevant part:

> Every contract made in violation of any provision of this subchapter
> and every contract heretofore and hereafter made, the performance of
> which involves the violation of any provision of this subchapter, or
> any rule, regulation, or order thereunder, shall be void (1) as regards
> the rights of any person who, in violation of any such provision, rule,
> regulation, or order, shall have made or engaged in the performance
> of any such contract, and (2) as regards the rights of any person who,
> not being a party to such contract, shall have acquired any rights
> thereunder with actual knowledge of the facts by reason of which the
> making or performance of such contract was in violation of any such
> provision.

15 U.S.C. § 80b-15(b).  Section 206 provides in relevant part that "[i]t shall be unlawful for any

investment adviser, by use of the mails or any means or instrumentality of interstate commerce,

directly or indirectly...to employ any device, scheme, or artifice to defraud any client or

prospective client."  15 U.S.C. § 80b-6.

      Count V is the only count that plaintiffs originally filed as a derivative action.

Defendants do not contend that this action should have been brought directly, and my analysis of

the derivative nature of plaintiffs' other counts, see supra Section III(A)(2), suggests that

plaintiffs rightly brought this count on behalf of Columbia Funds.  As explained above, see supra

Section III(A)(2), plaintiffs were not excused from making demand on any of the funds that were

Massachusetts business trusts, but they were excused from making demand on those that were

organized under Oregon law.  The Order below dismisses Count V as to the defendants organized

under Massachusetts law.

Defendants argue that plaintiffs lack standing to bring this count against any fund other than Columbia Acorn Fund and Columbia Acorn Select Fund.  As explained above, see supra Section III(A)(2), plaintiffs' ownership of only two of the eighty-one defendants' shares prevents plaintiffs from bringing a claim against the other seventy-nine.  Since Columbia Acorn Fund and Columbia Acorn Select Fund are both Massachusetts business trusts.  The Order below dismisses Count V in its entirety.

**7. Count VI**

Count VI is brought on behalf of the class against the investment advisers of the Columbia Funds for breach of fiduciary duty.  This count should have been brought as a derivative suit because, if the investment advisers owe any fiduciary duty, which itself is questionable, it is to the Columbia Funds themselves, and not to the investors in those funds.  See Jernberg v. Mann, 358 F.3d 131, 135 (1st Cir. 2004) (stating that, under Massachusetts law, "[w]hile it is sometimes said that directors and officers owe a fiduciary duty to the corporation and its shareholders, any responsibility to the latter is anchored in the duty to the former.... A director or officer of a corporation does not occupy a fiduciary relation to individual stockholders") (internal citations omitted); Lee v. Mitchell, 152 Or.App. 159, 172-77 (Or.Ct. App. 1998) (limiting the situations in which directors owe a fiduciary duty directly to shareholders to those where the claim could not have been brought derivatively).  Plaintiffs must therefore show that they were excused from making demand on the Columbia Funds, and, as explained above, see supra Section III(A)(ii), demand futility only applies to defendants organized under Oregon law.  Therefore, the Order below dismisses Count VI as to the defendants organized under Massachusetts law.

Furthermore, plaintiffs do not have standing to bring Count VI against the remaining defendants, in which plaintiffs have not invested, see supra Section III(A)(2). Therefore, the Order below dismisses Count VI in its entirety.

**8. Count VII**

Count VII is brought on behalf of the class against the trustees and officers of the Columbia Funds for breach of fiduciary duty. These defendants owe a duty only to the Columbia Funds, see supra Section III(A)(7), so plaintiffs should have brought this count derivatively on behalf of the funds in which they were invested. Thus, for the same reasons as stated in Section III(A)(7) supra, the Order below dismisses Count VII in its entirety.

**9. Count VIII**

Count VIII is brought on behalf of the class against all defendants for unjust enrichment. This count should also have been brought as a derivative suit because the alleged unjust enrichment was an injury suffered by the Columbia Funds, in which they were invested, whose assets were used to pay the compensation. See supra Section III(A)(ii). For the same reasons as stated in Section III(A)(7) supra, the Order below dismisses Count VIII in its entirety.

Having concluded that all eight counts of plaintiffs' complaint are to be dismissed, the Order below allows Columbia Defendants' Motion to Dismiss and the Independent Trustee Defendants' Motion to Dismiss. It dismisses all other motions as moot.

**ORDER**

For the foregoing reasons, it is ORDERED:

(1) Plaintiffs' Renewed Motion for Appointment of Co-Lead Counsel and

Appointment of Liaison Counsel (Docket No. 32) is DISMISSED AS MOOT;

(2) Plaintiffs' Motion for Class Certification (Docket No. 36) is DISMISSED AS

MOOT;

(3) The Independent Trustee Defendants' Motion to Dismiss (Docket No. 48) is

ALLOWED;

(4) Columbia Defendants' Motion to Dismiss (Docket No. 56) is ALLOWED;

(5) Plaintiffs' Motion for Entry of Plaintiffs' Proposed Schedule for Class

Certification and Commencement of Discovery (Docket No. 63) is DISMISSED AS MOOT;

(6) Defendants' Motion for Stay of Class and Other Discovery (Docket No. 68) is

DISMISSED AS MOOT; and

(7) The Clerk is instructed to enter a Final Judgment for defendants.


                                        ____/s/Robert E. Keeton_____
                                          Robert E. Keeton
                                        Senior United States District Judge