UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04-10584-GAO

ERIC FORSYTHE, Individually and on
Behalf of all Others Similarly Situated,
Plaintiff,

v.

SUN LIFE FINANCIAL, INC., et al.,
Defendants.

MEMORANDUM AND ORDER
January 19, 2006

O'TOOLE, D.J.

## I.    Background

This case is a putative class action brought by four named plaintiffs–Eric Forsythe, the City

of Chicago Deferred Compensation Plan, Larry R. Eddings, and Richard Koslow–who either now

own or have owned mutual funds within the Massachusetts Financial Services (MFS) fund complex.

They purport to bring their claims as a class action (with the exception of Count V, styled as a

derivative action) on behalf of a class defined as "all persons or entities who held shares, units, or like

interests in any of the MFS Funds between March 24, 1999 and March 31, 2004 inclusive . . . and

were damaged thereby [excepting the defendants and others closely related to the defendants]."  The

claims are stated directly on behalf of the class under the Investment Company Act (ICA) of 1940,

15 U.S.C. §§ 80a-1 –80a-64, and the common law and derivatively under the Investment Advisers

Act (IAA) of 1940, 15 U.S.C. §§ 80b-1--80b-21.  The consolidated amended complaint[1] names the

---

[1]    For ease of reference, the consolidated amended complaint in this case will be referred to as
simply "the complaint" and cited as "Compl."

following persons or entities as defendants: (1) Massachusetts Financial Services Company (MFS Company), the investment adviser to the MFS Funds, (2) MFS Distributors, Inc. (MFS Distributors), MFS Company's wholly-owned registered broker-dealer, (3) Sun Life Financial, Inc., the ultimate parent company of MFS Company (Sun Life), and (4) twelve trustees of various MFS Funds (the Trustee Defendants).[2]

In general terms, the complaint makes the following allegations: The defendants participated in a scheme during the class period whereby they made substantial payments to brokers in exchange for the brokers' steering unwitting clients to invest in the MFS Funds. The practices engaged in were sometimes referred to by the defendants as buying "shelf space" and satisfying "strategic alliances." The plaintiffs allege that such arrangements existed between the defendants and many brokerage houses.[3] The defendants are alleged to have compensated the brokers by means of a variety of methods including wrongful utilization of "directed brokerage,"[4] payment of excessive commissions in the form of "soft dollars" beyond what was allowed by law, and payments of cash or "hard dollars" to brokers (sometimes referred to as "revenue sharing") that were allegedly reimbursed from fund assets. These schemes are alleged to have violated provisions of the Security and Exchange Commission's Rule 12b-1 on allowable marketing fees. See 17 C.F.R. § 270.12b-1. In

---

[2]  The complaint also names the MFS Funds as nominal defendants and John Doe defendants 1-100, who are described as "Trustees and/or officers charged with overseeing the MFS Fund Complex during the class period, and any other wrongdoers later discovered."

[3]  The plaintiffs name ten brokerages as alleged participants in this type of scheme but allege that the defendants had "shelf space" arrangements with more than 100 brokerages.

[4]  "Directed brokerage" is alleged to involve steering the defendants' securities trading business on behalf of the funds under management  (and thus commissions) to brokers who agreed to more aggressively push MFS Funds.

March 2004 these "shelf space"/"strategic alliance" schemes were the subject of an SEC regulatory enforcement action against and settlement with MFS Company for failure adequately to disclose the arrangements to the MFS Boards and to MFS shareholders.

The plaintiffs further allege that the defendants used assets of the MFS Funds to engage in these schemes and charged excessive and improper fees, allegedly motivated by the prospect that if the schemes were successful, more investors would be steered into MFS Funds and thus the fees that the defendants would collect would increase as the amount of assets under management increased. The plaintiffs allege that as a result the defendants reaped substantial profits, while the MFS Funds and their shareholders received no benefit.

Additionally, the plaintiffs allege that these schemes created insurmountable conflicts of interest for MFS Company as investment adviser to the MFS Funds because it was not motivated to act in the best interests of fund investors but instead was concerned with increasing its own management fees.[5] Because these arrangements were not disclosed to investors, the plaintiffs assert that MFS Funds' prospectuses, annual statements, and similar public filings were materially false and misleading. Finally, the plaintiffs allege that the Trustee Defendants who oversaw the MFS Funds failed properly to supervise and monitor the investment adviser MFS Company because of their dependence on and control by the investment adviser.

The defendants have moved to dismiss the entire complaint on various grounds. I conclude that the motion to dismiss ought to be granted in part and denied in part as set forth below.

---

[5] The plaintiffs also claim that the defendants should be held liable for aiding and abetting a breach of fiduciary duty by brokers who sold MFS Funds, because the various schemes caused the brokers to violate their obligations to act in the best interests of their clients.

**II.   Counts I, II and IV are dismissed because there is no implied private right of action under ICA § 34(b), § 36(a) or § 48(a).**

In Count I, the plaintiffs purport to assert a claim on behalf of the class against MFS Company and the Trustee Defendants for alleged violations of § 34(b) of the ICA, 15 U.S.C. § 80a-33(b),[6] based upon materially false and misleading statements in annual reports, semi-annual reports, registration statements and other filings and public statements.   In Count II, the plaintiffs assert claims, again on behalf of the class, against MFS Company, the Trustee Defendants, and MFS Distributors for alleged breaches of their fiduciary duties under § 36(a) of the ICA, 15 U.S.C. § 80a-35(a).[7]   Count IV alleges violations of § 48(a) of the ICA, 15 U.S.C. §80a-47(a), by Sun Life

---

[6]   ICA § 34(b) provides:  "It shall be unlawful for any person to make any untrue statement of a material fact in any registration statement, application, report, account, record, or other document filed or transmitted pursuant to this subchapter or the keeping of which is required pursuant to section 80a-30(a) of this title.  It shall be unlawful for any person so filing, transmitting, or keeping any such document to omit to state therein any fact necessary in order to prevent the statements made therein, in the light of the circumstances under which they were made, from being materially misleading.  For the purposes of this subsection, any part of any such document which is signed or certified by an accountant or auditor in his capacity as such shall be deemed to be made, filed, transmitted, or kept by such accountant or auditor, as well as by the person filing, transmitting, or keeping the complete document."  15 U.S.C. § 80a-33(b).

[7]   ICA § 36(a) provides:  "The [SEC] is authorized to bring an action in the proper district court of the United States, or in the United States court of any territory or other place subject to the jurisdiction of the United States, alleging that a person serving or acting in one or more of the following capacities has engaged within five years of the commencement of the action or is about to engage in any act or practice constituting a breach of fiduciary duty involving personal misconduct in respect of any registered investment company for which such person so serves or acts–

**(1)**  as officer, director, member of any advisory board, investment adviser, or depositor; or
**(2)**  as principal underwriter, if such registered company is an open-end company, unit investment trust, or face-amount certificate company.

If such allegations are established, the court may enjoin such persons from acting in any or all such capacities either permanently or temporarily and award such injunctive or other relief against such person as may be reasonable and appropriate in the circumstances, having due regard to the protection of investors and to the effectuation of the policies declared in section 80a-1(b) of this title."  15 U.S.C. § 80a-35(a).

and MFS Company.[8]  Count IV alleges that MFS Company acted as a "control person" of both the

Trustee Defendants and MFS Distributors (the wholly-owned broker dealer of MFS Company) and

thus is liable for having caused the violations of the ICA alleged in Counts I (§ 34(b), II (§ 36(a),

and III (§ 36(b)).  Similarly, the plaintiffs allege that as a parent of MFS Company, Sun Life is liable

for MFS Company's breaches of those same provisions.  The defendants argue that Counts I, II, and

IV should be dismissed because the statutes at issue may not be enforced by a private right of action.[9]

I agree.

Neither § 34(b), § 36(a), nor § 48(a) expressly provides for enforcement by a private right of

action. To bring these claims, the plaintiffs must show that there is an *implied* private right of action

under each statute.  For the following reasons, I conclude that there is no such implied private right

of action and that Counts I, II, and IV should therefore be dismissed.

In Gonzaga Univ. v. Doe, 536 U.S. 273 (2002) and Alexander v. Sandoval, 532 U.S. 275

(2001), the Supreme Court clarified the law regarding implied private rights of action.  See Bonano v.

East Caribbean Airline Corp., 365 F.3d 81, 84, 86 n.4 (1st Cir. 2004).  A private right of action, like

all substantive federal law, must be created by Congress.  See Sandoval, 532 U.S. at 286; Bonano,

365 F.3d at 86.  A statute may imply the existence of a private enforcement cause of action if it

---

[8]    ICA § 48(a) provides: "It shall be unlawful for any person, directly or indirectly, to cause to be done any act or thing through or by means of any other person which it would be unlawful for such person to do under the provisions of this subchapter or any rule, regulation, or order thereunder." 15 U.S.C. 80a-47(a).

[9]    Any liability arising under § 48(a) would necessarily, by the terms of the statute, be secondary and require proof of a primary violation of the ICA by another person.  See In re Merrill Lynch & Co. Research Reports Sec. Litig., 272 F. Supp.2d 243, 264 (S.D.N.Y. 2003).  In light of my ruling here as to the § 34(b) and § 36(a) claims and my dismissal, infra, of the § 36(b) claim against the Trustee Defendants, the only remaining potential claims under Count IV are that Sun Life has § 48(a) liability for causing a violation of § 36(b) by MFS Company and that MFS Company has § 48(a) liability for causing a violation of that same statutory section by MFS Distributors.

indicates Congress' intent to create both a private right and a private remedy under the statute.  <u>See</u> <u>Gonzaga Univ.</u>, 536 U.S. at 283-84, <u>Sandoval</u>, 532 U.S. at 286; <u>Bonano</u>, 365 F.3d at 84.  Without a finding of a congressional intention to create a private remedy, however, courts may not infer one, regardless of how desirable that might be as a policy matter or how compatible it might be with the purpose or objective of the statute.  <u>Sandoval</u>, 532 U.S. at 286-87.

Finding a congressional intention to imply a private right of action, like other tasks of statutory interpretation, depends in the first instance on the text and structure of the statute.  <u>See</u>, <u>Gonzaga Univ.</u>, 536 U.S. at 283-84, <u>Sandoval</u>, 532 U.S. at 288-89, <u>Bonano</u>, 365 F.3d at 84-85.  Thus, a private right of action may be implied by statutory text that contains "rights-creating" language.  <u>Gonzaga Univ.</u>, 536 U.S. at 283-84; <u>Sandoval</u>, 532 U.S. at 288-89.  Generally, however, statutes that focus on the persons or conduct to be regulated and not on the persons to be protected by the regulation create "no implication of an intent to confer rights on a particular class of persons." <u>See</u> <u>Sandoval</u>, 532 U.S. at 289.  Moreover, when Congress has expressly provided a method of enforcing substantive rules, it may ordinarily be inferred that Congress correspondingly intended not to provide others.  <u>See</u> <u>Sandoval</u>, 532 U.S. at 290, <u>Bonano</u>, 365 F.3d at 85; <u>see also</u> <u>Touche Ross</u> <u>& Co. v. Redington</u>, 442 U.S. 560 (1979) ("Obviously . . . when Congress wished to provide a private damage remedy, it knew how to do so and did so expressly.").  In particular, courts should be cautious about finding an implied private right of action where Congress has provided within a statutory scheme a narrow ground for private enforcement but left the rest of the statute's provisions to agency enforcement.  <u>See</u> <u>Bonano</u>, 365 F.3d at 85-86 (the existence of a narrow express private

right of action in the Federal Aviation Act that exhibits an overall Congressional preference for public enforcement bolsters conclusion that implying a private right of action would be improper).[10]

Neither § 34(b) , § 36(a), nor § 48(a) contains the "rights-creating language" necessary to find an implied private right of action.  Those statutes simply describe prohibited conduct, focusing only on the persons regulated by the statute, rather than a class of persons benefitted by the regulation. Moreover, with the limited exception of the private cause of action expressly created by Congress under § 36(b), discussed below, the responsibility for the overall enforcement of the ICA statutory scheme is not given to private individuals but rather to the SEC.  See 15 U.S.C. § 80a-41.  Section 36(a) in particular not only lacks "rights-creating language" but also specifically authorizes only the SEC – not private litigants – to take enforcement action.  Therefore I conclude, as many other courts have recently done in similar mutual fund cases, that § 34(b), § 36(a), and § 48(a) do not provide an implied private right of action for mutual fund shareholders.[11]

---

[10]   The plaintiffs argue that the Supreme Court's recent decision in Jackson v. Birmingham Board of Educ., 125 S. Ct. 1497 (2005) has limited the holding in Sandoval.  The plaintiffs misread Jackson; it does not narrow Sandoval in the manner they assert it does. The statute at issue in Jackson does include the important rights-creating language that was found lacking in the analysis in cases such as Sandoval and Bonano.  See Jackson, 125 S. Ct. at 1503-04 (Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded . . .").  The Jackson court itself said, "In step with Sandoval, we hold that Title IX's private right of action encompasses suits for retaliation, because retaliation falls within the statute's prohibition of intentional discrimination on the basis of sex."  See Jackson, 125 S. Ct. at 1507.  The plaintiffs' argument that Jackson somehow nullifies the broad change that Sandoval wrought in the approach to finding implied private rights of action is wrong.  See In re Mut. Funds Inv. Litig., 384 F. Supp.2d 845, 868 n.24 (D. Md. 2005) (rejecting a similar argument).

[11]   See In re Davis Selected Mut. Funds Litig., Civ. No. 04-4186 (MGC), 2005 WL 2509732, at *2 (S.D.N.Y Oct. 11, 2005); In re Dreyfus Mut.Funds Fee Litig. Master File No. 04-0128., slip op., at 12-14 (W.D. Pa. Sept. 28, 2005); In re Franklin Mut. Funds Fee Litig., 388 F. Supp.2d 451, 464-68 (D.N.J. 2005); In re Lord Abbett Mut. Funds Fee Litig., 385 F. Supp.2d 471, 486-87 (D.N.J. 2005); In re Eaton Vance Mut. Funds Fee Litig., 380 F. Supp.2d 222, 229-33 (S.D.N.Y. 2005); see also Stegall v. Ladner, 394 F. Supp.2d 358, 367-71 (D. Mass. 2005) (no implied private right of action under § 36(a)); In re Mut. Funds Inv. Litig., 384 F. Supp.2d 845, 868-70 (D. Md. 2005) (no

It is true that prior to Sandoval, various courts, including the First Circuit, had held that there were implied private rights of action under various provisions of the ICA. See Lessler v. Little, 857 F.2d 866, 871 (1st Cir. 1988) (finding implied private right of action under ICA § 17(a)(2)); see also Olmsted v. Pruco Life Ins. Co., 283 F.3d 429, 434 n.4 (2d Cir. 2002) (citing cases that had previously recognized implied private rights of action under the ICA). However, as the Olmsted court explained, the courts deciding those prior cases acted in accordance with then-existing principles governing the discernment of a private right of action. 283 F.3d at 433-34.[12] Sandoval represented a break with those prior lines of decision and instructed that courts should no longer infer a private right of action simply to "make effective [a statute's] purpose." 532 U.S. at 287; see also Olmsted, 283 F.3d at 434. Other courts addressing the same argument in cases very similar to this case have discounted pre-Sandoval precedent in concluding there is no implied private right of action under § 34(b), § 36(a) and § 48(a). See In re Lord Abbett, 385 F. Supp.2d 471, 486 (D.N.J. 2005); In re Eaton Vance Mut. Funds Fee Litig., 380 F. Supp.2d 222, 233 (S.D.N.Y. 2005); cf. In re Franklin Mut. Funds Fee Litig., 388 F. Supp.2d 451, 467 (D.N.J. 2005). The First Circuit has also recognized, albeit in the context of another statute, that Sandoval "changed the legal landscape" and thus cast doubt on the validity of at least some of the prior precedents finding implied private rights

---

implied private right of action under § 34(b) and § 36(a)); In re Merrill Lynch & Co. Research Reports Sec. Litig., 272 F. Supp.2d at 243, 259 (S.D.N.Y. 2003) (§ 34(b) does not provide an implied private right of action); White v. Heartland High-Yield Mun. Bond Fund, 237 F. Supp.2d 982, 986-88 (E.D. Wis. 2002) (§ 22 and § 34(b) do not provide an implied private right of action); Dorchester Investors v. Peak Int'l Ltd., 134 F. Supp.2d 569, 581 (S.D.N.Y. 2001) (§ 34(b) does not provide an implied private right of action).

[12] Some of the cases were decided prior to 1975, when courts merely needed to find that a federal statute was "enacted for the benefit of a special class" to find an implied private right of action, while others were decided under the regime of Cort v. Ash, 422 U.S. 66 (1975), in which "legislative intent" was only one factor in the implied private right of action analysis. See Olmsted, 283 F.3d at 434.

of action.  See Bonano, 365 F.3d at 86 n.4.  In this case, as well, the plaintiffs' reliance on outdated precedent should be rejected in light of more recent guidance.

The plaintiffs argue that even under the Sandoval method of analysis their claims should be upheld because the general statutory intent and structure of the ICA shows it was enacted for the global purpose of "protection of investors," despite the fact that the statutes do not contain any rights-creating language indicating an intent to create a private right of action.  Such an argument is out of step with Sandoval, Bonano and the many cases decided post-Sandoval refusing to imply private rights of action under the ICA.  Looking at the text and structure of § 34(b), § 36(a), and § 48(a), it is clear that there is no implication of a private right of action.

## III.    Count V (Derivative Claim under the IAA) is dismissed for failure to comply with Fed. R. Civ. P. 23.1.

In Count V, the plaintiffs purport to state a claim under § 215 of the IAA, 15 U.S.C. § 80b-15, derivatively on behalf of all the named MFS Funds against MFS Company in its role as investment adviser to the MFS Funds.  The allegations are that MFS Company violated its fiduciary duty to the MFS Funds, imposed by § 206 of the IAA, 15 U.S.C. § 80b-6, by (1) charging improper Rule 12b-1 marketing fees, (2) making improper undisclosed payments of  "soft dollars," (3) making unauthorized use of "directed brokerage" to satisfy *quid pro quo* "shelf space" arrangements, and (4) charging excessive and improper commission payments to brokers.  The plaintiffs claim that as a result of these breaches of duty, the MFS Funds are entitled to rescind their investment advisory contracts with the MFS Company and recover all fees paid in connection with such agreements.

That this claim is derivative in nature is conceded by the plaintiffs.  The defendants argue that because the plaintiffs have failed to comply adequately with Fed. R. Civ. P. 23.1, Count V should be dismissed.  The plaintiffs respond that any demand that the trustees who oversee the MFS Funds

bring the claims would be futile and demand should thus be excused.  For the reasons set forth below, I conclude that the plaintiffs have failed adequately to plead that demand would be futile, and this count should therefore be dismissed.

Shareholder derivative actions in federal court are governed by Fed. R. Civ. P. 23.1.  See Kamen v. Kemper Fin. Servs., Inc., 500 U.S. 90, 96 (1991); Gonzalez Turul v. Rogatol Distribs., Inc., 951 F.2d 1, 2 (1st Cir. 1991).  Under this rule, the shareholder must plead with particularity that either demand was made or that demand would have been futile.  Gonzalez Turul, 951 F.2d at 2; see also Fed. R. Civ. P. 23.1.  In this Circuit, the requirements of Rule 23.1 are "vigorously enforce[d]" and a court should dismiss derivative actions when plaintiffs do not comply.  Gonzalez Turul, 951 F.2d at 2; see Grossman v. Johnson, 674 F.2d 115, 125 (1st Cir. 1982); Heit v. Baird, 567 F.2d 1157, 1160 (1st Cir. 1977); see also Landy v. D'Alessandro, 316 F. Supp.2d 49, 59-60 (D. Mass. 2004).  Allegations necessary for a finding of demand futility must be particularly set forth in the complaint.  A shareholder may not plead in general terms hoping that, by discovery or otherwise, he can later establish a case for demand futility.  See Gonzalez Turul, 951 F.2d at 3; see also Grossman, 674 F.2d at 123, 125.  Although the general standards applicable to motions to dismiss still apply to the extent that the court must take as true all well-pleaded allegations and make all reasonable inferences in favor of the plaintiff, the court must not accept mere conclusions or generalized allegations of control, acquiescence, wrongful participation, or the like.  Instead, the plaintiff must allege with particularity facts that would support such a conclusion.  See Gonzalez Turul, 951 F.2d at 3;  Landy, 316 F. Supp.2d at 60-75; see also Grossman, 674 F.2d at 124; Heit, 567 F.2d at 1161.

In considering whether demand should be excused because it would be futile, a federal court must look to the law of the state of incorporation of the entity on whose behalf the plaintiff purports to sue.  See Kamen, 500 U.S. at 97-108; Gonzalez Turul, 951 F.2d at 2.  Here, the plaintiffs assert

derivative claims on behalf of the MFS Funds, which are all organized as Massachusetts business trusts. See Compl. ¶ 42. Therefore, Massachusetts law regarding demand and demand futility will govern the analysis of the plaintiffs' allegations.

Massachusetts takes a narrow view of demand futility; demand is excused only when there is a particularized showing that "a majority of directors are alleged to have participated in wrongdoing, or are otherwise interested." Harhen v. Brown, 730 N.E.2d 859, 865 (Mass. 2000); see also In re Mut. Funds Inv. Litig., 384 F. Supp.2d 845, 877 (D. Md. 2005); In re Eaton Vance Mut. Funds, 380 F. Supp.2d at 239.[13] With respect to a Massachusetts business trust that is an investment company registered under the ICA, a trustee is presumptively "deemed to be independent and disinterested when making any determination or taking any action as trustee" if the trustee is not an "interested person" as that term is defined in the ICA. See Mass. Gen. Laws ch. 182, § 2B. Thus, in order to show that demand would have been futile, the plaintiffs must allege with particularity that a majority of the trustees were "interested" within the ICA definition. See In re Eaton Vance Mut. Funds, 380 F. Supp.2d at 239; ING Principal Protection Funds Derivative Litig., 369 F. Supp.2d 163, 171-72 (D. Mass. 2005).

According to the complaint, there are twelve trustees on the relevant boards of trustees that oversee the MFS Funds. See Compl. ¶ 25-37. All trustees are named as Trustee Defendants. The

---

[13] The new Massachusetts Business Corporation Act, which became effective in July 2004, includes a "universal demand" requirement which applies in *all derivative cases*, meaning there is no longer a futility exception to the requirement, even if the directors are deemed to be "interested" with respect to the subject matter of the demand. See Mass. Gen. Laws ch. 156D, § 7.42 ("No shareholder may commence a derivative proceeding" until written demand is made and certain time periods have elapsed); see ING Principal Protection Funds Derivative Litig., 369 F. Supp.2d 163, 170 (D. Mass. 2005); Demoulas v. Demoulas Super Markets, Inc., Civ. No. 033741 BLS, 2004 WL 1895052, at *1 (Mass. Super. Ct. Aug. 2, 2004). The defendants do not argue that this statute applies; the initial complaint was filed prior to the enactment of that statute and the statute is not retroactive.

plaintiffs allege that three trustees, who served on all the boards, were officers of MFS Company. See Compl. ¶¶ 25-27. Trustees who are officers of the adviser would be considered "interested" under the ICA. See 15 U.S.C. § 80a-2(a)(3)(D), (19). However, in order to find a majority of the board "interested" under the ICA, it would be necessary for the plaintiffs to allege with particularity that at least four more trustees sitting on each board at the time the complaint was filed were "interested." The plaintiffs' only argument on this score is that the remaining nine Trustee Defendants on each board should all be viewed as "interested" because they were "controlled" by the investment adviser MFS Company and thus within the ICA's definition. See 15 U.S.C. § 80a-2(a)(3)(C) ("affiliated person" includes "any person directly or indirectly controlling, controlled by, or under common control, with such other person"); 15 U.S.C. § 80a-2(a)(19) ("interested person" of another person/entity includes any "affiliated person"); see also In re Eaton Vance Mut. Funds, 380 F. Supp.2d at 239 (a trustee is an interested person if he is "controlled by" the Investment Adviser as defined in the ICA). However, under the ICA there is a statutory presumption that a natural person is not a "controlled person," subject to specific rebuttal. See 15 U.S.C. § 80a-2(a)(9); see Krantz v. Fidelity Mgmt & Research Co., 98 F. Supp.2d 150, 154-55 (D. Mass. 2000).

The plaintiffs contend that the allegations in the complaint, taken as true, support an inference that, because of the "close-knit" structure of the MFS organization, even the supposedly independent Trustee Defendants felt their duty of loyalty was to MFS Company, not the funds and their investors. See Compl. ¶¶ 44, 45, 91, 135. The First Circuit has held that in making an allegation of control of a fund's Board of Trustees by an investment adviser, a plaintiff must make "particularized allegations and [present] specific facts." See Grossman, 674 F.2d at 124. Here, the allegations by the plaintiffs are not particularized. The allegations in ¶ 44 and ¶ 135 are little more than conclusions that (1) the MFS Funds all function as part of one unitary organization and thus have no independent will apart

from MFS Company and (2) although the trustees may be voted out by shareholders, the trustees know that event is extremely unlikely so long as MFS Company supports the trustees. The allegation in ¶ 45 may be sufficient to demonstrate that MFS Company, MFS Distributors, and the MFS Funds all have a cooperative relationship, but it does not demonstrate anything more about how the Trustee Defendants themselves were interested. Finally, as to ¶ 91, the presence of MFS officers as trustees on the board is not enough, without any additional facts regarding board operations, to allege with particularity that each of the non-affiliated Trustee Defendants was controlled by MFS Company. The plaintiffs' conclusory assertion that these officers were put in place to "ensure that the Trustees toed the line" will not suffice.

The plaintiffs also argue that they have alleged that each Trustee Defendant personally benefitted from the wrongdoing alleged in the complaint. They rely on allegations that the Trustee Defendants served for indefinite terms at the pleasure of the investment adviser defendant, see Compl. ¶ 91, received substantial compensation (ranging from $100,000-200,000 annually) for their duties overseeing the one-hundred twelve funds in the MFS fund complex, see Compl. ¶ 140, and were self-interested in alleged improper kickbacks paid to brokers to steer clients into the MFS Funds because they would lose their positions if the funds did not grow. See Compl. ¶ 139. These allegations are insufficient to excuse demand. First, the factual allegation that the Trustee Defendants serve indefinite terms does not, without more, warrant the conclusion that they serve "at the pleasure" of MFS Company, particularly in light of the acknowledged fact that the shareholders retain the right to vote out a trustee. The complaint's allegation that these Trustee Defendants are intimidated into doing the bidding of MFS Company is a conclusion without articulated factual support. See Compl. ¶135. In addition, board membership by itself does not warrant a conclusion that the trustee is "interested," even though the trustee is well compensated and was appointed by the defendant. See

13

<u>Demoulas v. Demoulas Super Markets, Inc.</u>, Civ. No. 033741BLS, 2004 WL 1895052, at *15 (Mass. Super. Ct. Aug. 2, 2004); <u>see also</u> <u>In re Eaton Vance Mut. Funds</u>, 380 F. Supp.2d at 240; <u>In re AllianceBernstein Mut. Fund Excessive Fee Litig.</u>, Civ. No. 4885(SWK), 2005 WL 2677753, at *8 (S.D.N.Y. Oct. 19, 2005). In the mutual fund context, other courts have similarly concluded that the fact that trustees receive substantial compensation for their service on multiple boards within a fund complex is not in itself sufficient to establish that they were under the "control" of the adviser. <u>See</u> <u>Krantz</u>, 98 F. Supp.2d at 155, 157; <u>see also</u> <u>In re Mut. Funds Inv. Litig.</u>, 384 F. Supp.2d at 878-89. Likewise, the Massachusetts courts have held that the receipt of "usual and customary director's fees and benefits" does not render a director interested. <u>See</u> <u>Harhen</u>, 730 N.E.2d at 864 n.5. Finally, the plaintiffs' allegation that the Trustee Defendants were "interested" because the wrongful scheme alleged would lead to fund growth, thus permitting them to maintain their positions and salaries, depends on a series of general inferential conclusions – that the alleged wrongful "kickback" arrangements were necessary to maintain fund growth, that if growth stagnated the MFS Funds would be disbanded or merged, and if this occurred as to one of the many MFS Funds the Trustee Defendants oversaw they would lose their positions – that are nowhere supported by particularized factual allegations.

It is not enough to allege simply that the Trustee Defendants approved the advisory fees and other distributions that are alleged to have been wrongful. <u>See</u> Compl. ¶¶ 89-95, 136, 137, 138. Allegations that do not go beyond asserting that the trustees had approved transactions that are alleged to have been wrongful are insufficient to excuse demand without further evidence of bias or self interest on the part of the trustees. <u>See</u> <u>Grossman</u>, 674 F.2d at 124-25; <u>ING Principal Protection</u>, 369 F. Supp.2d at 172. Here there are no particular allegations that any of the non-officer Trustee Defendants acted out of bias or self-interest in approving the challenged transactions. Similarly, there

are also no particularized allegations, beyond the mere fact of approval, that the Trustee Defendants were actively involved in the wrongfulness of any actions.

For the foregoing reasons, I conclude that the plaintiffs have failed to adequately allege that the majority of the board of trustees was "interested" so that demand would be excused under Massachusetts law.  Therefore, since it is undeniable that the plaintiffs have not made demand on the boards of trustees, their failure to allege with particularity that demand would be futile requires that their derivative claim under the IAA set forth in Count V should be dismissed.  See Fed. R. Civ. P. 23.1.

## IV.    Counts VI-IX (state law claims) are dismissed.

In Counts VI, VII, VIII, and IX, the plaintiffs purport to state on behalf of all class members four separate claims under state law for alleged breaches of fiduciary duty or unjust enrichment. Despite the plaintiffs' characterization of these claims as "direct" claims, they are properly regarded as derivative.

Under Massachusetts law,[14] if the wrong underlying claim results in harm to a plaintiff shareholder only because the corporate entity has been injured, with the plaintiff's injury simply being his proportionate share of the entity's injury, the harm to the shareholder is indirect and his

---

[14] The parties do not address which state's law should apply to this issue.  However, their arguments, premised on Massachusetts law, implicitly recognize the fact that I must look to the law to the Funds' state of organization, Massachusetts, for resolution of this issue of "shareholder standing."  See Stegall, 2005 WL 2709127, at *4; In re AllianceBernstein, 2005 WL 2677753, at *3; see also Compl. ¶ 42 (MFS Funds are all organized under Massachusetts law).

cause of action is derivative.  See Bessette v. Bessette, 434 N.E.2d 206, 208 (Mass. 1982); Jackson v. Stuhlfire, 547 N.E.2d 1146, 1148 (Mass. App. Ct. 1990); see also Lapidus v. Hecht, 232 F.3d 679, 683 (9th Cir. 2000) (applying Massachusetts law); Stegall v. Ladner, 394 F. Supp.2d 358, 364 (D. Mass. 2005) (SAME); In re Eaton Vance Mut. Funds, 380 F. Supp.2d at 233-34; (SAME); In re Franklin Mut., 388 F. Supp.2d at 462 (under Mass. law, the issue turns on whether the shareholders suffered an injury distinct from the injury suffered by the corporation).

Here, any injury caused by the alleged state law wrongs committed by the defendants would occur primarily and directly to the MFS Funds and only indirectly to the plaintiffs by virtue of their status as investors.  These claims should have been brought as derivative claims, with appropriate compliance with Rule 23.1.

The plaintiffs' argument that this result is somehow altered by the "unique nature" of mutual funds, relying on Strigliabotti v. Franklin Resources, Inc., Civ. No. C 04-00883 SI, 2005 WL 645529, at * 7-8 (N.D. Cal. Mar. 7, 2005), is unavailing.  In Strigliabotti, the court decided that the injuries the plaintiffs allegedly suffered from excessive payment of 12b-1 distributions and advisory fees by the funds at issue were direct injuries under California law.  However, that authority is not controlling, and I find its reasoning unpersuasive.  The approach taken in that case ignores the fact that the injuries claimed by the plaintiffs here would be suffered only by reason of a precedent wrong to the MFS Funds.

The plaintiffs' remaining arguments on this score are similarly unpersuasive and do not merit extended discussion.[15] Therefore, I conclude that all of the state law claims are properly viewed as derivative claims.

Counts VI through IX were improperly brought as direct claims when they are in fact derivative claims, and they must be dismissed. Even if the claims were to be viewed as derivative claims, they would all be subject to the demand requirement of Fed. R. Civ. P. 23.1. For the reasons discussed above in relation to the IAA claim under Count V, the plaintiffs have failed to comply with Rule 23.1 because they failed either to make the demand required by that rule or to allege adequately the futility of such demand. All four of these counts must be dismissed.

---

[15] The plaintiffs argue that the class members have sustained separate and distinct injury because the rates paid by classes are different and, therefore, the shareholders falling within each class are directly impacted by the payments. This is a *non sequitur*. If the facts are as alleged, it simply means that the shareholders of different classes may suffer their indirect injuries to a differing extent. Besides, this argument is also inconsistent with the claims stated in the complaint that make no effort to distinguish between the classes of shareholders but rather allege that all investors were similarly injured. See In re Eaton Vance, 380 F. Supp.2d at 235-36. The plaintiffs also argue that a direct action is necessary to vindicate the rights of class members no longer holding their shares. This argument is unavailing because such a result occurs in all derivative actions, where it is the fund that benefits directly from any remedy (because it was the fund that was injured directly), not the individual shareholders. See Ross v. Bernhard, 396 U.S. 531, 538-39 (1970) ("The proceeds of the [derivative] action belong to the corporation," not to the former shareholders.). Present shareholders find the value of their shares proportionately increased by a damage recovery by the fund; past shareholders, who have become present non-shareholders, do not.

**V.      Count III states a claim under§ 36(b) of the ICA.**

   **A.      Adequacy of the Complaint**

In Count III, the plaintiffs assert claims against MFS Company (the investment adviser), MFS Distributors (the principal underwriter), and the Trustee Defendants for alleged breaches of fiduciary duty under § 36(b) of the ICA, 15 U.S.C. § 80a-35(b). The plaintiffs allege that the defendants violated § 36(b) by their improper collection of purported Rule 12b-1 marketing fees, their concomitant failure to reduce advisory fees proportionately to the benefit received by MFS Company from these payments, and their use of MFS Fund assets to make undisclosed payments of "soft dollars" and excessive commissions in violation of Rule 12b-1 in exchange for preferential marketing services, despite the fact that the payments at issue benefitted only the defendants and not the MFS Funds or their investors. Compl. ¶ 160. The plaintiffs also contend that the defendants wrongfully inflated their advisory fees in an amount that would reimburse them for further revenue sharing payments ostensibly made out of the assets of MFS Company and MFS Distributors. Compl. ¶ 160. All of this, the plaintiffs allege, demonstrates that the plaintiffs charged advisory fees so disproportionately large that they bore no reasonable relationship to the services rendered, could not have been the product of arm's length bargaining, and thus violated the fiduciary duty imposed by § 36(b). Compl. ¶¶ 160, 161. The defendants have moved to dismiss this claim on the grounds that it fails to state a claim upon which relief can be granted.

Under § 36(b), a security holder of a registered investment company (such as the MFS Funds here) may bring an action "on behalf of such company" against an investment adviser of that investment company or "any affiliated person of such investment adviser" for a breach of the statutorily created fiduciary duty "with respect to the receipt of compensation for services, or of payments of a material nature, paid by such registered investment company, or by the security

holders thereof." 15 U.S.C. § 80a-35(b).  In Gartenberg v. Merrill Lynch Asset Mgmt., Inc., 694 F.2d 923 (2d Cir. 1982), the Second Circuit set forth a standard that has since been widely cited by other courts in addressing claims under § 36(b).  According to Gartenberg, an investment adviser or manager may be liable for a breach of its fiduciary duty under § 36(b) if it charged a fee "so disproportionately large that it bears no reasonable relationship to the services rendered and could not have been the product of arm's-length bargaining." Id. at 928.  The Gartenberg court proposed six factors typically to be considered,  including (1) the nature and quality of services provided to fund shareholders; (2) the profitability of the fund to the adviser-manager; (3) fall-out benefits; (4) economies of scale; (5) comparative fee structures; and (6) the independence and conscientiousness of the trustees.  See Krinsk v. Fund Asset Mgmt., Inc., 875 F.2d 404, 409 (2d Cir. 1989) (citing Gartenberg, 694 F.2d at 929-30).  The First Circuit has not expressly adopted the so-called Gartenberg factors nor has it established a specific pleading standard for § 36(b) claims. My judgment, previously stated elsewhere, is that Gartenberg (if it were to be followed in this Circuit) does not establish a heightened pleading standard for § 36(b) claims and the plaintiffs' failure to plead facts that specifically address the Gartenberg factors is not in itself a ground for dismissal.  See Wicks v. Putnam Inv. Mgmt., LLC, Civ. No. 04-10988, 2005 WL 705360, at *4 (D. Mass. Mar. 28, 2005).  This conclusion is consistent with recent instruction from the Supreme Court and the First Circuit that heightened pleading standards should not be applied unless such a heightened standard is mandated either by statute or rule of civil procedure.  See Swierkiewicz v. Sorema, N.A., 534 U.S. 506, 512-13 (2002);  Educadores Puertorriqueños en Acción v. Hernández, 367 F.3d 61, 66 (1st Cir. 2004).  Because there is no heightened pleading standard for claims under § 36(b), the plaintiffs here need only comply with the usual notice pleading requirements of Fed. R. Civ. P. 8.

Under Rule 8, a complaint is sufficient as long as it contains a "short and plain statement of the claim showing that the pleader is entitled to relief" that "give[s] the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." See Educadores, 367 F.3d at 66 (citing Conley v. Gibson, 355 U.S. 41, 47 (1957)); see also Fed. R. Civ. P. 8(a). A court should dismiss a complaint on a Rule 12(b)(6) motion only if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." See Educadores, 367 F.3d at 66 (citing Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)). Of course, as the defendants correctly point out, the liberality of Rule 8 should not be read to mean that there are not some minimal standards that must be met. The complaint should at least set forth basic facts as to who did what to whom, when, where and – if relevant to the case – why. See Educadores, 367 F.3d at 68. Additionally, in evaluating a motion to dismiss for failure to state a claim a court must "eschew any reliance on bald assertions, unsupportable conclusions, and opprobrious epithets." See id. at 68. While a plaintiff need not plead facts in evidentiary detail, a complaint will be deemed insufficient if all it does is "parrot[] the language of a statutory cause of action, without providing some factual support." See United States ex rel. Karvelas v. Melrose-Wakefield Hosp., 360 F.3d 220, 240 (1st Cir. 2004).

In sum, the following principles apply: (1) a § 36(b) plaintiff need only set forth a "short and plain statement" that gives "fair notice" of the claim of breach of fiduciary duty with respect to the receipt of compensation or other material payments made by the fund or its shareholders; and (2) the plaintiff need not plead in a high degree of factual detail and failure to plead specifically any of the Gartenberg factors is not itself a ground for dismissal; but (3) a § 36(b) complaint is not sufficient if it rests solely on general and conclusory legal assertions that the fees charged were excessive.

The defendants contend that the complaint's § 36(b) claim should be dismissed because it does not allege conduct sufficient to sustain a claim under the statute. First, although the defendants

20

describe the plaintiffs' claim as nothing more than one for non-disclosure of certain practices, the complaint can reasonably be read as alleging that the nondisclosed practices were themselves wrongful under § 36(b). The defendants are correct that § 36(b) is not a general vehicle for bringing claims for any and all purported breaches of fiduciary duty; claims under the statute must allege some connection between the wrongs alleged and excessive compensation of an investment adviser or affiliated persons. See, e.g., Stegall, 394 F. Supp. 2d at 374-77 (describing how both the so-called "broad" and "narrow" view of § 36(b) liability both require that the breach of fiduciary duty was in some way tied to excessive compensation). Thus, to the extent that plaintiffs argue that the complaint, properly understood, is "not limited to excessive fees and charges, but also includes Defendants' breach of fiduciary duty [by failing to adequately inform investors about conflicts of interest involving compensation received by MFS Company] in connection with the fees they charged, which is an independent violation of § 36(b)," Pls.' Opp'n to Mot. to Dismiss at 36, they are incorrect. See Stegall, 394 F. Supp.2d at 376; see also Migdal v. Rowe Price-Fleming, Int'l, Inc., 248 F.3d 321, 328-29 (4th Cir. 2001).

On the other hand, I am unwilling to conclude at this stage of the case, based only on pleadings, that a claim under § 36(b) may not attack the lawfulness of the types of distributions that the plaintiffs allege were wrongful here – excessive Rule 12b-1 fees, soft dollar payments, and excessive broker commissions – despite the fact that such payments may not be "advisory fees" in the most literal sense. See Meyer v. Oppenheimer Mgmt. Corp., 764 F.2d 76, 82-83 (2d Cir. 1985) (expressly rejecting the proposition that § 36(b) "deals only with compensation for *advisory* services" to mutual funds, noting the broad scope of the language of § 36(b), which applies to payments made to any "affiliated person" of the investment adviser) (emphasis in original); Meyer v. Oppenheimer Mgmt. Corp., 895 F.2d 861, 866 (2d Cir. 1990) (§ 36(b) applies to claims related to excessive

payments other than purely advisory fees – "the costs of 12b-1 plans . . . as well as advisory fees are subject to review under Section 36(b)"); In re AllianceBernstein, 2005 WL 2677753, at *5; In re Eaton Vance Mut. Funds, 380 F. Supp.2d at 236-37; ING Principal Protection, 369 F. Supp.2d at 167-69; Pfeiffer v. Bjurman, Barry & Assocs., Civ. No. 03-9741 DLC, 2004 WL 1903075, at *4 (S.D.N.Y. Aug. 26, 2004); cf. Krinsk, 875 F.2d at 412-13 (allegation of improper Rule 12b-1 fees could not be brought separately under Rule 12b-1 because it was part of cognizable § 36(b) excessive compensation claim); Pfeiffer v. Integrated Fund Servs., Inc., 371 F. Supp.2d 502, 508-09 (S.D.N.Y. 2005) (holding such claims are cognizable but dismissing claim because there were improper defendants named).

I conclude that Count III sufficiently comports with Rule 8's pleading standard. It alleges wrongful conduct specific to the defendants in some factual detail. In addition, it alleges that the defendants have caused the MFS Funds to pay improper "kickbacks" to brokers in exchange for steering clients into MFS Funds via "shelf space arrangements," to pay excessive commissions under the guise of "soft dollars," to engage in improper "directed brokerage" arrangements, and to make improper "hard dollar" revenue sharing payments that were then reimbursed out of MFS Fund assets. See Compl. ¶¶ 46-51, 97-104, 106-07, 109-13, 161. There are also illustrating allegations regarding these types of arrangements with one particular broker-dealer, as well as allegations that a large number of other broker-dealers were similarly involved. See Compl. ¶¶ 40, 56-75, 82-83. The plaintiffs also give adequate notice of how these arrangements are alleged to have benefitted the defendants while at the same time harming the MFS Funds and their investors. See Compl. ¶¶ 3-4, 48, 52, 79, 84, 94, 102-03, 108, 163. The plaintiffs allege that as the MFS Funds grew the defendants failed to pass on economies of scale from that growth by failing to reduce fees accordingly. See Compl. ¶¶ 102-03. Finally, the plaintiffs allege that the advisory fees MFS

Company received were wrongfully inflated by shifting to the MFS Funds and their investors costs that should rightfully have been borne by the MFS Company. See Compl. ¶ 105.

The defendants also argue, relying on cases such as <u>Migdal</u>, 248 F.3d at 326-27 and <u>Krantz v. Prudential Inv. Fund Mgmt. LLC</u>, 305 F.3d 140, 143-44 (3d Cir. 2002), that the § 36(b) claim should be dismissed because the plaintiffs have failed alleged sufficient facts that, if proven, would demonstrate that the services rendered by the defendants were disproportionate to the fees charged. This argument is unpersuasive. This is not a case like the cited cases where the plaintiffs only alleged the fees were high but made no allegations regarding services rendered and the relationship between the two. Here, although the plaintiffs do not make any allegations regarding the quality of services rendered, that factor may be irrelevant to their theory of excessiveness. The plaintiffs' contention is that the fees were excessive because they were unauthorized and taken from fund assets to the benefit of the defendants only, not the funds. The plaintiffs' theory is that fees that amount to "something for nothing" are inherently excessive. At least one court has concluded in a different § 36(b) context that the wrongful retention of monies by an investment adviser that were in essence "something for nothing" could represent a disproportional relationship between fees and services. See <u>Jones v. Harris Assocs., L.P.</u>, Civ. No. 04 C 8305, 2005 WL 831301, at * 3 (N.D. Ill. Apr. 7, 2005). For present purposes, the plaintiffs' pleading of this claim is sufficient to survive a motion to dismiss.

**B.    Limits on the Surviving § 36(b) Cause of Action**

The defendants assert that even if the complaint adequately states a claim under § 36(b), the claim as stated is overbroad in two respects: the complaint can be understood to claim damages for greater period than is allowed by the statute, and it appears to claim damages against the Trustee Defendants, who are not proper defendants under the statute. I agree, and the § 36(b) claim will be limited accordingly.

23

As to the damages period, the plaintiffs generally allege, for all the claims, a class period beginning March 14, 1999 and ending March 31, 2004. See Compl. ¶ 128. The plaintiffs do not allege any separate damages period applicable to their § 36(b) claim. The text of § 36(b) limits recovery to "actual damages" and further provides that "[no] award of damages shall be recoverable for any period prior to one year before the action was instituted." 15 U.S.C. § 80a-35(b)(3). Therefore, this lawsuit having been filed on March 25, 2004, the damages period applicable to the § 36(b) claim thus begins on March 25, 2003.

The defendants also argue that the Trustee Defendants are not proper defendants because they are not alleged to be "recipients" of the allegedly excessive fees or commissions. By its terms, an action under § 36(b) may only be brought against the "recipient of [the allegedly wrongful] compensation or payments." 15 U.S.C. § 80a-35(b)(3). The plaintiffs argue that any dismissal of the Trustee Defendants at this point is premature – instead being a matter for summary judgment – and that the Trustee Defendants could possibly be held liable as "indirect" recipients of the fees. The only allegations in the complaint that could be viewed as supporting such a theory of indirect receipt are the allegations recounting the Trustee Defendants' compensation and the allegations that, in general, they failed in their fiduciary duties. This is insufficient. I agree with the reasoning of the courts that have recently addressed this issue in the context of nearly identical sets of allegations against other mutual fund trustees that the trustees are not proper § 36(b) defendants where, as here, there are no allegations that the annual compensation received by the Trustee Defendants was in exchange for "advisory services" or in some way represented advisory fees that were to be paid to

the MFS Company but instead were diverted to the Trustee Defendants. See In re Dreyfus Mut. Funds Fee Litig., Master File No. 04-0128, slip. op. at 12-14 (W.D. Pa. Sept. 28, 2004); In re Eaton Vance Mut. Funds, 380 F. Supp.2d at 238; In re AllianceBernstein, 2005 WL 2677753, at *6-7; cf. Green v. Fund Asset Mgmt., L.P., 147 F. Supp.2d 318, 329-30 (D.N.J. 2001) (dismissing § 36(b) against officers of funds because the officers were not "recipients" of compensation alleged to be wrongful under the statute where plaintiffs' only allegation of receipt was regular salary paid to the directors).

Accordingly, the § 36(b) claim that survives as Count III is limited in terms of the damages that may be recovered as described above and is only properly asserted against MFS Company and MFS Distributors.

## VI. The plaintiffs have no standing to assert the surviving § 36(b) claim as to non-owned funds.

The plaintiffs purport to assert their § 36(b) claims on behalf of a class consisting of shareholders of sixty-two funds within the MFS fund complex. However, only two of the four named plaintiffs–Eric Forsythe and Richard Koslow–owned shares in only two of the sixty-two MFS Funds–Massachusetts Investors Trust and MFS Utilities Fund–at the time this lawsuit was filed. See Compl. ¶¶ 20, 22. Thus, the defendants argue that the plaintiffs lack standing to assert any § 36(b) claim except on behalf of those two funds. I agree.

Under § 36(b), only the SEC and "security holders" in an investment company are entitled to bring a claim "on behalf of" the company. See 15 U.S.C. § 80a-35(b). "Security holders" means current security holders. Former security holders may not bring a claim on behalf of an investment company that they formerly held shares in, but no longer do. The only claims that are sufficient under § 36(b) are the claim by Eric Forsythe on behalf of the Massachusetts Investors Trust Fund and the

claim by Richard Koslow on behalf of the MFS Utilities Fund.  All other claims the complaint purports to state on behalf of the various MFS Funds, either never owned by any plaintiff or only formerly owned by a plaintiff, should be dismissed due to a lack of standing.[16]

This conclusion follows not only from the plain statutory language, but also from the unique nature of the § 36(b) cause of action.  As the Supreme Court explained in Daily Income Fund, Inc. v. Fox, 464 U.S. 523, 535 (1984), the § 36(b) cause of action is an "unusual cause of action."  In the broadest sense, it is a "derivative" cause of action because it is brought "on behalf of" an investment company to vindicate the rights of the investment company and any recovery flows to the investment company, not the shareholder plaintiff.  See id. at 535 n.11.  Nevertheless § 36(b) is not like the traditional derivative cause of action because the fund itself does not have the power to bring an action under the statute.  See id. at 535-42.  Instead, Congress explicitly gave the right to enforce violations of the statute to shareholders and to the SEC but not to the investment company itself.  See id.  The Supreme Court made clear in Daily Income Fund that the shareholder suing under § 36(b) sues on behalf of a fund, though not in substitution for the fund.  Any recovery belongs to the fund, not the shareholder.  Consistent with the statutory language, a plaintiff must hold a present interest in each fund on behalf of which he purports to bring a § 36(b) claim.

The plaintiffs cite various cases which they assert demonstrate that they have standing to sue on behalf of MFS Funds they have no ownership interest in, alleging that the MFS Funds have

---

[16] Plaintiff City of Chicago Deferred Compensation Plan claims to have formerly held shares in (1) MFS High Income Fund, (2) MFS Growth Opportunity Fund, and (3) Massachusetts Investors Growth Stock Fund.  Plaintiff Larry Eddings claims to have formerly held shares in (1) MFS Capital Opportunities Fund, (2) MFS Strategic Income Fund, (3) Massachusetts Investors Growth Stock Fund (the same as plaintiff City of Chicago), (4) Massachusetts Investors Trust (the same as plaintiff Eric Forsythe), (5) MFS Total Return Fund, (6) MFS High Income Fund, and (7) MFS Emerging Growth Fund.

engaged in a common course of wrongful conduct and thus, like the security holders, ERISA plan beneficiaries, and the like in those cases, they should be able to proceed with this case. <u>See</u> Pls.' Opp'n to Mot. to Dismiss at 23-26. Those cases are inapposite. For the most part they concern class certification issues, most of them dealing with injuries alleged to have occurred directly to groups of plaintiffs under other securities laws or under ERISA, not § 36(b). Furthermore, as this court and others have held in the mutual fund context, it is appropriate to treat each MFS Fund as a separate and distinct entity in the § 36(b) context and a plaintiff may not use the corporate structure of the broader investment company to confer standing. <u>See</u> <u>Wicks</u>, 2005 WL 705360, at *3; <u>see also</u> <u>Stegall</u>, 394 F. Supp.2d at 362-63; <u>In re Eaton Vance Corp. Sec. Litig.</u>, 219 F.R.D. 38, 40-41 (D. Mass. 2003).[17]

Standing is a threshold inquiry and is particularly important in securities litigation, where strict application of standing principles is needed to avoid vexatious litigation and abusive discovery. <u>See</u> <u>Warth v. Seldin</u>, 422 U.S. 490, 498 (1975); <u>In re Bank of Boston Corp. Sec. Litig.</u>, 762 F. Supp. 1525, 1531 (D. Mass. 1991). A plaintiff may not avoid the standing inquiry merely by styling his suit as a class action, <u>see</u> <u>In re Bank of Boston</u>, 762 F. Supp. at 1531, and courts have traditionally resolved questions of standing before reaching issues of class certification. <u>See</u> <u>In re AllianceBernstein</u>, 2005 WL 2677753, at *9; <u>In re Eaton Vance Corp. Sec. Litig.</u>, 220 F.R.D. 162, 165-69 (D. Mass. 2004).[18] As the Supreme Court has instructed, the fact "[t]hat a suit may be a class

---

[17] Since each MFS Fund should be properly treated as a separate and distinct entity, the plaintiffs' alternative argument that they have standing by reason of an ongoing financial interest in all of the MFS Funds, including those they own no shares in, is precluded.

[18] I agree with the reasoning of the court in <u>In re Eaton Vance Corp.</u>, 220 F.R.D. at 168-69 (addressing a similar issue of non-ownership of mutual funds upon whose behalf a plaintiff purported to sue) and the court in <u>In re AllianceBernstein</u>, 2005 WL 2677753, at *9 (addressing a nearly identical issue to that faced here) that this is a straightforward securities case and this case does not

action . . . adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." Lewis v. Casey, 518 U.S. 343, 357 (1996) (citations and internal quotation marks omitted). Other judges in this district have relied on this same reasoning in holding that plaintiffs have no standing to sue on behalf of mutual funds they did not own despite the fact that they owned shares in other funds in the fund complex. See Stegall, 394 F. Supp.2d, 361-63; In re Eaton Vance Corp., 219 F.R.D at 40-41; Nenni v. Morgan Stanley Dean Witter & Co., Civ. No. 98-12454-REK, 1999 U.S. Dist. LEXIS 23351, at *5-6 (D. Mass. Sept. 29, 1999).

To sum up: the plaintiffs have no standing to sue under § 36(b) "on behalf of" other funds in the MFS fund complex simply because they style their case as a class action. The cause of action that remains open to them, based on § 36(b), limits eligible plaintiffs to those who hold shares in the funds on whose behalf they purport to make a claim. Here, only two named plaintiffs meet that requirement as to two named MFS Funds. The plaintiffs may not rely on the rules-based class action procedural device as a method to "bootstrap themselves into standing they lack" merely because in theory some member of the putative class, if it were to be certified, might have a claim because they owned shares in the other MFS Funds at the time the suit was brought. See In re Eaton Vance Corp., 220 F.R.D. at 169.[19]

---

present special concerns discussed in Ortiz v. Fibreboard Corp., 527 U.S. 815, 831 (1999) that led the Supreme Court to conclude that in rare exceptions the consideration of class certification should precede the standing inquiry.

[19] The plaintiffs also argue that under the so-called "juridical links" doctrine, they have standing to pursue claims on behalf of all other shareholders of MFS Funds in which they did not own shares because the collective prosecution of the action would be the most efficient means to resolve the dispute. However, this doctrine, developed in the context of class certification analysis under

Therefore, the remaining § 36(b) claim is limited to the claims brought on behalf of the two MFS Funds in which plaintiffs Eric Forsythe and Richard Koslow have standing, Massachusetts Investors Trust and MFS Utilities Fund. To the extent Count III purports to state a claim "on behalf of" other MFS Funds under § 36(b), it is dismissed. Plaintiffs Larry R. Eddings and the City of Chicago Deferred Compensation Plan are also dismissed from the case because the complaint lacks any allegation that they had an ownership interest in any MFS Fund when the case was initiated.

## VII.    Conclusion

For the foregoing reasons, the defendants' motion to dismiss (Dk. #73) is GRANTED in part and DENIED in part. All of plaintiffs' claims except Count III, brought under § 36(b) of the ICA, are dismissed for the reasons set forth above. Plaintiffs Eddings and the City of Chicago Deferred Compensation Plan are dismissed from the case. As to Count III, the plaintiffs are only permitted to assert a claim on behalf of the two MFS Funds in which they owned shares at the time of bringing this action, Massachusetts Investors Trust and MFS Utilities Fund. The damages period for the surviving claims is limited to the period beginning on March 25, 2003. The claims against the Trustee Defendants under § 36(b) are dismissed.

It is SO ORDERED.


January 19, 2006                                        \s\ George A. O'Toole, Jr.
DATE                                                           DISTRICT JUDGE

_____

Fed. R. Civ. P. 23, should properly remain in the analysis of adequacy and typicality of plaintiffs for which it was originally conceived. In the separate and distinct inquiry into a plaintiff's standing undertaken here, the juridical links doctrine is not relevant. See In re Eaton Vance Corp., 220 F.R.D. at 169-71; see also In re Franklin Mut., 388 F. Supp.2d at 462 n.7; cf. Raines v. Byrd, 521 U.S. 811, 820 (1997) (courts must carefully inquire into whether standing exists and "put aside the natural urge to proceed to the merits of [an important dispute]" and "settle" it for the sake of convenience and efficiency).