UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ERIC FORSYTHE, et al.,<br><br>          Plaintiffs,<br>     v.<br><br>SUN LIFE FINANCIAL, INC., et al.,<br><br>          Defendants. | No. 04-10584-GAO<br><br>Consolidated Cases Nos.:<br><br>04-10764-GAO<br>04-11019-GAO |

**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO CERTIFY INTERLOCUTORY APPEAL AND/OR FOR A STAY**

*Preliminary Statement*

It would be difficult to conceive of a case more suitable for interlocutory appeal than one where two judges in the same district contemporaneously reach opposite conclusions on the legal viability of *nearly identical complaints* based on the *same exact legal theories*, and where one of the orders *already* is before the Court of Appeals. An interlocutory appeal in these uncommon circumstances is appropriate not only because the three-part test for certification is easily met, but also because it offers to the Court of Appeals the option and efficiency of hearing two mirror-image cases before a single panel.

Plaintiffs' Opposition is premised on the remarkable assertion that "[t]here are many possible outcomes of the Columbia appeal, *and none would affect this case*." (Opp. at 3) (emphasis added). This say-so ignores the facts that make it almost a certainty that the First Circuit's Columbia decision *will* affect this case and that demonstrate why the First Circuit should be given the option to address these cases together.

1

Specifically, the <u>Columbia</u> appeal asks the First Circuit to address the legal viability of a complaint filed by the same plaintiffs' counsel containing nearly identical (often verbatim) allegations, and the exact same legal claims. (<u>See</u> Mem. at 1-2.)[1] Plaintiffs in <u>Columbia</u> and <u>Forsythe</u> both explained that these common allegations supported their "something for nothing" theory, but nowhere in either complaint did plaintiffs use that phrase. Thus, plaintiffs' assertion in their Opposition that "nowhere in their Complaint did the <u>Columbia</u> plaintiffs use th[e] phrase . . . 'something for nothing'" is no more than a distraction. (Opp. at 8.) In both cases, that phrase appeared for the first time in plaintiffs' indistinguishable briefing and oral arguments, which advanced the same theories to support their identical claims, again sometimes verbatim.

This is significant, of course, because the arguments that the <u>Columbia</u> plaintiffs made to Judge Keeton – and therefore preserved for appeal – are the exact same arguments plaintiffs made in this case. Unless plaintiffs in <u>Columbia</u> (which, again, have the same counsel as those in this case) have silently abandoned their "something for nothing" theory and/or any of the other identical theories they advanced in both cases, the <u>Columbia</u> appeal will put before the First Circuit every single legal basis upon which this Court's January 19 Order was decided.

Plaintiffs' suggestion that none of the "possible outcomes" of the <u>Columbia</u> appeal "would affect this case" also ignores that the defendants in this case *made* the same argument that Judge Keeton accepted in <u>Columbia</u> (when dismissing the Section 36(b) claim) and that this Court rejected (when sustaining the same claim) – the argument that a Section 36(b) claim

---

[1] "Mem." refers to Defendants' Memorandum in Support of Motion to Certify Interlocutory Appeal and/or for a Stay (docket no. 106).

cannot be sustained based on alleged payments made *by* defendants rather than *to* defendants.[2] Plaintiffs cannot deny that Judge Keeton's legal ruling was dispositive of the Section 36(b) claim in Columbia and was inconsistent with this Court's decision to sustain the identical Section 36(b) claim. Thus, if the Court of Appeals affirms Columbia, then the Section 36(b) claim in this case must be dismissed. Plaintiffs' only response to this is their conclusion that Judge Keeton's legal ruling was "erroneous." (Opp. at 8.)

Regardless whether this Court grants Defendants' motion for certification of an interlocutory appeal, it should grant a stay of the case pending the First Circuit's ruling. There is a reasonable likelihood that the First Circuit's ruling in Columbia (or in this case, if this Court certifies its Order) will terminate this litigation entirely or so significantly alter its contours that proceeding with discovery during the pendency of the appeal could expose defendants to substantial needless expense and potentially cause the parties to have to revisit discovery in light of a case substantially redefined by the First Circuit's ruling (e.g., through the recognition by the First Circuit of a disclosure-based claim).

*Argument*

## I. THE COLUMBIA AND FORSYTHE CASES ARE NEARLY IDENTICAL.

Plaintiffs' Opposition rests in large part on the false premise that Columbia is so "sharply distinct" from Forsythe that even a First Circuit decision affirming dismissal of Columbia would either have "no effect" and/or a "speculative" effect on this case. (Opp. at 3.) This assertion

---

[2] Compare In re Columbia Entities Litig., No. 04-11704-REK, 2005 U.S. Dist. LEXIS 33439, at *32 (Nov. 30, 2005) (dismissing § 36(b) claim because the alleged directed brokerage, revenue-sharing and shelf space practices involved so-called "kickbacks" *paid* by defendants, but did not involve fees *received* by defendants, as § 36(b) requires) with Defs.' Supp. Br. (docket no. 95) at 5 (arguing that § 36(b) claim against defendants must be dismissed because plaintiffs "do not claim that directed brokerage even involves the payment of any *fees* to MFS or its affiliates") and Defs.' Reply Br. (docket no. 83) at 12 & n.12 (arguing that plaintiffs could not state a § 36(b) claim based on excessive commissions because plaintiffs alleged defendants *paid* (but did not *receive*) such commissions). An affirmance of Columbia would thus decidedly "affect" this Court's legal ruling that it states a § 36(b) claim to allege that MFS "paid" kickbacks, "paid" excessive commissions, and "made" improper revenue sharing payments. (See Order at 22.)

3

ignores, however, that in both cases the complaints, legal arguments, and issues within the scope of appellate review are either identical or very close to it.

*First*, the dismissed complaint that is now on appeal in Columbia asserts identical claims (based on virtually identical allegations) to that sustained in part by this Court. (See Mem. at 1-2.)

*Second*, the legal arguments made for and in opposition to the motions to dismiss both Columbia and Forsythe were essentially the same.  In both cases, defendants argued that "something for nothing" was not a viable theory under Section 36(b) and, as an alternative and independent basis for dismissal, that Section 36(b)'s language – referring to "the *receipt* of compensation," 15 U.S.C. § 80a-35(b) – foreclosed claims against defendants who allegedly *paid* fees.  See supra n.2.  Plaintiffs opposed the motions to dismiss in both cases with essentially the same arguments, based on the same case citations.  The principal difference is that Columbia was dismissed (because Judge Keeton accepted one of the legal arguments and therefore did not reach the other) and that part of the Section 36(b) claim in Forsythe was sustained (because this Court accepted neither of the legal arguments).

*Third*, there is every reason to believe that most (if not all) of the essentially identical legal arguments briefed and argued in both Columbia and Forsythe will be put before the First Circuit in Columbia.  Plaintiffs will be entitled to argue that Judge Keeton's dismissal was as a matter of law "erroneous" and again argue that "something for nothing" is a viable theory under Section 36(b).  Defendants will be entitled to argue all the reasons why Judge Keeton was correct (including that the "something for nothing" theory is legally infirm).  The First Circuit, of course, may rule on any legal ground supported by the record, see DiRico v. City of Quincy, 404 F.3d 464, 470 n.17 (1st Cir. 2005).

4

Simply put, there is nothing "theoretical" or "speculative" or "manufactured" about the inconsistency of the Columbia and Forsythe decisions on plainly dispositive (and therefore "controlling") legal questions about the interpretation of Section 36(b). Nor would it raise "prudential concerns about mootness, ripeness, and lengthy appellate proceedings" to give the First Circuit the opportunity (and plainly not the obligation) to consider the cases together, if it so wishes.

II. **DEFENDANTS' MOTION TO CERTIFY AN INTERLOCUTORY APPEAL SHOULD BE GRANTED BECAUSE EACH OF THE THREE CERTIFICATION FACTORS IS EASILY SATISFIED IN THIS ATYPICAL CASE.**

Under the statute pursuant to which defendants have moved for certification of an interlocutory appeal, a district court is authorized to certify an order for appeal when three criteria are met: (*i*) the order "involves a controlling question of law"; (*ii*) "as to which there is a substantial ground for difference of opinion"; and (*iii*) where an immediate appeal would "materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b); Philip Morris Inc. v. Harshbarger, 957 F. Supp. 327, 330 (D. Mass. 1997). The statute allows the appeal of any court order, if the test is met, and the fact that most orders denying motions to dismiss are not "normally" appropriate for an interlocutory appeal does not mean that the uncommon circumstances of this case do not warrant such an appeal.[3] Indeed, the Order here easily satisfies each of the three criteria.

A. **The Court's January 19 Order Contains a "Controlling Question of Law."**

"A question of law is 'controlling' if reversal of the district court's order would terminate the action." Philip Morris Inc., 957 F. Supp. at 330 (citation omitted). Plaintiffs claim that this

---

[3] In fact, in the two weeks since plaintiffs' Opposition was filed, at least one court has certified an interlocutory appeal of an order denying a motion to dismiss. See, e.g., In re Adelphia Communications Sec. & Deriv. Litig., No. 03-1529, 2006 WL 708303 (S.D.N.Y. Mar. 20, 2006) (certifying order denying motion to dismiss involving question of standing where, as here, there was no Court of Appeals precedent addressing the precise issue presented).

5

element has not been met in this case because (*i*) defendants assertedly did not pose a question and (*ii*) the question that defendants assertedly did not pose is not a "pure question of law." (Opp. at 5-7.)  Both of these assertions are wrong.

### 1. The Statute Authorizes the Appeal of Orders, Not Questions.

Plaintiffs contend that defendants "have not satisfied the requirement . . . that they present . . . a 'controlling question' of law" because defendants assertedly failed to state any question.  (See Opp. at 5-6.)  Plaintiffs appear to take issue with the fact that defendants did not place a question mark at the end of their statement of the controlling question of law presented by this Court's Order.  This supposed deficiency is not "fatal" to defendants' motion.  (See id. at 1.)

The law is clear that appellate jurisdiction would be over this Court's Order, not the "something for nothing" question (or any other question), however formulated by this Court or the parties.  See 28 U.S.C. § 1292(b); Yamaha Motor Corp. v. Calhoun, 516 U.S. 199, 205 (1996) ("'[T]he appellate court may address any issue fairly included within the certified order because 'it is the *order* that is appealable, and not the controlling question identified by the district court.'") (citation omitted).  That is, although the Court must conclude that its Order involves a "controlling question" within the meaning of Section 1292(b), an interlocutory appeal (just like any appeal) would be of the *Order*.  Panache Broad. of Pennsylvania v. Richardson Elec., No. 90 C 6400, 1999 WL 1024560, at *6 & n.9 (N.D. Ill. Oct. 29, 1999) (certifying order for appeal without addressing the defendants' proposed questions because "Section 1292(b)

6

directs us to certify *an 'order' and not a 'controlling question,'* even though in deciding whether to do so we must analyze whether there are any controlling legal questions") (emphasis added).[4]

In any event, there is not any confusion among the parties about the disputed legal question that defendants submit warrants an immediate appeal of this Court's Order. Defendants identified it in their supplemental filing, see Supp. at 2-3, and plaintiffs themselves describe it, see Opp. at 2 (describing the question as whether the theory "that a defendant charged investors excessive mutual fund fees in return for no additional services, and therefore paid investors 'something for nothing,' states a claim under Section 36(b)").

### 2.     This Court's Order Presents Legal Questions.

Plaintiffs are also incorrect that defendants have not identified a *legal* question. This Court's January 19 Order sustained a portion of plaintiffs' Section 36(b) claim by rejecting defendants' *legal* argument that a Section 36(b) claim cannot be stated based on a "something for nothing" theory unsupported by allegations demonstrating "that the services rendered by the defendants were disproportionate to the fees charged." (Order at 23.) In rejecting defendants' legal argument, the Court held that, despite the Complaint's lack of any "allegations regarding the quality of services rendered," plaintiffs' "*theory*" of "something for nothing" was a viable legal theory upon which to base a Section 36(b) claim. (Id.) (holding that "plaintiffs' theory . . . that 'fees that amount to 'something for nothing' are inherently excessive" satisfies the proportionality prong of the Section 36(b) legal test).

Simply put, the question whether, as a matter of law, the "something for nothing" theory states a claim under Section 36(b) when it is unsupported by "allegations regarding the quality of

---

[4]     That Section 1292(b) authorizes the appeal of an *order*, and not a question, distinguishes it from state court rules allowing the certification of a *question* to a state's highest court. Compare 28 U.S.C. § 1292(b) (district court may request "immediate appeal *from the order*") (emphasis added) with Mass. Supreme Judicial Court Rule 1:03 ("This court may answer questions of law certified to it by . . . a United States District Court. . . .").

services rendered" states a legal question as to the interpretation of a statute. See, e.g., In re Eaton Vance Mutual Funds Fee Litig., 403 F. Supp. 2d 310, 315 (S.D.N.Y. 2005) ("something for nothing" theory is an "interpretation [that] stretches the reach of § 36(b) too far"). The interpretation of a statute presents a question of law. See In re Hart, 328 F.3d 45, 47 (1st Cir. 2003).

Moreover, the viability of the "something for nothing" theory is not the only controlling legal question presented by this Court's Order. Contrary to plaintiffs' claim that Columbia and Forsythe turned on completely separate legal issues, defendants in this case *made* the legal argument upon which Judge Keeton dismissed the Section 36(b) claim in Columbia (i.e., that a Section 36(b) claim cannot be sustained based on alleged payments made *by* defendants rather than *to* defendants). See supra at n.2. When defendants made that legal argument in this case, this Court rejected it and sustained plaintiffs' Section 36(b) claim based on alleged payment of kickbacks, excessive commissions, and hard-dollar revenue sharing payments to *brokers* out of fund assets. (See Order at 22.) Judge Keeton, by contrast, accepted that argument and dismissed the same claim as a matter of law. See Columbia, 2005 U.S. Dist. LEXIS 33439, at *32 ("Plaintiffs here, however, do not allege that defendants themselves received compensation of any sort, as required by *Section 36(b)*. Instead, they allege that defendants *paid* kick-backs and other incentives out of the Columbia Funds assets. . . . [which is] not a breach of the fiduciary duty protected by *Section 36(b)*.").

Thus, this Court's January 19 Order contains the additional legal question whether Section 36(b) – which speaks to a breach of fiduciary duty "with respect to the *receipt* of compensation," 15 U.S.C. § 80a-35(b) – allows recovery based on allegations that defendants *made*, but did not *receive*, payments out of fund assets.

### 3. The Questions of Law Presented Are "Controlling."

The "something for nothing" question that defendants have identified is plainly controlling, because reversal of this Court's ruling on the viability of that theory would almost certainly "terminate the action" by negating the basis upon which plaintiffs' remaining Section 36(b) claim was sustained. See Philip Morris Inc., 957 F. Supp. at 330. Likewise, the question whether alleged payments to *brokers* may sustain a Section 36(b) claim against non-recipients of such payments is also a plainly controlling question – if Columbia was correct, and the answer to that question is no, then the Section 36(b) claims in this case should be dismissed. A reversal of this Court's Order on either of those legal theories would thus dispose of the only remaining claim in this case.

Plaintiffs cannot escape the controlling nature of the legal questions at issue by claiming that there is a unique "economies of scale" issue in Forsythe. (See Opp. at 2 ("even a holding in the defendants' favor in Columbia would not end this case . . . because of this Court's ruling upholding plaintiffs' economies of scale allegations").) This claim simply ignores that the Forsythe economies of scale allegations appear wholesale in the Columbia complaint that is now before the First Circuit. Compare Columbia Compl. ¶ 129 ("On the contrary, as the funds were marketed and the number of Fund investors increased, the economies of scale thereby created, if any, were not passed on to Columbia Fund investors.") with Forsythe Compl. ¶ 102 ("On the contrary, as the Funds were marketed and the number of Fund investors increased, the economies

of scale, if any, were not passed on to the MFS Fund investors.").[5]  Thus, the different outcomes in Columbia and Forsythe cannot be explained away as the product of unique issues from "the specific facts of each case," Opp. at 1, especially where the verbatim economies of scale allegations are in the Columbia complaint already before the First Circuit.

Plaintiffs likewise cannot deny the controlling nature of the legal questions presented by claiming that this Court's January 19 Order turned on a "weighing of facts" and the "sufficiency of the evidence." (See Opp. at 7.)  This is both incorrect and no basis for denying defendants' motion.  This Court neither weighed facts nor passed upon the sufficiency of any evidence in deciding defendants' motion to dismiss.  It instead accepted the allegations of the Complaint as true, and sustained a Section 36(b) claim based on a legal theory that Judge Keeton and other district judges have rejected – "plaintiffs' theory" of "something for nothing."  (See Order at 23 (holding that "plaintiffs' theory" that "fees that amount to 'something for nothing' are inherently excessive" satisfied the proportionality prong of the Section 36(b) legal test).)  In doing so, the Court rejected defendants' legal argument that plaintiffs' *legal theory* cannot not satisfy the proportionality prong of Section 36(b).[6]  (Id.)

---

[5]  Compare also Columbia Compl. ¶ 128 ("During the class period, the Board of Trustees authorized, and the Investment Adviser defendants collected, millions of dollars in purported 12b-1 market and distribution fees.  These excessive fees were paid to the Columbia distributor as well as the brokers for pushing Columbia Funds") with Forsythe Compl. ¶ 101 ("During the class period, the Board of Trustees authorized, and the Investment Adviser defendants collected, millions of dollars in purported 12b-1 market and distribution fees.  These excessive fees were paid to the MFS distributor as well as the brokers for pushing MFS Funds"); compare Columbia Compl. ¶ 130 ("Moreover, Defendants failed to reduce 12b-1 fees as the assets of the Funds increased. . . .  To account for the decline in costs, fees to the Funds and its investors should be reduced.  Despite this fact, Defendants failed to reduce 12b-1 fees that should not have increased as the size of the Fund assets increased.") with Forsythe Compl. ¶ 103 (verbatim allegation); compare Columbia Compl. ¶ 112 with Forsythe Compl. ¶ 95.

[6]  To the extent the Court also rejected defendants' other legal argument that a Section 36(b) claim cannot be sustained on a theory of improper *payments* (e.g., excessive commission payments, "hard dollar" revenue-sharing payments, etc.), that also was a ruling of law that did not require the Court to weigh facts or determine the sufficiency of any evidence.  Plaintiffs' suggestion that Columbia's inconsistent ruling in this regard was "based on different facts pled" ignores that the key allegations relied upon by this Court and Judge Keeton appear in both the Columbia and Forsythe complaint, often verbatim.

### B. The Columbia and Forsythe Orders Reflect an Actual "Difference of Opinion."

Plaintiffs' assertion that there is no substantial ground for difference of opinion on the viability of their "something for nothing" theory ignores the *actual* disagreement among the courts that have addressed it. (See Mem. at 5-6 (citing five decisions from other courts dismissing nearly identical complaints advanced on same theory)). Unable to escape that their "something for nothing" theory has failed in many courts, see id., plaintiffs simply deny that any court has "rejected the 'something for nothing' theory as a matter of law," (Opp. at 9) – even though Eaton Vance held that the "something for nothing" theory is an "interpretation [that] stretches the reach of § 36(b) too far." In re Eaton Vance, 403 F. Supp. 2d at 315. Plaintiffs refuse to acknowledge that this is plainly inconsistent with the legal ruling in this case, imagining that Judge Koeltl's ruling in Eaton Vance on plaintiffs' "interpretation . . . of § 36(b)" was no more than an application of law to facts. (See Opp. at 9.) But as this Court noted, "something for nothing" is "plaintiffs' *theory*," (Order at 23 (emphasis added)), not a case-specific application of law to facts.[7] And it is a legal theory that plaintiffs' counsel have made in virtually every court in which they have filed their template complaint, and their mixed success – in this district and elsewhere – demonstrates a difference of opinion.

Plaintiffs also make the superficial argument that Columbia supplies no substantial ground for difference of opinion on the viability of their theory because "Judge Keeton did not use the phrase 'something for nothing,' and nowhere in their Complaint did the Columbia plaintiffs use this phrase." See Opp. at 8. That ignores that neither of the complaints in Columbia or Forsythe uses the term "something for nothing," but in both cases plaintiffs asserted

---

[7] Plaintiffs do not help their argument that courts have issued highly fact-specific rulings on similar complaints by acknowledging that Judge Cedarbaum found the Davis complaint to be so identical to the Eaton Vance complaint that she "simply adopted wholesale" portions of the Eaton Vance opinion that held, as a matter of law, that plaintiffs' theory cannot state a claim under Section 36(b). Opp. at 10; Eaton Vance, 403F. Supp. 2d 310; In re Davis Selected Mutual Funds Litig., 2005 U.S. Dist. LEXIS 23203 (S.D.N.Y. Oct. 11, 2005).

11

that legal theory in opposition to defendants' motions to dismiss.  Judge Keeton, of course, did not sustain plaintiffs' claims based on that or any theory, but unless the Columbia plaintiffs have abandoned the "something for nothing" theory they made to the district court, they will urge the Court of Appeals to have a "difference of opinion" with the courts that have rejected it.

In addition, plaintiffs do not dispute that the viability of the "something for nothing" theory is "not settled by controlling authority."  Just as in Philip Morris, it "would be going too far to say that there is no substantial ground for any difference of opinion on such a case of first impression."  957 F. Supp. at 330; McGillicuddy v. Clements, 746 F.2d 76, 77 n.1 (1st Cir. 1984) (interlocutory appeal appropriate where "intermediate appeal presents one or more difficult and pivotal questions of law not settled by controlling authority").

Finally, plaintiffs cannot deny that the Columbia order and this Court's January 19 Order supply an additional *actual* difference of opinion as to the controlling legal question whether a Section 36(b) claim can be based upon payments allegedly made, but not *received*, by defendants.  See supra at 8.

**C.     An Interlocutory Appeal Would Materially Advance This Litigation.**

For the same reasons that this Court's order contains at least one controlling question of law, see supra at Part II.A.3, an interlocutory appeal would materially advance the termination of this litigation.  See Philip Morris Inc., 957 F. Supp. at 330 ("[T]he requirement that an appeal may materially advance the ultimate termination of the litigation is closely tied to the requirement that the order involve a controlling question of law").  Specifically, reversal of this Court's rulings on either of the controlling questions would terminate this litigation.  See supra at Part II.A.3.  Moreover, certification of an interlocutory appeal would give the Court of Appeals the option to hear an appeal from this Court's Order contemporaneously with the appeal of the

identical Columbia case by the same plaintiffs' counsel, and the Court of Appeals could address "any issue fairly included within the certified order," Yamaha Motor Corp., 516 U.S. at 205. The Court of Appeals could thus address *every* legal issue presented by the January 19 Order, whether or not identified by this Court as a "controlling question of law," thereby advancing the termination of this litigation.

Defendants believe that certifying an appeal is therefore a superior and more efficient means of proceeding, especially when plaintiffs have essentially promised an additional round of briefing on the *effect* of any ruling in Columbia, having taken the extreme position that *no* outcome of Columbia would affect this case and having suggested that defendants must file briefs once Columbia is handed down, in which they assertedly must prove that Columbia "in fact has any bearing on this action." (Opp. at 3.)

## II. THIS COURT SHOULD STAY FURTHER PROCEEDINGS PENDING THE OUTCOME OF THE COLUMBIA APPEAL.

This Court should in any event stay discovery in this case pending the outcome of the First Circuit's ruling in Columbia (and/or this case). Plaintiffs oversell Columbia as an "entirely separate case," and they offer that they cannot speculate which issues "the parties in Columbia could raise." (Opp. at 16.) This is implausible both because the Columbia and Forsythe complaints are almost identical, and because plaintiffs' counsel *themselves* should know what issues they "could raise" on appeal, because they are the ones appealing the Columbia ruling (and also the Eaton Vance and Davis rulings before the Second Circuit). Moreover, it is no mystery what legal issues may come up in Columbia: plaintiffs' counsel used variations of the same brief in Columbia and Forsythe (sometimes verbatim), and defendants in both cases moved to dismiss on the same grounds, citing the same cases. See supra.

13

If the First Circuit's <u>Columbia</u> ruling requires the dismissal of the only remaining claim in <u>Forsythe</u>, discovery will have been a substantial waste of the parties' resources.  Likewise, if the First Circuit's ruling substantially alters the scope of the case, there will have been no efficiency in commencing discovery, only to have to double back and reinitiate discovery on a case with a newly defined scope.  With an appeal of a mirror-image case by the same plaintiffs' counsel already in progress, a stay of discovery is sensible and minimizes the undue burden on defendants engaging in needless discovery or having to engage in the same discovery twice in light of a redefined case.

Dated:  March 28, 2006

                                                      Respectfully Submitted,

                                                      Massachusetts Financial Services Co., and MFS Fund Distributors, Inc.,

                                                      By their attorneys,

                                                      /s/ Jonathan A. Shapiro
                                                      Jeffrey B. Rudman (BBO #433380)
                                                      William H. Paine (BBO #550506)
                                                      Jonathan A. Shapiro (BBO #567838)
                                                      Amanda P. Masselam (BBO #641108)
                                                      Matthew A. Stowe (BBO #650473)
                                                      WILMER CUTLER PICKERING
                                                         HALE AND DORR LLP
                                                      60 State Street
                                                      Boston, MA  02109
                                                      (617) 526-6000

**CERTIFICATE OF SERVICE**

  I, Matthew A. Stowe, hereby certify that on March 28, 2006, I caused a copy of the foregoing document to be served either electronically or by overnight mail upon counsel for plaintiffs.

               /s/  Matthew A. Stowe (JAS by permission)
               Matthew A. Stowe

Dated:  March 28, 2006