## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ERIC FORSYTHE, et al., | No. 04-10584-GAO |
| Plaintiffs, | Consolidated Cases Nos.: |
| v. | 04-10764-GAO |
| SUN LIFE FINANCIAL, INC., et al., | 04-11019-GAO |
| Defendants. | **ORAL ARGUMENT REQUESTED** |

## DEFENDANTS' OPPOSITION TO
## PROPOSED INTERVENORS' MOTION TO INTERVENE

Jeffrey B. Rudman (BBO #433380)
William H. Paine (BBO #550506)
Michael Bongiorno (BBO#558748)
Jonathan A. Shapiro (BBO#567838)
Matthew A. Stowe (BBO #650473)
WilmerHale
60 State Street
Boston, MA  02109
(617) 526-6000

May 26, 2006

### *Introduction*

The pending action involves claims under Section 36(b) of the Investment Company Act ("ICA") on behalf of two MFS mutual funds (the "Two Funds"). Section 36(b) by its terms does not permit an award of damages for allegedly excessive fees for the period more than "one year before the action was instituted." 15 U.S.C. § 80a-35(b). The proposed intervenors ("Movants") are shareholders who sue on behalf of 16 other MFS mutual funds. Movants apparently concede, "given the language of the statute," that if they filed their claims today they could not recover damages for a period extending back more than one year. (See Mem. at 12.)[1] Not content with the remedy afforded to them by the statute, Movants seek to use a *procedural* rule (Fed. R. Civ. P. 24) to circumvent Section 36(b)'s *substantive* limitation on the damages that may be awarded.

Movants do not, however, forthrightly reveal their objectives. Despite challenging compensation paid with respect to 16 new funds, Movants state that they "do not seek to add any new or different claims" to the case. (See Mem. at 7.) They assert that their motion seeks only "ministerial" action that should not be controversial, and claim that any number of procedural rules (including Rules 24 and 15) permit them to intervene and to relate *their* claims back to the date that *Plaintiffs* filed their Complaint. In fact, no rule of procedure (including Rules 24 and 15) can permit backdating so as to override the substantive damages limitation provided by Section 36(b).

Movants – who shied away from filing a Rule 15 motion despite touting a Rule 15 decision of this Court – apparently know that there is persuasive authority supporting the conclusion that Rule 15 cannot be used to trump the substantive Section 36(b) damages limitation. Movants' failure to acknowledge or distinguish these cases, or their logic, and their

---

[1] "Mem." refers to Memorandum of Law in Support of Proposed Intervenors' Motion to Intervene (Docket no. 116).

decision to file a motion with no case support under a different rule of procedure, speak volumes about their assessment of the strength of their position.

In short, the Rules Enabling Act, which prevents the Federal Rules of Civil Procedure from altering substantive rights under federal statutes, does not permit Rule 24—or any other procedural rule—to override the language of Section 36(b).  In any event, Movants have not met the requirements of Rule 24.  They may not intervene by right, and they should not be permitted to intervene.  In addition, they refuse to comply with Rule 24's strict requirement that they submit, along with their motion, the pleading that Movants seek leave to file.  Movants also have not met the requirements of Rule 15 or the other unspecified Rules they invite the Court to apply to achieve their impermissible objective.  (See Mem. at 20 n.9.)  For all of these reasons, their motion should be denied.

### Background

On March 25, 2004, plaintiff Forsythe filed the initial complaint in this action, which purported to assert both class action and derivative claims under federal and state law.  The Section 36(b) claim in that complaint—the only remaining claim in this case—was *not* brought as a class claim.  Plaintiffs brought it "derivatively on behalf of the MFS Funds."[2]  (See Compl. Count II.)  Plaintiffs Eddings and Koslow subsequently filed identical complaints.

On June 23, 2004, the Dumond action, which also asserted a derivative Section 36(b) claim on behalf of certain MFS funds, was transferred to this Court.  Plaintiffs in Forsythe and Eddings moved to consolidate all four actions.  In opposing that motion, the Dumond plaintiffs contrasted the *class* claims (now all dismissed) that had been asserted in Forsythe and Eddings

---

[2]      Specifically, Count II was asserted "against MFS Company pursuant to Section 36(b) of the Investment Company Act derivatively on behalf of the MFS Funds."  See Compl. Count II; see also Compl. ¶ 69 (claim brought "by the Class . . . on behalf of the Funds").  By contrast, Plaintiffs' putative class claims were pleaded as claims "on behalf of the class."  Compare id. Count I, V, VI, and VII (putative class claims) with id. Counts II, III, and IV (claims pleaded "derivatively on behalf of the funds").

with the "*derivative* claims against MFS under Section 36(b) of the ICA" asserted in those same complaints.  (See Forsythe Docket No. 36, at 7; see also id. at 14.)  The Dumond plaintiffs also noted that the Forsythe, Eddings, and Koslow plaintiffs, who owned few of the MFS funds, lacked standing to assert a Section 36(b) action on behalf of the many MFS funds they did not own.[3]  (See Docket No. 45, at 11) ("Forsythe plaintiffs do not cite a single case which has held that a shareholder of one mutual fund has standing to sue under Section 36(b) on behalf of the fund complex.").  The Dumond plaintiffs concluded that the Forsythe plaintiffs' attempt to assert a Section 36(b) claim derivatively on behalf of "112 MFS Funds" without attempting to meet basic standing requirements was an "apparent effort to sue first and find clients later." (See Forsythe Docket No. 36, at 15.)  This prediction has now come to pass.

This Court granted the motion to consolidate the Forsythe, Eddings, and Koslow complaints into a single Forsythe action, but denied the motion to consolidate those cases with Dumond.  (Docket No. 52, at 5.)  Plaintiffs filed a Consolidated Amended Complaint ("CAC") on March 3, 2005.  The CAC attempted to recharacterize the Section 36(b) claim as a *class* claim "brought by Plaintiffs (as MFS Funds securities holders), on behalf of *themselves* and other members of the Class."  (CAC ¶ 158 (emphasis added).)

The Court granted in part and denied in part Defendants' motion to dismiss the CAC, dismissing all claims with the exception of the Section 36(b) claim.  (See Order.[4])  The Court's opinion states that Section 36(b) created a "'derivative' cause of action . . . brought 'on behalf of' an investment company," and that Plaintiffs lacked standing to bring claims on behalf of any MFS funds except the Two Funds that they claimed to have owned.  (See id. at 26.)   Counsel for

---

[3]      They also noted that the Forsythe plaintiffs' reliance on the class-action "juridical links" doctrine did not create standing and in any event was inapplicable to the Section 36(b) claim, which was brought derivatively.  (See Forsythe Docket No. 45, at 11.)

[4]      "Order" refers to this Court's Order dated January 19, 2006 (Docket No. 101), granting in part and denying in part Defendants' motion to dismiss the CAC.

the Forsythe plaintiffs later revealed to the Court that they intended to file a motion to "add

additional clients, additional plaintiffs . . . so we can potentially cover more funds."  (Docket No.

110, at 11.)  Plaintiffs said that they did not view themselves as limited to a motion to amend,

stating that "there's probably five or six rules [of civil procedure] that could potentially apply

here" to add plaintiffs.  (Id. ("We think it's appropriate at this point to use the federal rules.").)

On May 3, 2006, counsel for the Forsythe plaintiffs filed a Rule 24 motion to intervene on behalf

of individuals who, according to counsel, own 16 funds not currently at issue in the pending

Forsythe action.

*Argument*

**I.    NO PROCEDURAL DEVICE PERMITS THE MOVANTS TO TREAT A CLAIM THAT THEY HAVE YET TO FILE AS IF IT WERE FILED ON THE DATE OF THE PENDING COMPLAINT.**

The Movants' motion should be denied because it would contravene the Rules Enabling

Act to allow Plaintiffs' *procedural* motion to circumvent the *substantive* damages limitation set

forth in Section 36(b)(3) of the ICA.[5]

**A.    The Rules Enabling Act Prohibits the Use of Any Procedural Rule To Abrogate the Substantive Limitations of Section 36(b).**

1.    The Rules Enabling Act.

The Rules Enabling Act ("REA") authorizes the Supreme Court to prescribe "rules of

practice and procedure," but states that "[s]uch rules shall not abridge, enlarge, or modify any

substantive right."  28 U.S.C. § 2072.  The REA operates to preclude the application of a

procedural rule not only where applying the rule would abridge or modify an explicit substantive

right, but also where it would "frustrate[] the express intention of Congress."  N.C. Shellfish

Growers Ass'n v. Holly Ridge Assocs., LLC, 278 F. Supp. 2d 654, 666-68 (E.D.N.C. 2003); see

---

[5]    15 U.S.C. § 80a-35(b).

In re Hotel Tel. Charges, 500 F.2d 86, 90 (9th Cir. 1974) (applying Rule 23 to modify statutory damages provision was an "'enlargement or modification of substantive statutory rights by procedural devices'" in contravention of the REA); Allapattah Servs., Inc. v. Exxon Corp., 157 F. Supp. 2d 1291, 1306-07 (S.D. Fla. 2001) (applying Rule 23 to circumvent statutory damages limitation would "be contrary to the Rules Enabling Act").

Consistent with the REA, this Court previously held that Plaintiffs could not use a procedural rule (Rule 23) to circumvent the substantive statutory limitation that Section 36(b) places on who may sue, or otherwise to confer standing. (See Order at 25-28 (holding that Plaintiffs—who owned only the Two Funds—had no standing to bring claims with respect to the 60 MFS Funds they did not own).) That is, the Court held that the right to sue—a substantive right—could not be modified or enlarged by use of a procedural rule. (See Order at 28 ("The plaintiffs may not rely on the rules-based class action procedural device as a method to 'bootstrap themselves into standing they lack' merely because in theory some member of the putative class, if it were to be certified, might have a claim because they owned shares in the other MFS Funds at the time suit was brought.").)

> 2.    The One-Year Damages Limitation Set Forth in Section 36(b) Is a Statutorily Defined Substantive Right That Cannot Be Circumvented by Procedural Rules.

Section 36(b) of the Investment Company Act both creates a cause of action and limits it. See 15 U.S.C. § 80a-35(b). It limits who may sue ("a security holder of such registered investment company"), who may be sued (the "the recipient of such compensation"), and for what ("breach of fiduciary duty in respect of" compensation). Id. It also limits the type and scope of damages available:

> No award of damages shall be recoverable for any period prior to
> one year before the action was instituted. Any award of damages .
> . . shall be limited to the actual damages resulting from the breach
> of fiduciary duty and shall in no event exceed the amount of
> compensation or payment received from such investment
> company. . . .

15 U.S.C. § 80a-35(b) (emphasis added).

The portion of Section 36(b) that prohibits damages awards "for any period prior to one year before the action was filed" is "a substantive limitation on damages rather than a procedural limitation of time within which an action may be brought." Krinsk v. Fund Asset Mgmt., Inc., No. 85 Civ. 8428, 1986 WL 205, at *4 (S.D.N.Y. May 9, 1986); see Brever v. Federated Equity Mgmt., 233 F.R.D. 429, 435 (W.D. Pa. 2005) (referring to the "substantive damages limitation" under Section 36(b)). Movants tacitly acknowledge that the substantive provisions of Section 36(b)(3) prevent an award of damages in any lawsuit that they would now file as to any period more than a year ago. (Mem. at 12) ("given the language of the statute," absent intervention they may "lose the . . . same damages period at issue in the CAC"). They nevertheless assert that this Court should apply a procedural rule to achieve a different substantive result. In doing so, Movants ignore Congress's intention strictly to *limit* recoverable damages, and instead assert incorrectly that Rule 24 must be applied to *prevent* the limitation from having its intended effect.

Movants supply *no* legal support for the proposition that a procedural rule (an inapplicable rule, at that) can be used to overrule substantive rights. They do not address Krinsk or Brever, which are directly on point. Instead, they characterize what they are asking this Court to do as "ministerial," and ignore the requirement that they append a complaint in intervention to their Rule 24 motion. Such a pleading would, of course, highlight that this is a new lawsuit about 16 MFS funds that *are not at issue* in the pending action into which they seek to intervene, and would bear a date well after the damage period they seek to obtain.

6

In <u>Brever</u>, 233 F.R.D. at 435, the court rejected an analogous effort by plaintiffs to use a procedural rule (Rule 15) to sidestep the substantive damages limitation set forth in Section 36(b)(3).  There, as here, the sole purpose of the procedural motion was to allow the plaintiffs' amended lawsuit to achieve, contrary to the statute, an effective damages look-back period of greater than one year.  The court held that granting that motion would "run afoul of the Rules Enabling Act" by allowing the use of a procedural rule to circumvent "the substantive limitations on damages explicitly set forth in Section 36(b)."  <u>Id.</u> at 435.  The court also noted that, even if Rule 15 could be applied, plaintiffs would have failed the Rule 15 "relation back" test.[6]

<u>Brever</u> is consistent with a line of cases relying on the REA to reject attempts to use procedural rules to obtain damages that otherwise would be unavailable.  <u>See, e.g.</u>, <u>In re Hotel Tel. Charges</u>, 500 F.2d at 90 (rejecting use of Rule 23 to modify scope of damages recoverable under antitrust statutes); <u>Allapattah</u>, 157 F. Supp. 2d at 1306 (rejecting application of procedural rule that would have modified scope of potential damages and thereby would have violated defendant's "substantive rights under the Uniform Commercial Code").  <u>Compare</u> <u>In re New Motor Vehicles Canadian Export Antitrust Litig.</u>, No. MDL 1532, 2006 WL 1318689, at *12, n.56 (D. Me. 2006) (recognizing that "[d]amages are generally considered substantive law" and that application of a procedural rule to allow "fluid damages" would not violate REA where applicable statutes did not limit such damages) <u>with</u> <u>Windham v. American Brands, Inc.</u>, 565 F.2d 59, 66 (4th Cir. 1977) (application of procedural rule to allow fluid damages *would* "contravene the mandate of the Rules Enabling Act" where statute at issue limited damages).

---

[6]    The court held that because amended plaintiffs' claims involved a different year's fees and agreements, they did not arise out of the same transaction or occurrence as the original plaintiffs' claim.  <u>See</u> <u>Brever</u>, 233 F.R.D. at 434-35 ("absent the end result of the relation back doctrine, substitute plaintiffs' Section 36(b) claim fails to satisfy the requirements of Rule 15(c)(2), which is an absolute prerequisite for the application of a change in parties pursuant to Rule 15(c)(3)").

Allowing Movants' motion would thwart the congressional intent evident in the language of Section 36(b).  The "highly restrictive limitations on actions under Section 36(b) evidence an intent by Congress to protect investment advisers and their affiliates from open-ended litigation and nuisances suits."  Krinsk, 1986 WL 205, at *2 (Section 36(b)'s limitations are part of "a carefully conceived enforcement scheme") (citing H.R. Rep. No. 1382, 91st Cong., 1st Sess. 8, 38 1970).)  They "reflect the congressional intent to establish a means by which recently awarded management agreements can be policed, tested and modified or rescinded under federal court review."  Brever, 233 F.R.D. at 433.  A "sue first and find clients later" strategy, as the Dumond plaintiffs put it, is incompatible with the congressional intent to avoid "open-ended litigation and nuisance suits," particularly here, where the so-called "ministerial" motion would expand this lawsuit by nearly 1000 percent (from 2 to 18 Funds), more than two years after its filing, and would add new funds as to which the "incorporated" allegations make no sense.

Although Movants declined to make a Rule 15 motion (for obvious reasons), they nevertheless tout a Rule 15 decision of this Court, Wicks v. Putnam Investment Management, LLC, No. 04-10988 (GAO), 2006 WL 149040 (D. Mass. Jan. 19, 2006).  They argue incorrectly that "the same rationale" underlying that decision requires that their Rule 24 motion be granted. In doing so, they overlook just about every relevant fact considered in Wicks.  In that case, the substitute plaintiffs' motion was brought days after the plaintiff's broker inadvertently sold plaintiff's shares, and the proposed amendment at issue added "*no new funds*, no new defendants, and no new claims."  2006 WL 149040, at *1 (emphasis added).  That same reasoning applied here leads to the opposite result, because the Movants here attempt to bring an action with respect to 16 *new funds* that are *not* at issue in the pending case and that the original Plaintiffs *never* had any statutory or constitutional standing to assert.  Further, nothing in Wicks

8

undermines the conclusion that the application of Rule 24 sought here would violate the REA. The defendants in <u>Wicks</u> did not argue, and the Court did not address, the Rules Enabling Act.

### B.    Equitable Tolling Is Not Permitted Even If Movants Could Intervene

Movants advance the "equitable tolling" doctrine of <u>American Pipe & Construction Company v. Utah</u>, 414 U.S. 538, 550 (1974), which applies in certain cases to claims filed as class actions. But <u>American Pipe</u> does not apply to Section 36(b) claims that were not filed as a class action and could never validly have been prosecuted as a class action. Even if that case did apply, Movants have not shown that equity requires or even justifies "tolling" as to their new claims.

### 1.    The American Pipe Doctrine Is Inapposite

Movants rely on <u>American Pipe</u> for its general principle that "the filing of a timely class action complaint" tolls the statute of limitations "for all members of the class as subsequently determined," until class certification is denied; yet they ignore the circumstances that render that principle inapplicable. <u>See</u> 414 U.S. at 550. First, what Movants seek is not the tolling of a statute of limitations, but rather the alteration of a substantive damages limitation, which <u>American Pipe</u> does not allow. This precise issue was addressed in <u>Krinsk</u>, 1986 WL 205, at *3. There, the Court held that the Section 36(b)(3) one-year damages limitation is "a substantive limit on damages rather than a procedural limitation on the time within which an action may be brought," and declined to permit equitable tolling. <u>See id.</u> at *5 ("[T]here is nothing in the record of the Congressional proceedings, nor in <u>American Pipe</u> or <u>Crown, Cork & Seal</u>, that can be read to encourage a court to allow a successive section 36(b) claim" to be equitably tolled); <u>see also</u> <u>Brever</u>, 233 F.R.D. at 433, 435 (backdating Section 36(b) claims inconsistent with substantive nature of Section 36(b)(3) damages limitation and congressional intent).

Second, <u>American Pipe</u> tolling occurs upon "the filing of a timely class action complaint." <u>See</u> 414 U.S. at 550. Not only did Plaintiffs in this case not bring their original Section 36(b) claim as a class claim, but it would have been futile to do so. Section 36(b) claims are *inherently* not class action claims, and belatedly styling them as such, whether by inadvertence or as part of a strategy, does not make them class claims. <u>See</u> 15 U.S.C. § 80a-35(b) (authorizing claims "on behalf of" funds); <u>Green v. Nuveen Advisory Corp.</u>, 186 F.R.D. 486, 493 (N.D. Ill. 1999) (Section 36(b) "class" illogical since any recovery must be paid "to the company rather than the plaintiff").[7] There is no reason why those who advance claims that never could be brought as a class action should benefit from a tolling rule designed to protect bona-fide class members' interests in the event that something that ordinarily can be brought on behalf of a class cannot be pursued by a particular, defective plaintiff. <u>American Pipe</u> simply was not intended to be "regarded as encouragement to lawyers in a case of this kind to frame their pleadings as a class action . . . to . . . save class members who have slept on their rights." <u>Crown, Cork & Seal, Co., Inc.</u>, 462 U.S. 345, 354 (1983) (citing <u>American Pipe</u>, 414 U.S. at 561) (Powell, J., concurring).)[8]

Third, entertaining the fiction that Section 36(b) claims could be class action claims, no matter how broadly one reads <u>American Pipe</u> it does not toll spurious class claims that were dismissed because plaintiff lacked standing. <u>See, e.g.</u>, <u>American Pipe</u>, 414 U.S. at 553; <u>Fleming v. Bank of Boston Corp.</u>, 127 F.R.D. 30, 36 (D. Mass. 1989) ("[I]t would be improper to allow the filing of a class action by nominal plaintiffs who are wholly inadequate to represent the

---

[7]    None of the dozen or so identical complaints Plaintiffs' counsel has filed nationwide has accepted that § 36(b) could be a class action claim.

[8]    Movants place too much weight on the dictum in <u>McDonald v. Sec'y of Health & Human Servs.</u>, 834 F.2d 1085, 1091 (1st Cir. 1987), that the existence of even a "meritless" class action tolls the running of a statute of limitations applicable to all class members. (<u>See</u> Mem. at 7.) If that principle were taken to an extreme, it would mean that all claims in a complaint—even if at the time of filing they were all indisputably non-class action claims that plaintiffs lack standing to bring—would toll the limitations period merely by *styling* the complaint as a "class action." No court has adopted such an extreme rule.

asserted class to have the effect of tolling to permit the otherwise untimely intervention of proper class representatives.") ("Fleming I"), aff'd Fleming v. Lind-Wedlock & Co., 922 F.2d 20, 26 (1st Cir. 1990) ("Fleming II").[9]  Because the original Plaintiffs lacked both statutory and constitutional standing when they tried to bring claims on behalf of the 16 funds that are the subject of this motion, American Pipe cannot have the effect that Movants seek.

Fourth, American Pipe by its very terms does not apply where, as here, application of its equitable tolling principle would interfere with the congressional intent underlying a statutory scheme.  The Supreme Court in American Pipe limited the availability of tolling to situations where it would be "consonant with the legislative scheme" (thereby harmonizing the equitable rule in American Pipe with the Rules Enabling Act).  414 U.S. at 558.  Equitable tolling of claims that derivative plaintiffs (under a plain reading of the statute) had no standing to assert for over two years would override the substantive damages limitation of Section 36(b) in a way that is entirely inconsistent with the statutory scheme.  See Krinsk, 1986 WL 205, at *3 ("Any judicial tolling of the substantive damages limitation period [of Section 36(b)] would . . . subvert Congressional purpose" to protect defendants against cost of defending expanding lawsuits).

Finally, Movants assert that their Section 36(b) claims should be equitably tolled as of March 25, 2004, but ignore that the Section 36(b) claims filed at that time were filed "derivatively."  Plaintiffs did not attempt to recharacterize those claims as class claims until a year later, when they filed the CAC on March 3, 2005.  Movants have not and cannot cite to any authority to support the idea that American Pipe requires their new claim be backdated to the time of the filing of prior derivative claims.  And in *no event* can equitable tolling be applied as to claims on behalf of the MFS Intermediate Income Trust Fund (one of Movants' 16 Funds),

---

[9]     See also, e.g., In re Colonial L.P. Litig., 854 F. Supp. 64, 82 (D. Conn. 1994) ("[I]f the original plaintiffs lacked standing to bring their claims in the first place, the filing of a class action complaint does not toll the statute of limitations for other members of the purported class.").

because the CAC in this case *did not even purport to bring a claim* on behalf of that fund.  (See CAC, Ex. A.)

### 2.     Even if <u>American Pipe</u> Could Apply, Equity Does Not Require Tolling.

Movants have not established that equity requires or even justifies tolling of their claims. Nowhere do Movants assert that they actually relied on the pendency of a class action, and they could not reasonably have done so.  Nor does a Section 36(b) claim (which can be brought on behalf of any fund by any contemporaneous shareholder) implicate the burdens on the judicial system that would be imposed absent equitable tolling of real class actions under <u>American Pipe</u>. In that case, the Court observed that not allowing equitable tolling upon the filing of claims that could actually be asserted by a class would invite numerous filings of individual claims pending a determination on class certification.  414 U.S. at 550-51.  That concern is not present in this context.   A Section 36(b) claim that might benefit all shareholders of a fund may be filed by any shareholder; and as the Court previously determined, at least one contemporaneous shareholder of a fund *must* be named as a plaintiff in every action on behalf of the fund.  (Order at 25.)  Thus, declining to apply <u>American Pipe</u> in this context would not invite lawsuits in addition to the single action that must be filed on behalf of each fund.

In addition, Movants' argument that equity requires tolling relies in part on their conclusion that they have claims "identical" to the ones pending before this Court.  This is not true, and Movants cannot make it so by asserting in their brief that they propose to attempt to state a claim as to the 16 new funds by incorporating by reference the pending CAC as modified by the Order.  (Mem. at 7.)  Each of the Two Funds at issue in the case, and the 16 others Movants propose to add, have a different fee and fee agreement with Defendants.  Public documents of which this Court can take judicial notice show that two of the 16 MFS funds on

behalf of which Movants seek to sue (the Intermediate Income Trust Fund and the MFS Money

Market Fund), as well as classes of two of the 14 other funds on behalf of which they seek to sue,

*did not even pay 12b-1 fees* during the period for which Plaintiffs seek to sue.  And Plaintiffs

never even attempted to bring any class claim with respect to another of Movants' funds.

Movants can hardly incorporate the allegations relative to the Two Funds Plaintiffs now

represent to state erroneous claims that do not take into account the differences among the

various different funds on behalf of which Movants now seek to sue.[10]

### 3.    Equitable Tolling Could Run Only From The Time Class Action Claim Was Asserted

In any event, <u>American Pipe</u> does not support tolling until the date of "the filing of a . . .

class action complaint."  In this case, Plaintiffs did not purport to file *class* Section 36(b) claims

until March 3, 2005 (the date Plaintiffs' filed the CAC).

## II.    MOVANTS MAY NOT INTERVENE BY RIGHT

Under Rule 24(a)(2), an applicant may intervene by right only if (*i*) it timely files an

intervention motion, (*ii*) it has an interest relating to the property or transaction that forms the

basis of the ongoing suit; (*iii*) the disposition of the action threatens to create a practical

impediment to its ability to protect its interests; *and* (*iv*) no existing party adequately represents

its interests.  <u>See</u> Fed. R. Civ. P. 24(a); <u>Dingwell v. Travelers Indemnity Co.</u>, 884 F.2d 629, 637

(1st Cir. 1989).  The Court must deny the motion to intervene pursuant to Rule 24(a)(2) if

Movants fail to satisfy any of these four requirements.  Movants in fact fail to satisfy all four.[11]

---

[10]    Movants also cannot rely on the incorrect suggestion that this case involves conduct as to which Defendants "agreed to disgorge $1 million" to "**all** the MFS Funds" pursuant to an SEC settlement.  (<u>See</u> Mem. at 17.)  To the contrary, MFS paid *one dollar* in disgorgement to the SEC in a settlement in which they did not admit or deny culpability on account of an asserted nondisclosure that this Court held is not actionable under Section 36(b).  (<u>See</u> Order at 21.)  This is consistent with a finding of no harm to any fund, not universal harm to all funds.
[11]    Movants also have no right to intervene for the fifth and separate reason that they do not satisfy Rule 24(c)'s pleading requirements.  <u>See</u> <u>infra</u> at Part III.D.

A.    **Movants Have No Right To Intervene In a Pending Suit In Which They Have No Direct Interest**

To intervene by right, an applicant must have a "direct, substantial and legally protectable interest" in the existing proceedings.  See e.g., U.S. v. Metropolitan District Comm'n, 754 F. Supp. 935, 939 (D. Mass. 1991) (citing Dingwell, 884 F.2d at 638); Smoot v. Mobile Oil Corp., 722 F. Supp. 849, 860 (D. Mass. 1989).  The pending action is limited to claims brought on behalf of only the Two Funds for which Plaintiffs have standing.  (See Mem. at 15; Order at 29.) Movants, who purport to bring claims on behalf of 16 different funds, do not have an interest in the pending action.  Stated another way, the disposition of Plaintiffs' claims as to the Two Funds will in no way affect Movants' rights with respect to the 16 MFS funds in which they hold shares.  A Rule 24 motion to intervene "is not an appropriate device to cure a situation in which plaintiffs may have stated causes of action [in which] they have no standing."  McClune v. Shamah, 593 F.2d 482, 486 (3d Cir. 1979); see also U.S. v. Equitable Trust Co., 611 F.2d 492, 496 (4th Cir. 1979) (rule allowing motion to intervene does not permit litigant to invoke rights of someone else).

Without any supporting authority, Movants also suggest they may intervene because the funds they own were injured by a "common course" of conduct that injured Plaintiffs' funds.[12] (See Mem. at 14.)  But the assertion that the different mutual funds on whose behalf Movants seek to sue were damaged by the same or similar conduct to that about which Plaintiffs complain

---

[12]    The cases that Movants cite to the contrary do nothing to support their argument.  Movants are nothing like the intervenors in Cotter v. Massachusetts Ass'n of Minority Law Enforcement Officers, 219 F.3d 31, 34 (1st Cir. 2000), who had a direct interest in a pending suit that challenged the validity of their promotions.  The pending action here, however, involves the fees charged to the Two Funds that Plaintiffs own, not the 16 MFS funds in which Movants hold shares.  Nor does Daggett v. Comm'n on Gov. Ethics, 172 F.3d 104, 108-10 (1st Cir. 1999), assist them.  There, the court held that elected officials and prospective candidates who planned to use public funding provided for by a new state campaign reform act shared a sufficiently protectible interest with other plaintiffs who opposed the act (including former candidates, a campaign contributor and the Libertarian Party).  In that case, an adverse judgment would have stripped each proposed intervenor of the opportunity for public campaign funding.  In this case, however, the disposition of Plaintiffs' claims will in no way affect Movants' rights with respect to the 16 MFS Funds in which they hold shares.  See id. at 109.

does not give Movants any interest in the *existing* proceeding. This Court has already flatly rejected the notion that supposed "juridical links" among the mutual funds are a sufficient basis to confer standing upon shareholders of one fund to sue on behalf of another. For similar reasons, ownership of a fund that allegedly suffered from conduct that harmed another fund does not confer any ownership or other legally protectible interest in the claims of the other fund.

**B.    Movants Have No Right To Intervene Because Lack of Intervention Will Not Impair Their Ability To Protect Their Interests**

Movants' inability to intervene will not impair their ability to protect their interests. Any judgment with respect to Plaintiffs' Section 36(b) claims on behalf of the Two Funds will not bind Movants with regard to their claims on behalf of 16 different MFS funds. See In re Sonus Networks, Inc. Sec. Litig., 229 F.R.D. 339, 347 (D. Mass.) (no intervention by right where plaintiffs in underlying case were not representing proposed intervenor and disposition of underlying claims would have no *res judicata* effect on proposed intervenor's claims).

**C.    Movants Have No Right To Intervene Because Plaintiffs Adequately Represent Any Direct Interest Movants Have In This Action**

Movants have no "right" to intervene because they make no assertion that Plaintiffs will not adequately protect any ownership interest that Movants might have in the Two Funds still at issue. (See Mem. at 15.) Movants' contention that Plaintiffs would not adequately represent Movants' interest in the 16 funds on whose behalf Movants seek to intervene, and which are not at issue in the pending case, misses the point. Movants cite no authority for the proposition that they have the right to intervene because Plaintiffs do not adequately represent claims not at issue in this case. Indeed, the law is to the contrary. See United States v. Michigan, 424 F.3d 438, 444 (6th Cir. 2005) (inadequate representation of claims not before court in pending case irrelevant to determination of whether applicant has right to intervene).

15

### III.    MOVANTS DO NOT SATISFY THE REQUIREMENTS FOR PERMISSIVE INTERVENTION

Permissive intervention is not allowed unless (*i*) the motion to intervene is timely, (*ii*) Movants' claim and Plaintiffs' claim have "common questions of law and fact," (*iii*) intervention would not unduly delay or prejudice the adjudication of the rights of the original parties, <u>see, e.g.</u>, <u>Smoot</u>, 722 F. Supp. at 860, and (*iv*) Movants satisfy Rule 24(c)'s pleading requirements. Movants fail to meet any of these requirements. Even if they met them all, the Court should follow the lead of many other courts and exercise its discretion to deny intervention because Movants have no *right* to intervene, or because Plaintiffs adequately represent any interest Movants have in the subject matter of the pending action, which includes only claims on behalf of the Two Funds for which Plaintiffs have standing to sue.

### A.    <u>Movants' Motion Is Untimely</u>

The First Circuit requires consideration of four factors in determining whether a motion to intervene is timely: (*i*) how long prospective intervenors knew or reasonably should have known of their interest before petitioning to intervene, (*ii*) prejudice to existing parties resulting from failure to petition for intervention promptly, (*iii*) prejudice the prospective intervenor would suffer if not allowed to intervene, and (*iv*) unusual circumstances militating for or against intervention. <u>See, e.g.</u>, <u>Caterino</u>, 922 F.2d at 40 (1st Cir. 1990).

### 1.    Movants Did Not Reasonably Rely on Plaintiffs for Protection

In order to show that they did not unreasonably delay in seeking to intervene, Movants must show that they *knew of*, and *reasonably relied on* the pendency of Plaintiffs' action in deciding not to intervene earlier. <u>See, e.g.</u>, <u>Fleming I</u>, 127 F.R.D. at 34. Movants have made no such showing, providing no affidavit or other evidence suggesting that they read, relied on, or even knew of the existing complaints. For this reason alone, Movants' motion for permissive

intervention must be denied.   Further, because the Section 36(b) claims in the original complaint were asserted "derivatively," any suggestion that Movants relied on the pendency of a class action from March 25, 2004 (when the original complaint was filed) to March 3, 2005 (when the CAC was filed) makes no sense.

Even had Movants claimed to have known of the Complaint and to have abstained from suit in reliance upon it, they could not *reasonably* have relied on Plaintiffs (owners of the Two Funds) to bring claims on behalf of 16 funds Plaintiffs did not own.   If Movants read the original Complaint, it is implausible that Movants abstained from bringing a Section 36(b) claim based on it.   A simple reading of the statute makes plain that Plaintiffs had no standing to assert Movants' claims.   Compare 15 U.S.C. 80a-35(b) (limiting standing to a "security holder" of a fund) with Order at 25-26 ("former security holders" or those who "never owned" funds at issue may not pursue claims).   That Plaintiffs could not bring claims on behalf of Movants' funds has been clear from the outset of this litigation.   The Dumond plaintiffs first noted that fact in July 2004 (see Docket No. 36, at 15-17); defendants first noted it in October 2004 (see Docket No. 49, at 8-9) and repeatedly thereafter; and this Court formally reached the same conclusion January 2006 (consistent with the plain language of the statute and every court to address the issue in the meantime).

Plaintiffs' mid-course recharacterization of their Section 36(b) as a "class" claim renders no prior (or subsequent) reliance by Movants reasonable, because a Section 36(b) claim "on behalf of" a fund cannot be pursued as a class action.   See 15 U.S.C. § 80a-35(b) (authorizing claims "on behalf of" funds); supra at Part I.B.1.   Even if Movants were to claim that they did not fully appreciate the meaning of the statute, court rulings, and repeated warnings of litigants, they still would not be able to intervene.   They are too late to intervene.   See, e.g., Caterino, 922

F.2d at 40-41 (prospective intervenors "sit idle at their peril" if "minimal investigation" by prospective intervenors would reveal that their interests "*may*" be affected) (emphasis added); In re Sonus, 229 F.R.D. at 343-44 (motion to intervene denied where delay in suing based on misunderstanding of Rule 23).

Movants' knew or reasonably should have known for *more than two years* before filing this motion that the pending action never protected their Section 36(b) claims as to the fees charged in the period implicated by the pending claims.[13]  See Caterino, 922 F.2d at 40; Narragansett Indian Tribe v. Ribo, Inc., 868 F.2d 5, 7 (1st Cir. 1989) (motion to intervene untimely where petitioners knew for about one year before filing that their interests were inadequately protected); United States v. Mass., 1986 U.S. Dist. LEXIS 26224 at *13-*14 (D. Mass. 1986) (same); United Nuclear Corp. v. Cannon, 696 F.2d 141, 143 (1st Cir. 1982) (waiting for as little as four months to move to intervene is untimely) (citation omitted).  In *no event* could the Movants have relied (reasonably or otherwise) on Plaintiffs to with respect to the MFS Intermediate Income Trust Fund, on behalf of which Plaintiffs *did not even purport to sue*.  (See CAC Ex. A.)

### 2.    Intervention Would Substantially Prejudice Defendants

From the outset, defendants have had the "legitimate and reasonable expectation" that this lawsuit was about fees charged to the Two Funds that Plaintiffs owned for the statutory period beginning in March 2003.  The reasonability of this expectation was reaffirmed when the

---

[13] The cases Movants cite to the contrary are irrelevant.  All but one are cited to show that filing a motion to intervene after only a few months from the time that proposed intervenors should have known their interests were inadequately protected was timely.  See, e.g., United Airlines v. McDonald, 432 U.S. 385, 392 (D. Mass. 2004) (intervention to appeal filed 18 days after final judgment entry is timely); One Beacon Ins. Co. v. Electrolux 223 F.R.D. 21, 23-24 (D. Mass. 2004) (intervention filed "relatively promptly" after notice of suit is timely); Ruthardt v. U.S., 164 F. Supp. 2d 232, 247 n.28 (D. Mass. 2001) (intervention filed less than two and a half months after the complaint was filed was timely).  The other case Movants cite does not even apply the *four-factor timeliness test required in this Circuit*, much less address the issue of when Movants were aware that their rights were not adequately protected.  See Ardry v. Federal Kemper Ins. Co., 142 F.R.D. 105, 116-17 (E.D. Pa. 1992).

Court granted Defendants' motion to dismiss the claims purportedly on behalf of 60 other MFS funds. Movants simply cannot intervene to file a new lawsuit eight times the size of the pending one, and expect to merge and backdate it with the pending action, all because of Plaintiffs' baseless, overreaching (and subsequently rejected) attempt to represent funds they did not own. See Fleming I, 127 F.R.D. at 34 (motion to intervene untimely where intervention would essentially revive already defeated claims).

Defendants' legitimate reliance was reasonably based on *the actual law*. Defendants knew from the time that Plaintiffs filed the original complaint that Plaintiffs had no standing to bring Section 36(b) claims on behalf of any but the Original Funds, see supra at Part I.B.1. Granting Movants the relief that they seek through intervention would deprive Defendants of the repose to which they were entitled by statute by essentially reviving claims that this Court has already definitively dismissed, thereby "negating the preparation and time spent" on Defendants' motion to dismiss. See Fleming II, 922 F.2d at 26 (because named plaintiff lacked standing to bring proposed intervenors' individual or class claims, intervention became untimely upon court's *dismissal* of those claims).[14]

### 3. Movants Would Not Be Prejudiced By Denial of Intervention

Denying intervention would not prejudice Movants. Their claim of prejudice is simply that they would not be permitted belatedly to pursue a claim under a statute with a strict damages limitation. This, however, is not prejudice warranting intervention because the consequences of Movants' own inaction is by no means legal prejudice. See In re Sonus, 229 F.R.D. at 346-47

---

[14]    Movants cite only one case, Wicks, to support their allegation that Defendants would not be prejudiced by intervention. See No. 04-10988, 2006 WL 149040 (D. Mass. Jan. 19, 2006). Critically, the motion in Wicks did not add any new funds or new claims or expose defendants to unexpected defense costs. In any event, it did not address Rule 24 because the Wicks plaintiff moved to amend under Rule 15.

(no prejudice to proposed intervenors "injured by the demise of . . . putative class action" if they are "suffering from a self-inflicted wound").[15]

**B.    Intervention Must Not Be Permitted Because Plaintiffs' and Movants' Claims Do Not Share Common Questions Of Law And Fact**

Movants must not be permitted to intervene because they provide no support for their assertion that they "clearly satisfy Rule 24(b)(2)'s commonality requirement." See, e.g., Walgreen Co. v. De Melecio, 194 F.R.D. 23, 27 (D.P.R. 2000) (no permissive intervention where would-be intervenors "perfunctorily" state they satisfy commonality requirement).  Movants insist incorrectly and without providing any legal authority whatsoever that they are asserting the "same claims" as Plaintiffs, "based on the same course of conduct for the same period of damages," and based on "identical questions of fact and law."  See Mem. at 16-17.  Movants' claims are not the same as Plaintiffs' claims.  Plaintiffs are pursuing claims on behalf of the Two Funds, and Movants are pursuing claims on behalf of 16 different MFS Funds.  The Plaintiffs' Two Funds paid different fees than did the Movants' 16 funds pursuant to different fee agreements.  Indeed, Movants' 16 different funds have different fee structures, different fee arrangements, different performance histories, and were provided different types of investment advisory and distribution services.  They are substantially different from the Two Funds, as are the fundamental legal questions in the two cases Movants seek to merge – whether the individually negotiated fees charged to the various funds addressed in each case were legally excessive, in light of a review of the applicable factors.

---

[15]    Movants offer nothing in their brief with regard to any unusual circumstance that would allow them to intervene in this action.  By failing to do so, Movants effectively concede that there are no such unusual circumstances that could militate for intervention.  (See Mem. at 12.)

**C.    Movants Must Not Be Permitted To Intervene Because Intervention Would Prejudice The Defendants' Rights**

To the extent that Movants seek to intervene and benefit from equitable tolling, Defendants would be greatly prejudiced by the destruction of their substantive right to limitation of damages under Section 36(b), and by the belated frustration of their reasonable reliance on that limitation.  See supra at Part III.A.2.  Plaintiffs' complaint cannot be treated as a placeholder available for use by anyone who wishes they had brought a lawsuit two years ago.  Movants cite no case to the contrary.[16]

**D.    Movants Fail To Meet the Rule 24(c) Pleading Requirements**

Movants cannot intervene unless they meet the procedural requirements of Rule 24(c), including the requirement that Movants "shall" serve Defendants "a pleading setting forth the claim or defense for which intervention is sought."  Fed. R. Civ. P. 24(c).  Public Serv. Co. of N.H. v. Patch, 136 F.3d 197, 205 & n.6 (1st Cir. 1998) (failure to accompany motion to intervene with pleading setting forth claim or defense generally warrants denial).  Movants here have failed to file a pleading altogether and instead claim that it suffices to incorporate by reference Plaintiffs' pleading.[17]  This is insufficient to satisfy Rule 24(c), Abramson v. Penwood Inv. Corp., 392 F.2d 759, 761 (2d Cir. 1968), and it requires that Movants' motion be denied.[18]

Movants' decision to ignore the plain and strict requirement of Rule 24(c) is intentional.  Were they to comply, the complaint in intervention would highlight the very fact that they

---

[16]    That the funds have "the same board of trustees" does nothing to negate the prejudice to Defendants of having to defendant an action with respect to 16 new funds not previously at issue.  (See Mem. at 18.)

[17]    Movants' citation to a district court in another circuit for the proposition that courts take "a flexible view in determining whether Rule 24(c) is satisfied, focusing on its goals rather than its technical requirements" (see Mem. at 19) is contrary to the law in the First Circuit, which requires strict compliance with Rule 24(c).  See Providence Baptist Church v. Hillandale Comm., Ltd., 425 F.3d 309, 314 (6th Cir. 2005) (noting that some circuits require strict compliance with the Rule 24(c) pleading requirements while others are more lenient; First Circuit requires strict compliance).

[18]    See also, e.g., Pikor v. Cinerama Prods. Corp., 25 F.R.D. 92, 95-96 (S.D. N.Y. 1960) (motion to intervene denied when motion was not accompanied by a pleading but merely by affidavits stating that the intervenors wish to set forth the claim of the original complaint).

strenuously seek to obscure:  Movants do not care a bit about the pending claims, and the entire purpose of this exercise is to bring new claims in a way that circumvents Section 36(b)'s damage limitation.  In other words, Plaintiffs do not wish to intervene to protect rights that the pending claims put at risk; they seek instead to bring claims that they have no right to bring by virtue of their contortion of an inapplicable procedural device.[19]

> **E.**      **Even if Movants Meet All the Threshold Requirements To Allow Permissive Intervention, the Court Should Use Its Discretion To Deny Intervention**

Even if Movants could meet the permissive intervention requirements, the Court nonetheless should exercise its discretion to deny Movants' motion.  First, Movants allege no facts to show that if permitted to intervene they will materially contribute to the just resolution of the Section 36(b) claims on behalf of the Two Funds in which they have no ownership interest.  See, e.g., Langone v. Flint Ink N. Am. Corp., 231 F.R.D. 114, 121 (D. Mass. 2005) (although proposed intervenor's claims involved "same" question of law or fact as did plaintiff's claims, no permissive intervention where *inter alia* applicant had a "ready forum to adjudicate" its claims and would not "significantly add" to resolving pivotal factual question in plaintiff's case); Int'l Brotherhood of Teamsters v. J.F. Partyka & Son, Inc., 176 F.R.D. 429, 433 (D. Mass. 1997); Resolution Trust Corp., 150 F.R.D. 449, 455 (D. Mass 1993).  Second, Movants fail to allege that to the extent that they own shares in the Two Funds at issue in this case, Plaintiffs do not adequately represent their interests.  See, e.g., Mass. Food Assoc. v. Mass. ABC Comm'n, 197 F.3d 560, 568 (1st Cir. 1999).  Third, this Court, as many other courts have done, should deny permissive intervention because Movants have no right to intervene (see supra at Part II) and have not alleged any other persuasive reasons militating in favor of intervention.  See, e.g.,

---

[19]      Movants' lack of concern for the fit between the "incorporated" CAC and their funds is demonstrated by the fact that two of their funds did not even pay 12b-1 fees during the 2003-04 period and thus *could not* have paid the "excessive" and "improper" 12b-1 fees that are the centerpiece of the pending case.

<u>Jacobson v. Raytheon Aircraft Co.</u>, No. Civ. 98-248, 1999 WL 33117136, at *4 (D. Me. 1999) (recommending denial of permissive intervention where motion to intervene as of right untimely and unduly prejudicial to original party).

## IV.    RULE 15 DOES NOT ASSIST MOVANTS

To hedge, Movants (and Plaintiffs) also request relief pursuant instead to "any other Rule or statute [the Court] may deem more appropriate."[20]  <u>See</u> Mem. at 20 & n.9.  Somewhat more specifically, they suggest without supporting argument that Rule 15 permits Plaintiffs to amend the CAC to add Movants as plaintiffs, and that under Rule 15(c) Movants' new claims would relate back to the date when Plaintiffs filed the original complaint.  <u>See</u> <u>id.</u>

Even if Plaintiffs could amend the complaint to add Movants' claims, any damages awarded to those additional 16 funds would be limited by the one-year damages look-back period tied to the date of such amendment (not the original filing date of Plaintiffs' claims). First, the REA prevents the substantive damages limitations of Section 36(b) from being subverted by Rule 15(c).  Second, Plaintiffs do not meet Rule 15(c)'s relation-back requirements. Third, even if relation back were appropriate, it could extend only as far as the date the CAC was filed, not to the earlier date of the original complaint, when Plaintiffs had not even *fashioned* their Section 36(b) claims as a class action.  <u>See</u> discussion <u>supra</u> at Parts I.B.1 & III.A.1.

### A.    <u>Section 36(b)'s Limitation on Damages Trumps Rule 15(c)</u>

Rule 15(c)'s relation-back principles cannot be used to alter the substantive damage limitation of Section 36(b).  The Rules Enabling Act prohibits the application of the procedural Rule 15(c) relation-back doctrine to abridge the rights provided pursuant to Section 36(b).  <u>See</u>

---

[20]    This is perhaps the worst example of plaintiffs' sandbag strategy.  Plaintiffs should not leave the Court or the defendants guessing about their position, and should have advanced all of their arguments and addressed all of the contrary authority.  Instead, they will undoubtedly attempt to seek the last word via reply, without opportunity for rebuttal.

Brever, 233 F.R.D. at 432-35 ("to apply Rule 15(c) in that [manner] would create substantive rights by application of a procedural rule and thus run afoul of the Rules Enabling Act"); cf. ING Principal Protection Funds Deriv.s Litig., 369 F. Supp. 2d 163, 170-71 (D. Mass. 2005) (relation back cannot be used to circumvent substantive law and statutes granting repose).

### B.    Plaintiffs Do Not Satisfy Rule 15(c)'s Relation-Back Requirements

Relation back can in no case occur unless *all* of the following are true:  (1) the amended complaint arises out of the same "conduct, transaction, or occurrence" as the original pleading, (2) defendants were given "fair notice" of new plaintiffs' claims against them, and (3) allowing relation back would not cause defendants "undue prejudice."  See Allied Int'l, Inc. v. Int'l Longshoremen's Assoc., 814 F.2d 32, 35-36 (1st Cir. 1987).  Movants meet none of these requirements.

### 1.    Movants Do Not Satisfy The Transaction or Occurrence Test

Movants' claims on behalf of the 16 additional MFS funds do not arise from the same "transaction or occurrence" as the claims that Plaintiffs initially had standing to (and did) bring on behalf of the Two Funds that they own.  As the court in Brever noted, "absent the end result of the relation back doctrine," Movants by definition have claims that arise from different transactions or occurrences as Plaintiffs.  Brever, 233 F.R.D. at 43.  Therefore, Movants' assertion that they satisfy this portion of the test is purely circular and fails.  Id. at 434 (Section 36(b) claims did not arise from the same "transaction or occurrence," because proposed new plaintiffs' claims involved different time periods as a result of damages limitation of section 36(b)).

### 2.     Defendants Had No Fair Notice

Defendants had no fair notice upon filing of the complaint that Defendants were in danger of having to defend claims on behalf of funds that *no named Plaintiffs then owned*. Again, Wicks is consistent with this conclusion. In Wicks, the original plaintiffs upon filing the complaint had standing to bring the claims that the new plaintiffs later pursued in their place. See 2006 WL 149040, at *1-2. Therefore, not only did the Wicks Defendants have "fair notice" that they were in danger of defending the claims; they were already defending them. See id. Defendants here, to the contrary, have always reasonably understood that they are defending only claims on behalf of the funds still at issue in this case. Compare (Order at 25 (plain language of statute limits § 36(b) claims to "current security holders").) Movants have not shown why Defendants should have had "fair notice" that Movants would be able to circumvent the law, and relation back should not be permitted.[21]

### 3.     Relation Back Would Unduly Prejudice Defendants

Defendants would suffer undue prejudice if Movants' claims were allowed to relate back. Granting Movants the benefit of Rule 15(c) would greatly increase Defendants' potential liability. This is exactly the type of prejudice that requires denial of relation back. See Nelson v. County of Allegheny, 60 F.3d 1010, 1015 (3d Cir. 1995) (no relation back where it "could cause defendants' liability to increase geometrically and their defensive strategy to become far more complex" and would deprive Defendants of their "interest in repose"). Compare Wicks, 2006 WL 149040, at *1 (no undue prejudice because amendment does not change complaint substantively by, for instance, adding new claims).

---

[21]     See Brever, 223 F.R.D. at 435 (noting that such limits on application of relation back doctrine are necessary to prevent defendant's liability from increasing "geometrically" long after potential claims have expired).

Dated:  May 26, 2006

Defendants

By their attorneys,

/s/ William H. Paine
Jeffrey B. Rudman (BBO #433380)
William H. Paine (BBO #550506)
Michael Bongiorno (BBO#558748)
Jonathan A. Shapiro (BBO#567838)
Matthew A. Stowe (BBO #650473)
WilmerHale
60 State Street
Boston, MA  02109
(617) 526-6000

### CERTIFICATE OF SERVICE

I, Matthew A. Stowe, hereby certify that on May 26, 2006, I caused a copy of the foregoing document to be served either electronically or by overnight mail upon counsel for Plaintiffs.

/s/  Matthew A. Stowe
Matthew A. Stowe

Dated:  May 26, 2006

26