# Exhibit 1

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

ERIC FORSYTHE, Individually And On Behalf Of All Others Similarly Situated,

Plaintiffs,

vs.

SUN LIFE FINANCIAL INC., et al.,

Defendants.

Civil Action No. 04cv10584 (GAO)

**Consolidated Cases Nos.:**

04cv10764 (GAO)
04cv11019 (GAO)

**PLAINTIFFS' FIRST REQUEST FOR THE PRODUCTION OF DOCUMENTS TO DEFENDANTS MASSACHUSETTS FINANCIAL SERVICES COMPANY AND MFS DISTRIBUTORS, INC.**

PLEASE TAKE NOTICE that, pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, each Defendant is requested to produce DOCUMENTS responsive to Plaintiffs' First Request for Production Directed to Defendants dated March 28, 2006 in *Dumond, et al. v. Massachusetts Financial Services Company et al.*, 04-11458-GAO (D. Mass) ("*Dumond*"), and the following DOCUMENTS for inspection and photocopying at the office of Moulton & Gans, P.C., within thirty (30) days of service in accordance with the accompanying definitions and instructions.

**DEFINITIONS**

1. Plaintiffs adopt the definitions set out in the Plaintiffs' First Request for Production Directed to Defendants in *Dumond* to the extent that they relate to Plaintiffs' adoption of such requests. For purposes of the "F" requests, the definitions below apply.

2. The use of the "F" prefix in the Document Requests below indicates that the Request is being made by *Forsythe* Plaintiffs as distinguished from the Requests made in the *Dumond* action.

3. "MFS," "YOU," and "YOUR" mean and include Massachusetts Financial Services Company and MFS Distributors, Inc., their corporate parents, any of their current or former officers, directors, trustees, employees, agents, representatives, attorneys, partners, joint venturers, corporate parents, divisions, subsidiaries, affiliates, related entities and any entity controlled by MFS.

4. "GOVERNMENTAL ENTITY" means and includes any federal, state or local government branch, agency, department, office, authority, committee (including Congressional committees and subcommittees) and/or self-regulatory organization, whether foreign or domestic, and any officer, official, member, agent or representative of any such entity, including, but not limited to, the Securities Exchange Commission (the "SEC"), the National Association of Securities Dealers (the "NASD") and/or any attorney general.

5. "MFS MUTUAL FUND(S)" means any MFS closed-end mutual fund, open-end investment company, exchange traded fund or unit investment trust, including, without limitation, any series therein.

6. "FUNDS" means Massachusetts Investors Trust Fund and MFS Utilities Fund and any other funds that may later be added by Court order.

7. "TRUSTEES" means and includes Jeffrey L. Shames, John W. Ballen, Kevin J. Parke, Lawrence H. Cohn, M.D., William R. Gutow, J. Atwood Ives, Abby M. O'Neill, Lawrence T. Perera, William J. Poorvu, J. Dale Sherratt, Elaine R. Smith, Ward Smith, and any other individuals who were directors, officers or trustees of any of the MFS MUTUAL FUNDS, during the Relevant Time Period.

8. "AFFILIATE" or "AFFILIATES" means (a) any person directly or indirectly owning, controlling, or holding, with power to vote, five percent or more of the outstanding

voting securities of such other person, (b) any person holding five percent or more of whose outstanding voting securities are directly or indirectly owned, controlled, or held with power to vote, by such other person, (c) any person directly or indirectly controlling, controlled by, or under common control with such other person, (d) any entity that is controlling, controlled by or in common control with any Defendant, and (e) any officer, director, partner, copartner, or employee of such other person.

9. "DOCUMENT" is defined to be synonymous in meaning and equal in scope to the usage of that term in Federal Rule of Civil Procedure 34(a), and includes any written, printed, typed, photostated, photographed, recorded, or otherwise reproduced or stored communication or representation, whether comprised of letters, words, numbers, pictures, sounds or symbols, or any combination thereof, including, without limitation, electronic or computerized data, e-mails (including all attachments to emails), and DOCUMENTS stored on tapes, drives, disks or computerized or electronic media. This definition includes copies or duplicates contemporaneously or subsequently created which have notes or other markings. This definition also includes any DOCUMENTS authored or reviewed by MFS, DOCUMENTS concerning any communications between MFS and any PERSON, any internal MFS meetings or meetings between MFS and any PERSON, any statistics gathered by MFS, and any policies or procedures considered or recommended by MFS or any PERSON.

10. "DISTRIBUTOR" means MFS Distributors, Inc. or any other distributors that serviced MFS MUTUAL FUNDS.

11. "INVESTMENT ADVISER" means Massachusetts Financial Services Company or any other investment adviser of MFS MUTUAL FUNDS.

12. "SOFT DOLLARS" means arrangements under which products or services other than execution of securities transactions are obtained by the INVESTMENT ADVISER DEFENDANT from or through a broker-dealer in exchange for the direction by the INVESTMENT ADVISER DEFENDANT of client brokerage to the broker-dealer.

13. "PREFERRED FUND" is any MFS MUTUAL FUND that is prioritized over funds in other mutual fund families by broker-dealers because of the benefits, including compensation, given to the broker-dealers by the MFS MUTUAL FUND'S INVESTMENT ADVISER or DISTRIBUTOR.

14. "DISTRIBUTION PAYMENT" means any and all compensation, payment, SOFT DOLLAR arrangements, distribution arrangements, and/or marketing arrangements made by a MFS MUTUAL FUND with or to the DISTRIBUTOR or to any broker-dealer, including individual brokers, representatives or advisors as well as brokerage firms.

15. "12b-1" refers to Rule 12b-1, 17 C.F.R. § 270.12b-1, promulgated by the Securities and Exchange Commission pursuant to Section 12(b) of the Investment Company Act of 1940; the term "12b-1 FEE" or "12b-1 FEES" means any sums of any nature or sort collected from or charged to any fund in the fund complex or to the owner of any shares (of any class of shares) issued by any of the funds in the fund complex or its distributors, pursuant to Rule 12b-1; and "12b-1 Plan" or "Plan of Distribution" refers to any program by which any fees or expenses are charged or collected pursuant to the authority granted by Rule 12b-1.

16. "STRATEGIC ALLIANCE" means arrangements between MFS and broker-dealers, where broker-dealers provided services designed to promote the sale of the MFS MUTUAL FUNDS; and MFS allocated brokerage commissions to those broker-dealers based

upon individually negotiated formulas relating gross fund sales and the retention of fund assets to pay for part of the obligations.

17. "REVENUE SHARING" means the practice by which the INVESTMENT ADVISER or the DISTRIBUTOR make payments from MFS MUTUAL FUND assets, INVESTMENT ADVISER fees, DISTRIBUTOR fees, INVESTMENT ADVISER profits or DISTRIBUTOR revenue to broker-dealers and/or any DISTRIBUTOR of fund shares with the express or implied intent that the INVESTMENT ADVISER's MFS MUTUAL FUNDS are placed on the broker-dealers' list of PREFERRED FUNDS, enter into a STRATEGIC ALLIANCE or otherwise obtain PREFERRED FUND treatment by the broker-dealers.

18. "DIRECTED BROKERAGE" means the practice by which the INVESTMENT ADVISER or the DISTRIBUTOR whose MFS MUTUAL FUNDS are sold by broker-dealers directs the brokerage commissions paid on transactions in the MFS MUTUAL FUNDS' underlying portfolio of securities to broker-dealers in connection with sales of MFS MUTUAL FUNDS' shares or units to customers of such broker-dealers, or in connection with the holding of such shares or units by the broker-dealers' customers, or in exchange for the broker-dealers including the funds on a PREFERRED FUNDS list, or entering into a STRATEGIC ALLIANCE.

19. "INSTITUTIONAL INVESTOR" means a non-bank person or organization that trades securities in large share quantities or dollar amounts.

20. "PERSON" means and includes any natural person, and any business, legal or governmental entity or association.

21. "CONCERNING" means concerning, relating to, referring to, reflecting, describing, evidencing or constituting.

22. The following rules of construction shall apply to these definitions and to all discovery requests:

(a) the connectives "AND" and "OR" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope;

(b) the use of the singular form of any word includes the plural and vice versa, and the use of any tense of any verb shall also include within its meaning all other tenses of the verb; and

(c) the descriptive headings of sections are inserted solely for convenience of reference and are not intended as complete or accurate descriptions of content and shall not be used to interpret the provisions of this Request.

**INSTRUCTIONS**

1. YOU are requested to produce any and all responsive DOCUMENTS in YOUR possession, custody or control. If any otherwise responsive DOCUMENT was, but is no longer, in existence or in YOUR possession, custody or control, identify its current or last known custodian and describe in full the circumstances surrounding its disposition from YOUR possession or control. A DOCUMENT shall be deemed to be in YOUR control if YOU have the right or power, directly or indirectly, to obtain the DOCUMENT or copy thereof from another PERSON having possession or custody thereof.

2. DOCUMENTS are to be produced in full. If any requested DOCUMENT cannot be produced in full, produce it to the extent possible, indicating which DOCUMENT, or portion of that DOCUMENT, is being withheld, and the reason that DOCUMENT is being withheld.

3. DOCUMENTS shall be produced in the file folder, envelope or other container in which the DOCUMENTS are kept or maintained. All DOCUMENTS shall be produced intact in

their original files, without disturbing the organization of DOCUMENTS employed during the conduct of the ordinary course of business and during the subsequent maintenance of the DOCUMENTS.

4. DOCUMENTS shall be produced in such fashion as to identify the department, branch or office in whose possession it was located and, where applicable, the natural person in whose possession it was found and the business address of each DOCUMENT'S custodian(s).

5. DOCUMENTS attached to each other should not be separated.

6. When an objection is made to any DOCUMENT request, the objection shall state all grounds with specificity. Any ground not stated in an objection within the time provided by the Federal Rules of Civil Procedure shall be deemed to have been waived. If only a portion of a DOCUMENT request is objected to, produce all DOCUMENTS responsive to all portions of the request to which YOU do not object.

7. If any DOCUMENTS requested herein have been lost, discarded, destroyed, or are otherwise no longer in YOUR possession, custody or control, they shall be identified as completely as possible including, without limitation, the following information: date of disposal; manner of disposal; reason for disposal; PERSON authorizing the disposal; and PERSON disposing of the DOCUMENT.

8. As set forth in Local Rule 34.1, if YOU assert a claim of privilege in objection to any DOCUMENTS request, or any subpart thereof, and any DOCUMENT is not provided on the basis of that assertion, the counsel for the party asserting the privilege shall identify in the objection the nature of the privilege (including work product) that is being claimed with respect to each such DOCUMENT; and if the privilege is being asserted in connection with a claim or defense governed by state law, YOU shall indicate the particular state privilege rule being

invoked as well as all other grounds for the objections, with specification. When any privilege is claimed, the party asserting it shall indicate, as to the information requested, whether any such DOCUMENTS exist. Any ground not stated in an objection within the time provided by the Federal Rules of Procedure shall be deemed to be waived.

9.  If any DOCUMENT is withheld, in whole or in part, for any reason, including, without limitation, any claim of privilege, whether work-product or attorney-client, confidentiality or trade secret, set forth separately with respect to each such DOCUMENT:

    (a) the nature of the privilege or ground of confidentiality claimed,

    (b) the type of DOCUMENT,

    (c) the general subject matter of the DOCUMENT,

    (d) the date of the DOCUMENT,

    (e) the authors of the DOCUMENT,

    (f) the recipients of the DOCUMENT, and

    (g) all PERSONS who received copies of the DOCUMENT.

10.  If a DOCUMENT contains both privileged and non-privileged material, the non-privileged material must be disclosed to the fullest extent possible without thereby disclosing the privileged material. If a privilege is asserted with regard to part of the material contained in a DOCUMENT, YOU must clearly indicate the portions as to which the privilege is claimed.

11.  To the extent a Document Request in Plaintiffs' First Request for Production Directed to Defendants in *Dumond*, is limited to "Funds" as defined therein, the *Forsythe* Plaintiffs request that the definition of FUNDS be used.

12. These Requests are continuing requests and require further and supplemental production by YOU as and whenever YOU acquire or locate additional DOCUMENTS between the time of this Request and the final resolution of this action.

**RELEVANT TIME PERIOD**

Unless otherwise indicated, these Requests seek DOCUMENTS created, used during, or concerning the time period specified in Plaintiffs' First Request for Production Directed to Defendants in *Dumond*, *i.e.*, January 1, 1995 through the present, including all DOCUMENTS concerning, in whole or in part, such period, or events or circumstances during such period, even though dated, prepared, generated, or received prior or subsequent to that period.

**DOCUMENT REQUESTS**

Plaintiffs hereby request all DOCUMENTS produced in response to Requests numbered 1-83 in Plaintiffs' First Request for Production Directed to Defendants in *Dumond*.

F1. All DOCUMENTS concerning all meetings held regarding any MFS MUTUAL FUNDS which explicitly or implicitly include information concerning the FUNDS that address REVENUE SHARING, DIRECTED BROKREAGE and/or SOFT DOLLARS arrangements concerning MFS, including, but not limited to, any and all minutes, notices for, and agendas of such meetings.

F2. All DOCUMENTS concerning REVENUE SHARING negotiations by the INVESTMENT ADVISER or DISTRIBUTOR regarding any MFS MUTUAL FUNDS which explicitly or implicitly include information concerning the FUNDS.

F3. All DOCUMENTS concerning any MFS MUTUAL FUNDS which explicitly or implicitly include information concerning the FUNDS, concerning: (a) the entities or persons to whom the REVENUE SHARING, DIRECTED BROKERAGE and SOFT DOLLAR payments were made; (b) the entities making such payments;

(c) agreements concerning REVENUE SHARING, DIRECTED BROKERAGE and SOFT DOLLAR arrangements; and (d) amounts paid for those arrangements.

F4. All DOCUMENTS concerning any MFS MUTUAL FUNDS which explicitly or implicitly include information concerning the FUNDS, concerning the amount or proportion of the INVESTMENT ADVISER'S or DISTRIBUTOR'S revenue, advisory or 12b-1 FEES, used to finance any REVENUE SHARING arrangements for the FUNDS.

F5. All DOCUMENTS concerning any MFS MUTUAL FUNDS which explicitly or implicitly include information concerning the FUNDS, concerning any agreements or negotiations between the INVESTMENT ADVISER, the DISTRIBUTOR, and/or AFFILIATES, concerning the amount or type of fees to be used to satisfy REVENUE SHARING arrangements.

F6. All DOCUMENTS concerning any MFS MUTUAL FUNDS which explicitly or implicitly include information concerning the FUNDS, concerning the dollar amount of payments broker-dealers have required to treat the FUNDS as a PREFERRED FUND(S) (either through cash payments or directed brokerage), including, but not limited to, DOCUMENTS concerning the basis for and calculation of such payments.

F7. All DOCUMENTS concerning any DISTRIBUTION PAYMENTS made by MFS regarding the FUNDS and all DOCUMENTS showing how these payments compare or relate to DISTRIBUTION PAYMENTS made for other MFS MUTUAL FUNDS.

F8. All DOCUMENTS concerning any MFS MUTUAL FUNDS which explicitly or implicitly include information concerning the FUNDS, concerning any

TRUSTEE'S awareness of the REVENUE SHARING and/or DIRECTED BROKERAGE agreements.

F9. All DOCUMENTS concerning any MFS MUTUAL FUNDS which explicitly or implicitly include information concerning the FUNDS, concerning the role of the DISTRIBUTOR in the creation or maintenance of the REVENUE SHARING arrangements.

F10. All DOCUMENTS concerning contests, bonuses and/or other rewards given to broker-dealers as part of any REVENUE SHARING and/or DIRECTED BROKERAGE arrangements concerning any MFS MUTUAL FUNDS which explicitly or implicitly include information concerning the FUNDS.

F11. All DOCUMENTS concerning any system used by any broker-dealer and/or INVESTMENT ADVISER to (a) track sales of MFS MUTUAL FUNDS shares by broker-dealers with which MFS had any STRATEGIC ALLIANCE arrangement; or (b) to track the extent to which MFS was using DIRECTED BROKERAGE to satisfy its STRATEGIC ALLIANCE obligations.

F12. All DOCUMENTS concerning any MFS MUTUAL FUNDS which explicitly or implicitly include information concerning the FUNDS, concerning any TRUSTEE'S receipt of research and/or reports regarding any SOFT DOLLARS, DIRECTED BROKERAGE or REVENUE SHARING practices relating to the FUNDS.

F13. All DOCUMENTS concerning any MFS MUTUAL FUNDS which explicitly or implicitly include information concerning the FUNDS, concerning the amount or proportion of DIRECTED BROKERAGE commissions of the FUNDS used to finance the REVENUE SHARING arrangements for these FUNDS.

F14. All DOCUMENTS concerning any MFS MUTUAL FUNDS which explicitly or implicitly include such information concerning the FUNDS, concerning the growth of any of the FUNDS, and/or discussing the total number of shares outstanding per month over the RELEVANT TIME PERIOD for any of the FUNDS.

F15. All DOCUMENTS concerning MFS MUTUAL FUNDS which explicitly or implicitly include information concerning the FUNDS, concerning the INVESTMENT ADVISER'S internal policies and procedures dealing with DIRECTED BROKERAGE, REVENUE SHARING and/or SOFT DOLLARS.

F16. All DOCUMENTS concerning any MFS MUTUAL FUNDS which explicitly or implicitly include information concerning the FUNDS, concerning any TRUSTEE'S decision on behalf of the FUNDS to pay service fees or shareholder account fees with basis points rather than with a cash dollar amount.

F17. All DOCUMENTS concerning any MFS MUTUAL FUNDS which explicitly or implicitly include information concerning the FUNDS, concerning any accounting of or for all fees received by MFS from the FUNDS, the expense ratios for the FUNDS and any changes in fees affecting the expense ratios during the RELEVANT TIME PERIOD.

F18. All DOCUMENTS concerning any MFS MUTUAL FUNDS which explicitly or implicitly include information concerning the FUNDS, concerning improved or added services, products, equipment, or the like, provided during the RELEVANT TIME PERIOD to the FUNDS, and any economic or other benefit to the FUNDS from any such improvement or addition.

F19. All DOCUMENTS concerning any MFS MUTUAL FUNDS which explicitly or implicitly include information concerning the FUNDS, concerning any actual or potential use of computers or software to determine or assist in determining investment decisions, other than use of computers and software to do standard investment research for the FUNDS, and/or concerning any other use of techniques for managing investments of the FUNDS.

F20. Any DOCUMENTS concerning techniques used by MFS to manage MFS MUTUAL FUNDS categorized as index funds.

F21. All DOCUMENTS concerning any MFS MUTUAL FUNDS which explicitly or implicitly include information concerning the FUNDS, concerning any discussion or analysis of whether the 12b-1 FEES paid by any of the FUNDS has provided any benefit to any of those funds.

F22. All DOCUMENTS concerning any MFS MUTUAL FUNDS which explicitly or implicitly include information concerning the FUNDS, concerning 12b-1 FEES collected from the FUNDS by the DISTRIBUTOR, including, but not limited to, how the 12b-1 FEES were collected, MFS' discretion over how the 12b-1 FEES were used, how and to what entities the 12b-1 FEES were paid out, the amount of 12b-1 FEES retained by MFS, and the securitization of the right to obtain any 12b-1 FEES.

F23. All DOCUMENTS concerning any MFS MUTUAL FUNDS which explicitly or implicitly include information concerning the FUNDS, concerning any discussion or analysis of the profitability to the INVESTMENT ADVISOR, the DISTRIBUTOR or any AFFILIATE thereby, of any relationships with broker-dealer to

which any of them made REVENUE SHARING, DIRECTED BROKERAGE, or SOFT DOLLAR payments.

F24. All DOCUMENTS concerning any MFS MUTUAL FUNDS which explicitly or implicitly include information concerning the FUNDS, concerning a comparison of how fees are determined for institutional MFS MUTUAL FUNDS or institutional shares of MFS MUTUAL FUNDS versus fees charged to non-institutional MFS MUTUAL FUNDS or shares.

F25. All DOCUMENTS concerning any reasons why any institutional MFS MUTUAL FUNDS or institutional shares of MFS MUTUAL FUNDS pay lower advisory or 12b-1 FEES than any non-institutional MFS MUTUAL FUNDS.

F26. All DOCUMENTS concerning marketing, promotional, or distribution activities for the benefit of institutional share Classes or institutional MFS MUTUAL FUNDS and negotiations or discussions regarding institutional share Classes or institutional MFS MUTUAL FUNDS actual or prospective payment of 12b-1 FEES or the reasons why a 12b-1 FEE would not be charged to any institutional share Classes or institutional MFS MUTUAL FUNDS.

F27. All DOCUMENTS concerning any MFS MUTUAL FUNDS which explicitly or implicitly include information concerning the FUNDS, produced to or provided by the Senior Executive appointed pursuant to the Market Timing Settlement of February 5, 2004.

F28. All DOCUMENTS identified in Section B of Defendants' Initial Disclosure Pursuant to Federal Rule of Civil Procedure 26(a)(1).

F29. All DOCUMENTS reflecting MFS' policies regarding the retention or destruction of DOCUMENTS.

Dated: May 31, 2006
Boston, Massachusetts

**MOULTON & GANS, P.C.**

By: /s/ Nancy Freeman Gans
Nancy Freeman Gans (BBO #184540)
55 Cleveland Road
Wellesley, Massachusetts 02481
(781) 235-2246

***Liaison Counsel For Plaintiffs***

**MILBERG WEISS BERSHAD & SCHULMAN LLP**
Jerome M. Congress
Janine L. Pollack
Kim E. Miller
Michael R. Reese
One Pennsylvania Plaza
New York, New York 10119-0165
(212) 594-5300

**WEISS & LURIE**
Joseph H. Weiss
Richard Acocelli
551 Fifth Avenue, Suite 1600
New York, New York 10176
(212) 682-3025

***Co-Lead Counsel***

**STULL STULL & BRODY**
Jules Brody
Aaron Brody
6 East 45th Street
New York, New York 10017
(212) 687-7230

**LAW OFFICES OF CHARLES J. PIVEN, P.A.**
Charles J. Piven, P.A.
Marshall N. Perkins
The World Trade Center - Baltimore
401 East Pratt Street, Suite 2525
Baltimore, Maryland 21202
(410) 986-0036

**SCHIFFRIN & BARROWAY, LLP**
Richard A. Maniskas
Marc A. Topaz
280 King of Prussia Road
Radnor, Pennsylvania 19087
(610) 667-7706

**GILMAN AND PASTOR LLP**
David Pastor (BBO#391000)
Stonehill Corporate Center
999 Broadway, Suite 500
Saugus, Massachusetts 01906
(781) 231-7850

***Other Plaintiffs' Counsel***

**CERTIFICATE OF SERVICE**

I, Anna C. Dover, hereby certify that on May 31, 2006, I caused a copy of the foregoing document to be served via electronic mail and overnight mail upon the following counsel for Defendants:

Jonathan A. Shapiro
Amanda Masselam
WILMER CUTLER PICKERING
HALE & DORR LLP
60 State Street
Boston, MA 02109

I further certify that the following Plaintiffs' counsel were also served with a copy of the foregoing document via regular U.S. mail:

| | |
|---|---|
| Nancy Freeman Gans<br>MOULTON & GANS<br>33 Broad Street, Suite 1100<br>Boston, MA 02109 | Charles J. Piven, P.A.<br>LAW OFFICES OF CHARLES J. PIVEN, P.A.<br>The World Trade Center - Baltimore<br>401 East Pratt Street, Suite 2525<br>Baltimore, MD 21202 |
| Jules Brody<br>STULL STULL & BRODY<br>6 East 45th Street<br>New York, NY 10017 | Richard Acocelli<br>WEISS & LURIE<br>551 Fifth Avenue, Suite 160<br>New York, NY 10176 |
| Richard A. Maniskas<br>SCHIFFRIN & BARROWAY, LLP<br>280 King of Prussia Road<br>Radnor, PA 19087 | David Pastor<br>GILMAN AND PASTOR, LLP<br>Stonehill Corporate Center<br>999 Broadway, Suite 500<br>Saugus, MA 01906 |
| Michelle H. Blauner<br>SHAPIRO HABER & URMY LLP<br>Exchange Place<br>53 State Street<br>Boston, MA 02109 | |

/s/ Anna C. Dover
Anna C. Dover