UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ERIC FORSYTHE, et al.,

                Plaintiffs,

v.

SUN LIFE FINANCIAL, INC., et al.,

                Defendants.

No. 04-10584-GAO

**DEFENDANTS' MEMORANDUM IN SUPPORT OF
THEIR MOTION FOR PROTECTIVE ORDER
CONCERNING THE STATUTORY DAMAGES PERIOD**

Pursuant to Federal Rules of Civil Procedure 26(b)(2) and 26(c), defendants submit this Memorandum of Law in support of their Motion for Protective Order Concerning the Statutory Damages Period.

**Introduction**

On March 25, 2004, plaintiffs filed this action alleging that defendants had breached their fiduciary duty with respect to the receipt of fees in violation of Section 36(b) of the Investment Company Act ("ICA"), as amended, 15 U.S.C. § 80a-35(b). The allegations in the Complaint referred to fees charged *before* the Consolidated Amended Complaint ("Complaint") was filed; and the Complaint did not purport to allege breaches of fiduciary duty with respect to agreements yet to be reached.[1] Nevertheless, plaintiffs assert that their Complaint permits them to challenge fee contracts after the date of the Complaint and *continuing* through the date of judgment in this action. In fact, as shown below, the damages permitted under Section 36(b) are limited to the

---

[1] Indeed, in their Complaint, plaintiffs purported to assert their Section 36(b) claim as a class claim with a class period ending in March 2004. Compl. ¶¶ 128, 158.

one-year period prior to the filing of the Complaint. This legal dispute is highly relevant to the scope of discovery, and to the extent of the burden, cost and expense that defendants will suffer from discovery.

Plaintiffs propounded 112 separate Rule 34 requests (the 83 Dumond requests plus 29 more of their own, spanning 50 pages). See Plaintiffs' First Request for the Production of Documents, Exhibit 1; Dumond Plaintiffs' First Request for Production, Exhibit 2 (incorporated by reference in Exhibit 1 at 1).[2] These 112 requests are both extremely broad in scope and highly granular. They encompass most areas of defendants' business, and seek detailed information with respect to many such areas. Collecting, reviewing, and producing documents in response to these broad requests may well be a multi-million dollar exercise involving enormous amounts of time, and that time and expense will expand substantially if plaintiffs are permitted essentially plenary discovery with respect to multiple years and (indeed) into the future.[3]

Defendants acknowledge, even though this case properly is about no more than the propriety of the fees charged to the plaintiffs between March 26, 2003 and March 25, 2004, that there will be documents created before and after those dates that are discoverable.[4] The parties have made significant progress toward an agreement regarding the parameters of discovery prior

---

[2] See also Defendants' Response to Plaintiffs' First Request for the Production of Documents, Exhibit 3; August 28, 2006 Letter from Defendants' Counsel to Plaintiffs' Counsel, Exhibit 4; September 26, 2006 Letter from Plaintiffs' Counsel, Exhibit 5.

[3] The increased cost of producing documents for later periods will become even more significant when the parties reach the second phase of discovery, electronic discovery.

[4] Defendants initially proposed a bright line limiting the scope of discovery to that prior to March 25, 2004, the date the Complaint was filed, which is nearly a year *after* the fund trustees last approved the fee schedule plaintiffs' challenge. Defendants still believe that most documents thereafter created are not likely to be relevant, and that it would be unduly burdensome to conduct a search of all documents created in subsequent years on the off chance that something might relate to the relevant year. Defendants concede, of course, that it is possible that documents dated after the Complaint was filed might contain information relating to the period between March 26, 2003, and March 25, 2004; and Defendants are willing to do a reasonable search for such documents. Defendants believe that it will require further discussion with plaintiffs to reach agreement about what kind of post-Complaint documents have actual relevance to the damage period, and where MFS should be looking for such documents.

to March 2003.[5] But defendants do not believe that the parties will be able to reach a workable agreement concerning post-March 2004 discovery without the intervention of the Court.

Defendants are already trying to produce documents in response to plaintiffs' broad requests to the extent that they bear on the fees charged in the year ending March 2004. The present dispute concerns the fact that so many of the documents created after March 2004 that are responsive to the 112 documents requests are unrelated to the fees charged and services provided during that one-year period. For example, plaintiffs seek all documents "relating to the scope and nature of the services that the Defendants or any of their affiliates perform for the Funds," and "concerning improved or added services, products, equipment, or the like, provided… to the Funds." They seek these documents for the period right up until the present (and beyond), even though broad discovery of the services MFS provided after March 2004 is irrelevant.

Defendants concede that some documents created after March 2004 that describe services MFS provided in the year before the Complaint was filed should be subject to production. But this does not make every later-created document describing a service relevant to claims addressing the fees charged for services in the past. Defendants believe that a similar narrowing analysis should be made of all 112 requests to ferret out that which is relevant to the statutory period. Defendants also believe that the parties will be able to agree on a practical means for addressing what documents are subject to discovery if the Court determines for what period plaintiffs are permitted any recovery.

---

[5] Plaintiffs originally requested all responsive documents from January 1, 1995 to the present. See Exhibit 1, at 9. In their letter of September 26, 2006, plaintiffs' counsel agreed to limit their requests to the period beginning on January 1, 2002, with rights reserved. See Exhibit 5 at fn.5. Defendants believe that it would be unduly burdensome to require MFS to conduct a broad search for over one hundred categories of documents twice, and that plaintiffs should be bound by their concession.

Accordingly, defendants seek an order that (1) plaintiffs in this action may recover damages in this case only with respect to fees charged for the period March 26, 2003 to March 25, 2004, and (2) discovery of documents created after March 25, 2004 shall be limited to documents that contain or reflect responsive information relating to the fees charged and services provided during the period March 26, 2003 to March 25, 2004.

**Argument**

I. *The Statute Is Clear On Its Face That The Damages Period Should Be Limited To The One-Year Period Prior to Commencement of the Lawsuit, and Case Law Supports This Interpretation.*

Section 36(b) both defines and limits the cause of action it created. It states that a security holder of a registered investment company may bring an action for certain amounts "paid by such investment company;" and it further provides that "No award of damages shall be recoverable for any period prior to one year before the action was instituted." 15 U.S.C. §80a-35(b). Accordingly, the statute plainly provides that a mutual fund shareholder may recover on behalf of a fund only amounts paid by the fund in the year prior to filing the complaint. The plain meaning of the statute is consistent with the interpretation of many courts, including the Supreme Court and the First Circuit.

The Supreme Court has defined a Section 36(b) claim as one in which "recovery is limited to actual damages *for a period of one year prior to suit*." Daily Income Funds v. Fox, 464 U.S. 523, 526 n.2 (1984) (emphasis added). The First Circuit reached the same conclusion, describing the statute's damages period as a "*short one-year… period*." Grossman v. Johnson, 674 F.2d 115, 122 (1st Cir. 1982) ("[P]laintiff invokes the short one-year limitation period on damages as sufficient reason for exempting § 36(b) cases from the demand provision of Rule 23.1… The truth is, however that ordinarily the demand requirement could change the particular

4

one-year period for which recovery was allowable but would not reduce the *one-year recovery period*...") (emphasis added).

Courts outside of this Circuit have read the statute similarly. See Green v. Nuveen Advisory Corp., 295 F.3d 738, 743 (7th Cir. 2002) ("Congress enacted §36(b) to provide a narrow federal remedy that 'is significantly more circumscribed than common law fiduciary duty doctrines.' For example... damages are recoverable only for the one-year period before filing the action."); Kahn v. Kohlberg, Kravis, Roberts & Co., 970 F.2d 1030, 1038 (2d Cir. 1992) (Section 36(b) "limits the period during which damages can accrue to one year prior to the filing of the action");[6] Fox v. Reich & Tang, Inc., 692 F.2d 250, 261 (2d Cir. 1982) ("Section 36(b) expressly limits recovery to excessive fees paid up to one year prior to the commencement of suit."); Gallus v. American Express Fin. Corp., No. 04-4498 (D. Minn. May 30, 2006), aff'd, No. 04-4498 (D. Minn. July 27, 2006) (adopting the view of "courts, including the Supreme Court, [that] have interpreted [§ 36(b)] to mean that recovery for damages is limited to the one-year period prior to the filing of the complaint")[7]; In re AllianceBernstein Mutual Fund Excessive Fee Litig., No. 04-4885, 2006 WL 74439, *2 (S.D.N.Y. Jan. 11, 2006) (Section 36(b)(3) "expressly limits recovery to the one-year period prior to the commencement of litigation"); Brever v. Federated Equity Mgmt. Co., No. 04-855, 2005 WL 3783636 (W.D. Pa. Nov. 7, 2005) ("damages are recoverable only for one year prior to the commencement of the action"); Krinsk v. Fund Asset Mgmt., Inc., No. 85-8428, 1986 WL 205, at *3 (S.D.N.Y. May 9,

---

[6] See also id. at 1037-38 ("There is no express time limit on bringing an action under §36(b), but the plaintiff may collect only those damages that have accrued in the prior year.").

[7] In Gallus, the Court held that "to the extent that Plaintiffs' discovery requests relate to post-Complaint damages, they are not relevant and Defendants need not respond." No. 04-4498 (D. Minn. May 30, 2006) at *14-15.

1986) ("Congress chose to limit recovery of damages by a shareholder to a short one-year period").[8]

## II. *The Structure of the Statute -- Requiring That New Advisory Agreements Be Renegotiated Each Year -- Supports The Conclusion that Damages are Limited to a One-Year Period.*

It is not accidental that the Supreme Court and virtually every other court to discuss the issue have concluded that Section 36(b) limits recoverable damages to a one-year period prior to suit. The one-year damages limitation fits into a statutory framework in which investment advisers are required to have a *new contract* (and thus *new fees*) negotiated and approved by independent trustees every year. See 15 U.S.C. § 80a-15(a)(2). Congress knew that this was the case, and its limitation of the Section 36(b) remedy to a one-year period strongly suggests that Congress intended that the "test" permitted by Section 36(b) would apply only those advisory agreements that were most recently approved at the time that the plaintiff files a complaint. See Brever v. Federated Equity Mgmt., 233 F.R.D. 429, 433 (W.D. Pa. 2005) ("The limitations placed on § 36(b) actions reflect the congressional intent to establish a means by which recently awarded management agreements can be policed, tested, and modified or rescinded under federal court review.").

Consistent with the law, the independent trustees of the MFS Funds participate in a process each year in which they review relevant facts, ask questions, negotiate, and enter into a one-year advisory agreement with MFS that determines the services to be provided and the fees to be charged for that one-year period. It is not the case that there is a single decision regarding fees, which is then not reviewed for a period of years. Quite to the contrary, each year MFS and

---

[8] While the Krinsk Court ultimately heard evidence from a period of time longer than the one-year statutory damages period, Krinsk v. Fund Asset Mgmt., Inc., 715 F. Supp. 472 (S.D.N.Y.1998), there is no suggestion that the defendants in that case ever objected to the admission of evidence from that broader time period. The parties' strategic judgments in that case are certainly not dispositive of the question of law presented here.

the fund trustees will address different facts and circumstances, including the evolving nature of the services provided by MFS, and changes in the competitive landscape and market forces. The composition of the board of trustees may change from year to year. Any of these changes, or others, might lead to changes in the fee structure upon which MFS and the trustees agree.

Accordingly, if plaintiffs' interpretation of the law and the discovery rules were correct, the trial of this action would address at least five separate decisions by the trustees to approve new agreements setting forth fees and services, and discovery in this case would reach every corner of MFS's business within those periods (subject to expansion should the trial date slip until after another fee determination is made). Plaintiffs' proposed interpretation would require that this Court accept that their 2004 complaint was somehow sufficient to allege breaches of fiduciary duty with respect to advisory agreements that had not yet even been negotiated, and supposed breaches that still have yet to occur. In addition, it would permit plaintiffs to intrude upon the process by which advisory fees are *negotiated in the future*. If plaintiffs can seek discovery of fee determinations as they evolve, they can monitor MFS' fee negotiations in real time – without having to demonstrate any basis for their claims that those current and future negotiations will result in the charging of fees disproportionate to the particular services rendered. This type of wide-ranging, multi-year inquiry is precisely the *opposite* of what Congress had in mind when it enacted Section 36(b). See Section III, *infra.*

### III. *The Legislative History of the ICA Also Supports Limiting Damages To The One-Year Period Prior to the Date the Complaint was Filed.*

The ICA has always required that the independent trustees of a registered investment company approve the investment adviser's contract annually. See 15 U.S.C. § 80a-15(a)(2). In 1970, Congress added Section 36(b) to permit a prompt test, in court, of the fairness of fee

contracts. See S. Rep. 91-184 at 5; see also 116 Cong. Rec. 39, 444 (1970) (statement of Rep. Staggers)(noting that "[b]oth the Senate and the House versions [of the bill enacting §36(b)] contain important provisions for testing the level of management fees."); Brever, 233 F.R.D. at 433. But the legislative history of the 1970 amendments shows that in enacting § 36(b) Congress did not intend to create a broad remedy, and it was instead focused (in light of the "unique structure of mutual funds") on a limited "mechanism by which the fairness of management contracts could be tested in court." See S. Rep. 91-184 at 2, 5; In re AllianceBernstein Mut. Fund Excessive Fee Litig., 2006 WL 74439, at *2 n.3 (Congress limited recovery to one year in order to "create a limited mechanism with which to test and rectify advisory fees").[9]

The SEC originally proposed the legislation enacting Section 36(b). That proposal contained a damages limitation that was the same as the one ultimately enacted, except that the SEC proposed a two-year limit and Congress favored a more restrictive one-year limit. More specifically, the Commission initially proposed the following language: "No action shall be maintained pursuant to this subsection to recover compensation paid more than two years prior to the date on which such action was instituted." The chairman of the SEC explained to Congress that this language meant that "only the adviser would be liable and then *only for the portion of any fees paid within two years of the commencement of a suit found to be excessive.*" Investment Company Act Amendments of 1967: Hearing on H.R. 9510 Before the Subcomm. On Commerce and Finance of the Committee on Interstate and Foreign Commerce, 90th Cong. 700 (1967) (emphasis added).

---

[9] See also Krinsk v. Fund Asset Mgmt., Inc., 1986 WL 205, at *4 (Congress intended "a mechanism by which the *current* level of management fees would be policed, tested, and if necessary, rectified") (emphasis added).

8

The fact that the SEC proposed limiting language and described it as permitting a recovery only within a bounded period, and that Congress's only change in this regard was to make the bounded period *shorter*, supports the conclusion that Congress did not intend to permit a broad, open-ended action (rolling forward until trial), and instead intended the 36(b) "test" to apply only to a one-year period. Brever, 233 F.R.D. at 433 (Congress intended § 36(b) to be a testing mechanism, and to prevent the statute from being used as a basis for "open-ended litigation and nuisance suits" against investment advisors and their affiliates) (citing to H.R. Rep. No. 1382, 91st Cong., 1st Sess. 8, 38 (1970)); see also Green v. Nuveen Advisory Corp., 295 F.3d 738, 743 (7th Cir. 2002) ("Congress enacted §36(b) to provide a narrow federal remedy that 'is significantly more circumscribed than common law fiduciary duty doctrines.' For example... damages are recoverable only for the one-year period before filing the action.")

Accordingly, Congress did not envision some type of "rolling" or real time oversight by shareholders or the courts of successive fee setting processes, and instead intended that claims under Section 36(b) would not apply to any period longer than the year just prior to the filing of the Complaint.

### IV. *The Single Case Identified By Plaintiffs Does Not Support Extending The Damages Period Beyond The One-Year Period Provided For By Statute.*

The only case that plaintiffs have identified in support of their proposition that they are entitled to damages (and thus broad discovery) after the date of the Complaint is Hunt v. Invesco Funds Group, Inc., No. H-04-02555, 2006 WL 1581846 (S.D. Tex. June 5, 2006) ( "Aim I"), *later decision at* 2006 WL 1751900 (June 22, 2006) ( "Aim II"). See September 26, 2006 Letter from Plaintiffs' Counsel, Exhibit 5, at 6 (citing Aim I and Aim II). Yet, as even plaintiffs concede in their letter, the Aim Court made no ruling with respect to the relevant damages period in that case. See *Aim II* at *4. Furthermore, neither Aim I nor Aim II made any ruling with

respect to the appropriate parameters of discovery for the period *after* the Complaint was filed. To the contrary, both decisions explicitly address only whether, given the limited damages period under Section 36(b), plaintiffs could seek discovery "relating to periods prior to the one year before this action was commenced." Aim I at *26; see also Aim II at *4. As Aim II makes clear, that Court intended *only* to rule on whether plaintiffs' discovery "could encompass the time *preceding* the one year prior to the filing of Plaintiffs' complaints" (an issue not requiring intervention by the Court at this time, as the parties are presently making efforts to compromise on such discovery and have not reached an impasse). Thus, Aim has no bearing on the present motion.
USIDOCS 5879614v3

## Conclusion

For all of these reasons, the Court should enter an Order that: (1) plaintiffs in this action may recover damages in this case only with respect to fees collected for the period March 26, 2003 to March 25, 2004, and (2) discovery of documents created after March 25, 2004 shall be limited to documents that contain or reflect responsive information relating to the period from March 26, 2003 to March 25, 2004.

MASSACHUSETTS FINANCIAL SERVICES COMPANY and MFS FUND DISTRIBUTORS, INC.

By their attorneys,

/s/ Jonathan A. Shapiro
Jeffrey B. Rudman (BBO #433380)
William H. Paine (BBO #550506)
Michael Bongiorno (BBO#558748)
Jonathan A. Shapiro (BBO #567838)
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, MA 02109
Tel: (617) 526-6000
Fax: (617) 526-5000

Date: October 11, 2006

## CERTIFICATE OF SERVICE

      I, Jennifer Carpenter, hereby certify that on October 11, 2006, I caused a copy of the foregoing document to be served either electronically or by overnight mail upon counsel for Plaintiffs.

                                    /s/ Jennifer Carpenter
                                    Jennifer Carpenter

Dated: October 11, 2006