**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| ERIC FORSYTHE, et al., | : | |
| | : | |
| Plaintiffs | : | No. 04-10584-GAO |
| | : | |
| v. | : | |
| | : | |
| SUN LIFE FINANCIAL, INC., ET AL., | : | |
| | : | |
| Defendants. | : | |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR**
**PROTECTIVE ORDER CONCERNING THE STATUTORY DAMAGES PERIOD**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................................1

ARGUMENT ..............................................................................................................................3

    I.       DEFENDANTS HAVE FAILED TO SATISFY THEIR HEAVY BURDEN FOR A PROTECTIVE ORDER ...............................................................................3

           A.     The Standard For The Granting of A Protective Order is High......................3

           B.     Defendants Have Failed To Satisfy The Standard For A Protective Order ........................................................................................................3

    II.     THE DAMAGES PERIOD DOES NOT END ON THE DATE THE ACTION WAS INSTITUTED AND INSTEAD CONTINUES THROUGH JUDGMENT ................................................................................................9

           A.     The Fact that Advisory Contracts Last One Year Does Not Govern the Damages Period For Section 36(b) Claims.................................9

           B.     The Text and Legislative History of Section 36(b) Support Continuing Damages....................................................................................10

           C.     Applicable Case Law Supports a Continuing Damages Period Under Section 36(b) ..............................................................................................15

CONCLUSION...........................................................................................................................20

# TABLE OF AUTHORITIES

**Page**

## FEDERAL CASES

*In re AllianceBernstein Mut. Fund Excess. Fee Litig.*,
    2006 U.S. Dist. LEXIS 939 (S.D.N.Y. January 11, 2006) .....................................................18

*Anderson v. Cryovac, Inc.*,
    805 F.2d 1 (1st Cir. 1986)..........................................................................................................3, 8

*Baker v. Liggett Group, Inc.*,
    132 F.R.D. 123 (D. Mass. 1990)....................................................................................................3

*Batra v. Investors Research Corp.*,
    144 F.R.D. 97 (W.D. Mo. 1992).....................................................................................................4

*Blount Int'l, Ltd. v. Schuylkill Energy Res., Inc.*,
    124 F.R.D. 523 (D. Mass. 1989)....................................................................................................5

*Brever v. Federated Equity Mgmt. Co.*,
    233 F.R.D. 429 (W.D. Pa. 2005) .................................................................................................18

*Bruno & Stillman, Inc. v. Globe Newspaper Co.*,
    633 F.2d 583 (1st Cir. 1980).........................................................................................................5

*Daily Income Fund v. Fox*,
    464 U.S. 523 (1984)........................................................................................................... *passim*

*Dennis Joslin Co., LLC v. Yoffe*,
    2003 U.S. Dist. LEXIS 6578 (E.D. Pa. 2003) .............................................................................1

*Digital Equip. Corp. v. Currie Enterprises*,
    1992 U.S. Dist. LEXIS 17784 (D. Mass. Feb. 12, 1992) ...........................................................8

*Eagle Comtronics, Inc. v. Northeast Filter Co.*,
    1991 U.S. Dist. LEXIS 16965 (N.D.N.Y. 1991) .......................................................................17

*Fox v. Reich & Tang, Inc.*,
    692 F.2d 250 (2d Cir. 1982).................................................................................................15, 17

*Gallus v. American Express Fin. Corp.*,
    No. 04-4498 (D. Minn. May 30, 2006)..........................................................................5, 15, 19

*Green v. Nuveen Advisory Corp.*,
    295 F.3d 738 (7th Cir. 2002) ......................................................................................................18

*Grossman v. Johnson*,
    674 F.2d 115 (1st Cir. 1982).......................................................................................................17

*Herbert v. Lando*,
   441 U.S. 153 (1979)...........................................................................4

*Hogar Agua y Vida en el Desierto v. Suarez-Medina*,
   36 F.3d 177 (1st Cir. 1994).............................................................12

*Hunt v. Invesco Funds Group, Inc.*,
   2006 U.S. Dist. LEXIS 40944 (S.D. Tex. June 5, 2006) .........................5

*Hunt v. Invesco Funds Group, Inc.*,
   2006 U.S. Dist. LEXIS 42064 (S.D. Tex. June 22, 2006) ..................5, 16

*Kahn v. Kohlberg, Kravis, Roberts & Co.*,
   970 F.2d 1030 (2d Cir. 1992)...........................................................18

*Klonoski v. Mahlab*,
   156 F.3d 255 (1st Cir. 1998).............................................................4

*Krasner v. Dreyfus Corp.*,
   90 F.R.D. 665 (S.D.N.Y. 1981) .......................................................16

*Krinsk v. Fund Asset Mgmt., Inc.*,
   715 F. Supp. 472 (S.D.N.Y. 1988)....................................................18

*Krinsk v. Fund Asset Mgmt., Inc.*,
   1986 U.S. Dist. LEXIS 25691 (S.D.N.Y. May 9, 1986) .......................18

*Leinoff v. Louis Milona & Sons, Inc.*,
   726 F.2d 734 (Fed. Cir. 1984)..........................................................16

*Olmsted v. Pruco Life Ins. Co.*,
   283 F.3d 424 (2d Cir. 2002).............................................................11

*Oppenheimer Fund v. Sanders*,
   437 U.S. 340 (1978).........................................................................4

*Spalding & Evenflo Cos. v. Acushnet Co.*,
   718 F. Supp. 1023 (D. Mass. 1989) ...................................................17

*Tarlov v. Paine Webber Cashfund, Inc.*,
   559 F. Supp. 429 (D. Conn. 1983).................................................15, 16

*Winkelman v. General Motors Corp.*,
   39 F. Supp. 826 (S.D.N.Y. 1940).......................................................14

## STATE CASES

*Robbins v. Sanders*,
    890 So. 2d 998 (Ala. 2004) ..................................................................................13

*Schreiber v. Bryan*,
    396 A.2d 512 (Del. Ch. 1978) ..............................................................................14

## DOCKETED CASES

*Dumond v. Massachusetts Financial Services Co.*,
    Civil Action No. 04-11458 (GAO) ........................................................................2

*Gallus v. American Express Fin. Corp.*,
    No. 04-4498 (D. Minn. May 30, 2006) .......................................................5, 15, 19

## FEDERAL STATUTES

35 U.S.C. § 286 ..........................................................................................................16

15 U.S.C. § 80a-35(b) .........................................................................................1, 6, 10

Fed. R. Civ. P. 26(b)(1) ..............................................................................................1, 4

## OTHER AUTHORITIES

H.R. Rep. No. 1382, 91st Cong., 1st Sess., 7 (1970) ..................................................14

S. Rep. 91-184 .....................................................................................................6, 13, 14

## PRELIMINARY STATEMENT

Plaintiffs Eric Forsythe and Richard Koslow ("Plaintiffs") submit this Memorandum of Law in opposition to Defendants' Motion for Protective Order Concerning the Statutory Damages Period (the "Motion" or "Def. Mot."). By their Motion, Defendants seek an order that: (1) plaintiffs be prohibited from seeking any discovery after March 25, 2004 except to the extent that documents created after that date contain or reflect responsive information relating to the March 25, 2003[1] to March 25, 2004 so-called "damages" period; and (2) the damages period for Defendants' continuing breach of fiduciary duty under § 36(b) of the Investment Company Act of 1940 ("ICA"), as amended, 15 U.S.C. § 80a-35(b), does not extend past March 25, 2004.[2] Defendants' motion should be denied on both counts.

Defendants' motion does not meet the heavy burden required for a protective order and should be denied. Contrary to Defendants' assertions, the length of the damages period under § 36(b) does not control what documents are relevant to this case. This is so because Fed. R. Civ. P. 26(b)(1) ("Rule 26(b)(1)") provides that information is relevant if it is "reasonably calculated to lead to the discovery of admissible evidence," but does not limit relevant evidence to that within a claim's limitation period. *See, e.g., Dennis Joslin Co., LLC v. Yoffe*, 2003 U.S. Dist. LEXIS 6578, at *5 (E.D. Pa. 2003). There are undoubtedly numerous documents which were created after, and concern the period after, March 25, 2004 which will include information relevant to Defendants' fees in prior years and how those fees were set. These documents are

---

[1] Defendants erroneously assert that the damages period begins on March 26, 2003. Def. Mot. at 2, 4. However, this Court has expressly held that Plaintiffs' § 36(b) claim begins on March 25, 2003. (Docket No. 101, at 24, 29).

[2] Defendants have conceded in their brief that they are willing to do a "reasonable search" for documents dated after March 25, 2004 that relate specifically to the period from March 25, 2003 to March 25, 2004 because these documents may contain information relevant to what Defendants believe is the one year damages period. Def. Mot. at 2 n. 4.

unquestionably relevant to determining Defendants' liability as well as actual damages available to Plaintiffs.

Defendants' Motion is simply an attempt to fcut off discovery and hinder Plaintiffs' prosecution of this action. Defendants have had nearly seven months to gather certain highly relevant categories of documents requested by Plaintiffs in this action.[3] Yet, during the five months since Plaintiffs served their First Document Request, Defendants have produced: (1) seven boxes of documents containing only materials sent to the boards of trustees of the Massachusetts Financial Services complex of funds (the "MFS Funds") (the "board materials"), a great majority of which is dated before March 25, 2003, the beginning of Plaintiffs' damages period; (2) another box containing public filings; and (3) a CD containing documents relating to revenue sharing arrangements and the amounts paid under those arrangements, most of which, if not all, relate to the period between 2000 and 2003. Defendants should not be permitted to use discovery motions as a pretext to avoid producing documents relevant to Plaintiffs' claim.

The portion of Defendants' motion attempting to truncate the damages period under § 36(b) must also fail because § 36(b) is silent as to damages continuing beyond the filing of the initial complaint, and to limit recoverable damages is contrary to the legislative history of the statue, the applicable case law, and the nature of claims involving continuing breaches of fiduciary duty in general and § 36(b) claims in particular. Accordingly, for the reasons set forth herein, Plaintiffs respectfully request that the Court deny Defendants' Motion in its entirety.

---

[3] Plaintiffs served their First Request for the Production of Documents to Defendants Massachusetts Financial Services Company ("MFS") and MFS Distributors, Inc. ("MFD"), on May 31, 2006 ("Plaintiffs' First Document Request"). Plaintiffs' Document Request wholly adopted the First Request for Production Directed to Defendants served by the plaintiffs in *Dumond v. Massachusetts Financial Services Co.*, Civil Action No. 04-11458 (GAO) ("*Dumond* plaintiffs") two months earlier, on March 28, 2006 ("*Dumond* Request").

## ARGUMENT

**I.    DEFENDANTS HAVE FAILED TO SATISFY THEIR HEAVY BURDEN FOR A PROTECTIVE ORDER**

Defendants claim that they should not be required to produce any post-filing documents because it would be too burdensome and expensive and because the § 36(b) damages period ends with the filing of the complaint.  However, Defendants have failed to satisfy their heavy burden for a protective order granting them a blanket prohibition on the production of all post-filing documents because such documents are plainly relevant to Plaintiffs' § 36(b) claim under broad federal discovery principles irrespective of the damages period.

**A.    The Standard For The Granting of A Protective Order is High**

Under Rule 26(c), a protective order is only granted upon a showing of good cause that a party needs to be protected from "annoyance, embarrassment, oppression or undue burden and expense."  In this Circuit, courts have held that "a finding of good cause must be based on a particular factual demonstration of potential harm, not on conclusory statements."  *Baker v. Liggett Group, Inc.*, 132 F.R.D. 123, 125 (D. Mass. 1990) (*citing Anderson v. Cryovac, Inc.*, 805 F.2d 1, 7 (1st Cir. 1986)).  Here, Defendants have not shown such "good cause" because they have not shown any "potential harm."

**B.    Defendants Have Failed To Satisfy The Standard For A Protective Order**

The crux of Defendants' arguments regarding limiting the scope of discovery is that the documents Plaintiffs seek are not relevant because "many of the documents created after March 2004 that are responsive to [Plaintiffs' First Document Requests] are unrelated to the fees charged and services provided during that one-year period." Def. Mot. at 3.  In so arguing, Defendants ignore the broad scope of information that is considered relevant to a § 36(b) claim

under the Federal Rules and applicable case law and fail to meet the heavy burden required for demonstrating that a court should grant a protective order.

The information Plaintiffs seek is unquestionably relevant to their § 36(b) claim and thus should not be limited by a protective order.  Under Rule 26(b)(1), discovery is not limited to admissible evidence.  Fed. R. Civ. P. 26(b)(1); *see also Oppenheimer Fund v. Sanders*, 437 U.S. 340, 351-52 (1978); *Klonoski v. Mahlab*, 156 F.3d 255, 266-267 (1st Cir. 1998).  Rather, "[p]arties may obtain discovery regarding any matter, not privileged, that is ***relevant*** to the claim or defense of any party."  Fed. R. Civ. P. 26(b)(1) (emphasis added).  Relevant information need only be "reasonably calculated to lead to the discovery of admissible evidence."  *Id.*  On more than one occasion, the Supreme Court has declared that the discovery rules of the Federal Rules of Civil Procedure "are to be accorded a broad and liberal treatment to effect their purpose of adequately informing the litigants in civil trials."  *Herbert v. Lando*, 441 U.S. 153, 177 (1979); *see Oppenheimer Fund, Inc. v Sanders*, 437 U.S. at 351 ("discovery is not limited to issues raised by the pleadings . . .  Nor is discovery limited to the merits of a case"); *see also Klonoski*, 156 F.3d at 267 ("the plain language of this Rule 26(b)(1) contemplates wide-ranging discovery to the fullest possible extent").  Moreover, no *per se* rule exists to bar discovery concerning events which occur after the date a § 36(b) action is filed.  *See Dennis*, 2003 U.S. Dist. LEXIS 6578, at *5 ("Limitations periods do not establish the time boundaries on discovery of relevant evidence."); *Batra v. Investors Research Corp.*, 144 F.R.D. 97, 98 (W.D. Mo. 1992) ("The court is unaware of any case law or statute which provides that the limitations period establishes the time boundaries for relevant evidence").  Therefore, the scope of discovery in this action will not be affected by this Court's opinion on the damages period.

At least two other federal court decisions affirmatively support Plaintiffs' position. Recently, in a similar § 36(b) action, a district court in the Fifth Circuit ordered the defendants to produce documents relating to "the period of five years immediately prior to the filing of Plaintiffs' complaints." *Hunt v. Invesco Funds Group, Inc.*, 2006 U.S. Dist. LEXIS 40944, at *26 (S.D. Tex. June 5, 2006) ("*Aim I*"). The court reasoned that even if "[p]laintiffs can only recover damages for [a] one-year period[, it] does not mean, however, that evidence relating to any time outside of this period is irrelevant." *Id.*

In a second opinion, rendered a few weeks later, the *Aim* court clarified certain statements made in *Aim I* and specified that it "did not intend its statements regarding the limitation of damages under the ICA to constitute a ruling on the appropriate damages period for this case, nor did it intend its statements to be a ruling as to whether or not Plaintiffs can recover damages for continuing violations of the ICA during the period following the filing of their complaints." *Aim II*, 2006 U.S. Dist. LEXIS 42064, at *4. Contrary to Defendants' assertion (Def. Mot. at 9-10), *Aim II* did in fact make a ruling with respect to the appropriate parameters of discovery for the period ***after*** the action was instituted. The *Aim* court clarified that it "did not intend its holding to preclude discovery relating to the period ***following*** the filing of the Plaintiffs' complaints." *Aim II*, 2006 U.S. Dist. LEXIS 42064, at *6 (emphasis added). The court then ordered the defendants to "produce discovery relating to the period of time ***following*** the filing of Plaintiffs' complaints." *Id.* at *6-7 (emphasis added).

In *Gallus,* No. 04-4498 (D. Minn. May 30, 2006), an unreported decision Defendants cite to support their argument[4], the court ordered the parties to meet and confer regarding the production of post-complaint liability discovery because it believed that "[b]ecause post-complaint liability discovery could arguably lead to the discovery of admissible evidence." *Id.* at 15.[5]   Therefore, even if this Court applied a one-year period to Plaintiffs' § 36(b) claim, Defendants have a duty to produce all relevant documents relating to the period between March 25, 1999 to the present,[6] regardless of when the documents were created or what the damages period is.

Moreover, Defendants' argument that discovery should be limited ignores the remedy available under § 36(b), which expressly limits damages to ***actual damages*** resulting from Defendants' breach of their fiduciary duties (*see* 15 U.S.C. § 80a-35(b)(3)) and the range of facts Congress intended the court to review to determine liability.  In adopting the present version of § 36(b), "Congress decided not to rely solely on the fund's directors to assure reasonable adviser fees, notwithstanding the increased disinterestedness of the board." *Daily Income*, 464 U.S. at

---

[4]  The *Gallus* court held that § 36(b) "damages are limited to the one year period before the filing of the action." *Gallus*, No. 04-4498, at 15.  As explained below, this result should not be followed.

[5] While courts have limited the scope of discovery to prevent a lawsuit from becoming a vehicle for discovering a right of action (*see Bruno & Stillman, Inc. v. Globe Newspaper Co.*, 633 F.2d 583, 597 (1st Cir. 1980) ("As a threshold matter, the court should be satisfied that a claim is not frivolous, a pretense for using discovery powers in a fishing expedition."); *Blount International, Ltd. v. Schuylkill Energy Resources, Inc.*, 124 F.R.D. 523, 526 (D. Mass. 1989), this Court has already held that Plaintiffs adequately pled their § 36(b) claim against Defendants, and that their claim is not frivolous.

[6] As expressed in Plaintiffs' Letter to Defendants dated September 26, 2006 (Ex. 5 to Def. Mot.), in the spirit of compromise and in order to expedite the discovery process, at this stage of discovery, Plaintiffs are willing to accept documents relating to the period beginning on January 1, 2002 through the present.  However, Plaintiffs reserved their right to seek documents relating to the period beginning on March 25, 1999 through the present. as stated in Plaintiffs' First Document Request and that of the *Dumond* plaintiffs

540.   Rather, as described in the Senate Report accompanying the final version of the statute contemplated:

> In the event that court action is brought to enforce this fiduciary duty of the investment adviser as to compensation or payments received by him, **_it is intended that the court look at all the facts in connection with the determination and receipt of such compensation including all services rendered_** to the fund or its shareholders and as to whether the adviser has properly acted as a fiduciary in relation to such compensation.  In the case of fund complexes, this could, under certain circumstances, include consideration of services rendered by such investment advisers to other funds in such complex and compensation or payments made by such other funds for such services.

S. Rep. 91-184, at 15 (emphasis added).  Clearly, Congress took a broad view of the types of facts that would be relevant to prove liability as well as actual damages under § 36(b).

Documents created or concerning the period after March 25, 2004 are relevant because they will likely analyze actions taken in prior years and may lead to admissible evidence including, among other things, relevant comparisons.  Plaintiffs must have access to these documents in order to prove both liability and actual damages, including the types of non-monetary damages available.  Moreover, evidence of Defendants' continuing breach of their fiduciary duties is unquestionably relevant to Plaintiffs' § 36(b) claim regardless of whether the damages period runs for only one year or until the date of judgment.

To date, Defendants have produced seven boxes consisting of board materials, most of which are dated before March 25, 2003, the beginning of Plaintiffs' damages period.  Amongst the board materials are documents that were provided to the Board committee responsible for reviewing the information necessary to evaluate the terms of the investment advisory and distributor agreements to the Boards of Trustees for the MFS Funds (the "Blue Books").  Each of these Blue Books contains historical information relating to developments that occurred since the prior year's review, as well as prospective information relating to the upcoming year. Defendants, however, only produced the 2002 and 2003 Blue Books.  The 2004, 2005, and 2006

Blue Books undoubtedly also contain historical information which will be relevant to Plaintiffs' ability to assess Defendants' liability and actual damages.

As demonstrated above, Plaintiffs' discovery requests are relevant to their § 36(b) claim. Yet Defendants also argue that producing the documents Plaintiffs request would be burdensome and expensive. Def. Mot. at 2-3. As previously explained, however, conclusory assertions of burden and expense such as the ones Defendants raise are not enough to show the good cause needed for a protective order. *See Digital Equipment Corp. v. Currie Enterprises*, 1992 U.S. Dist. LEXIS 17784, at *5 (D. Mass. Feb. 12, 1992) (*citing Anderson v. Cryovac, Inc.*, 805 F.2d 1, 7 (1st Cir. 1986)).

Defendants make their present Motion in order to cut off Plaintiffs' discovery efforts. Plaintiffs have attempted to be extremely flexible and work with Defendants to expedite discovery. In Plaintiffs' September 26, 2006 letter to Defendants (*see* Ex. 5 to Def. Mot.),[7] Plaintiffs prioritized a list of the key categories of documents and agreed to accept documents relating to the period beginning on March 25, 1999 through the present. (This letter is incorporate by reference herein). However, the only documents Defendants have produced since receiving this letter is one box of public filings and a CD containing documents relating to revenue sharing arrangements and the amounts paid pursuant to those arrangements. While the documents on the CD are highly relevant to Plaintiffs' § 36(b) claim, most of these documents, if not all, concern the period between 2000 and 2003. Even if the damages period is limited to one year as Defendants propose, documents concerning the period from 2004 to the present are highly relevant to Plaintiffs' proof of both liability and actual damages. Therefore, based on the

---

[7] Prior to this letter, Defendants only produced the seven boxes of board materials. No internal documents had been produced.

Federal Rules, applicable case law, language of § 36(b) and its accompanying Senate Reports, even assuming that a one-year period does apply to Plaintiffs' § 36(b) claim, which Plaintiffs do not concede, Defendants have a duty to produce all relevant documents relating to the period between March 25, 1999 to the present, regardless of when the documents were created or what the damages period is.

**II.    THE DAMAGES PERIOD DOES NOT END ON THE DATE THE ACTION WAS INSTITUTED AND INSTEAD CONTINUES THROUGH JUDGMENT**

As stated above, this discovery motion does not turn on the Court's resolution of the length of the damages period under § 36(b) because the documents Plaintiffs seek are relevant to their claim irrespective of the damages period. Nonetheless all pertinent authority lead to the conclusion that in a § 36(b) claim, damages are not limited to one year but rather continue through judgment to the extent that Plaintiffs can show at trial continuing wrongdoing as alleged in their complaint.

**A.    The Fact that Advisory Contracts Last One Year Does Not Govern the Damages Period For Section 36(b) Claims**

Defendants argue that the fact that new advisory agreements are renegotiated each year means that Congress must have intended for Plaintiffs to be limited to a one year damages period. Def. Mot. at 6-8. In so arguing, Defendants attempt to tether the § 36(b) damages period to a single advisory contract. What Defendants ignore in making this argument is that because the damages period is governed by the date plaintiffs file their complaint, every § 36(b) claim necessarily involves at least two separate advisory contracts. For example, if an advisory contract covered the period from March 26, 2003 to March 26, 2004 and the plaintiffs filed their § 36(b) claim in September, 2006, the damages period would cover, at minimum, the last six months of the preceding contract and the first six months of the contract in effect at the time of the filings. This reality eliminates Defendants' argument that the damages period should be

limited to the same year of the advisory contract or even a single year.  Moreover, if Congress

had meant to limit claimants to damages based on a single advisory contract, it would have

included such a limitation in the statute itself.  Furthermore, accepting Defendants' premise

would lead to the unlikely conclusion that Congress, in passing the statute, sought to inundate the

courts with a plethora of lawsuits to address wrongdoing by defendants that remain uncorrected

during the course of an existing § 36(b) lawsuit, which would most certainly last longer than a

year.  In such a scenario, new complaints alleging the same exact wrongful conduct by the exact

same defendants complained of in an existing § 36(b) action would need to be filed annually in

order to recover damages for continuing wrongdoing based on similar annual advisory contracts.

This would not only be contrary to the purpose of § 36(b), which is to "ensure reasonable adviser

fees" (*Daily Income Fund v. Fox*, 464 U.S. 523, 540 (1984)), but would result in judicial

inefficiency which could not have been intended.[8]

**B.    The Text and Legislative History of Section 36(b) Support Continuing Damages**

Defendants argue that § 36(b) is "clear on its face" and "plainly provides that a mutual

fund shareholder may recover on behalf of a fund only amounts paid by the funds in the year

prior to filing the complaint."  Def. Mot. at 4.  This is plainly not true.  Far from being "clear" on

its face on the subject, § 36(b) actually contains no limitation on post-filing damages.  Moreover,

Defendants' interpretation conflicts with the text and extensive legislative history of § 36(b), as

explained below.

---

[8] Defendants' approach, requiring annual similar or even identical lawsuits to be filed by
aggrieved investors under § 36(b) claim, would encourage forum shopping and inconsistent
rulings by different courts against the same defendants for the same continuing conduct.  For
example, a § 36(b) plaintiff could file an annual lawsuit in different courts against the same
defendants for the same continuing conduct and get conflicting rulings from different judges.

Section 36(b) imposes a fiduciary duty on an investment company's adviser "with respect to the receipt of compensation for services paid by the company." *Daily Income*, 464 U.S. at 534-35. In relevant part, § 36(b) provides that:

> No such action shall be brought or maintained against any person other than the recipient of such compensation or payments, and no damages or other relief shall be granted against any person other than the recipient of such compensation or payments. No award of damages shall be recoverable for any period ***prior to one year before the action was instituted***. Any award of damages against such recipient shall be limited to the ***actual damages resulting from the breach of fiduciary duty*** and shall in no event exceed the amount of compensation or payments received from such investment company, or the security holders thereof, by such recipient.

15 U.S.C. § 80a-35(b)(3) (emphasis added). While Congress limited the available remedies to "actual damages," started the damages period at one year prior to the institution of the action, and defined exactly who may be held liable, Congress remained silent regarding the end of the damages period. Given this silence, the text of the statute is evidence of Congress's intent to permit plaintiffs to recover damages for any period after one year before the action is instituted, including damages resulting from uncorrected wrongful conduct continuing to the date of judgment.

The express language of § 36(b)(3) limits how far back Plaintiffs may go for damages and restricts the recoverable amount to "actual damages" but does not set a limit on the damages period going forward. When the language of the statute is unambiguous, as is the case with § 36(b), courts need look no further than the statute itself to glean its meaning. *See, e.g.*, *Olmsted v. Pruco Life Ins. Co.*, 283 F.3d 424, 435 (2d Cir. 2002) ("Where the text of a statute is unambiguous, 'judicial inquiry is complete[] except in rare and exceptional circumstances,' and legislative history instructive only upon 'the most extraordinary showing of contrary intentions.'") (*quoting Garcia v. United States*, 469 U.S. 70, 75, 83 (1985)). Given the careful choice of language and the express limitations on damages set forth within the statute, if

11

Congress had intended to limit damages to a one year period, it would have explicitly prohibited recoverable damages for the period *after* an action is instituted or explicitly restricted damages to the period *between* the date that the action was instituted and one year before that date.  In short, Congress had no intention of limiting "the actual damages resulting from the breach of fiduciary duty" if, as here, such damages arise from the same uncorrected conduct complained of in an existing §36(b) complaint.  In short, if Plaintiffs can show at trial violations of §36(b) through trial as described n their complaint, all such damages are recoverable.

Even if the text of § 36(b)(3)'s damages limitation is viewed as ambiguous, Plaintiffs' interpretation applies under the well-settled presumption that ambiguous language in a remedial statute should be construed broadly to effectuate its purpose.  *See Hogar Agua y Vida en el Desierto v. Suarez-Medina*, 36 F.3d 177, 181 (1st Cir. 1994) ("ambiguous language in a remedial statute is entitled to a generous construction consistent with its reformative mission").  The legislative history strongly suggests that, in adopting § 36(b), Congress did not intend to restrict plaintiffs from recovering actual damages resulting from a continuing breach of fiduciary duty.  As the then-Chairman of the Securities and Exchange Commission ("SEC") explained, the § 36(b) statute that the SEC initially proposed:

> in a number of respects is less demanding than the common law rules as they apply to fiduciary, [but] would impose on the plaintiff the burden of proving unreasonableness; there would be no personal liability attaching to the directors, only the adviser would be liable and then *only for the portion of any fees paid within two years of the commencement of a suit found to be excessive*.

*See* Investment Company Act Amendments of 1967: Hearing on H.R. 9510 and 9511 Before the Subcomm. on Commerce and Finance of the Committee on Interstate and Foreign Commerce, 90th Cong. ("ICA 1967 Amendments") at 699-700 (October 24, 1967) (emphasis added).

Contrary to Defendants' contention, Congress did not favor a more restrictive statute than the SEC *per se*.[9]  As the Senate Report accompanying the final proposal of § 36(b) indicates, Congress intended the following:

> Section 36(b) authorizes an action only against the recipient of the compensation or payments.  Damages may be recovered only from a recipient of the payments and are ***not recoverable for any period prior to 1 year before the action was instituted***.  An award of damages against any recipient is limited to actual damages resulting from the breach of fiduciary duty and may not exceed the amount of the payments received by such recipient from the investment company or its security holders.

S. Rep. 91-184, at 16 (emphasis added).  This intent comports with the version of § 36(b) that was ultimately adopted by Congress.  As is evident from the excerpts above, in many respects, Congress took a more expansive view of the remedies afforded by § 36(b) than initially contemplated by the SEC.  Specifically, Congress both narrowed and expanded the damages period proposed by the SEC.[10]  Although Congress favored a damages period that could reach back only one year prior to the institution of the action, it decided to place no such limitation on damages going forward.  After all, if Congress had intended to simply narrow the damages

---

[9] While Defendants claim that "the SEC proposed a two-year limit [on damages] and Congress favored a more restrictive one-year limit," (Def. Mot. at 8) the legislative history indicates otherwise.

[10] Additionally, unlike the SEC, Congress did not believe that "only the adviser would be liable":

> An action for breach of fiduciary duty [under § 36(b)] may be brought not only against the investment adviser but also against any officer, director, member of any advisory committee, depositor, or principal underwriter of the investment advisor who, under the circumstances, may also have a fiduciary duty in respect to the payments received.  The fiduciary duty of the investment adviser is extended not only to compensation paid to the investment adviser but also to payments made by the investment adviser or its shareholders to an affiliated person of the investment adviser.  This provision affords a remedy if the investment adviser should try to evade liability by arranging for payments to be made not to the adviser itself but to an affiliated person of the adviser.

S. Rep. 91-184, at 16.

period proposed by the SEC, rather than modify it altogether, Congress could have very easily borrowed the language proposed by the SEC and directed that the award of damages shall be recoverable only for the portion of any fees paid *within* one year of the commencement of a suit found to be excessive. Instead, Congress chose to adopt the more permissive language that allowed plaintiffs to recover continuing damages. The more restrictive "within" language, which relates to the period before and after a suit is filed, was purposely excluded by Congress. Accordingly, Congress specifically rejected the idea that damages should be limited to the period before the commencement of an action.

Continuing damages are wholly appropriate under § 36(b) since it is well-established that such damages are generally available to plaintiffs alleging breach of fiduciary duties and corporate waste, which are similar common law causes of action to § 36(b). *See e.g., Robbins v. Sanders*, 890 So. 2d 998 (Ala. 2004) (the court awarded compensatory damages resulting from defendants' misconduct before and after the action was instituted in an action alleging breach of fiduciary duty, self-dealing, conversion of corporate assets, waste of corporate assets, and mismanagement); *Schreiber v. Bryan*, 396 A.2d 512, 516 (Del. Ch. 1978) (acknowledging that actions claiming breach of fiduciary duties and corporate waste frequently allege continuing wrongs against a corporation); *Winkelman v. General Motors Corp.*, 39 F. Supp. 826, 827-828 (S.D.N.Y. 1940) (in a claim of corporate waste, plaintiffs alleged that "defendants, beginning in 1918 and continuing to date, have been participants in a fraudulent scheme or conspiracy to loot General Motors Corporation of its assets through the payment of illegal bonuses and extra compensation"). Under both the common law doctrine of corporate waste and § 36(b), which is essentially a broader corporate waste statute, a plaintiff can thus recover continuing damages, on behalf of an investment company, resulting from the ongoing breach of fiduciary duties in

respect of compensation.[11]   In fact, Congress implemented § 36(b) in order to create a ***broader*** cause of action than previously afforded because "the standard of 'corporate waste [was] unduly restrictive."  S. Rep. 91-184, at 5; *see also* H.R. Rep. No. 1382, 91st Cong., 1st Sess. at 7, 53-54 (1970); *Daily Income*, 464 U.S. at 534 n.10.   This further supports Plaintiffs' contention that Congress envisioned that § 36(b) plaintiffs could recover continuing damages.

### C.    Applicable Case Law Supports a Continuing Damages Period Under Section 36(b)

Although Defendants argue that the case law supports their argument that the § 36(b) damages period is limited to one year, Defendants are unable to cite to a single court opinion that has squarely considered, properly analyzed and held that the damages period is limited to one year under § 36(b)(3).  *See* Def. Mot. at 4-5.[12]   Moreover, several courts have taken the view that § 36(b) and the cases analyzing the statute do not preclude plaintiffs from recovering damages that result from defendants' breach of fiduciary duty occurring after the filing of the complaint.

At least one court has stated that damages under § 36(b) may continue to the close of the action.  *See Tarlov v. Paine Webber Cashfund, Inc.*, 559 F. Supp. 429, 433 (D. Conn. 1983).   In *Tarlov*, the court considered a request by the defendants for a stay pending possible Supreme Court review of the decision in *Fox v. Reich & Tang, Inc.*, 692 F.2d 250 (2d Cir. 1982), *aff'd sub nom. Daily Income*, 464 U.S. at 523, which held, *inter alia,* that plaintiffs are not required to make a demand on the directors in § 36(b) claims.  The *Tarlov* court had dismissed the plaintiff's

---

[11] Of course, the standard of proof under § 36(b) is much lower than that under the doctrine of waste.  *Daily Income*, 464 U.S. at 534 n.10.  This further supports Plaintiffs' contention that Congress envisioned that § 36(b) plaintiffs could recover continuing damages.

[12] The sole case on which Defendants rely to have squarely ruled on this issue is the unreported decision discussed *infra*.  *See Gallus,* No. 04-4498 (D. Minn. May 30, 2006).  The faulty premise on which that decision rests renders it erroneous.  Plaintiffs respectfully submit that it should not be followed by this Court.

initial claim, filed in May, 1980, and the plaintiff amended in January 1982.  In considering the request for a stay, the court held:

> A reversal of *Fox* might therefore impact only on the question of when the one-year period of limitation in Section 36(b)(3) should be held to have begun.  If *Fox* stands, ***the instant suit covers fees paid from May, 1979, to the close of this action***.  If *Fox* is reversed, this court will have to decide whether that period should be held to start in January, 1981, a year before the amended complaint was filed pleading demand on the Fund's directors, or July, 1980, a year before the demand was made, or some other date suggested by the parties.

*Tarlov*, 559 F. Supp. at 433 (emphasis added).[13]  Thus, the court in *Tarlov* stated that damages under § 36(b) were available based on the fees charged through the close of the action.[14]

Recently, another district court "recognize[d] that the language of the ICA, that '[n]o award of damages shall be recoverable for any period *prior* to one year before the action was instituted,' does not limit damages for the period of time *following* the filing of the action."  *Hunt v. Invesco Funds Group, Inc.*, 2006 U.S. Dist. LEXIS 42064, at *4-5 (S.D. Tex. June 22, 2006) ("*Aim II*") (quoting 15 U.S.C. § 80a-35(b)(3) (alteration in original).[15]

---

[13] While the court in *Tarlov* speculated as to when the § 36(b) damages period would begin if *Fox* were reversed (and *Fox* was actually affirmed), this speculation appears to have been in the context of whether a demand on the directors was required as a prerequisite to having standing to bring a § 36(b) claim.  The court in *Tarlov* was essentially finding that if *Fox* were reversed and demand were required to have standing to bring a § 36(b) claim, then the initial complaint (which had been filed without a demand on the directors) may not represent the time at which the action was instituted for purposes of § 36(b).  These issues do not arise in this case.

[14] Additionally, in *Krasner v. Dreyfus Corp.*, 90 F.R.D. 665, 672 (S.D.N.Y. 1981), the court concluded the following with respect to a settlement of a § 36(b) claim:

> The recovery period is limited to the twenty-eight months between March 29, 1975 [a year prior to the date of the earliest 36(b) claim] and July 27, 1977, since the stipulation of settlement and the amendment thereto provide that all claims for excessive fees arising prior to July 27, 1977 shall be dismissed with prejudice.

[15] Defendants' attempt to distinguish this case is addressed on pp. 4-5, *supra*.

Additionally, the case law interpreting similarly written statutes supports Plaintiffs' interpretation of the damages issue. Section § 36(b) is strikingly similar to the statutory time limitation for patent infringement actions. *See* 35 U.S.C. § 286 (in relevant part, the statute states: "no recovery shall be had for any infringement committed more than six years prior to the filing of the complaint or counterclaim for infringement in the action"). Federal courts have interpreted that damages period to "only restrict[] the extent one can recover pre-filing damages." *Leinoff v. Louis Milona & Sons, Inc.*, 726 F.2d 734, 741 (Fed. Cir. 1984); *see also Spalding & Evenflo Cos. v. Acushnet Co.*, 718 F. Supp. 1023, 1049 (D. Mass. 1989); *Eagle Comtronics, Inc. v. Northeast Filter Co.*, 1991 U.S. Dist. LEXIS 16965, at *21 (N.D.N.Y. 1991).

Moreover, most of the cases cited by Defendants do not even discuss whether damages resulting from Defendants' continuing breach of their fiduciary duties are recoverable under § 36(b). *See* Def. Mot. at 4-5. The issue in *Daily Income*, *Grossman v. Johnson*, 674 F.2d 115 (1st Cir. 1982), and *Fox*, 692 F.2d at 250, was whether plaintiffs bringing a § 36(b) claim on behalf of an investment company must first make a demand upon the company's board of directors. In *Daily Income*, the Supreme Court never explicitly defined the damages period of a § 36(b) claim as being one year. Instead, the Supreme Court simply paraphrased § 36(b)(3)'s prohibition against the recovery of damages "for any period prior to one year before the action was instituted" and stated in a footnote, without any further discussion, that "recovery is limited to actual damages for a period of one year prior to suit." 464 U.S. at 526 n.2. In resolving a conflict among the Circuit Courts by holding that demand under Federal Rule of Civil Procedure 23.1 was not required for a § 36(b) claim, the Supreme Court in *Daily Income* chose not to follow *Grossman*, which had held that such a demand was required. Moreover, in *Grossman*, it was the **plaintiffs**, not the court, who had argued "the short one-year limitation period on

17

damages" of § 36(b) was "sufficient reason for exempting § 36(b) cases from the demand provision of Rule 23," and the court rejected their argument. 674 F.2d at 122. Thus, not only did the court in *Grossman* not make a ruling regarding whether the damages period was in fact one year, but it also did not make a ruling as to whether continuing damages would have been available. Accordingly, Defendants' reliance on *Grossman* is misplaced.

Similarly, the Second Circuit in *Fox* did not make any observations about whether a continuing damages period exists, but merely recited § 36(b)(3)'s prohibition against damages going back further than one year prior to the commencement of the suit in order to show why demand should not be required in the § 36(b) context. 692 F.2d at 261.

The issue in both *Brever v. Federated Equity Mgmt. Co.*, 233 F.R.D. 429 (W.D. Pa. 2005) and *Krinsk v. Fund Asset Mgmt., Inc*., 1986 U.S. Dist. LEXIS 25691 (S.D.N.Y. May 9, 1986) was whether the § 36(b) damages limitation could be tolled under the circumstances of those cases. Both *Brever* and *Krinsk* held that the plaintiffs in the respective cases were barred from recovering alleged excessive fees paid prior to one year before the initiation of their action. *Brever*, 233 F.R.D. at 436; *Krinsk*, 1986 U.S. Dist. LEXIS 25691, at *14-15. Neither of these cases considered whether continuing damages are recoverable under § 36(b). In fact, as Defendants acknowledge (*see* Def. Mot. at 6 n. 8), the subsequent history of *Krinsk* indicates that the court heard evidence at trial relating to alleged damages resulting from breaches that occurred after the complaint was filed. *See Krinsk v. Fund Asset Management, Inc*., 715 F. Supp. 472, 476 (S.D.N.Y. 1988).

Likewise, *Green v. Nuveen Advisory Corp.*, 295 F.3d 738 (7th Cir. 2002), *Kahn v. Kohlberg, Kravis, Roberts & Co.*, 970 F.2d 1030 (2d Cir. 1992), and *In re AllianceBernstein Mut. Fund Excess. Fee Litig.*, 2006 U.S. Dist. LEXIS 939 (S.D.N.Y. January 11, 2006) did not

address whether continuing damages are permissible under § 36(b). In *Nuveen*, the court considered whether the investment adviser violated § 36(b) by receiving compensation based on a percentage of the funds' daily net assets. 295 F.3d at 739. *Kahn* did not even directly concern the ICA but focused on whether an action commenced in 1991 seeking rescission of a 1987 advisory agreement under the Investment Advisors Act of 1940 was barred by the statute of limitations. 970 F.2d at 1032. The court in *AllianceBernstein* dismissed the plaintiffs' § 36(b) claim for failure to state a claim because the facts pled by the plaintiffs in support of their claim of excessive fees related largely to the period prior to one year before the action began and as to the period beginning thereafter, "[t]he Complaint only cover[ed] approximately four months of this time period." 2006 U.S. Dist. LEXIS 939 at *6.

Of the cases cited by Defendants, only the unreported decision of *Gallus*, No. 04-4498 (D. Minn. May 30, 2006) even arguably had before it the issue of whether damages under § 36(b) may be recovered for breaches that continue after the institution of the action. *Id.* at 3. However, in *Gallus*, the Magistrate Judge limited the plaintiffs' discovery related to post-complaint damages but not post-complaint liability. Moreover, the Magistrate Judge based the holding on the faulty premise that "other courts have determined, under the ICA, damages are limited to the one-year period before the filing of the action." *Id.* at 15. As explained above, other courts have not construed the damages limitation under § 36(b)(3). Accordingly, the *Gallus* court's faulty reasoning should not be followed here.

## CONCLUSION

For the foregoing reasons, Defendants' Motion for Protective Order Concerning the Statutory Damages Period should be denied in its entirety.

Dated: November 9, 2006

Respectfully submitted,

**MOULTON & GANS, P.C.**

By: ___/s/ Nancy Freeman Gans_____
Nancy Freeman Gans (BBO #184540)
55 Cleveland Road
Wellesley, Massachusetts  02481
(781) 235-2246

**Liaison Counsel For Plaintiffs**

**WEISS & LURIE**
Joseph H. Weiss
Richard A. Acocelli
Julia J. Sun
551 Fifth Avenue, Suite 1600
New York, New York  10176
(212) 682-3025

**MILBERG WEISS BERSHAD
  & SCHULMAN LLP**
Jerome M. Congress
Janine L. Pollack
One Pennsylvania Plaza
New York, New York  10119-0165
(212) 594-5300

**STULL, STULL & BRODY**
Jules Brody
Aaron Brody
6 East 45th Street
New York, New York  10017
(212) 687-7230

**BROWER PIVEN, P.C.**
Charles J. Piven
The World Trade Center – Baltimore
401 East Pratt Street, Suite 2525
Baltimore, Maryland  21202
(410) 332-0030

**SCHIFFRIN & BARROWAY, LLP**
Marc A. Topaz
Richard A. Maniskas
280 King of Prussia Road
Radnor, Pennsylvania  19087
(610) 667-7706

**GILMAN AND PASTOR LLP**
David Pastor (BBO #391000)
Stonehill Corporate Center
999 Broadway, Suite 500
Saugus, Massachusetts  01906
(781) 231-7850

**Counsel For Plaintiffs**

## CERTIFICATE OF SERVICE

I, Nancy Freeman Gans, hereby certify that a true copy of the above document was served via ECF upon the attorney of record for each party on November 9, 2006.

/s/ Nancy Freeman Gans
Nancy Freeman Gans
