UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ERIC FORSYTHE, et al., <br><br> Plaintiffs, <br><br> v. <br><br> SUN LIFE FINANCIAL, INC., et al., <br><br> Defendants. | No. 04-10584-GAO |
| MARCUS DUMOND, et al., <br><br> Plaintiffs, <br><br> v. <br><br> MASSACHUSETTS FINANCIAL SERVICES COMPANY and MFS FUND DISTRIBUTORS, INC., <br><br> Defendants. | No. 04-11458-GAO |

**REPLY TO PLAINTIFFS' OPPOSITIONS
TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
<u>CONCERNING THE STATUTORY DAMAGES PERIOD</u>**

## Introduction

Plaintiffs' responses to defendants' motion advocate an interpretation of Section 36(b) that is contrary to (*i*) its plain meaning, (*ii*) the structure of the statute as a whole, (*iii*) the great weight of the case law, and (*iv*) the relevant legislative history. Specifically, plaintiffs attempt to interpret Section 36(b) by focusing narrowly on only one part of it, while ignoring entirely what many others have concluded is the plain, contextual reading of the statute. Indeed, almost every court to have addressed Section 36(b), including the Supreme Court and the First Circuit, have read and described that statute differently from plaintiffs. In addition, both sets of plaintiffs assert that the legislative history should be ignored, which says a lot about the strength of the alternative reading of that history supplied by just one of them.

Plaintiffs' "continuing wrong" argument relies on cases that are inapposite and that set forth no rule of general application that could sensibly be applied to the statutory framework at issue here. In any event, Section 36(b) claims exclusively address discrete fiduciary judgments that must by law be made at least annually, and could not be considered "continuing wrongs." Plaintiffs' loose analogies to other inapplicable principles of corporate, patent, and antitrust law are unpersuasive.

## Argument

I.    Plaintiffs Fail to Rebut (or Even Address) Defendants' Plain Meaning Argument, and Instead Focus on a Selected Portion of the Statute out of Context.

A.    The Statute Prevents Future Damage Awards.

Defendants set forth a straightforward interpretation of Section 36(b)'s limitation on damages that properly reads together both of the relevant parts of the statute:

> Section 36(b) both defines and limits the cause of action it created.  It states that a security holder of a registered investment company may bring an action for certain amounts "paid by such investment company;" and it further provides that "No award of damages shall be recoverable for any period prior to one year before the action was instituted." 15 U.S.C. § 80a-35(b).  Accordingly, the statute plainly provides that a mutual fund shareholder may recover on behalf of a fund only amounts paid by the fund in the year prior to filing the complaint.

Def. Brief at 4.

Plaintiffs offer no response or rebuttal to this reading.  Instead, they focus only on a narrow part of the statute, without context.  In fact, in context, defendants' plain reading of the statute is both reasonable and well supported by the many cases that have read the statute in the same way.  Plaintiffs insist that all of the language cited is *dicta*, or merely "paraphrases" the statute.  Even if this were correct, to paraphrase a statute is nothing other than to supply a plain reading of it.   The fact that many courts read the statute consistently with defendants (and not plaintiffs) speaks volumes about the statute's plain meaning.  What is more, the interpretations of the many courts in this regard cannot so easily be dismissed.

     B.     Defendants' Plain Reading of 36(b) Has Been Articulated By Many Courts, Including the Supreme Court.

Many cases contain interpretations of Section 36(b) that are consistent with defendants' reading of the statute and that are not *dicta*.[1]  For example, plaintiffs inaccurately claim that the court in AllianceBernstein (one of the many courts to ascribe the same meaning to the statute as defendants) did not meaningfully address Section 36(b)'s damages period.  In fact, the court dismissed the excessive fee claim because

---

[1] See New York Cent. & H.R.R. Co. v. Price, 159 F. 330, 332 (1st Cir. 1908)  ("Whenever a question fairly arises in the course of a trial, and there is a distinct decision of that question, the ruling of the court in respect thereto can, in no just sense, be called mere dictum.").

plaintiffs failed to plead facts demonstrating the existence of excessive fees during "the applicable one-year time period" to which "Congress sharply limited recovery." Alliance Bernstein Mutual Fund Excessive Fee Litigation, No. 4885, 2006 WL 74439, at *2, n.3 (S.D.N.Y. Jan.11, 2006). This is not *dicta*. It was a necessary part of the holding, as presented by the court.

Several of the other cases that plaintiffs also seek to brush away turned directly on the court's interpretation of Section 36(b)'s damages limitation period. They are not *dicta* either. In Krinsk v. Asset Mgmt. Inc., No. 85 Civ. 8428, 1986 WL 205, at *4 (S.D.N.Y. 1986), the court concluded that "the proper test for determining whether tolling is appropriate is whether the tolling 'in a given context is consonant with the legislative scheme.'" It found that tolling was inconsistent with the legislative scheme in part because "Congress chose to limit recovery of damages by a shareholder to a short one-year period." In Brever v. Federated Equity Mgmt., 233 F.R.D. 429, 433 (W.D. Pa. 2005), the court addressed the question whether the one-year period should be tolled, and concluded that it should not because "a shareholder's ability to police and challenge … *each* fee arrangement" is "specifically limited to one year by operation of the statute." (emphasis supplied). See Kahn v. Kohlberg, Kravis, Roberts & Co., 970 F.2d 1030, 1038 (2d Cir. 1992) ("the one year period is fully adequate for … § 36(b) since other provisions of the statute require that the shareholders review and approve the subject contracts annually"); Green v. Nuveen Advisory Corp., 295 F.3d 738, 743 (7th Cir. 2002) (distinguishing plaintiff's claims from common law fiduciary duty claim by concluding that "Congress enacted a narrow federal remedy" by, for example, limiting recoverable damages to "the one-year period before the filing of the action").

Plaintiffs' assertion that the Supreme Court's reading of Section 36(b) is meaningless "paraphrasing" with respect to "unrelated issues" also goes too far. Plaintiffs ignore that in that case the Supreme Court said that in order to evaluate the controversy before it, it must focus "on the intent of Congress," which it said could be "discerned by examining a number of factors, including the legislative history and purposes of the statute." Daily Income Fund, Inc. v. Fox, 464 U.S. 523, 536 (1984). The Court's description of the statute and its purposes, including its conclusion that "recovery is limited to actual damages for a period of one year prior to suit," and that Section 36(b) is a "method of testing management compensation," arose in that context, and is entitled to considerable weight. Compare id. at 526 n.2 & 539, with Rossier v. Potter, 357 F.3d 26, 31, n.3 (1st Cir. 2004) ("We hasten to add that even if one were to categorize the Court's statement as *dictum* – a proposition to which we do not subscribe – that categorization would not shift our view . . . . '[F]ederal appellate courts are bound by the Supreme Court's considered *dicta* almost as firmly as by the Court's outright holdings ...'") (quoting McCoy v. MIT, 950 F.2d 13, 19 (1st Cir. 1991)); In re Thirteen Appeals, 56 F.3d 295, 305-06 (1st Cir. 1995) (Supreme Court statements, even if *dicta*, "carr[y] great persuasive force" and should not be minimized as a "slip of the pen," particularly where, as here, "other courts have cited" the Court's interpretation); and Gallus v. Am. Express Fin. Corp., No. 04-4498, at 14 (D. Minn. May 30, 2006), aff'd, No. 04-4498 (D. Minn. July 27, 2006) (in a holding that plaintiffs concede is not *dicta*, relying in part on the Supreme Court's view that Section 36(b) limits recovery for damages "to the one-year period prior to the filing of the complaint.")

In Grossman, the plaintiffs argued that Section 36(b) actions should not be subject to a demand requirement because the time taken by the demand-and-response process would diminish the statute's "short one-year limitation period on damages." The First Circuit concluded that the statute indeed had a "particular one-year recovery period," but that requiring demand would not truncate the period. Grossman v. Johnson, 674 F.2d 115, 122 (1st Cir. 1982). This also is far more than a mere paraphrase.[2]

C.      Defendants' Plain Reading of 36(b) is Consistent With the Rest of the Statute.

Plaintiffs' assertion that they can file one complaint based on both the *past* exercises of fiduciary duty that resulted in the fees paid in the year preceding the complaint, and *future* fiduciary decisions not yet made, is also inconsistent with the structure of Section 36 as a whole and with the obligations of plaintiffs' counsel.[3]  In 1970, Congress added Section 36(b) to the pre-existing Section 36 (now known as Section 36(a)).  Section 36(a) permits the SEC to bring a claim where a defendant has breached "or is about to breach" a fiduciary duty, but affords no private right of action.

---

[2] Plaintiffs cite only two cases in support of their interpretation.  They quote at length from a portion of Tarlov v. Paine Webber, 559 F. Supp. 429, 433 (D. Conn. 1983), which in fact does "state" that § 36(b) damages may be assessed from the year prior to filing "to the close of this action."  Suffice to say that Tarlov addresses the same issue that the First Circuit addressed in Grossman, 674 F.2d at 122, but in more summary terms.  Plaintiffs can hardly contend that a district court decision from Connecticut is more binding or persuasive than a similar decision (reaching a different conclusion) from the First Circuit.  Forsythe plaintiffs' lengthy quotation from Hunt, 2006 U.S. Dist. LEXIS 42064 at *4-5 & *5 n.1 (S.D. Tex. June 22, 2006), is misleading.  The Court in Hunt could not have been more clear that it was not deciding this issue.  Plaintiffs nevertheless insert a lengthy quotation that implies that the Court agrees with them.  That implication is clearly rebutted in the footnote, included in the decision (but not the brief), that modifies the very language that plaintiffs quote: "By this, the Court is not insinuating that damages necessarily are recoverable for the period following the filing of Plaintiffs' complaint in this case.  Rather, the Court wishes to clarify that it did not intend to rule on this issue in its June 5 Order, nor does it wish to do so at this time."

[3] Plaintiffs' interpretation would put them in the untenable position of asserting that future fiduciary decisions pursuant to Section 15 will necessarily be flawed, and that the basis for their initial claims necessarily must continue into the future.  This cannot necessarily be true.  For example, Forsythe plaintiffs complain about directed brokerage practices that ceased during the year before the complaint was filed, and such former practices can hardly form the basis for future claims.

IRC § 36(a); <u>Forsythe v. Sun Life Fin., Inc.</u>, 417 F. Supp. 2d 100, 105 (D. Mass. 2006).

Congress did not use the forward-looking language of Section 36(a) when it drafted

Section 36(b), and instead enacted a limited private cause of action to recover fees that

had been paid improperly as a result of a breach of fiduciary duty.  If Congress had

intended a complaint addressing prior breaches of duty to be a basis to challenge future

conduct, it could have used a forward-looking construction similar to that of §36(a).

* * *

Accordingly, the plain meaning of the Section 36(b), consistent with the reading

of that section supplied by numerous courts (including the Supreme Court and First

Circuit), and the structure of Section 36 as a whole, prevents plaintiffs from recovering

damages prospectively through the date of trial.

## II.  <u>The Legislative History Supports a Confined One-Year Damages Period.</u>

Even if the Court were to consider plaintiffs' interpretation plausible enough to

render the statute ambiguous, consideration of the legislative history resolves the question

in defendants' favor.  <u>See</u> <u>DJ Mfg. Corp. v. Tex-Shield, Inc.</u>, 347 F.3d 337, 340-42 (1st

Cir. 2003) (proper use of legislative history).

In their opening brief, defendants supplied compelling evidence of legislative

intention.  <u>See</u> Def. Br. at 7-9.  The source material shows that the SEC, which drafted

Section 36(b), understood and intended the damages limitation to prevent recovery of

future damages through trial.  As noted in defendants' opening brief:

> [T]he Commission initially proposed the following
> language: "No action shall be maintained pursuant to this
> subsection to recover compensation paid more than two
> years prior to the date on which such action was instituted."
> The chairman of the SEC explained to Congress that this
> language meant that "only the adviser would be liable and

- 6 -

> then only for the portion of any fees <u>paid</u> within two years
> of the commencement of a suit found to be excessive."

Def. Br. at 8 & n.9 (citations omitted and emphasis added).

The Dumond plaintiffs would have the Court ignore this language, and they incorrectly assert that the key sentence (which refers to fees paid "within" two years prior to filing) does not "discuss whether damages end at any particular time." (Dumond Opp. at 11-12.)  In fact, use of the word "within" makes clear that the SEC expected the date upon which the complaint was filed to be the end point of the damage period.  The fact that the SEC had observed (in 1966) that the limitation on damages provision would not prevent future injunctive relief does nothing to undermine the conclusion that damages were to be strictly bounded.[4]  <u>Compare id.</u>  That the SEC expected that there could be some future equitable injunctive relief provides no support for the contention that post-complaint monetary damages could also be awarded.[5]  Indeed, if the SEC did not believe that the statute constrained future remedies, it would not have been necessary to clarify that in the right case future non-damages remedies would be available.

This only reinforces the conclusion that the SEC's damage limiting language (accepted by Congress) was intended to prevent prospective damage awards.  If Congress

---

[4] "The two year limitation on recovery of compensation paid by investment companies prior to the institution of suit would not affect the jurisdiction of the courts to enjoin for the future the payment of compensation deemed violative of the statutory standard."  Dumond Opp. at 12 (quoting from SEC Report on the Public Policy Implications of Investment Company Growth, H.R. Rep. No. 2337, 89th Cong., 2d Sess. (1966) at 147).

[5] Post-complaint damages are hardly injunctive relief.  Although Dumond plaintiffs describe actions under Section 36(b) as equitable in nature, the case they cite for this proposition specifically *excludes* the damages provisions of the statute from that characterization.  <u>See</u> In re Evangelist, 760 F.2d 27, 30 (1st Cir. 1985) ("This use of the word 'damages,' as well as the limitation on recovery contained in the last sentence [of Section 36(b)(3)], distinguishes this action to a degree from traditional equitable monetary remedies...; here the statute not only uses a word, 'damages,' that is traditionally associated with 'legal' remedies but also limits liability to the amount *taken* from the company.").  The <u>Evangelist</u> Court held that the "legal" damages portion of the statute did not impact the equitable nature of the statute in other respects. <u>Evangelist</u> thus does not support using equitable principles to guide *recovery* under the statute – it does just the opposite.

had a different intention, the House testimony in 1970 would not reflect the SEC's interpretation, and there likely would be some clear support for plaintiffs' position. See Hearings Before the Subcommittee on Commerce and Finance of the Committee on Interstate and Foreign Commerce, 91st Cong., 1st Sess., H.R. No. 91-33 (1970) at 203 ("There is also a *one year limitation on possible damages* running from the time plaintiff institutes [an] action.") (emphasis added).

Forsythe plaintiffs' separate legislative history argument also makes no sense. See Forsythe Opp. at 10-12. What these plaintiffs seek to ignore is that, except for the fact that Congress changed the two-year limit proposed by the SEC to a one-year limit, the language of the damages limitation ultimately enacted is the same as proposed by the SEC. Accordingly, the SEC's contemporaneous explanation of the statute set forth above (which is consistent with defendants' interpretation) helps to resolve any ambiguity about Congress's intentions.

Forsythe plaintiffs' other point is confused, but it reduces to the observation that although the SEC had explained to Congress that the adviser would only be liable "for the portion of any fees paid within two years of the commencement of a suit found to be excessive," the Senate Report did not use the same words. Forsythe Opp. at 12-13. This leads nowhere. The Senate Report, which highlights that damages under Section 36(b) cannot be imposed more than a year prior to the filing of a complaint, is hardly inconsistent with the SEC's interpretation, and does nothing to suggest that the SEC's explanation about how the statute would work was somehow rejected.[6]

---

[6] The Senate Report, like the statute itself, describes the damages remedy exclusively in the past tense. It states that "[a]n award of damages against any recipient of the payments is limited to actual damages resulting from the breach of fiduciary duty and may not exceed the amount of the payments *received* by such recipient from the investment company or its security holders." S.R. No. 91-184, 91st Cong., 1st Sess.

The other legislative materials are fully consistent with the defendants'
interpretation -- and that of the various courts that have addressed this question. More
specifically, the SEC recommended its limited damage remedy due to "considerations of
fairness to the individuals and organizations that furnish their services to investment
companies." H.R. Rep. No. 89-2337, at 146 (1966).

> This limitation reflects the need of investment advisory organizations,
> many of which are publicly owned, for a measure of security with respect
> to revenues and earnings they receive from the investment companies they
> serve. For many advisory organizations the compensation received from
> mutual funds under their management is the primary source of their
> revenues and earnings.

> Absent a limitation on recoveries of compensation subsequently
> deemed to have been paid in violation of the statutory standard of
> reasonableness, the liabilities created by such a statutory requirement
> might operate with undue harshness on those obligated to comply.

Id.

Congress, guided not just by this consideration, but also by concern over potential
nuisance or strike suits, decided on a more restrictive one-year damages period. See
Brever, 233 F.R.D. at 433 (citing H.R. Rep. No. 1382, 91st Cong., 1st Sess. 8, 38 (1970));
see also Krinsk, 1986 WL 205 at *4. Hearings in Congress leading to the passage of
Section 36(b) in 1970 also addressed the conclusion that damages would be limited to a
confined one-year period. See Hearings Before the Subcomm. on Commerce and Fin. of
the Comm. on Interstate and Foreign Commerce, 91st Cong., 1st Sess., H.R. No. 91-33 at
203 (1970) ("There is also a *one year limitation on possible damages* running from the
time plaintiff institutes [an] action.") (Emphasis added).

---

at 16 (emphasis added). The fact that the Senate Report did not highlight the prospective limitation of the
statute to the same extent as the SEC did does not mean that the Senate intended something different than
the statute's drafters. This is particularly true because, as noted below, the 1970 House materials are more
explicitly in accord with the SEC's interpretation.

Thus, as the cases discussing the enactment of this legislation reveal, Congress wanted a limited mechanism to "test" recent fee approvals by fund trustees. See Brever, 233 F.R.D. at 433 (citing H.R. Rep. No. 1382, 91st Cong., 1st Sess. 8, 38 (1970)); see also Krinsk, 1986 WL 205 at *4. Congress, in settling on a limited "test" remedy, understood that although the aggregate fees obtained by an advisor might be excessive in a given year, the fees charged to particular investors were so low that they were not likely to be of particular significance to them. See Gartenberg v. Merrill Lynch Asset Mgmt., Inc., 694 F.2d 923, 929 (2d Cir. 1982). Congress also expressly did not want to expose investment advisers to substantial uncertainty about damages calculated with respect to multiple-year periods. Accordingly, it should surprise no one that Congress enacted legislation that prevents plaintiffs from using a complaint about prior fee approvals as a vehicle for challenging multiple exercises of fiduciary duty over a period of years.

III.   The Complaints Do Not Allege a "Continuing Wrong," and Plaintiffs'
       Reliance on Cases Referring to "Continuing Wrongs" Is Misplaced.

The Dumond plaintiffs cast defendants' alleged breach of fiduciary duty as a "continuing wrong" for which post-complaint damages necessarily are appropriate. This is incorrect because there is not a "continuing wrong" here, and also because the cases upon which plaintiffs rely are insufficient to alter the intended effect of the damages limitation contained in Section 36(b).

Section 36(b) claims, by definition, allege nothing other than a breach of the fiduciary duty imposed by Section 36(b). The ICA, of which Section 36(b) is a part, requires that this particular fiduciary judgment be exercised *annually* through the setting of fees. 15 U.S.C. § 80a-15(a)(2). Each year, the adviser must provide adequate new or updated data to the trustees, and the trustees must decide, in light of this data, whether the

- 10 -

relevant advisory contract should be extended and whether the fees or other terms and conditions of the advisory relationship should change. A court evaluating a claim under Section 36(b) must consider what deference should be given to the trustee's annual decision in this regard. See ICA § 36(b) ("In any such action approval by the board of directors of such compensation ... shall be given such consideration by the courts as is deemed appropriate under all the circumstances.") Accordingly, ICA fee decisions are discrete fiduciary judgments that occur every year and must be evaluated individually, and claims under Section 36(b) are not "continuing" in nature.

The heavily redacted documents supplied by the Dumond plaintiffs show no more than that MFS's annual fee approval process culminates in a "continuation" of the advisory contract for each Fund. Compare Dumond Opp. at 13. Of course, whether as a matter of form the contracts are extended or restated is irrelevant. Plaintiffs cannot seriously contend that the duration of the relevant damages period under Section 36(b) turns on whether the contracts comprising fee approvals as a matter of form were either extended or retyped and re-executed.

Nothing about the documents supplied by the plaintiffs suggests that the full fee review and approval process required by ICA § 15(c) did not occur. 15 U.S.C. § 80a-15(c). Indeed, the redactions obscure evidence of the efforts of MFS, the trustees, and their counsel to consider, discuss, and reach agreement on the fees to be charged by MFS in the following year; and other materials provided to plaintiffs and not attached contain more such detail.[7] There is plenty of other such evidence to which plaintiffs did not

---

[7] More specifically, Dumond plaintiffs redacted evidence that before setting fees in 2002 and 2003, MFS provided and the Trustees considered a copious number of documents and information including the "nature, quality and extent of the services provided by MFS to the Funds," comparative investment-performance, advisory-fee and expense-ratio data, the 2002 and 2003 Blue Books, the existence and nature

refer. Accordingly, nothing about the form of contract renewal suggests that the

independent fiduciary judgment required by the ICA, and to which claims under § 36(b)

are addressed, did not occur.

The dog's breakfast of cases that the Dumond plaintiffs supply in this regard do

not come close to supporting the argument that independent fiduciary judgments such as

those made under Section 36(b) constitute a "continuing wrong," and they fall far short of

articulating a principle of general application that can be applied to the pending cases.

- Contrary to plaintiffs' citation, Hartley v. Dillard's, Inc., 310 F.3d 1054 (8th Cir. 2002), is not a case about a continuing wrong. It is an age discrimination case (plaintiff was fired – once) in which the phrase "continuing wrong" does not appear. Although the Eighth Circuit used the words quoted ("most complete relief possible"), what it really said was, "A district court is obligated to grant a plaintiff who has been discriminated against on account of his age, the most complete relief possible." Id. at 1062 (upholding award of back pay). Thus, Hartley has nothing to do with this case.

- Plaintiffs suggest that Jones v. United States, 255 F.3d 507 (8th Cir. 2001), which has nothing to do with Section 36(b) or the ICA, permitted damages to be assessed during the period after the filing of the complaint. In fact, the issue in Jones was not ongoing injury or damages, but how pre-judgment interest should be calculated. The Eighth Circuit was clear that: "[T]he district court awarded amounts that compensated the Joneses for the loss of investment capital between the time of the loss and the date of trial. This is nothing more than damages for the delay in receiving money and, we think, cannot be properly characterized as anything but interest." Jones, 255 F.3d at 509-10.

- McAllister v. Sec'y of Health and Human Servs, 70 F.3d 1240 (Fed. Cir. 1995), and Marquardt v. Starcraft Marine, 876 F.2d 61 (8th Cir. 1989), are personal injury cases in which plaintiffs alleged ongoing pain and suffering from their injuries (one child received a bad polio vaccine; the other was injured by an exposed screw). These tort cases do not involve a statutory damages limitation,

---

of non-binding allocated brokerage arrangements, fiduciary and other duties under §§ 15(c) and 36(b) of the ICA requiring the Trustees "to request and evaluate" and MFS to furnish "such information as may be necessary to evaluate the terms of the investment advisory agreement" and lengthy discussions regarding how to comply with those duties.

and are not comparable to Section 36(b).

- Norwest Bank Minnesota Nat'l Ass'n. v. Fed. Deposit Ins. Corp., 312 F.3s 447 (D.C. Cir. 2002) and Kemper Ins. Cos. v. United States, 2004 WL 1811390, at *1 (W.D.N.Y. Aug. 13, 2004) are similarly inapplicable. They addressed continuing conduct only as it relates to a statute of limitations (which is inapplicable to Section 36(b)) and in the absence of a statutory limit on imposition of damages. Norwest in any event cuts against plaintiffs' argument. In that case, the Court dismissed plaintiffs' claims as time-barred despite alleged continuing harm because their claims accrued outside the statutory limitations period. Kemper is a unique case that says nothing about whether there is a "continuing wrong" in this case, or what the consequences would be in this case if the "wrong" alleged is deemed to be continuing.[8]

Taken together, these cases reveal no coherent principle concerning what might be a continuing wrong, or the practical import of such a wrong. Many of them involve not a continuing wrong, but a continuing injury from a single actionable event. Most are common law tort cases. Most consider continuing conduct exclusively in the context of a statute of limitations (which does not exist as to Section 36(b)). None arises under the ICA, and one actually arises under a statute that – unlike Section 36(b) – *explicitly* provides for damages (albeit from a single act) "until the date of the judgment." McAllister, 70 F.3d at 1243 (citing relevant provision of the National Vaccine Injury Act). None has a damage limitation provision similar to the one in Section 36(b). In short, none of these cases is relevant to the plaintiffs' claims.

---

[8] In Kemper, plaintiff issued a performance bond guaranteeing a contractor's completion of a highway. Once the contractor defaulted, any claim on the contractor's assets increased the plaintiff's exposure on the bond. Plaintiff initially sought an injunction that an IRS tax lien was subordinate to plaintiff's lien on the contractor's assets. Unknown to plaintiff (due to disarray in the contractor's records), the IRS levied on the contractor's assets covered by plaintiff's lien, and plaintiff didn't find out about it until after the statute of limitations on claims against the government expired. Plaintiff sought to amend the complaint to seek damages as well as an injunction, which was permitted in part because plaintiff did not "attempt... to increase the amount of recovery" sought. Id., 2004 WL 1811390, at *4.

- 13 -

IV.    <u>Plaintiffs' Analogies to Corporate Waste and Other Cases</u>
       <u>Have No Persuasive Force.</u>

Plaintiffs' invocation of corporation law or other supposedly "analogous statutes"

makes no sense.  The issue here is what Section 36(b) means, or what Congress intended

when it passed this statute -- not what part of common law Congress did not adopt, and

not what Congress intended in passing different statutes, addressing different kinds of

conduct, for different purposes.

Forsythe Plaintiffs cite no authority that relied on or considered any analogy to

common law corporate waste actions to interpret Section 36(b).  Nor could they.

Plaintiffs acknowledge that the legislative history of Section 36(b) reflects that Congress

wanted to enact something different from the common law action for waste.  Forsythe

Opp. at 15.  Plaintiffs never suggest that Congress in enacting § 36(b) considered what

damages would be awarded in waste cases; and never explain why they think that one of

the differences between § 36(b) and the common law that Congress had in mind was not

the express limitation on damages included in the statute.  In short, regardless of how

damages are calculated for waste claims, there is no basis to conclude that Congress

incorporated such a method into Section 36(b).

Similarly, plaintiffs' reference to patent and antitrust statutes also permits no

inference about what Congress intended in enacting Section 36(b).  Those statutes quite

obviously have different purposes, and there is no suggestion that Congress either

considered those statutes in enacting Section 36(b) or intended that the Courts interpret

the three statutes consistently.  Nothing about the patent or antitrust statutes suggest that

Congress sought a careful balance between available remedies and the costs and burdens

that litigation and the remedies themselves could impose on defendants.  Quite the

contrary, both the patent and antitrust statutes permit the imposition of treble damages.
See  15 U.S.C. § 15(a); 35 U.S.C. § 284.

V.    Practical Considerations Further Support the Plain Meaning of Section 36(b) and
      Undermine Plaintiffs' Position.

There is nothing impractical or inefficient about defendants' (and many courts')
reading of Section 36(b).  Congress wanted to give the courts jurisdiction to "test" fees;
but Congress understood both that the impact of excessive fees on particular holders was
unlikely to be consequential, and that permitting such a test would impose significant
burdens on advisers and their shareholders.  A hard limit to the scope of a particular
action is consistent with all of these considerations.

Plaintiffs' suggestion that the natural consequence of limiting damages to a one-
year period is that plaintiffs will suffer the administrative inconvenience of filing a new
complaint every year *presupposes* that there would be a factual basis for doing so (and
suggests that actual fund performance and quality of services actually provided pose no
practical impediment to suing).  This is exactly the misuse of Section 36(b) that courts
have identified and rejected.  See Amron v. Morgan Stanley Inv. Advisors, Inc., 464 F.3d
338, 346 n.2 (2d Cir. 2006) (affirming dismissal of Section 36(b) complaint and
observing that it was "strikingly similar to prior claims brought . . . by Plaintiffs'
counsel," and "virtually identical" to serial claims dismissed by the Third and Fourth
Circuits).

Congress probably did not envision claims of the scope advanced by plaintiffs.  A
more practical expectation would have been a prompt response by shareholders to a
dramatic change -- either a fee increase, or some real world change that should be
addressed by a fee decrease --  not a generalized complaint that every fund owned by a

- 15 -

named plaintiff was "excessive" for broad and general reasons.  A more narrow claim of the kind Congress likely intended would not take so long to address as these cases, which follow adverse publicity unrelated to the size of the fees charged by MFS.  But if plaintiffs wanted to pursue their generalized theory over a longer period, there was nothing to prevent them from filing another complaint.  The fact that they did not means that *less* resources of the Court and of the parties will be consumed than if such a complaint had been filed.  If plaintiffs in fact do file another complaint, whether to address the cases together or separately should be considered in light of the claims made.

Plaintiffs also suggest that some impracticality or inconsistency arises from the fact that the one-year lookback period contemplated by Section 36(b) may encompass two separate renewal decisions by fund trustees.  Although it may be true that the Court, in reviewing the reasonableness of the fees in question, will have to review two sets of decisions by trustees, it is surely possible for the Court to do so while limiting any damages to the fees "paid" (see Section 36(b)) during the 12 months prior to the date of the complaint.  This is how the statute was written and meant to be applied; this is how courts have read the statute to apply; and there is no "impracticality" in applying it this way.

VI.    Plaintiffs Resist Reasonable Efforts by Defendants and This Court To Define the Proper Scope of Discovery and Implement an Efficient Discovery Plan.

Plaintiffs unreasonably assert that the Court's determination of the appropriate damages period will not affect the scope of discovery.  This makes no sense at all.  Defendants concede that there are post-complaint documents bearing on the reasonableness of the fees charged in the relevant pre-complaint period, but it is plain that if it is only fees received in this period and the decisions that led to them that are at issue,

many fewer documents and much less testimony need be produced.  Thus it is

unreasonable to suggest that a decision as to *which* annual fee agreements are implicated

by plaintiffs' claims will not affect the scope of discovery or the corresponding cost and

burden imposed on MFS.  See Def. Brief at 2.  Given the number and breadth of

plaintiffs' discovery requests, it is disingenuous of plaintiffs to suggest otherwise.

Nor is this, as Forsythe plaintiffs suggest in a diversion that is their leading

argument, a continuation of dilatory behavior by defendants.  This Court has ordered that

document discovery be implemented in two phases: first, defendants will produce paper

discovery, and then the parties and the Court will consider what electronic discovery is

necessary.  Defendants believe that the best way to proceed as to the paper documents,

given both the lack of specificity in plaintiffs' complaints and the burden associated with

responding to discovery unbounded by disclosed theories of liability, is to produce all of

the core paper documents for the two fee-setting processes undertaken by MFS and the

MFS Fund Trustees with respect to the fees assessed during the one-year period prior to

the filing of the plaintiffs' complaints, and to ask the plaintiffs to narrow their discovery

requests to what is necessary based on their analysis of how those processes were

deficient.

Defendants have done their part, producing everything submitted by MFS to the

trustees as part of those processes.  In addition, defendants continue to produce paper

documents for the relevant period responsive to the plaintiffs' voluminous requests (as

narrowed by defendants' objections) and have agreed to review and produce post-

complaint paper documents that contain key historical and comparative information

pertinent to the relevant period.

Defendants believe that plaintiffs should now disclose their theories of liability, beyond simply invoking the Gartenberg factors, and that when they do, the next step should be discussions about what is necessary given what plaintiffs have already received and what they want to try to prove. See, e.g., Midland Inv. Co. v. Van Alstyne, Noel & Co., 59 F.R.D. 134, 141 (S.D.N.Y. 1973) (the concept of relevance must "adjust and conform to the nature of the litigation. As the parameters of the controversy become clearer, free-wheeling discovery becomes a wasteful and needless luxury"). Plaintiffs, however, apparently reject both this suggestion and defendants' understanding that the Court has recognized the benefits of an approach along these lines.

During the October 18, 2006 Status Conference, the Court suggested that Plaintiffs use the materials produced to date to spell out their theories of liability in an effort to "sharpen the edges on discovery" and support the discovery of further materials. Transcript of October 18, 2006 Status Conference at 13-14. Pursuing this process is likely to permit principled discussion about relevance and burden, leading to a speedier and less expensive pretrial process. See Fed. R. Civ. P. 26(b)(1), 26(b)(2), 26(c); Gill v. Gulfstream Park Racing Ass'n, Inc., 399 F.3d 391, 400 n.5 (1st Cir. 2005) (the court "shall" limit discovery of even relevant information if "the burden or expense of the proposed discovery outweighs its likely benefit").

## Conclusion

For all of these reasons, defendants' motion should be granted.

DATED:  November 21, 2006

Respectfully Submitted,

MASSACHUSETTS FINANCIAL
SERVICES CO., and MFS FUND
DISTRIBUTORS, INC.,

By their attorneys,

/s/ Jennifer L. Carpenter
William H. Paine (BBO #550506)
Michael Bongiorno (BBO #558748)
Jonathan A. Shapiro (BBO #567838)
Jennifer L. Carpenter (BBO #647214)
John Rhee (BBO #650139)
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA  02109
(617) 526-6000

## CERTIFICATE OF SERVICE

I, John S. Rhee, hereby certify that on November 21, 2006, I caused a copy of the foregoing document to be served upon counsel for Plaintiffs via electronic and first class mail.

/s/ John S. Rhee
John S. Rhee